IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, D.I., by his next friend, Nancy G. Pofahl, Z.H., by his next friend, Carla B. Morrison, S.A., by her next friend, Javier E. Solis, A.M., by her next friend, Jennifer Talley, J.S., by his next friend, Anna J. Ricker, K.E., by her next friend, John W. Cliff, Jr., D.P., by her next friend, Karen J. Langsley, and T.C., by his next friend, Paul Swacna, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> vs. <br><br> RICK PERRY, in his official capacity as Governor of the State of Texas,  THOMAS SUEHS, in his official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas, and ANNE HEILIGENSTEIN, in her official capacity as Commissioner of the Department of Family and Protective Services of the State of Texas, <br><br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br><br><br><br><br><br> CIVIL ACTION NO. 2:11 CV-00084 |

_____

**DEFENDANTS' ORIGINAL ANSWER**
_____

TO THE HONORABLE JANICE GRAHAM JACK, UNITED STATES DISTRICT COURT:

Rick Perry, in his official capacity as Governor of the State of Texas, Thomas Suehs, in his official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas, and Anne Heiligenstein, in her official capacity as Commissioner of the Department of Family and Protective Services of the State of Texas, file Defendants Original Answer and would respectfully show the Court as follows:

## DEFENDANTS' ANSWER

Defendants reserve the right to assert any affirmative defenses or jurisdictional challenges to Plaintiffs' complaint that are arguable under the law and become apparent during the course of this litigation.  Pursuant to Federal Rule of Civil Procedure 8(b), and subject to any such affirmative defenses or jurisdictional challenges, Defendants deny each and every allegation contained in Plaintiff's Original Complaint except for those expressly admitted.  In several instances, Defendants have identified statements in the complaint that are legal conclusions or non-factual statements.  No response to these legal conclusions or non-factual statements is required.  However, if such response is required, Defendants deny such legal conclusions and non-factual statements.  These numbered paragraphs and titles correspond to the paragraphs and titles within the body of Plaintiff's Original Complaint.

## <u>INTRODUCTION</u>

1.      Defendants admit Plaintiffs have brought this civil rights lawsuit, but deny the remaining averments in this paragraph.

2.      Defendants admit that children come into Department of Family and Protective Services' (DFPS's) (substitute) care after being abused or neglected in their homes.

3.      Deny.

4.      This paragraph contains legal conclusion and non-factual assertions to which no response is required.

5.      Deny.

6.      Deny.

7.      Deny.

8.      Deny.

9.      Defendants deny this paragraph and sub-paragraphs (a) though (d).

10.     Deny.

11.     Deny.

12.     Defendants admit the Texas Comptroller issued a report entitled *Forgotten Children* in 2004.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the report.Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining averments in this paragraph.

13.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the averments in this paragraph.

14.     Deny.

15.     Defendants admit that the Commissioner made this comment.

16.     Defendants admit the Texas Adoption Review Committee made this finding.  Defendants are without knowledge or information sufficient to form a belief as to finding itself.

17.     Deny.

18.     Defendants admit that Plaintiffs purport to bring a class action, but deny any remaining factual averments in this paragraph.

## JURISDICTION AND VENUE

19.     Defendants admit this action is brought pursuant to 42 U.S.C. § 1983.  Whether the Court has jurisdiction over this action is a legal conclusion to which no response is required.

20.     Defendants admit this paragraph, and sub-paragraph (a) though (d).

## PARTIES

**A.    Named Plaintiffs**

**M.D.**

21.    Defendants admit the factual averments in the first two sentences of this paragraph. Defendants deny the remaining factual averments in this paragraph.

22.    Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

23.    Defendants deny the factual averments contained in the first sentence of this paragraph. Defendants admit the factual averments contained in the second sentence of this paragraph.

24.    Defendants admit the factual averments contained in the first sentence. Defendants admit that M.D. stayed in the Victoria RTC for two and a half years, but deny the remaining averments in the third sentence.  Defendants admit the factual allegations contained in the final sentence of this paragraph.

25.    Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

26.    Defendants deny this paragraph and note that M.D. has been in juvenile detention several times for assaulting others prior to and after entering into Defendants' care.

27.    Defendants admit the factual averments contained in the first and second sentences of this paragraph but lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

28.    Defendants deny this paragraph.

29.    Defendants admit only the factual averments in the first sentence of this paragraph but deny all remaining factual averments in this paragraph.

30.     Defendants deny this paragraph.

31.     Defendants admit that M.D. was removed from her parents care in 2005 and her parents' rights were terminated in 2010, but deny the remaining averments in this paragraph.

32.     Defendants deny this paragraph.

33.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

### **D.I.**

34.     Defendants admit the factual averments in the first sentence of this paragraph but deny the remaining factual averments in the paragraph.

35.     Defendants admit that DFPS previously investigated D.I.'s family.  Defendants deny the remaining factual allegations in this paragraph.

36.     Defendants deny that D.I. ran away from home but admit that DFPS investigated the family in July 2008, and offered Family-Based Safety Services.

37.     Defendants admit that D.I. was placed with relatives where he resided for over a year. Defendants deny the remaining factual allegations in this paragraph.

38.     Defendants admit that D.I. was placed in a foster home and that other boys in the foster home sexually acted out but deny that those children had any previous history of sexually acting out.  Defendants deny any remaining factual allegations in this paragraph.

39.     Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

40.     Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

41.     Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

42.     Deny.

43.     Defendants admit that the parental rights of D.I.'s mother were terminated in August 2010.   Defendants admit that DFPS appealed the magistrate judge's refusal to terminate the parental rights of D.I.'s father at the same time and that termination was achieved in late January 2011, at which time D.I. became legally free for adoption.   Defendants deny that DFPS failed to take action to provide D.I. with the services and supports he needs.   Defendants deny any remaining factual allegations in this paragraph.

44.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**Z.H.**

45.     Defendants admit that Z.H. is a ten-year-old boy from San Antonio, in Bexar County. Defendants deny that Z.H. is the oldest of three children born of the same mother but each with a different father.

46.     Defendants admit that Z.H. and his youngest brother were removed from their mother's home and brought into foster care by DFPS in February 2009, when Z.H.'s mother failed to provide him with psychotropic medication prescribed by doctors at a psychiatric hospital where Z.H. was placed in 2008.   Defendants admit that Z.H.'s youngest brother was placed with foster parents who are now in the process of adopting him.   Defendants admit that DFPS took legal custody of the middle brother in March 2009, leaving him with his father with whom he had been living.   Defendants deny the remaining factual allegations in this paragraph.

47.     Defendants admit that DFPS placed Z.H., without his brothers, in a privately run emergency shelter in Kerrville.  Defendants admit that Z.H.'s prescriptions ran out two days before he left the shelter, that there were no refills and that DFPS scheduled a psychiatric appointment which was held shortly thereafter.  Defendants deny the remaining factual allegations in this paragraph.

