UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D.; bnf STUKENBERG, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-11-84 |
| | § | |
| RICK PERRY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

On this day came on to be considered Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.  (D.E. 15.)  For the reasons stated herein, Plaintiffs' Motion is hereby GRANTED.

## I.      **Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as Plaintiffs bring claims under 42 U.S.C. § 1983.  (D.E. 1 at 9.)

## II.      **Factual and Procedural Background**

Plaintiffs M.D., D.I., Z.H., S.A., A.M., J.S., K.E., D.P., and T.C. are minor children in the custody of the Permanent Managing Conservatorship ("PMC") of the Texas Department of Family and Protective Services ("DFPS").  Through their next friends, Plaintiffs filed this action in this Court on March 29, 2011.  (D.E. 1.)[1]  In essence, Plaintiffs complain that children within PMC custody are subjected to a variety of harms (such as repeated placements, abuse, and neglect) due to certain deficiencies in the Texas foster care system.  They claim that they "were brought into state custody because they

---

[1] Plaintiffs' next friends are Sarah R. Stukenberg (M.D.), Nancy G. Pofahl (D.I.), Carla B. Morrison (Z.H.), Javier E. Solis (S.A.), Jennifer Talley (A.M.), Anna J. Ricker (J.S.), John W. Cliff, Jr. (K.E.), Karen J. Langsley (D.P.), and Paul Swacina (T.C.).  The Court approved these next friends at the initial pretrial conference held on May 26, 2011.  (D.E. 48.)

were abused and neglected at home, but then are left to languish for years, too many of them suffering further abuse and neglect while the state does little to seek and secure permanent homes for them."   Plaintiffs claim violations of substantive and procedural due process, along with certain rights of familial association, derived from the First, Ninth, and Fourteenth Amendments to the U.S. Constitution, and seek declaratory and injunctive relief on behalf of a putative class defined as "all children who are now and all those who will be in the Permanent Managing Conservatorship of the Texas Department of Family and Protective Services."  (D.E. 1 at 83-85; D.E. 15 at 7.)

Approximately 12,000 children are in Texas's PMC.  (D.E. 1.)  In Texas, children who cannot remain safely at home are taken into DFPS custody and placed in the state's Temporary Managing Conservatorship ("TMC").  While in TMC, the state has one year (which may be extended to 18 months) in which to return a child to his or her home, or to place him or her with a relative or adoptive family.  Tex. Fam. Code § 263.401(a), (b). Those who remain in the system after the time period expires are placed in the state's PMC, which is responsible for the children's safety, permanency, and well-being.  The details of each Plaintiff Child's experience in PMC are discussed in the Complaint and in Plaintiffs' Motion, as well as the voluminous exhibits that Defendants have submitted with their response.  (D.E. 15 at 9-12; D.E. 30, Exh. A-I.)

On April 5, 2011, Plaintiffs filed their Motion for Class Certification and Appointment of Class Counsel.  (D.E. 15.)  Defendants responded on May 16, 2011, and Plaintiffs submitted a Reply on May 24, 2011.  (D.E. 30; D.E. 44.)[2]

---

[2] Plaintiffs' Motion for Leave to File Reply is GRANTED.  (D.E. 44.)

## III.  Discussion

### A.  Background

Federal class actions are governed by Federal Rule of Civil Procedure 23.  The Supreme Court requires district courts to conduct a "rigorous analysis of Rule 23 prerequisites," taking a "close look" at the parties' claims and evidence in making [a] Rule 23 decision."  Unger v. Amedisys Inc., 401 F.3d 316, 320–21 (5th Cir. 2005) (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)).  It is well established that "the party seeking certification . . . bears the burden of establishing that the requirements of Rule 23 have been met."  Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir. 2003) (citing O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 737–38 (5th Cir. 2003)).  Ultimately, "[t]he decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23."  Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996); see Benavides v. Chicago Title Ins. Co., __ F.3d __, 2011 WL 1107009, at *3 (5th Cir. Mar. 23, 2011).

Rule 23(a) provides four prerequisites to a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 606–08 & nn. 8, 9, 11, 13, (1997); see Casa Orlando Apts., Ltd. v. Fed. Nat'l Mortg. Ass'n, 624 F.3d 185, 190 (5th Cir. 2010).  In addition, a class may be certified only if it fits within one of the three categories outlined in Rule 23(b).  Casa Orlando Apts., Ltd., 624 F.3d at 190.  Relevant here, Rule 23(b)(2) provides,

"[a] class action may be maintained if Rule 23(a) is satisfied and if: . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Under Rule 23(c)(1)(A), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  The rules also provide that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  Fed. R. Civ. P. 23(c)(1)(B). Notice to the class may be issued after certification under Rule 23(b)(2).  Fed. R. Civ. P. 23(c)(2)(A).

### B.    Application

Plaintiffs claim that they satisfy the four requirements of Rule 23(a), and fit easily within Rule 23(b)(2).  Defendants disagree.  In essence, they contend that because each child is unique, and has a unique experience in the DFPS system, the proposed class cannot possibly satisfy the typicality or commonality requirements of Rule 23(a).  In this regard, they also contend that neither the named Plaintiffs nor their next friends will adequately represent the interests of the proposed class, as they have different goals and interests than the proposed class members and the next friends have little incentive to direct the litigation in a way that advances the best interests of the proposed class members as a whole (as opposed to their own individual interests).  Finally, Defendants argue that Plaintiffs have failed to show that they satisfy Rule 23(b)(2), because the

requested class-wide injunctive relief would not be appropriate in light of the insufficiently cohesive class.  (D.E. 30.)

The Court first considers Plaintiffs' proposed class definition, and then evaluates each factor in turn.

### 1.        Proposed Class Definition

Before considering the factors under Rule 23(a), a court must evaluate the proposed class definition.  Plaintiffs proposed class definition is as follows: "All children who are now and all those who will be in the Permanent Managing Conservatorship of the Texas Department of Family and Protective Services."  (D.E. 15 at 1.)

As the Fifth Circuit has explained, "the class sought to be represented must be adequately defined and clearly ascertainable." DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970); see John v. Nat'l Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representatives is an implied prerequisite of Federal Rule of Civil Procedure 23.") (citing DeBremaecker).  A "precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice." In re Monumental Life Ins. Co., 365 F.3d 408, 413 (5th Cir. 2004).

