## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § | |
| *Defendants.* | § § | |

---

## DEFENDANTS' BRIEFING REGARDING ISSUES AND
## INJUNCTIVE REMEDIES ON LIMITED REMAND

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant
Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

DAVID TALBOT
Interim Chief,
General Litigation Division

/s/ Thomas A. Albright
THOMAS A. ALBRIGHT
Attorney-in-Charge
Texas Bar No. 00974790
Southern District No. 107013
ANDREW B. STEPHENS
Texas Bar No. 24079396
Southern District No. 1385273
Assistant Attorneys General

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120; (512) 320-0667 FAX
TODD LAWRENCE DISHER
Special Counsel for Civil Litigation
Texas Bar No. 24081854
Southern District ID# 2985472
P.O. Box 12548 (MC 001)
Austin, TX 78711-2548
(512) 936-2266

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................ii

INDEX OF AUTHORITIES ................................................................................iv

DEFENDANTS' BRIEFING REGARDING ISSUES AND INJUNCTIVE
REMEDIES ON LIMITED REMAND ......................................................... 1

   I.    Scope of Limited Remand.............................................................. 2

   II.   Implementation Deadlines for Remedial Provisions...................... 3

   III.   Caseloads ................................................................................. 3

   A.   The Fifth Circuit concluded that the following injunctive provisions............ 3

   are valid:............................................................................................... 3

   B.   The Court should not include in its modified injunction any of the following
   provisions, which the Fifth Circuit ruled invalid: ................................... 5

   IV.   Monitoring and Oversight .............................................................. 6

   A.   The Fifth Circuit concluded that the following injunctive provisions are
   valid:.................................................................................................... 7

   B.   The Court should not include in its modified injunction any of the following
   provisions, which the Fifth Circuit ruled invalid: ............................... 12

   V.   Placement Array .......................................................................... 14

   A.   The Fifth Circuit ruled that Defendants' policies and practices related to
   placement array do not violate Plaintiffs' constitutional rights and determined
   that all the remedial provisions in this Court's Final Order addressing that
   issue are invalid. 5thCir.Op. 64. Accordingly, the Court should not include the
   following provisions in its modified injunction:.................................... 14

   VI.   Foster-Group Homes .................................................................. 16

   A.   The Fifth Circuit ruled that Defendants' policies and practices related to
   foster-group homes do not violate Plaintiffs' constitutional rights and
   determined that all the remedial provisions in this Court's Final Order
   addressing that issue are invalid. 5thCir.Op. 64. Accordingly, the Court should
   not include the following provisions in its modified injunction:.......................... 16

   B.   The Fifth Circuit also addressed several injunctive provisions that it
   described as "'crossover' provisions" because they "address multiple violations" or
   "target other alleged DFPS deficiencies." 5thCir.Op. 66. The Fifth Circuit
   concluded that the following crossover provisions are valid: .............................. 17

   C.   Instead of duplicating the same provision, it appears that the Fifth Circuit
   may have intended to include the following provision, which appeared
   immediately following the above provision in the Court's Final Order: ............. 18

D.   The Fifth Circuit concluded that all of the crossover provisions related to placement array and foster-group homes are invalid, as well as all provisions intended to remedy additional, related concerns about the foster-care system. 5thCir.Op. 67. Accordingly, the Court should not include the following provisions in its modified injunction:................................................................... 18

E.   The Fifth Circuit's opinion did not address the following provisions:.......... 25

# INDEX OF AUTHORITIES

**Cases**

*United States v. Rainwater*, 317 F. App'x 431, 434 (5th Cir. 2009) .......................... 2

*United States v. Rivero*, 554 F.2d 213, 216 & n.7 (5th Cir. 1977) .............................. 2

**Other Authorities**

5thCir.Op. 54:2 ............................................................................................................ 4

5thCir.Op. 54:3 ............................................................................................................ 4

5thCir.Op. 55-56:1 ...................................................................................................... 5

5thCir.Op. 56:2 ............................................................................................................ 5

5thCir.Op. 56:3 ............................................................................................................ 5

5thCir.Op. 56:4 ............................................................................................................ 6

5thCir.Op. 56:5 ............................................................................................................ 6

5thCir.Op. 56-57 .......................................................................................................... 6

5thCir.Op. 57:1 ............................................................................................................ 6

5thCir.Op. 57:8 ............................................................................................................ 6

5thCir.Op. 57:9 ............................................................................................................ 6

5thCir.Op. 57-58:1 ...................................................................................................... 7

5thCir.Op. 58:2 ............................................................................................................ 7

5thCir.Op. 58:3 ............................................................................................................ 7

5thCir.Op. 58:4 ............................................................................................................ 7

5thCir.Op. 58:5 ............................................................................................................ 7

5thCir.Op. 58:7 ............................................................................................................ 8

5thCir.Op. 58-59:8 ...................................................................................................... 8

5thCir.Op. 59:10 .......................................................................................................... 8

5thCir.Op. 59:11 .......................................................................................................... 8

5thCir.Op. 59:12 .......................................................................................................... 9

5thCir.Op. 59:13 .......................................................................................................... 9

5thCir.Op. 59:14 .......................................................................................................... 9

5thCir.Op. 59:15 .......................................................................................................... 9

5thCir.Op. 59:16 .......................................................................................................... 9

5thCir.Op. 59:9 ............................................................................................................ 8

5thCir.Op. 60:17 .......................................................................................................... 9

5thCir.Op. 60:18 .......................................................................................................... 9

5thCir.Op. 60:19 ........................................................................................................ 10

5thCir.Op. 60:20 ........................................................................................................ 10

5thCir.Op. 60:21 ........................................................................................................ 10

5thCir.Op. 60:22 ........................................................................................................ 10

5thCir.Op. 60:23 ........................................................................................................ 10

5thCir.Op. 60:25 ........................................................................................................ 10

5thCir.Op. 60-61:24 .................................................................................................. 10

5thCir.Op. 61 ............................................................................................................. 11

5thCir.Op. 61:26 ........................................................................................................ 11

5thCir.Op. 61:27 ........................................................................................................ 11

