IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity | § | |
| as Governor of the State of Texas, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF CLASS'S APPLICATION
FOR ATTORNEY FEES AND EXPENSES**

For eight years, Class Counsel has worked to correct systemic defects in the Texas foster

care system that did harm and, absent this suit, would continue to harm the most vulnerable citizens

in this State. This suit has held the State accountable for acting with deliberate indifference to a

serious risk of harm that children face within its foster care system. Plaintiffs prosecuted a complex

class action suit for longstanding violations of children's constitutional rights, which culminated

in a landmark injunctive order from this Court aimed at curing a chronically broken system and an

appellate affirmance on the core issues of overburdened caseworkers and deficient oversight. In

short, the relief secured is vital to a safe system.

This case has hardly been easy. It involved vast discovery, two rounds of class certification

briefing and two hearings, an intense two-week liability trial, appointment of special masters,

recommendations of remedies, and serial appeals. The State mounted a defense unprecedented in

its hostility toward fixing a defective child welfare system. It tried at every turn to prevent *any*

remedies, incurring at least a reported $10 million in its own attorney fees. In fact, it even asked

for another $10 million from the Legislature for future litigation costs associated with this case.

Despite this opposition, the Court entered a watershed order in favor of the Class which the Fifth Circuit affirmed in key respects. Based on a finding that the State, with deliberate indifference, violates due process rights of the Class, the Court's order directs the creation and implementation of policies and procedures to keep children free from an unreasonable risk of harm.

Accordingly, the Class files this application to be awarded reasonable fees and costs as prevailing parties under 42 U.S.C. §1983. Civil rights litigants who win material relief are, as a rule, awarded fees and costs. Plaintiffs have exercised discretion in this request, which is more than reasonable, given the nature of the case, commitment and risks involved, and results achieved.

Notably, the private law firm Class Counsel—Yetter Coleman and Haynes and Boone— which devoted thousands of hours to this case, are *not* seeking recovery of *any* of their fees. They do this for the good of the Texas child welfare system. Instead, they ask that the Court order the State to allocate the same amount, some ***$5 million*** of new funding, to programs that benefit current or former foster children, as recommended by the Monitors and approved by the Court. In this way, these firms hope to emphasize the reasonableness of this fee application; ensure a full award to the public-interest Class Counsel—Children's Rights and A Better Childhood—so they can continue their historic work; and, most important, speed up vitally needed reforms for which this prolonged litigation is being pursued.

## PROCEDURAL HISTORY

The Court is familiar with the history of this case, but a brief recounting of the countless motions, many hearings, several appeals, and trial helps provide context for this application and the reasonable, but significant fees that it seeks.

Plaintiffs filed suit through their next friends in 2011, seeking injunctive relief against the Governor, Executive Commissioner of the Texas Health & Human Services Commission, and DFPS Commissioner, in their official capacities. Dkt. 1. Plaintiffs promptly sought certification of

appropriate classes, which the Court granted. Dkt. 49. Defendants filed an interlocutory appeal, and while it was pending *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), was decided. In light of *Dukes*, the Fifth Circuit vacated the certification order and remanded. *M.D. v. Perry*, 675 F.3d 832, 848-49 (5th Cir. 2012).

The Fifth Circuit provided guidance for certification of a targeted class and subclasses as to specific policies or practices. *Id.* at 848. It noted that class claims could include "failure to correct a structural deficiency within the agency, such as insufficient staffing," as long as classwide injunctive relief is appropriate. *Id.* at 847-48. Rejecting the State's position that class treatment is infeasible, the Court identified structural deficiencies upon which classwide claims could be based:

> Indeed, it is not clear how several of the State's alleged failures, such as its failure to (1) maintain sufficient licensing standards for its placements, (2) maintain an adequate number and array of placements, or (3) employ a sufficient number of caseworkers, can be considered "day-to-day, case-by-case operational failures."

*Id.* at 848 n.7. Following this roadmap, Plaintiffs proposed a general class and subclasses to assert common deficiencies in State policies and practices uniformly affecting the safety of all children in each proposed class and subclass. The amended claims attacked structural defects that expose children in the general class and each subclass to risk of harm.

After a three-day hearing, the Court found the Rule 23 requirements satisfied and certified a General Class and three Subclasses. *M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013). The State filed an interlocutory appeal, which was dismissed as untimely. 547 F. App'x 543 (5th Cir. 2013).

In December 2014, the Court conducted an intense two-week bench trial. Seven attorneys argued and presented witnesses at trial on behalf of the parties. The attorneys argued multiple motions and presented opening and closing statements. Forty fact/expert witnesses testified over a total of 71.63 hours of trial. The parties introduced hundreds of exhibits, including one with hundreds of thousands of pages of files on each individual plaintiff, including his or her history,

placements, locations of residence, and medical and psych reports. For this exhibit, Class Counsel spent weeks organizing and presenting the files to the Court for admission into evidence.

The issues at trial were daunting. By their nature, class-action due process claims are complex and challenging. Here, Class Counsel had to prove due process claims for a general class and three subclasses. Their several claims involved a highly dynamic and complex system of state foster care, which Class Counsel had to demonstrate, along with the intricate legal issues involved. The parties presented post-trial arguments in May 2015.

