# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity | § | |
| as Governor of the State of Texas, et al., | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF SAMANTHA BARTOSZ
IN SUPPORT OF PLAINTIFF CLASS'S APPLICATION FOR REASONABLE
ATTORNEY FEES AND EXPENSES**

I, Samantha Bartosz, declare and state as follows:

1.     I am at least 18 years of age, capable of making this declaration, and have personal knowledge of the facts stated herein, and they are true and correct.

2.     I am the Deputy Litigation Director of Children's Rights, Inc., a national nonprofit organization devoted to helping reform child welfare systems on behalf of abuse and neglected children. In this case, I am the co-lead attorney of record for Plaintiffs M.D., b/n/f Sarah R. Stukenberg, et al. ("Plaintiffs"). Attorneys employed by Children's Rights have provided legal counsel in this litigation as Plaintiffs' Class Counsel appointed by this Court in granting class certification.

3.     I am licensed to practice law in the state of Illinois and have been authorized by this Court to appear *pro hac vice* on behalf of the Plaintiff Children and their Next Friends. Dkt. 237. I have practiced law since admission to the Bar in 1986. A copy of my bio and all listed attorneys' bios are attached as Exhibit A-1.

**DECLARATION OF SAMANTHA BARTOSZ IN SUPPORT OF PLAINTIFF CLASS'S          PAGE 1
APPLICATION FOR REASONABLE ATTORNEY FEES AND EXPENSES**

4.      Children's Rights began its investigation into the structural defects in the DFPS system and their impact on PMC children in Texas in early 2009. Plaintiff Children filed suit through their Next Friends on March 29, 2011, seeking injunctive relief against the Governor, Executive Commissioner of the Texas Health and Human Services Commission, and DFPS Commissioner, in their official capacities. Dkt. 1.

5.      Shortly thereafter, Plaintiff Children filed a class-certification motion on April 5, 2011, Dkt. 15, which the Court granted on May 31, 2011 (Dkt. 48). Defendants filed an interlocutory appeal, Dkt. 63, and while it was pending, the Supreme Court decided *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In light of *Wal-Mart*, the 5th Circuit vacated the class-certification order and remanded on March 23, 2012. *M.D. v. Perry*, 675 F.3d ___, 848-49 (5th Cir. 2012).

6.      In its opinion, the Fifth Circuit provided clear guidance for certification of a pared-down General Class and narrowly drawn Subclasses targeting specific policies or practices. *Id.* Plaintiff Children closely followed this roadmap and amended the complaint on June 1, 2012 to include a proposed General Class and Subclasses and assert fundamental, common deficiencies in DFPS's policies and practices affecting all children in each proposed Class and Subclass uniformly. Dkt. 130.

7.      After a three-day hearing, beginning on January 22, 2013, the Court found the requirements of Rule 23 were satisfied and certified a General Class and three Subclasses. *M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013). Defendants filed an untimely interlocutory appeal, which the Fifth Circuit dismissed. *M.D. v. Perry*, 547 F. App'x 543 (5th Cir. 2013).

8.      Trial in this case began on December 1, 2014 and ended on December 12, 2014.

Following this two-week bench trial, the Court issued liability findings in a 255-page Memorandum Opinion and Verdict on December 17, 2015. Dkt. 368.

9.     That order was not final, but Defendants nevertheless appealed on January 8, 2016, requesting a stay pending appeal, which the district court denied. Dkt. 371. The Fifth Circuit found the district court's prohibition on "unsafe placements" in foster group homes to be the only appealable portion of the order. *M.D. v. Abbott*, No. 16-40023 (5th Cir. 2016). The Fifth Circuit refused to grant a stay as to the foster group homes order, noting there was "evidence supporting the grave problems arising from the lack of 24-hour supervision." *Id*.

10.     On March 21, 2016, the district court appointed Kevin Ryan and Francis McGovern as Special Masters to address the constitutional deficiencies identified in the 2015 Order. Dkt. 379. On March 28, Defendants sought a writ of mandamus asking that the special masters' appointment be vacated, which the Fifth Circuit denied. *M.D. v. Abbott*, No. 16-40482 (5th Cir. 2016).

11.     On November 4, 2016, the Special Masters filed recommendations. Dkt. 471. In 2017, the district court issued an interim order adopting those recommendations. Dkt. 500. The district court ordered the special masters to conduct a workload study of caseworkers and of investigators and inspectors, and to work with DFPS to create policies addressing the special masters' prior recommendations. *Id*. at 21.

