**Appendix 3.1:  Intake Screening Results Case Summaries**

**Case ID #:**          47964236

**Intake ID #:**        72819106

**Sample File:**        October 2019

**Summary:** Foster parent reported that her five-year-old foster child disclosed that in her prior foster home, she and her siblings (four and three years old) would get "whoopings." The child stated that she and her younger siblings were hit with belts and hit on their hands with a comb. Due to the alleged incidents occurring in the prior foster home, the reporter did not know if the children were injured or had bruising from the hits. The frequency of the hits is also unknown. The children are diagnosed with Pica, which is an eating disorder.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN, Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Due to the allegations being inconsistent with physical abuse, it was agreed that the case will be downgraded from Abuse and Neglect to non-abuse and neglect (standards) and investigated for inappropriate discipline. This case was taken back to the intake staged and closed because it was previously investigated. See investigation number 2551716."

**Monitors' Review:** The above allegations, which pertain to young children, clearly meet the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Administrative Closure – 'Repeated reports.'

**RCCL Minimum Standards Findings:** RCCI reported that the above allegations were previously investigated by a prior minimum standards investigation (intake date: July 5, 2019). During interviews for the July 2019 minimum standards investigation, both the five-year-old and four-year-old disclosed being hit ("whooped") by their foster mom with a belt and a shoe. Both children stated that if they had accidents in their pants, they would be hit by their foster parent with a belt or shoe. The foster mom reported that she did "say that she was going to beat her [the two-year-old]" after the child had an accident and spread feces on the bathroom walls. The foster mom denied beating the child. Based on interviews, the investigation found that "there does appear to be preponderance of evidence that the foster parent did use inappropriate discipline with the children in care. There are two deficiencies being cited on the basis of this report concerning discipline. There is one deficiency being issued for the home study."

**Case ID #**:          47907094

**Intake ID#**:         72668509

**Sample File**:        September 2019

**Summary:** School employee reported concerns about two students, nine-year-old boys who are non-related foster siblings.  The reporter stated that Youth "A" is not given adequate food and clothing and has requested food for himself and others.  He also told school staff that his foster mother told him to get extra weekend food bags for himself and the other children in the home and he further stated that "what they eat at school is all that they eat."  He has reported that children are not allowed to come down from their bedrooms after school and on weekends. Caller reports child's shoes are too tight. The child has been physically violent and recently aggressive.

The caller also reported that Youth "B" has been wearing diapers for a week despite never having done so in the two years he has attended the school. The youth further reports that he now also wears diapers at home every night and on weekends, but per the reporter, he has no medical reason to need diapers. Frequent accidents at school started about a week ago and the foster family has been non-responsive to communications about change of clothes and diapers, according to reporter.  The reporter is also concerned that this youth is not receiving his medicine.

**Downgrade**: SWI assigned this case as a Priority Two investigation for Physical Neglect. RCCI downgraded to a PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Closed and reclassified. Inconsist w/doc risk.  Per LPPH 6222.2, this intake report does not contain an allegation of abuse or neglect, but there is concern. One child begins to have accidents at school and when the school asked the foster parent to send extra clothes, the child is sent to school with diapers. Another child has aggressive behaviors at school and hurts a teacher. The incident does not rise to the level of abuse and neglect and will be investigated for a possible standard violation."

**Monitors' Review:** The youth reports inadequate food; shoes are visibly too tight; and youth is diapered rather than provided with change of clothes and age appropriate planning; therefore, the above allegation meets the threshold for a physical neglect investigation based upon:

Failure to provide a child with food, clothing, and shelter necessary to sustain the life or health of the child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(6).

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted:**
Assigned Priority 2 - injury or serious mistreatment of a child.

**RCCL Minimum Standards Findings**: "The victims, foster parents and collaterals were interviewed for this investigation and documentation supplied by the child placing agency was reviewed. It was learned that both the principals in this investigation 'J' and 'T' denied not having adequate clothes or shoes since being placed in the [S] foster home. Both youth denied not getting enough to eat. Clothes and shoes were inspected and deemed to be adequate. Foster parents 'P' and 'AS' were interviewed and denied that they were not giving foster children in their home proper

clothing or shoes as well as they denied not properly feeding children in their home. CVS worker and agency caseworker both indicated that they did not have any concerns with the 'S's and their supervision of children in their care. At this time there is no evidence to support any of the allegations in this intake. There will be no citations or deficiencies issued in regards to this current investigation."

**Case ID #:**          47972905

**Intake ID #:**        72844397

**Sample File:**        October 2019

**Summary:** Reporter stated that a nine-year-old foster child disclosed that her previous foster mother cut her right hand with a knife and then a piece of glass while drunk and playing the game hangman. She stated this happened in October 2016. She reported that these incidents occurred when she was five-years-old in October of 2016 and again in October of 2017. Child spelled her foster mother's name as [redacted]. The child also alleged that the same foster mother pushed her birth child down the stairs while drunk a year later in October of 2017. The child spelled the birth child's name as [redacted]. The child also said that they were living at [redacted].

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-Stage. I, RCCI Supervisor called [redacted] City Hall to place a police report regarding this allegation for [redacted] who live in [redacted]. She stated she will have a police officer give me a phone call back but he does work a full time job, so it might not be today that I receive a phone call. Phone number called #: [redacted]. This OV is stating she was placed in [redacted] (which I cannot find) but she was actually placed in [redacted] during the alleged incident. The home is closed and is not in our region. This will be referred to LE [Law Enforcement]."

**Monitors' Review:** A search in IMPACT revealed that the child was previously placed in a foster home with a very similar name spelling as provided by the child. IMPACT shows that the child was placed with that family from August 2017 to August 2018. IMPACT shows that this foster home is open. The allegations described by the child meet the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:**
Administrative Closure

**RCCL Minimum Standards Findings:** Due to RCCI not identifying the child's former foster home, a minimum standards investigation was not conducted. RCCI reported the intake will be referred to law enforcement.

**Case ID #:**        47966925

**Intake ID #:**      72826370

**Sample File:**      October 2019

**Summary:** The child's DFPS caseworker reported that during a monthly visit with an eight-year-old foster child it was disclosed that when he misbehaves, his foster parents place him in "Total Isolation." The child described "Total Isolation" as having to go to his room all day and not being allowed to play with his toys. His six-year-old sister (who no longer lives in the foster home) also disclosed being subject to "Total Isolation" while in the home. She also described "Total Isolation" as being unable to leave her room all day. The siblings' three-year-old brother is also in the foster home. It is not known if he has been subject to "Total Isolation." The caseworker reported that due to the children's ages, a time-out should not be longer than six to eight minutes, not all day. The caseworker described that both children are afraid to be themselves for fear of getting "Total Isolation" discipline.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Case was staffed with RCCL/HHSC Monitoring Supervisor. Due to the allegations being inconsistent with the documented risk, it was agreed that the case will be downgraded from Abuse and Neglect to Non Abuse and Neglect (standards) and investigated by the monitoring unit."

**Monitors' Review:** Alleged discipline is inappropriate for young children (six and eight years old). Both children disclosed use of discipline method and described being unable to leave their rooms all day. The reporter alleges that the children are afraid as a result of foster parent's alleged use of this discipline method. The allegation clearly meets the threshold for a neglect investigation based upon:

Taking an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should not take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(2).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "The allegations in this case are that a resident in this foster home was receiving "total isolation" as discipline. Two of the residents confirmed that they are restricted to their rooms without TV for punishment. They stated that this never happened to the third child in the home. They disagreed on the length these room restrictions lasted but both stated they were allowed to use the bathroom and that they were allowed to eat.  One of the residents and the

4

foster mother both indicated that the therapist recommended the use of this technique, however the therapist did not reply to written request to discuss these children. A review of her therapy notes do not discuss this at all.  CPS has moved the children from the home in an effort to keep the siblings together.  The CPA has closed the home. There are no citations."

*The six-year-old child made another outcry on January 7, 2020 alleging the foster parent spanked and threw her while she lived in the home.  These allegations are currently being investigated in a Priority Two abuse or neglect investigation.*

**Case ID #:**         47953467

**Intake ID #:**        72790759

**Sample File:**        October 2019

**Summary:** A reporter alleged that a thirteen-year-old female was grabbed by the arm and physically pulled off the couch by her foster mother resulting in a bruise on the left forearm. The youth also stated that she hurt her ankle during the incident. It was further alleged that the previous week, the foster mother did not give the youth any food because she refused to wash her hands. The foster mother allegedly did not feed the youth on Monday, September 30, 2019 through Wednesday, October 2, 2019. The youth did eat a meal at school.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade:** "Other Agency/Out-of-State. Due to add'l calls made. Injuries did not result in substantial harm to child.  Per LPPH 6222.2 intake does not contain allegations of A/N. Rep indicated bruises were quarter size on forearm and by elbow. Injuries did not result in substantial harm to the child. Injuries are non-vital area of the body. Intake will be addressed as inappropriate discipline in standards investigation.

"A phone call was made to [reporter]. She stated 'K' was brought into her office by [school staff] K.S. 'K' was observed with two bruises about 2-3 inches long on her forearm and one bruise slightly bigger near her elbow. 'K' indicated foster mom scratched her and caused the bruises when she was trying to force her to her room. 'K' stated she was sitting on the couch in the living room and being disrespectful towards foster mom. 'K' also stated that foster mom has sent her to bed without dinner because 'K' will not wash her hands.  [Reporter]. stated the school nurse observed and documented 'K's' injuries. I spoke to nurse N.G. who examined 'K'.  She stated the bruises were about quarter size and she had two on her forearm and another one near her elbow.  N.G.  stated she heard 'K' tell the [reporter] that her foster mom did this. I spoke to K.S.  He stated that 'K' rolled up her sleeves and showed him a few scratches and bruises on her arms, that were already fading.  'K' stated foster mom had caused these bruises by pulling her arm.  'K' was not wanting to go to her room and foster mom was pulling her arm to make her to go her room.  The intake described the bruises as golf size. When I spoke to him, I advised that the nurse and [reporter] both indicated the bruises were quarter size.  He stated that he didn't observe the bruises closely and is only reporting information from

memory.  He stated since the nurse actually examined 'K', then he would agree with the nurse and say that the bruises were quarter size. 'K' had no other visible injuries. Companion intake: 47953367."

**Monitors' Review:** The thirteen-year-old child was injured and bruised by the foster parent's alleged grabbing and pulling of the child. The reporter also alleged that the victim did not get fed by the foster mother for three consecutive days, warranting a physical neglect investigation as well; therefore, the above allegations clearly meet the threshold for both a physical abuse and physical neglect investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

Failure to provide a child with food, clothing, and shelter necessary to sustain the life or health of the child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(6).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings:** "Based on the information gathered through face to face interviews, phone interviews and documentation there are no concerns to minimum standards found at this time. Caregiver and children in the home denied the allegations regarding child being denied meals and physically shoved/grabbed. Alleged victim stated she was grabbed and shoved; however, no one in the home has witnessed this and child stated this was the only time the alleged incident occurred but could not give specific information regarding the incident. Caregiver and children stated caregiver has never used any form of physical discipline. Caregiver and children in care stated they are never denied meals or food. At this time there are no concerns with no citations."


| | |
|---|---|
| **Case ID #:** | 47913079 |
| **Intake ID #:** | 72683968 |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter visited a home visit and a four-year-old girl stated that she "gets a whooping on her bottom with a belt." The reporter spoke to the six-year-old sister of the alleged victim who said that when they are "bad," they are sent to bed.  In addition to the four-year-old child, there are two three-year-olds, a nine-month-old, a six-year-old and a fourteen-year-old in the home. The reporter spoke to the foster mother who denied she used corporal punishment and stated that she either re-directs or sends them to their room. No noticeable injuries observed on the youth.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2 intake does not contain allegations of A/N. Child has no injuries, concerns for mistreatment/inappropriate discipline. Other children deny inappropriate discipline. Intake will be downgraded to standards inv."

**Monitors' Review:** A child under the age of five alleged that she was "whooped" with an instrument on her bottom and it is unknown if she has injuries. There are two three-year-olds, a nine-month-old, a six-year-old and a biological fourteen-year-old also in the home for whom safety is a concern. The above allegation meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings:** "Based on the preponderance of the evidence, it was determined that there are no minimum standard concerns in the foster home…According to all professionals involved in the case, the children have never made any outcries of physical discipline and marks or bruising has never been observed on the children. All had no concerns regarding the home, stating that the children are always appropriately dressed and groomed. When the children in the home were interviewed, [child] continued to be the only verbal child to state physical discipline is used in the home. [Other children] did not voice any concerning discipline during their interviews. When foster mom was interviewed, she stated that she send [sic] the children to their rooms as punishment, which [child] also stated during her interview. Documentation provided by the operation also did not document any concerns with physical discipline in the home. None of the evidence collected during this investigation supported the allegations of corporal punishment used in the foster home. Based on this information, the standard is found to be compliant."


| | |
|---|---|
| **Case ID #:** | 47965135 |
| **Intake ID#:** | 72821818 |
| **Sample File:** | October 2019 |

**Summary:** Reporter called to report an eight-year-old boy with special needs "had a rough day at school" and he could not be put on the bus due to safety concerns. The foster mother was called to pick him up and he became extremely fearful and started yelling "please don't; she will restrain me." He allegedly repeated this over and over. Once he was calmed down, school staff asked him what he meant by "restrain him." He stated, "She takes me to the garage, makes me put my foot over my head, and puts my arms behind my back."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards violation.

**RCCI Reason given for downgrade:** "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, A supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non-abuse or neglect report when the information in the report suggests that a minimum standard was violated, but not that a child was abused or neglected. The information in the intake is related to a child possibly being inappropriately restrained by a foster parent. The child reported he was made to put his foot over his head and his arms behind his back. The intake noted the child was not injured during the incident and was not placed at risk of substantial harm. The concerns are related to possible minimum standards violation related to discipline and emergency behavior intervention. The intake was staffed by RCCI Supervisor and HHSC Supervisor. It was agreed the intake did not rise to the level of physical abuse, and would be sent to HHSC to evaluate minimum standards."

**Monitors' Review:** An eight-year-old with special needs expressed fear of his foster parent due to allegations of physical abuse in the home; therefore, the above allegation meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted:**
Assigned Priority Two – injury or serious mistreatment of a child.

**RCCL Minimum Standards Findings:** "During the course of the investigation documentation was reviewed and interviews were conducted to support the following: 749.1957(1) regarding Other Prohibited Discipline-Any harsh, cruel, unusual, unnecessary, demeaning, or humiliating discipline or punishment. OV was the only child stating inappropriate discipline took place. Four of five children stated no type of physical discipline took place in the home. Five of five children stated no restraints took place in the home. There was not enough evidence to support a deficiency. This standard was evaluated and determined compliant."


**Case ID #:**         47962750

**Intake ID#:**        7281576

**Sample File**:       October 2019

**Summary:** An internet report from school personnel states that a nine-year-old girl, with severe autism, has had significant changes in her behavior: 'her behavior has been affected by disabling her balance, focus, attention, writing skills, etc.' The report states that the child 'has been allegedly overmedicated most days.' There are reportedly 'clear and distinct behavioral changes since last week' that are attributed to medication changes and medication non-compliance by the foster mother who is also allegedly non-communicative with school about medication changes, medication needs, and medical care.

