United States District Court
Southern District of Texas
**ENTERED**
July 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D.; bnf STUKENBERG, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-00084 |
| | § | |
| GREG ABBOTT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART PLAINTIFFS' FIRST APPLICATION FOR ATTORNEYS' FEES

Pending before the Court is Plaintiffs' first application for attorneys' fees, expenses, and costs for the time period through October 11, 2019. (D.E. 682; D.E. 683; D.E. 764; D.E. 765).

# I.
# JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

# II.
# FACTUAL AND PROCEDURAL HISTORY

The procedural history of this 9-year litigation is adequately described in this Court's December 17, 2015 Memorandum Opinion and Verdict, January 2018 Order, and November 2018 Order. (D.E. 368; D.E. 559; D.E. 606). Subsequent to the November 2018 Order, Defendants appealed to the Fifth Circuit. (D.E. 607). On July 8, 2019, the Fifth Circuit remanded the case for implementation of the order. *M.D. v. Abbott*, No. 18-40057 (5th Cir. 2019). On October 11, 2019, Plaintiffs filed a motion requesting an award for attorneys' fees, expenses, and costs. (D.E. 681-688). On October 31, 2019, Defendants filed a motion objecting to Plaintiffs' Bill of Costs, and on November 1, 2019 Defendants filed their response to Plaintiffs' motion for attorneys' fees. (D.E. 706; D.E. 709). On December 9, 2019, Plaintiffs

1

filed their reply in support of their application for attorneys' fees and their response to

Defendants' objections to the Bill of Costs.  (D.E. 764; D.E. 769).  On January 13, 2020,

Defendants filed their sur-reply to Plaintiffs' responses.  (D.E. 784; D.E. 785).

# III.
# DISCUSSION

### 1. Legal Standard for Fee Award Calculation

42 U.S.C. § 1988 governs fee awards for prevailing civil-rights plaintiffs in lawsuits

brought under 42 U.S.C. § 1983.  *McNamara v. Moody*, 606 F.2d 621, 626 (5th Cir. 1979); 42

U.S.C. § 1988.  The statute provides that "[i]n any action or proceeding to enforce a provision of

section [1983], . . . the court, in its discretion, may allow the prevailing party, other than the

United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b); *Universal*

*Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978).  The Fifth Circuit applies a two-step

method in calculating the fee award for the prevailing party.  *Combs v. City of Huntington,*

*Texas*, 829 F.3d 388, 391-92 (5th Cir. 2016); *Jackson v. Host Intern., Inc.*, 426 F. App'x 215,

225-26 (5th Cir. 2011).  The court must first calculate a lodestar amount "equal to the number of

hours reasonably expended multiplied by the prevailing hourly rate in the community for similar

work." *Rutherford v. Harris Cty.*, 197 F.3d 173, 192 (5th Cir. 1999); *See, e.g.*, *Neles-Jamesbury,*

*Inc. v. Bill's Valves* 974 F. Supp 979, 985-86 (S.D. Tex. 1997); *Jimenez v. Wood Cty.*, 621 F.3d

372, 379 (5th Cir. 2010).  The burden of demonstrating the reasonableness of the number of

hours expended and the hourly rates charged falls on the fee applicant.  *Hensley v. Eckerhart*,

461 U.S. 424, 433 (1983).  There is a "strong presumption" that the lodestar is the reasonable

fee.  *Kenny A. ex rel. Winn v. Perdue*, 559 U.S. 542, 554 (2010).  This however "may be

overcome in those rare circumstances in which the lodestar does not adequately take into account

a factor that may properly be considered in determining a reasonable fee."  *Id.*

After calculating the lodestar amount, a district court's next step is to consider whether to enhance or decrease the lodestar based on twelve *Johnson* factors. *Combs*, 829 F.3d 388 at 392. These factors are: (1) time and labor required; (2) novelty and complication of the issues; (3) skill required; (4) whether the attorney had to refuse other work to litigate the case; (5) attorney's customary fee; (6) whether fee is fixed or contingent;[1] (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained[2]; (9) attorney's experience, reputation, and ability; (10) whether the case was "undesirable;" (11) the nature and length of relationship with the clients; and (12) awards in similar cases. *Rutherford*, 829 F.3d at n.23; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The burden of proving that an enhancement is necessary is placed upon the fee applicant. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The district court "must provide a reasonably specific explanation for all aspects of a fee determination" and that the record indicates that the court utilized the *Johnson* framework for its analysis. *Moench v. Marquette Transportation Company Gulf-Inland, L.L.C.*, 838 F.3d 586, 596 (2016); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012). However, "[m]any of these [*Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate…and should not be double-counted." *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). Enhancing the lodestar is a "rare" circumstance since there is a strong presumption that the lodestar amount is already the reasonable fee. *Kenny A. ex rel. Winn*, 559 U.S. 542 at 548, 554.

