# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| *Defendants*. | § | |

## SWORN DECLARATION FOR REMEDIAL ORDER NO. 2 RELATED TO GRADUATED CASELOADS

1. My name is Erica Bañuelos. I am over the age of 18 years, of sound mind, competent to testify, and have personal knowledge of the facts stated herein.

2. I am employed as the Director of Field of Child Protective Services (CPS) with the Department of Family and Protective Services (DFPS). I have served in that role since April 1, 2020. I have been employed with DFPS for 23 years. During my tenure with the department, my roles have included being a caseworker, supervisor, program director, program administrator, and regional director of CPS, including working in the various stages of service: Investigations, Family Based Safety Services, and Conservatorship.

3. In accordance with Remedial Order No. 2, DFPS must ensure statewide implementation of graduated caseloads for newly hired CPS conservatorship caseworkers and all other newly hired staff with the responsibility for primary case management services to children in the PMC class, whether employed by a public or private entity.

4. In October 2015, CPS Professional Development (CPD), the training for CPS conservatorship caseworkers, was implemented statewide; at the same time, Advancing Practice Policy, which requires new caseworkers to be assigned a graduated caseload, also became mandatory statewide. Until July 2020, Advancing Practice Policy required that once a new caseworker was ready to be assigned primary on cases (which occurs after CPD completion), the new caseworker would be assigned one-third of the average number of stages for their county the first month and two-thirds of the average number of stages for their county in the second

month. This policy was established as a guideline and not a cap, and deviations were expected. In the third month, the caseworker is eligible for and may receive a full caseload. There are instances for which graduated caseloads may not be applicable based on the individual caseworker's experience and training. [*Source Document*: Exhibit C-1 (*Advancing Practice Policy*), admitted in September 3, 2020 Show Cause Hearing].

5. The Community-Based Care (CBC) Model is a system for the privatization of foster care designed to offer ample opportunity for innovation and to improve outcomes for children, youth, and families at the local level. The CBC Model is rolled out in stages and expanded to a few designated service areas at a time. Under this model, Single Source Continuum Contractors (SSCC) are competitively selected and have performance-based contracts to improve well-being and permanency outcomes. In Stage I, the SSCC is responsible for ensuring the full continuum of foster care, Preparation for Adult Living (PAL) life skills assessment/training, and adoption services. The focus in Stage I is improving the outcomes for children, youth, and young adults in foster care by keeping them closer to home, in the least restrictive settings, and connected to their communities and families. In Stage II, the SSCC's responsibility expands to provide full casemanagement services. Stage II expands the continuum of services to include services for families of children and youth that are in foster care. Currently, two SSCCs are in Stage I: Family Tapestry in CPS Region 8A (Bexar county only) and Saint Francis Community Services in CPS Region 1. Only two SSCCs are in Stage II: 2INgage in CPS Region 2 and OCOK in CPS Region 3B (Palo Pinto, Parker, Tarrant, Erath, Hood, Somervell, and Johnson counties only).

6. On September 1, 2019, the CBC Statement of Work (SOW) took effect. It required SSCCs in Stage II Readiness to include plans to implement graduated caseloads for newly hired staff as required by the Advancing Practice Policy. [*Source Document*: Exhibit A *3b SOW V 4_0 Final*, uploaded to the Monitors' SharePoint on January 11, 2021].

7. On September 30, 2019, the Monitors requested that DFPS provide a copy of the graduated caseload policy and any field guidance, information, or directives describing for managers and/or supervisors the graduated caseloads policy and schedule. The Monitors also requested that DFPS provide a monthly data report with caseloads for all staff, which includes (among other data elements) all staff subject to a graduated caseload (hereinafter referred to as "Caseload Report") and a monthly list of all employees subject to the graduated caseloads during the previous month, including the full name, title, identification number, start date, exit date (if applicable), agency name, county, district or region, the name of the supervisor and supervisor identification number, assigned work location(s), and whether they were compliant with the relevant graduated caseload at all times during the month. [*Source Document*: Exhibit C-2 (*Data Request*), admitted in September 3, 2020 Show Cause Hearing].

