**Exhibit B**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., <br><br> *Defendants*. | § § § § § § § § § § § § | CIVIL ACTION NO. 2:11-CV-00084 |

## SWORN CERTIFCATION FOR REMEDIAL ORDER NO. 3 RELATED TO STATEWIDE INTAKE

1. My name is Stephen Black. I am over the age of 18 years, of sound mind, competent to testify and have personal knowledge of the facts stated herein.

2. I am employed as the Associate Commissioner for Statewide Intake at the Texas Department of Family and Protective Services (DFPS). I have 13 years of state service. I have held my current position at DFPS since October 5, 2020; before that date, I held the role in an interim capacity beginning on September 1, 2020. Prior to that, I have spent all 13 years with DFPS at Statewide Intake.

3. Statewide Intake (SWI) is a program within DFPS. It operates the Texas Abuse Hotline to receive reports of abuse, neglect, and exploitation and route them to the appropriate program for investigation. These reports include allegations regarding:
    i. A person age 65 or older;
    ii. An adult with a substantial impairment, or an emancipated minor with a substantial impairment by;
        1. A caretaker;
        2. A family member;
        3. An individual who has an ongoing relationship with the person; and
    iii. Abuse, neglect, and exploitation of individuals receiving services (adults and children) from certain providers as provided for in Human Resources Code § 48.251(a)(9) and Texas Family Code § 261.404(a). [See Human Resources Code § 48.251(a)(9), located at:

https://statutes.capitol.texas.gov/Docs/HR/htm/HR.48.htm#48.251, and the Texas Family Code § 261.404(a), located at: https://statutes.capitol.texas.gov/Docs/FA/htm/FA.261.htm#261.404].

## REMEDIAL ORDER 3 – Receiving, Screening, and Investigating Reports of Abuse and Neglect

4. SWI operates 24 hours a day, seven days a week, year-round, and:
   - Obtains and assesses the information reported according to definitions of abuse, neglect, or exploitation for each program;
   - Enters the information in the DFPS Information Management Protecting Adults and Children in Texas case management system (IMPACT);
   - Routes reports to the appropriate program and field office; and
   - Serves as a referral center when appropriate or when information received does not meet statutory definitions.

5. According to Texas law, anyone who thinks a child, a person 65 years or older, an adult with a substantial impairment, or an individual receiving services from a provider is being abused, neglected, or exploited must report it. [See Texas Family Code § 261.101, located at: https://statutes.capitol.texas.gov/Docs/FA/htm/FA.261.htm#261.101; Human Resources Code § 48.051, located at: https://statutes.capitol.texas.gov/Docs/HR/htm/HR.48.htm#48.051, and 40 Texas Administrative Code (TAC), Chapter 711, located at: https://texreg.sos.state.tx.us/public/readtac$ext.ViewTAC?tac_view=4&ti=40&pt=19&ch=711].

6. The contact center for SWI allows for intakes of abuse, neglect, or exploitation to be submitted through a toll-free number, fax, regular mail, or internet report.

7. SWI is comprised of 326 intake specialist positions, 37 intake supervisor positions, four intake program administrator positions, five quality assurance specialist positions, five program specialist positions, six system support specialist positions, 35 administrative support positions, three support supervisor positions, one support manager position, two division administrator positions, one executive officer position, one business continuity coordinator position, and one associate commissioner position. Effective November 1, 2020, the DFPS screening function transitioned to SWI. This includes eight screeners and two screening supervisors dedicated to reviewing RCCI intakes, 55 screeners and five supervisors dedicated to reviewing CPI intakes, and one program administrator over the entire screener unit.

8. The SWI Handbook sets out its policies and procedures. [See Statewide Intake Policy and Procedures, located at: http://www.dfps.state.tx.us/handbooks/SWI_Procedures/].

9. Once intakes are received, an intake specialist reviews, assesses, and enters the intake into IMPACT. [See Statewide Intake Policy and Procedures Section 1510 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_1000.asp#SWP_1510].

10. Intake specialists must be able to recognize what constitutes abuse, neglect, or exploitation for all DFPS programs and be able to refer reporters to local community resources when their concerns do not meet the legal definitions of abuse or neglect. To assess abuse, neglect, or exploitation accurately and efficiently, intake workers complete an interview to:
    - Identify the victim;
    - Identify the perpetrator of the alleged abused, neglect, or exploitation; and
    - Gather all appropriate details concerning the matter being reported.