48.     Defendants admit that in March 2009, DFPS moved Z.H. from the Kerrville shelter to a therapeutic foster home.  Defendants admit that after arriving at the home, Z.H. was admitted to a hospital in San Antonio offering acute care for emotionally and behaviorally troubled children.

49.     Defendants admit that Z.H.'s condition deteriorated at the hospital.  Defendants deny the remaining factual allegations in this paragraph.

50.     Defendants admit that Z.H. was over-medicated without DFPS' consent and that DFPS diligently pursued a complaint against the prescribing doctor and reported the over-medication to the state court judge presiding over DFPS' suit affecting the parent/child relationship (SAPCR) between Z.H. and his parents.  Defendants deny any remaining factual allegations in this paragraph.

51.     Defendants admit that the San Antonio Hospital discharged Z.H. in June 2009. Defendants deny that Z.H. was taken to an emergency shelter because DFPS had no other plan for him.  Defendants admit that shelter staff had Z.H. admitted to a hospital in Lampasas because they saw he was medically unstable.  Defendants admit that the next day Z.H. was transferred to a hospital in Belton.

52.     Defendants admit that Belton hospital records show that Z.H. was overmedicated and that Z.H. remained at the facility and its affiliated RTC for some time.  Defendants deny any remaining factual allegations in this paragraph.

53.     Defendants admit that Z.H. now resides in at the Nacogdoches Boys Ranch, which is able to meet his specialized and intensive behavioral needs in addition to his basic needs.  Defendants deny any remaining factual allegations in this paragraph.

54.     Defendants admit that they attempted to terminate the parental rights of Z.H.'s mother but that the SAPCR court refused to terminate her rights until early 2011.  Defendants deny any remaining factual allegations in this paragraph.

55.     Defendants deny the averments in this paragraph.

56.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

     **S.A.**

57.     Defendants admit that S.A. has been in care since 2001, and is legally free for adoption. Defendants deny any remaining factual allegations in this paragraph.

58.     Defendants admit that S.A. was living with her adoptive mother in Mexico and was taken into custody when they were crossing the border into Brownsville.  S.A. is not from Texas and has an extensive history in Florida.  Defendants deny any remaining factual allegations in this paragraph.

59.     Defendants admit that they moved S.A. from various placements because of her poor behavior.  Defendants admit that S.A. was placed in an RTC at the age of six to get her the help she needed.  Defendants deny that they have not been attempting to find an adoptive placement for S.A.  Defendants deny any remaining factual averments in this paragraph.

60.     Defendants admit that S.A. was placed in the least restrictive environment available in light of her needs.  Defendants deny the remaining factual allegations in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 8

61.     Defendants admit that S.A. was placed in the least restrictive environment available in light of her needs.  Defendants deny any remaining factual allegations in this paragraph.

62.     Defendants admit that S.A. is at a placement six hours from Brownsville.  S.A. is not from Brownsville and has no connection to that city.

63.     Defendants deny that S.A. presented no acute emotional problems or mental illness when first brought into care.  Defendants admit that S.A. takes medication to help her with her needs. Defendants deny the remaining factual averments in this paragraph.

64.     Defendants admit that S.A.'s placement moves resulted in changes in therapy and school but deny the remaining factual averments in this paragraph.

65.     Defendants admit that S.A. has had multiple caseworkers.

66.     Defendants deny they have not made specialized efforts to find an adoptive placement for S.A.  Defendants deny any remaining factual allegations in this paragraph.

67.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**A.M.**

68.     Defendants admit the factual averments in the first sentence of this paragraph. Defendants admit that A.M. was separated from her sibling and half-sibling when the SAPCR court ordered that her half-sibling be placed with the child's biological father.  Defendants admit that A.M.'s mental and behavioral problems led to an adoptive placement for A.M. and her sister.  The foster placement asking that A.M. be removed, and the SAPCR court allowed the family to adopt A.M.'s sibling but not A.M.  Defendants deny that A.M. has been left "for years" in an institution.   Defendants deny that they failed to provide A.M. with needed therapy. Defendants deny any remaining factual allegations in this paragraph.

69.     Defendants admit this paragraph.

70.     Defendants admit that the SAPCR court placed A.M.'s half-sibling with the child's biological family.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

71.     Defendants admit that A.M. has a younger half sister who was born after A.M. came into care and that this child was adopted by a paternal uncle who has not maintained contact with A.M.  Defendants deny any remaining factual allegations in this paragraph.

72.     Defendants admit that A.M. and her middle sister were placed together in a foster home but deny that the foster family was unable to care for the baby.  The foster home could not care for A.M. given the extensive nature of her behavioral problems.  Defendants deny any remaining factual allegations in this paragraph.

73.     Defendants admit that the girls were moved to a therapeutic foster home in Rusk County. Defendants admit that, after the children left this placement, A.M. alleged she had been abused while living in the home.  DFPS' RCCL Division investigated the allegations but ruled them out. A.M. and her sister had been removed from the home as the foster parents wished to adopt only A.M.'s sister and Defendants wanted to keep the siblings together.  Defendants deny any remaining factual allegations in this paragraph.

74.     Defendants admit that A.M. and her sibling where placed in another therapeutic home but note that A.M. was not placed into the home until one month after her sister.  Defendants deny the remaining factual allegations in this paragraph.

75.     Defendants admit the foster/adoptive parents were unwilling to adopt A.M. but deny that DFPS did not inform or prepare A.M. for the decision.  Defendants admit that A.M. was

admitted to a psychiatric hospital for appropriate treatment.  Defendants deny any remaining factual averments in this paragraph.

76.     Defendants admit that, after the SAPCR court ordered that the adoptive parents be allowed to adopt A.M.'s sister without A.M., Defendants placed A.M. in an RTC in Boerne, Texas.  Defendants deny the remaining factual averments in this paragraph.

77.     Defendants have insufficient information to admit or deny this paragraph.

78.     Defendants admit that the facility administered a medication despite being advised that A.M. was allergic to the medication and that A.M. was hospitalized as a result.

79.     Defendants deny that A.M. suffered injuries from being restrained at the facility. Defendants deny that A.M.'s medications made her vague and inattentive.  Defendants deny that A.M.'s therapist was not given information about A.M.'s history since both DFPS and the prior therapist provided this information.  Defendants deny any remaining factual allegations in this paragraph.

80.     Defendants admit that A.M. was located several hours away from her great-grandmother and that A.M. was permitted to leave the facility campus for only a few hours.

81.     Defendants admit that A.M.'s primary worker changed.  Defendants admit that A.M. was moved to a foster home, a less restrictive placement than the RTC, when she was ready. Defendants deny the remaining factual allegations in this paragraph.