Defendants argue that the "defined class is overly broad because it includes members whose underlying circumstances do not relate to the claims pleaded by the class representatives, and the broadly defined class includes members who lack standing to bring the claims alleged.  A review of the injunctive relief requested by Plaintiffs reveals that it is meant to redress alleged injuries suffered by only certain members of the proposed class, such as those children who have been in substitute care for a lengthy time

and/or have had numerous placements outside the familial home." (D.E. 30 at 17.)  The proposed class would include many members whose circumstances differ greatly from those of the class representatives, in terms of placements or supervision.   Because of this diversity, Defendants argue, Plaintiffs cannot demonstrate that all of the members of the broadly defined class have standing to bring the claims at issue in this action.  (D.E. 30 at 18.)

The Court finds that the proposed class definition is sufficient.  While it is beyond dispute that each child is unique, and no two children will have the same experience while in the PMC, this does not preclude Plaintiffs' class definition. Defendants contend that Plaintiffs' requests for injunctive relief demonstrate that the suit is meant "to redress alleged injuries suffered by only certain members of the proposed class." (D.E. 30 at 17.) Not so.  Most of the injunctive relief focuses on reform within the DFPS system, not dependent upon any particular child.   For example, Plaintiffs request a permanent injunction "[r]equiring Defendants to ensure that all children in the plaintiff class are assigned DFPS workers whose overall caseloads do not exceed the caseload standards established by the Child Welfare League of America and the Council on Accreditation," or "[r]equiring that all substitute care placements be licensed or verified according to state law," or "[p]rohibiting Defendants from placing Plaintiff Children in foster homes, foster group homes, emergency shelters, group residential operations, or residential treatment centers that do not meet the standards for such homes or facilities set by the Child Welfare League of America and the Council on Accreditation," or "[r]equiring Defendants to ensure that their practices and procedures for monitoring and oversight of privately operated placement facilities protect the safety of Plaintiff Children." (D.E. 1 at

86.)  These requests for relief focus upon improvements to the system as a whole, which would have an impact on all class members, albeit in different ways.

While certain types of relief, such as those requesting reforms for the way in which Defendants deal with "all class members who have been in the PMC of the state for more than two years," or "all class members who have had more than four placements during their most recent placement episode," (D.E. 1 at 86) would appear to be targeted at a more specific group of class members, the mere fact that some injunctive relief may not immediately apply to all class members is not fatal to the class definition.  Certainly, the majority of injunctive relief would seek to improve the system as a whole, to the benefit of all class members.  Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 63 (3d Cir. 1994) ("While it is true that not all of the orders issued will immediately benefit every plaintiff, every plaintiff will benefit from relief designed to assure [Philadelphia Department of Human Services ("DHS")] compliance with the applicable standards.").).  Moreover, the mere fact that certain future members of the putative class are not yet ascertainable does not cut against class certification.  Rather, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." Pederson v. Louisiana State Univ., 213 F.3d 858, 868, n.11 (5th Cir. 2000).

While courts may find a class definition overly broad where the putative class "contains members lacking Article III standing," or where the "class encompasse[s] persons who have not suffered any injury," Allen v. Holiday Universal, 249 F.R.D. 166, 171 (E.D. Pa. 2008), the Court does not find this concern present here.  The class action allegations, as well as the relief sought, relate to the PMC system as a whole.  Based upon the allegations, all class members are injured simply due to their presence in that system.

Certainly each class member may be injured in a different way (and some more substantially than others), but all have an injury.  Class definitions similar to that proposed here have been approved by other courts.  See Dwayne B. v. Grandholm, No. 06-13548 (E.D. Mich. Feb. 15, 2007) (approving class defined as "all children who are now or will be in the foster care custody of Michigan's Department of Human Services in in-home or out-of-home placements") (available at D.E. 15-2); Olivia Y. v. Barbour, No. 3:04-cv-251LN (S.D. Miss. Mar. 11, 2005) (approving class defined as "all children who are or will be in the legal and/or physical custody of [the Mississippi Division of Family and Children's Services ("DFCS")].").

Having determined that Plaintiffs' proposed class definition is proper, the Court next turns to the factors under Rule 23(a).

### 2.      Rule 23(a) Factors

#### a.      Numerosity (Rule 23(a)(1))

The numerosity factor requires Plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'"  James v. City of Dallas, Tex., 254 F.3d 551, 570 (5th Cir. 2001).  There is no doubt that a class of approximately 12,000 children in the Texas PMC satisfies the numerosity element.  See, e.g., James, 254 F.3d at 570 (finding 100 potential class members to satisfy the numerosity requirement); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624-25 (5th Cir. 1999) ("[T]he size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement."); Zeidman v. J. Ray

McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981) ("[C]lasses with as few as twenty-five or thirty members have been certified by some courts.").  Moreover, it is also clear that joinder is "impracticable," because the number of Plaintiff children change over time, as new children enter the PMC and others leave.  (D.E. 15 at 16.)  Defendants concede this element.  (D.E. 30 at 18.)  The numerosity element is easily satisfied.

### b.        Commonality (Rule 23(a)(2))

The commonality factor requires the Plaintiffs to demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The test for commonality is not demanding."  James, 254 F.3d at 570 (citing Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999); Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993)).  As the Fifth Circuit has explained, "[a]ll that is required for each class is that there is **one common question of law or fact**: 'The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  254 F.3d at 570 (emphasis added); see Doiron v. Conseco Health Ins. Co., 279 Fed. Appx. 313, 316 (5th Cir. 2008) (citing James).  That "some of the plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality."  James, 254 F.3d at 570.

Plaintiffs argue that the proposed class meets the commonality requirement "because Named Plaintiffs challenge system-wide failures in the way that DFPS treats children in the state's PMC, and they do not seek redress for individual grievances." (D.E. 15 at 17.)  They state that DFPS's failures raise numerous questions of fact

common to all class members, mainly related to Defendants' management of the state system.  (D.E. 15 at 18-19.)  They also state that there are a number of questions of law common to the entire Class, such as whether Defendants' actions violate Plaintiff Children's procedural and substantive due process rights, and their right to family association.  (D.E. 15 at 19.)  Defendants respond that there "are no common questions of fact because each child's needs, entry into PMC, particular placements by DFPS, and movement within the system differ dramatically," and Plaintiffs cannot "advance a discrete question of law."  (D.E. 30 at 19.)