5thCir.Op. 61:28 ....................................................................................................... 11
5thCir.Op. 61:29 ....................................................................................................... 11
5thCir.Op. 61:30 ....................................................................................................... 11
5thCir.Op. 61:31 ....................................................................................................... 11
5thCir.Op. 62.2 ........................................................................................................ 12
5thCir.Op. 62-63.3 ................................................................................................... 12
5thCir.Op. 63.4-5 ..................................................................................................... 12
5thCir.Op. 63.6-10 ................................................................................................... 13
5thCir.Op. 64.11-12 ................................................................................................. 14
5thCir.Op. 65-66 ...................................................................................................... 15
5thCir.Op. 66 .................................................................................................... 16, 17
5thCir.Op. 66:1-2 ..................................................................................................... 16
5thCir.Op. 66:6 ........................................................................................................ 16
5thCir.Op. 67:2 ........................................................................................................ 17
5thCir.Op. 67-68:2 ................................................................................................... 18
5thCir.Op. 68:3-7 ..................................................................................................... 19
5thCir.Op. 68:8 ........................................................................................................ 20
5thCir.Op. 68-71 ...................................................................................................... 25
5thCir.Op. 69:10-12 ................................................................................................. 20
5thCir.Op. 69:14-15 ................................................................................................. 21
5thCir.Op. 69:9 ........................................................................................................ 20
5thCir.Op. 70:16-18 ................................................................................................. 21
5thCir.Op. 70:19-20 ................................................................................................. 22
5thCir.Op. 70-71:21 ................................................................................................. 22
5thCir.Op. 71:22-24 ................................................................................................. 23
5thCir.Op. 72:25 ...................................................................................................... 23
5thCir.Op. 72:26-27 ................................................................................................. 24
5thCir.Op. 72-73:28 ................................................................................................. 24
5thCir.Op. 73 .................................................................................................... 25, 26
5thCir.Op. 73:29 ...................................................................................................... 25
5thCir.Op.54 n.45 ....................................................................................................... 4
Final Order 101-02:5 ............................................................................................... 15
Final Order 102:6 ..................................................................................................... 16
Final Order 105:1 ..................................................................................................... 16
Final Order 111:2 ..................................................................................................... 16
Final Order 22:1, 3,4 .................................................................................................. 6
Final Order 25:1 ...................................................................................................... 17
Final Order 25:2 ................................................................................................ 18, 25
Final Order 37:1 ...................................................................................................... 18
Final Order 38:2 ...................................................................................................... 18
Final Order 38:3-4 ................................................................................................... 19
Final Order 39:1 ...................................................................................................... 12
Final Order 39:2 ........................................................................................................ 7
Final Order 42:10 ...................................................................................................... 7

Final Order 42:4................................................................................ 7
Final Order 42:5.............................................................................. 13
Final Order 42:6-8 .......................................................................... 12
Final Order 42:9.............................................................................. 11
Final Order 43:1................................................................................ 8
Final Order 43:11.............................................................................. 7
Final Order 43:13.............................................................................. 8
Final Order 43:15.............................................................................. 8
Final Order 43:16.............................................................................. 8
Final Order 46................................................................................ 19
Final Order 46-47:2 ........................................................................ 19
Final Order 47:3.............................................................................. 19
Final Order 47:4-6 .......................................................................... 20
Final Order 47-48:7 ........................................................................ 20
Final Order 48:10............................................................................ 21
Final Order 48:8-9 .......................................................................... 20
Final Order 49:11............................................................................ 25
Final Order 49:12............................................................................ 21
Final Order 53:1.............................................................................. 21
Final Order 55:2.............................................................................. 21
Final Order 56:1.............................................................................. 25
Final Order 56:2......................................................................... 21, 22
Final Order 57:4-5 .......................................................................... 22
Final Order 57-58:6 ........................................................................ 23
Final Order 58:7.............................................................................. 23
Final Order 59:1................................................................................ 5
Final Order 59:2................................................................................ 4
Final Order 59-60:3 .......................................................................... 5
Final Order 65-66:1 .......................................................................... 6
Final Order 66:2................................................................................ 6
Final Order 70:1-2 ............................................................................ 4
Final Order 70:3................................................................................ 5
Final Order 73:1................................................................................ 6
Final Order 79:1.............................................................................. 13
Final Order 79:2.............................................................................. 14
Final Order 79:4-5 ......................................................................... 8, 9
Final Order 80:10-11 ........................................................................ 9
Final Order 80:12............................................................................ 14
Final Order 80:6-9 ............................................................................ 9
Final Order 81:13-14 ........................................................................ 9
Final Order 82:15............................................................................ 10
Final Order 88:1-4 .......................................................................... 10
Final Order 89:10............................................................................ 11
Final Order 89:11............................................................................ 13

Final Order 89:12-13 ................................................................................. 13
Final Order 89:5........................................................................................ 10
Final Order 89:6-9 ................................................................................... 11
Final Order 92:1-2 ................................................................................... 23
Final Order 92-93:3 .................................................................................. 24
Final Order 93:4-5 ................................................................................... 24
Final Order 93:6........................................................................................ 25
Final Order 98:1........................................................................................ 14

## DEFENDANTS' BRIEFING REGARDING ISSUES AND INJUNCTIVE REMEDIES ON LIMITED REMAND

On October 18, 2018, the Fifth Circuit issued an opinion ("5thCir.Op.") that affirmed this Court's liability rulings as to Defendants' policies and practices covering caseworker caseloads and monitoring and oversight but reversed this Court's liability rulings on placement array and foster-group homes. Accordingly, the Fifth Circuit opinion vacated this Court's permanent injunction in the Final Order of January 19, 2018 (Dkt. #559), determined that certain injunctive provisions in the Final Order were valid and others invalid, and ordered that the case be returned to this Court in a "limited remand," 5thCir.Op.73, for this Court to modify its permanent injunction consistent with the Fifth Circuit's opinion. 5thCir.Op.73. On October 19, 2018, this Court ordered the parties "to submit briefs addressing the issues on remand and proposing remedies consistent with the Fifth Circuit's opinion within **TEN DAYS** from the date of this Order." Order (Dkt. # 602), at 1. This is Defendants' briefing in response to the Court's Order.[1]

---

[1] Defendants do not concede that the Fifth Circuit's rulings affirming this Court's liability determinations are correct or that the injunctive provisions the Fifth Circuit deemed valid are appropriate. Accordingly, nothing in this brief should be construed as accepting or acquiescing in this Court's findings of constitutional violations and liability and the Fifth Circuit's affirmance of any remedial provisions in this Court's Final Order, nor should any statements herein be interpreted as a waiver of Defendants' right to further appeal those findings and corresponding remedial provisions.

# I.   SCOPE OF LIMITED REMAND

The scope of a limited remand is narrow. The Court should address only the language and provisions in the Final Order that the Fifth Circuit identified as requiring modification, and the Court should adhere strictly to the Fifth Circuit's directives and reasoning when modifying the remedial provisions that the Fifth Circuit identified as being in need of modification. Issues or arguments that are not expressly addressed in the Fifth Circuit's non-dispositive opinion are beyond the scope of a limited remand. *See United States v. Rivero*, 554 F.2d 213, 216 & n.7 (5th Cir. 1977); *see also United States v. Rainwater*, 317 F. App'x 431, 434 (5th Cir. 2009); *United States v. Campos-Cruz*, 209 F. App'x 422, 422-23 (5th Cir. 2006).

Here, the Fifth Circuit ordered a "limited remand" for "modification [of the permanent injunction] consistent with this opinion." 5thCir.Op.73. Where the panel clearly delineated between valid and invalid injunctive provisions, modifying the injunction to include those provisions designated as valid and exclude those designated as invalid should be a straightforward exercise. However, there are three injunctive provisions from this Court's Final Order that the Fifth Circuit did not address. Moreover, there are elements that the Fifth Circuit determined to be invalid within injunctive provisions that the Fifth Circuit otherwise deemed valid. All of those issues are addressed below within the four major subject-matter categories (Caseloads, Monitoring and Oversight, Placement Array, and Foster-Group Homes), and a fifth category ("Crossover Provisions") of provisions that address multiple areas. For the Court's convenience, the descriptions below identify specific injunctive

provisions by cross-referencing the Fifth Circuit's slip opinion and this Court's Final Order, citing the page and paragraph number where the provision appears within each document using the format "[page[s]: paragraph number]."