On December 17, 2015, the Court issued liability findings in a 255-page Memorandum Opinion and Verdict. *M.D. v. Perry*, 152 F.Supp.3d 684 (S.D. Tex. 2015). In a seminal ruling, it held that the State violated the Fourteenth Amendment rights of the general class and subclasses to be free from an unreasonable risk of harm and granted injunctive relief, including requiring the State to set and implement policies and procedures to ensure that foster children are kept safe. The Court held that the system has been "broken" for decades, as children are "shuttled throughout a system where rape, abuse, psychotropic medication, and instability are the norm." *Id*. at 828.

The Court found that the State had allowed caseworkers to be overburdened with caseloads "to the point where they cannot perform their duties" to protect the children:

> CVS caseworkers are crucial to the safety and well-being of all foster children, including PMC children. They are responsible for ensuring that PMC children are reasonably safe while in the State's custody. DFPS has known for decades that its primary CVS caseworkers are overburdened to the point where they cannot perform their required duties, namely protecting their foster children from an unreasonable risk of harm.

*Id*. at 797. This allows "important safety-related tasks to fall through the cracks" *Id*. at 781 and has created a "cycle of crisis." *Id*. at 785. Instead of fixing the system, the State has been doing more "compliance than care," reducing "the CPS caseworkers' ability to keep children safe." *Id*. at 780.

As for monitoring the children in its care, the Court found that the State "consciously disregarded" the risk of serious harm to the children:

> DFPS is aware that faulty investigations, not tracking child-on-child abuse, inadequate licensing and enforcement, and an insufficient workforce all pose a substantial risk of serious harm to LFC children. DFPS has consciously disregarded each of these risks.

*Id*. at 806. Indeed, the system overall is "broken, and it has been that way for decades":

> It is broken for all stakeholders, including DFPS employees who are tasked with impossible workloads. Most importantly, though, it is broken for Texas's PMC children, who almost uniformly leave State custody more damaged than when they entered.

*Id*. at 828.

Although the order was not final, the State appealed and requested a stay pending appeal, which this Court denied. Dkt. 371. The Fifth Circuit found the prohibition on "unsafe placements" in foster group homes to be the only appealable part of the order. *M.D. v. Abbott*, No. 16-40023 (5th Cir. 2016). It refused to grant a stay as to this part of the order, noting there was "evidence supporting the grave problems arising from the lack of 24-hour supervision." *Id*. (cites omitted). It recognized that the "special relationship" between the state and children under its care "can trigger substantive due process concerns," and the State's duty "to provide its juvenile wards 'personal security and reasonably safe living conditions.'" *Id*. Financial harm "is outweighed by the harm to the class members and public interest if we stay the case. A stay would allow DFPS to continue to make apparently dangerous placements in foster group homes that lack 24-hour supervision":

> We agree with other circuits that "where the value of the constitutional rights to be protected far outweigh[] administrative costs that might be incurred in formulating a remedy, the lower court proceedings . . . should continue."

*Id*. (orig. alteration; cite omitted). As the Fifth Circuit concluded, "the safety and rights of vulnerable children are at stake." *Id.*

In 2016, the Court appointed Kevin Ryan and Francis McGovern, recognized specialists in child welfare matters, as special masters to address the constitutional deficiencies identified in the liability Order. Dkt. 379. The State sought a writ of mandamus asking that the appointment be vacated, which the Fifth Circuit denied. *M.D. v. Abbott*, No. 16-40482 (5th Cir. 2016).

In late 2016, the special masters filed recommendations for proper remedies. Dkt. 471. In 2017, the Court issued an interim order adopting the recommendations. Dkt. 500. It ordered the special masters to conduct a workload study of caseworkers and of investigators and inspectors, and to work with the State to create policies addressing the recommendations. The special masters hired independent experts to conduct the studies, but DFPS refused to participate in drafting corrective policies.

Later in 2017, the special masters filed a list of proposed remedies responsive to earlier orders. Dkt. 546. The Court issued a Final Order in January 2018, Dkt. 559, incorporating the terms of its 2015 order. The State sought a stay, which the Fifth Circuit granted administratively in April 2018. *M.D. v. Abbott*, No. 18-40057 (5th Cir. 2018).

Six months later, after hearing oral arguments on the merits, the Fifth Circuit issued an opinion affirming core aspects of this Court's Order as to overloaded caseworkers and ineffective oversight/monitoring. *M.D. v. Abbott*, 907 F.3d 237 (5th Cir. 2018). The opinion affirmed the class determination, found that this Court correctly applied the law, and affirmed liability findings (including deliberate indifference by the State) and key remedies. *Id*. As for caseworkers, the Fifth Circuit held that it is reasonable to require the State to generate data and develop guidelines to mitigate the effects of overloaded caseworkers:

> A more flexible method of distributing caseloads that takes into account the complexity of the cases and the experience of the caseworker (and taking into consideration, inter alia, a long list of possible factors such as travel distances and language barriers) is, as a general matter, a sound policy. DFPS absolutely should

> determine how many cases, on average, caseworkers are able to safely carry. Based on its determination, DFPS should establish generally applicable, internal caseload standards. These standards should serve as a rough guide for supervisors who are handling caseload distribution, and they should inform DFPS's hiring goals.