12.     Late last year, the Special Masters filed a list of proposed remedies responsive to the district court's 2015 and 2017 orders. Dkt. 546. The Court issued its Final Order on January 19, 2018. Dkt. 559, adopting the Special Masters Implementation Plan.

13.     That same day, the Defendants filed an appeal of the Final Order to the Fifth Circuit, which the Fifth Circuit granted administratively. *M.D. v. Abbott*, No. 18-40057 (5th Cir. 2018).

Plaintiffs filed an opposition to Defendants' motion to stay on January 29, 2018 and Defendants replied to this opposition on February 5, 2018. *Id*. On February 15, 2018, the parties had oral arguments before the Fifth Circuit regarding the stay. *Id*. After oral arguments on the merits of the appeal, the Fifth Circuit issued an opinion in October affirming core aspects of this Court's Order with regard to overloaded caseworkers and ineffective oversight and monitoring. *Id*.

14.     The Parties had subsequent briefing before the Fifth Circuit on the merits of the case. Defendants submitted their brief on March 12, 2018. *Id*. In response, Plaintiffs submitted their brief on April 2, 2018, to which Defendants submitted their reply on April 12. *Id*. The Parties had oral arguments before the Fifth Circuit on March 29, 2018 regarding the merits of the case and on October 18, 2018 the Fifth Circuit released their Non Dispositive Published Opinion, which affirmed in part and vacated in part, and vacated and remanded for modification of the injunction. *Id*. In response, this Court issued a new Order and Injunction on November 20, 2018. Dkt. 606.

15.     In preparing this fee application, Children's Rights retained Sterling Analytics to review and audit their time and expense slips for reasonableness.  Sterling Analytics is a consulting and advisory firm comprised of a team of skilled attorneys who review over two billion dollars of legal invoices annually using standards derived from the Model Rules of Professional Conduct, American Bar Association Formal Opinions, industry best practices, and in this fee application, judicial decisions from U.S. District Courts in the Fifth Circuit.

16.     In addition to helping corporate clients manage their legal spending through legal bill review and auditing, Sterling Analytics' attorneys have been retained as experts on the reasonableness of legal fees in both federal and state courts. Their attorneys assist clients in negotiating legal fee disputes and have authored a law review article on best practices in

implementing outside counsel Billing Guidelines to establish trust and transparency in legal billing. In relation to this fee application, Sterling Analytics performed a line-by-line review of the fees and expenses herein to remove and reduce charges that were objectionable, including but not limited to, overtly vague or block-billed descriptions, clerical work, multiple attendance at meetings and hearings, overstaffing of tasks, billing for overhead, long billing days, and excessive time for task.

17.     Summaries of the attorney time charged to this case on behalf of the Plaintiffs by Children's Rights for services through the entry of judgment and final appeal, and the billing rates used for this Fee Application, are as follows:

**Children's Rights Fees** (January 1, 2009 through June 30, 2018)

| Timekeeper Name | Timekeeper Role | Total Hours Billed | Total Billings |
|---|---|---|---|
| **Bill Kapell** | **Lead Attorney** | **185.94** | **$98,802.00** |
| Travel Time Rate: $275.00 | | 12.60 | $3,465.00 |
| Hourly Rate: $550.00 | | 173.34 | $95,337.00 |
| **Marcia R Lowry** | **Lead Attorney** | **1,459.50** | **$742,106.14** |
| Travel Time Rate: $275.00 | | 220.43 | $60,619.17 |
| Hourly Rate: $550.00 | | 1,239.07 | $681,486.97 |
| **Olivia Sohmer** | **Lead Attorney** | **1,603.32** | **$856,674.50** |
| Travel Time Rate: $275.00 | | 91.46 | $25,152.42 |
| Hourly Rate: $550.00 | | 1,511.86 | $831,522.08 |
| **Philip Barber** | **Lead Attorney** | **1,633.82** | **$855,485.33** |
| Paralegal Task Rate: $195.00 | | 1.00 | $195.00 |
| Travel Time Rate: $275.00 | | 155.50 | $42,762.50 |
| Hourly Rate: $550.00 | | 1,477.32 | $812,527.83 |
| **Samantha Bartosz** | **Lead Attorney** | **1,398.03** | **$724,273.00** |
| Travel Time Rate: $275.00 | | 162.33 | $44,641.67 |
| Hourly Rate: $550.00 | | 1,235.69 | $679,631.33 |
| **Susan Lambiase** | **Lead Attorney** | **274.87** | **$136,650.86** |
| Travel Time Rate: $275.00 | | 52.83 | $14,529.17 |
| Hourly Rate: $550.00 | | 222.04 | $122,121.69 |