**Downgrade**: SWI assigned this case as a Priority Two investigation for Medical Neglect. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-State. Due to add'l calls made. Per LPPH 6222.2 intake does not contain allegations of A/N.  O[V] was overly active and aggressive due to possibly not receiving her med.  School and FM seem to have communication issues.  School did not follow up with FM.  Lack of med does not place child at substantial risk of harm."

**Monitors' Review**: The above allegation involving a nine-year-old youth with significant behavioral concerns following medication changes and with possible non-compliance by the foster parent meets the threshold for a medical neglect investigation based upon:

Failure to seek, to obtain, or to follow through with medical care for a child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(5).

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted:** Assigned Priority 2-serious safety or health hazards.

**RCCL Minimum Standards Findings:** "There will be no minimum standard violations related to medication administration. Investigation #2570279 also investigated allegations of medication administration for 'L'. The investigator determined that Ms. 'M' did not give 'L' her Intuiv medication for five days and cited for medication administration. Foster parent, 'EFM' admitted that she did not administer victim 'L's Intuiv medication for five days, September 27th thru October 1st. 'L''s medication record was reviewed for October which showed a missed dosage of Intuiv on 10/1/19. Ms. 'M' administered all of 'L's medications from October 2nd until present. 'L' went to the doctor for an ER follow up visit on 10/14/19 and had a flu shot during the doctor's visit. 'L' had a medication follow up appointment on 10/29/19 and the doctor ordered an increase in her Abilify medication."

| | |
|---|---|
| **Case ID #:** | 47905406 |
| **Intake ID #:** | 72664201 |
| **Sample File:** | August/September 2019 |

**Summary:** A DFPS worker stated that a ten-year-old boy with Down's Syndrome arrived at school with a packet of unopened Raid bug repellent. The reporter stated that the alleged victim has a history of "getting into things" and all hazardous items and medicine need to be locked up. Last week, the child said, "No Home" and "Stay at School" and several staff had to physically put him on the bus to go home.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6222.2 intake does not contain allegations of A/N.  Allegations pertain to the supervision of a child along with MSV.  Intake will be addressed in standards investigation."

**Monitors' Review:** The above allegation involving a child with Down Syndrome having access to hazardous materials that he brought with him to school, and additional concerns reported by collateral related to child's behavior that may be related to placement, meet the threshold for a neglectful supervision investigation based upon:

Placing a child in or failing to remove him from a situation that a reasonable member of that profession, reasonable caregiver, or reasonable person should realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(3).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**:
Assigned Priority Two - serious safety or health hazards

**RCCL Minimum Standards Findings:** "Based on the evidence gathered throughout the investigation there are no minimum standard violations related to supervision or physical environment. It was reported that alleged victim, 'JG' (9 years old) had taken an insect bug repellant packet from the foster home and was found in his backpack at school. 'J' has Down's syndrome and very limited verbally. Contact was made with 'J' and due to his intellectual disability, he was unable to provide responses during the interview. Contact was made with the other children in care who also are special needs and developmentally delayed. Interviews were conducted with the case manager, special education coordinator, foster parents, and CPS case worker. The special education coordinator, 'AM' at 'J''s school stated that the teacher found ant bait packets in his backpack after he arrived at school. The packets were not opened and removed from his backpack. Both Foster parents reported that they provide constant supervision to all the children in care. Ms. 'S' stated that there were ant bait packets near the front door because ants were coming into the house. Ms. 'S' stated that she was in the kitchen which is in within eyesight range to the front door when the children were getting ready to leave for school. 'J' and the other children were waiting at the front door to leave and 'J' must have grabbed the ant bait packets putting them in his pockets. Ms. 'S' did not see him put the insect packets in his pocket. She stated that the school called her and notified them about finding the ant bait packets in 'J''s backpack."

**Case ID #:**         47964382

**Intake ID#:**        72819506

**Sample File:**       October 2019

**Summary:** A DFPS caseworker stated that a seventeen-year-old female called the reporter yesterday to tell her that she got pills from other residents and tried to overdose three days earlier because she did not feel safe at the facility and is being mistreated by staff. Youth reports she also ingested ink that same day. The reporter further stated that "the children are keeping their pills with them when they are not supposed to." The youth was not taken to the ER nor seen by a doctor. The youth reported that the facility nurse checked her. The reporter is also very concerned that she has not been provided an incident report from the facility, despite the incident occurring three days ago. Reporter says the facility staff responded to her email indicating "youth was checked by nurse who noted her tongue was blue and had normal vitals."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake a child took unknown medication and reported to trying to overdose and she tried to swallow an ink pen. The facility, who has trained and certified medical staff, had the child assessed by medical professionals and there were no concerns related to the child demeanor or vitals and it was determined she would be placed on close observation by staff and the nurse. The reporter/CVS worker was contacted and stated [child] was not on any type of close observation/supervision at the time and understood the facility has professional medical staff on duty. Per our definition of neglect the child was not placed in or left in a situation that caused or could of caused substantial harm. She was not on special observation and staff/medical responded appropriately. Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** A DFPS caseworker reported that a youth ingested unknown prescription medications not prescribed to her and allegedly got the pills from other residents who are keeping their pills with them against policy, which raises concerns about appropriate supervision. Therefore, the above allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted:**
Assigned Priority Two – serious supervision problems.

**RCCL Minimum Standards Findings**: "After conducting interviews and analyzing the report, the standards were evaluated and found compliant. Based on standard 748.303(a)(11)(A)

Brief Description:  Serious Incident-Report to Licensing as soon as aware of a suicide attempt by a child, the standard was found compliant based on interviews. During the client's roommate interview the roommate stated the victim didn't really swallow ink or pills, stating the client faked it. Their [sic] wasn't enough evidence to conclude that this was a suicide attempt, based on the client faking swallowing ink and pills and based on the client's vitals being normal when assessed by the nurse. According to the standard regarding supervision, their [sic] was not sufficient preponderance to conclude the staff were not supervising the clients appropriately. Interviews conducted with the client's roommate and a staff it was corroborated that the staff conducts supervision checks every 15 minutes. According to the standard regarding the client's parents being notified, the standard was found compliant based on their [sic] not being sufficient evidence to conclude the child attempted suicide."

*The licensing investigation did not explore allegation related to children "keeping their pills with them."*


**Case ID #:**          47914808

**Intake ID #:**        72688054

**Sample File:**        August/September 2019

**Summary:** The reporter, the facility operations administrator, stated that a fifteen-year-old female resident reported that a male facility staff member touched her once on the bottom.  The youth said she was in the kitchen and the staff member walked by and placed the palm of his hand on her bottom over her clothes and went in a circular pattern for approximately five seconds.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Sexual Abuse. RCCI downgraded to Closed Without Investigation.

**RCCI Reason given for downgrade**: "Closed and re-classified. Case will be administratively closed due to facility on permit suspension. A referral was made to the Sheriff's Office for that county."

**Monitors' Review:** The fact that a facility is on suspension and neither the alleged perpetrator nor victim are at the facility does not mean that the incident should not be investigated. This alleged perpetrator could be working at another facility with opportunity to engage in similar behavior. Therefore, the above allegation meets the threshold for a sexual abuse investigation based upon:

Any other intentional, knowing, or reckless act or omission by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Administrative Closure - 'The case was administratively closed due to the facility permit being put on suspension. A referral was sent over to Collin County Sheriff Office.'

**RCCL Minimum Standards Findings:** No minimum standards investigation completed.


**Case ID #:**          47965319

**Intake ID #:**        72822263

**Sample File:**        October 2019

**Summary:** Reporter [school] stated that a fourteen-year-old foster child disclosed that a resident (name unknown) fondled him at the RTC. The child informed the facility staff about being touched inappropriately, and the offending resident was removed. The child states he had been touched inappropriately by the same resident sometime in the past. Facility staff from the RTC called regarding the child's outcry, and a meeting took place with the school and the facility staff to ensure that the child was safe and felt safe. There has not been any follow up by the facility administrators.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade:** "Other Agency/Out-of-State. Due to add'l calls made. Allegations are being addressed in standards investigation 2576324.  Intake will be linked to this case.  Allegations pertain to the supervision of children and does not meet criteria for CSA.

A phone call was made to counselor "D."  "D" indicated she met with "K" yesterday and he disclosed that while sitting in the main area, another boy touched him on his private [sic] over his clothing. "K" immediately got up and told staff.  Staff proceeded to separate "K" and the resident.  "K" reported it had already happened another time in which he did not tell staff.  He was also touched over the clothing."

**Monitors' Review:** A youth reported that he was touched inappropriately by another youth more than once. It is unclear if supervision was negligent at the time of the incident. (See below for youth's supervision requirements). The above allegations meet the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Placing a child in or failing to remove the child from a situation in which a reasonable member of that profession, reasonable caregiver, or reasonable person should know exposes the child to the risk of sexual conduct, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(7)

13

Failure to comply with an individual treatment plan, plan of service, or individualized service plan that causes substantial emotional harm or substantial physical injury to a child, by a person working under the auspices of an operation. 40 TAC §745.8559(10).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Intake was linked to an open investigation - Priority Three - minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the preponderance of the evidence, it was determined that there are no minimum standard deficiencies regarding this investigation. On 10/15/2019, an intake was received alleging that a child in care, "K", was inappropriately touched by another child, "B". while at the operation… According to the incident report, the children were in the living room, while staff assisted with room 3. Room 3 is next to the living room, which would still have staff in earshot of the living room. According to "F", staff "S" was supposed to be watching the 3 kids, but he is unsure if she was. "S" was unable to be interviewed due to no longer working at the operation and not answering or returning Inspector's calls. "F" stated that he didn't leave "S" in charge of his group for very long, he estimated less than 45 seconds, when the incident occurred. "B" denied that this occurred, and "M" also denied witnessing this incident. After this incident, the boys were separated and supervised by staff and not allowed contact to have contact [sic].... According to their service plans, both boys require constant supervision. Based on the information received from the investigation, "B" and "K" were being supervised during this alleged incident and the supervision standard is found to be in compliance in regards to this incident."

| | |
|---|---|
| **Case ID #:** | 47944805 |
| **Intake ID #:** | 72767912 |
| **Reviewer:** | D. Carter |
| **Sample File:** | October 2019 |

**Summary:** A DFPS caseworker stated that a thirteen-year-old boy called the reporter from school to inform her that the week prior, he was restrained by a GRO staff person. He stated that "she hit his adult tooth during the restraint and now his tooth is loose." He further reported that staff are not doing restraints "the right way at school." He also asked to be removed from the facility.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Child not at risk as staff no longer works at operation. Incident does not rise to A/N. Per LPPH 6222.2, a report that does not contain an inappropriate restraint can be investigated as standards case."

**Monitors' Review:** Injury to a thirteen-year old during a restraint and the allegations meet the threshold for a physical abuse investigation based upon:

14

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two-injury or serious mistreatment of a child.

**RCCL Minimum Standards Findings:** "Based on the information gathered during this investigation, there was no evidence discovered to support a minimum standard violation. The resident in question was inconsistent when providing their version of events as they gave a different version of events to licensing, the CPS worker and operation staff regarding how his tooth became loose. The resident in question was interviewed and had stated that a staff member from the operation accidently ran into him as she was attempting to get to another resident, causing his tooth to became loose. Staff members were interviewed and did not corroborate with this version of events. Staff denied that they restrained the resident, or had physically ran into him with their body at any time. Staff interviews also supported that the resident had voiced their tooth became loose after they were restrained at school by school staff. The incident report and nurse's note from the school revealed that the resident was placed into a restraint and the resident bit one of the staff members, causing his tooth to became loose. No deficiencies were noted."


| | |
|---|---|
| **Case ID #:** | 47926851 |
| **Intake ID #:** | 72720013 |
| **Sample File:** | August/September 2019 |

**Summary:** DFPS staff stated that a seventeen-year-old male with a history of cutting reported that a staff member at the facility told him "if he cuts his arm a certain way he will get results; but, if he cuts another way, it is just for attention." The youth also reported that a second staff member told him "I hope you will die quickly." The reporter further stated that the youth's case manager at the facility also commented to her that the youth's cutting was "no big deal." The youth also expressed concerns about being at the facility. He reportedly does not feel safe. There are allegedly gangs present and they are always fighting and jumping people. He was assaulted with Icy Hot on his face while sleeping. This was reported to the operation case manager. The youth has anxiety, causing him to self-cut, allegedly because of this environment.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH, 6242.2, A supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non-abuse or neglect report when the information in the report suggests that a minimum standard was violated, but not that a child was abused or neglected. The reporter was contacted and confirmed that [child] had not self-harmed in any way do to staff making inappropriate comments. The reported confirmed that [child] was being checked on every 15 minutes

as required, however, would still cut himself after staff checked on him. [Child] has not been assaulted by the alleged gang activity. There appears to be a concern about supervision and staff making inappropriate comments, but this information does not rise to the level of neglect. Intake will be sent to HHSC to evaluate possible standards violations involving supervision and prudent judgement."

RCCI's collateral call documentation: "09/19/2010 -Telephone Contact To - CPS Caseworker/Reporter – I contacted Ms. X about the intake report that was received. [Worker] said she became aware of the information through a service plan meeting that occurred on 9/6/19. She said [youth] did not identify the staff that made the alleged comments to him. She said [youth] said he had not harmed himself due to the comments made by staff, but had done so prior at the end of August. [Youth] had made several cuts on his left arm and carved in words (Love, Eternal, Monster) in his arm. She reported that staff does check on [youth] every 15 minutes, which [youth] confirmed, but had cut himself after he is checked on. She reported she had concerns about gang activity at the facility but confirmed that [youth] had not been assaulted. She said the gang members put an Icy Hot on his face while he was sleeping. [Worker] reported that a discharge notice has been put in for [youth] as [youth] stated he would continue to cut until he was removed from the facility. There is a safety plan in place at the operation currently to make sure [youth] is supervised. [Youth] will reportedly cut with items that he finds at the facility such as bottle caps, staples, or anything he can find outside."

**Monitors' Review:** Regardless of the severity of the youth's cutting, staff's comments to him were inappropriate and potential cause of further emotional harm. The youth was also attacked by another resident with Icy Hot while sleeping, an incident that was confirmed by a collateral call to the CPS caseworker by RCCI. The youth's caseworker has requested youth's discharge because youth stated he would continue to cut himself until he was removed from the facility. These allegations meet the threshold for a neglect investigation based upon:

Taking an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should not take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(2).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

In its discussion of the substantive due process rights of the PMC children, the Fifth Circuit stated, "egregious intrusions on a child's emotional well-being—such as, for example, persistent threats of bodily harm or aggressive verbal bullying—are constitutionally cognizable."[1]

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children

---

[1] *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (2018).

**RCCL Minimum Standards Findings:** "Based on the information gathered throughout the course of this investigation there is not a preponderance of evidence that supports the allegations that staff were belittling the victim. All of the children interviewed stated that they only knew about 'D' self-harming and staff's comments because 'D' told them about it. They did not witness these incidents. The operation discharged 'D' because they could not meet his needs and keep him safe. The operation will not be cited."