---

[1] The Supreme Court holds that that the contingent nature of a case cannot serve as a basis for enhancement of attorneys' fees under traditional fee-shifting provisions. *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

[2] The Supreme Court notes that the "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

## 2. Prevailing Party

As stated above, 42 U.S.C. § 1988 enables prevailing civil-rights plaintiffs to request fee awards. 42 U.S.C. § 1988. One is a prevailing party "for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. 424 at 433. A plaintiff prevails "when actual relief on the merits of [plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012).

Here, there is no dispute that Plaintiffs are the prevailing party since they secured the core relief sought in the case which includes a finding that the State of Texas violated the U.S. Constitutional rights of the Plaintiffs and an order requiring the State to remedy the violations. *See* (D.E. 606). The Fifth Circuit subsequently affirmed large and significant parts of the order and remanded for this Court to implement it. *See M.D. v. Abbott*, No. 18-40067, D.E. 00515024789, (5th Cir. July 8, 2019). Therefore, Plaintiffs are entitled to an award for reasonable fees pursuant to 42 U.S.C. § 1988.

Defendants, however, dispute the degree by which Plaintiffs prevailed in this case, arguing that Johnson Factor #8 ("The Amount Involved and the Results Obtained") requires an across-the-board 75% reduction to any attorneys' fee award given to Plaintiffs.

The Supreme Court has ruled that if a litigant brings multiple claims against the same defendant in a lawsuit and prevails only on some of the claims, work on the unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result. *Hensley*, 461 U.S. at 435. However, when claims involve a common core of facts or are based on related legal theories, much of the attorneys' time will be devoted to the litigation as a whole, making it difficult to divide the hours spent on a claim-by-claim basis. *Id.* There is no duty to segregate

4

the proposed fees when the original claims "are too intertwined to differentiate effectively." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 2011 WL 2160928, at *2 (S.D. Tex. May 27, 2011); *See Snook v. Popiel (In re Snook)*, 168 F. App'x 577, 580 (5th Cir. 2006).

Here, the Court finds that Plaintiffs are indeed the prevailing party and have received the main and core remedy sought, which is in essence the systemic and ongoing reform of the Permanent Managing Conservatorship class foster care system, in such a timely, complex class-action civil-rights case such that Plaintiffs' claims are too intertwined to differentiate for attorneys' fees award consideration. As the Court stated in a telephone conference in August 2019, "The State of Texas lost this case. The foster care system for children in permanent managing conservatorship was found not only by this Court but affirmed by the Fifth Circuit to be constitutionally deficient. You are now under Court supervision for an indefinite period of time."[3] (D.E. 640, p.4). Indeed, because this lawsuit, and all the numerous individual remedies that Plaintiffs sought, had an overarching goal of giving relief to the state's Permanent Managing Conservatorship class foster children, the Court concludes that this case involved a common core of facts and are based on related constitutional legal theories, making it difficult to divide the hours spent on a claim-by-claim basis. *Hensley*, 461 U.S. at 435. Given this, no separation of fees per claim is necessary.

### 3. Lodestar Amount

After determining the prevailing party, the Court must utilize the following two-step process in determining the fee award to be granted to the prevailing Plaintiffs: (1) it must first calculate the lodestar amount, and then (2) it must consider whether to enhance or decrease this amount considering the *Johnson* factors. *Combs*, 829 F.3d 388 at 391-392. In this analysis, the

---

[3] The transcription reflects the Court's statement as "The foster care system for children and permanent managing conservatorship was found not only by this Court but affirmed by the Fifth Circuit to be constitutionally deficient." However, the audio recording is clear that "in" should have been transcribed in place of "and". The Court corrects the record accordingly.

Court need not be "meticulously detailed," and "[i]f the district court has articulated and clearly applied the [*Johnson* factors] ..., [the Fifth Circuit] will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee award consume more paper than did the cases from which they arose."  *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996).  As noted earlier, to calculate the lodestar amount, the Court must analyze whether the hours Plaintiffs' counsel expended and the rates they request are reasonable.  *See Hensley*, 461 U.S. 424 at 433; *Kenny A. ex rel. Winn*, 559 U.S. 542, fn.8 (The Supreme Court wrote that "Section 1988 was enacted to ensure that civil rights plaintiffs are adequately represented, not to provide such a windfall" of fees and awards to enrich attorneys).