8. On November 1, 2019, in response to the Monitors' September 30, 2019 information and data request, DFPS staff provided to the Monitors responsive information concerning the graduated caseload policy, including a Graduated Caseloads Compliance Summary and Individualized Training Plan and Supervisor Basic Skills Development Information (both referenced in the compliance summary document). [*Source Document:* Exhibit C-6 (*Transmittal Email*), admitted in September 3, 2020 Show Cause Hearing].

9. On November 15, 2019, DFPS responded to the detailed Data Request of September 30, 2019, providing all data and information it could, given the complexity of the request and the timeframe requested, which would also allow the Monitors to calculate compliance with graduated caseload standards. DFPS provided a list of staff subject to graduated caseloads in September 2019, including each caseworker's full name, title, identification number, start date of graduated caseload period (which lasts for 60 days), assigned county and region work location, and an indicator for whether the caseworker was compliant with the relevant graduated caseload standard. The indicator was based on whether the caseworker's caseload on day 15 after becoming case carrying (as representative of the first 30 days of a graduated caseload) was within the guidelines, and whether the caseworker's caseload on day 45 after becoming case carrying (as representative of the second 30 days of a graduated caseload) was within the guidelines. DFPS provided the caseload on day 15 and day 45. [*Source Documents:* Exhibit C-7 *(Graduated Caseload Report Advancing Practice Policy)* and Exhibit C-8 *(Transmittal email)* admitted in September 3, 2020 Show Cause Hearing].

10. On December 6, 2019, the Plaintiffs and Defendants filed an agreed motion whereby guidelines of 14-17 children per CPS caseworker would be utilized instead of instituting a workload study, as had been required by previous order of the Court. This was approved by the Court on December 17, 2019.

11. On January 15, 2020, DFPS provided its second Caseload Report, which updated the data for September 2019 and provided new data for the period of October and November 2019. In this report, DFPS added the name of the supervisor and supervisor identification number and the caseworker's exit date (if any). The report also included a revised data dictionary pursuant to the Monitors' request. [*Source Document:* Exhibit C-9 *(Graduated Caseload Report)*, admitted in September 3, 2020 Show Cause Hearing].

12. On January 16, 2020, DFPS submitted to the Monitors via email documents titled "Generally Applicable Internal Caseload Standards: Guidelines for Conservatorship (CVS)." The CVS document included graduated caseload guidance. The guidelines required new CVS workers to be given one-third of the average caseload for the county in which he or she was deemed case assignable after completing CPD, two-thirds of the average caseload for the county in the second month after being deemed case assignable, and a full caseload in the third month. The guidelines instructed supervisors to pull the CVS caseload report monthly to calculate the average for a worker's county and to avoid giving new workers certain types of cases. In the accompanying email, DFPS advised the Monitors that to ensure that the generally applicable, internal caseload standards were properly applied, it had to begin developing communications to staff as quickly as possible regarding the generally applicable, internal caseload standards, with a target dissemination date of February 3, 2020. Additionally, DFPS advised the Monitors that due to the impending rollout of Stage II case management responsibilities for CBC in Region 2, it had to promptly inform the SSCC in that region regarding the caseload standards. DFPS requested the Monitors advise whether approval of the proposed standards would require significant time so it could address the planned information roll-out. [*Source Documents:* Exhibit C-10 *(DFPS Email to Monitors)* and Exhibit C-11 *(CPS Generally Applicable Internal Caseload Standards)*, admitted in September 3, 2020 Show Cause Hearing].

13. Staff at or above the supervisor level received training related to the guidelines via mandatory webinars held in February 2020. [*Source Document*: Exhibit C-12 (*Field Communication Regarding Training*), admitted in September 3, 2020 Show Cause Hearing].

14. On February 5, 2020, Travis County CPS workers participated in caseload verification interviews with the Monitors.

15. On February 14, 2020, then-CPS Associate Commissioner Kristene Blackstone provided a memo to CPS Conservatorship Staff informing staff of the caseload guidelines. The guidelines were also provided to caseworkers via a March 2020 CPS "Meeting in a Box" to the DFPS Safety Net. [*Source Documents:* Exhibit C-14 (*Caseload Standards Memo*) and Exhibit C-15 (*Generally Applicable Internal Caseload Standards*), admitted in September 3, 2020 Show Cause Hearing].