[See Statewide Intake Policy and Procedures Section 2251 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2251, Statewide Intake Policy and Procedures Section 2252 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2252, and Statewide Intake Policy and Procedures Section 2311 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2311].

11. Intake specialists must obtain all identifying information from a reporter to assist field staff in locating the family/victim and the perpetrator. Demographic information must be obtained to search for case history in IMPACT. To help field staff with their investigation, intake specialists must also obtain information for witnesses or anyone else who may have knowledge of the reported abuse, neglect, or exploitation.

12. Once all relevant information is obtained and the call ends, the intake specialist begins processing the intake report. All information received from a reporter, even if the information did not meet the legal definition of abuse, neglect, or exploitation, is documented in IMPACT. At times, the information results in multiple reports to either the same program or multiple programs. [See Statewide Intake Policy and Procedures Section 1510 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_1000.asp#SWP_1510] and Statewide Intake Policy and Procedures Section 2810 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2810].

13. Intake specialists reference intake guidelines and SWI policy and procedures to determine which DFPS or Texas Health and Human Services Commission (HHSC) program has jurisdiction, whether all allegations meet the legal definition of abuse, neglect, or exploitation, and the appropriate priority for those allegations. Intake specialists must perform IMPACT case history searches for all reports and relevant case history can be used when making these assessment decisions. The priority of the intake depends on the safety threat to the victim and the alleged perpetrator's access to the victim. See Statewide Intake Policy and Procedures Section 2420 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2420 and Statewide Intake Policy and Procedures Section 2560 at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2560].

14. SWI routes reports to HHSC Residential Child Care Licensing (RCCL) that do not meet the definition of abuse, neglect, or exploitation for any program but involve a child in an operation regulated by HHSC RCCL. These reports are documented as a Possible Information and Referral (I&R) RCCL Standards Compliance contact. [See Statewide Intake Policy and Procedures Section 5230 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_5000.asp#SWP_5230].

15. Once the assessment is made and the documentation is complete, the intake specialist routes the intake report to designated regional contacts for the appropriate program. If there is an immediate concern, the report may be called out to an on-call field investigator. [See Statewide Intake Policy and Procedures Section 2681 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2680 and Statewide Intake Policy and Procedures Section 2684 located at http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#SWP_2684].

16. The time an intake specialist spends on an intake depends on the amount of information provided by the reporter and the number of intake reports generated from this information.

17. In fiscal year (FY) 2019,[1] SWI received 772,206 contacts— on average, more than 2,100 per day. [See the DFPS Data Book located at http://www.dfps.state.tx.us/About_DFPS/Data_Book/Statewide_Intake/Contacts.asp].

18. Of those FY 2019 contacts, 595,834 or 77% were received by phone, 142,983 or 19% were received through the internet, 28,127 or 4% were received by mail/fax, 4,077 or <1% were received through the Interstate Compact for the Placement of Children (ICPC) (these contacts are entered by DFPS field staff rather than persons external to DFPS), 1,179 or <1% were received by data match, which are reports received directly from the Texas Department of State Health Services (DSHS), and another 6 or <1% were received by walk-in. [See the DFPS Data Book located at http://www.dfps.state.tx.us/About_DFPS/Data_Book/Statewide_Intake/Contacts.asp]

19. Fiscal year 2020 data is presently undergoing quality analysis and is not yet finalized. However, preliminary data indicates that in FY 2020, SWI received 736,777 contacts — on average more than 2,000 per day.

20. Of those FY 2020 contacts, 586,067 or 80% were received by phone, 122,195 or 17% were received through the internet, 23,942 or 3% were received by mail/fax, 3,689 or <1% were received through the Interstate Compact for the Placement of Children (ICPC) (these contacts are entered by DFPS field staff rather than persons external to DFPS), 882 or <1% were received by data match, which are reports received directly from DSHS, and another 2 or <1% were received by walk-in.

---

[1] References to fiscal year reflect the state fiscal year of September 1 through August 31.

21. When a contact is made to SWI through its hotline, the caller is connected to the Interactive Voice Response (IVR), which presents the caller with pertinent information about the hotline and a series of prompts intended to direct the caller to the most appropriate queue.

22. Through the IVR, SWI intake specialists receive contacts through the following queues:[2]

    - Abuse Hotline – English
    - Law Enforcement
    - Community Center
    - Abuse Hotline – Spanish
    - Transfers to English Queue
    - Transfers to Spanish Queue
    - National Trafficking – English
    - Foster Youth – English
    - Foster Youth – Spanish
    - National Trafficking – Spanish

23. In FY 2019, the Abuse Hotline – English Queue received 78% of all phone calls, representing the vast majority. In FY 2020, the Abuse Hotline – English Queue received 77% of all phone calls.