82.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**J.S.**

83.     Defendants admit that J.S. is nine years old and from Morton, Texas.  Defendants further admit that J.S. was placed at the Children's Home of Lubbock to be near his older sister who was

residing at the facility with her baby.  J.S. was later moved to the assessment center at Children's Home to help with his behaviors.  Defendants admit that J.S. was admitted to a psychiatric hospital in Amarillo (approximately 163 miles from Morton) due to suicidal and homicidal ideations.  Defendants admit that J.S. was placed at Devereux RTC in Victoria, Texas but that, at his attorney ad litem's request, was moved back to the Lubbock area to be closer to his family. Defendants admit that they attempted to place J.S. in therapeutic foster homes but that he had to be removed from those homes in light of his behavioral issues.  Defendants deny the remaining factual allegations in this paragraph.

84.     Defendants admit that J.S. and his 16-year-old sister were removed in 2007.  Defendants admit that J.S. was placed at Devereux, an RTC in Victoria, Texas.  Defendants deny there is any interaction between children and adults at the facility.  Defendants deny the remaining factual averments in this paragraph.

85.     Defendants are unable to admit or deny how the RTC was decorated but deny that J.S. was not appropriately clothed.  Defendants are unable to admit or deny statements made by J.S. to his attorney *ad litem*.

86.     Defendants admit that the SAPCR court granted DFPS PMC of J.S. while he was placed at Devereux and that, at that time, the permanency goal was adoption.  Due to changing circumstances, the SAPCR court ordered that the father be allowed to pursue services in order to be reunified with his son.  The SAPCR court also indicated that termination of parental rights as to J.S.'s mother was inappropriate at that time as she appeared to be making progress in overcoming her drug addiction.  After J.S.'s mother regressed, J.S.'s permanency goal was changed to adoption.  Defendants deny any remaining factual allegations in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 12

87.     Defendants deny that J.S.'s behavior did not improve upon receiving therapy and medical treatment while living at the RTCs.  Defendants admit that in November 2008, the SAPCR court ordered that J.S. be moved back to the area to be closer to his sister.

88.     Defendants deny that J.S. was damaged by his time in the RTC.  His level of care was determined to be "specialized" prior to being placed in the RTC and not as a result of the placement.  While living in the foster home in Lubbock, the SAPCR court had not yet agreed to terminate parental rights to J.S.; thus, he was not available for adoption.  Defendants deny any remaining factual allegations in this paragraph.

89.     Defendants admit that J.S., as well as the other foster children in the home, were placed in respite (temporary) care pending an investigation of an abuse report in his foster home.  J.S. was aggressive when he came into care and he had voiced suicidal thoughts several years before being placed in the respite home referenced in this paragraph and not because of the placement.  Defendants deny any remaining factual averments in this paragraph.

90.     Defendants admit that J.S. attends school through the Dallas Independent School District at a campus on-site of the RTC.  While there have been behavioral issues at school, J.S. has shown improvement.  The RTC provides J.S. with three therapy sessions each week.  Defendants deny any remaining factual averments in this paragraph.

91.     Defendants admit that parental rights to J.S. were recently terminated and he is now legally free for adoption.  His permanency goal is adoption.  His medications are carefully monitored.  Defendants deny any remaining factual allegations in this paragraph.

92.     There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**K.E.**

93.     Defendants admit that K.E. was eight years old when she came into care but deny the other allegations in this paragraph.

94.     Defendants admit that K.E. was initially placed in a foster home and remained there for two months and that she was moved to New Horizons Ranch in Brownwood, which was better able to meet her specialized needs.  Defendants deny that K.E.'s placement in an emergency shelter violated any law. As K.E.'s necessary level of care decreased, she was moved to a less restrictive foster home. K.E.'s behavioral issues have resulted in the need to move her to RTCs for more specialized care and supervision.  Defendants deny the remaining factual allegations in this paragraph.

95.     Defendants admit that K.E.'s behavioral issues have resulted in numerous placement changes.  Defendants deny any remaining factual allegations in this paragraph.

96.     Defendants admit that K.E. has been placed in the Houston area, an area she prefers to her hometown.  Defendants are unable to admit or deny the other averments in this paragraph.

97.     Defendants admit that K.E. was in an RTC, juvenile detention or a psychiatric hospital from July 2008 through January 2011, at which time her level of care had decreased sufficiently to be placed in a foster home.  Defendants deny any remaining factual allegations in this paragraph.

98.     Deny.

99.     Deny.

100.    Defendants admit that K.E. has not been in her home community but note that K.E. has stated a preference for living in Houston.  Defendants admit that K.E. has complained of her current foster home placement and that she has stated several times that she wants to go back to Depelchin RTC.  Defendants deny any remaining factual allegations in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 14

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the facts as alleged in this paragraph.

102.    Defendants admit that the SAPCR court has not terminated the parental rights of K.E.'s mother; therefore, Defendants are unable to find her a permanent home elsewhere.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining facts alleged in this paragraph.

103.    There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

### **D.P.**

104.    Defendants admit that D.P. is from Lockhart, Texas.  D.P. came into care when she was six after her mother tested positive for cocaine at the birth of D.P.'s youngest sister.   Defendants deny that they failed to provide needed mental health evaluations or adequate medical care to D.P.  Defendants deny that D.P. was sexually abused in an inadequately-screened foster home.  Over Defendants' objections, the SAPCR court ordered that D.P. be placed with a relative who subsequently sexually abused D.P.  Defendants deny any remaining factual allegations in this paragraph.

105.    Admit.

106.    Defendants admit that D.P. was placed in an emergency shelter for temporary care until a foster home could be found for D.P. and her middle sister.  Defendants admit that the first foster home asked that D.P. be removed because of behavior issues.  Defendants admit D.P. was removed from the second foster home to be returned home pursuant to the SAPCR court's order.  Defendants deny any remaining factual allegations in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 15

107.    Defendants admit that D.P.'s siblings have been adopted by other families and that she has no contact with them.

108.    Defendants deny that DFPS returned D.P. to her mother without adequate assessment of her mother's ability to care for the children.  Defendants admit D.P. was removed from her mother around four months later.  Defendants admit that after D.P.'s mother's parental rights were terminated, D.P. and her sister were moved from their foster placement into an adoptive placement.  Defendants deny any remaining factual allegations in this paragraph.

109.    Defendants admit that while in her adoptive placement, D.P. was admitted to a psychiatric hospital after which she was placed in an RTC to meet her specialized needs. Defendants deny any remaining factual allegations in this paragraph.

110.    Defendants admit that D.P. was moved to a foster home as soon as her level of care decreased and she was ready for a less restrictive placement.  The placement disrupted when D.P. was arrested for assaulting a teacher at the school.  Defendants deny any remaining factual allegations in this paragraph.