Defendants argue at length that each child's placement "is specifically tailored to meet the child's needs, behavior, risks, age, placement history, and permanency goal," and placements change depending on circumstances.   For example, each named Plaintiff was removed from his or her home for different reasons (D.E. 30 at 20-22), the named Plaintiffs have different permanency goals, parental rights to the children have not all been terminated (D.E. 30 at 22-23), the named Plaintiffs have different placement histories (D.E. 30 at 23-25), different medical diagnoses and behavioral problems (D.E. 30 at 25-26) and have different levels of DFPS services (D.E. 30 at 26).  Due to these unique circumstances, Defendants argue that commonality is lacking, and assuming it to exist would deny children who come before the courts the individualized review to which they are entitled.  (D.E. 30 at 27.)

It should come as no surprise that the individual circumstances of each named Plaintiff (or each putative class member) is unique.  No two children or situations are exactly alike.  Plaintiffs' common questions of fact, however, relate not to the individual story of each child, but rather the alleged shortcomings of the DFPS system.   While it

may be true that each Plaintiff would experience those shortcomings in a different way, depending on their own particular backgrounds, these alleged deficiencies would exist for all those in the system.  All class members are within the same system and subject to the same alleged deficiencies in that system.  To require more for the "common question" analysis would run afoul of the Fifth Circuit's dictate that "[t]he test for commonality is not demanding," and that merely having "different claims, or claims that may require some individualized analysis, is not fatal to commonality." James, 254 F.3d at 570.   The common questions of fact at issue here include (1) whether Defendants failed to maintain a caseworker staff of sufficient size and capacity to perform properly, (2) whether Defendants failed to provide sufficient numbers and types of foster care placements necessary to the Plaintiffs' needs, (3) whether Defendants provided sufficient monitoring and oversight to prevent abuse while in state custody, and (4) whether Defendants' actions in general caused harm or risk of harm to Plaintiffs.

To the extent that factual distinctions between Plaintiffs exist, the Supreme Court has recognized that such factual differences do not prevent class action certification when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." Califano v. Yamasaki, 442 U.S. 682, 701 (1979).  Relying on Califano, the Third Circuit in Baby Neal for and by Kanter v. Casey, rejected the same argument Defendants now advance here.   The court held, "[t]o the extent that the defendants assert that commonality requirements cannot be met in this case because of the individualized circumstances of the children, their argument has been squarely rejected by the Supreme Court . . . ." 43 F.3d 48, 57 (3d Cir. 1994).  The court further explained, "class members can assert . . . a single common complaint even if they have

not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." Id. at 56. Moreover, it noted that "[Rule 23] (b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." Id. at 57. The Second and Tenth Circuits have come to similar conclusions. See Marisol A. v. Guiliani, 126 F.3d 372, 377 (2d Cir. 1997) (affirming class certification and stating, "[t]he plaintiffs allege that their injuries derive from a unitary course of conduct by a single system, and the district court agreed. At this stage of the litigation, we see no basis for finding that the district court abused its discretion in this regard."); D.G. ex rel Stricklin v. Devaughn, 594 F.3d 1188, 1196 (10th Cir. 2010) (see further discussion below). District courts have likewise rejected arguments that individualized experiences in state foster care custody preclude a finding of commonality. See, e.g., Olivia Y., No. 3:04-CV-251LN, at 6 ("[E]ven though each plaintiff and each proposed class member may not yet have suffered the same type or degree of harm (though some surely have), because it appears that defendants' alleged acts and omissions pose a significant risk of similar harm to all (or at least the requisite 'significant number' of) children in DHS custody, the court concludes that the requirements of commonality and typicality are satisfied.") (see D.E. 15-1); Dwayne B., No. 06-13548, at 5-7 ("A few of the questions of fact common to all Class members include whether Defendants failed to provide Plaintiff Children with (1) safe, appropriate and stable foster care placements as required by law and reasonable professional standards, (2) services necessary to keep them safe and

properly cared for . . . (3) timely and appropriate services necessary to ensure that they are either safety reunited with their families or promptly freed for adoption . . . .").

The Court recognizes that the Tenth Circuit in J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1989) came to a different conclusion.  In that case, the panel found commonality lacking, and explained, "[w]e refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements. . . .  We refuse to hold, as a matter of law, that *any* allegation of a systematic violation of various laws automatically meets Rule 23(a)(2).";  Carson P. ex rel. Foreman v. Heineman, 240 F.R.D. 456 (D. Neb. 2007) (citing J.B.).   Nevertheless, as noted above, another panel of the Tenth Circuit, in D.G., sided with the Second and Third Circuits in finding commonality. There, "[n]ine Oklahoma foster children, acting through their next friends, filed suit under 42 U.S.C. § 1983 against members of the Oklahoma Commission for Human Services and the Director of the Oklahoma Department of Human Services [OKDHS] in their official capacities, seeking declaratory and injunctive relief."   594 F.3d at 1192. The "Named Plaintiffs sought certification of a class of all children who are or will be in the legal custody of OKDHS due to a report or suspicion of abuse or neglect or who are or will be adjudicated deprived due to abuse or neglect - approximately 10,000 children."

Id.  The Court found commonality satisfied, explaining:

> Named Plaintiffs presented more than conclusory statements that OKDHS's agency-wide monitoring policies and practices, or lack thereof, create a risk of harm shared by the entire class. **All class members, by virtue of being in OKDHS's foster care, are subject to the purportedly faulty monitoring policies of OKDHS, regardless of their individual differences; therefore, all members of the class are allegedly exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices.** Though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct

allegedly poses a risk of impermissible harm to all children in OKDHS custody.

Id. at 1196 (emphasis added). Notably, the D.G. court distinguished the earlier J.B. decision, explaining, "[t]he named plaintiffs in J.B. alleged multiple state agencies violated their rights; whereas, here Named Plaintiffs only allege one state agency and its policies violated their rights. Second, the class of plaintiffs in J.B. was far broader. The proposed class consisted of all children, custodial and non-custodial (those at risk of being taken into state custody), who had any form of developmental or mental disability." Id. at 1197. The case before the Court is far closer to D.G. than it is to J.B.[3]

In light of the decisions of three Circuit Courts of Appeal (in Baby Neal, Marisol, and D.G.), each of which have found commonality in cases such as the one before the Court, and the lack of any controlling precedent to the contrary in this Circuit, the Court concludes that there are sufficient common questions of fact to satisfy Rule 23(a)(2).[4]

While Plaintiffs do not also need common questions of law to satisfy the commonality requirement, such common questions exist. Defendants, again relying upon the Tenth Circuit's decision in J.B., argue that no common legal questions exist, and that Plaintiffs have succeeded only in attempting to "broadly conflate a variety of claims to establish commonality via an allegation of systemic failures." (D.E. 30 at 31-32 (citing

---

[3] While the D.G. class definition limited class members to those in foster custody "due to a report or suspicion of abuse or neglect," and indeed Plaintiffs here state that they "are prepared to stipulate to a class definition specifying that these children entered DFPS custody due to reports of abuse or neglect," (D.E. 44-2 at 9 n.2) the Court does not find this limitation necessary. Regardless of how a child enters DFPS custody, he or she is subject to the same system, with the same alleged deficiencies that are the subject matter of this lawsuit.