## II. Implementation Deadlines for Remedial Provisions

Each injunctive provision in this Court's Final Order set a timetable for its implementation, ranging from "immediately" to a period of one year. Those timetables were originally intended to run from January 19, 2018, the date of the Final Order. However, the permanent injunction was stayed pending appeal and subsequently vacated, and many of the original deadlines passed during the pendency of the stay. Moreover, the Fifth Circuit has not yet issued a judgment, and its future judgment affirming the modified injunction will not take effect until the Fifth Circuit mandate issues following the completion of the limited remand. Accordingly, to avoid confusion, the Court should clarify in the modified injunction that all times for compliance with injunctive provisions do not start running until all appeals have been exhausted.

## III. Caseloads

A. The Fifth Circuit concluded that the following injunctive provisions are valid:

1. Effective immediately, DFPS shall track caseloads on a child-only basis, as ordered by the Court in December 2015. Effective immediately, DFPS shall report to the monitor(s), on a quarterly basis, caseloads for all staff, including supervisors, who provide primary case management services to children in the PMC class, whether employed by a public or private entity, and whether full-time or part-time. Data reports shall show all staff who provide case management services to children in the PMC class and their caseloads. In addition, DFPS's quarterly reporting shall include the

number and percent of staff with caseloads within, below and over the range of 14 to 17 children, by office, by county, by agency (if private) and statewide. Reports will include the identification number and location of individual staff and the number of PMC children and, if any, TMC children to whom they provide case management. Caseloads for staff, as defined above, who spend part-time in caseload carrying functions and part-time in other functions must be pro-rated accordingly. The caseload range for staff with mixed caseloads, for example caseworkers serving both PMC and TMC children, shall be 14 to 17 children's cases, and each TMC child is to be afforded the same weight as a PMC child. Reporting will be by office, by county, by agency (if private) and statewide. [5thCir.Op.53-54:1; Final Order 59:2]

2. Effective May 2018, DFPS shall ensure statewide implementation of the CPS Professional Development (CPD) training model, which DFPS began to implement in November 2015. [5thCir.Op. 54:2; Final Order 70:1]

3. Effective May 2018, DFPS shall ensure statewide implementation of graduated caseloads for newly hired CVS caseworkers, and all other newly hired staff with the responsibility for primary case management services to children in the PMC class, whether employed by a public or private entity. [5thCir.Op. 54:3; Final Order 70:2]

But the Fifth Circuit rejected this Court's use of "caseload cap[s] or an enforced caseload range," and expressly noted that such references in the remedial provisions of the Court's injunction "shall be deleted." 5thCir.Op.54 n.45. Instead, the Fifth Circuit concluded that DFPS "should determine how many cases, on average, caseworkers are able to safely carry" and "should establish generally applicable, internal caseload standards" that "should serve as a rough guide for supervisors who are handling caseload distribution" and "should inform DFPS's hiring goals." Id. at 55.

Accordingly, the Court must delete the references to caseload ranges in the first above-quoted provision and, consistent with the Fifth Circuit's opinion, allow DFPS to determine how many cases on average caseworkers can safely carry and

establish generally applicable, internal caseload standards that should serve as a rough guide for supervisors handling caseload distribution and should inform DFPS's hiring goals.

    **B.**    The Court should *not* include in its modified injunction any of the following provisions, which the Fifth Circuit ruled invalid:

1. Effective June 2018, DFPS shall ensure that the full-time staff, including supervisors, who provide case management services to children in the PMC class, whether employed by a public or private entity, have a caseload within or below the range of 14 to 17 children. Caseloads for staff must be pro-rated for those who are less than fulltime. Caseloads for staff who spend part-time in caseload carrying work and part-time in other functions must be pro-rated accordingly. The caseload range for staff with mixed caseloads, for example caseworkers serving both PMC and TMC children, will also be 14 to 17 children's cases, and each TMC child's case will be afforded the same weight in the caseload calculation as a PMC child. [5thCir.Op. 55-56:1; Final Order 59:1]

2. Effective immediately, DFPS shall commence recruiting, hiring and training staff, and ensuring any private entities that are charged by DFPS to provide case management services to children in the PMC class do the same, to ensure that staff who provide case management services to children in the PMC class, whether employed by a public or private entity, have a caseload within or below the range of 14 to 17 children. [5thCir.Op. 56:2; Final Order 59-60:3]

3. Effective May 2018, DFPS shall ensure that before any new CVS (or private agency) caseworker assumes primary case management responsibility for a full caseload range of 14 to 17 children, they successfully complete a comprehensive training program for new workers and pass a competency examination. [5thCir.Op. 56:3; Final Order 70:3]

4. Effective immediately, DFPS shall ensure that monthly face-to-face visits between caseworkers and children in the PMC class occur as required. The caseworkers' visits with children in the PMC class must include time with the child separate from the caregiver(s) and other children, if the child is verbal. Effective immediately, DFPS shall ensure that caseworkers document monthly, private meetings with each verbal PMC child in their care, unless the reason for noncompliance is fully

documented in the child's electronic case record. [5thCir.Op. 56:4; Final Order 22:1]

5. Effective immediately, DFPS shall ensure adequate training on its child visitation policies for all caseworkers responsible for visiting children in the PMC class. [5thCir.Op. 56:5; Final Order 22:2]

6. Effective immediately, DFPS shall track caseworker-child visits and report quarterly to the monitor(s) on the number of monthly caseworker-child visits required and the percent and number that occurred. DFPS shall report for all referenced visits whether they involved face-to-face time with the child separate from the caregiver(s) and other children, if the child is verbal. [5thCir.Op. 56:6; Final Order 22:3]

7. Effective immediately, DFPS shall ensure caseworkers who conduct visits with PMC children follow the agency's contact guidelines, which they must document in the child's electronic case record based on monthly visits with a child. The guidelines must require caseworkers, at least, to complete an assessment of the child's safety, including an assessment of the placement; a confirmation that the child was interviewed individually, separately and privately from the caregiver and other children, if the child is verbal; a discussion of the form(s) of discipline being used in the placement; and a documented review of the child's medical, mental health, dental and educational progress and needs. [5thCir.Op. 56-57:7; Final Order 22:4]

8. DFPS shall ensure that supervisors who oversee caseworkers managing the cases of children in the PMC class have no more than seven workers assigned to them. Supervisory workloads must be prorated for supervisors who are less than full-time. Workloads for supervisors who spend part-time in supervisory work and part-time in other functions, which includes carrying a case, must be pro-rated accordingly. [5thCir.Op. 57:8; Final Order 65-66:1]

9. Supervisors who oversee caseworkers serving PMC children shall not directly carry a caseload unless there is a documented emergency requiring the supervisor to do so. [5thCir.Op. 57:9; Final Order 66:2]

10. Within 30 days of the Court's Final Order date, DFPS shall eliminate the use of I See You secondary workers and designate all secondary workers as primary caseworkers. [5thCir.Op. 57:10; Final Order 73:1]

## IV.   MONITORING AND OVERSIGHT

**A.** The Fifth Circuit concluded that the following injunctive provisions are

valid:

1. DFPS shall ensure that reported allegations of child abuse and neglect involving children in the PMC class are investigated; commenced and completed on time consistent with the Court's Final Order; and conducted taking into account at all times the child's safety needs. The monitor(s) shall periodically review the statewide system for appropriately receiving, screening and investigating reports of abuse and neglect involving children in the PMC class to ensure the investigations of all reports are commenced and completed on time consistent with Items 9-16 of this Section of the Court's Final Order and conducted taking into account at all times the child's safety needs. [5thCir.Op. 57-58:1; Final Order 39:2]

2. Effective May 2018, DFPS shall ensure that all caseworkers and caregivers are trained to recognize and report sexual abuse, including child on child sexual abuse. [5thCir.Op. 58:2; Final Order 42:4]

3. Effective March 2018 and ongoing thereafter, DFPS shall, in accordance with existing DFPS policies and administrative rules, initiate Priority One child abuse and neglect investigations involving children in the PMC class within 24 hours of intake. (A Priority One is by current policy assigned to an intake in which the children appear to face a safety threat of abuse or neglect that could result in death or serious harm.) [5thCir.Op. 58:3; Final Order 42:10]

4. Effective March 2018 and ongoing thereafter, DFPS shall, in accordance with existing DFPS policies and administrative rules, initiate Priority Two child abuse and neglect investigations involving children in the PMC class within 72 hours of intake. (A Priority Two is assigned by current policy to any CPS intake in which the children appear to face a safety threat that could result in substantial harm.) [5thCir.Op. 58:4; Final Order 43:11]

5. Effective March 2018 and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial face-to-face contact with the alleged child victim(s) in Priority One child abuse and neglect investigations involving PMC children as soon as possible but no later than 24 hours after intake. [5thCir.Op. 58:5; Final Order 43:12]

6. Effective March 2018 and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial

face-to-face contact with the alleged child victim(s) in Priority Two child abuse and neglect investigations involving PMC children as soon as possible but no later than 72 hours after intake. [5thCir.Op. 58:6; Final Order 43:13]

7.    Effective March 2018 and ongoing thereafter, DFPS shall track and report all child abuse and neglect investigations that are not initiated on time with face-to-face contacts with children in the PMC class, factoring in and reporting to the monitors quarterly on all authorized and approved extensions to the deadline required for initial face-to-face contacts for child abuse and neglect investigations. [5thCir.Op. 58:7; Final Order 43:14]

8.    Effective March 2018, DFPS shall, in accordance with DFPS policies and administrative rules, complete Priority One and Priority Two child abuse and neglect investigations that involve children in the PMC class within 30 days of intake, unless an extension has been approved for good cause and documented in the investigative record. If an investigation has been extended more than once, all extensions for good cause must be documented in the investigative record. [5thCir.Op. 58-59:8; Final Order 43:15]

9.    Effective March 2018 and ongoing thereafter, DFPS must track and report monthly all child abuse and neglect investigations involving children in the PMC class that are not completed on time according to this Final Order. Approved extensions to the standard closure timeframe, and the reason for the extension, must be documented and tracked. If an investigation has been extended more than once, all extensions for good cause must be documented in the investigative record. [5thCir.Op. 59:9; Final Order 43:16]

10.   Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, observe or interview the alleged child victims in Priority One child abuse or neglect investigations within 24 hours of intake. [5thCir.Op. 59:10; Final Order 79:4]

11.   Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, observe or interview the alleged child victims in Priority Two child abuse or neglect investigations within 72 hours of intake. [5thCir.Op. 59:11; Final Order 79:5]

12.   Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete Priority One and Priority

Two child abuse and neglect investigations within 30 days of intake, consistent with DFPS policy. [5thCir.Op. 59:12; Final Order 80:6]

13. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete Priority Three, Priority Four and Priority Five investigations within 60 days of intake, consistent with DFPS policy. [5thCir.Op. 59:13; Final Order 80:7]

14. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete and submit documentation in Priority One and Priority Two investigations on the same day the investigation is completed. [5thCir.Op. 59:14; Final Order 80:8]

15. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete and submit documentation in Priority Three, Priority Four and Priority Five investigations within 60 days of intake. [5thCir.Op. 59:15; Final Order 80:9]

16. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, finalize and mail notification letters to the referent and provider(s) in Priority One and Priority Two investigations within five days of closing a child abuse and neglect investigation or completing a standards investigation. [5thCir.Op. 59:16; Final Order 80:10]

17. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, finalize and mail notification letters to the referent(s) and provider(s) in Priority Three, Priority Four and Priority Five investigations within 60 days of intake. [5thCir.Op. 60:17; Final Order 80:11]

18. By July 2018, RCCL, and/or any successor entity charged with inspections of child care placements, will identify, track and address concerns at facilities that show a pattern of contract or policy violations. Such facilities must be subject to heightened monitoring by DFPS and any successor entity charged with inspections of child care placements and subject to more frequent inspections, corrective actions and, as appropriate, other remedial actions under DFPS' enforcement framework. [5thCir.Op. 60:18; Final Order 81:13]

19. Effective immediately, RCCL and/or its successor entity, shall have the right to directly suspend or revoke the license of a placement in order to protect children in the PMC class. [5thCir.Op. 60:19; Final Order 81:14]

20. Effective immediately, RCCL, and any successor entity charged with inspections of child care placements, must consider during the placement inspection all referrals of, and in addition all confirmed findings of, child abuse/neglect and all confirmed findings of corporal punishment occurring in the placements. During inspections, RCCL, and any successor entity charged with inspections of child care placements, must monitor placement agencies' adherence to obligations to report suspected child abuse/neglect. When RCCL, and any successor entity charged with inspections of child care placements, discovers a lapse in reporting, it shall refer the matter to DFPS, which shall immediately investigate to determine appropriate corrective action, up to and including termination or modification of a contract. [5thCir.Op. 60:20; Final Order 82:15]

21. Effective March 2018, DFPS shall implement within the child's electronic case record a profile characteristic option for caseworkers or supervisors to designate PMC and TMC children as "sexually abused" in the record if the child has been confirmed to be sexually abused by an adult or another youth. [5thCir.Op. 60:21; Final Order 88:1]

22. Effective March 2018, DFPS shall document in each child's records all confirmed allegations of sexual abuse in which the child is the victim. [5thCir.Op. 60:22; Final Order 88:2]

23. Effective immediately, all of a child's caregivers must be apprised of confirmed allegations at each present and subsequent placement. [5thCir.Op. 60:23; Final Order 88:3]

24. Effective immediately, if a child has been sexually abused by an adult or another youth, DFPS must ensure all information about sexual abuse is reflected in the child's placement summary form, and common application for placement. [5thCir.Op. 60-61:24; Final Order 88:4]

25. Effective immediately, all of the child's caregivers must be apprised of confirmed allegations of sexual abuse of the child at each present and subsequent placement. [5thCir.Op. 60:25; Final Order 89:5]

26. Effective immediately, DFPS shall ensure a child's electronic case record documents "child sexual aggression" and "sexual behavior problem" through the profile characteristic option when a youth has sexually

abused another child or is at high risk for perpetrating sexual assault. [5thCir.Op. 61:26; Final Order 89:6]