*Id*. at 274. It upheld most of this Court's remedies for inadequate oversight/monitoring, including a workload study and guidelines to determine what cases can be safely managed by caseworkers:

> it would be reasonable for the court to require a comprehensive workload study and the establishment of internal guidelines for caseload ranges based on what DFPS determines RCCL investigators can safely manage.

*Id.* at 279. The Fifth Circuit affirmed the appointment of post-trial monitors to ensure compliance by the State. *Id*. at 276. It remanded the case on certain remedy issues.

After further briefing by the parties, the Court issued its remand order in November 2018, Dkt. 606. The State again appealed – for the *seventh* time in this case – and the parties argued to the Fifth Circuit on March 14, 2019. On July 8, 2019, the Fifth Circuit remanded the case for implementation of the modified injunction.

This litigation has required a massive effort by Class Counsel: eight years of work, 600+ filings, 70 depositions, dozens of hearings, and numerous appeals. We are aware of no other state in the country that has fought as long or hard as Texas in refusing to accept reforms of a deficient foster care system. Now, after litigating for the better part of a decade, the Class has won its claims under the Fourteenth Amendment for consciously-indifferent due process violations by the State. Representing prevailing parties to enforce civil rights, Class Counsel seek reasonable attorney fees and costs under 42 U.S.C. §1988, 28 U.S.C. §1920, and governing law.

## ARGUMENT AND AUTHORITIES

### I.   Governing Legal Standard

Section 1988's fee-shifting provision is designed to deter civil rights violations. *Hudson v. Michigan*, 547 U.S. 586, 594-97 (2006). Its purpose "is to ensure 'effective access to the judicial

process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), and "to make sure that competent counsel was available to civil rights plaintiffs." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

Thus, under the Civil Rights Attorney's Fees Act (§1988), "In any action or proceeding to enforce a provision of section [1983], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b); *Univ. Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978). Although §1988 is phrased in discretionary terms, it is clear that prevailing civil-rights plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429; *see also, e.g.*, *Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). Indeed, "an award should normally be made to a successful plaintiff 'absent exceptional circumstances.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 702 n.11 (1983).

Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. A plaintiff's recovery is not to be reduced by what he must pay his counsel. *Blanchard*, 489 U.S. at 94. In addition to expenses allowed as part of a §1988 fee award, a court will tax the costs enumerated in 28 U.S.C. §1920.

Under §1988, attorney time that is reasonably expended on the litigation is compensable. *See Webb v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 242 (1985). Paralegal time is also compensable. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286-87 (1989). Certain pre-suit work is likewise compensable:

> Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed "on the litigation." Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.

*Webb*, 471 U.S. at 243.; *see also Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir. 1993). Other examples include "time spent beforehand investigating facts and researching the viability of potential legal claims." *McDonald v. Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988).

In addition to attorney fees, all reasonable out-of-pocket expenses "are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). Such expenses include copying, paralegal assistance, travel, telephone, and other reasonable costs. *Id*; *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (accord); *Deleon v. Abbott*, 687 Fed. Appx. 340, 342 (5th Cir. 2017) (prevailing party may also recover all "reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone. . . because they are part of the costs normally charged to a feepaying client") (cite omitted); *see also, e.g.*, *Martinez v. Donna Indep. School Dist.*, 2010 WL 11636123, at *6 (S.D. Tex. 2010); *Jackson Women's Health Organization v. Currier*, 2019 WL 418550, at *11 (S.D. Miss. 2019); *Serafine v. Branaman,* 2016 WL 6069184, at *4 (W.D. Tex. 2016); *Ali v. Stephens*, 2015 WL 2061981, at *1 (E.D. Tex. 2015).

"The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys." *Int'l Woodworkers of Am., AFL-CIO & Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174, 1184 (5th Cir. 1986), *aff'd & remanded sub nom. Crawford Fitting Co. v. J. T. Gibbons, Inc.,* 482 U.S. 437 (1987). To preserve the fee award at the rates approved by the court, expenses should also be included in the award. Such an award is consistent with the goal to "attract competent counsel" to "enforce the covered civil rights statutes" without "produc[ing] windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010).

Additionally, a "district court may award costs and fees for time spent litigating a cost or fee request." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995). And work done after the judgment that is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation" also is compensable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 560 (1986). Further, a court may award interest on attorney fees. *See Gates v. Collier*, 616 F.2d 1268, 1279 (5th Cir. 1980).

## II.    Class Members Are Prevailing Parties.

There is no dispute here that the Class is a prevailing party. It secured the core relief sought in the lawsuit including a finding that the State violated the civil rights of the foster children and an injunction requiring the State to remedy defects in the broken system. Dkt. 606. The Fifth Circuit largely affirmed the order and remanded for this Court to implement its ruling that the system be reformed.

One is a prevailing party "for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *accord Texas State Teachers Assoc. v. Garland ISD*, 489 U.S. 782, 789 (1989). A plaintiff prevails "when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1,4 (2012) (cite omitted). This element of a §1988 fees award is satisfied here.