**DECLARATION OF SAMANTHA BARTOSZ IN SUPPORT OF PLAINTIFF CLASS'S          PAGE 5**
**APPLICATION FOR REASONABLE ATTORNEY FEES AND EXPENSES**

| | | | |
|---|---|---:|---:|
| **Christina Wilson Remlin** | **Senior Staff Attorney** | **4,962.36** | **$2,313,195.53** |
| Paralegal Task Rate: $195.00 | | 0.40 | $78.00 |
| Travel Time Rate: $237.50 | | 184.48 | $43,814.79 |
| Hourly Rate: $475.00 | | 4,777.48 | $2,269,302.74 |
| **Aaron Finch** | **Staff Attorney** | **818.72** | **$344,495.29** |
| Paralegal Task Rate: $195.00 | | 0.41 | $80.60 |
| Travel Time Rate: $212.50 | | 15.83 | $3,364.58 |
| Hourly Rate: $425.00 | | 802.47 | $341,050.10 |
| **Adam Dembrow** | **Staff Attorney** | **1,849.43** | **$769,161.27** |
| Paralegal Task Rate: $195.00 | | 5.03 | $980.85 |
| Travel Time Rate: $212.50 | | 73.83 | $15,689.58 |
| Hourly Rate: $425.00 | | 1,770.57 | $752,490.83 |
| **Adriana Luciano** | **Staff Attorney** | **2,350.99** | **$988,711.72** |
| Paralegal Task Rate: $195.00 | | 0.75 | $146.25 |
| Travel Time Rate: $212.50 | | 48.42 | $10,288.54 |
| Hourly Rate: $425.00 | | 2,301.83 | $978,276.92 |
| **Elizabeth Gretter** | **Staff Attorney** | **758.12** | **$319,649.58** |
| Travel Time Rate: $212.50 | | 12.00 | $2,550.00 |
| Hourly Rate: $425.00 | | 746.12 | $317,099.58 |
| **Jessica Polansky** | **Staff Attorney** | **1,132.24** | **$470,678.65** |
| Travel Time Rate: $212.50 | | 49.52 | $10,523.00 |
| Hourly Rate: $425.00 | | 1,082.72 | $460,155.65 |
| **Joshua Rosenthal** | **Staff Attorney** | **954.21** | **$396,986.24** |
| Travel Time Rate: $212.50 | | 40.25 | $8,553.13 |
| Hourly Rate: $425.00 | | 913.96 | $388,433.12 |
| **Melissa Cohen** | **Staff Attorney** | **1,059.70** | **$440,834.53** |
| Paralegal Task Rate: $195.00 | | 2.13 | $414.70 |
| Travel Time Rate: $212.50 | | 42.58 | $9,048.96 |
| Hourly Rate: $425.00 | | 1,014.99 | $431,370.87 |
| **Pat Almonrode** | **Staff Attorney** | **2,911.98** | **$1,221,251.07** |
| Paralegal Task Rate: $195.00 | | 11.08 | $2,160.06 |
| Travel Time Rate: $212.50 | | 64.90 | $13,790.54 |
| Hourly Rate: $425.00 | | 2,836.00 | $1,205,300.47 |
| **Rachel B Nili** | **Staff Attorney** | **896.30** | **$372,599.63** |
| Travel Time Rate: $212.50 | | 39.18 | $8,326.46 |
| Hourly Rate: $425.00 | | 857.11 | $364,273.17 |
| **Sarah T. Russo** | **Staff Attorney** | **903.04** | **$369,907.60** |
| Travel Time Rate: $212.50 | | 65.33 | $13,883.33 |
| Hourly Rate: $425.00 | | 837.70 | $356,024.27 |