*Investigation did not include any questioning regarding the 'Icy Hot incident' and the victim was not seen until November 12, 2019, two months after the intake was received.  He was no longer at this facility.*


**Case ID #:**          47899735

**Intake ID #:**        72649203

**Sample File:**        August/September 2019

**Summary:** An RCCI staff person submitted a report to SWI following an investigation they performed at the facility on August 2, 2019.  A ten-year-old girl stated to the reporter that a fight occurred between her and another resident, and staff allowed the fight to continue. There were also general concerns reported about inappropriate discipline, without injury.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded the RCCI investigator's referral to Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake there is no specific outcry of physical abuse or neglect. There were also no injuries or specific incidents or staff reported. Per LPPH 6242.2 if an incident is also too vague it can be downgraded to HHSC non-abuse and neglect. Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitor's Review**: This referral was made by RCCI's own staff and it alleges that a child was not protected during a fight with another youth. The above allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Administrative Closure

**RCCL Minimum Standards Findings:**

The following are the Administrative Closure Comments for this intake: "9/10/19 - The allegations in this intake have already been addressed with the children who alleged these concerns in a current, open abuse/neglect investigation - Inv. # 2558436. These concerns will be cited at the completion of this investigation by the Inspector. There is not a need to conduct an entirely new investigation to address the same concerns that the children were already interviewed about. The inspector will also be completing an unannounced weekend/night inspection this week and she will interview some children while she is there to ensure that discipline is appropriate. If she learns it is not, she will use this additional information when citing in the current open abuse/neglect investigation noted above."

During the open investigation 2558436, referenced above, the residents were interviewed and made an allegation of neglectful supervision (i.e.: being allowed to fight without staff intervening). The record shows that the children were not asked about when the incidents occurred, and which staff were responsible for supervision at the time. RCCL completed a Standard Violation whereby 'TA was provided and the staff were given a training on working with the population of children served.'"

| | |
|---|---|
| **Case ID #:** | 47941713 |
| **Intake ID #:** | 72759967 |
| **Sample File:** | October 2019 |

**Summary:** A law enforcement officer called to report that a twelve-year-old male made suicidal outcries in class and attempted to put a plastic bag over his head and suffocate himself. There was a teacher present who tore a hole in the bag. Just prior to the youth doing this, he said he was going to kill himself and gripped a pencil in an aggressive manner and pointed it toward himself, but staff were able to take it from him. The facility was contacted and indicated that the youth had just gotten out of the hospital and the hospital said 'it was not a mental health issue, but a behavioral health issue and he doesn't need to go to the hospital.' The reporter said the youth was picked up by the facility and when asked if he knew whether there was a safety plan in place for the youth, the reporter stated "no, it almost sounded like, (the facility staff thought) he just did it for attention and he's fine right now."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Medical Neglect. RCCI downgraded to Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake a child was having behaviors at school that eluded self-harming concerns. The school LE reported concerns that the facility was not seeking hospitalization as the school had asked them to do. However RCCI contacted the CVS worker to gain a full understanding of the situation and was informed that the facility had contacted him and they had tried to get him into a psychiatric facility, but they [sic] hospital would not take the child. The CVS worker confirmed this being an issue he has ran [sic] into in the past as the behaviors the VC is

displaying is [sic] not suicidal issues, but behavioral issues. Based on the full assessment of the intake, reviewing the facility history which does not show a pattern of neglect, and speaking with the reporter and CVS worker the intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** The youth is regularly engaging in self-harming and suicidal behaviors and, in the absence of RCCI directly contacting the facility prior to making its screening determination, it is unclear whether and when the facility sought medical treatment for this youth. The above allegation meets the threshold for a neglect investigation based upon:

Failure to seek, to obtain, or to follow through with medical care for a child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(5).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Administrative Closure. 'Not subject to investigation.'

**RCCL Minimum Standards Findings:** Although no investigation was performed for this intake, the youth's Health Passport indicated that the youth was admitted into a psychiatric hospital on October 2, 2019 with a diagnosis of Disruptive Mood Dysregulation and one of the diagnosis codes in his chart for that hospitalization was suicidal ideation. This hospitalization occurred two days following this September 30, 2019 incident under review.

| | |
|---|---|
| **Case ID #:** | 47878425 |
| **Intake ID #:** | 72593008 |
| **Sample File:** | August/September 2019 |

**Summary:** A DFPS caseworker reported a resident at the RTC said he overheard the RTC program director tell another fifteen-year-old male resident that she had a "strap" (which, per the reporter, is 'street language for a gun') for "whenever he was ready." Reportedly, the program director also told him that she used to work in a prison. The youth reporting this indicated to the caseworker that he felt "unsafe."

**Downgrade:** SWI assigned this case as a Priority One investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Downgraded to PN. Op.# 1681260. CLASS investigation# 2561365. The intake was staffed by an RCCI Supervisor and HHSC Supervisor. It was agreed the intake could be downgraded to HHSC as there was no indication that alleged act occurred. Per LPPH 6221.2, an intake can be investigated as non-abuse or

neglect if the report does not contain an allegation of abuse or neglect. Based on the intake, the operation staff made an inappropriate comment towards a child, but did not actually make any attempt to harm the child. There was no information in the intake that a "strap" was present at the facility or shown to a child during the threat. The threat/comment, would qualify as a possible minimum standard violation."

**Monitors' Review:** The program director allegedly threatened the resident with a 'strap' (gun), which meets the threshold for a neglect investigation based upon:

Taking an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should not take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(2).

In its discussion of the substantive due process rights of the PMC children, the Fifth Circuit stated, "egregious intrusions on a child's emotional well-being—such as, for example, persistent threats of bodily harm or aggressive verbal bullying—are constitutionally cognizable."[2]

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children

**RCCL Minimum Standards Findings:** "Based on the information gathered throughout the course of this investigation there is not a preponderance of evidence that proves that 'A' was verbally threated by Ms. 'W.' 'A' stated that 'Z' told him that Ms. 'W' had a "strap," but he never heard Ms. 'W' say it herself. All the staff interviewed stated that Ms. 'W' never threated 'A' and that he was being verbally aggressive towards her. Three of the six boys interviewed stated Ms. 'W' did threaten 'A' but their versions of the story do not match up. The other half of the boys interviewed states that Ms. 'W' did not threaten 'A'. One of the six boys interviewed stated that he told 'A' Ms.' W' didn't say that but he did. The operation will not be cited."

| | |
|---|---|
| **Case ID #:** | 47943616 |
| **Intake ID #:** | 72764974 |
| **Sample File:** | October 2019 |

**Summary:** A facility's internal investigator stated that a thirteen-year-old girl reported to her therapist that a fourteen-year-old girl touched her on the breast, vagina, and buttocks over the clothing during school in the classroom.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

---

[2] *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (2018).

R**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Child not at risk. Incident over clothes. Does not rise to A/N." Per LPPH 6222.2, a report that does not rise to abuse and neglect can be investigated as standards."

**Monitors' Review:** The allegation involves a thirteen-year-old youth being touched inappropriately while in a school classroom and meets the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Placing a child in or failing to remove the child from a situation in which a reasonable member of that profession, reasonable caregiver, or reasonable person should know exposes the child to the risk of sexual conduct, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(7).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two-serious supervision problems

**RCCL Minimum Standards Findings:** "Based on the preponderance of evidence, there is not enough evidence to support the allegations. The victim alleged another resident touched her breast, vagina and buttocks in class. However, the resident the victim accused stated it did not happen. The victim nor the resident accused could remember what staff were present. All interviewers stated staff rotate classrooms all the time. The victim could not recall if any of the classmates saw the alleged incident. The victim did not want to give details or any other identifying information. There were no staff that could be interviewed. I picked two random classmates from the classroom of where the alleged incident occurred. The two random residents both stated the victim and the resident alleged of touching her sat next to each other but they did not see anything happen in class. All interviewers stated the victim was moved to another group. One of the random residents stated the victim told her about the alleged incident in class but was confused because she never saw that happen. The victim and alleged resident that touched her are not on the same community. The room assigned support they are on opposite communities. The incident report shows the victim reported the incident to her therapist. However, there are no details of who might have witness the incident or what day the incident could have occurred. Two of the interviewers stated the victim likes to provoke other and likes to spread rumors. Based on the information provided there are no concerns. The operation will not be cited."

**Case ID #:**          47954063

**Intake ID #:**        72792383

**Sample File:**        October 2019

**Summary:** A seventeen-year-old male called SWI with his foster care ombudsman. The youth stated that staff improperly restrained him and allegedly pushed him into his room and tried to put him in a restraint (hands behind back and stretching out as far as he could).  Another staff person put a mat on the youth's upper chest and pushed into the middle part between the esophagus and chest and held him for fifteen to twenty minutes. This occurred with one staff person holding the youth's arms and the other pushing the mat on the youth's throat, which allegedly caused a bruise on his right shoulder. The seventeen-year-old alleged victim received medical attention from the nurse on site.

**Downgrade:** SWI assigned this case as a Priority One investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-State. Due to additional calls made. Rep states OV did not report trouble breathing during restraint. Per LPPH 6222.2 intake does not contain allegations of A/N. Allegations pertain to inappropriate restraint.  OV did not report trouble breathing during restraint.  Intake will be addressed in standards inv."

**Monitors' Review:** The allegation of excessive force being used against a youth during a restraint meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings: "**Based on the preponderance of the evidence, it was determined that there are no minimum standard deficiencies as it pertains to this investigation. An intake was received on 10/08/2019, alleging that a child in care, "TP," was inappropriately restrained and disciplined while at the operation. As part of the investigation, video footage, child records and operation records were gathered. Interviews were conducted with operation staff and children at the operation. According to operation records, the staff that allegedly performed the inappropriate discipline, "JJ," was not working on the day of the alleged incident 09/30/19. In the intake, "TP" also named resident, [name removed], as a witness to the incident due to being roommates. According to the room charts, [child] was not "TP's" roommate at the time of the alleged incident and the 2 have never been roommates. Camera footage of the date and time of the alleged incident, was also reviewed during the inspection. There were no indications of any restraints on "TP" at this time and "JJ" was not observed in the video. 'TP's' roommate, [name removed], was interviewed as part of the investigation. TP named [roommate] as a witness to the incident, but [roommate] denied any knowledge of the restraint in their bedroom by [staff person]."

22

**Case ID #:**       47945686

**Intake ID #:**     72770102

**Sample File:**     October 2019

**Summary:** Reporter was a seventeen-year-old male who, with the assistance of his therapist, alleged that facility staff told him to go to his room, which resulted in a verbal altercation between the youth and the staff person. The youth reported wanting to fight the staff person who responded he would not fight a little kid. Another staff person became involved, who the youth alleged pushed him and attempted to take him down. The staff placed the youth in a restraint and got on top of the youth's legs. It is also alleged that the staff squeezed the youth's arms. Youth said despite calming down, the restraint continued. The youth reported marks on his left bicep, which have since gone. He also reported his arms were numb. A nurse went to youth's room for an examination after the restraint and youth was given pain killers for the pain in his arms.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2, a report that does not contain an allegation of abuse and neglect, but does concern an inappropriate restraint can be investigated as a non-abuse case."

**Monitors' Review:** The allegation meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings:** "Based on the information received through interviews and paperwork reviewed, it was determined that there was not any violations of minimum standards. While the child claims staff made inappropriate comments, pushed him and restrained him for no reason, other children on the unit and the child's roommate claimed otherwise. There was no evidence to support the claims. In addition, staff interviewed did not corroborate. No citations will be issued."

**Case ID #:**       47960828

**Intake ID #:**     72810265

**Sample File:**     October 2019

**Summary:** A staff member at the RTC, stated that eleven-, eight-, and nine-year old boys were being supervised by a staff person along with a fourth child. The three boys built a blanket fort that obscured the staff person's line of sight and went inside the fort and engaged in sexually inappropriate behavior, including kissing, showing each other their private parts, touching of another's private parts, and one

child climbing on top of another. The eleven-year-old could be seen on camera climbing on top of the eight-year-old, and the eight-year-old then exposed himself to the eleven-year-old. The rest of the conduct that occurred under the blanket fort was reported by the children later. This conduct took place over the course of three-and-a-half hours.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2, a report that does not contain an allegation of abuse or neglect, but does concern for supervision that can be investigated as a non-abuse case. Incident described three children exhibiting sexualized behaviors with no force/cohesion, does not rise to the level of abuse."

**Monitors' Review:** The allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - serious supervision problems

**Minimum Standards Findings**: "A preponderance of the evidence supports a conclusion that staff 'SH' failed to provide children 'C', 'M', and 'D' with a level of supervision necessary to ensure their safety and well-being resulting in the children having an opportunity to kiss, exposure their genitals, and having inappropriate conversations.'

'Staff 'S' was responsible for supervising children 'D', 'C', 'M', and 'D' while they played in the recreation room. Video footage was reviewed and showed that 'M', 'D', and 'C' placed blankets over a couch to create a tent or fort. The inside of this tent is blocked from camera view. The boys go in and out of this tent multiple times. At times, more than one boy is seen in the tent. Allowing more than one child to play in a tent is against staff's rules. Staff 'S' did not intervene, and at one point, left the area near the tent and sat at a table located behind the couch…. Staff 'S 'expressed knowing that he messed up and was supposed to have the children within his line of sight. 'S' did not witness or overhear the boys' inappropriate behaviors. He said none of the boys should have been allowed to interact the way they did and he should have stopped it. Interviews with other staff, 'D', 'L', 'C',

and 'M' confirmed that forts or tents are allowed to be used by the children so long as staff can maintain supervision of the child and only one child at a time is allowed access to the tent."

| | |
|---|---|
| **Case ID #:** | 47927075 |
| **Intake ID #:** | 72720713 |
| **Sample File:** | August/September 2019 |

**Summary:** E-report stated that the alleged victim is a sixteen-year old female who reported a series of complaints about an RTC, including that male staff engage in unwanted contact (seemingly non-sexual based on the description) and fear that she may be physically or sexually assaulted by peers, as the victim stated that she has been threatened by another girl who is in possession of razors. Staff has confirmed that some residents are stashing razors which they have allegedly told girls they are not permitted to do. The youth also states that she is forced to disclose private information about sexual abuse in a group setting. The reporter expressed concern that the youth is not receiving proper medical care for her methamphetamine use and has not seen a licensed therapist despite a high level of need for mental health services.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**CCI Reason given for downgrade:** "Other Agency/Out-of-State. LPPH 6222.2 intake does not contain allegations of A/N. Allegations pertain to supervision. Child has not been hurt and has only been threatened. Intake will be downgraded to standards."

**Monitors' Review:** The allegations include the youth being threatened by a female who allegedly has razors; that staff have not adequately addressed this issue to ensure child's safety; and that her treatment needs are not being met. The allegations meet the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children

**RCCL Minimum Standards Findings:** "A report, alleging a youth in care was not receiving the appropriate treatment, was being threatened for not participating in the group therapy, and was being inappropriately touched by a staff member, was received and investigation. During the course of the investigation, a preponderance of evidence showing the operation was in noncompliance was not found. Operation was found to provide both group and individual therapy to the youth in care. Interviews show that youth all participate in the group therapy on a daily basis and that individual

therapy is scheduled at least once a month.   No outcries of being threatened by staff or other residents into participating in the group therapy were made.  Interview with victim, 'B H', was conducted. 'B' expressed that she does not really like group therapy as she believes it is used too much. She states she had a problem with group therapy once but was given feedback on expressing her feelings and things are better now.