Here, Plaintiffs initially requested the following fees, expenses, and costs:

| Counsel | Attorneys' Fees | Expenses | Costs | Total Request |
|---|---|---|---|---|
| Children's Rights | $14,096,744.11 | $376,440.66 | $127,868.36 | 14,601,053.10 |
| A Better Childhood | $683,896.11 | $18,444.05 | $0.00 | 702,340.16 |
| Yetter Coleman | $4,505,725.25 | $109,413.32 | $63,379.12 | 4,678,517.69 |
| Haynes & Boone | $1,528,550.00 | $0.00 | $0.00 | 1,528,550.00 |

In their reply, Defendants do not dispute that Plaintiffs are to be awarded the following amounts:

| Counsel | Attorneys' Fees | Expenses | Costs | Total Request |
|---|---|---|---|---|
| Children's Rights | $2,668,283.24 | $97,728.38 | $62,753.18 | $2,828,764.80 |
| A Better Childhood | $199,039.40 | $0.00 | $0.00 | $199,039.40 |
| Yetter Coleman | $1,142,323.98 | $45,408.44 | $15,917.02 | $1,203,649.44 |
| Haynes & Boone | $289,749.75 | $0.00 | $0.00 | $289,749.75 |

After receiving Defendants' objections, Plaintiffs revised their request to the following amounts:

| Counsel | Attorneys' Fees | Expenses | Costs | Total Request |
|---|---|---|---|---|
| Children's Rights | $12,362,233.74 | $308,575.56 | $105,110.09 | $12,775,919.40 |
| A Better Childhood | $632,900.11 | $14,799.66 | $0.00 | $647,699.77 |
| Yetter Coleman | $4,406,667.25 | $109,413.32 | $35,787.27 | $4,551,867.84 |
| Haynes & Boone | $1,421,437.50 | $0.00 | $0.00 | 1,421,437.50 |

The Court now turns to the remaining unresolved objections by Defendants.

# IV.
# DEFENDANTS' UNRESOLVED OBJECTIONS

Bearing in mind that Plaintiffs have reduced their fees based on some of Defendants' objections, the Court will now address, by individual entity, Defendants' remaining objections.

### 1.  Children's Rights
### a.  Lodestar Amount – Attorneys' Fees

Out of Children's Rights' requested lodestar amount of $12,362,233.74, the Court sustains the following objections, with the lodestar to be calculated as $11,920,816.14 after the objections.  The Court sustains objections addressing work hours amounting to a $80,660.22 attorneys' fees request associated with two experts who did not participate in the trial, Rita L. Soronen and Gregory Kurth.  *See W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 97-102 (1991) (fees for services rendered by experts may not be shifted to the losing party).  The Court sustains Defendants' objections addressing amicus-related work fees in the amount of $18,551.11.  *See Glassroth v. Moore*, 347 F.3d 916, 918 (11th Cir. 2003) (plaintiffs may not be compensated for work done in connection with amicus briefs).  Defendants' objections addressing the reasonability of Children's Rights' proposed paralegal rates are also sustained and are thus reduced to $75.00 per hour in consideration of the paralegals' experiences and qualifications; this rate reduction produces a $202,456.25 reduction of the overall requested lodestar amount.  *See Michels Corp. v. EMS USA, Inc.*, No. CV H-16-2370, 2018 WL 2995637, at *1 (S.D. Tex. Feb. 5, 2018) (awarding $65.00 per hour for paralegal with zero to four years of experience).  Additionally, the Court sustains objections to paralegals Bridget Morrison and Hailey Cherepon's work hours and fees amounting to a total of $25,897.40.  (D.E. 709, p.20; D.E. 764, p.25); *See Hensley*, 461 U.S. at 437 (ruling that fee applicants bear the burden of establishing their entitlement to any requested fees).  Moreover, the Court sustains objections

addressing Children's Rights' travel rates and are thus reduced to $50.00 per hour, further reducing the lodestar amount by $113,852.62.  *See D.G. ex rel. Stricklin v. Yarbrough* 2012 WL 7829602, at *4 (N.D. Okla. Dec. 19, 2012) (reducing Children's Rights travel rate to $50.00).

The Court, however, overrules Defendants' objection to paralegal Brittany Davis's work of 47.5 hours at $195.00 per hour with fees initially amounting to $9,262.50, before the Court's stated reduction of the paralegal rate above, associated with her participation in 9 out of the 10 days of trial.  *See* (D.E. 709).  Contrary to Defendants' assertion, Children's Rights did in fact eliminate all their junior attorney hours but for the two most senior, Bartosz and Remlin, for the 9 days of trial in question.  (D.E. 764, p.23).