16. On February 18, 2020, DFPS provided the Monitors with a Caseload Report which updated the data for the period of October and November 2019 and added data for December 2019. [*Source Document:* Exhibit C-16 (*Caseload Report*), admitted in September 3, 2020 Show Cause Hearing].

17. On February 18, 2020, DFPS also provided the Monitors the finalized conservatorship caseload standards, along with communications and training materials CPS developed and provided to staff concerning the caseload standards, which incorporated feedback received from the Monitors where feasible. [*Source Document:* Exhibit C-17 (*DFPS Email*), admitted in September 3, 2020 Show Cause Hearing].

18. On February 21, 2020, Monitor Kevin Ryan sent an updated data and information request seeking clarification and data. Specifically, the Monitors asked that DFPS provide the number of days each staff member was not compliant with the graduated caseload standard. DFPS informed the Monitors that it would research the complex coding needed to provide that information and provide an update. [*Source Document:* Exhibit C-28 (*Response to Data and Information Request*), admitted in September 3, 2020 Show Cause Hearing].

19. On March 4, 2020, Dallas County CPS workers participated in caseload verification interviews with the Monitors.

20. On March 16, 2020, DFPS provided the Monitors with the graduated caseload report for the period of January 2020. In the transmission email, DFPS noted it was "researching monitors' request to add information about, for staff who exceeded guidelines on day 15 and day 45, the number of total days they exceeded." [*Source Document:* Exhibit C-26 (*Caseload Report*), admitted in September 3, 2020 Show Cause Hearing].

21. On March 25, 2020, CPS workers in Harris County participated in caseload verification interviews. Caseworkers were asked about caseloads, including experience with graduated caseloads. The interviewed caseworkers generally indicated their caseloads were limited when they began receiving assignments.

22. On April 15, 2020, DFPS provided the graduated caseload report for the period of February 2020. In an email to the Monitors, DFPS provided clarification around why some caseworkers

received cases before their case assignable dates. DFPS noted there is occasionally a delay between when the worker finishes all of their required CPS Professional Development components and when a DFPS Center for Learning and Organizational Excellence (CLOE) Field Training Supervisor inputs the case assignable date into the CLOE Learning Management System (LMS). The case carrying date in the graduated caseload report reflects what existed in LMS at the time the data was pulled. Supervisors were reminded not to assign cases before CLOE could verify completion, and CLOE took efforts to reduce the delays. [*Source Document:* Exhibit C-31 *(Caseload Report)*, admitted in September 3, 2020 Show Cause Hearing].

23. On April 22, 2020, the Monitors conducted virtual caseload verification interviews with workers from across the state who were currently subject to graduated caseloads. While the above-mentioned discrepancy with the case assignable date was noted, workers generally indicated staggered caseloads since receiving assignments.

24. On May 15, 2020, DFPS provided the Caseload Report for March 2020. In an email to the Monitors, DFPS stated, "Pursuant to monitors' request, we have added two columns that show, for staff [whose] 30th day after becoming case carrying and [whose] 60th day after becoming case carrying fall within the month, [the] Monitors with the number of days each worker is above graduated caseloads guidance." Creating this report required DSI to create a complicated structure query language (SQL) code to extract data from the DFPS data warehouse tables daily to produce the information on each caseworker as the Monitors requested. This was included with all reports moving forward. [*Source Document:* Exhibit C-34 *(Caseload Report)*, admitted in September 3, 2020 Show Cause Hearing].

25. On June 15, 2020, DFPS provided the Caseload Report for April 2020 to the Monitors. DFPS also provided a Caseload Report for the CBC provider Our Community, Our Kids (OCOK) which had assumed case management responsibilities in Region 3B as of March 1, 2020. The report included graduated caseloads for OCOK staff for March and April 2020. [*Source Documents:* Exhibit C-36 *(Caseload Report)* and Exhibit C-37 *(OCOK Caseload Report)*, admitted in September 3, 2020 Show Cause Hearing].