24. DFPS determines the average hold time by calculating the average wait time of all calls answered and abandoned that complete the IVR navigation and reach the Abuse Hotline - English queue.

25. The FY 2019 average hold time for calls to the Abuse Hotline - English Queue was 7.8 minutes. When accounting for all queues, the average hold time was 3.6 minutes. [See Statewide Intake: Phone Calls by Queue located at http://www.dfps.state.tx.us/About_DFPS/Data_Book/Statewide_Intake/Phone_Calls.asp].

26. During FY 2020, the average hold time for the Abuse Hotline - English Queue decreased to 4.6 minutes, likely due in large part to SWI receiving fewer intakes because of the COVID-19 pandemic. As intakes return to numbers seen historically, hold times will likely increase. When accounting for all queues, the average hold time in FY 2020 was 2.6 minutes.

27. The average hold time improved by 61 percent from FY 2018 to FY 2020.

28. DFPS determines the abandonment rate by dividing the total number of calls abandoned by the total number of calls that navigated the phone system's IVR and were placed into queue. Calls abandoned prior to completing the IVR navigation are not included in abandonment numbers as the caller was never required to hold and may have disconnected due to information heard in the IVR process informing the caller of the Internet reporting system.

---

[2] There is a separate hotline for law enforcement and community center, so those prompts are not included in the IVR options.

[See Statewide Intake: Phone Calls by Queue located at http://www.dfps.state.tx.us/About_DFPS/Data_Book/Statewide_Intake/Phone_Calls.asp].

29. Statewide Intake has engaged in a number of efforts to reduce hold times. These efforts include:

    - In June 2017, SWI conducted an internal review of all areas in which inefficiencies could be identified and addressed to improve hold times and decrease abandonment rates. Sixty-five such items were identified and addressed.
    - In Spring 2018, SWI developed a new training curriculum to increase efficiencies in intake staff's interviewing and documenting processes. SWI staff also received additional training in general time management best practices. Training for all staff was completed by April 2019. [*Source Documents: Documentation Lesson Plan, Interviewing Lesson Plan,* uploaded to the Monitors' SharePoint on January 14, 2021].

30. With these efforts, SWI reduced the average hold time for the Abuse Hotline - English Queue from 11.9 minutes in FY 2018 to 7.8 minutes in FY 2019 while reducing the abandonment rate from 34.1% to 22.9% during this same period. During FY 2019, there were a total of 101,000 abandoned calls from the Abuse Hotline - English Queue, down from 159,340 in FY 2018, a 37% reduction. During FY 2020, the number of abandoned calls decreased to 77,863; however, this decrease may be attributed in part to the reduction in intakes due to the COVID-19 pandemic.

31. SWI has continued to better its processes through information technology enhancements, ongoing training, and improved resources for intake supervisors. As a result, the hold time and abandonment rate for FY 2020 decreased further, to 4.6 minutes and 18.5%, respectively. Through the end of November 2020, FY 2021 has a 3.9-minute average hold time and a 18.4% abandonment rate. As noted earlier, these numbers appear reflective of the impact of the COVID-19 pandemic.

32. Data for FY 2019 indicates that on average, abandoned calls dropped 6.7 minutes into the wait time. Data for FY 2020 indicates that, on average, abandoned calls dropped 4.6 minutes into the wait time. Per the data available thus far for FY 2021, on average, abandoned calls drop 3.8 minutes into the wait time. Data for Quarter 1 FY 2021 reflects a similar timeframe during which calls are abandoned. For this three-month timeframe, of the calls that abandoned, 33% were abandoned within five minutes and 50% were abandoned within eight minutes.

33. Based on current staffing levels, DFPS projects that the FY 2021 average hold time will be 5.6 minutes, for FY 2022 6.7 minutes, for FY 2023 7.0 minutes, and for FY 2024 7.3 minutes.

**SWI Information Previously Provided to the Monitors**

34. On October 11, 2019, the Monitors conducted an SWI site visit. That day, DFPS provided the Monitors a September 2019 DFPS SWI Monthly Dashboard and "Getting to Know Statewide Intake" document [*Source Documents: October 2019 Email to Monitors* uploaded to the Monitors' SharePoint on January 14, 2021, *September 2019 DFPS SWI Monthly Dashboard,*

uploaded to the Monitors' SharePoint on January 15, 2021 and *Getting to Know Statewide Intake,* uploaded to the Monitors' SharePoint on January 15, 2021].