111.    Defendants admit that D.P. was placed in various placements during the stated timeframe but deny that she was placed in emergency shelters in a manner contrary to Texas law.

112.    Defendants admit that there was a report of possible sexual abuse by a foster parent but that report was not substantiated.  Defendants deny any remaining factual allegations in this paragraph.

113.    Defendants admit that D.P. was placed in a kinship placement ordered by the SAPCR court over Defendants' objections and that D.P. was sexually abused while there.  Defendants deny that they failed to adequately supervise the placement.

114.    Defendants deny that D.P. was placed in a juvenile detention center at Defendants' direction.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

115.    Defendants admit the placements as alleged in this paragraph, but deny D.P. was prescribed or taking six psychotropic medicines concurrently when admitted to a psychiatric hospital.  Defendants deny any remaining factual allegations in this paragraph.

116.    Defendants deny that D.P. was sent to an RTC after being placed at an emergency shelter. Defendants deny any remaining factual allegations in this paragraph.

117.    Defendants admit that D.P. was hospitalized while staying at an RTC.  Defendants deny any remaining factual allegations in this paragraph.

118.    Defendants admit the placement but deny that D.P. ran away from a poorly supervised foster group home.  Defendants deny any remaining factual allegations in this paragraph.

119.    Deny.

120.    Deny.

121.    Defendant admits that D.P. does well scholastically, but lack knowledge or information sufficient to form a belief as to the truth that D.P. made the statement attributed to her in this paragraph.  Defendants deny any remaining factual allegations in this paragraph.

122.    Defendant admits that D.P. has had various placements during her time in care but have insufficient knowledge to admit or deny that D.P. made the statement attributed to her in this paragraph.

123.    Defendants deny that D.P.'s worker made the statement attributed to her.  Defendants admit that D.P.'s permanency goal is independent living.

124.    There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**T.C.**

125.    Defendants admit that T.C. came into care when he was eight after he and his family were discovered living under a pier on the beach in Corpus Christi, Texas.  Defendants deny that T.C. is "from Corpus." Defendants admit that T.C. has been moved to numerous placements most of which have been in Houston, Corpus Christi or in the Valley area.  Defendants admit that T.C.'s psychological and behavioral issues have resulted in his placement in residential treatment facilities and it has been difficult to find an adoptive home for him.  Defendants admit that T.C. was placed with his siblings in an adoptive placement and that this placement found his behavior too difficult and asked that he be removed.  Defendants deny any remaining factual allegations in this paragraph.

126.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual assertion contained in the fifth sentence in this paragraph.   Defendants admit the remaining factual averments in this paragraph.

127.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual assertion that T.C. was found to have been sexually abused.  Defendants admit that he and three other brothers came into care in April 2003.

128.    Defendants admit that T.C. was temporarily placed in a respite foster home when he initially came into care until a foster home could be found for him and his brothers.  Defendants admit that T.C. was placed with his brothers in a foster home but that, due to the extreme nature of his behaviors, he had to be placed in an RTC so his needs could be met and he could receive

round-the-clock supervision.   Defendants deny any remaining factual allegations in this paragraph.

129.   Defendants deny the factual averments in the first sentence but admit the remaining factual allegations in this paragraph.

130.   Defendants deny the factual averments in the first and second sentences of this paragraph. Defendants deny that T.C. was "left" in any placement.   Defendants admit the remaining factual averments in this paragraph.

131.   Defendants deny the factual averments in the second sentence of this paragraph. Defendants deny T.C. "was cycled" though any placements.   Defendants deny that any placement has been "far away from his home."   Defendants admit the remaining factual averments in this paragraph.

132.   Deny.

133.   Deny.

134.   Defendants admit that T.C.'s brothers were adopted together by a family in Corpus Christi, but deny the remaining factual averments in this paragraph.

135.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph.   Defendants admit the remaining factual allegations in this paragraph.

136.   Deny.

137.   Admit.

138.   Deny.

139.   Defendants admit that T.C. had not been adopted and deny the remaining factual averments in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 19

140.    There is no need to admit or deny this paragraph as it calls for a legal conclusion, otherwise denied.

**Named Plaintiffs, Collectively**

141.    Deny.

142.    Deny.

**B.      Next Friends**

143.    Whether Sarah R. Stukenberg is suited to represent M.D.'s best interests in this case is a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

144.    Whether Nancy Pofahl is suited to represent D.I.'s best interests in this case is a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

145.    Whether Carla B. Morrison is suited to represent Z.H.'s best interests in this case is a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

146.    Whether Javier E. Solis is suited to represent S.A.'s best interests in this case is a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

147.     Whether Jennifer Tally is suited to represent S.A.'s best interests in this case is a legal conclusion to which no response is required.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

148.     Whether Anna J. Ricker is suited to represent J.S.'s best interests in this case is a legal conclusion to which no response is required.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

149.     Whether John W. Cliff, Jr. is suited to represent K.E.'s best interests in this case is a legal conclusion to which no response is required.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

150.     Whether Karen J. Langsley is suited to represent D.P.'s best interests in this case is a legal conclusion to which no response is required.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

151.     Whether Paul Swacina is suited to represent T.C.'s best interests in this case is a legal conclusion to which no response is required.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments contained in this paragraph.

## C.     Defendants

152.     Defendants admit that Rick Perry is the Governor of Texas, that this suit is brought against him in his official capacity, and that Plaintiffs have provided his correct business address.

Governor Perry's constitutional and statutory authority is a legal conclusion to which no response is necessary. Any other remaining factual statements in this paragraph are denied.

153.    Defendants admit that Thomas Suehs is the Executive Commissioner of HHSC, is sued in his official capacity, and that Plaintiffs have provided his correct business address. Commissioner Suehs' statutory authority is a legal conclusion to which no response is necessary. Any other remaining factual statements in this paragraph are denied.

154.    Defendants admit that Anne Heiligenstein is the Commissioner of DFPS, is sued in her official capacity, and that Plaintiffs have provided her correct business address. Commissioner Heiligenstein's statutory authority is a legal conclusion to which no response is necessary. Any other remaining factual statements in this paragraph are denied.

155.    Deny.

156.    Deny.

157.    Deny.

158.    The question posed in (a) though (g) are conclusions to which no response is necessary. Any remaining factual averments in this paragraph are denied.

159.    The questions of law posed in (a) though (c) of this paragraph require no response. Any factual averments in this paragraph are denied.

160.    Deny.

161.    Defendants deny this paragraph.

162.    Admit (a) though (d) in this paragraph.

163.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

164.    Defendants deny this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 22

## FACTUAL ALLEGATIONS

**A.     The Structure of the Texas Foster Care System[1]**

165.     Defendants admit the averments in this paragraph.

166.     Defendants admit that when a child is removed from his family due to abuse or neglect, he is placed in substitute care under the temporary managing conservatorship of the State. Defendants admit that as conservator, it undertakes the statutory duties of ensuring the child's safety permanency, and well-being.  Defendants deny any remaining factual allegations in this paragraph.