[4] The leading decision in this area, Baby Neal, has in fact been cited favorably by several courts in this Circuit, including this one. In re Lease Oil Antitrust Litig., 186 F.R.D. 403, 421 (S.D. Tex. 1999) (Jack, J.); In re Enron Corp. Sec., Derivative & ERISA Litig., 2004 WL 405886, at *25 (S.D. Tex. Feb. 25, 2004); City of San Antonio v. Hotels.com, 2008 WL 2486043, at *6 ("Even relatively pronounced factual differences between the individual claims will not defeat typicality as long as the claims are woven from the same legal fabric and arise from the same event, practice or course of conduct."). The J.B. decision, in contrast, does not appear to have been cited by any court within this Circuit, and it has received little attention anywhere outside the Tenth Circuit.

J.B.).)  In the alternative, they argue that any common legal issues would be dependent on individual factual determinations, which would be different for each class member. (D.E. 30 at 32.)

    The Court rejects Defendants' arguments.  As the Third Circuit explained in Baby Neal, "[i]nsofar as the children challenge the scheme for the provision of child welfare services, their claims share a common legal basis."  Baby Neal, 43 F.3d at 61.  Further, "[t]he differing degree and nature of the plaintiffs' injuries also do not preclude a finding of commonality. . . . [T]he putative class members in this case share the common legal claim that DHS's systemic deficiencies result in widespread violations of their statutory and constitutional rights, irrespective of their varying individual needs and complaints. . . . [T]he children here challenge DHS's conduct, which is generally applicable to them. Also, . . . it does not matter here that the children suffer in varying ways from the DHS's violation of its statutory mandates."  43 F.3d at 61 (citing Califano).  District courts have also found common questions of law in analogous cases.  See Olivia Y., No. 3:04-CV-251LN at 6 ("[T]he court . . . is persuaded that plaintiffs have sufficiently identified issues common to all or most of the proposed class members.  These include . . . the legal questions whether defendants' actions and inactions have violated the substantive due process rights of children in DHS custody to be safe from harm while in state custody . . ."); Dwayne B., No. 06-13548 at 6 ("A few of the questions of law common to all Class members include whether Defendants' actions and inactions violate Plaintiff Children's (1) right to be free from harm as guarded under the Substantive Due Process Clause of the Fourteenth Amendment, . . . (3) rights guaranteed under the First, Ninth, and Fourteenth Amendments, (4) rights to procedural due process . . . .").  The Court is

persuaded by the reasoning in <u>Baby Neal</u> and the district court opinions cited above.  It therefore finds common questions of law, based upon Plaintiffs' claims of constitutional violations, namely substantive and procedural due process, along with associational rights.

In sum, the Court concludes that there exist common questions of both law and fact, necessary to satisfy Rule 23(a)(2).

### c.    Typicality (Rule 23(a)(3))

Under Rule 23(a)(3), the moving party must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "Like commonality, the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.   Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  **If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality**."   <u>James</u>, 254 F.3d at 571 (citations omitted; emphasis added).   The Supreme Court has explained, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   <u>Gen. Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157 n.13 (1982).

As with commonality, Plaintiffs argue that they "have had similar harmful experiences while in the state's custody," which are "a direct result of the systemic failings alleged in the Complaint." (D.E. 15 at 21.)   Plaintiff lists examples of this harm, such as instability in placements, unnecessary placements in congregate care, abuse, deprivation of necessary mental health or educational services, and separation from siblings. (D.E. 15 at 22-23.)   All of the claims arise from the same factual and legal foundations as do the claims of other class members, namely "the alleged failures of the state's foster care system," and liability for these failures are premised on the same legal grounds. (D.E. 15 at 23.)   Defendants' argument in response mirrors that made with respect to commonality, focusing on the unique circumstances of each child.   For example, Defendants note that while named Plaintiffs complain about placement in congregate care, numerous placements while in PMC, or abuse, this is by no means typical. The same is true of unnecessary hospitalizations in psychiatric facilities, or separation from siblings while in custody. (D.E. 30 at 32-35.)   Thus, "the experiences of the named Plaintiffs are not typical of the experiences of the majority of other children in the PMC," Defendants argue. (D.E. 30 at 35.)

After considering the arguments, the Court here finds that typicality is satisfied, essentially for the same reasons as stated with respect to commonality.   Plaintiff's claims all arise from the same system and share the same legal theory, even if their individual injuries may differ.   As the Third Circuit explained in <u>Baby Neal</u>, "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement **irrespective of the varying fact patterns underlying the individual claims**.   Actions requesting declaratory and injunctive relief

to remedy conduct directed at the class clearly fit this mold."  43 F.3d at 58 (citations omitted; emphasis added); see In re Lease Oil Antitrust Litig., 186 F.R.D. 403, 421 (S.D. Tex. 1999) (Jack, J.) (citing Baby Neal).  Further, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. . . .  Indeed, **even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories**." 43 F.3d at 58.  (emphasis added).  Therefore, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."  Id.; see, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig., 2004 WL 405886, at *25 (S.D. Tex. Feb. 25, 2004) (citing Baby Neal); City of San Antonio v. Hotels.com, 2008 WL 2486043, at *6 ("Even relatively pronounced factual differences between the individual claims will not defeat typicality as long as the claims are woven from the same legal fabric and arise from the same event, practice or course of conduct.") (citing Baby Neal).  Likewise, the Tenth Circuit in D.G. reasoned, "[t]he harm and threat of harm suffered by the Named Plaintiffs as a result of OKDHS's allegedly deficient monitoring practices is typical of the harm and threat of harm suffered by all children in the class because all foster children are subject to OKDHS's challenged, agency-wide monitoring policies. Additionally, Named Plaintiffs allege OKDHS's monitoring policies violate their substantive due process rights to be free from harm while in state custody, the same legal theory that underlies class members' corresponding claims."  D.G., 594 F.3d at 1199.  District courts have similarly rejected arguments against typicality that