27. Effective immediately, if sexually aggressive behavior is identified from a child, DFPS shall also ensure the information is reflected in the child's placement summary form, and common application for placement. [5thCir.Op. 61:27; Final Order 89:7]

28. Effective immediately, DFPS must also document in each child's records all confirmed allegations of sexual abuse involving the child as the aggressor. [5thCir.Op. 61:28; Final Order 89:8]

29. Effective immediately, all of the child's caregivers must be apprised at each present and subsequent placement of confirmed allegations of sexual abuse involving the PMC child as the aggressor. [5thCir.Op. 61:29; Final Order 89:9]

30. Within 90 days of the Court's Final Order, DFPS shall create a clear policy on what constitutes child on child sexual abuse. Within 6 months of the Court's Final Order, DFPS shall ensure that all staff who are responsible for making the determinations on what constitutes child on child sexual abuse are trained on the policy. [5thCir.Op. 61:30; Final Order 89:10]

31. Effective March 2018, DFPS shall ensure that all abuse and neglect referrals to the 24-hour hotline regarding a foster home where any PMC child is placed, which are not referred for a child abuse and neglect investigation, are shared with the PMC child's caseworker and the caseworker's supervisor within 48 hours of DFPS receiving the referral. Upon receipt of the information, the PMC child's caseworker will review the referral history of the home and assess if there are any concerns for the child's safety or well-being, and document the same in the child's electronic case record. [5thCir.Op. 61:31; Final Order 42:9]

The Fifth Circuit determined that the requirement of a 24-hour hotline was invalid. 5thCir.Op. 61 n.48. Accordingly, the hotline reference should be removed from number 31 above. Similarly, the Fifth Circuit rejected the imposition of caseload caps for RCCL. *Id.* at 62. Instead, DFPS should be allowed to undertake "a comprehensive workload study" and establish "internal guidelines for caseload ranges based on what DFPS determines RCCL investigators can safely manage." *Id.*

**B.**     The Court should not include in its modified injunction any of the following provisions, which the Fifth Circuit ruled invalid:

1.     Effective immediately, DFPS shall ensure that it maintains a statewide, 24-hour hotline accessible by PMC children in DFPS custody to report abuse and neglect. The hotline shall receive, screen and assign for investigation reports of maltreatment of children in the PMC class. [5thCir.Op. 62.1; Final Order 39:1]

2.     In order to ensure that PMC children have access to the 24-hour hotline to report abuse and neglect, within 30 days of the Court's Final Order, DFPS shall either require all foster homes and therapeutic foster homes housing PMC children to maintain a landline phone accessible to the child in the home, with the toll-free hotline number appended to the landline or, in the alternative, DFPS shall present an alternative plan to the Court within 30 days of the Court's Final Order to ensure PMC children have access to the hotline to report abuse and neglect. [5thCir.Op. 62.2; Final Order 39:3]

3.     Effective March 2018, and ongoing thereafter, DFPS shall ensure the central case record of every child in the PMC class includes documentation confirming the method(s) discussed with the child for notifying DFPS if the child needs to report abuse or neglect. For children who are verbal, the documentation must include the date the reporting methods were discussed with the child and confirmation of their level of understanding. The discussion with the child must occur within 48 hours of entering any new placement. [5thCir.Op. 62-63.3; Final Order 42:6]

4.     Within 60 days of the Court's Final Order, all calls to the DFPS 24-hour hotline shall be recorded. All recorded calls shall be stored for at least two years using a call recording system. Recordings shall be made available to the monitor(s) for monitoring and verification purposes. [5thCir.Op. 63.4; Final Order 42:7]

5.     Effective March 2018, and ongoing thereafter, DFPS shall ensure that a well-trained, experienced and qualified supervisor reviews and approves all screening decisions at the 24-hour hotline involving children in the PMC class. The monitors will conduct routine audits of screened-out reports involving children in the PMC class to confirm that DFPS conducted a complete review of the available record (including past intake reports involving the child and the placement) and due consideration was given to the risks to children when determining whether to assign a matter for investigation. [5thCir.Op. 63.5; Final Order 42:8]

6. Effective immediately, DFPS shall ensure foster caregivers and other placement providers immediately report all allegations of sexual abuse by a child against another child to the 24-hour hotline established by DFPS to screen referrals of abuse and neglect. [5thCir.Op. 63.6; Final Order 89:11]

7. Effective March 2018, DFPS shall document, track and report quarterly to the monitor(s) all referrals of child-on-child sexual abuse involving children in DFPS custody made to the 24-hour hotline established by DFPS to screen referrals of abuse and neglect. [5thCir.Op. 63.7; Final Order 89:12]

8. Effective immediately and ongoing thereafter, DFPS shall report quarterly to the monitor(s) and confirm that all reports of child on child sexual abuse involving children in DFPS custody that have been referred to the 24-hour hotline have been assigned for investigation for, at minimum, neglectful supervision by the placement caregiver(s). [5thCir.Op. 63.8; Final Order 89:13]

9. Effective May 2018, the State of Texas shall ensure the staff who investigate allegations of abuse and neglect of children in the PMC class have caseloads of no more than 14 investigations, consistent with the median caseload of investigations found in the Workload Study. Although this is twice the number of investigations the Workload Study concluded was reasonable for child abuse and neglect investigators in light of the amount of time they expend on their cases, 14 investigations shall serve as the top of their workload range. [5thCir.Op. 63.9; Final Order 79:1]

10. Effective immediately, DFPS shall ensure that investigations of abuse and neglect of PMC children while they are in licensed placements are conducted by staff whose caseload is exclusively focused on child maltreatment investigations. [5thCir.Op. 64.10; Final Order 42:5]

11. Effective May 2018, the State of Texas shall ensure that the staff who conduct licensing standards investigations for alleged violations involving children in the PMC class have caseloads of no more than 14 standards investigations, consistent with the maximum caseload of standards investigations found in the Workload Study. Although this is nearly three times the number of standards investigations the Workload Study concluded was reasonable for inspectors in light of the amount of time they expend on their cases, 14 standards investigations shall serve as the top of their workload range. Caseloads for staff shall be pro-rated for those who are less than fulltime. Caseloads for staff who spend part-time in

investigative work and part-time in other functions must be pro-rated accordingly. [5thCir.Op. 64.11; Final Order 79:2]

12. Effective March 2018 and ongoing thereafter, the State of Texas shall publicly post on its website all licensing inspections by RCCL, and/or its successor entity, redacting child identifying information and other information deemed confidential under state and federal law and regulation. The posted information shall include the full narrative inspection report, the outcome of the inspection, inspection violations and whether RCCL, and/or its successor entity, implemented corrective or adverse action as a result of the violations. The posted information shall also include all corrective action plans required by RCCL and/or other successive entities and the dates RCCL and/or other successive entities accepted corrective action plans submitted by violating agencies and the status of those corrective action plans. [5thCir.Op. 64.12; Final Order 80:12]

## V.   PLACEMENT ARRAY

A.     The Fifth Circuit ruled that Defendants' policies and practices related to placement array do not violate Plaintiffs' constitutional rights and determined that all the remedial provisions in this Court's Final Order addressing that issue are invalid. 5thCir.Op. 64. Accordingly, the Court should *not* include the following provisions in its modified injunction:

1. DFPS shall immediately implement a policy that establishes single- child homes as the presumptive placement for all sexualized children, either as the aggressor or the victim. The policy also will allow for exceptions, including: placement in a therapeutic setting for treatment; placement with siblings when the safety of all children involved can be closely monitored and secured; a thorough and documented assessment certifies that it is in the child's best interest to be placed in a home with other children and the safety of all children involved can be closely monitored and secured. Any exceptions applied under this policy must be approved and documented by a senior DFPS manager. [5thCir.Op. 64-65:1; Final Order 98:1]

2. DFPS shall ensure it has at least as many foster home placements for children, by catchment area, by the end of FY 18 as the agency found it

requires to meet the needs of children in its January 2017 Foster Care Needs Assessment, Table 5. DFPS shall report quarterly to the monitor(s) on the available supply of foster homes for children by catchment area as of the last date of the quarter. [5thCir.Op. 65:2; Final Order 98-99:2]

3. By June 2018, DFPS shall complete and submit to the Court an update of its January 2017 Foster Care Needs Assessment, and include:

    a. A review and assessment of the placement needs of sibling groups that are separated into different placements and children who have been identified as sexually aggressive or whose IMPACT records document their having been sexually abused.

    b. Data on the number of foster homes in each county that could be readily designated as single-child homes.

    c. Data on the number of homes in each county available for the placement of sibling groups of various sizes.

    d. An analysis of the number of homes in each county and region that have a deficit or surplus of single-child homes to meet the needs of children from the same counties and regions who are sexually aggressive or have been sexually abused.

    e. An analysis of the number of homes in each county and region that have a deficit or surplus of homes that can meet the placement needs of sibling groups from the same counties and regions or catchment areas. [5thCir.Op. 65:3; Final Order 100:3]

4. Effective immediately, DFPS shall immediately establish a tracking mechanism to identify how many children are in all placements where a PMC child resides, including foster, biological, non-foster and adoptive children, as well as each placement's licensed capacity. By May 2018, DFPS shall publish this information on its website and update the information quarterly. [5thCir.Op. 65:4; Final Order 101:4]

5. Effective June 2018, DFPS shall establish and implement a policy that requires a transition plan of no less than two weeks to change a PMC child's placement if the disruption is due to a change in the child's level of care. The policy shall require a documented assessment to determine if the child should remain in the same placement for an extended period if the assessment determines the child's behavioral or emotional challenges are likely to re-escalate if the placement is changed. [5thCir.Op. 65-66:5; Final Order 101-02:5]

6. Beginning in June 2018, DFPS shall report to the monitor(s) semi-annually on PMC children's placement moves, and ensure that all such moves, and the reasons for the placement moves, are documented in the child's electronic case record. [5thCir.Op. 66:6; Final Order 102:6]

## VI.  FOSTER-GROUP HOMES

A.    The Fifth Circuit ruled that Defendants' policies and practices related to foster-group homes do not violate Plaintiffs' constitutional rights and determined that all the remedial provisions in this Court's Final Order addressing that issue are invalid. 5thCir.Op. 64. Accordingly, the Court should *not* include the following provisions in its modified injunction:

1. Effective immediately and ongoing thereafter, no PMC child may reside in a Foster Group Home placement. [5thCir.Op. 66:1; Final Order 105:1]

2. Effective immediately and ongoing thereafter, no PMC child may reside in any family-like placement that houses more than six children, inclusive of biological, adoptive, non-foster and foster children. Family-like placements include non-relative foster care, tribal foster care, and therapeutic foster care. [5thCir.Op. 66:2; Final Order 111:2]

## VII.  Crossover Provisions

**B**.     The Fifth Circuit also addressed several injunctive provisions that it described as "'crossover' provisions" because they "address multiple violations" or "target other alleged DFPS deficiencies." 5thCir.Op. 66. The Fifth Circuit concluded that the following crossover provisions are valid:

> 1.     Within four months of the Court's Final Order, DFPS shall submit to the Court a plan for an integrated computer system, with specific timeframes, that contains each PMC child's complete records, including but not limited to a complete migration of all medical, dental, educational, placement recommendations, court records, mental health and caseworker records. The mental health, dental and medical information shall include all visits to the provider with detailed examinations, diagnoses, test results, immunizations, medications (including the reasons for each), history of abuse, treatment plans, and any other information necessary for the safety of the children. DFPS shall have this system fully functional within one year of the Final Order date. [5thCir.Op. 66-67:1; Final Order 25:1]

> 2.     Within four months of the Court's Final Order, DFPS shall submit to the Court a plan for an integrated computer system, with specific timeframes, that contains each PMC child's complete records, including but not limited to a complete migration of all medical, dental, educational, placement recommendations, court records, mental health and caseworker records. The mental health, dental and medical information shall include all visits to the provider with detailed examinations, diagnoses, test results, immunizations, medications (including the reasons for each), history of abuse, treatment plans, and any other information necessary for the safety of the children. DFPS shall have this system fully functional within one year of the Final Order date. [5thCir.Op. 67:2; Final Order 25:1]

However, provisions 1 and 2 immediately above are identical. Thus, inclusion of both provisions in this Court's modified injunction would constitute a needless redundancy.

C. Instead of duplicating the same provision, it appears that the Fifth Circuit may have intended to include the following provision, which appeared immediately following the above provision in the Court's Final Order:

2. The DFPS plan shall ensure that DFPS caseworkers and supervisors serving PMC children, as well as CASA staff and volunteers, and any public or private staff assigned to oversee PMC children's care, have access to an integrated, current, complete and accurate case record for PMC children on their caseloads, consistent with prevailing state and federal law, including, for example, the child's current legal status and permanency goal; the child's Transition Plan (where applicable); the child's placement information and all safety-related and licensure/verification information about the child's placement, including investigation and inspection reports, enforcement actions and internal reviews conducted by CPAs15; the child's historic and current caseworker(s) and supervisor(s), with corresponding contact information; the child's complete medical, dental, educational and mental health information and records. [Final Order 25:2]

D. The Fifth Circuit concluded that all of the crossover provisions related to placement array and foster-group homes are invalid, as well as all provisions intended to remedy additional, related concerns about the foster-care system. 5thCir.Op. 67. Accordingly, the Court should *not* include the following provisions in its modified injunction:

1. Effective immediately, the electronic case record of each child in the PMC class must include the child's photograph that is not more than one year old, except as provided in paragraph three, below. [5thCir.Op. 67:1; Final Order 37:1]

2. Effective immediately, when a child enters the PMC class, DFPS shall ensure that a photograph is taken of the child within 48 hours and uploaded into the child's electronic case record promptly. DFPS shall ensure the date of the photograph is recorded in the child's case record. [5thCir.Op. 67-68:2; Final Order 38:2]

3.      Effective immediately, with respect to all PMC children under the age of three years, DFPS shall ensure that photographs are taken and uploaded to the child's IMPACT case record at least semi-annually and the date of the photograph must be recorded in the child's case record. [5thCir.Op. 68:3; Final Order 38:3]

4.      Effective immediately, DFPS shall ensure adequate training to all caseworkers on how to use the appropriate technology to photograph a child and upload the photograph to the child's electronic case record. [5thCir.Op. 68:4; Final Order 38:4]