## III.    This Fee Request Is Reasonable and Conservative.

In awarding attorney fees, a court is not required to "achieve auditing perfection," nor should it act as a "green-eyeshade accountant." *DeLeon*, 687 Fed. Appx. at 342-43 (cite omitted). The "essential goal of shifting fees is to do rough justice." *Id*. at 342. Here, as reflected in billing records, invoices, receipts, declarations, and documentation with this application, the requested

fees, expenses, and costs are for time and money reasonably and well spent on the litigation and thus compensable. *See, e.g., Webb*, 471 U.S. at 242.

To determine recoverable fees, the first step is to calculate a lodestar amount by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate, which is the market rate in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Satisfactory evidence of the reasonableness of the rate includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11.

A court then is to consider whether to adjust the lodestar upward or downward, considering the circumstances and *Johnson* factors, namely:

1. time and labor required;
2. novelty and difficulty of the questions;
3. skill requisite to perform the legal service properly;
4. preclusion of other employment by the attorney due to acceptance of the case;
5. customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. amount involved and the results obtained;
9. experience, reputation, and ability of the attorneys;
10. "undesirability" of the case;
11. nature and length of the professional relationship with the client; and
12. awards in similar cases.

*Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 n.5 (5th Cir. 1999).

Here, Class Counsel spent 50,000+ hours of attorney and paralegal time over eight years. Accordingly, the Class respectfully requests fees of $14,780,640.22 for the valuable work of its

private-interest Class Counsel—Children's Rights and A Better Childhood. In addition, the Class requests that the Court order the State to allocate $6,034,275.25 in new funding, which is the amount of reasonable fees for the work of the Class's private law firm counsel—Yetter Coleman and Haynes and Boone, to a program that benefits current or future Texas foster children, as recommended by the Monitors and approved by the Court. Lastly, the Class seeks an award of its paid expenses of $504,674.08. All of these amounts are reasonable and necessary under the *Johnson* factors.

> ### A.    The time and labor were significant.

From the filing of the complaint through class certification, motions, discovery, trial, and many appeals, prosecution of this case required significant time and labor on the part of Class Counsel. The Class has been represented in this matter by attorneys from four entities:

1.    Children's Rights, a New York-based, nonprofit, public interest group;

2.    A Better Childhood, a New York-based, nonprofit, public interest group;

3.    Haynes & Boone LLP, a national law firm based in Texas; and

4.    Yetter Coleman LLP, a Texas-based litigation boutique.

*See* Ex. A (S. Bartosz Decl.), Ex. B (M. Lowry Decl.), Ex. C (B. McNeil Decl.), and Ex. D (P. Yetter Decl.). During the case, Class Counsel worked seamlessly to avoid duplication while providing superior representation in this complex dispute. *See* Ex. A at ¶20; Ex. C at ¶9; Ex. D at ¶19. In 2009, Haynes and Boone and Yetter Coleman associated with Children's Rights to institute this case. *See* Ex. C at ¶6; Ex. D at ¶4. By that point, the firms already had done years of factual and legal investigation to gather evidence, research legal theories, develop strategies, and draft the complaint. *See* Ex. A at ¶4.

Despite the cohesiveness and efficiency of Class Counsel, the State's litigation approach was unflinching and required equally significant time and effort. For example, the State filed many

motions to dismiss, fought all efforts to certify a class, resisted significant discovery, vigorously contested the trial, and repeatedly did or tried to appeal adverse rulings. In response, Class Counsel was forced to spend great resources and time rebutting the State's efforts, especially in discovery. For example, numerous Rule 30(b)(6) depositions were rescheduled and retaken because the State did not produce knowledgeable witnesses, and Class Counsel was forced to go to the Court on basic matters of discovery. Dkt. 86, Order on Discovery.

Even without the disputes, discovery was substantial: the parties produced 700,000+ pages of documents and conducted nearly 70 depositions. *See* Ex. A at ¶¶21, 23. Significant time was required to review and analyze documents and prepare for depositions. *Id.* at ¶23. Class Counsel tried to avoid duplication and proceed efficiently. Individual attorneys were responsible for certain class claims, experts and subclasses, and to specialize in certain aspects of the case, to avoid duplication. Depositions were staffed efficiently. *See* Ex. A at ¶20. By contrast, the State used inefficient and expensive tactics, like presenting Rule 30(b)(6) witnesses with little to no knowledge on the noticed topics and taking repeated appeals. The efforts by Class Counsel to proceed efficiently resulted in the avoidance of hundreds of hours of time, without impacting the success of the litigation. *Id.*

Class Counsel incurred great expense to try this case. *See* Ex. A-1; Ex. B-3; Ex. D-3; Plaintiffs' Bill of Costs, Dkt. 681-682. The State's scorched-earth approach necessitated a full trial, at a major cost. For and during the two-week trial, Class Counsel drafted and argued motions in limine, prepared deposition designations/objections, prepared an exhibit list, prepared offers/objections to proposed exhibits, participated in numerous meetings with the State's counsel on trial issues, prepared witnesses to testify, presented evidence and argued the case, and drafted

countless pretrial and post-trial briefs and motions, among other duties. *See* Ex. A at ¶20; Ex. D at ¶¶20, 22.