| Stephen Dixon | Of Counsel | 4,849.74 | $1,946,983.56 |
|---|---|---|---|
| Travel Time Rate: $212.50 | | 537.20 | $114,155.00 |
| Hourly Rate: $425.00 | | 4,312.54 | $1,832,828.56 |
| **All Paralegal Time** | **Paralegal** | **3,605.35** | **$699,282.30** |
| Hourly Rate: $195.00 | | 3,566.78 | $695,522.05 |
| Travel Time Rate: $97.50 | | 38.57 | $3,760.25 |
| **All Legal Intern Time** | **Legal Intern** | **1,444.18** | **$280,039.50** |
| Hourly Rate: $195.00 | | 1,428.02 | $278,463.25 |
| Travel Time Rate: $97.50 | | 16.17 | $1,576.25 |
| **Total** | | **35,051.83** | **$14,347,768.28** |
| Additional Fee Reduction: Paralegal Rate Reduced to $125.00 | | | -$251,024.17 |
| **Grand Total** | | **35,051.83** | **$14,096,744.11** |

18.     This itemization represents a summary compiled from detailed time records maintained in the regular course of the law practice of Children's Rights. These time records are maintained on a current basis and in chronological order, showing the date, timekeeper, task performed, and time expended for all work for each entry.

19.     Copies of the time records are attached as Exhibit A-2. We have engaged in very limited redactions of our time records in order to protect the identities of confidential sources. The itemized time records set forth in Exhibit A-2 do not include hours expended by Children's Rights in conjunction with this litigation, which, in the exercise of billing judgment, have been excluded from Plaintiffs' fee request on the ground the time entries might be viewed as excessive, redundant, vague or otherwise unnecessary to the litigation, including, but not limited to, 11,341.01 hours, which were deleted in preparation of this fee application.  For example, we did not include time spent working with experts who were not ultimately found credible by the Court. Moreover, all of the time entries in Exhibit A-2 have been reviewed for discrepancies by attorneys assigned to this case. As a matter of billing judgment, Plaintiffs have also excluded from their fee application *all*

of the time of any lawyers, paralegals and legal interns at Children's Rights who spent less than 100 hours on the case. For meetings, depositions, trial, and other litigation events, we removed *all but the two most senior* billing persons per event and trip. By applying reductions recommended by Sterling Analytics, Children's Rights removed at least 23% of the original amount of time billed during the life of this case. Furthermore, all travel by Children's Rights to and from litigation events was billed at 50% of an attorney's full rate. Similarly, Children's Rights has virtually excluded all time over 10 hours billed in a single day by any individual billing attorney, unless that lawyer's travel time together with an appearance in court or at a deposition resulted in greater hours – there is a relatively small handful of attorney time entries remaining in the overall CR submission that charge for professional time between 10 and 12 hours in a day without travel time. We also have not included any time in our application for any aspects of the Application for Fees and Costs. In addition, we have used hourly rates which we understand are consistent with customary rates in this District, billing at $550/hr. for Lead Counsel and from $475/hr. to $425/hr. for other assigned attorneys. We have reduced the hourly rates charged in connection with paralegal work on this litigation to $125/hr., though we understand that higher rates up to $195/hr. are commonly charged for paralegal work in the Texas legal market. By discounting the paralegal hourly rate by $70.00 per hour, we have reduced the Grand Total in our Fee Application by $251,024.17.

20.     Throughout the litigation, Children's Rights made a concerted effort to be efficient and hold down our time. In certain instances, we decided not to include in this application time spent on tasks which we did not believe that our team performed as efficiently or which duplicated time spent by another attorney. Lead Counsel at Children's Rights managed the overall attorney work effort dedicated to this litigation in a manner that would avoid unnecessary duplication of

effort. Lead Counsel organized and assigned individual attorney teams to conduct trial preparation on particular causes of action or specific legal theories. These teams, staffed with a lead and/or senior staff attorney and staff attorneys, pursued all legal work related to their assigned cause of action or legal theory including document review, deposition preparation and taking, expert engagement and expert report preparation and witness preparation for trial. Through this case management structure, Children's Rights was able to avoid hundreds of hours of potentially duplicative time. To some extent, our overall time spent on this case was increased due to numerous appeals to the 5th Circuit, with the associated wind-down and start-up (e.g., expert reports, depositions, exhibits, and other matters, once studied, needed to be read again, along with further meetings and communications with witnesses, who in turn needed to update their own research). Overall, this was not a substantial portion of our time spent. However, the total number of hours invested by Children's Rights attorneys in this matter was no doubt significantly greater as a result of the vigorous defense tactics deployed by the state which Plaintiffs' attorneys had to confront and counter.