In regards to staff inappropriate behavior towards the residents, it was found that the behavior was a tapping on the shoulder as a game by one staff member.  Youth, 'B', reported that this was annoying but stopped quickly as she did not play back.  In the interviews, it was found that this same staff member, 'E', had been given a verbal reprimand for this type of behavior in the past. He was provided with feedback on what is appropriate interactions.  Other staff and youth have not observed any other inappropriate behavior."

| | |
|---|---|
| **Case ID #:** | 47977776 |
| **Intake ID #:** | 72858371 |
| **Sample File:** | October 2019 |

**Summary:** A child's caseworker reported that an eleven-year-old foster child ("A") made an outcry that a child in her cabin did "inappropriate things" to her about three months earlier. This outcry took place at a 2INgage, a location where the child had a parent-child visit on October 23, 2019. The 2INgage employee reported this information to her supervisor. The supervisor contacted the child's placement, but the contents of that conversation are unknown. When the child returned to her placement from 2INgage, a facility staff person interviewed her about the alleged incident. He and the case manager contacted this caseworker the following day about the incident. They stated that they were working on the incident report and would send it to this caseworker. They stated that the child who did this was moved to another room in the same cabin as "A." The caseworker asked if they had called in an report to SWI, and they stated that they were not going to report it to SWI. Caseworker also contacted 2INgage and they stated that they did not have enough information to call SWI.

The caseworker received the incident report on October 24, 2019. The incident report stated:

"It was reported to me by [case manager] that "A" had informed [staff person at] 2INgage, that she had been touched inappropriately by a nine-year-old about 3 months ago. I went to the cabin and interviewed "A" on 10/23/19 at 5pm. I asked "A" about the 'inappropriate touching' and "A" told me, 'It happened about a year ago.' "A" continued and said, 'I'm not sure how she touched me...Don't know if I was asleep or awake, but I felt stuff, but it didn't wake me up...I don't know how she touched me, I don't know if it was inside or outside my clothes.' "A" continued, 'the room light is always on the whole night, because A.T. wanted it on all night...both of us hate each other and we consider ourselves 'frenemies'...I have nothing else to say.' I [reporter] used quotation marks because I took notes on my phone to keep a record of "A's" statements." "Just for the record – "A" has not roomed with A.T for several months...".

26

The caseworker reported that A.T. (child who allegedly sexually acted out) is still in the same cabin as "A." The caseworker also reported that "Placement moved her ("A") to a different room after the incident, indicating that they knew this happened months ago and did not report it." This information was reported to caseworker by 2INgage and the RTC - both said they would not be calling in an intake.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN Closed Without Investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-Stage. Intake does not contain allegations of A/N. OV appears to be unsure about the incident. Incident occurred 3 months ago or possibly up to a year ago. Allegations are vague and do not meet criteria for CSA."

**Monitors' Review:** An eleven-year-old child disclosed that another child in her living space touched her inappropriately. While the child's allegations are vague, a trained investigator may be able to elicit information from the child about the alleged incident. There are also concerns that the facility was previously aware of the incident and appears to have failed to make a report to SWI. The allegations meet the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Closed without Investigation

**RCCL Minimum Standards Findings:** No investigation was conducted.


**Case ID #:**          47977563

**Intake ID#:**          72857676

**Sample File:**          October 2019

**Summary:** A DFPS employee stated that an eleven-year-old female stated she was inappropriately touched by her roommate, a ten-year-old female, approximately three months earlier. The reporter thinks it is possible that the facility knew about the incident because the girls were placed in separate rooms, but the incident was never reported. The eleven-year-old stated, "I'm not sure how she touched me. I don't know if I was asleep or if I was awake, but I felt stuff. I didn't wake up. I don't know how she touched me. I don't know if it was inside or outside of my clothing." It does not appear that this incident had been previously called in. Reporter provided the name of the staff person who was allegedly responsible for supervising the girls at the time of the incident.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade:** "Other Agency/Out-of-State. Intake does not contain allegations of A/N. OV appears to be unsure about the incident. Incident occurred three months ago. Allegations are vague and do not meet the criteria for CSA."

**Monitors' Review:** The child made a disclosure of another child inappropriately touching her and an investigation is necessary to determine if supervision was appropriate at time of incident. While the allegations provided by the child are vague, there is sufficient information (including the staff who was responsible for supervision and the name of the other child) to conduct an investigation. Therefore, the above allegation of neglectful supervision meets the threshold for investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7)

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1)

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted:**
Assigned Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings**: "Based on the information gathered through face to face interviews, phone interviews and documentation there are no concerns to minimum standards found at this time. In regards to reporting serious incident alleging child on child, technical assistance was provided as the outcry was made and hotline was notified however there were minimal details in which the agency felt was not an outcry. For initial service plan of a child who exhibits high risk behaviors documentation was received and reviewed which indicated children involved do have a history of sexual abuse but not towards anyone and not while placed at the ranch. No safety plan was put in place as the children did not exhibit the behaviors while at the ranch. Technical assistance was provided as the agency staff and CPS were aware of the history and should always be prepared should the behaviors come up while at a new placement. In regards caregiver responsibility including supervision there were no concerns found as the caregiver stated there were no prior incidents regarding the two girls acting out inappropriately towards others or with each other. Technical assistance was provided as children involved both have a history of sexual abuse."

**Case ID #:**         47957442

**Intake ID #:**       72800895

**Sample File:**       October 2019

**Summary:** An eleven-year-old female called SWI with the support of her foster care ombudsman. The child stated that she had been restrained on her stomach twice in three days by a male and a female staff, both times because she left her classroom after her teacher reprimanded her.  The first restraint burst a blood vessel in her eye.  During the second restraint, her shirt and bra lifted up and the staff members did not let her pull them down until she started screaming for help.  After the second restraint, the staff placed the child in a lock down unit.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-State. Inconsistent with documented risk. No substantial harm to the child. Per LPPH 6222.2 intake does not contain allegations of A/N. Intake pertains to inappropriate restraint that does not rise to abuse.  Intake will be downgraded to standards and addressed in HHSC investigation."

**Monitors' Review:** GROs are prohibited from using restraints as a means to coerce a child to comply, TAC §748.2463, and restraints are only permissible in an emergency situation. TAC §748.2455.  An eleven-year-old girl leaving class without permission twice does not appear to be an emergency situation; therefore, the above meets the threshold for physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two-injury or serious mistreatment of a child.

**RCCL Minimum Standards Findings:** "She was given the opportunity to pull her shirt down. No children were present at the time of the restraint. The staff involved also verified the victim was not harmed during the restraint and denied she was touched inappropriately during the restraint. CPS was contacted and did not have any concerns about the purpose of the restraint or any concerns of the staff inappropriately touching the victim. Documents were reviewed and are consistent with the testimony provided in the investigation. The preponderance of evidence in the investigation indicates the allegation in the investigation most likely did not occur. No citations will be given as a result of this investigation."

**Case ID #:**        47884522

**Intake ID #:**      72609079

**Sample File:**      August/September 2019

**Summary:** An anonymous reporter stated that the facility owner has refused to have the facility exterminated for roaches and bedbugs, which has been an issue for years.  Roaches have been seen in the youths' rooms, in the cabinets and in the restroom. Recently, they were seen crawling all over the pots and in the cereal. It is unknown whether this infestation is causing any of the children to be sick.  Children have been observed with bedbug bites.  It is also reported that the facility owner will inflate and falsify details in incident reporting to maintain her level of licensure.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Neglect. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake it describes issues with pests such as roaches and bedbugs, it also discusses concerns of the operation falsifying documentation. Based on the intake the allegations do not meet the definition of "Physical Neglect" which describes neglect as leaving or exposing a child to substantial risk of physical harm.  Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** Allegations that facility owner has failed to take appropriate actions to address pervasive bed bugs and roaches in facility meet the threshold for a neglect investigation based upon:

Failure to provide a child with food, clothing, and shelter necessary to sustain the life or health of the child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(6).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:**
Assigned Priority Three-minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the information gathered through the course of this investigation there was no preponderance of evidence that supports the allegations. All the children interviewed states they never saw bed bugs in their beds. Two out of the three girls interviewed stated that they woke up with bites but didn't see any bugs. All the girls interviewed states that they've seen roaches, however there were no roaches observed during the walkthrough. All the staff members interviewed stated that there has been tree roaches but they spray. Everyone interviewed stated that they wouldn't call the roaches an infestation but it's an old house. Two out of

the three children interviewed stated that staff exaggerates what they say. One out of those two girls states, staff writes them up. However, they don't know if that's what is written in the write up. One out of the two children who states that the staff gets what they say confused states that they never got in trouble for it. One child was taken to the hospital and the doctor was unable to determine the type of bites she had. Bed bugs were a possibility, but it was definite. Based on the preponderance of evidence no citation will be given."

*A subsequent intake was reported in November 2019 with allegations of bed bugs.  A minimum standards investigation was conducted. The investigation cited the facility for bed begs and for not using an exterminator to eliminate the infestation.*

**Case ID #:**         47923886

**Intake ID #:**      72712374

**Sample File:**       August/September 2019

**Summary:** A staff member from an RTC stated that a seventeen-year-old female and thirteen-year-old female were engaging in sexually related behavior in one of the rooms while staff allegedly went to the restroom.  Residents denied this occurred.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

R**CCI Reason given for downgrade:** "Doesn't appear to involve abuse, neglect, or risk. Downgrade to PN. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake two children engaged in a sexual act. However there was no reports of force, threats, or coercion. Additionally, the children admitting to doing it when they knew staff was not present.  Per our definition of neglect neither child was placed in or left in a situation that caused or could of caused substantial harm. Additionally, information in the intake do not suggest any concerns related to CSA.   Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect.  It will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** Allegations are that the residents engaged in sexualized behavior. Monitors confirmed the thirteen-year-old has sexual victimization history documented in her case record. There is a four-year age difference between the youth. The above meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - serious supervision problems.

**RCCL Minimum Standards Findings:** "Based on the information gathered during the course of the investigation, it has been determined that there is not enough evidence to validate the children were inadequately supervised when the incident occurred. Victim 1 was interviewed face to face. She reported that Victim 2 came into her room without permission and began touching her. They provided conflicting stories as to where the incident occurred. She believes that staff was in the restroom when the incident occurred.  Victim 2 was interviewed face to face. She stated that Victim 1 came into her room without permission. They provided conflicting stories as to where the incident occurred. She believes that staff was in the kitchen when the incident occurred….Incident Reports completed on 9/17/19 for 'TW' and 'JT', document that both residents sexually acted out in room #2. 'JT' admitted to going into room #2 without permission….'FP' [Direct Care Staff] was interviewed face to face and stated that 'J' was placed on precaution after the incident occurred.  Stated that staff may not have been paying attention when the incident happened. There will be no citations issued for this investigation."

| | |
|---|---|
| **Case ID #:** | 47954066 |
| **Intake ID #:** | 72792079 |
| **Sample File:** | October 2019 |

**Summary:** Reporter, a hospital social worker, stated that two girls, one seventeen-years-old and one sixteen-years-old snuck out of the window of the group home on October 6, 2019. The youth were picked up by two adult men in a car. One youth reported that her hands were tied to the backseat car door with a shoelace and she was reportedly raped. The other youth reportedly had sex with the other male while in the car.  Following the rape on Sunday night, the victim told the reporter that she texted one of the staff at the facility and told her "she just got raped" and showed the texts to the reporter. The victim reported the rape to law enforcement on October 7, 2019, and then returned to the facility. The girls were taken to the hospital on October 8, 2019. One youth also reported that she was raped about three weeks ago and was paid $200.

*The State has designated one of the youth as a victim of sexual abuse due to an incident in a facility earlier in 2019.*

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected.  Per the intake two children ran away from the facility and engaged in inappropriate acts away from the facilities. The incidents did not occur at the facility nor are the adult males under the auspice of the facility. According to the children's CPS workers the children were not on any special/heightened supervision at the time of the runaway and OVs CPS

worker relayed LE deemed the facility a safe place for them to return and the children are being discharged from the hospital. Per CLASS investigation history the facility did report the child's runaway on 10/06/2019. Additionally, there is an open LE case. Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC P2 non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** The allegations involve two youth, both of whom have extensive histories of running away. While AWOL, a serious incident occurred that resulted in harm. An abuse or neglect investigation is necessary to determine if these youth were subject to adequate supervision to prevent youth being able to go AWOL. These allegations meet the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three- minor violation of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings: "**Based on the evidence gathered there is not a preponderance of evidence a violation of the minimum standard occurring regarding the original allegation. The following lead to this disposition.

-Per the service plan's [sic] of [both youth] they were being supervised accordingly.

-4 out 5 residents interviewed stated that the staff supervise them well. They aren't ever left alone.

- CPS Caseworker of [youth] was very adamant that she was a runner. [Youth] will run regardless of any preventative measures. She is still having AWOL issues even at her new placement."

| | |
|---|---|
| **Case ID #:** | 47894902 |
| **Intake ID #:** | 72636557 |
| **Sample File:** | August/September 2019 |

**Summary:** A CPS worker reported that a seventeen-year-old foster child was on a Facebook Live video with three other girls in their room in the "loft". [CPS worker was notified by a Facebook

notification when video went live and she watched the video live on her phone]. Reporter stated that the youth created two separate videos. One video was about ten minutes and the other one was about nineteen minutes. For approximately thirty minutes, there was not a staff member present to intervene or supervise the youth while these videos were made. The videos include the youth twerking and humping and one youth was seen in her bra and underwear. The reporter stated that when youth "shakes her butt before putting on shorts, you can see her butt cheeks on the video." The staff is required to provide one-to-three supervision to help prevent self-harm and AWOL behavior.  The seventeen-year-old has a history of self-harming behavior and running away and she ran away during the week and was involved in "prostitution and drug activity."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse/neglect case if it suggests a minimum standard was violated, but not that a child was abused or neglected.  Based on the information in the intake, several children were not appropriately supervised for about 30 minutes while at the facility.  The children were on Facebook Live and staff was not observed to be in the area.  The concern can be addressed as a possible standard violation and does not rise to the level of neglect.  Intake as staffed by HHSC Supervisor and RCCI Supervisor.  It was determined the case would be sent to HHSC for evaluation of minimum standards."

**Monitors' Review:** Allegations indicate that one-to-three supervision requirements were not met as four youth were unsupervised for at least thirty minutes.  Youth has known self-harming and AWOL history.  During unsupervised time, youth engaged in a potentially harmful activity on Facebook Live. The reporter stated that one of the youth ran away the night of the incident and is suspected to have been sex trafficked while AWOL. It is not clear if youth's activities on Facebook Live are related to sex trafficking incident that took place that night. The allegation meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

Failure to comply with an individual treatment plan, plan of service, or individualized service plan that causes substantial emotional harm or substantial physical injury to a child, by a person working under the auspices of an operation. 40 TAC §745.8559(10).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Assigned Priority Two- serious supervision problems.

**RCCL Minimum Standards Findings:** "Victim child and other collaterals confirmed to always being left unsupervised. The resident stated there is not a staff assigned to their area. A staff will come check every 15 minutes or more. The children explained they are left unsupervised. They all confirmed to being on social media/ Facebook Live without prior approval. The staff interviewed confirmed to not being directly assigned to the loft but periodically checking on the girls. The staff

explained there's was no one in the loft when the children were on Facebook live. The residents were left alone for a total of 22-25 minutes with no supervision, the video consisted of children twerking and being inappropriate. There will be a citation for the staff not appropriately supervising the residents according to the service plans."