The lodestar amount of $11,920,816.14 is further reduced by 50% in consideration of all the remaining objections addressing block-billing, overstaffing, high turnover, and pre-filing entries two years prior to the commencement of the case as well as the Court's own observation and its application of the *Johnson* Factors.[4]  *See Tow v. Speer*, No. CV H-11-3700, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) (Courts may use "a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous.").  As district courts have noted, "the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services."  *MetroPCS v. Mohammed*, No. 3:16-CV-1946-L-BK, 2017

---

[4] The Court reviewed the legal standards and precedents as to block-billing; overstaffing; high turnover of attorneys; and pre-filing entries.  Children's Rights engaged in all these practices which district courts in previous cases have noted to justify an across-the-board percentage reduction in the fee award, especially when such practices produce vague time records, excessive and duplicative hours, and unnecessary work.  *See Carroll v. Sanderson Farms, Inc.*, No. CIV.A. H-10-3108, 2014 WL 549380, at *8 (S.D. Tex. Feb. 11, 2014) (noting that a 20% award reduction for block-billing is reasonable); *D.G. ex rel. Stricklin v. Yarbrough*, No. 08-CV-074-GKF-FHM, 2013 WL 1343151, at *6–10 (N.D. Okla. March 31, 2013) (reducing Children's Rights' requested fees by 20% due to its excessive and duplicative billing and its high rate of attorney turnover); *Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995) ("reducing allowable hours because of overstaffing . . . falls soundly within the district court's proper discretion."); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179-80 (4th Cir. 1994) (reducing fees by 30% due to "excessive nature and unreasonable redundancy of plaintiff's work").

WL 2590108, at *9 (N.D. Tex. Apr. 24, 2017) (quoting *Areizaga v. ADW Corp.*, 2016 WL 3406071, at *5 (N.D. Tex. June 21, 2016).

In particular, the Court considered the following *Johnson* Factors in reducing Children's Rights lodestar amount by the percentage above: (1) Children's Rights customary fee and hourly rates as out-of-state counsel and in consideration of the active and lead participation of private firm counsel whose specialty and skills are centered on complex litigation; (2) Children's Rights' attorneys' experience and ability with the Court bearing in mind the high rate of turnover among Children's Rights' staff; (3) the skill required to litigate the instant lawsuit in due consideration of the Court's first-hand experience of Children's Rights' attorneys' skill and expertise during trial; (4) the time and labor required for completion of pre-filing work in preparation for this case, which defendants have objected to; and (5) awards in similar cases where Children's Rights itself had its attorneys' fees awards reduced by a significant percentage due to some of the same objections raised here. *See D.G. ex rel. Stricklin v. Yarbrough*, No. 08-CV-074-GKF-FHM, 2013 WL 1343151, at *6–10 (N.D. Okla. March 31, 2013) (reducing Children's Rights' requested fees by 20% due to its excessive and duplicative billing and its high rate of attorney turnover); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 396, 401 (S.D.N.Y. 2000) (reducing Children's Rights' lodestar by 15% due to its "excessive amount of turnover," overstaffing, and billings on non-compensable matters); *Kenny A. ex rel. Winn*, 454 F. Supp. 2d 1260, 1269-70 (N.D. Ga. 2006) (Children's Rights' per-filing hours totaling to 1,648.41 was found to be excessive and was considered when reducing the lodestar amount by a percentage).

The Court hereby awards $5,960,408.07 to Children's Rights for attorneys' fees.

### b.  Expenses

Out of Children's Rights' requested expenses amounting to $308,575.56, the Court sustains the following objections.  Objections to *pro hac vice* expenses amounting to $671.00 are

sustained.  *Lofton v. McNeil Consumer & Specialty Pharm.*, No. 3:05-CV-1531-L, 2011 WL

206165, at *1 (N.D. Tex. Jan. 4, 2011) (disallowing *pro hac vice* expenses).  Defendants'

objections to Children's Rights' two years of pre-filing expenses amounting to $82,149.11 are

also sustained since Children's Rights has not adequately justified the request and provided

sufficient documentation or adequate receipts for the total amount.  *See Hensley*, 461 U.S. at 437

(fee applicants bear burden of establishing entitlement to expenses).

      The Court hereby awards $225,755.45 to Children's Rights for expenses.

### c.  Costs pursuant to 28 U.S.C. § 1920

      Out of Children's Rights' requested costs amounting to $105,110.09 pursuant to 28

U.S.C. § 1920,[5] the Court sustains the following objections.  The Court sustains objections to

pre-filing costs amounting to $3,752.78 incurred over a year prior to the filing of the instant

lawsuit.  *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (fee applicants have

the burden to prove that costs were necessary pursuant to 28 U.S.C. § 1920 if there are objections

to such costs.).  Objections to open records requests amounting to $3,050.40 incurred one to two

years prior to the filing of case are also sustained.  *Id.*  The Court also sustains objections

addressing non-necessary ancillary costs in connection with trial and depositions transcripts,

including the costs of parking, rough transcripts, and expedited delivery charges, additional

certified copies of deposition transcripts, ASCII, and scanned and hyperlinked exhibits

amounting to $11,326.93.  *Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 491 F. Supp. 2d

---

[5] "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and
marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees
and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any
materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this
title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and
costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and,
upon allowance, included in the judgment or decree."  28 U.S.C. § 1920.  When there are objections to the costs
sought, fee applicants have the burden to prove why these costs were necessary to the litigation pursuant to 28
U.S.C. § 1920.  *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