26. On June 16, 2020, the Monitors released their first report to the Court. This report only examined graduated caseload data from September through November 2019. The Monitors' findings generally match those of DFPS. Specifically, the data from that timeframe shows that in the first month of being case-carrying, 69% of caseworkers had caseloads below one-third of the average caseload for their county and 93% had caseloads below 50%. For workers in their second month of being case assignable, 94% were within 66% of their county's caseload average and 97% were within 80% of the county average. These numbers included workers who were rehired or transferred from another division and may have training consistent with a higher caseload. [*Source Document*: Exhibit C-9 *(Graduated Caseload Report)*, admitted in September 3, 2020 Show Cause Hearing].

27. Although the Report dated June 16, 2020, asserted the receipt of insufficient data regarding graduated caseloads, the findings of the Monitors indicated that they used the graduated caseload data DFPS had provided for the period of September through November 2019 to

calculate the percentage of caseworkers subject to graduated caseloads who were within the caseload guidelines during the identified period.

28. In July 2020, DFPS formalized its exception process for graduated caseloads. The updated Generally Applicable Internal Caseload Standards now state, "For caseworkers transferring from one stage of service to another, for example from Family Based Safety Services to Conservatorship and staff demoting from CVS management positions, an exception form must be requested, completed, and approved by the CPS Regional Director or their designee if the transferring caseworker or demoting CVS manager will not be subject to Advancing Practice guidelines stated above. An assessment regarding training needs should be made before case assignment begins. Graduated caseloads may or may not be necessary depending on the staff's experience and previous training and determinations should be made on an individual basis." Exception information and forms were provided to the Monitors with August 2020 data and for all subsequent months. [*Source Document: CPS Generally Applicable Internal Caseload Standards*, updated, available at https://www.dfps.state.tx.us/handbooks/CPS/Resource_Guides/CPS_Generally_Applicable_Internal_Caseload_Standards.pdf ].

29. On July 15, 2020, DFPS provided the Caseload Report for DFPS and OCOK for the period of May 2020, both of which included the number of days staff exceeded guidelines. In the email with the report, DFPS noted that the "The standard for graduated caseload compliance has been changed from the average daily caseload of all stages for the county to which the caseworker was assigned used in all prior reports to 6 children in month 1 ($1/3^{rd}$ of 17) and 12 children in month 2 (2/3rds of 17)." DFPS has notified staff of this change and distributed a written broadcast to the field on the change. DFPS believed this change would help supervisors to monitor and enforce graduated caseloads. DFPS also developed a form that had to be filled out when a caseworker was allowed to exceed the new guidelines due to previous employment or transfer from another stage of service. As May is when DFPS usually hires students who have graduated who were past interns or under the stipend program, DFPS also informed the Monitors that there was an indicator added to the report to identify stipend students because their status affected the time of when their graduated caseload period started. [*Source Documents:* Exhibit C-39 *(Caseload Report)*, Exhibit C-40 *(OCOK Caseload Report)*, Exhibit C-41 *(Email to Field), and* Exhibit C-42 *(Graduated Caseload Exception Form)* admitted in September 3, 2020 Show Cause Hearing].

30. On August 5, 2020, DFPS distributed the August "Meeting in a Box" to CPS supervisors and regional management. Program directors were instructed to review the materials pertaining to the changes in graduated caseload policy with their program directors who would then train their supervisors and staff by September 1, 2020. DFPS saw improvements in DFPS caseload numbers from these changes and is actively working with the SSCCs to improve their caseloads. [*Source Documents:* Exhibit C-43 *(email to field)* and Exhibit C-44 *(Meeting in a Box Memo),* admitted in September 3, 2020 Show Cause Hearing].

31. On August 3 and 5, 2020, CPS workers participated in caseload verification interviews with the Monitors.

32. On August 17, 2020, DFPS provided the graduated caseload reports for DFPS and OCOK for the period of June 2020, both of which included the number of days staff exceeded guidelines. This was included in all subsequent reports. DFPS also provided a graduated caseload report for the CBC contractor 2INgage which had assumed case management responsibilities in Region 2 as of June 1, 2020 [*Source Documents:* Exhibit C-47 *(Caseload Report),* Exhibit C-48 *(OCOK Caseload Report);* and Exhibit C-49 *(2INgage Caseload Report)* admitted in September 3, 2020 Show Cause Hearing].