35. On October 12, 2019, DFPS provided several SWI training guidelines to the Monitors. [*Source Documents: APS In Home Intake Guidelines; APS Provider Investigations- Facility Intake Guidelines; APS Provider Investigations- Provider Intake Guidelines; CPS Intake Guidelines; DCL Intake Guidelines; I&R and CSCR Types and Requirements; and RCCL Intake Guidelines,* uploaded to Monitors' SharePoint on October 12, 2019].

36. On November 13-15, 2019, DFPS provided information responsive to the Monitors questions concerning Information & Referrals (I&Rs). [*Source Document: November 2019 Email to Monitors,* uploaded to the Monitors' SharePoint on January 14, 2021].

37. On November 14, 2019, DFPS provided several SWI recordings to the Monitors. [*Source Documents: Forty-three .wav audio recording files*, uploaded to Monitors' SharePoint on November 14, 2019].

38. On December 16, 2019, DFPS provided the Verint User Guide for Supervisors. [*Source Documents: December 2019 Email to Monitors,* uploaded to the Monitors' SharePoint on January 14, 2021 and *Verint User Guide,* uploaded to the Monitors' SharePoint on January 15, 2021].

39. On December 27, 2019, DFPS provided several SWI recordings to the Monitors. [*Source Document: Fifty-five .wav audio recording files,* uploaded to the Monitors' SharePoint on December 27, 2019].

40. On February 6, 2020, DFPS provided responses to questions the monitors raised concerning the SWI screening process. [*Source Document: February 2020 Email to Monitors,* uploaded to the Monitors' SharePoint on January 14, 2021].

41. Since February 26, 2020, DFPS has provided the Monitors with daily reports of all SWI hotline calls made each day and for each call, corresponding call times, wait times, dropped calls, and unanswered calls. Following the Court's guidance on March 7, 2020, as discussed in paragraph 42 herein, DFPS bundles and provides these daily call reports to the Monitors via SharePoint upload on a weekly basis and confirms this upload via a weekly email alert to the Monitors. [*Source Documents*: *February 26, 2020 Email to Monitors re Daily SWI Call Reports* and *January 2021 Email to Monitors re Statewide Intake Daily Call Report* (as an exemplar of DFPS' weekly email alerts to the Monitors), uploaded to the Monitors' SharePoint on January 14, 2021].

42. On March 7, 2020, the Monitors informed DFPS that the Court is amenable to DFPS providing the daily SWI call reports on an aggregated, weekly basis, following DFPS' request for the Court's guidance, through the Monitors, on February 28 and March 6, 2020. [*Source Document: March 2020 Email to Monitors re Daily SWI Call Report Cadence,* uploaded to the Monitors' SharePoint on January 14, 2021].

43. On March 10, 2020, DFPS provided responses to questions the Monitors raised during their screening validation work. [*Source Document: March 2020 Email to Monitors re Screening Review Question,* uploaded to the Monitors' SharePoint on January 15, 2021].

44. On March 24, 2020, DFPS provided SWI RCCI intake guidelines to the Monitors. [*Source Document: RCCI Intake Guidelines*, uploaded to the Monitors' SharePoint on March 24, 2020].

45. On March 30, 2020, DFPS provided responses to several questions the Monitors raised on March 13, 2020 requesting detailed information concerning SWI and CCI screeners, the SWI staffing plan to handle peak call times, the quality assurance process to review screening decisions, and SWI call center data. [*Source Documents: March 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 15, 2021 and *SWI Abuse Hotline Call Flow and DFPS Response to March 2020 Monitor Information Request,* uploaded to the Monitors' SharePoint on January 14, 2021].

46. On October 28, 2020, DFPS provided the Monitors with a Statewide Intake CCI Screener Training Design Document and Statewide Intake Organizational Chart. [*Source Document: October 2020 Email to Monitors,* uploaded to the Monitors' SharePoint on January 14, 2021, and *SWI CCI Screener Training Design Document* and *Statewide Intake Organizational Chart*, uploaded to the Monitors' SharePoint on January 15, 2021].

47. DFPS has worked deliberately and in good faith to comply with Remedial Order No. 3 and certifies compliance with the components of Remedial Order No. 3 discussed herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2021.

_____
STEPHEN BLACK
Associate Commissioner for Statewide Intake