167.     Defendants admit that during the period of TMC, DFPS is required to make reasonable efforts to reunify children with their families if safe and appropriate, but deny that "timeliness" is a factor in any efforts to legally free children for adoption or find other permanent placements for them.  Defendants admit that while a child is in the State's PMC, Texas law requires the appointment of an attorney to represent the child's expressed interests and a guardian *ad litem* to protect the child's best interests in the continuing state court proceeding affecting the parent-child relationship.

168.     Defendants deny that under Texas law, TMC lasts for one year, or at most eighteen months.  Defendants admit that after that time, if the child has not been reunited with his birth family or provided with some other permanent family, he enters the State's PMC.  Defendants deny that once a child enters the State's PMC, that initial legal proceeding is concluded.  The legal proceeding remains under the SAPCR court's continuing jurisdiction until the child is adopted or becomes an adult. Defendants admit that after entry of the final order, Texas state law does not mandate that the child continue to be represented as he was in TMC.  Defendants deny

---

[1] Every allegation in this section of Plaintiff's Original Complaint is set forth in either federal or state statute.  Those statutes speak for themselves and Defendants deny any allegation in this section that conflicts with or is inconsistent with those laws.

that a substantial number of children in the State's PMC have no independent adult obligated to represent their expressed or best interests in state court proceedings held twice a year to review DFPS actions.

169.    Defendants admit that for each child under the State's conservatorship, a DFPS caseworker is assigned.  Defendants admit that as conservator, the State is obligated to set and pursue permanency goals for each child, and admits that these tasks that are assigned to the DFPS caseworker.   Defendants admit that permanency goals may include the child's reunification with his family or permanent placement with a relative or other suitable individual, either through adoption or the award of PMC to that person.  Defendants admit that according to State policy and regulation, these goals are to be concurrently pursued until it proves inappropriate to return the child to his family.   Defendants admit that only if there is a compelling reason why one of these permanency goals is not in the child's best interest may DFPS set the goal of "another planned permanent living arrangement".   Defendants admit that DFPS's permanency goals for the child are reflected in a case plan, which must be revised as often as necessary to meet the child needs, but deny that revisions must be made to reflect changes in the case.   Defendants deny that DFPS must revise a child's case plan every six months.

170.    Defendants admit that as long as a child is in the State's conservatorship, the caseworker is required to develop and implement a service plan for each child.  Defendants admit that when a foster placement is administered directly by DFPS, the caseworker develops and with the court implements this service plan directly.  Defendants deny that most substitute care in Texas is provided by private entities and that such entities develop the child's service plan but admit that

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 24

those entities do develop a plan to provide services to a child consistent with permanency planning and permanency goals identified by DFPS.

171.    Defendants admit that private Child Placing Agencies (CPAs) are regulated by the Residential Child Care Licensing Division (RCCL) and that those CPAs, in turn, monitor the foster homes they verify.  Any constitutional or statutory duties of Defendants are legal questions to which no response is required.  Defendants deny any remaining allegations in this paragraph.

172.    Defendants admit that as conservator, the State is charged with placing children removed from their homes into appropriate settings that meet their specific, individualized needs. Defendants admit that some children in DFPS' conservatorship are placed with relatives pursuant to the Social Security Act, 42 U.S.C. § 471(a)(19), and  section 103 of the Fostering Connections to Success and Increasing Adoptions Act of 2008, 42 USC §671(a)(29).  The Texas Family Code recognizes this federal requirement at section 262.114(e). Defendants admit that DFPS' RCCL Division regulates other entities which provide placements for children in DFPS' conservatorship and that these entities are required to meet minimum standards of care.

173.    Defendants admit that these placements include:  emergency shelters; traditional foster family homes; Foster Group Homes; General Residential Operations; and Residential Treatment Centers which are required to have varying staff to child ratios.

174.    Deny.

175.    Defendants admit that this statement is contained in HHSC's strategic plan.

176.    Deny.

**B.    Defendants are Causing Harm and Risk of Harm to Plaintiff Children, Who are in the Permanent Managing Conservatorship of the State.**

177.    Defendants admit that children enter the state's PMC because the determination has been made that they cannot safely be returned to home and family.  Whether Defendants have a

constitutional and statutory obligation to ensure these children's safety, permanency, and well-being, is a legal conclusion to which no response is necessary.  Defendants deny the remaining factual averments in this paragraph.

> **1.     Defendants Frequently Move Plaintiff Children from Placement to Placement, Causing Them Harm.**

178.    Defendants deny this paragraph.

179.    Defendants admit that children and youth who have been removed from their homes have a high need for stability and continuity of care.  Accordingly, to the extent possible, DFPS avoids transferring children or youth from one placement to another, especially when a child or youth has been in a placement for an extended period.

180.    Defendants deny this paragraph.

181.    Defendants lack information or knowledge sufficient to form a belief as to the truth of the factual averments in this paragraph; however, Defendants use an "education portfolio" under a memorandum of understanding with the Texas Education Agency to minimize disruption of a child's education and that, under the federal Children's Bureau's CSFR, it is one of the highest ranking states on addressing and mitigating such disruption.

182.    Defendants admit that the Health and Human Services website indicates that 13,775 children in foster care in Texas received psychotropic medication.  Defendants deny the remaining factual averments in this paragraph.

183.    Defendants admit that the Texas Appleseed reported that children who in 2008 had been in care for more than three years had experienced an average of eleven placements.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the Texas Appleseed Report.  Defendants deny the remaining factual averments in this paragraph.

184.     Deny.

185.     Defendants admit the factual allegations in the last two sentences of this paragraph. Defendants deny the remaining factual averments in this paragraph.

186.     Defendants admit the factual averments in the first, second, and fourth sentences of this paragraph.  Defendants deny the remaining factual allegations in this paragraph.

187.     Deny.

   **2.     Defendants Make Inappropriate Use of Congregate Placements Harming Plaintiff Children**

188.     Deny.

189.     Deny.

190.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

191.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual allegations in this paragraph.

192.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

193.     Defendants admit the First Round CFSR results contained this quote.  Defendants are unable to verify Plaintiffs' recitation of statistics as to time spent in a shelter but would note that, if a placement starts in one fiscal year and ends in the next fiscal, then that placement is counted in each fiscal year.  DFPS policy and state regulations cap shelter stays for foster children at 30 days.  The 30-day cap can be waived in certain circumstances.  Defendants deny the remaining factual averments in this paragraph.

194.    Defendants deny the factual allegations in the first sentence but admit those in the second sentence.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

195.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

196.    Defendants deny the factual averments in the first sentence of this paragraph but admit those in the second and third paragraph.