have focused on the varying facts of each individual child's experiences in foster care. See Connor B. ex rel. Vigurs v. Patrick, __ F.R.D. __, 2011 WL 693223, at *7 (D. Mass. 2011) ("[T]he fact that the harms alleged by named Plaintiffs may differ in some respects from those suffered by unnamed Plaintiffs does not undermine typicality"); Dwayne B., No. 06-13548 at 8 (D.E. 15-2) (finding typicality and explaining, "Defendants assert that 'the vast majority of the putative class receives appropriate services, treatment, and placement.'  This argument ignores that Plaintiff Children's common theme of attacking DHS's systemwide failure to comply with its legal mandates is equally central to the claims of the named plaintiffs as it is to the claims of the absent class members."); Olivia Y., 3:04-CV-251LN at 7 (D.E. 15-1) (finding typicality satisfied "because it appears that defendants' alleged acts and omissions pose a significant risk of similar harm to all (or at least the requisite 'significant number' of) children in DHS custody").

Here, Plaintiffs allege to have had harmful experiences while in PMC custody, due to various systemic failures.  While the specific nature of these harmful experiences may vary, each experience is allegedly due to deficiencies in the DFPS system.  For example, Plaintiffs M.D., S.A., J.S., K.E., D.P. and T.C. have been moved to multiple placements and have been placed hundreds of miles from their home communities.  (D.E. 1 ¶¶ 23, 57, 59, 61, 89, 95-96, 100, 104, 108, 111, 122, 125, 128-31, 134.)  Several have also been placed in so-called congregate care, which should normally only be a placement of last resort.  (D.E. 1 ¶¶ 24-25, 27, 47-48, 51-53, 59-62, 75-76, 83-84, 94-96, 109, 11, 117-118, 125, 128-133.)  Abuse in state custody is also reported.  (D.E. 1 ¶¶ 38, 113.)   Z.H., A.M., and D.P. have been placed far away from their respective siblings, in violation of state policy.  (D.E. 1 ¶¶  46, 70, 107.)  As a final example, several Plaintiffs,

including S.A., A.M., K.E., D.P. and T.C. have remained in state custody for at least seven years, and are likely to leave only by aging out.  (D.E. 1 ¶¶ 57, 68, 93, 104, 125.)

In sum, the factual differences between the named Plaintiffs or other proposed class members are not sufficient to demonstrate a lack of typicality.  As Plaintiffs themselves put it, "their claims arise from the same factual and legal foundations as do the claims of other members of the putative class: Defendants' operation of a dysfunctional child welfare system that causes unconstitutional harm to the children in its care."  (D.E. 44-2 at 18.)  The Court concludes that Plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement.

### d.      Adequacy (Rule 23(a)(4))

Plaintiffs must demonstrate, pursuant to Rule 23(a)(4), that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   The Fifth Circuit has explained, "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two. We must consider "[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]"  Stirman v. Exxon Corp., 280 F.3d 554, 563 (5th Cir. 2002) (citations omitted); see also Feder v. Electronic Data Systems Corp., 429 F.3d 125, 130 (5th Cir. 2005).  Importantly, "[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences **create conflicts** between the named plaintiffs' interests and the class members' interests."  James, 254 F.3d at 571 (emphasis added).

Plaintiffs contend that the Named Plaintiffs' proposed Next Friends are dedicated to the Named Plaintiffs' best interests, are familiar with the litigation, and are able to assist in the case. Also, there is no conflict of interest between the Named Plaintiffs and the other Class members, as the Named Plaintiffs only seek declaratory and injunctive relief to correct flaws in the DFPS PMC system. The relief they seek would "benefit all members of the proposed class," and there is no foreseeable conflict between class members. (D.E. 15 at 24.) Plaintiffs also argue that they are represented by counsel who possess "extensive experience in complex litigation, including class actions and civil rights litigations." They outline the experience of law firms Canales & Simonson, P.C., Haynes & Boone, LLP, Yetter Coleman, LLP, and attorneys for Children's Rights, a non-profit organization "with extensive experience in complex class action litigation involving child welfare systems." In this regard, they note that Children's Rights attorneys "have served as class counsel on much of the major child welfare litigation in the United States." (D.E. 15 at 25.) They also pledge that counsel has sufficient resources to "thoroughly and expeditiously bring this action." (D.E. 15 at 25.)

Defendants concede that class counsel is competent (D.E. 30 at 35 n.14), but argue that the adequacy requirement is not met because "(1) the Plaintiffs cannot adequately represent the class because their interests and claims are significantly different from those of the class and (2) the next friends have neither the incentive nor the ability to direct this litigation." (D.E. 30 at 35.) The Court takes each objection in turn.

As to Defendants' first objection (which is essentially no different from that raised with respect to commonality and typicality), the Court does not find that any speculative conflicts between class members renders the named Plaintiffs inadequate

class representatives.  Plaintiffs seek systemic changes and improvements in the DFPS system, which would aid all children.  All Plaintiff Children have an interest in a child welfare system that meets children's needs, even if those needs may vary.  While the improvements will certainly mean different things to different children in the system, the Court sees no direct conflict in light of the fact that the named Plaintiffs seek to improve the system as a whole.  Similar arguments as to adequacy have been rejected in the past. In <u>Dwayne B.</u>, the court explained that the plaintiffs satisfied the adequacy requirement because their "interests do not conflict with those of absent class members," as "[t]hey seek broad declaratory and injunctive relief addressing systematic problems in a unitary executive agency that will provide all Class members with the protection, care, treatment, and services to which all are equally entitled under the Constitution and federal law.  All Class members share the same federal statutory and constitutional rights and a common interest in a child welfare system that meets its legal obligations to keep them safe from harm.   Appropriate remedial relief will ensure that Defendants meet their legal obligations to all Class members in all counties of the State, irrespective of relative costs."  <u>Dwayne B.</u>, No. 06-13548 at 10; <u>see also</u>, <u>Marisol A.</u>, 126 F.3d at 378 (affirming finding of adequacy and stating, "Plaintiffs seek broad based relief which would require the child welfare system to dramatically improve the quality of all of its services, including proper case management. In this regard, the interests of the class members are identical."); <u>Patrick</u>, __ F.R.D. __, 2011 WL 693223, at *8 (Class members "each have alleged significant harms, often taking multiple forms, all of which are alleged to be attributable to failures within [the Massachusetts Department of Children and Families]. Thus, because . . . named Plaintiffs' interests are entirely consistent with those of the

class, Plaintiffs meet the requirements of Rule 23(a)(4).")).  The court concludes that Defendants' concerns as to a conflict of interest do not warrant a finding of inadequacy.