5.      Effective immediately, DFPS shall ensure and document that all youth in the PMC class, aged 16 or older, receive copies of their birth certificate and social security card upon turning 16. [5thCir.Op. 68:5; Final Order 46:1]

6.      Effective immediately, DFPS shall ensure and document that all youth in the PMC class, prior to aging out of care, receive copies of their birth certificate, social security card, most current high school transcript, copies of their last physical health and dental examinations, copies of their immunization record, and copies of identifying information needed for Medicaid. DFPS must document an acknowledgment of receipt, along with a short description of the youth's plan for safekeeping the documents, signed by the youth and their caseworker in the electronic case record prior to the youth aging out of care. Prior to the youth aging out of care, DFPS shall take all reasonable steps, including the filing of an application, to assist the youth in signing up for either Former Foster Care Children's Medicaid or Medicaid for Transitioning Foster Care Youth, and shall document those steps in the child's electronic record. Each of these programs requires an affirmative act to change from the under-18 Medicaid to the over-18 previous foster care Medicaid. [5thCir.Op. 68:6; Final Order 46-47:2]

7.      Effective within three months of the Court's Final Order and ongoing thereafter, DFPS shall identify all PMC youth aged 14 and older who have not yet received the following DFPS independent living preparation services: the life skills assessment, a Circles of Support (COS) or Transition Plan Meeting (TPM), and a recently updated (within six months for youth 16 and older and one year for youth 14 and older) transition plan. DFPS shall ensure that all PMC youth who have been identified immediately above receive these services and that the PMC youth's transition plan is developed. [5thCir.Op. 68:7; Final Order 47:3]

8.     Effective June 2018, DFPS shall ensure all 14- and 15-year-old youth in the PMC class receive DFPS' Preparation for Adult Living (PAL) services. [5thCir.Op. 68:8; Final Order 47:4]

9.     Effective June 2018, DFPS shall ensure that if a PMC youth's disability is a barrier to participation in PAL services or supports, appropriate accommodations shall be identified that allow the youth to meaningfully participate, and DFPS shall document any accommodations in the child's electronic case record. [5thCir.Op. 69:9; Final Order 47:5]

10.    Effective June 2018, DFPS shall ensure PMC youth receive a life-skills assessment within 45 days of turning 14, and are reassessed annually, and that the results of these assessments are documented and available in the child's electronic case record. [5thCir.Op. 69:10; Final Order 47:6]

11.    Effective June 2018, DFPS shall ensure that PMC youth receive DFPS's Circles of Support (COS) or Transition Planning Meeting (TPM) within 45 days of turning 14 years old, and then receive either COS or TPM in conjunction with the child's permanency planning meeting every four months, until the youth ages out or attains permanency. The purpose of such meetings is to develop a youth's transition plan with an eye toward building skills to support a youth's specific strengths and address needs in preparation for independence. [5thCir.Op. 69:11; Final Order 47-48:7]

12.    Effective March 2018, DFPS shall ensure that primary caseworkers assigned to PMC children develop a plan, in consultation with the child's attorney ad litem, to facilitate the sealing or expungement of any eligible criminal or juvenile records for offenses for which the youth was adjudicated or convicted prior to the youth aging out of care. DFPS shall ensure the efforts to do so are documented in the child's electronic case record. [5thCir.Op. 69:12; Final Order 48:8]

13.    Effective March 2018, DFPS shall ensure that the caseworker puts a plan in place prior to a PMC youth turning 18 years of age, documented in the case record, detailing how the youth will access benefits the youth is eligible to receive once they leave DFPS care, including the DFPS transitional living allowance, Social Security Disability Insurance benefits, the DFPS aftercare room and board assistance, and DFPS's Education and Training Vouchers. [5thCir.Op. 69:13; Final Order 48:9]

14.     Effective June 2018, DFPS shall ensure driver's education classes are provided to all PMC youth who are old enough to receive a learner's permit and choose to take driver's education. DFPS may create exceptions for PMC youths who are not developmentally or medically able to safely participate in driver's education. [5thCir.Op. 69:14; Final Order 48:10]

15.     Effective immediately, DFPS shall ensure that prior to exiting care, each PMC youth age 14 and older is assisted in creating e-mail accounts so that they may receive encrypted copies of personal documents and records, in addition to receiving copies of originals. [5thCir.Op. 69:15; Final Order 49:12]

16.     Effective immediately, DFPS shall request the appointment of an Attorney ad litem for all PMC children from each court in which a suit is pending in which a PMC child does not have Attorney ad litem representation, citing the Court's Final Order. [5thCir.Op. 70:16; Final Order 53:1]

17.     Within 30 days of the Court's Final Order, DFPS shall present a plan to the Court to ensure reimbursement to Attorneys ad litem in those courts that do not currently provide Attorneys ad litem for PMC children. If DFPS fails to present a plan, DFPS shall reimburse those fees necessary to provide Attorneys ad litem in those courts that do not currently provide Attorneys ad litem for PMC children. [5thCir.Op. 70:17; Final Order 55:2]

18.     DFPS shall institute and incorporate caseworker training (minimally into the Conservatorship Specialty Track) about child health that describes:

   a.     The health vulnerabilities of foster youth (pages 1 and 2 of the American Academy of Pediatrics "Fostering Health: Healthcare for Children and Adolescent in Foster Care");

   b.     Specifically, how to use child and family visits to obtain and update healthcare information;

   c.     The utility of children's electronic case record, for improving the health of foster youth. [5thCir.Op. 70:18; Final Order 56:2]

19.     Effective immediately, DFPS shall make every effort to obtain and make available a child's medical records within 24 hours of the child

entering the custody of DFPS. Caseworkers shall document their efforts to obtain and make available children's medical records within 48 hours of children entering DFPS custody. [5thCir.Op. 70:19; Final Order 56:2]

20.     Effective June 2018, DFPS will ensure that every PMC child has a medical home. The medical home is a health care delivery model led by a health care provider to provide comprehensive and continuous medical care and care management to patients with a goal to obtain positive health outcomes. The medical home shall be obliged (by policy and contract):

   a.  To maintain and update all medical fields of the child's central electronic record;

   b.  To coordinate care for routine and emergency healthcare needs;

   c.  To ensure timely evaluations and assessments for all health needs, including behavioral health (including psychotropic oversight), dental care, and chronic health conditions. [5thCir.Op. 70:20; Final Order 57:4]

21.     Effective June 2018, DFPS shall ensure children in the PMC class receive a specific developmental assessment of at least one of the following screenings within 90 days of each child's birthday:

   a.  Birth to 10 years: Ages and Stages Questionnaire, Ages and Stages Questionnaire: Second Edition, or the PEDS developmental screening and assessment;

   b.  11 years to 21 years: the Pediatric Symptom Checklist (PSC)-35, the Youth Pediatric Symptom Checklist (Y-PSC), the Patient Health Questionnaire-9 (PHQ-9), or the CRAFFT screening test)

   c.  If DFPS does not believe any of these tests to be reliable, it may propose its own developmental assessments to the Court within 30 days of the date of this Order. Screening results from the developmental assessment, including follow-up/red flag items, shall be inputted into the child's electronic case record within 72 hours. [5thCir.Op. 70-71:21; Final Order 57:5]