Class Counsel devoted a total of 50,628.29 hours to prosecuting this case. *See* Ex. A-2; Ex. B-2; Ex. C-2; Ex. D-2 (time records: each with breakdowns of hours worked, tasks done, position, and billing rate of each person who worked on the case). In particular, these were the main legal professionals who worked on this case on behalf of the Class:

### 1.    Children's Rights

- Samantha Bartosz (Attorney) – 1,398.03 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented witness examination at trial for client.

- Christina Remlin (Attorney) – 4,962.36 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Stephen Dixon (Attorney) – 4,849.47 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Patrick Almonrode (Attorney) – 2,911.98 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and class certification hearing examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings.

- Adriana Luciano (Attorney) – 2,350.99 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings.

- Adam Dembrow (Attorney) – 1,849.43 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and class certification hearing examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings.

- Philip Barber (Attorney) – 1,633.82 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented witness examination at trial for client.

- Olivia Somner (Attorney) – 1,603.32 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented witness examination at trial for client.

- Marcia Lowry (Attorney) – 1,459.50 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented witness examination at trial for client.

- Jessica Polansky (Attorney) – 1,132.24 hours: Handled day-to-day management of the case in the months prior to and following the filing of the complaint; prepared for deposition of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings.

- Melissa Cohen (Attorney) – 1,059.70 hours: Handled day-to-day management of the case in the months prior to and following the filing of the complaint; prepared for deposition of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings.

- Joshua Rosenthal (Attorney) – 954.21 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Aaron Finch (Attorney) – 818.72 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Sarah Russo (Attorney) – 903.04 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Rachel Brodin Nili (Attorney) – 896.30 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Elizabeth Pitman Gretter (Attorney) – 758.12 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; and attended trial.

- Susan Lambiase (Attorney) – 274.87 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented witness examination at trial for client.

- William Kapell (Attorney) – 185.94 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation.

- Paralegals – 3,472.54 hours: Drafted, reviewed, and revised case filings; assisted with discovery tasks.

- Legal Interns – 1,444.18 hours: Drafted, reviewed, and revised case filings; assisted with discovery tasks.

### 2.     A Better Childhood, Inc.

- Marcia Robinson Lowry (Attorney) – 1,347.81 hours: Lead trial counsel; reviewed and revised trial filings; developed trial strategies; presented opening statement, closing argument, and witness examination at trial for client.

### 3.     Haynes & Boone

- Barry McNeil (Attorney) – Waiving all hours worked: Lead trial counsel; reviewed and revised trial filings; developed trial strategies for client.

- David Dodds (Attorney) – 3,218 hours: Reviewed and revised trial filings; helped with legal and discovery strategies for client.

### 4.     Yetter Coleman LLP

- R. Paul Yetter (Attorney) – 1377.20 hours: Lead trial and appellate counsel; reviewed and revised trial filings; developed trial strategies; presented opening statement, closing argument, and witness examination at trial for client; coordinated appellate strategy.

- Dori K. Goldman (Attorney) – 2,173.70 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; attended trial.

- Lonny J. Hoffman (Attorney) – 1996.05 hours: Handled day-to-day management of the case in the months prior to and during trial; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; attended trial; handled research and briefing related to appeals; preparation for oral argument at the Fifth Circuit.

- Christopher D. Porter (Attorney) – 914.40 hours: Handled day-to-day management of the case in the months prior to and during trial; prepared for deposition and trial examination of witnesses; assigned and reviewed tasks by junior associates and

paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; attended trial.

- Christian J. Ward (Attorney) – 878.30 hours: Handled research and briefing related to State appeals; preparation for oral arguments at the Fifth Circuit.

- April L. Farris (Attorney) – 751.10 hours: Handled research and briefing related to State appeals; preparation for oral argument at the Fifth Circuit.

- Wynn B. McCloskey (Attorney) – 274.10 hours: Handled trial preparation and trial witness preparation; assigned and reviewed tasks by junior associates and paralegals; drafted, reviewed, and revised case filings; assisted with trial preparation; attended trial.

- Edward C. Dawson (Attorney) – 179.80 hours: Handled research and briefing related to State appeals; preparation for oral argument at the Fifth Circuit.

- Pamela Wofford (Paralegal) – 1293.10 hours: Assisted with discovery and at trial; managed the case file; drafted motions to seal, appendices, subpoenas, and other routine documents; assisted with preparation of exhibits; reviewed and organized plaintiff case files; prepared and distributed case filings; managed technical presentations of exhibits during certification hearing.

- Delonda Dean (Paralegal) - 374.80 hours: Assisted with all appellate briefing, including preparation of exhibits, cite checking, presentations, and materials for oral arguments.

- Patti Barker (Paralegal) – 373.40 hours: Assisted with discovery and at trial; assisted with preparation of exhibits and other trial preparation and tasks.

- Bronson Parker (Paralegal) – 225.10 hours: Handled technical courtroom presentations of exhibits during trial.

- Steven Vacek (Paralegal) – 199.60 hours: Assisted with discovery and at trial; assisted with preparation of exhibits and other trial preparation and tasks.