21.     In preparation for trial, Children's Rights attorneys reviewed the parties' voluminous produced documents, in excess of 700,000 pages and compiled thousands of exhibits of which over 400 exhibits were admitted for trial. The exhibits ranged from single pages to several hundred pages in size. We also compiled far more potential exhibits for use at trial. Although many of these were not offered and admitted at trial, it was necessary for Plaintiffs to identify every document that could reasonably be utilized as evidence or as considered materials for experts. Overall, 28 fact witness and 12 expert witnesses were called to testify during trial. Dkt. 368.

22.     Children's Rights undertook a considerable amount of legal research on a number

of subjects, including class certification standards following the *Wall-Mart v. Dukes* decision, the scope of substantive due process protections for children in state custody, the appropriate standard of culpability to be applied to Defendants' behavior, the standard of proof required regarding causation in this context, and other research and analysis incident to the motions for class certification and various discovery disputes. We also spent significant time preparing for and presenting our motions for class certification and continuing briefing of various legal issues related to the trial.

23.     Over the life of the case, our team visited Texas to interview witnesses, consult with stakeholders and advocates regarding matters in dispute, including, but not limited to, the connections between DFPS structural deficiencies, the harms experienced by PMC children and potential remedies sought.  Additionally, Children's Rights attorneys traveled to Texas on multiple occasions to conduct pretrial 30(b)(6) and fact witness depositions, nearly 70 depositions in total. Substantial attorney time was expended in advance of these depositions to review pertinent documents and identify deposition exhibits.

24.     We were extensively involved in orienting, preparing, and consulting with Plaintiffs' expert witnesses. We analyzed their reports, as well as the defense expert reports. We spent considerable time preparing for the substantial expert testimony by both sides during the two-week trial.

25.     Children's Rights also incurred out-of-pocket attorney expenses which were necessary and reasonably expended in this case. Throughout the litigation, we made diligent efforts to hold expenses, which must be paid when incurred, to a minimum.  Children's Rights devoted $376,440.66 in out-of-pocket expenses to this case over nine and a half years.  This total does not

include $454,634.61 in non-reimbursable, non-taxable expert costs incurred by Plaintiffs not sought in this application. Attached as Exhibit A-3 is a detailed expense report detailing all litigation support and travel expenses incurred by Children's Rights from January 1, 2009 through June 30, 2018. These expense records were recorded on a current basis, in chronological order, showing the date, category, description, and total cost for each expense.

26.     All of our detailed expenses for this case from 2009-2018 have been included in our general ledger which is independently audited and reflected in our annual audited financial statements. Though we are attaching receipts for all of the expenses from 2014-2018, due to an office move and a change to our system for maintaining receipts, we cannot locate all of the original receipts from 2009 through part of 2013. All available expense documentation is attached as Exhibit A-4. For the ease of the Court, we have indicated in our expense summary attachment, Exhibit A-3, which line items are missing receipts. The Court can be assured that the summary in Exhibit A-3 accurately documents the travel expenses incurred by Children's Rights during this time period.

27.     The expenses reflected in Exhibits A-3 and A-4 were actually expended to investigate and prosecute this action and were reasonable and necessary to protect the interests of the Plaintiff Class. The largest category of reimbursable expense incurred by Children's Rights in connection with this litigation was for travel costs. The numerous trips by our attorneys to Texas for meetings with sources, meetings with local counsel, to take or defend depositions, and for Court appearances were all necessary to effectively litigate this case. I, along with the other Children's Rights attorneys working on this case, made concerted efforts to minimize the number and cost of trips to Texas, as well as the number of attorneys who participated in each trip. Furthermore, we

have removed travel costs for all but the two most senior team members per litigation event and trip, in order to remain consistent with travel time removed from the attorneys' fees portion of our Application. This reduction, as well as all other changes recommended by Sterling Analytics, reduced our submitted expenses by at least $104,498.92, which is a reduction of 21.9% of the original amount of expenses incurred during the life of this case.

28.     In summary, in my opinion, the litigation fees and expenses set forth in Plaintiffs' Application for Reasonable Attorney Fees and Expenses as to the Plaintiffs were necessary and are reasonable to prepare for and try this important case, and they were effective, considering the results achieved.

In conclusion, having read this declaration, as to which matters I have personal knowledge and am competent to testify, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 11, 2019.

/s/ Samantha Bartosz
Samantha Bartosz, Esq.