*Service plan supervision requirements as documented in investigation:*

Youth 1: "staff needs to have her in the line of sight when she awake. Staff should check on her every 5 minutes to ensure that she is not engaging in any type of self-harming behaviors"

Youth 2 and 3: "Youth will be supervised while inside the home and while she is around her peers to ensure the safety of herself and others. She has a history of verbal/physical aggression AWOL, self-harming behaviors and suicidal ideations. She will be monitored through video/auditory surveillance."

Youth 4: Youth "has a history of needing to be closely supervised around younger peers due to her manipulating and intimidating them."


**Case ID #:**          47890030

**Intake ID #:**          72623888

**Sample File:**          August/September 2019

**Summary:** Facility reported that a fifteen-year-old foster child who takes psychotropic medication placed a cord to her MP3 player headphones around her neck during the overnight shift of August 23-24, 2019. The child did not report any injuries from the action and was transported to the hospital on August 24, 2019 as a result. She has been medically cleared by the hospital and is waiting to meet with the mental health team for a psychiatric assessment. It has not yet been determined if she will be admitted to the psychiatric hospital. The child reported to the facility staff that she wanted to "kill" herself at the time of the incident; however, she reported to the hospital staff that she did not intend to "hurt" herself, but just felt as if no one cared for her.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake the child placed a cord around her neck however no injuries were observed, and staff transported her to the hospital for treatment where she was cleared to return back to the facility. The child later reported her intentions were not to commit suicide therefore this was not an attempted to suicide. The intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to a P2 HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** A child attempted suicide and it is unclear if supervision was adequate and conformed with any increased supervision requirements at the time of the apparent suicide attempt; the allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Assigned Priority 2-serious supervision problems.

**RCCL Minimum Standards Findings:** The youth's service plan was reviewed, and it documented that "K must be monitored with visual and auditory surveillance."

"Based on the information gathered during this investigation; it was determined that there was not a preponderance of evidence to prove the facility inappropriately supervised a child in care. After interviewing the residents it was determined that 'K' had wrapped a pair of head phones around her neck. After interviewing 'K' it was determined that she was inside her room when she had the head phones around her neck when staff came in and took them from her. All residents interviewed stated that staff are always keeping an eye' on them and did not have any complaints on staff supervision. After interviewing the staff it was determined that when a resident tries to self-harm they are trained to process with the minor and get the object away from them. The incident report was reviewed and it was determined that another resident informed staff ('KW') that 'KT' was trying to wrap a pair of head phone cords around her neck. Staff processed with 'K' and she responded that "nobody cares about her and that all her family is dead and she wants to die." The indent report states that staff was able to get her to calm down and go to bed and 'K' was taken to hospital the next day. Houston Serenity acted appropriately following the incident and it was concluded that the children in care are being appropriately supervised; no minimum standard violations will be cited at this time."

*The investigation did not explore the level of supervision at the time of the incident.*

*In addition, this intake was received at SWI on August 24, 2019. The Monitors' additional review of the child's record found that from August 5, 2019 to September 1, 2019, this child had three self-harming incidents at this facility, all of which resulted in hospitalization. The first incident occurred on August 5th and the record states that following this incident a safety plan was created. The details of the safety plan were not provided. On August 21, 2020, it is documented that due to concerning statements about self-harming, the child was placed on "3-day precaution." The next incident (this intake) took place on August 23, 2019. It appears at that time the child was subject to a safety plan and 3-day precaution due to previous self-harming. However, she was still able to self-harm. She was hospitalized for two days. Then on September 1, 2019, the child self-harmed again and was*

*hospitalized.  The child did not return to the facility after this incident.  This child's repeated ability to self-harm during a span of thirty days raises serious concerns about supervision.*

**Case ID #:**        47897738

**Intake ID #:**      72643517

**Sample File:**      August/September 2019

**Summary:** RTC staff stated that two males, ages sixteen and seventeen, got into a physical altercation last night and were quickly separated, and no one knew why they fought. No injuries were visible or reported. The next day the sixteen-year-old hit the seventeen-year-old in the face causing bleeding and dizziness. According to the staff, there was no provocation from the seventeen-year-old. The seventeen-year-old was treated by EMTs, taken to the ER for medical attention and charges were filed against the sixteen-year-old for a "hate crime."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to Closed Without Investigation.

**RCCI Reason given for downgrade:** "Doesn't appear to involve abuse, neglect or risk. Inconsistent with documented risk. Per LPPH 6221.2, an intake report will be investigated as non-abuse or neglect if the report does not contain an allegation of abuse or neglect or the death of a child.  Based on the information in the intake, two children were involved in a physical altercation at the facility.  The intake stated that staff intervened during the altercation and appeared to respond appropriately.  Law enforcement was contacted and arrested on of the children.  There is no information in the intake that staff did not intervene timely, allowed the fight to occur, or provoked the fight.  The intake was staffed by HHSC Supervisor and RCCI Supervisor.  It was determined the intake would be sent to HHSC to evaluate for possible standards violations."

**Monitors' Review:** The facility staff was aware of a prior physical confrontation between the two residents and should have put a safety plan in place in an effort to prevent the second incident; therefore, the above meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Administrative Closure.  Reason: 'Not subject to investigation'

**RCCL Minimum Standards Findings:** No minimum standards investigation completed.

**Case ID #:**          47873376

**Intake ID #:**        72579254

**Sample File:**        August/September 2019

**Summary:** A DFPS worker, stated that GRO staff brought a seventeen-year-old male who has been non-compliant with his medication and has behavioral problems to the caseworker's office to drop him off without following proper protocol.  While at the office, the youth alleged that a male staff member (unidentified) pushed and shoved him and further stated that another female staff member also consistently picks on youth who take medication. The reporter also stated that the youth was going through withdrawal from not taking his medication and was being moved to an emergency shelter.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Closed and reclassified. Case staff with RCCL HHSC Monitoring Supervisor. Per LPPH 6222.2, this intake report does not contain an allegation of abuse or neglect, but does concern inappropriate discipline. It is reported that staff pushed/shoved the victim but it does not report that the victim was hurt or had any injuries. The victim is no longer at the operation. The incident does not rise to the level of abuse and neglect and will be investigated for a possible standard violation."

**Monitors' Review:** A staff member allegedly pushed and shoved a youth in care. The youth is vulnerable due to mental health needs and ongoing refusal to take medication to manage behavior; therefore, the above meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children

**RCCL Minimum Standards Findings:** "Interviews were conducted with the victim and all collaterals. Based on the information provided, the following deficiency will be cited:

748.1101(b)(4)(A)(vi) Children's rights- To be free from being threatened with the loss of placement or shelter as punishment.  The agency staff stated that 'M' has behavior issues and was being non-compliant with the agency staff. The agency Case Manager and Program Director stated that they were advised by CPS to bring the foster child to the office to see if they can take him earlier since the facility already put in a discharge request.  Neither staff had the name of the CPS worker who told them to do so. I contacted 'M's CPS Case Manager and she denied telling the staff at the facility to bring him to the office and was told by her supervisor about the incident.

748.2307(1) Other Prohibited Punishments-any harsh, cruel, unusual, unnecessary, demeaning, or humiliating discipline/punishment will not be cited.  There is not enough evidence to prove that staff pushed the child in care. All collaterals interviewed denied seeing staff pushing the foster child.

748.2003(b)(3) AP Administration of prescription medication-Administer medications according to instructions or a prescribing health-care professional's orders will not be cited.  The foster child admitted that he refused his medication. I reviewed the medication log and the agency staff documented that that foster child did refused his medication. 'M's' CPS Case Manager stated that she is aware that he refuses his medication."

| | |
|---|---|
| **Case ID#** | 47959621 |
| **Intake ID#** | 72806954 |
| **Sample File**: | October 2019 |

**Summary**: An RCCL investigator made an internet report that a fourteen-year-old youth, while being interviewed as collateral for a different matter, reported having sexual contact with another child while placed at the operation. However, the youth refused to provide the name of the other child involved or any specific details. Concerns were also reported regarding staff members showing favoritism, the children receiving small portions of food, and youth not having sufficient clothing.

**Downgrade**: SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade:** "Doesn't appear to involve abuse, neglect, or risk. open investigation #47940346. The new outcry is regarding consensual sexual contact with a peer at [redacted] (no identifying information on peer) and staff showing favoritism and lack of clothing and small amounts of food being given. Per LPPH 6222.2 can be investigated in a non ABNG."

**Monitors' Review:** This fourteen-year-old, who is transgender and identifies as male and has a documented history of extreme sexual abuse, disclosed sexual contact with another youth at the facility.  This youth's case plan details high risk self-harming behaviors and states: "Due to youth's habitual self-harm, threats of suicide and homicide and inappropriate behaviors with other females, she needs constant supervision" (Case Plan; 10/8/19).  Therefore, the above allegation meets the threshold for a neglectful supervision investigation based upon the following:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Failure to comply with an individual treatment plan, plan of service, or individualized service plan that causes substantial emotional harm or substantial physical injury to a child, by a person working under the auspices of an operation. 40 TAC §745.8559(10).

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted**:
Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the evidence gathered there was not a preponderance of evidence a violations of the minimum standards occurring regarding the original allegation. The following lead to this disposition. 3 out of 3 CPS Caseworkers interviewed stated that they had no supervision concerns regarding the facility. Per [youths'] Service Plans the facility was providing adequate supervision to fit their individual specific needs…"

| | |
|---|---|
| **Case ID #:** | 47967488 |
| **Intake ID #:** | 72827752 |
| **Sample File:** | October 2019 |

**Summary:** Reporter, the child's CASA worker, stated that a nine-year-old female child diagnosed with ADHD, PTSD, and Dyslexia has a mark with discoloration and a scratch-like mark with slight bruising on the upper inside of her left arm that allegedly was caused by her foster mother when she grabbed her. The child said the foster mother twisted and squeezed her arm hard, scratched the child with her fingernails and pushed her into her bedroom. It is unknown if any treatment was provided for the bruise/scratch. The reporter also indicated a safety concern in the foster home because the foster mother previously stated to the CASA worker that the front doors are kept unlocked and the children are allowed to play in the garage where a gas propane tank is located within reach to the children. Also, during a "pop up visit" the foster mother was observed retrieving a prescription bottle containing Guanfacine from the kitchen cabinet.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, A supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non-abuse or neglect report when the information in the report suggests that a minimum standard was violated, but not that a child was abused or neglected. The information in the intake was assessed and it was determined it did not rise to the level of physical abuse. The child was scratched on a non-vital part of her body (arm) as a result of being grabbed by the foster parent. The intake stated the foster parent squeezed her arm and 'K' was scratched by the foster parent's fingernails. It was agreed the intake would be sent to HHSC for evaluation of inappropriate discipline and possible standards concerns."

**Monitors' Review:** The foster mother allegedly pushed and grabbed the child, which caused physical injury and allowed the children to potentially have access to a propane tank and prescription

medications; therefore, the allegations meet the threshold for both a physical abuse and neglectful supervision investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

Placing a child in or failing to remove him from a situation that a reasonable member of that profession, reasonable caregiver, or reasonable person should realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(3).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three-minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "During the course of the investigation documentation was reviewed and interviews were conducted to support the following: … Other child's information was investigated (Inv# 2582868). 1 of 3 children reported no type of physical discipline took place in the home nor restraints took place in the home. There was not enough evidence to support a deficiency. This standard was evaluated and determined compliant…This investigation was without citations or deficiencies. No Technical Assistance was provided. Any pictures and/or documentation have been placed in the file."

| | |
|---|---|
| **Case ID #:** | 47910905 |
| **Intake ID #:** | 72678249 |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter, the victim's high school counselor, stated a fourteen-year-old male child said that his foster brother likes to pull his pants down in front of him and "shake his ass" in the child's face and punches him in "his private parts." The child told his foster parent who told the foster brother to stop but took no additional action. The foster brother was also seen slapping one of the other foster children on the buttocks. Sometimes the foster children are left alone when the foster parents go to the store. At those times, it is alleged the foster brother shakes his butt and twerks and tells the victim, "come on and f**k me." After the child told the foster parents about what happens, they still left the children at home alone.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

R**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. The intake was staffed by RCCL and HHSC and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake, all the children are ages 14-15 and are all male. The intake reports of a child acting inappropriately, however there is no reports of the child using any force, threats, or coercion. The children are reporting their concerns to the foster mother and she is verbalizing the other child to stop. The intake also states the children are left home alone, however they are all older and in age and the concerns for being left home alone are not severe. The intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** The above allegation of repeated sexual acts by another youth in the home are not being adequately addressed by the foster parents, and the victim being left alone with the acting out foster brother, meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Placing a child in or failing to remove the child from a situation in which a reasonable member of that profession, reasonable caregiver, or reasonable person should know exposes the child to the risk of sexual conduct, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(7).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the information gathered during the course of the investigation, it has been determined that there is enough evidence to validate the allegation of children being left unsupervised. Five collateral interviewed confirmed to (youth) being left alone for about 30 minute(s) to an hour. The service plan for three residents was not being followed; the children cannot be left unsupervised without a caregiver. The investigation is being cited for not following the supervision plan for two residents, allowing a frequent visitor to have unsupervised access without a background check ad also there was on initial service plan for T. D. not signed by the resident in the home."

**Case ID #:**          47892403

**Intake ID #:**         72630015

**Sample File:**        August/September 2019

**Summary:** A DFPS caseworker reported that a sixteen-year-old foster child and "more than several other female peers" left their unit and made it to another facility unit via the elevator. The girls reportedly did not have their clothes on and engaged in sexually related behavior with other youth on the unit. The youth's neck and upper chest had numerous (approximately ten) half-dollar size purplish marks.  The youth admitted to allowing another female peer to suck on her neck. The reporter is concerned that the youth had access to use the elevators. The sixteen-year-old has been diagnosed with schizophrenia; Major Depressive Disorder with psychotic features; PTSD; and Generalized Anxiety Disorder.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake a child ran away from the facility and obtained contraband while off campus.  The intake reports children engaging in inappropriate sexual contact, however the allegations do not describe anything being related to force, threats, or coercion and indicates the children allowed it to occur. There are general concerns as it relates to the overall supervision however the allegations are not neglectful in nature. The intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** Allegations raise concerns that a potential lack of supervision allowed youth to access elevators and engage in sexually-related behavior. In addition, given youth's numerous mental health diagnoses, an investigation is necessary to explore if she was subject to any heightened supervision plans at the time of the incident and if these plans were followed.  The allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:**
Assigned Priority Three- minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "This investigation failed to yield a preponderance of evidence that staff failed to provide adequate care and supervision to the children. A group of children were sexually acting out. Staff intervened and the incident was documented."

| | |
|---|---|
| **Case ID #:** | 47939778 |
| **Intake ID #:** | 72754428 |
| **Sample File:** | August/September 2019 |

**Summary:** Facility staff reported that at approximately 3:00 a.m. on September 28, 2019 two youth (fifteen- and fourteen-year olds) were sent to the hospital for attempting to self-harm. Earlier in the day, the youth broke a light bulb, and while it is reported that the facility cleaned up the broken glass, the boys managed to get some of the glass, which they later used to cut their wrists. The youth were each in their own room and a staff person caught them self-harming while doing rounds. Staff called 911 and at the time of the intake report, both boys were still at the hospital waiting to be transferred to a psychiatric hospital. Youth stated they wanted out of the facility, so they attempted to self-harm. Although the youth have a history of self-harming, they have not self-harmed at this facility before.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN Closed Without Investigation.