684, 687 (E.D. Tex. 2007) ("Incidental costs associated with depositions, such as the cost of

expedited delivery charges, ASCII disks, and parking, are generally not recoverable.");

*Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991) ("Whether a deposition or copy was

necessarily obtained for use in the case is a factual determination to be made by the district

court."); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 133 (5th Cir. 2015)

("Incidental costs like shipping, binding, and tabbing are generally not taxable, as these costs are

not listed in § 1920.").  Objections to $591.45 of office supply expenses are also sustained.  *See*

*Clark v. Centene Corp.*, No. A-12-CA-174, 2015 WL6962894, at *10 (S.D. Tex. Nov. 10, 2015)

(denying costs for postage, shipping costs, office supplies, issuing press releasees and accessing

the federal court electronic case filing system); *Entizne v. Smith Moorevision LLC*, No. 3:13-CV-

2997, 2014 WL 1612394, at *5 (N.D. Tex. April 22, 2014) (rejecting request for service of

process fees, postage, electronic data storage, and legal research fees).

The Court hereby awards $86,388.53 to Children's Rights in costs pursuant to 28 U.S.C.

§ 1920.

### 2.  A Better Childhood

#### a.  Lodestar Amount – Attorneys' Fees

Out of A Better Childhood's requested lodestar amount of $632,900.11 in attorneys' fees,

the Court sustains the following objections, with the lodestar to be calculated as $585,642.51

after the objections.  The Court sustains objections addressing attorneys' work hours and fees

amounting $6,231.00 related to an expert who did not participate in the trial, Gregory Kurth.  *See*

*W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 97-102 (1991) (fees for services rendered

by experts may not be shifted to the losing party).  The Court also sustains objections addressing

travel rates and reduces A Better Childhood's travel rate to $50.00 per hour, thereby reducing the

total award by $41,026.60.  *See D.G. ex rel. Stricklin v. Yarbrough* 2012 WL 7829602, at \*4

(N.D. Okla. Dec. 19, 2012) (reducing Children's Rights travel rate to $50.00).

The Court overrules the objection to A Better Childhood's entitlement to any attorneys'

fees award as Marcia Lowry and her organization were not appointed by the Court.[6]  Although A

Better Childhood was not specifically appointed by the Court, Lowry herself was substantially

part of the matter during her time in Children's Rights.  As lead attorney with her own

organization, Lowry continued to provide significant contributions to the matter which have been

recorded in her timesheets and attested by her affidavit.  *See Milliron v. T-Mobile USA, Inc.*, 423

F. App'x 131, 134 (3d Cir. 2011) ("When awarding fees to non-lead counsel, only work that

actually confers a benefit on the class will be compensable.") (quotations and brackets omitted).

Further, with regard to the lodestar amount, the Court awards A Better Childhood's requested

hourly rate of $550.00 per hour for Marcia Lowry, due to third-party unrefuted affidavits[7] which

have affirmed that the rates are reasonable given the complexity of the litigation and the skill

involved due to Lowry's role as co-lead counsel, as well as the Court's observations of A Better

Childhood's performance in this case.  *See* (D.E. 688-9; D.E. 688-10).  Analysis of the *Johnson*

Factors found below was also considered in awarding this hourly rate.

The lodestar amount of $585,642.51 is further reduced by 20% in consideration of

Defendants' objection addressing A Better Childhood's vague billing entries found in its

timesheets.[8]  *See Kenny A. ex rel. Winn*, 454 F. Supp. 2d at 1269-70 (N.D. Ga. 2006) (district

court reduced Children's Rights' work hours by 15% due to its vague time entries, among other

---

[6] The Court officially appoints Marcia Lowry and A Better Childhood as co-counsel in this case and recognizes all her work and A Better Childhood's work for the Permanent Managing Conservatorship class to date.

[7] The State did not offer any contradictory evidence other than argument.
[8] Examples of such vague billing entries include the following: "10/2/14 Activity – Other – Description – prep JB Dep." (billed for 6.75 hours.); "5/7/15 Activity – Court – Preparation for – Description – argument" (billed for 2.50 hours.)  (D.E. 687-3).

deficiencies); *Delta Concrete Products Co.*, 448 F.3d at 799; *see also Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 950 (N.D. Tex. 2016) (finding that a reduction of attorneys' fees by 20% "is consistent with amounts reduced by courts when applicants have failed to provide evidence of their billing judgment.").