33. On September 2 and 3, 2020, CPS workers participated in caseload verification interviews with the Monitors.

34. DFPS began providing details on exceptions to graduated caseloads to the Monitors in their reports due in August 2020 and all subsequent months. On September 15, 2020, DFPS expanded this practice to the SSCCs and provided the Caseload Reports for DFPS, OCOK, and 2INgage for July 2020, all of which included the number of days staff exceeded guidelines. [*Source Document: RO2.4 and RO1.1 DFPS CVS Grad CL and CPD grads July 2020 – 915-20 99520, RO1.1, CPD and graduated CL for 2INgage July – 9-15-20,* and *RO1.1 CPD and graduated CL for OCOK July – 9-15-20,* uploaded to the Monitors SharePoint on September 15, 2020].

35. On September 30, 2020, DFPS provided the August 2020 Caseload Reports for DFPS, OCOK, and 2INgage, all of which included the number of days staff exceeded guidelines and documentation for DFPS staff with exceptions to the guidelines. This was the first report which included an indication of guideline exception and the supporting documentation. This was included in all subsequent reports. For staff who completed their first or second 30 days of graduated caseloads in August, the percentage who were within guidelines in each day in the respective period were: DFPS staff: 83% (month 1) and 93% (month 2); 2INgage staff 63% (month 1) and 25% (month 2) and OCOK staff 100% (months 1 and 2). [*Source Documents: RO2.4 and RO1.1 DFPS CVS Grad CL and CPD grads Aug 2020 – 9-30-20 99630, RO1.1. CPD and graduated CL for 2INgage Aug – 9-30-20, and RO1.1 CPD* and *graduated CL for OCOK Aug – 9-30-20,* uploaded to the Monitors SharePoint on September 30, 2020].

36. On October 5 and 6, 2020, CPS workers participated in caseload verification interviews with the Monitors.

37. On October 9, 2020, DFPS met with its counterpart in Oklahoma to learn about the daily caseload tracking tools implemented there.

38. On November 2, 2020, DFPS provided the September 2020 Caseload Reports for DFPS, 2INgage, and OCOK, all of which included the number of days staff exceeded guidelines and documentation for DFPS staff with exceptions to guidelines. For staff who completed their first or second 30 days of graduated caseloads in September, the percentage who were within guidelines in each day of the respective period were: DFPS staff 90% (month 1) and 93% (month 2); 2INgage staff 100% (month 1) and 91% (month 2); and OCOK staff 100% (month 2) (no staff were within their first 30 days) [*Source Documents: RO2.4 and RO1.1. DFPS*

*CVS Grad CL and CPD grads Sept 2020 – 11-2-20 99963, RO1.1 CPD and graduated CL for 2INgage Sept – 11-2-20,* and *RO1.1 CPD and graduated CL for OCOK Sept – 11-2-20,* uploaded to the Monitors SharePoint on November 2, 2020].

39. On November 4 and 5, 2020, CPS workers participated in caseload verification interviews with the Monitors.

40. In November 2020, DFPS began researching how best to develop a daily caseload report that provides a systemic view of daily caseloads and the ability to drill down to an individual worker's workload on a certain date. Preliminary activities included:

    - soliciting supervisors' feedback about what types of daily visualizations and information would be most helpful when conducting caseload distribution activities;

    - researching potential improvements to the visualizations and drill down for the existing daily child only caseloads data within INSIGHT, including how to create a daily "hot spot" map; and

    - researching how to leverage existing data warehouse infrastructure to create historic trends and visualizations of daily child only caseloads.

41. On November 30, 2020, DFPS provided the October Caseload Reports for DFPS, OCOK, and 2INgage, all of which included the number of days staff exceeded guidelines and documentation for DFPS staff with exceptions to guidelines. For staff who completed their first or second 30 days of graduated caseloads in October, the percentage who were within guidelines in each day of the respective period were: DFPS staff 88% (month 1) and 95% (month 2); 2INgage staff 100% (months 1 and 2); and OCOK staff 100% (month 1) (no staff were within a second month of graduated caseloads). [*Source Documents: RO2.4 and RO1.1 DFPS CVS Grad CL and CPD grads Oct 2020 – 11-30-20 100484, RO1.1. CPD and graduated CL for 2INgage Oct – 11-30-20, and RO1.1 CPD and graduated CL for OCOK Oct – 11-30-20,* uploaded to the Monitors SharePoint on November 30, 2020].