197.    Defendants admit that General Residence Operations ("GROs") house thirteen or more children, but deny that GROs provide only residential care.  Defendants admit the remaining factual averments in this paragraph.

198.    Defendants admit the factual averments in the first sentence of this paragraph.  Defendants deny the remaining factual allegations in this paragraph.

199.    Deny.

200.    Deny.

201.    Deny.

202.    Deny.

203.    Deny.

   3.    **Defendants Utilize a Category of Congregate Foster Care Placements that is Particularly Harmful to Children**

204.    Deny.

205.    Deny.

206.    Deny.

207.    Deny.

208.    Deny.

209.    Deny.

210.    Deny.

211.    Deny.

212.    Deny.

**4.      Plaintiff Children Suffer Abuse and Neglect in State Custody**

213.    Defendants admit the factual averments in the first sentence of this paragraph. Defendants deny the remaining factual allegations in this paragraph.

214.    Defendants admit that the Houston Chronicle made the report as stated in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the statements made in the report.  Defendants deny any remaining factual averments in this paragraph.

215.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

216.    Defendants deny the factual allegations in the first sentence of this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

217.    Defendants deny the factual averments in the first and fourth sentences of this paragraph. Defendants admit the remaining factual allegations in this paragraph.

218.    Defendants admit the factual averments in the second sentence of this paragraph.  The remaining factual averments in this paragraph are denied.

219.    Defendants admit that in April 2008, two staff members allowed developmentally disabled residents at Daystar to fight one another.  Defendants deny that the staff members encouraged the fight or that the residents were rewarded with food.  Defendants admit that Daystar immediately reported the single incident to DFPS' RCCL Division and that Daystar

terminated the two offending employees.  Defendants admit that RCCL promptly investigated the incident and found reason to believe that neglectful supervision and physical abuse had occurred.  RCCL formally cited Daystar.  Defendants deny the remaining factual averments in this paragraph.

220.    Defendants admit that a male Daystar employee had an inappropriate relationship with a female resident from California who was not a child in DFPS's conservatorship.  Defendants are without knowledge or information sufficient to form as belief as to the truth of the allegation that the resident was mentally ill.  Defendants admit that the resident's mother contacted California law enforcement authorities about the incident.  RCCL thoroughly investigated the incident finding reason to believe that sexual abuse had occurred and issuing multiple formal citations.  Defendants deny any remaining factual averments in this paragraph.

221.    Defendants admit that DFPS suspended placements at Daystar on June 11, 2010 and assigned a special monitor on June 21, 2010.  Defendants deny that the suspension was triggered by any press coverage of the events detailed in paragraph 220.  Defendants admit that the monitor spent forty (40) hours a week at Daystar for a period of approximately three months.  Defendants deny any remaining factual averments in this paragraph.

222.    Defendants admit that, on November 1, 2010, RCCL placed Daystar on probation.  Defendants admit that a child in its conservatorship died of apparent asphyxiation after being restrained.  Defendants deny the remaining factual averments in this paragraph.

223.    Defendants deny that Daystar continued to receive reimbursements of state and federal funds for care and residential treatment services for 24 children in DFPS's conservatorship.  Defendants further admit that on January 7, 2011, RCCL notified Daystar of its intent to revoke

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 30

Daystar's license.  Defendants deny the remaining factual averments in this paragraph.  Daystar continued to receive funds for children placed by CPS until the end of 2010.

224.    Deny.

225.    Deny.

>    **5.      Plaintiff Children are Denied Necessary Services While in State Custody**

226.    Defendants admit the factual averments in the second sentence of this paragraph, but deny any remaining factual allegations in this paragraph.

227.    Deny.

228.    Deny.

229.    Defendants admit that Commissioner Heiligenstein has acknowledged an "imbalance in the geographic distribution of services and providers".  Defendants are without knowledge or information sufficient to form a belief as to the truth of the factual averments in the second and third sentences of this paragraph.  The remaining factual averments in this paragraph are denied.

230.    Deny.

231.    Defendants admit the factual averments contained in the second and third sentences of his paragraph.  The remaining factual allegations in this paragraph are denied.

232.    Deny.

233.    Deny.

234.    Deny.

>    **6.      Plaintiff Children are Frequently and Unnecessarily Separated From Their Siblings and Denied Visits with their Families**

235.    The statements contained in this paragraph are legal conclusions to which no response is necessary, otherwise denied.

236.    Admit.

237.    Defendants admit that 81.5% of siblings in DFPS's custody were placed together. Defendants deny the remaining factual averments in this paragraph.

238.    Deny.

239.    Deny.

240.    Deny.

241.    Deny.

     **7.      Defendants Harm Plaintiff Children by Leaving Them to Languish in Care Without a Permanent Family and Age Out of Foster Care Ill-Prepared for Independent Adult Life**

242.    Defendants lack information or knowledge sufficient to form a belief as to the truth of the contents of the Children's Commission 2010 comment.  Defendants deny the remaining factual allegations in this paragraph.

243.    This paragraph contains legal conclusions to which no response is required, otherwise deied.

244.    Defendants lack information or knowledge sufficient to form a belief as to the truth of the contents of the Children's Commission 2010 comment.  Defendants deny the remaining factual averments in this paragraph.

245.    Admit.

246.    Admit.

247.    Defendants deny the first sentence in this paragraph.  Defendants admit that Daystar was notified of Defendants' concerns.

248.    Deny.  There were no national permanency indicators in 2007.

249.    Deny.  There were no national permanency indicators in 2007.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 32

250.     Defendants admit that 1335 youths exited the state's PMC in FY 2008 by aging out, but deny that any youth languished in foster care.

251.     Deny.

252.     Defendants admit the Texas Appleseed's report contained statements similar to those contained in this paragraph, otherwise denied.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the Appleseed report.

253.     Defendants admit that the Midwest Evaluation of Adult Functioning of Former Foster Youth contains the statistics contained in this paragraph.  Defendants lack knowledge or information sufficient to form a belief as to the truth the remaining factual averments in this paragraph.

254.     Defendants admit that the 2001 study conducted in Texas by the Center for Public Policies Priorities reported the statistics contained in this paragraph.  Defendants lack knowledge or information sufficient to form a belief as to the accuracy or truth of the study's results.

255.     Defendants admit that the News 8 Austin report indicated that one fourth of all former foster children are homeless within a year of leaving care.  The report further indicated that statistics show that former foster children may end up incarcerated or on the streets.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the statements in the report.  Defendants deny the remaining factual averments in this paragraph.

256.     Defendants admit that Texas Appleseed reported this statement.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the statements in the report.