Defendants' second objection is that Plaintiffs' proposed next friends have "irreconcilable conflicts" that prevent them from representing the interests of the class, in light of the fact that they acquiesced to the placements now at issue when representing the children as *ad litems* in the state court proceedings.  (D.E. 30 at 36-37.)   Defendants also argue that the "conflict between [the next friends'] appointed role in the state court and in this law suit renders the 'next friends' entirely inadequate to represent the class." (D.E. 30 at 37.)  This Court has already concluded that the proposed next friends can adequately represent the minors on whose behalf they have filed suit.  (D.E. 48.)  The Court finds that any concerns as to conflict of interest between next friends and Named Plaintiffs, or with class members is wholly speculative and unsubstantiated.  Their prior involvement in the respective child's case does not render them inadequate next friends, but rather just the opposite.  These individuals advocated on behalf of their clients, and there is no indication to the contrary.  Ultimately, Defendants are responsible for the alleged conditions in the system, and the next friends do not have a conflict of interest merely because they had to operate in that system.

The Court also finds that counsel has the necessary "zeal and competence," to adequately protect class interests.  The firm resumes of all counsel in this matter demonstrate their prior involvement in class action litigation, and in many cases, particular experience with child advocacy.  (D.E. 15-3 (Canales & Simonson, P.C. firm resume); 15-4 (Hayes & Boone firm resume); 15-5 (Yetter & Coleman firm resume; 15-6 (Marcia Robinson Lowry Declaration).)  Notably, Marcia Robinson Lowry, Executive

Director of Children's Rights, states in her declaration, "[f]or more than 35 years, I have been litigating and directing the litigation of class action child welfare reform cases alleging claims similar to those alleged by Plaintiff Children in the present action. Other Children's Rights attorneys assigned to this case also have years of experience with Children's Rights prosecuting similar cases in other jurisdictions." (D.E. 15-6 at 2.) She details other cases in which Children's Rights attorneys were involved, and notes that Children's Rights attorneys "have engaged in a two-year long, in-depth investigation of the child welfare system in Texas." (D.E. 15-6 at 3.) As noted above, Defendants concede that class counsel is competent. (D.E. 30 at 35 n.14.)

In light of the foregoing, the Court finds that the adequacy requirements of Rule 23(a)(4) are satisfied.

### 3.  Rule 23(b)(2) Requirements

In addition to satisfying the requirements of Rule 23(a), a class action must also satisfy one of the categories of Rule 23(b). Relevant here, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

As compared to Rule 23(b)(3), Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." Penson v. Terminal Transport Co., Inc., 634 F.2d 989, 993 (5th Cir. 1981). The Fifth Circuit has explained that Rule 23(b)(2) "seeks to redress what are really group as opposed to individual injuries. The uniformity of the injury across the class is what renders the notice and opt-out provisions

of (b)(3) unnecessary. . . . A Rule 23(b)(2) inquiry requires considering two factors: 1) whether the defendant's behavior is generally applicable to the class as a whole, and 2) whether injunctive relief predominates over monetary relief." Casa Orlando Apts., Ltd., 624 F.3d at 198; Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 975 n. 22 (5th Cir. 2000). "To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way . . . . This qualification differs from a predominance of common issues that Rule 23(b)(3) requires. Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class." Casa Orlando Apts., Ltd., 624 F.3d at 198. Importantly, the Fifth Circuit has also noted:

> **Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies**. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case. When it does, the relatively complex calculations typically required in class actions for money damages are unnecessary. For these reasons, proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting only individual class members, as (b)(3) classes must.

Allison v. Citgo Petroleum Corp., 151 F.3d 402, 414 (5th Cir. 1998) (emphasis added). As one court has stated, "[t]he requirement of 23(b)(2) is **almost automatically fulfilled** in actions where the relief sought is primarily injunctive." San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio, 188 F.R.D. 443, 444 (W.D. Tex. 1999) (citing Baby Neal, 43 F.3d at 58) (emphasis added).

Similar to Defendants' other arguments with respect to Rule 23(a), Defendants essentially contend that class certification under Rule 23(b)(2) should be denied because the class is not sufficiently cohesive, and the propriety of any relief would depend on the

unique circumstances of the children at issue. (D.E. 30 at 37.)   Once again, the Court is

not persuaded by Defendants' position.  As the <u>Baby Neal</u> court has explained, "[w]hat is

important is that the relief sought by the named plaintiffs should benefit the entire class.

The general applicability requirement of (b)(2) also aims to prevent prejudice to

absentees by mandating that the putative class demonstrate that the interests of the class

members are so like those of the individual representatives that injustice will not result

from their being bound by such judgment in the subsequent application of principles of

res judicata.   But injunctive actions, seeking to define the relationship between the

defendant and the world at large, will usually satisfy this requirement."  43 F.3d at 59.

Thus, when faced with arguments similar to those advanced by Defendants here, the

court ultimately found that the district court abused its discretion in denying certification

under Rule 23(b)(2).  The court explained:

> Plaintiffs have alleged that systemic failure causes the DHS to violate
> various mandates under federal statutory and constitutional provisions.
> **Because the children in the system are comparably subject to the
> injuries caused by this systemic failure, even if the extent of their
> individual injuries may be affected by their own individual
> circumstances, the challenge to the system constitutes a legal claim
> applicable to the class as a whole.** An order forcing the DHS to comply
> with their statutory and constitutional mandates would constitute relief
> generally applicable to the entire putative class. Indeed, the violations
> alleged here are precisely the kinds targeted by Rule 23(b)(2). . . .
>
> The fact that the plaintiffs in this case seek only injunctive and declaratory
> relief, not individual damages, further enhances the appropriateness of the
> class treatment. Clearly, this action aims to define the relationship of the
> defendants to the universe of children with whose care the defendants are
> charged. Plaintiffs simply ask the district court to declare the DHS's
> current provision of child welfare services to the plaintiffs to be violative
> of the cited statutory and constitutional provisions and to order DHS to
> implement a system that would enable it to comply with its legal mandates
> in the provision of these services. **Furthermore, all of the class members
> will benefit from relief which forces the defendant to provide, in the**

> **manner required by law, the services to which class members either are currently or at some future point will become entitled**.