22.     Effective June 2018, DFPS shall ensure the child's central electronic case record has functional internal (red flag) alerts notifying caseworkers of:

a. Follow up needed;
b. Assessments/screening required or indicated;
c. Evaluations required or indicated;
d. Immunizations required or indicated; and
e. Appointments missed or cancelled.
   [5thCir.Op. 71:22; Final Order 57-58:6]

23.     Effective May 2018, DFPS shall institute a policy that uses the caseworker visits to verify and report on health status by answering and documenting in the PMC child's electronic case record these questions:

a. Are there outstanding red flag items for this child?
   i.     Greater than 20 days?
   ii.    Greater than 90 days?

b. Has this child visited a healthcare practitioner in the last 90 days?

c. Can this child (over 11) name his/her health care needs?
   [5thCir.Op. 71:23; Final Order 58:7]

24.     Effective March 2018, DFPS shall implement a policy that requires that no unrelated children more than three years apart in age be placed in the same room. The policy may also establish exceptions, including a thorough and documented assessment that certifies it is in the child's best interest or that no risk of harm would result from placing any unrelated children more than three years apart in the same room. Any exceptions applied under this policy must be approved and documented in the child's electronic record by the DFPS county director. [5thCir.Op. 71:24; Final Order 92:1]

25.     Effective March 2018, DFPS shall implement a policy that requires that no unrelated children with different service levels be placed in the same room. The policy may also establish exceptions, including a thorough and documented assessment by DFPS that certifies it is in the child's best interest or that no risk of harm would result from placing any unrelated children of different service levels in the same room. Any exceptions applied under this policy must be approved and documented in the child's electronic case record by the county director. [5thCir.Op. 72:25; Final Order 92:2]

26.     Effective immediately, DFPS may not place a child in the PMC class in an office overnight, and must track all instances if it does so,

and report the same to the monitor(s) monthly. If, under any circumstance, a child in the PMC class spends the night in an office, DFPS staff must document that fact, and the reason, in an electronically available log maintained by DFPS in each county. These logs shall be submitted on the first day of every month to a designated senior manager in DFPS' central office and to the monitor(s). The designated DFPS senior manager shall review these logs monthly and take immediate follow up action to identify and address problems encountered at the county level with respect to securing minimally adequate, safe placements for children in the PMC class. [5thCir.Op. 72:26; Final Order 92-93:3]

27. Within six months of the Court's Final Order, all PMC children under two years of age shall be placed in a family-like setting, including non- relative foster care, tribal foster care, kinship foster care and therapeutic foster care. DFPS may make exceptions to family-based placements for sibling groups of four or more children who cannot otherwise be placed together, children whose individual needs require hospitalization, treatment and/or medical care or young children who are placed with their minor parent in the PMC class and who may require services provided in a non-family-like placement. All exceptions must be approved by a supervisor and documented in the child's electronic case record. [5thCir.Op. 72:27; Final Order 93:4]

28. Within 12 months of the Court's Final Order, all PMC children under six years of age shall be placed in a family-like setting, including non- relative foster care, tribal foster care, kinship foster care and therapeutic foster care. DFPS may make exceptions to family-based placements for sibling groups of four or more children who cannot otherwise be placed together, children whose individual needs require hospitalization, treatment and/or medical care or young children who are placed with their minor parent in the PMC class and who may require services provided in a non-family-like placement. All exceptions must be approved by a supervisor and documented in the child's electronic case record. [5thCir.Op. 72-73:28; Final Order 93:5]

29. Within 24 months of the Court's Final Order, all PMC children under the age of 13 shall be placed in a family-like setting, including non- relative foster care, tribal foster care, kinship foster care and therapeutic foster care. DFPS may make exceptions to family-based placements for sibling groups of four or more children who cannot otherwise be placed together, children whose individual needs require inpatient psychiatric hospitalization, treatment and/or medical care or young children who are placed with their minor parent in the PMC class

and who may require services provided in a non-family-like placement. All exceptions must be approved by a supervisor and documented in the child's electronic case record. [5thCir.Op. 73:29; Final Order 93:6]

**E.** The Fifth Circuit's opinion did not address the following provisions:

2. The DFPS plan shall ensure that DFPS caseworkers and supervisors serving PMC children, as well as CASA staff and volunteers, and any public or private staff assigned to oversee PMC children's care, have access to an integrated, current, complete and accurate case record for PMC children on their caseloads, consistent with prevailing state and federal law, including, for example, the child's current legal status and permanency goal; the child's Transition Plan (where applicable); the child's placement information and all safety-related and licensure/verification information about the child's placement, including investigation and inspection reports, enforcement actions and internal reviews conducted by CPAs15; the child's historic and current caseworker(s) and supervisor(s), with corresponding contact information; the child's complete medical, dental, educational and mental health information and records. [Final Order 25:2]

11. Effective immediately, DFPS shall ensure that a plan is in place, and documented in the case record, to provide all PMC youth age 16 and older with safe, stable housing upon exit from care. [Final Order 49:11]

1. Within 30 days of the Court's Final Order, DFPS shall present the Court with a plan to address and remediate missing and nonexistent medical and mental health care records, consistent with the American Academy of Pediatrics "Fostering Health: Healthcare for Children and Adolescent in Foster Care." [Final Order 56:1]

The first provision is discussed above at pages 15-16. The latter two provisions should not be included in this Court's modified injunction for several reasons. First, the Fifth Circuit did not expressly declare them to be valid. Second, the Fifth Circuit invalidated all the provisions related to the above remedial provisions in the same categories. 5thCir.Op. 68-71. And, third, the unmentioned remedial provisions,

although not explicitly declared invalid, would nevertheless have been negated by the Fifth Circuit's overarching order to vacate the permanent injunction. 5thCir.Op. 73. In other words, anything not expressly declared valid by the Fifth Circuit would be negated by the catchall order to vacate the former permanent injunction.

## CONCLUSION

The Court should issue a modified injunction consistent with the Fifth Circuit's opinion and the scope of the limited remand.[2]

---

[2] Defendants believe that the injunction can be modified consistent with the Fifth Circuit's opinion without requiring a hearing in this Court. However, should the Court set a hearing, Defendants respectfully inform the Court that Attorney-in-Charge Thomas Albright is currently in trial in the Western District of Texas, San Antonio Division. The trial is expected to last until the last week of November.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID TALBOT
Interim Chief, General Litigation Division

/s/ Thomas A. Albright
THOMAS A. ALBRIGHT
Attorney-in-Charge
Texas Bar No. 00974790
Southern District No. 107013
ANDREW B. STEPHENS
Texas Bar No. 24079396
Southern District No. 1385273
Assistant Attorneys General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120; (512) 320-0667 FAX

TODD LAWRENCE DISHER
Special Counsel for Civil Litigation
Texas Bar No. 24081854
Southern District ID# 2985472
Civil Litigation Division
P.O. Box 12548 (MC 001)
Austin, TX 78711-2548
(512) 936-2266

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2018, a true and correct copy of the foregoing document has been filed in accordance with the Electronic Document Filing System of the Southern District of Texas, thus providing service to all participants.


/s/ Thomas A. Albright
THOMAS A. ALBRIGHT
Assistant Attorney General