These only represent summaries of the work performed by Class Counsel. The attached billing records provide the full detail on the work performed in this matter. *Id.*

We have excluded from this fee request any attorneys and paralegals who worked less than 100 hours to the case. *See* Ex. A at ¶19; Ex. D at ¶¶10-11; Ex. D-6. This includes over 20 attorneys and paralegal staff who together contributed several thousand additional hours to the case for which Class Counsel does *not* seek fees here. *Id.*

The extensive time and labor expended by Class Counsel was required in order to complete the necessary tasks to obtain a successful result in this matter.

### B. The legal and factual issues in the case were novel and difficult.

The reasonableness of this application is confirmed by the rest of the *Johnson* factors, including the novelty and difficulty of the legal/factual issues in play. As a rule, institutional reform litigation is complex and time intensive. But this case was far more. It had the added hurdles of taking on a powerful state government to secure an overhaul of an entire foster care system on behalf of some 12,000 children in danger. In the area of child welfare, the breadth and challenge of this Texas litigation is unprecedented. It required perseverance, skill, and resources far beyond what prior state system challenges have needed. There have been *seven* appeals to the Fifth Circuit, evoking the battles for desegregation and prison reform decades ago. Success here required Class Counsel to push relentlessly for deep discovery and out-of-court investigation, to dig into opaque systems/policies to understand the realities for children, and to find and implement cutting-edge legal strategies in a little-litigated arena.

### C. A high degree of skill was required to win this action.

Given these facts, success in the litigation was unusually dependent upon the advocacy of Class Counsel. They faced an aggressive, skilled, and formidable defense team from the Office of the Texas Attorney General and Office of the Solicitor General, which spared no expense or manpower in contesting the claims. In fact, according to published estimates, the State spent some $10 million in its defense, and DFPS recently sought *another* $10 million from the Legislature to mount its opposition going forward. Given the vagaries of civil rights and class litigation, the State raised a bevy of technical and merits legal defenses that required a high degree of skill to overcome. Likewise, success required an expert legal team who could think strategically and perform efficiently, prepare top-quality briefing, and advocate effectively to this Court.

Prosecution of this case required considerable legal skill. *See* Ex. F at ¶9. Class Counsel had to adjust to the reality that many State executives were unwilling to be forthcoming and many witnesses feared testifying due to concerns about the culture of retaliation at DFPS.

### D.   Plaintiffs' counsel forewent other employment due to this case.

This representation came at the expense of other work for Class Counsel, especially for the private law firms. The case required thousands of hours of investment, full-time attention of many attorneys, and substantial time from many others. *See* Ex. A-2; Ex. B-2; Ex. C-2; Ex. D-2. The case resulted in foregone opportunities for all of the attorneys involved and delayed work on many pending cases.

### E.   The requested hourly fees are reasonable and customary.

The application is reasonable given the amount and quality of legal services provided to the Class in this case. The average hourly requested rate for partners among Class Counsel is $550 and for non-partner attorneys (including associates and senior counsel) $425-$475. *See* Ex. A at ¶19, Ex. B at ¶7; Ex. C at ¶14; Ex. D at ¶8. For paralegal services, the requested rate is $125 per hour. *See* Ex. A at ¶19; Ex. D at ¶8. These rates are within the range normally charged by attorneys of comparable skill, expertise, and reputation in the Texas Gulf Coast. *See* Ex. E at ¶9; Ex. F at ¶¶7-12. Moreover, Class Counsel were cost efficient in how they staffed the case. *See* Ex. A at ¶20; Ex. D at ¶¶19, 25; Ex. E at ¶11. Thus, this request is reasonable compared to fees customarily charged in this District for similar services. *See* Ex. E at ¶9; Ex. F at ¶12; Ex. D at ¶17.

Generally, the "relevant legal community" for the lodestar calculation is the forum in which the district court sits. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The basis for determining a reasonable hourly rate is attributed to the "prevailing market rates for similar services by similarly trained and experienced lawyers in the relevant legal community." *Villegas*

*v. Regions Bank*, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013). Plaintiffs have requested rates commensurate with those prevailing in this District, as well as the Corpus Christi legal community, even though another forum may provide the proper relevant community. *Id.* The usual billing rates of Yetter Coleman attorneys and paralegals in their home community in Houston are considerably higher. *See* Ex. F at ¶12; Ex. D at ¶17. Given this exercise of discretion, in applying a rate cap of $550/hour for lead attorneys, lower rates for other attorneys, and paralegal rates in line with the local market, this request is based on a reasonable and even conservative valuation of the legal services provided. *See* Ex. F at ¶12; Ex. D at ¶¶17, 26-27.

F.     **The fee arrangement shows the reasonableness of the fee request.**

The presence of "a pre-existing fee arrangement" may aid in determining reasonableness of a request for attorney fees. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). Class counsel accepted this case pro bono. "Accordingly, this factor is not relevant to the Court's determination." *Hernandez v. U.S. Customs & Border Prot. Agency*, 2012 WL 398328, at *17 (E.D. La. 2012).

G.     **The circumstances placed significant time limitations on counsel.**

There were significant time limitations imposed on Class Counsel by the circumstances. After the Class was able to overcome the State's early efforts to obtain dismissal of the case and avoid certification, Class Counsel proceeded with remaining litigation tasks of discovery (which required seeking Court intervention to complete), dispositive briefing, pretrial preparations, trial, significant post-trial proceedings (including closing arguments and remedy briefing), and serial appeals on a variety of issues. The legal team completed these tasks on an expedited schedule, which allowed this Court to issue two rounds of injunctive relief and the Fifth Circuit to issue decisions on liability, enforcement/stays, and remedies in the years since trial.  *See* Ex. A at ¶¶ 21-24; Ex. D at ¶¶20-22.