**RCCI Reason given for downgrade:** The following is quoted in its entirety from the case documentation: "Priority Changes: 2->N Inconsist w/doc risk. Reason for Closure: Doesn't appear to involve abuse, neglect, or risk. RCCI Supervisor contacted reporter "P" at Life Purpose. It was reported the two VC's injuries were superficial overall. He stated maybe one or two cuts broke the skin with minimal bleeding. (Photos attached). "P" confirmed the two children have a history of running away and other attention seeking behaviors. As part of AWOL history they are set up during the night hours to be checked on more frequently, which is how staff caught them trying to run. The two VCs are also separated in different rooms and as the male staff was preventing the runaway of "K" the other child, "S" began acting up. At that point that was when the other, female staff came to assist. During the commotion both "K" and "S" had pieces of a light bulb that was broken earlier in the day and started to self-harm, however the injuries were minor. Due to the children causing such commotion, trying to run, and trying to self-harm EMS/LE was called out to assist. They were both transported to [redacted] Hospital. However "P" reported when they contacted to get the two into a psychiatric hospital, when intake heard the names of the two children they said they would not take them due to them constantly in and out of psychiatric hospital for attention seeking behaviors. Photos were requested of the injuries and "P" agreed to send them to me. RCCI Supervisor contacted Reporter Deputy "M." "M" stated he responded out to the facility during the crisis. He indicated that "K" was causing chaos in the home and becoming aggressive. When speaking with "K", "S" and the two other staff he learned that "K" was caught by staff trying to run away and when confronted he

began acting out and used a piece of glass from a light bulb to start scratching his arm. "M" indicated it appeared "K" was the "ring leader" and "S" was following his lead and started doing some of the same things. "M" stated the reason he called in a report to the hotline was because he tried calling the children's CPS workers during the night, however did not get an answer so he wanted to make a report so the department was aware of the self-harming and the attempted AWOL. He indicated that both "K" and "S" had ran away last week with another resident and he learned that staff had actually prevented the two from running away again, which is how all of this started. He denied the self-harming injuries were severe stating "S" may have had some scratches that bled, but "K" did not have any bleeding. From talking to the two boys, it seems they were just trying to self-harm to be able to leave since the AWOL did not go as planned. With regards to staff and supervision, "M" stated that the staff were doing well. He commended them from preventing the boys from running away again and getting LE involved when things began to become a bit chaotic. He denied any concerns with Neglectful Supervision and felt the entire situation was created because of "K" and "S." "M" was asked about the boys saying they didn't feel "safe" there. He reported both boys said the same thing, as if it were rehearsed and indicated neither children gave any additional information. He denied either child made an outcry of abuse. Intake was staffed with DFPS RCCI PA, and the intake was agreed to be downgraded based on the following: It appears the alleged self-harm was more attention seeking with the ultimate goal to be moved from the facility. The staff were present and addressing the behaviors. RCCI Sup was in constant contact with "P" about the whereabouts of the VCs to assess a need for a safety plan. RCCI was informed that all psy hospitals including West Oaks refused to take either boys so the hospital released them back to the facility. As staff and the children were walking back to the van to return to the facility, both boys took off and ran from the hospital. LE was contacted immediately to help locate the children. (Facility was advised to make another report regarding the runaway) RCCI was informed that LE located both children. "S" was sent to [redacted] (point of Entry) and CVS permanency had "K" return back to the hospital. "P" stated they will have to take "K" back and agreed to put a safety plan in place for supervision.

Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake two children attempted to run away and engaged in self-harming behaviors. Two intakes came in, one from LE and one was a self-report. When talking with both reporters they denied the self-harming injuries were severe and described them as superficial. Photos were sent and reviewed, and it was confirmed the injuries were very small scratches an both children's wrist areas. LE and the facility stated staff caught a child trying it AWOL and was able to prevent it. However the child was upset they could not AWOL and began self-harming to leave the facility. The other child then began acting up along with the first child. LE informed RCCI they had no concerns as it relates to NSUP or PHAB and only called in a report as CVS workers did not answer during the night and LE wanted the department to be aware of the children's behaviors, not because he has concerns with the facility. LE stated the facility did a "good" job of preventing the children from running away as both boys have a history of AWOLing. Per our definition of neglect neither child was placed in or left in a situation that caused or could have caused substantial harm. Intake was staffed by DFPS RCCI Supervisor and DFPS, RCCI Program Administrator and the intake was agreed to be downgraded to HHSC monitoring to be evaluated for possible standards concerns. Two boys broke a light bulb and used the glass to try and cut their wrists. When a staff member intervened, the two boys attempted to run away. The boys are now at

the hospital being evaluated. This intake is being administratively closed by RCCL Supervisor. Intake was staffed by DFPS RCCI Supervisor and DFPS, RCCI Program Administrator and the intake was agreed to be downgraded to HHSC monitoring to be evaluated for possible standards concerns."

**Monitors' Review:** Two boys were able to secure broken glass and use that glass in their separate rooms to self-harm. It is unclear if supervision was negligent at the time of the incident. The Child Plan for "S" in IMPACT documents that he "will need to be kept within sight and sound supervision at all times due to high risk of running away... [Youth] has a history of suicidal and homicidal ideations. He requires constant supervision during waking hours and frequent monitoring during the night." (Plan dated: August 22, 2019). IMPACT also shows that both youth have had multiple hospitalizations due to self-harming and suicidal ideation. The above allegations meet the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Administrative Closure - 'Not subject to investigation'.

**RCCL Minimum Standards Findings:** No investigation was conducted.


**Case ID #:**        47902490

**Intake ID #:**      72656972

**Sample File:**      August/September 2019

**Summary:** Reporter stated that a twelve-year-old female child stated that she engaged in consensual sexual contact with a thirteen-year-old boy at the facility. The twelve-year-old claimed that she wanted the boy to "finger" her and that he touched her in her private area and she agreed to this. The victim claims that it happened in class at the facility last spring (March/April 2019) and they were boyfriend and girlfriend at the time. The reporter spoke with the boy and he denies it occurred.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6222.2, a report that does not contain an allegation of abuse or neglect, but is concerning for supervision, can be investigated as non-abuse neglect."

**Monitors' Review**: Two children were able to engage in sexual contact and the supervision at the time of the alleged incident is in question; and therefore, meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Five- Desk Review

**RCCL Minimum Standards Findings:** "Based on the preponderance of evidence there was no violation of minimum standards. The external documentation was reviewed. The service plans for [youth] was reviewed. They both has a risk of sexually acting out. The therapy note for [female child] was reviewed and it stated [female child] statement about another youth at the Ranch. [Operation staff] stated they knew about the incident but [female child] stated it was consensual and later stated it was not consensual. [Operation staff] stated [youth] are in two separate groups and in different houses. The only interaction that they have is in our dining room and they sit at different tables. The recommended action will be routine monitoring."

| | |
|---|---|
| **Case ID #:** | 47858529 |
| **Intake ID #:** | 72539073 |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter stated a fourteen-year-old female made an outcry that she had an incident with a staff person at the RTC where she did not comply with a staff person's directive and was "flung away from a doorway and into a wall." The youth claims she received a scratch and a three-inch mark was noticeable on her inner arm.  The youth further stated that another staff member performed an inappropriate restraint a few days prior and the staff member "always touches her" aggressively when doing a restraint on her, but states the touches are not sexual in nature.  The reporter also stated that staff minimized youth's outcry by stating that the video footage did not support her allegations.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk.  Priority Change: Inconsist w/doc risk. Child's allegations were not supported by reviewed video. Child suffered minor injury on her elbow when she slipped."

**Monitors' Review:** The allegations involve a fourteen-year-old female receiving minor injuries during a reportedly forceful physical interaction with an RTC staff person.  Also, RCCI downgraded the intake to non-abuse and neglect stating, "allegation not supported by viewed video." However, the downgrade was made prior to the August 1, 2019 initiation of the minimum standards investigation and the videos were not viewed by RCCL staff until August 22, 2019, as documented in CLASS.  There is no indication that RCCI ever received or reviewed videos prior to the downgrade. The allegations in the intake report meet the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings:** "Based on the preponderance of evidence, there is not enough evidence to support the allegations. Based on the information provided, there will be no citations on the operation." The video "does not show any shoving and the staff and therapist stated the scratches were from self-affliction with a zipper."


| | |
|---|---|
| **Case ID#:** | 47917884 |
| **Intake ID#:** | 72695841 |
| **Sample File**: | August/September 2019 |

**Summary**: Facility staff member called to report concerns, including: allowing residents to fight one another, resulting in injuries each time, including a "golf ball sized bump on her head:" youth "stomped" on another youth's head while staff person "did nothing;" and staff person's statements like "this is why you got your ass whooped; this is why you're always getting attacked because you got a smart mouth" to a resident who had just been attacked by other residents. The reporter also identified concerns about gluten-free meals not being provided to a youth requiring them; staff members conducting a romantic relationship with knowledge of the residents; and staff calling residents into a meeting and telling them to "stay the f**k out of my business." The final concern is about lax supervision. The staff member alleged two months earlier, two residents were missing for five hours and later found hiding in the air ducts. The reporter also stated that incidents happen because of short staffing/out of ratio; grievances are documented and never addressed; food is not delivered on time; staff watch television in empty rooms/cottages; residents do not have access to water.

**Downgrade**: SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out-of-State. Per LPPH 6221.2, an intake report will be investigated as non-abuse or neglect if the report does not contain an allegation of abuse or neglect or the death of a child. Based on the information in the intake, two children were involved in a physical altercation at the facility. The intake stated that staff intervened during the altercation and appeared to respond appropriately. Law enforcement was contacted and arrested on of the children. There is no information in the intake that staff did not intervene timely, allowed the fight to occur, or provoked the fight. The intake was staffed by HHSC Supervisor and RCCI Supervisor. It was determined the intake would be sent to HHSC to evaluate for possible standards violations."

**Monitors' Review:** The allegations meet the threshold for a neglectful supervision investigation based on:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Failure to seek, to obtain, or to follow through with medical care for a child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(5).

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted**:
Assigned Priority Two – serious supervision problems.

**RCCL Minimum Standards Findings**: "Based on the information gathered through face to face interviews, phone interviews and documentation there were concerns to minimum standards found. In regards to child/caregiver ratio staff members and residents admitted on more than one occasion for over a long period of time staff was left out of ratio for their entire shift. Technical assistance was provided regarding this citation. Technical assistance was also provided in regards to profane language as some residents expressed profanity is used by staff but residents were not offended as this is normal for them. Residents denied the profanity used from staff was never used directly towards residents only in conversation. Staff K, who allegedly used profanity denied the allegations however, she admitted she did yell and lost her cool in which she received a write up and consequences from her actions were put in place. She denied threatening the residents or staff.

In regards to caregiver responsibility there were no concerns regarding supervision or staff not intervening when necessary as it was expressed by all residents and staff during any type of altercation staff immediately try and de-escalate, use redirection, or physically separate the residents. In regards to staff allowing residents to bully one another all staff and residents deny these allegations and it is mentioned the residents who soil belongings or try to cause safety issues are given consequences and support is called to assist.

In regards to meals not being provided it was confirmed by all residents meals are provided three times daily as well as a snack. Resident 'L' admitted to always receiving a tray of food but she states she is on a gluten free diet due to stomach pains; however a discontinued order was received from agency staff, nurse, and CPS showing the diet has been discontinued. Residents all admit having access to water and admitted they are able to keep water bottles on them. Residents interviewed made no allegations about being treated differently or staff having favoritism."

| | |
|---|---|
| **Case ID #:** | 47945766 |
| **Intake ID #:** | 72770332 |
| **Sample File:** | October 2019 |

**Summary:** Reporter stated that a fourteen-year-old female was seen with bruises on her arms and the top of her right hand, and the victim states they were caused by an incident with facility staff. The youth admits to hitting staff but was then confronted by three staff persons who put her in a restraint

and pushed her into a bedframe, hitting her side. The youth said there were scratches on her back, but she refused to show the reporter. The staff allegedly said the youth "slipped on a pillow," but the youth told the reporter "she didn't slip on a pillow, they pushed her." The incident triggered the youth's mental health, and she tied something around her wrist and was taken to the psychiatric hospital. There were reportedly no witnesses to the incident. Unknown if the facility cameras are located in the area where the incident occurred.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

R**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Child not at risk, now at different placement. Incident does not rise to abuse and neglect. Per LPPH 6222.2, a report that does not contain an allegation of abuse and neglect, but does concern an inappropriate restraint can be investigated as a non-abuse case."

**Monitors' Review:** The allegation involving physical abuse perpetrated by RTC staff persons against a fourteen-year-old youth meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two - injury or serious mistreatment of a child

**RCCL Minimum Standards Findings:** "Based on the preponderance of the evidence gathered by this worker there will be no citations to minimum standards regarding inappropriate restraint leading up to an injury. [Youth] was interviewed and she said on 10/1/19 while at New Life Treatment center she was placed in restraint by staff. [Youth] said staff pushed her up against her headboard which caused her to sustain an injury to her thigh. On 10/4/19 Licensing conducted a visit with [youth] and there were no visible injuries/bruising observed. Reporter CPS liaison was interviewed. [Reporter] said [youth] changed her story regarding staff a couple of times, making it confusing, however as a safety precaution she called in the intake. Staff were interviewed and they denied placing [youth] in a personal restraint and pushing her up against the headboard on 10/1/19. Incident reports completed for 10/1/19 were reviewed and none indicated that [youth] was placed in a restraint…"

| | |
|---|---|
| **Case ID #:** | 47952706 |
| **Intake ID #:** | 72788932 |
| **Sample File:** | October 2019 |

**Summary:** RTC staff stated that on October 5, 2019 a sixteen-year-old male was attacked by a seventeen-year-old male, punched in the face and reportedly the staff "intervened right then." The sixteen-year-old was not believed to be injured but the reporter stated that the next day, October 6, 2019, RTC staff noticed the sixteen-year-old had a black eye. On October 7, 2019, the sixteen-year-

old went to school and was taken from school to detention for property destruction. When he was released from detention, detention staff took the youth to the hospital to "make sure he didn't have a concussion" resulting from the fight two days prior at the RTC.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Closed and reclassified. Inconsistent with doc. risk. Per LPPH 6222.2, this intake report does not contain an allegation of abuse or neglect, but does concern a significant supervision problem. Victim got into an altercation with another resident over the weekend which resulted in victim getting a black eye, staff intervened when the incident occurred. The incident does not rise to the level of abuse and neglect and will be investigated for possible standard violation."

**Monitors' Review**: A youth was punched resulting in a black eye and although it was reported by the RTC staff person that staff intervened "right then," the allegations should be investigated to confirm appropriate supervision was in place prior to and when the incident occurred. The reporter also indicated that the youth received the black eye on Saturday and did not receive medical attention until Monday, when the detention staff (not the RTC staff) brought the youth to the hospital to assess whether he had a concussion; therefore, the intake report should have also been coded for medical neglect. The above meets the threshold for both a neglectful supervision and medical neglect investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

Failure to seek, to obtain, or to follow through with medical care for a child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(5).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority 2 - serious supervision problems.

**RCCL Minimum Standards Findings: "**Based on the interviews conducted it was determined that staff did intervene to stop the physical altercation between the boys. The victim himself also informed me that staff did intervention and stopped the physical altercation. Based on the medical documentation reviewed it was determined that the child was taken to the ER multiple times in order for him to be evaluated. One time the child refused to be examined and this was documented on the medical form. The child was also seen by an Ear, Nose and Throat (ENT) Specialist. A report was made to the Hotline. There will be no deficiencies issued to the agency."