The Court considered the following *Johnson* Factors in its determination to reject Defendant's request to reduce the lodestar amount any further.  The Court notes (1) Marcia Lowry's skill as co-lead counsel; (2) Lowry's experience, reputation, and ability as a leading child-advocate who has gained experience from twenty-six separate litigation proceedings addressing foster care system issues and civil rights; and (3) awards in similar cases where attorneys like Lowry have been given similar hourly rates as requested here, *See O'Donnell v. Harris Cty., Texas*, No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (awarded hourly rates ranging from a high of $600 were awarded in a class action civil rights case); *Miniex v. Houston Hous. Auth.*, No. 4:17-0624, 2019 WL 4920646 (S.D. Tex. Sept. 13, 2019) (Court rejected the hourly fact sheet and awarded rates from $600.00 for lead counsel and $165.00 for paralegals); *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) (awarded hourly rates of $650.00 per hour and $150.00 for support staff in a class action civil rights case).  Consideration of all these *Johnson* Factors favor A Better Childhood and the lodestar amount is not reduced further.

The Court hereby awards $468,514.01 to A Better Childhood for attorneys' fees.

### b.  Expenses

Out of A Better Childhood's requested expenses amounting to $14,799.66, the Court sustains Defendants' objection addressing A Better Childhood's lack of documentation for expenses amounting to $4,257.76.  *See Hensley*, 461 U.S. at 437 (fee applicants bear burden of establishing entitlement to expenses).

The Court hereby awards $10,541.90 to A Better Childhood for expenses.

### c.  Costs pursuant to 28 U.S.C. § 1920

A Better Childhood does not request any cost reimbursements.

### 3.  Haynes & Boone

### a. Lodestar Amount – Attorneys' Fees

Out of Haynes & Boone's requested lodestar amount of $1,421,437.50 in attorneys' fees, the Court sustains the following objections, with the lodestar to be calculated as $1,418,445.50 after the objections.  The Court sustains objections addressing attorneys' fees of $2,992.00 associated with two experts who did not participate in the trial, Rita L. Soronen and Gregory Kurth.  *See W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 97-102 (1991) (fees for services rendered by experts may not be shifted to the losing party).

Moreover, with regard to the lodestar amount, the Court awards Haynes & Boone's requested hourly rate of $475.00 per hour for David Dodds, due to third-party unrefuted affidavits[9] which have affirmed that the rates are reasonable given the complexity of the litigation and the skill involved due to Dodds's role as in-state private firm counsel, as well as the Court's observations of Haynes & Boone's performance in this case.  *See* (D.E. 688-9; D.E. 688-10).  Analysis of the *Johnson* Factors found below was also considered in awarding this hourly rate.

Haynes & Boone's lodestar amount of $1,418,445.50 is reduced by 15% in consideration of Defendants' objection to block-billing found in its timesheets and records.[10] *See* fn.3, *supra*;

---

[9] The State did not offer any contradictory evidence other than argument.

[10] The Court considered Defendants' objection addressing Haynes & Boone attorney David Dodds's role as "a passive observer on an overstaffed case" who spent unreasonable amounts of hours working on clerical or basic tasks such as reading reports, emailing, and conferring with other attorneys.  (D.E. 709, p.26).  The Court overrules this objection since a review of the record and Dodds's timesheets illustrate his substantial role in the litigation in conjunction with co-counsel.  Dodds's substantial work in preparing draft motions, briefs, and documents together

14

(D.E. 687-9, p.86) (for an example of Haynes & Boone's vague block-billing).

In consideration of the lodestar amount, the Court further considered the following *Johnson* Factors in its determination of the attorneys' fees award: (1) time and labor required necessary for successful litigation of the case; the novelty and complication of the issues surrounding this class-action lawsuit addressing systemic foster-care issues in the State of Texas; the skill required of David Dodds as an experienced, in-state legal practitioner who has had in-depth experience in complex litigation; (2) the preclusion of other employment opportunities for Dodds and his firm during the course of this litigation, given the amount of time needed to successfully litigate the case; Dodds's customary fee as stated in attorney affidavits as well as the Court's determination of the fee for attorneys with similar skill and expertise for a complex case such as this in the District; and (3) Dodds and Haynes & Boone's experience, reputation, and ability with regard to complex litigation; and awards in similar cases which show how Dodds's attorney rate is more than reasonable given the litigation, *See O'Donnell v. Harris Cty., Texas*, No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (awarded hourly rates ranging from a high of $600 were awarded in a class action civil rights case); *Miniex v. Houston Hous. Auth.*, No. 4:17-0624, 2019 WL 4920646 (S.D. Tex. Sept. 13, 2019) (Court rejected the hourly fact sheet and awarded rates from $600.00 for lead counsel and $165.00 for paralegals); *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) (awarded hourly rates of $650.00 per hour and $150.00 for support staff in a class action civil rights case).  Consideration of all these *Johnson* Factors favor Haynes & Boone and the lodestar amount is not reduced further.

The Court hereby awards $1,205,678.68 to Haynes & Boone for attorneys' fees.

---

with Yetter Coleman, and in analyzing constantly changing issues in the litigation and successive actions by Defendants before trial describe an active participant.  *See* (D.E. 687-9).