42. On December 2 and 3, 2020, CPS workers participated in caseload verification interviews focused specifically on workers subject to graduated caseloads. The interviewed caseworkers generally indicated their caseloads were limited when they began receiving assignments.

43. On January 4, 2021, DFPS provided the November 2020 Caseload Report numbers via a consolidated report that covered May through November 2020 for DFPS and the November 2INgage and OCOK Caseload Reports. All reports included the number of days staff exceeded guidelines and documentation for DFPS staff for exceptions to guidelines. For staff who completed their first or second 30 days of graduated caseloads in November, the percentage who were within guidelines in each day of the respective period were: DFPS staff 94% (month 1) and 93% (month 2); 2INgage staff 0% (both of the two applicable workers were one child above guidelines in month 1) and 86% (month 2); and OCOK 75% (month 1) and 100% (month 2). [*Source Documents: RO2.4 and RO1.1 DFPS CVS Grad CL and CPD grads May-Nov 2020 – 1-4-21 101199, RO1.1, CPD and graduated CL for 2INgage Nov – 1-4-21,* and

*RO1.1 CPD and graduated CL for OCOK Nov 20 – 1-4-21,* uploaded to the Monitors' SharePoint on January 4, 2021].

44. On January 6 and 7, 2021, CPS workers participated in caseload verification interviews with the Monitors.

45. On January 13, 2021, DPFS deployed stage one of its new, automated daily caseload tracking tool. This tool provides CPS with real time data to look at daily caseloads. It is similar to what Oklahoma uses in that it provides a visual to easily identify differences in caseloads across different areas of the state. It also allows drill down to show visually and with numbers how many children each caseworker has on that day. This tool is intended to supplement INSIGHT capabilities. The daily caseload data will be available for the state overall and for each region, county, and worker. This information will be an additional tool for supervisors to use in distributing cases and will provided additional information to inform hiring. The new caseload tracking tool was demonstrated for the Regional Directors on December 21, 2020, with the expectation that they will utilize the tool to more effectively track caseloads on an ongoing basis. On January 14, 2021, a communication was sent to field informing them of this new tool and how it should be used to enforce the caseload guidance. [*Source Documents: Daily Caseload Tracker Screenshot* uploaded to the Monitors' SharePoint on January 12, 2021 and *Caseload Tracker Message* uploaded to Monitors' SharePoint on January 14, 2021].

46. Phase two of implementation of the automated daily caseload tracking tool will capture data to allow DFPS to determine graduated caseloads for caseworkers. Deployment of phase two is estimated for March 2021.

47. The CBC Statement of Work Version 5.0 updated the "graduated caseload" definition with the following language; "Stage II Readiness must include plans to implement reasonable caseloads for all caseworkers as well as graduated caseloads for newly hired staff. The SSCC should comply with the DFPS Generally Applicable Internal Caseload Standards which implement a guideline of 14-17 children per conservatorship worker. This is not a "caseload cap" or an "enforced caseload range". A new CVS caseworker will be assigned no more than 6 children in the first month of becoming case assignable and no more than 12 children in the second month after they are deemed case assignable. In the third month after being determined eligible for case assignments, the caseworker may receive a full caseload. The SSCC must use its approved graduated caseload plan to inform its hiring goals as well as ensure that SSCC caseworker supervisors use the SSCC's graduated caseload plan in handling caseload distribution". Version 5.0 is currently in final draft form with an effective date of September 1, 2020. [*Source Document: Exhibit A 3b Statement of Work 5.0_Final Draft* uploaded to the monitor's SharePoint on January 13, 2021].

48. DFPS has worked deliberately and in good faith to comply with the Court's Remedial Order No. 2 with regard to graduated caseloads, and hereby certifies compliance with Remedial Order No. 2, as described herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2021

Erica Bañuelos, MSW, LCPAA
CPS Director of Field