257.     Deny.

258.     Deny.

**C.**     **The Harms Suffered by Plaintiff Children Result from Defendants' Failure to Properly Manage the DFPS Foster Care System**

259.    Deny.

260.    Deny.

**1.**     **Defendants Mismanage the Texas Foster Care System by Failing to Maintain a Caseworker Staff of Sufficient Size and Capacity to Perform the Tasks Critical to Plaintiff Children's Safety, Permanency, And Well-Being**

261.    Deny.

262.    Deny.

263.    Defendants admit that the Texas Appleseed reported that in 2009 DFPS caseworkers were handling approximately 30 cases and an even greater number in larger urban areas although national standards called for between fifteen and seventeen cases per caseworker.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the Appleseed report.  The first sentence calls for a legal conclusion to which no response is required, otherwise denied.  Defendants deny the remaining factual averments in this paragraph.

264.    Defendants deny the factual allegations contained in this first sentence of this paragraph. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

265.    Deny.

266.    Defendants deny the first sentence in this paragraph but admit that the University of Houston study report contains the quote as stated in this paragraph.  Defendants are without knowledge or information sufficient to form a basis as the truth of the remaining factual averments in this paragraph.

267.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in this paragraph.

268.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual averments contained in this paragraph.

269.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual averments contained in this paragraph.

270.    Defendants admit that 2003 Program Improvement Plan contains the quotes as stated in this paragraph.

271.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in this paragraph.

272.    Defendants admit that a 2010 report contains the statements quoted in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.  Defendants deny the remaining factual averments in this paragraph.

273.    Defendants admit that a 2010 report contains the statements quoted in this paragraph. Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.   Defendants deny the remaining factual averments in this paragraph.

274.    Defendants admit that the Second Round CFSR made the findings and stakeholders made the comments set forth in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.  Defendants deny the remaining factual averments in this paragraph.

> **2.**    **Defendants Mismanage The Texas Foster Care System By Failing To Focus Resources On Permanency Planning For Plaintiff Children, Causing Them To Languish In Foster Care Until They Age Out**

275.    Admit.

276.    Defendants admit that a 2010 Texas Appleseed report make the finding quoted in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the Appleseed report.   Defendants deny the remaining factual averments in this paragraph.

277.    Deny.

278.    Deny.

279.    Deny.

280.    Defendants admit that a 2010 Children's Commission report contained the following quote:  "If a child has been in PMC with T[erminated] P[arental] R[ights] for more than two years the adoption plan has failed and should be revisited."  Defendants are without knowledge or information sufficient to form a belief as to the truth of this statement.

281.    Deny.

282.    The second sentence in this paragraph amounts to a legal conclusion to which no response is necessary, otherwise denied.  Defendants deny the remaining factual averments in this paragraph.

283.    Defendants admit that a 2010 Appleseed report contained the quote set forth in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the Appleseed report.   Defendants deny the remaining factual averments in this paragraph.

284.    Defendants admit that the Second Round CFSR made the findings as stated in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.

285.    Defendants admit the Adoption Review Committee and the Texas Appleseed reports contained the quotes as stated in this paragraph.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the reports.

> **3.      Defendants Mismanage the Texas Foster Care System by Failing to Create an Adequate Number and Array of Placements and Services, Subjecting Plaintiff Children to Unstable and Inappropriately Restrictive Placements, Far From Family And Community**

286.    Defendants admit the factual averments contained in the first sentence of this paragraph, but deny any remaining factual averments in this paragraph.

287.    Defendants admit that a September 2010 report contained the quote as stated in this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining factual averments in this paragraph.

288.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual averments contained in the last sentence of this paragraph.   Defendants deny the remaining factual averments in this paragraph.

289.    Defendants admit that Anne Heiligenstein made the statement quoted in this paragraph. Defendants deny the remaining factual averments in this paragraph.

290.    Deny.

291.    Defendants deny the factual averments in this paragraph given the number of factual inaccuracies contained in it.

292.    Defendants admit that Anne Heiligenstein made the statement quoted in this paragraph. Defendants deny the remaining factual averments in this paragraph.

293.    Defendants admit the factual averments contained in the third and fourth sentences of this paragraph.  Defendants deny the remaining factual averments in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 37

294.    Defendants admit the May 2010 Dallas Morning News reported the statements made in the second sentence of this paragraph.  Defendants admit that in 2010, 86% of Region 9's foster children were placed outside of their home counties and 62% were placed outside the region. Defendants deny the remaining factual averments in this paragraph.

295.    Defendants admit that as of March 31, 2010, 3,050 children in the state's PMC had been placed outside of their home counties or outside of their home DFPS region.  Defendants further admit that 1,433 (approximately 10%) of the children in the state's TMC were placed out of their home DFPS region.  Defendants deny the remaining factual averments in this paragraph.

296.    Defendants deny the factual averments in this first sentence of this paragraph. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations in this paragraph.

297.    Defendants admit that there are a significant number of RTCs in the Houston area.

298.    Defendants lack knowledge or information sufficient to form a belief as to the truth o the statements in this paragraph.

299.    Deny.

300.    Defendants admit that the Second Round CFSR contained the quotes and information as stated in the second, third and fourth sentences of this paragraph.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.  Defendants deny the remaining factual averments in this paragraph.

301.    Deny.

302.    Defendants are unable to admit or deny the statement purportedly made in the Adoption Review Committee report.  Defendants deny the remaining factual averments in this paragraph.

303.    Deny.

304.    Deny.

305.    Deny.  As the CFSR Round 2 final report noted:  "Because many changes have been made in the onsite CFSR process based on lessons learned during the first round and in response to feedback from the child welfare field, a State's performance in the second round of the CFSR is not directly comparable to its performance in the first round, particularly with regard to comparisons of data indicators or percentages regarding Strength and ANI ratings."  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions.

306.    Admit.

    **4.    Defendants Mismanage the Texas Foster Care System by Failing to Adequately Oversee Substitute Care, Placing Plaintiff Children at Risk of Harm**

307.    Defendants admit that children removed from their homes are placed in licensed and paid foster care.  Defendants further admit that children may also be placed in substitute care with relatives but deny that the relatives are unpaid.  Defendants admit the factual averments contained in the third sentence of this paragraph.

308.    Defendants deny that the vast majority of children in substitute care are served by private contractors.  Defendants admit the remaining factual averments in this paragraph.

309.    This paragraph contains non-factual statements to which no response is required, otherwise denied.

310.    This paragraph contains non-factual statements to which no response is required, otherwise denied.

311.    Defendants admit the 2008 study made the finding as stated in this paragraph.

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 39

a. **Defendants Fail to Ensure That Caseworkers Conduct Frequent and Quality Visits with Plaintiff Children**

312.    Defendants admit that DFPS policy and federal regulations require face-to-face monthly visits between a child and his or her primary or secondary caseworkers.   Defendants met the CFSR Round 2 Item 19 standard regarding caseworker visits.   The remaining statements in this paragraph are non-factual and require no response, otherwise denied.