43 F.3d at 63-64 (emphasis added).  The Tenth Circuit in D.G. arrived at a similar conclusion.  That court explained, "[s]o long as OKDHS's challenged practices are based on grounds that apply generally to the class, class certification under Rule 23(b)(2) is proper even if at the class certification stage it is conceivable some class members have not been actually abused, neglected, or exposed to a risk of harm. Here the 'grounds' that have general application to the class are that all class members have been placed in OKDHS's foster care program and, as such, caseworkers monitor all class members in a system that allegedly fails to ensure they do not carry caseloads so demanding that they cannot monitor class members adequately." D.G., 594 F.3d at 1200; see also Dwayne B., No. 06-13548 at 11 (D.E. 15-2) ("Plaintiffs seek relief from Defendants' systematic failures to provide and maintain the legally mandated services, processes, and placements critical to the safety and well-being of putative Class members in Michigan's foster care system.  These failures generally affect all Class members, and the declaratory and injunctive relief sought here is intended to provide class-wide relief."); Xiufang Situ v. Leavitt, 240 F.R.D. 551, 562 (N.D. Cal. 2007) (finding Rule 23(b)(2) satisfied, and explaining, "Plaintiffs ask the Court to order Defendant to comply with his statutory obligations regarding implementation of the Part D program for dual eligibilities.  If Plaintiffs were to prevail on the merits, the Court would not need to engage in individualized inquiries regarding which class members have been denied benefits. . . . Plaintiffs have complained of conduct by Defendant that is applicable to the class generally and that may be remedied by class-wide relief."); Gaskin v. Com. of Pa., 1995 WL 355346, at *5 (E.D. Pa. June 12, 1995) ("In the present case, the plaintiffs are

seeking systemic injunctive relief . . . . This relief, if gained, would benefit the entire class.  The Court therefore finds that the plaintiffs have satisfied the Rule 23(b)(2) requirement.").

Here, most of the injunctive relief aims to improve the DFPS PMC system as a whole, not to afford relief to individual Plaintiffs.  The general relief sought includes, for example:

(1) Requiring Defendants to ensure that all children in the plaintiff class are assigned DFPS workers whose overall caseloads do not exceed the caseload standards established by the Child Welfare League of America and the Council on Accreditation  (D.E. 1, Prayer for Relief ¶ 355(d)(i));

(2) Requiring Defendants to establish, within DFPS, an administrative accountability structure to ensure that all caseworkers, using professionally accepted case practices, fully identify and address Plaintiff Children's need for:

> 1. timely permanency;
> 2. placement in the least restrictive, most family-like placements that are suited to their needs; and
> 3. mental health services suited to their needs (Id. ¶ 355(d)(ii));

(3) Requiring Defendants to establish a process for ensuring that state standards for foster homes, foster group homes, emergency shelters, group residential operations, and residential treatment centers in which Plaintiff Children are placed are consistent with the standards set by the Child Welfare League of America and the Council on Accreditation and, if they are not, for taking necessary steps to have the state's standards modified (Id. ¶ 355(d)(vi));

(4) Prohibiting Defendants from placing Plaintiff Children in foster homes, foster group homes, emergency shelters, group residential operations, or residential treatment centers that do not meet the standards for such homes or facilities set by the Child Welfare League of America and the Council on Accreditation (Id. ¶ 355(d)(vii));

(5) Prohibiting DFPS from placing any children in privately operated residential facilities or CPAs not accredited by the Council on Accreditation ((Id. ¶ 355(d)(ix)).

The Court does not believe that these forms of relief would require an investigation into the individualized circumstances of each child.  Rather, the requested relief "applies to the proposed class as a whole without requiring differentiation between class members." D.G., 594 F.3d at 1201.  While certain forms of relief, such as the creation of "expert panels to review the cases of all class members who have had more than four placements," or "expert panels to review the cases of all class members who have been in the PMC of the state for more than two years," (Id. ¶ 355(d)(iii), (iv)) would certainly not apply to all class members, this is not fatal to Rule 23(b)(2) certification.  Baby Neal, 43 F.3d at 63 ("While it is true that not all of the orders issued will immediately benefit every plaintiff, every plaintiff will benefit from relief designed to assure DHS compliance with the applicable standards."); D.G., 594 F.3d at 1200-01 (affirming confirmation, and noting, "the district court found that **at least one** of the Named Plaintiffs' requested injunctions remedies OKDHS's conduct based on grounds generally applicable to the class.") (emphasis added).

    Defendants cite several cases arguably supporting the conclusion that Rule 23(b)(2) certification should be denied "where individualized issues overshadow[] the cohesiveness of the proposed class."  (D.E. 30 at 38 (citing Maldonado v. Ochsner Clinic Foundation, 493 F.3d 521 (5th Cir. 2007); In re Katrina Canal Breaches Litig., 401 Fed. App'x 884 (5th Cir. 2010), In re Vioxx Products Liability Litig., 2008 WL 4681369 (E.D. La. Oct. 21, 2008), and Shook v. Board of County Commissions of County of El Paso, 543 F.3d 597 (10th Cir. 2008).)  This line of argument, however, misses the mark.  While it is true that these cases denied certification under Rule 23(b)(2) due to the individualized issues involved, they say nothing about whether the type of class action at

issue here can proceed under Rule 23(b)(2); in other words, they did not involve the foster care system, or anything close to it.[5]  These cases are therefore much less relevant than those involving class actions closely analogous to that proposed here.  The few cases directly on point, such as <u>Baby Neal</u> and others discussed above, reject Defendants' concerns as to individualized relief in the context of class actions challenging government foster care systems.  43 F.3d at 64 ("Plaintiffs simply ask the district court to declare the DHS's current provision of child welfare services to the plaintiffs to be violative of the cited statutory and constitutional provisions and to order DHS to implement a system that would enable it to comply with its legal mandates in the provision of these services.  Furthermore, all of the class members will benefit from relief which forces the defendant to provide, in the manner required by law, the services to which class members either are currently or at some future point will become entitled.").  Moreover, the Court does not find cases to the contrary (such as <u>J.B.</u>) to be persuasive, and again notes that they have received little attention in this Circuit or elsewhere.