**H.     The amount involved and results obtained are uniquely significant.**

The "most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 574 (1992). This case has achieved relief almost unprecedented in child welfare reform litigation. In the face of the full resources of a powerful and determined state litigant, the Court's orders, as affirmed on appeal, are calculated to remedy a broken system that routinely harmed thousands of innocent children. Due to the determination, skill, and tireless work of Class Counsel, the Class won watershed rulings from this Court on liability and then remedy, which largely were upheld by the Fifth Circuit. Dkts. 368, 601, 606. This is what plaintiffs set out to achieve when they sued the State almost a decade ago. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The results here were indisputably remarkable.

**I.     Plaintiffs' counsel are known for their litigation abilities.**

The strong reputations and abilities of Class Counsel further support the reasonableness of the requested fees.

<u>Yetter Coleman</u>. Lead counsel Paul Yetter has handled scores of trials in complex matters over the past 30 years in courts across the country. In 1997, he founded his firm, which has grown from 2 to 35 litigators, most of whom are former judicial clerks. In 2005, 2009, and 2019, the firm was named by *The American Lawyer* to its U.S. Litigation Boutiques of the Year list. It was named a Litigation Department of the Year by *Texas Lawyer*, as well as to the *National Law Journal* Litigation Boutique Hot List, Appellate Hot List, and Pro Bono Hot List. Mr. Yetter has been named a Top Ten Winning Lawyer by the *National Law Journal* and a "Best Lawyer" in Texas and the U.S., and he is a fellow in the International Academy of Trial Lawyers, International Society of Barristers, and American Board of Trial Advocates. The attorneys working at his firm

have stellar reputations, abilities, and credentials and produce outstanding work product. Likewise, the firm's paralegals are skilled in trial matters. *See* Ex. D at ¶3; Ex. D-1.

<u>Haynes and Boone</u>. Barry McNeil is one of the top trial lawyers in the nation. Having been in practice for 50 years, he successfully has represented clients in numerous trials of complex cases involving civil and criminal conspiracy, breach of contract and fiduciary duty, RICO, securities, and antitrust offenses. He was recognized by the *National Law Journal* for a "slam-dunk defense verdict," calling it the Biggest Defense Verdict of 1999. He is a Fellow of the American College of Trial Lawyers and former Chair of the Litigation Section of the ABA. He teaches White Collar Crime and Policy at the University of Texas School of Law and Southern Methodist University School of Law. Haynes and Boone is well-known for its trial and appellate advocacy, and it possesses accomplished attorneys with exceptional credentials and experience. *See* Ex. C at ¶¶3-5; Ex. C-1; Ex. C-2.

<u>Children's Rights</u>. Samantha Bartosz is a senior litigator at Children's Rights, joining this respected public-interest group after 17 years of law practice as a private litigator and government lawyer. In the latter role, she was General Counsel at the Office of Administration in Washington, D.C., within the Executive Office of President William Jefferson Clinton. She counseled senior White House officials on legislative, policy, and administrative matters and represented the Executive Office of the President in a range of congressional, independent counsel, and Justice Department investigations. Before then, she was a partner in the Chicago firm of Cahill, Christian & Kunkle Ltd, where she had a broad litigation practice in commercial, environmental, civil rights, criminal, products liability, and shareholder disputes. She served as a Special State's Attorney in a lengthy criminal trial against former prosecutors and police officers, as well as Assistant Chair of the Judicial Evaluation Committee of the Chicago Bar Association. The attorneys working with

her at Children's Rights have stellar reputations, abilities, and credentials and produce outstanding work product. Likewise, the organization's paralegals have great experience in complex institutional reform cases. *See* Ex. A at ¶¶2-3; Ex. A-1.

A Better Childhood. Marcia Lowry is a towering figure in child welfare reform. She created ABC in 2014 to develop new and innovative approaches to helping children who have been left to languish and suffer. In so doing, she continues her relentless advocacy for children. Before then, she served as Founder and Executive Director of Children's Rights for almost twenty years. She previously was Director of the Children's Rights Projects of the New York Civil Liberties Union and American Civil Liberties Union. She is the pioneering architect of the body of law that protects the country's most vulnerable children. Her work sheds light on the deficiencies of our country's long-unaccountable child welfare systems. Using the power of the courts, her work is focused on developing and implementing realistic, long-term solutions to ensure that abused and neglected children have a chance for a better childhood. *See* Ex. B at ¶¶2-3; Ex. B-1.

Class Counsel were careful in how they staffed the case, not using over-qualified people with higher billing rates to do tasks that could be done by more junior attorneys, paralegals, or staff. This focus on proper staffing further exemplifies the ability of Class Counsel and establishes the reasonableness of these requested fees.