**Case ID#:**        47892401

**Intake ID#:**      72630018

**Sample File**:      August/September 2019

**Summary**: Facility staff filed an E-report stating that while a seventeen-year-old female resident was being held in a "short personal restraint" due to escalating verbal and physical aggression toward staff, two other residents "impulsively attacked" this resident who sustained a concussion from the event. Youth were separated and calmed; victim was provided first aid and then sent to the hospital, which confirmed the youth had a concussion.

**Downgrade**: SWI assigned this case as a Priority One investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake the allegations came in as Physical abuse, however in the narrative of the intake there are no allegations of physical abuse reported or described. Additionally, with regards to supervision, the intake indicates staff was doing everything they could to separate the children and responded appropriately. Upon the child reporting pain to her head the staff took appropriate steps to ensure the child received medical care. The intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitor's Review:** A youth sustained a concussion during a "short personal restraint" by staff, during which time the youth was attacked by other youth. An investigation is warranted to determine whether the restraint was properly performed and if the other youth were properly supervised at the time of the incident. The above allegation meets the threshold for a physical abuse and neglectful supervision investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted**:
Assigned Priority Three - minor violations of the law or minimum standards that involve low risk to children

**RCCL Minimum Standards Findings**: "Based on the information gathered throughout the course of this investigation, there is not a preponderance of evidence that supports the allegations that a child in care was not properly supervised. All staff and children states that they were in ratio and youth was being properly monitored by Ms. X. Everyone stated that the two girls acted quickly but staff

intervened as quick as possible. Youth was taken to the hospital after the incident.  The operation will not be cited."

| | |
|---|---|
| **Case ID #:** | 47961359 |
| **Intake ID #:** | 72811931 |
| **Sample File:** | October 2019 |

**Summary:** A seventeen-year-old child self-reported that a twelve-year-old child entered her room that morning, supposedly to wake her up, and hit her on the leg with a broom leaving a bruise.  When she asked staff why the girl was in her room, staff said they weren't aware the twelve-year-old had gone in her room.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation and ultimately Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk.  Per LPPH 6242.2, A supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non abuse or neglect report when the information in the report suggests that a minimum standard was violated, but not that a child was abused or neglected.  Based on the information in the intake, a child went into another child's room during the morning and was supposed to wake her up.  The 12yr reportedly hit the 17yr on the leg with a broom which left a bruise to a non-vital part of the body.  The intake stated staff was not aware the 12yr went into the room.  The information does not rise to the level of neglect.  There is no information that indicated that staff allow the 12yr to hit the 17yr or encouraged her to do so.  There is no information in the intake that either child was on heightened supervision at the time.  The intake was staffed by HHSC Supervisor and RCCI Supervisor. The concerns in the intake related to possible minimum standards violations regarding supervision, but did not rise to the level of neglect.  The intake would be sent to HHSC to assess the incident."

**Monitors' Review:** A seventeen-year-old youth was injured by another resident when she entered the victim's room and struck the victim with a broom.  This occurred with staff saying they did not know the youth had entered the victim's room. The allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Administrative Closure – 'Not subject to investigation'

**RCCL Minimum Standards Findings:** No minimum standards investigation completed.

| | |
|---|---|
| **Case ID #:** | 47923661 |
| **Intake ID #:** | 72711886 |
| **Sample File:** | August/September 2019 |

**Summary:** A CASA worker stated that the sixteen-year-old youth walked out of a shelter and when she returned, staff would not allow her inside. It is unknown how long she was gone from the facility. The youth then allegedly threw a rock at the window and broke it. The youth tried to return again but was denied. She called her CASA worker and told her she was at a gas station near the facility.

**Downgrade:** SWI assigned this case as a Priority One investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

R**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Intake does not meet criteria for A/N but will be reviewed as MS violations as per LPPH 6222.2."

**Monitors' Review:** A youth called her CASA from a gas station for help because staff at the facility would not allow her to return after she left the property. She attempted twice with no success due to her refusal to be searched. Her safety was uncertain; therefore, the above meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority 2- serious supervision problems.

**RCCL Minimum Standards Findings:** "Based on the interviews conducted and documentation reviewed, it was determined that the child was provided appropriate supervision'. Contact with the victim was made 13 days after the intake was received and the victim was no longer at this shelter. Although there are conflicting statements made by the staff member and the victim, the investigator concluded that appropriate supervision was provided and no deficiencies were cited."

**Case ID #:**          47977039

**Intake ID #:**        72856289

**Sample File:**        October 2019

**Summary:** A facility manager stated that two foster children ("J" (thirteen-years-old) and "G" (twelve-years-old)) were involved in an altercation where the youth started pushing each other and scuffling.  "J" told "G," "'You're not going to do anything nigg\*r." The children were then separated. "J" was placed in the quiet room on one-to-one supervision with the alleged perpetrator and "G" was placed in the day room. "G" walked out of the day room into the quiet room and broke "J's" nose. The reporter stated a staff person was positioned in the hallway and possibly turned around for a second, which allowed "G" to enter the quiet room and punch "J"." The incident likely occurred quickly. "J" got an x-ray and it was confirmed that the child's nose was fractured.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, a supervisor may downgrade an abuse or neglect intake report received by SWI to a non-abuse or neglect report when the information in the report in suggest a minimum standard was violated, but not that a child was abuse or neglected; or indicates that there is some risk to children, but the information is too vague to determine that a child was abused or neglected. The information in the intake reports two children got into an altercation and one child received a broken nose. The intake states the aggressor was placed on 1-1 supervision. The victim child was assessed at the hospital and will have follow-up treatment. Based on the information obtained from the reporter the aggressor is currently on 1-1 supervision and the facility called in additional staff to allow the child to stay on 1-1. Additionally, a behavioral plan has been identified for the child. The victim child has been seen and has follow-up appointments to have his nose set. Reportedly, the staff that was supervising the two reacted in an appropriate time and manner. No other concerns were reported. The concern appears to be related to a minimum standard concern in regard to supervision and was staffed for downgrade by HHSC Supervisor and RCCI Supervisor. It was agreed the intake reported minimum standard concerns. It was agreed the case could be sent to HHSC for evaluation of minimum standards.

 \*A phone call was made to the Reporter who stated she was on shift at the time of the incident. The two children got into an altercation and staff reacted in an appropriate time and manner. Reporter stated "G" is currently on 1-1 and an additional staff has been called in to also work the night shift. "J" will have a follow-up appointment with the ear nose and throat doctor to have his nose reset. She stated the children did not have previous history, but "G" is known as a bully and therefore a behavioral plan has been put in to place."

**Monitors' Review:** There may have been inadequate supervision at the time of the physical altercation. At the time of the incident, "J" was subject to one-to-one supervision and "G" was placed in another room. If "J" was being appropriately supervised by a staff person, it seems reasonable that it would have been difficult for "G" to enter the room and hit "J," causing a broken nose. There are

also concerns that "G" – a child with known behavioral issues – was not placed on one-to-one supervision following the children's initial altercation; therefore, the allegation meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Assigned Priority Three- minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the information obtained during this investigation, there was not a violation of minimum standards. This determination is based on the following facts: "J" and "G" both reported that there was staff present during this incident and they did intervene. The other residents present reported that the staff were close by. The staff and residents interviewed reported that there was no indication that "G" planned to attack "J." All of the residents reported that they feel safe and protected at the operation. The administrator had no concerns regarding the supervision provided by the staff involved. The CPS workers had no concerns regarding the care being provided at the agency. No citations were issued in this case."

| | |
|---|---|
| **Case ID #:** | 47919662 |
| **Intake ID #:** | 72701312 |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter states that a twelve-year-old male was sprayed in the face with a cleaning solution by an eleven-year-old male resident, who entered his room uninvited. A staff person was responsible for the children at the time of the incident and was supposed to be checking on the twelve-year-old every five minutes. The twelve-year-old was transported to an urgent care after an eight-minute eye rinse and was seen by medical personnel but was not admitted.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Child was not at imminent risk, cared for by staff and not admitted to the hospital. Per LPPH 6222.2, a report that does not rise to the level of abuse and neglect but can be investigated as a standards violation."

**Monitors' Review:** The victim was injured by another resident while required to be under five-minute supervision by staff; therefore, the allegation meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**:
Assigned Priority 2- serious supervision problems.

**RCCL Minimum Standards Findings:** "Based on the information gathered throughout the investigation there is insufficient evidence to support any minimum standard violations related to supervision or medical care. Technical assistance is being provided. Interviews were conducted with 4 residents, staff, the nurse and CPS case workers. Copies of the incident and children's service plans were received and reviewed. 'Z' was completing a chore cleaning the restroom in the Log cabin. 'Z' was on regular supervision and staff had allowed 'Z' to use the cleaning product on his own. 'Z' went into 'S's room while horsing around he unintentionally sprayed the cleaner in his eye. 'S' immediately told staff what happened. (Staff) was in the cabin in the living room area and had not seen what happened. When 'S' told (staff) what happened he told him to wash his eye out with water. (Staff) took the cleaning product away from 'Z'. (Staff) called the operation nurse, and she recommended to have him taken to the urgent care clinic to be examined. Former case manager, PC, had taken 'S' to the urgent care clinic and the doctor determined that he was ok. No further medical treatment was needed. Residents stated that some residents are allowed to use cleaner on their own while doing chores and some residents require staff to assist when using cleaner." 'S' stated that staff was in the staff office in the cabin when the incident occurred. 'S' stated that residents are not allowed in each other's rooms and 'Z' was in his room.'

*It should be noted that during the minimum standards investigation, there was no discussion of 'S' having 5-minute checks as was the expected supervision level as noted by the staff reporter and the case plan.*

| | |
|---|---|
| **Case ID #:** | 47986315 |
| **Intake ID #:** | 72880246 |
| **Sample File:** | October 2019 |

**Summary:** Reporter was advised by the victim's teacher that a thirteen-year-old male with ADHD and intellectual delays and very low adaptive skills has been unable to stay awake at school. He will fall asleep while writing and is slurring his speech when he talks. His affect is very flat and he 'does not exhibit his bright personality we have seen from him since August 2018.' The youth is reported to be in good physical health; however, since the youth started taking a new medication (reporter is not sure what medication) for the past two weeks or so, the youth reports he is unable to sleep at night. He further reports he has told facility staff he cannot sleep and cannot help falling asleep at school, but staff has not done anything to change his medication. The youth has reported that he takes one medication at night and one in the morning. Reporter does not know if the medication is being administered as prescribed and states, "despite repeated calls to the house regarding 'J's' sleep, [redacted] staff will not speak with us about it."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Medical Neglect. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, a supervisor may downgrade an abuse or neglect intake report received by SWI to a non-abuse or neglect report when the information in the report in suggest a minimum standard was violated, but not that a child was abuse or neglected; or indicates that there is some risk to children, but the information is too vague to determine that a child was abused or neglected. The information in the intake reports a child is unable to stay awake at school and is slurring his speech. The child also reported concerns for not being able to sleep at night. A request has been made to change his medication. Based on the information obtained from the reporter, the child has been sleeping at school and she feels that he is overly medicated. However, the reporter is not aware of exactly what medication he is taking and therefore cannot specifically say if the victim is overly medicated or if the medication is making him sleepy. No other concerns were reported. The concern appears to be related to a minimum standard concern and does not rise to the level of abuse or neglect. The intake was staffed for downgrade by HHSC Supervisor and RCCI Supervisor. It was agreed the intake reported minimum standard concerns. It was agreed the case could be sent to HHSC for evaluation of minimum standards."

**Monitors' Review:** This incident alleges that a child is demonstrating behaviors that may indicate that he is being overmedicated and the facility staff has been unresponsive to the concerns expressed by school staff; therefore, the above allegation meets the threshold for a medical neglect investigation based upon:

Failure to seek, to obtain, or to follow through with medical care for a child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(5).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted:** Assigned Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the preponderance of evidence and information gathered throughout the investigation, there is not enough evidence to confirm or denied the allegation of a child being improperly medicated. Staff interviewed and involved and stated that the change in medication was suggested and fulfilled by the child's doctor. They denied a change in the child's behavior or personality. One staff stated that he noticed a change in the child's sleeping habits – like the desire to sleep more but wasn't sure why and couldn't confirm that it was because of a change in medication. There were other allegations of restraints and inappropriate discipline mentioned during the investigation which were called in separately and are to be reviewed and addressed. As for an improper medication of a child, there is no evidence proving this allegation to be true."

| | |
|---|---|
| **Case ID #:** | 47977573 |
| **Intake ID #:** | 72857704 |
| **Sample File:** | October 2019 |

**Summary:** Reporter stated that a member of the campus operation staff reported seeing a seventeen-year-old female in the gazebo performing oral sex on a sixteen-year-old male.  Various staff submitted statements to the reporter, but "none matched up." Some said there were staff present; some said there was no staff present. A few hours later, the same youth were in the gym and disappeared into the women's bathroom for an unspecified amount of time; then staff saw them coming out of the bathroom where it was alleged, but not observed, that the two engaged in sexually related behavior. It was further reported that the youth have "hickies for days."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Other Agency/Out of State. allegations pertain to supervision problems. Intake does not contain allegations of abuse/neglect. Both residents are within same age and appears to be consensual."

**Monitors' Review:** Two incidents involving inappropriate sexual interaction between youth occurred, raising questions about the potential lack of supervision; therefore, the allegations meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Two- serious supervision problems.

**RCCL Minimum Standards Findings:** "Based on the information gathered throughout the investigation there is not enough evidence to support minimum standard violations related to supervision. Technical assistance is provided…[Youth] both denied engaging in oral sex or any kind of sex at the shelter. [Child] reported that she engaged in inappropriate interaction with [child] getting hickies on her neck. When interviewed, she did not provide specific details of the incident. [Youth] stated that staff was outside with them when they were at the gazebo. According to the incident report, the staff responsible for supervising [youth] was [staff]… Staff stated that she was outside with [youth] when they were at the gazebo supervising them. [Staff] reported that [child] did not perform oral sex on [other child] and was mimicking the sexual behavior. [Staff] re-directed the inappropriate behavior. The case manager's who work with the international children at the shelter reported that they saw [youth] at the gazebo outside their office window. Staff who were interviewed reported that [child's] private part was not exposed. They stated that they saw [child] move her head back and forth in front of [other child's] private area. The staff also stated that they did not see the shelter staff right away. [Child's] therapist reported that [child] denied any type of sex with [other child] and that staff was outside with them at the gazebo the whole time."

**Case ID #:**        47917803

**Intake ID #:**      72696266

**Sample File:**     August/September 2019

**Summary:** A CASA worker received a report from a school regarding a fifteen-year old non-verbal youth with severe autism who uses a communication device and is on one-to-one supervision. The victim's arm was grabbed forcefully by a staff person and was observed to cry and express she was in pain. It is unknown if the youth sustained any bruising from the grab, but it is reported that the offending staff person has been suspended from work, presumably following this incident.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

R**CCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2, a report that does not contain an allegation of abuse or neglect, but does concern inappropriate disciple can be investigated as a non-abuse case."

**Monitors' Review:** A non-verbal, vulnerable child was grabbed forcefully by a staff person and demonstrated experiencing pain. The staff person was subsequently suspended. The above meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Merged with another minimum standards investigation. Assigned Priority Two- serious supervision problems.