Granting their request, the Court acknowledges Haynes & Boone's offer to allocate and devote any award to be held in trust by Haynes & Boone for the benefit of the Permanent Managing Conservatorship class of the State of Texas as approved and ordered by the Court. *See* (D.E. 713).

### b.  Expenses

Haynes & Boone does not request any expenses reimbursements.

### c.  Costs pursuant to 28 U.S.C. § 1920

Haynes & Boone does not request any cost reimbursements.

### 4.  Yetter Coleman

### a.  Lodestar Amount – Attorneys' Fees

Out of Yetter Coleman's requested lodestar amount of $4,406,667.25 in attorneys' fees, the Court sustains the following objections, with the lodestar to be calculated as $4,399,830.25 after the objections.  The Court sustains objections addressing attorneys' fees of $856.00 associated with two experts who did not participate in the trial, Rita L. Soronen and Gregory Kurth.  *See W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 97-102 (1991) (fees for services rendered by experts may not be shifted to the losing party).  The Court sustains Defendants' objections addressing fees for amicus briefs in the amount of $5,981.00.  *See Glassroth*, 347 F.3d at 918 (no compensation for amicus-related work).

Moreover, with regard to the lodestar amount, the Court awards Yetter Coleman's requested hourly rates – $550.00 for partner-level attorneys, $535.00 for specialized senior attorneys, $475.00 for senior staff attorneys, $425.00 for staff attorneys, and $125.00 for paralegals – due to third-party unrefuted affidavits[11] which have affirmed that the rates are reasonable given the complexity of the litigation and the skill needed for the litigation, as well as

---

[11] The State does not offer any contradictory evidence other than argument.

the Court's observations of Yetter Coleman's performance in this case.  *See* (D.E. 688-9; D.E. 688-10).  Analysis of the *Johnson* Factors found below was also considered in awarding this hourly rate.

The Court does not further reduce the remaining $4,399,830.25 of Yetter Coleman's award.  The Court overrules Defendants' remaining objections addressing billing judgment, hourly rates of Yetter Coleman attorneys, excessive, unnecessary and clerical billing[12], and travel-related fees[13] since the firm has provided third-party affidavits, detailed time records, and exhibits illustrating how billing judgment policies were applied.[14]  This determination is also in consideration of the Court's observations in this matter.  *See MetroPCS v. Mohammed*, No. 3:16-CV-1946-L-BK, 2017 WL 2590108, at *9 (N.D. Tex. Apr. 24, 2017) (quoting *Areizaga v. ADW Corp.*, 2016 WL 3406071, at *5 (N.D. Tex. June 21, 2016) ("[T]he Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services."); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("trial courts are considered experts as to the reasonableness of attorney's fees.").

---

[12] Yetter Coleman agreed to reduce its bill by discounting clerical work.  Defendants, however, assert that not all clerical work was taken off. A comparison of Yetter Coleman and Defendants' exhibits show Yetter Coleman's calculation of their reductions is accurate. (D.E. 709, Ex. 59; D.E. 764, Ex. 10).

[13] "Consultation between attorneys is essential to effective litigation."  *Lewallen v. City of Beaumont*, 2009 WL 2175637, at *10 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x. 38 (5th Cir. 2010).  In a lengthy and complex litigation, the Court finds that it is reasonable for local counsel in Texas to travel to New York and have conferences with co-counsel.  Further, given the Court's ruling above deducting New York-based Counsel's travel rates to $50.00 because local counsel like Yetter Coleman and Haynes & Boone could adequately and efficiently perform their tasks in Texas, it would be unreasonable to expect Texas-based counsel to refrain from traveling to New York in order to confer and strategize with co-counsel.  Cooperation is still needed and essential among co-counsel, especially in this long, drawn-out and complicated litigation.  Therefore, the Court overrules this objection.

[14] For Yetter Coleman's filed records, *see* D.E. 688-6 – Time Record for Travel Rate Reduction; D.E. 688-7 – Time Record for Yetter Coleman's "Less Than 100 Hour of Work Billing Exclusion"; D.E. 688-8 – Time Record detailing 50% reduction of rate for days attorneys billed 12 hours or more; and D.E. 688-3.