313.    Deny.

314.    Deny.

315.    Deny.

316.    Deny.

317.    Defendants admit that in 2005, DFPS established a program under which "I See You" workers visit the children.   Defendants deny the remaining factual averments in this paragraph.

318.    Deny.

b. **For Children in Private Care, DFPS's Contract Management Arm Fails to Ensure that Children are Safe from Harm**

319.    Deny.

320.    Deny.

321.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual averments in this paragraph.

322.    Admit that in 2000 Texas State Auditor reported on Texas's administration of foster care contracts.   Admit that the Auditor in that report recommended the use of improved risk assessment tools for contract monitoring.   Defendants are without knowledge or information

sufficient to form a belief as to the truth of the statistics used in the report or the report's conclusions. Deny the remaining factual averments in this paragraph.

323.    Defendants admit that in April 2007, the State Auditor's Office issued a report, noting that the Residential Contracts Division had a smaller staff but handled more contract dollars than other contracting divisions in DFPS. Defendants deny that the Residential Contract Division handled more contracts than other contracting divisions. Defendants further admit the 2007 report found high turnover and an inexperienced workforce in the division. In Fiscal year 2010, there was *no employee turnover* in the division. Defendants deny the remaining factual averments in this paragraph.

324.    Deny.

325.    Deny.

326.    Deny.

327.    Deny.

328.    Defendants admit that, in 2009, contracts management division listed common findings made during monitoring of residential childcare contracts, including (a) though (k) as listed in this paragraph. Defendants deny any remaining factual averments in this paragraph.

329.    Deny.

330.    Defendants admit that a June 2010 letter notified Daystar that CCL investigations had raised "serious concern" for the "safety and well-being" of children placed at Daystar. Defendants further admit that contract termination, suspension, or removal of children from the facility would have been permissible under the contract. Defendants deny the remaining factual averments.

        **c.**      **For Children in Private Care, DFPS's Licensing Arm Fails to Provide Adequate Oversight to Ensure Plaintiff Children's Safety**

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 41

331.    Deny.

332.    Defendants admit that CCL is tasked with regularly inspecting CPAs, foster homes, and other licensed facilities and with investigating any allegations of abuse or neglect of children in licensed operations.  Defendants deny any remaining factual allegations in this paragraph.

333.    Defendants admit the Databook reported these statistics and that, in addition to the 14 corrective evaluations statewide and the placement of two facilities under corrective probation, RCCL took many other actions pursuant to its regulatory authority including but not limited to increasing the frequency of its monitoring, issuing citations for violations of minimum standards of care, requiring facility to enter into plans of action to correct deficiencies.

334.    Deny.

335.    Deny.

336.    Defendants deny that the "deficiencies are not new."  Defendants admit the remaining factual averments in this paragraph.

337.    Deny.

338.    Defendants admit that the Texas Tribune and Houston Chronicle reported the statements contained in this paragraph.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the statements in the reports.

339.    Admit.

340.    Defendants admit that foster homes that have been shut down by one CPA or which voluntarily leave one CPA may be able to obtain verification from another CPA and accept new placements.  Defendants deny any remaining factual averments in this paragraph.

341.    Deny.

342.    Deny.

343.    Defendants admit that in October 2010, the operator of a foster group home in Elkhart pleaded guilty to sexually abusing, over the course of thirteen years, as many as nine of the children who DFPS had placed in his care.   Defendants further admit that CCL previously investigated his operation on at least three occasions, but ruled out the abuse allegations each time because the children denied they were abused.   Defendants admit that the operator's adopted children were returned in compliance with a court order, but deny that any additional children were placed in the home.   Defendants admit that DFPS reinvestigated the abuse allegations and issued a report noting "overwhelming evidence" of abuse.

344.    Defendants admit that numerous regulatory deficiencies documented at the Daystar facility in 2008 and 2009 included at least one improper use of emergency restraint and failure to properly document a staff worker's training in the use of such restraints.   Defendants deny any remaining factual allegations in this paragraph.

345.    Deny.


## COUNT I

(Substantive Due Process under the United States Constitution)
(Asserted by all Named Plaintiffs and Plaintiff Children)

346.    This paragraph contains no factual allegations, otherwise denied.

347.    This paragraph contains solely legal conclusions to which no response is required, otherwise denied.

348.    Deny.

349.    Deny.

350.    This paragraph contains solely legal conclusions to which no response is required, otherwise denied.

## COUNT II

(First, Ninth, and Fourteenth Amendments to the United States Constitution)
(Asserted by all named Plaintiffs and Plaintiff Children)

351.    This paragraph contains no factual allegations, otherwise denied.

352.    Deny.

## COUNT III

(Procedural Due Process)
(Asserted by all Named Plaintiffs and Plaintiff Children)

353.    This paragraph contains no factual allegations, otherwise denied

354.    Deny.

## PRAYER FOR RELIEF

355.    Defendants deny that Plaintiffs are entitled to any of the relief they seek.

## DEFENDANTS' PRAYER FOR RELIEF

Defendants, Rick Perry, Governor of Texas, Thomas Seuhs, Commissioner of the Texas Health and Human Services Commission, and Anne Heiligenstein, Commissioner of the Department of Family and Protective Services, in their official capacities, respectfully request the Court to deny Plaintiffs the relief they seek, and enter a take nothing judgment in Defendants' favor.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

_James "Beau" Eccles_
JAMES "BEAU" ECCLES
Attorney-in-Charge
Texas Bar No. 00793668
Southern District ID:  310917

ANGELA V. COLMENERO
Texas Bar No. 24048399
Southern District ID 1002881

SHELLEY NIETO DAHLBERG
Texas Bar No. 24012491
Southern District ID  38127

DARREN G. GIBSON
Texas Bar No. 24068846
Southern District ID 1041236

DAVID G. HALPERN
Texas Bar No. 00790812
Southern District ID 18301

MISHELL B. KNEELAND
Texas Bar No. 24038256
Southern District ID: 313250

Assistant Attorneys General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been sent by electronic service on May 16, 2011 to:

J.A. "Tony" Canales
Hector Canales
Patricia C. Bell
CANALES & SIMONSON, P.C.
2601 Morgan Avenue
Corpus Christi, Texas 78467-5624

Barry F. McNeil
David Dodds
R. Thaddeus Behrens
Amelia J. Cardenas
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

R. Paul Yetter
Dori K. Goldman
Christopher D. Porter
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010

Marcia Robinson Lowry
Stephen A. Dixon
Olivia Sohmer
Jessica Polansky
Patrick Almonrode
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, New York 10001


  *James "Beau" Eccles*  
**JAMES "BEAU" ECCLES**
Assistant Attorney General

*Defendants' Orig. Answer*
Cause No. 2:11-CV00084

Page 47