Defendants also contend that Plaintiffs' proposed injunctive relief fails to describe the requested relief in reasonably particular detail so that the court can conceive of an injunction that would satisfy Rule 65(d)'s requirements,[6] as well as those of Rule 23(b)(2).  For example, Defendants argue that Plaintiffs' request for "appropriate remedial steps," or determination as to whether class members' needs are being "adequately addressed," is problematic.  (D.E. 30 at 44.)  Nevertheless, the Court understands Plaintiffs to primarily seek injunctive relief to improve the DFPS system as a

---

[5] Importantly, Plaintiffs in <u>Maldonado</u> also sought monetary damages. 493 F.3d at 524.
[6] Federal Rule of Civil Procedure 65(d)(1) provides, "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and  (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required."

whole, and the relief would not require investigating how each individual child's conditions are (or are not) improved.  As in <u>Baby Neal</u>, "the court can fashion precise orders to address specific, system-wide deficiencies and then monitor compliance relative to those orders."  43 F.3d at 64.  The Court has no difficulty envisioning the relief requested in this lawsuit, and concludes that it is permissible under Rule 23(b)(2).

### 4.    Discretionary Factors

Finally, Defendants contend that the Court should exercise its discretion to deny certification to Plaintiffs' proposed class, for several reasons.  First, the Texas state court system is involved in the oversight of the placement and service needs that DFPS provides in each case.  Given the continual state court jurisdiction over the children at issue, Plaintiffs' claims should in fact be litigated before the state courts that are responsible for them; this Court should not intervene.  (D.E. 30 at 46.)  Second, there are other organizations designed to oversee the policy-related relief Plaintiffs seek to obtain through the suit, and the initiatives at issue recognize the essential role that the state courts of continuing jurisdiction have over each child's case.  (D.E. 30 at 47.)  Defendants conclude that "this Court does not need to interfere with supervision that already exists to ensure compliance with federal and state law."  (D.E. 30 at 47.)

Defendants essentially ask this Court to defer to a state oversight system that, at least according to Plaintiffs' allegations, is insufficient to address the problem in the first place.  It makes little sense to deny class certification to a lawsuit challenging the state foster care system on the sole basis that the system is already being adequately supervised.  Moreover, to do so would nearly constitute an impermissible ruling on the

merits in the context of a Rule 23 class certification order.[7]   As the Fifth Circuit has explained, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.  The Rule 23 analysis must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental."  Alaska Elec. Pension Fund v. Flowserve Corp., 572 F.3d 221, 229 (5th Cir. 2009) (citations and quotation marks omitted).  The Court will not address arguments that go to the merits of the dispute, as opposed to class certification.

### 5.      Class Counsel (Rule 23(g))

As noted above, Rule 23 requires that the Court appoint class counsel, consistent with Rule 23(g).  Fed. R. Civ. P. 23(c)(1)(B).  Rule 23(g)(1) provides:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
>> (i) the work counsel has done in identifying or investigating potential claims in the action;
>>
>> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>>
>> (iii) counsel's knowledge of the applicable law; and
>>
>> (iv) the resources that counsel will commit to representing the class;
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

---

[7] In fact, Defendants have filed a Rule 12(b)(1) Motion to Dismiss presenting arguments similar to those advanced here.  (D.E. 43.)

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).  Rule 23(g)(2) sets out the standard for appointing class counsel, stating, "[w]hen one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).  Rule 23(g)(4) requires that "[c]lass counsel must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4); see generally In re Enron Corp. Securities, 529 F. Supp. 2d 644, 674 (S.D. Tex. 2006) (addressing Rule 23(g)).

The Court finds counsel for Named Plaintiffs to be proper class counsel, consistent with Rule 23(g).  The Court first considers the factors under Ruler 23(g)(1). First, Counsel for Children's Rights notes that they have investigated the claims raised in this litigation for over two years, and are thoroughly familiar with the claims at issue. D.E. 15 at 24-25; see also Patrick, 2011 WL 693223, at *7 ("Children's Rights' attorneys have served as class counsel on much of the major child welfare litigation in the United States. The attorneys at Children's Rights have many years of experience litigating similar class actions across the country, asserting constitutional and statutory claims on behalf of children in foster care to obtain system-wide injunctive and declaratory relief."). Second, as noted above, all class counsel have significant experience in handling class actions, having each been involved with several such actions.  Third, counsel clearly

possess sufficient knowledge of the applicable law, having dealt generally with civil rights actions in the past, and the rights of children in foster care specifically.  Finally, counsel will certainly commit sufficient resources to represent the class, as they have already demonstrated with the investigation leading up to the Complaint in this action, the Complaint itself, and their representations before the Court at the initial pretrial conference.  These considerations also support the conclusion that class counsel will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).   In light of their qualifications, previous work in this litigation, experience with similar litigation, and all other factors discussed above, the Court finds that class counsel will "fairly and adequately" represent the class interests, consistent with Rule 23(g)(4).

The Court therefore concludes that counsel for Named Plaintiffs shall be appointed as Class Counsel pursuant to Rule 23(g).

## IV.   Conclusion

For the reasons stated above, the Court GRANTS Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.  (D.E. 15.)  The Court ORDERS as follows:

(1) This action shall proceed as a class action with the members of the Class consisting of: "All children who are now and all those who will be in the Permanent Managing Conservatorship of the Texas Department of Family and Protective Services."

(2) The following Named Plaintiffs, by their next friends, are appointed as Class Representatives:

　　a.　Plaintiff M.D., by next friend Sarah R. Stukenberg;

b.  Plaintiff D.I., by next friend Nancy G. Pofahl;

c.  Plaintiff Z.H., by next friend Carla B. Morrison;

d.  Plaintiff S.A., by next friend Javier E. Solis;

e.  Plaintiff A.M., by next friend Jennifer Talley;

f.  Plaintiff J.S., by next friend Anna J. Ricker;

g.  Plaintiff K.E., by next friend John W. Cliff, Jr.;

h.  Plaintiff D.P., by next friend Karen J. Langsley; and

i.  Plaintiff T.C., by next friend, Paul Swacina.

(3) The following attorneys are appointed as co-counsel for the class:

a.  Canales & Simonson, P.C.;

b.  Haynes & Boone, LLP;

c.  Yetter Coleman, LLP; and

d.  Attorneys from Children's Rights, a non-profit organization with its office in New York.

SIGNED and ORDERED this 2nd day of June, 2011.

_____
Janis Graham Jack
United States District Judge