## J.     Class Counsel accepted the representation despite the difficulties associated with pursuing this case.

Class Counsel took on the representation despite the difficulties and risks in this case. The State was expected to and did vigorously defend the case, with far greater resources than available to the Class. Civil rights and class action law is complex, and numerous challenges would need to be overcome at every stage of the case for it to be successful. Class Counsel accepted the representation given the importance of the case to so many innocent children. *See* Ex. D at ¶25.

**K.      The relationship between plaintiffs and counsel is longstanding.**

Children's Rights is a national non-profit known for its expertise in using complex impact litigation to improve the lives of vulnerable children in government systems. Following in the long tradition of civil rights groups that advanced major social justice movements in this country, it has developed an effective team that uses litigation to protect children's constitutional rights from maltreatment and to ensure safe, healthy, and permanent homes. With a 30-year track record of creating positive systemic change, it has won landmark legal victories in Connecticut, Georgia, Michigan, Mississippi, New Jersey, Oklahoma, Tennessee, Washington, D.C., and Wisconsin and engaged in advocacy efforts that changed the way child welfare is practiced in our nation. For decades, Children's Rights has challenged harmful practices in the over-institutionalization of children in state custody, especially those who already have been traumatized due to separation from their homes and families.

Yetter Coleman's relationship with Children's Rights began in 2006, when investigation of a potential challenge to the Texas foster care system began. Haynes and Boone joined this effort shortly thereafter, as did A Better Childhood when it was created before trial. A significant portion of these firms' efforts have been devoted to advancing the Class's interests in this litigation.

**L.      The requested fees are consistent with awards in similar cases.**

As discussed above and as the record reflects, this litigation was exceedingly complicated and demanded significant time and skill from Class Counsel at all stages. No other civil rights action to vindicate children's constitutional rights has been litigated to the extent as has been done here, including trial and serial appeals. The State challenged Class Counsel's efforts every step of the way. Throughout the constant challenges, Class Counsel persevered and secured broad relief on behalf of the Class. Through eight years of litigation, Class Counsel sustained this important effort without any assurance such efforts would be compensated.

**IV.     The Court Should Order the State to Allocate $5 Million to Protect Foster Children.**

The Class is not seeking to recover *any* attorney fees for the substantial work in this case by its private law firm Class Counsel—Yetter Coleman and Haynes and Boone. Instead, they ask that the Court order the State to allocate the same amount, some ***$5 million*** of new funding, to programs that benefit current or former foster children. To ensure that the money is used as effectively as possible to benefit children who were/are in the conservatorship of the State, the programs should be recommended by the Monitors and approved by the Court. There are certainly many worthy programs to choose from—and even more vital needs to fill. Over the many years of their work representing the children in this suit, Class Counsel have had the privilege of learn firsthand the important work that a great number of outstanding organizations in the state perform. Guided by the Monitors' recommendations, the Court will be able to responsibly allocate this new funding to programs that benefit current/former foster children. Class Counsel's hope is that the money will speed up vitally needed reforms for which this prolonged litigation has been pursued.

**V.     The Class Is Entitled to Costs.**

A successful civil-rights plaintiff is entitled to recover its costs under 28 U.S.C. §1920. The Class seeks an award of $191,247.48 in costs. These costs are itemized in its Bill of Costs, Dkt. 681-682, which has been filed with the filing of this motion and is fully incorporated by reference.

**CONCLUSION**

For these reasons, the Class respectfully requests that the Court award it reasonable fees of $14,780,640.22 for the work in this case of its private-interest Class Counsel—Children's Rights and A Better Childhood. In addition, as further relief to the Class as prevailing plaintiffs, the Class requests that the Court order the State to allocate $6,034,275.25 in new funding, which is the amount of reasonable fees for the work of the Class's private law firm counsel—Yetter Coleman and Haynes and Boone, to programs that benefits current/future Texas foster children, as

recommended by the Monitors and approved by the Court. Lastly, the Class seeks an award of its reasonable paid expenses of $504,674.08. The Class members also respectfully seek all other relief to which they are entitled as prevailing plaintiffs under 42 U.S.C. §1983.

Dated: October 11, 2019

Samantha Bartosz (*pro hac vice*)
Stephen A. Dixon (*pro hac vice*)
Christina Wilson Remlin (*pro hac vice*)
CHILDREN'S RIGHTS
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
(212) 683-4015 (Fax)
sbartosz@childrensrights.org

Marcia Robinson Lowry (*pro hac vice*)
A BETTER CHILDHOOD, INC.
355 Lexington Ave., Floor 16
New York, New York 10011
(646) 795-4456
mlowry@ABetterChildhood.org

Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
Dori Kornfeld Goldman
State Bar No. 24041274
Lonny Hoffman
State Bar No. 00784282
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (Fax)
pyetter@yettercoleman.com

Barry F. McNeil
State Bar No. 13829500
HAYNES AND BOONE, LLP
Dallas, Texas 75219
(214) 651-5000
(214) 200-0535 (Fax)
barry.mcneil@haynesboone.com

ATTORNEYS FOR PLAINTIFFS AND THE
GENERAL CLASS AND SUBCLASSES

### CERTIFICATE OF SERVICE

I certify that on this 11th day of October, 2019, we electronically filed this pleading with the Clerk of Court using the CM/ECF system, through which all counsel have been served.

/s/ R. Paul Yetter
R. Paul Yetter