**RCCL Minimum Standards Findings:** "On 09/11/2019 an intake was received alleging an operation staff member, [JK], has gripped a child's neck as a means to escort the child, and has twisted children's arms as a means to get them to comply. Based on the information gathered throughout this investigation, there is not a preponderance of evidence to suggest [JK] has twisted children's arms, or gripped a child by their neck as a means to escort them. While the individuals who reported this information suggested directly observing these incidents, the information gathered does not establish preponderance. There is a preponderance of evidence, however, to suggest [JK] has spoken to children in a manner which has been characterized as yelling, and causing the children to be fearful of him…Given the aforementioned concerns identified during this investigation, the following standards were noted as deficient, 748.2307(8) and 2455(a)(2)(A), and TA provided accordingly. Specifically, a child in care is being picked up from the ground in the absence of an emergency situation, and a staff member has been described as speaking to children in a loud, aggressive tone."

**Case ID #:**        47869431

**Intake ID #:**        72568718

**Sample File:**        August/September 2019

**Summary:** Reporter stated that a fourteen-year-old female and a seventeen-year-old male at an emergency shelter engaged in sexually related behavior after they snuck into a vacant bedroom and were observed holding hands when they came out.  The youth had previously announced that they were in a relationship and there have been "boundary issues" since youth became involved.  Staff initially reported that they were unsupervised for a short time; however, the reporter viewed the camera footage that showed that the youth were in the room for thirteen minutes.  Another resident told staff about the incident and the monitoring staff member reported losing supervision of both children.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2, a report that does not contain allegation of abuse or neglect, but there is a concern for supervision.  Self report, no mention of non-consensual."

**Monitors' Review:** Youth allegedly engaged in sexual conduct and were more than two years apart in age. It is unclear if there was adequate supervision at the time of these incidents, particularly since staff appears to have known about the relationship and boundary issues between the children. The allegation meets the threshold for a neglectful supervision investigation based upon:

Failure to make reasonable effort to prevent sexual conduct to a child, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(7).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Closed Without Investigation.

**RCCL Minimum Standards Findings:** No investigation was conducted.


**Case ID #:**         47972529

**Intake ID #:**        72843141

**Sample File:**        October 2019

**Summary:** Reporter stated that two thirteen-year-old foster children were involved in a physical altercation. The incident happened outside of the cottage doors when one child hit the other with her fist. When the incident happened, no injuries were observed; however, the next day, the child's forehead was observed to be slightly swollen and bruised on the left side. A safety plan was created.

This is the first time an incident like this has happened between these children.  However, both have had physical altercations with other residents.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN Closed Without Investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6222.2, a report that does not contain an allegation of abuse or neglect but may indicate concerns for supervision that can be investigated as non-abuse case.  Incident described a phys, altercation by two children."

**Monitors' Review:** A physical altercation that resulted in minor injuries to a child occurred, and it is unclear whether sufficient supervision was provided to protect the children. The allegation meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of Investigative RCCL Findings if Minimum Standards Investigation Conducted:** Closed Without Investigation.

**RCCL Minimum Standards Findings:** No investigation was conducted.


| | |
|---|---|
| **Case ID #:** | 47920796 |
| **Intake ID #:** | 72704619 |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter stated a sixteen-year-old female arrived at school with bruising and a welt on her forehead. The victim claims that she was jumped by older girls in the home and nothing was done by the staff. The reporter indicated that there is little known about the victim's home environment.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, A supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non abuse or neglect report when the information in the report indicates that there is some risk to children, but the information is too vague to determine that a child was abused or neglected.  Based on the information in the intake, there is no concerns noted that staff allowed or encouraged the children to "jump" 'M'. 'M' reported that "nothing was done," but the information was too vague to determine if neglect occurred or the child is referring to disciplinary action taken against the other children.  There is not a direct allegation that staff failed to intervene or committed a negligent act. Based on the information in the intake, it was agreed the intake would be sent to HHSC to evaluate possible standards concerns regarding supervision."

**Monitors' Review:** The victim sustained a minor injury to the head and she claimed that she was jumped by older girls and that nothing was done by the staff; therefore, the above meets the threshold for a neglectful supervision investigation based upon:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the evidence gathered there is not a preponderance of evidence a violation of the minimum standard occurring regarding the original allegation. The following lead to this disposition. CPS Caseworker expressed that [youth] instigates fights and isn't being bullied. Two out of two caseworkers interviewed stated that they don't have any concerns with the placement. Three out of three staff interviewed stated that [youth] wasn't jumped by several residents. [Youth] fought separately throughout the course of the day more than 1 resident. Three out of three collateral residents corroborated that there was multiple separate fights. They stated that [youth] is excessively sexually inappropriate and can be aggressive when she doesn't get her way. All the separate fights were stopped immediately by staff."

| | |
|---|---|
| **Case ID#:** | 47980114 |
| **Intake ID#:** | 72864856 |
| **Sample File**: | October 2019 |

**Summary**: In-patient facility staff reported a fifteen-year-old female, hospitalized due to self-harm and a suicide attempt, reported sexually related behavior with men aged twenty-one, twenty-two, twenty-five, twenty-seven, and twenty-eight years old; and that she is currently involved with a nineteen-year-old man. The reporter states youth did not provide names and clarifies that youth does not have access to these men while on the in-patient unit.

**Downgrade**: SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to Closed without investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect, or risk. Per LPPH 6242.2, a supervisor or designee may downgrade an abuse or neglect intake report received by Statewide Intake (SWI) to a non abuse or neglect report when the information in the report suggests that a minimum standard was violated, but not that a child was abused or neglected or indicates that there is some risk to children, but the information is too vague to determine that a child was abused or neglected. The LPC worker was contacted to discuss the recent intake. It was reported that [child] had found a piece of metal at school and attempted to harm herself after meeting with her LPS staff. [Child] was found self-harming by staff and they intervened. [Child] became upset and was being verbally aggressive and throwing furniture. The operation responded appropriately and contacted

law enforcement to assist in calming the child down. The LPS worker stated it did not appear immediate medical care was needed for serious injuries due to the self harm as the operation was trying to get the child under control, and the scar tissue on her arms had prevented the cuts from being deep. EMS was also contacted to assess the child and transfer her to the psychiatric hospital. According to IMPACT records, [child] was only recently placed at the facility since 10/24/2019. She was not under any heightened supervision at the time of the incident. The intake was staffed by RCCI Supervisor and HHSC Supervisor. There is concerns about the level of supervision related to the incident, but not enough information to indicate staff was neglectful in any way. There was nothing noted in the intake that staff failed to intervene or that they didn't respond to the crisis when identified. There was no information that [child] was having sex with any males at the facility or had access to them. The information is related to her behavior and actions prior to be placed at Unity on 10/24. It was agreed the intake would be sent to HHSC to evaluate possible minimum standards violations regarding the incident."

**Monitors' Review:** The child's history indicates she would require extra precautions and heightened supervision based on her having seven previous hospitalizations for self-harming. It is unclear whether youth was subject to adequate supervision at the time of self-harming incident; therefore, the above allegation meets the threshold for a neglectful supervision investigation based on:

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

**Summary of RCCL Investigative Findings if Minimum Standards investigation conducted**:
Administrative Closure. – 'Not subject to investigation'

**RCCL Minimum Standards Findings**: No investigation conducted.


**Case ID #:**        47866386

**Intake ID #:**      72560653

**Sample File:**      August/September 2019

**Summary:** Reporter, RCCL inspector, stated that on August 5, 2019, a seventeen-year-old female and fifteen-year-old female ran away and returned to the facility at 11p.m. where they were denied access by staff, reportedly because the youth refused to be searched. The youth slept outside and reportedly refused to be searched in the morning on August 6, 2019 and were again denied access. RCCL performed a "courtesy visit" on August 6, 2019 at the facility and found the girls outside at 10:40a.m. RCCL staff took pictures; gained access into the facility, and at that time the facility staff allowed the girls to enter the facility. The youth reported that they had not been given anything to eat. The residential staff reported that the girls were being watched from the window; however, the reporter stated that the window did not provide a view to where the girls were.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision. RCCI downgraded to PN minimum standards investigation.

**R**CCI **Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6221.2, the intake can be investigated as a non-abuse case if the information in the intake does not rise to the level of abuse/neglect.  Based on the intake, operation staff did not allow children to re-enter the facility after running away.  The child remained outside the facility during this time and were not a risk of substantial harm.  The intake involved possible minimum standards violations for the operation staff's actions.  The case was sent to HHSC to evaluate this concerns.  Intake was downgraded by HHSC Supervisor and RCCI Supervisor."

**Monitors' Review:** Youth were made to sleep outside from 11p.m. to 10 a.m. the following morning with no provision for shelter, food, or protection from the heat. Residents were only allowed into the facility when RCCL arrived for a routine visit; therefore, the allegations meets the threshold for a neglectful supervision investigation based upon:

Placing a child in or failing to remove him from a situation that a reasonable member of that profession, reasonable caregiver, or reasonable person should realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(3).

Leaving a child in a situation where a reasonable member of that profession, reasonable caregiver, or reasonable person would expect the child to be exposed to substantial physical injury or substantial emotional harm without arranging for necessary care for the child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(4).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "Based on the information gathered there is a preponderance of evidence that supports that children were not being properly supervised. However, there is not a preponderance of evidence that proves that the children have been denied food. All the staff members interviewed stated there is only enough staff that is required but there is not enough to support them if there is a crisis. All four girls interviewed stated that there's only one staff present at night and if anything happens they have to call someone in. All girls interviewed stated that they've never heard of anyone being denied food nor have they been denied food."

| | |
|---|---|
| **Case ID #:** | 47913424 |
| **Intake ID #:** | 72684807 |
| **Facility or Agency:** | Vitruvian Treatment Center |
| **Sample File:** | August/September 2019 |

**Summary:** Reporter, a law enforcement officer, stated that four children, one thirteen-year-old, two fourteen-year-olds and one fifteen-year-old ran away from the facility and were picked up by the police and sent to detention. Law enforcement tried to take the youth back to the facility and the facility refused to accept them, which the reporter states "happens repeatedly." The children were extremely unkempt and hungry. It was further reported that a staff member threatened to take the fourteen-year-old female 'down to the floor' which the youth believed meant he was going to harm her.  The reporter was concerned that staff talk to the youth very disrespectfully. She further stated that the female had 'hickies all over her neck' which she said were from another resident and she had them for days, including while she was at the facility. The reporter is concerned because she has heard consistent stories of this nature from youth placed at this facility and of youth coming into detention from this facility in deplorable condition.

**Downgrade:** SWI assigned this case as a Priority Two investigation for Neglectful Supervision and Emotional Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade**: "Doesn't appear to involve abuse, neglect or risk. Per LPPH 6242.2, an intake can be downgraded to a non-abuse case when the information in the report indicates that the child was not abused or neglected. Per the intake it states that the children are threatened by staff, however no specific acts of abuse are being reported. There are concerns that staff are not picking up children from the juvenile detention area or taking children back from Law Enforcement. Although the allegations are concerning, based on our definitions of abuse/neglect none of the VC are being placed in or left in a situation that has caused or could cause substantial harm.  Intake was staffed by RCCI Supervisor and HHSC Supervisor and the case was agreed to be downgraded to HHSC non-abuse and neglect and will be assessed for risk by HHSC and evaluated for any monitoring concerns."

**Monitors' Review:** Law enforcement expressed concern regarding the physical condition of and lack of care for the victims and the additional concern of an alleged threat to one of the youth by a staff person; therefore, the allegations meet the threshold for both a neglectful supervision and physical neglect investigation based upon:

Placing a child in or failing to remove him from a situation that a reasonable member of that profession, reasonable caregiver, or reasonable person should realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(3).

Any other act or omission that is a breach of a duty by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559.

Failure to provide a child with food, clothing, and shelter necessary to sustain the life or health of the child, by a person working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child. 40 TAC §745.8559(6).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**: Assigned Priority Three – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "A preponderance of evidence gathered during the course of this investigation supports a finding of four deficiencies. A review of the children's common applications for placement and IMPACT naratives [sic] as well as diagnoses available via Health Passport and the children's service plans supports that the operation accepted responsibility for placement of children without having sufficient resources and staff necessary to adequately address and assure their care and supervision given the children's behavioral health diagnoses and high risk behaviors. 4 of the 4 victim children involved in this investigation repeatedly eloped from the placement and were without supervision for extended periods of time. 2 of the 4 victim children are identified as having sexually aggressive behaviors that would indicate a need for a sound plan to assure adequate supervision at all times. Additionally, when confronted about a child's disclosure that female residents were awakened overnight and told to bring their mattresses to go sleep in one of the male's cabins, staff confirmed that this occurred due to a lack of available staff to provide supervision for the residents. Finally, 3 of the 4 children identified as victims at the time the investigation was initiated confirmed that a staff member threatened them as well as other residents with physical punishment."

| | |
|---|---|
| **Case ID #:** | 47956324 |
| **Intake ID #:** | 72798076 |
| **Sample File:** | October 2019 |

**Summary:** A DFPS staff person stated that a fifteen-year-old male hurt his shoulder when a facility staff person performed a restraint in an attempt to keep the youth from attacking another youth and "threw him against the wall and his feet went off of the ground." The victim stated staff treated the injury by "just putting ice on it so it wouldn't be swollen." The youth showed the reporter his shoulder and no marks were seen.  The youth further reported that he believed that the staff person "did it on purpose and didn't even try to restrain him."

**Downgrade:** SWI assigned this case as a Priority Two investigation for Physical Abuse. RCCI downgraded to PN minimum standards investigation.

**RCCI Reason given for downgrade:** 'Closed and reclassified' 'Per LPPH 6222.2, this intake report does not contain an allegation of abuse or neglect, but does concern inappropriate discipline. [Child] reported [staff] threw him against the wall and that his shoulder hurt but no other injuries were observed. Staff was trying to prevent him from attacking another child. The incident does not rise to the level of abuse and neglect and will be investigated for a possible standard violation. '

**Monitors' Review:** The youth was reportedly injured when a staff member threw him against a wall; therefore, the allegation meets the threshold for a physical abuse investigation based upon:

Any act such as striking, shoving, shaking, or hitting a child, whether intended as discipline or not, by someone working under the auspices of an operation that causes or may cause emotional harm or physical injury to, or the death of, a child that the operation serves. 40 TAC §745.8557(1).

**Summary of RCCL Investigative Findings if Minimum Standards Investigation Conducted**:
Priority 3 – minor violations of the law or minimum standards that involve low risk to children.

**RCCL Minimum Standards Findings:** "The allegations of this care are that a resident received an inappropriate restraint causing a injury to the resident's shoulder. The victim as well as the resident he was fighting were interviewed.   The victim repeated his belief that he was injured during the restraint. The resident he fought with describes a very physical fight but could not confirm the inappropriate restraint.   Other residents were interviewed as collateral but did not have much to add to support or refute the allegations.   Staff's account of the incident was that the fight was very physical and should have resulted in many injuries on both sides before staff were able to break the fight up. Documentation shows a very physical altercation between two residents.   The victim child advised that he told his therapist but therapy notes do not show this and the therapist, historically, is very good about mandatory reporting. Football practice log does not support the victims statement about the severity of any injury as it did not hamper the resident's ability to participate in the very physical sport. The evidence in this case does not support a citation."