The following Johnson factors were fully considered in favor of Plaintiffs such that Yetter Coleman's award will not be further reduced: (1) Time and labor required in this almost-decade long litigation; (2) novelty and difficulty of the questions present in this class-action case addressing systemic issues in the foster-care system of the state; (3) the skill and experience required to perform legal services for Plaintiffs and to successfully litigate the lawsuit; (4) preclusion of other employment during this litigation for Yetter Coleman given the time needed to successfully litigate the matter; (5) the customary fee and hourly rates requested as attested by third-party affidavits as well as the Court's experience and expertise here in the Southern District of Texas; (6) the amount involved and the results obtained in which Defendants, as this Court stated before, clearly lost and Plaintiffs prevailed in the matter's main and core issues, *See* (D.E. 640, p.4) ("The State of Texas lost this case.  The foster care system for children in permanent managing conservatorship was found not only by this Court but affirmed by the Fifth Circuit to be constitutionally deficient. You are now under Court supervision for an indefinite period of time."); and lastly, (7) awards in similar cases in much shorter durations addressing state foster care systems and other complex litigation matters in this District.  *See O'Donnell v. Harris Cty., Texas*, No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (awarded hourly rates ranging from a high of $600 were awarded in a class action civil rights case); *Miniex v. Houston Hous. Auth.*, No. 4:17-0624, 2019 WL 4920646 (S.D. Tex. Sept. 13, 2019) (Court rejected the hourly fact sheet and awarded rates from $600.00 for lead counsel and $165.00 for paralegals); *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) (awarded hourly rates of $650.00 per hour and $150.00 for support staff in a class action civil rights case); *D.G. ex rel. Stricklin v. Yarbrough*, No. 08-CV-074-GKF-FHM, 2013 WL 1343151, at *10 (N.D. Okla. Mar. 31, 2013); *Kenny A. ex rel. Winn v. Perdue*, 559 U.S. 542, 554 (2010).

The Court hereby awards $4,399,830.25 to Yetter Coleman for attorneys' fees.

### b.  Expenses

Out of Yetter Coleman's requested expenses amounting to $109,413.32, the Court sustains the following objections.  Defendants' objections to Westlaw and PACER charges lacking documentation amounting to $41,403.40 are sustained.  *See Thabico Co. v. Kiewit Offshore Services, Ltd.*, 2:16-CV-427, 2017 WL 4270743, at *4 (S.D. Tex. Sept. 26, 2017) ("There are no bills or receipts attached and nothing to suggest that these are not [Westlaw] charges for services included in a subscription to the service that would be incurred by the attorneys, regardless of use…The Court therefore declines to award computer assisted legal research charges that are more appropriately treated as standard overhead.").

The Court overrules Defendants' objection to Yetter Coleman's alleged "extravagant expenses" for flights, hotels, and ground transportation since Yetter Coleman has provided detailed receipts and other information on the hotels it chose in the areas its attorneys were located in for oral arguments and trial.  (D.E. 764, p.46).  Defendants, in turn, have provided no evidence that the hotel rates Yetter Coleman paid were above-average or extravagant at the various locations Yetter Coleman attorneys stayed during the years' long litigation for accommodations during oral arguments and hearings, or that less-expensive alternatives to what Yetter Coleman chose were available.  *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins.*, 414 F.3d 558, 574 (5th Cir. 2005) (hotel expenses approved for prevailing party where opposing party offered no evidence to support claim that most economical rate available was not used).

The Court hereby awards $68,009.92 to Yetter Coleman for expenses.

### c.   Costs pursuant to 28 U.S.C. § 1920

Out of Yetter Coleman's requested costs amounting to $35,787.27, the Court sustains the following objections.  The Court sustains objections addressing incidental costs related to OCR conversion expenses amounting to $9,141.88.  *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 133 (5th Cir. 2015) ("Incidental costs like shipping, binding, and tabbing are generally not taxable, as these costs are not listed in § 1920.").  Objections to $802.60 of additional transcript requests costs are also sustained.  *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991) ("Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court.").

The Court, however, overrules Defendants' objections to Plaintiffs' copying and printing costs since Yetter Coleman has provided receipts and records for these costs, as well as an itemized appendix to connect them with the litigation.  See *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) ("Courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours.").

The Court hereby awards $25,842.79 to Yetter Coleman for costs pursuant to 28 U.S.C. § 1920.

Granting their request, the Court acknowledges Yetter Coleman's offer to allocate and devote any award it may receive to be held in trust by the firm for the benefit of the Permanent Managing Conservatorship class of the State of Texas as approved and ordered by the Court. *See* (D.E. 713).

# V.
# CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to recover attorneys' fees, expenses, and litigation costs. It is ORDERED that Plaintiffs' first application for the time period through October 11, 2019 is GRANTED in part. The Court awards Plaintiffs an overall award of $12,450,969.60.

In accordance with this Order, the Court ENTERS the following judgments against Defendants. The Court enters judgment in favor of Children's Rights in the amount of $6,272,552.05. The Court enters judgment in favor of A Better Childhood in the amount of $479,055.91. The Court enters judgment in favor of Haynes & Boone in the amount of $1,205,678.68. Lastly, the Court enters judgment in favor of Yetter Coleman in the amount of $4,493,682.96. These judgments are subject to a post-judgment interest rate of 0.15% per annum, compounded annually, until paid.

These are final judgments for Plaintiffs' first application.

It is further ORDERED that Defendants shall pay Plaintiffs' Counsel these amounts within thirty (30) days after the date of this Order.

SIGNED and ORDERED this 14th day of July, 2020.


_____
Janis Graham Jack
Senior United States District Judge