**Exhibit C**



IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § | |
| Defendants. | § § | |

## SWORN DECLARATION FOR REMEDIAL ORDER NOS. 25, 26, 27, 29 AND 31

1. My name is Carol Self. I am over the age of 18 years, of sound mind, competent to testify, and have personal knowledge of the facts stated herein.

2. I am employed as the Director of Permanency with the Department of Family and Protective Services (DFPS) and have served in this capacity since 2018. I have been employed with DFPS for 22 years. I have held positions in the region as a conservatorship caseworker, legal liaison, supervisor, and program director. I moved to the state office division in 2011, serving as the lead permanency program specialist, division administrator, and now as the director.

3. In December 2016, following the trial in this case but before the Remedial Orders that are now in effect were issued, the Placement Summary form was updated to include information concerning child sexual aggression and sexual behavior problems. The Placement Summary form provides new caregivers at initial placement information about the child, and for any subsequent placements, the form transfers information from one caregiver to another to enhance continuity of care for the child. [*Source Document:* Exhibit D-2 *(Placement Summary Form K.908.2279 Revised December 2016)*, admitted in September 3, 2020 Show Cause Hearing].

4. On April 14, 2019, DFPS implemented the Application for Placement, which replaced the Common Application. The Application for Placement is a child-centered, strengths-based, and trauma-informed tool that provides the prospective placement with information necessary to determine how the child or youth might adjust to, and be successful in, the placement, and enables caregivers to determine if they can support the child or youth. The

Application for Placement is prefilled with information from the IMPACT Child Sexual Aggression page that deployed on April 14, 2019. A broadcast email and User Guide were provided to staff, detailing the changes. [*Source Documents:* Exhibit D-5 *(April 2019 Broadcast Email re IMPACT 2.0 Application for Placement)*; Exhibit D-6 *(Application for Placement User Guide)*, admitted in September 3, 2020 Show Cause Hearing].

5. In August 2019, DFPS created a Child Protective Services (CPS) conservatorship (CVS) Quality Assurance (QA) Team comprised of case readers to conduct quarterly child sexual history case reviews of a sample of approximately 300 case records to ensure:

- any sexual victimization or sexual aggression history was appropriately documented in the child's case record, Application for Placement, and Placement Summary form;
- the child's history was communicated to the caregiver at the time of placement (i.e., the caregiver received the Placement Summary form and, once deployed in December 2019, the Sexual History Report (Attachment A), which contains information documented on the child's Sexual Victimization History, Child Sexual Aggression and Trafficking pages in IMPACT 2.0); and
- the caregiver was notified of any new incidents of sexual victimization or sexual aggression.

6. On August 8, 2019, the Placement Summary form was updated to include a child's sexual victimization history. Single Source Continuum Contractors (SSCC, which are entities DFPS contracts with for Community-Based Care) likewise updated their policies and procedures and have either adopted the DFPS Placement Summary form or created a separate form to be used by the SSCC. [*Source Documents:* Exhibit D-8 *(Placement Summary Form K.908.2279 Revised December 2019)*, admitted in September 3, 2020 Show Cause Hearing, *2Ingage Region 02 Placement Change, OCOK-Placement Summary Form, and Family Tapestry Child Placement Information Form* uploaded to the Monitors' SharePoint on January 15, 2021].

7. On September 3, 2019, CPS Handbook Section 6241.11 was updated to require CPS and SSCCs to follow procedures in the Child Sexual Aggression (CSA) Resource Guide and specify that SSCCs are contractually responsible for ensuring caregivers are aware of a child's history of sexual aggression, sexual behavior problems, or sexual victimization. Also on this day, a Spanish version of the updated Placement Summary form was posted to the DFPS intranet. [*Source Document:* Exhibit D-10 *(CPS Handbook Section 6241.11 September 2019)*, admitted in September 3, 2020 Show Cause Hearing].

8. On October 18, 2019, a case read tool was developed for the CPS CVS QA Team to evaluate whether the Placement Summary form and, once deployed in December 2019, Attachment A and Application for Placement contained complete information about the child's history, and whether the child's caregiver(s) received the Placement Summary form (and later, the Attachment A) at the time of placement.

9. On November 1, 2019, DFPS staff provided the Monitors with a list of children who had been in PMC during Quarter 4 (Q4) fiscal year (FY) 2019 (June-August 2019) ("PMC

listing report"). Since that time, the PMC listing report has been provided to the Monitors on a regular basis (quarterly through August 2020 and monthly thereafter). Where indicated, the PMC listing report includes a sexual victimization, sexual aggression, and/or sexual behavior problem indicator. [*Source Document: Cover Emails to Monitors Accompanying Recurring Reports Nov 2019 – Dec 2020* uploaded to the Monitors' SharePoint on January 13, 2021].

10. On November 2, 2019, CPS state office staff were temporarily diverted from their existing job responsibilities to begin conducting child sexual history case read reviews until the CPS CVS QA Team could be fully staffed and trained.

11. In response to the Court's Order on November 5, 2019, DFPS made extraordinary efforts from November 5-8, 2019, to notify caregivers of all children and youth in PMC with confirmed histories of sexual victimization and/or sexual aggression and verify to the Monitors that each caregiver had been notified. These efforts, which are described in more detail in the following paragraphs, included deploying caseworkers throughout the state to make telephone calls, follow up with written correspondence, and, in some cases, conduct in-person visits.

12. From the PMC listing report provided to the Monitors on November 1, 2019, on November 5, 2019, DFPS identified 1,190 children who were in PMC at the end of Q4 (August 31, 2019) and identified their current caseworker and placement. The corresponding Data Dictionary (also provided to the Monitors on November 1, 2019) noted that the child's sexual victimization indicator is based on whether the child had a confirmed sexual abuse allegation or a confirmed sex trafficking allegation in a Child Protective Investigation (CPI) investigation in IMPACT or a confirmed sexual abuse allegation in a Residential Child Care Investigation (RCCI) investigation in IMPACT. The Data Dictionary likewise noted that the child's sexual aggression and child sexual behavior problem indicator is based on whether the child has an open Child Sexual Aggression or Child Sexual Behavior Problem status in IMPACT. [*Source Document:* Exhibit D-13 *(11.05.19 Email from DDS to CPS with Lists),* admitted in September 3, 2020 Show Cause Hearing].

13. To ensure all caregivers were notified, DFPS identified an additional 24 children in PMC as of November 6, 2019, who either had a new sexual behavior or aggression incident after August 31, 2019, or who had a prior incident and who entered PMC after August 31, 2019.

14. On November 6, 2019, three planning teleconferences were held with CPS regional directors, and CPS staff sent a list of all children and youth in PMC with confirmed histories of sexual victimization and/or sexual aggression within that region to each regional director with instructions concerning who to notify and what information to provide. The instructions noted: "[i]f the child is placed in a general residential operation, such as an RTC or shelter, contact the case manager for the child. If the case manager is not available (due to being on leave), contact the child care administrator for the operation." A copy of CPS' email to the regional directors was shared with the Monitors

on November 8, 2019. [*Source Documents:* Exhibit D-16 *(11.6.19 Message to Regional Directors)* and Exhibit D-17 *(11.8.19 Email to Monitors),* admitted in September 3, 2020 Show Cause Hearing].

15. CPS leadership determined the most appropriate communication method would be a telephone call during which caregivers could ask questions and/or provide feedback or concerns. To ensure that key topics were uniformly addressed, CPS provided the regional directors with a call script for caseworkers. A copy of the call script was shared with the Monitors on November 8, 2019. [*Source Document:* Exhibit D-17 *(11.8.19 Email to Monitors),* admitted in September 3, 2020 Show Cause Hearing].

16. Over the course of Thursday, November 7, 2019, caseworkers made phone calls and documented in real time on a spreadsheet all contacts to caregivers. Pursuant to CPS regular documentation policy, caseworkers documented the contact and communication in IMPACT within seven days of the date of contact.

17. By the end of day on November 7, 2019, DFPS staff emailed any caregivers unable to be reached by phone concerning the urgent need to discuss victimization or aggression history. CPS leadership determined it would not be appropriate to simply list the full history in an email and again made the focus of the communication the need for a phone call prior to outlining the history in writing. The regional spreadsheets were updated in real time as additional calls took place, and IMPACT was updated within seven days, as required by policy. [*Source Document:* Exhibit D-20 *(11.7.19 Email to Caregivers),* admitted in September 3, 2020 Show Cause Hearing].

18. For caregivers CPS was unable to reach by phone or email between Tuesday, November 5, and Friday, November 8, staff prioritized in-person visits with those families during the week of November 11, 2019.

19. In addition to the caregiver phone calls and emails, DFPS staff emailed all Licensed Child Care Administrators / Licensed Child-Placing Agency Administrators to ensure they were aware of the conversations with caregivers and underlying child histories.

20. Finally, because DFPS wanted to provide kinship caregivers with a written confirmation of the conversation to retain and review as needed, DFPS followed up via mailed letters.

21. On November 8, 2019, DFPS informed the Monitors that CPS was presently making the notifications to caregivers, and that under certain circumstances, a phone call would not be warranted or appropriate, including if the child or youth was:
    - on runaway with no assigned caregiver;
    - adopted, with cases legally resolved but pending closure in IMPACT (adoptive placements are notified of children's histories via the adoptive placement agreement);
    - participating in Trial Independence and no longer under DFPS conservatorship;
    - residing in a college dorm through the Extended Foster Care Supervised Independent Living (SIL) program;

- placed in adult jail (due to the potential for criminal incrimination from notification);
- returned home—in this instance, DFPS staff reviewed each reunification case to determine if the sole victimization was the original reason for removal and parent necessarily aware of that as a result, and to determine the appropriate action;
- a teen parent and in a court-ordered placement with the baby's father; or
- ordered to be returned to the caregiver who was the perpetrator of the sexual victimization.

DFPS staff asked the Monitors to respond as soon as possible if they disagreed on any of the exceptions DFPS made. Court Monitor Kevin Ryan responded by offering to forward this information to the Court, as the Court would need to determine the appropriateness of these exceptions, to which DFPS staff agreed. [*Source Document:*  Exhibit D-21 (*11.08.19 Email to Monitors*), admitted in September 3, 2020 Show Cause Hearing]. DFPS staff have since reevaluated the exceptions and confirmed that for a majority of them, the child/youth's case was actually dismissed prior to November 8, 2019. All remaining exceptions involved children/youth on runaway, in unauthorized placements, in DFPS supervision, in a Texas Juvenile Justice Department (TJJD) facility, or in one case, deceased. Of the seven children remaining in DFPS conservatorship as of January 2020, five have a signed Attachment A in their current placement case file (including one in a TJJD facility) and two remain on runaway.

22. On November 8, 2019, in accordance with the Court's Amended Order filed on November 6, 2019, DFPS staff emailed the Monitors a complete list of identified PMC children with sexual aggression and identified PMC children who had been sexually abused, with a corresponding list of each assigned caregiver. Further, DFPS verified to the Monitors that each caregiver had been notified of the child's status, with the caveat that in some situations, there was either not an assigned caregiver or it would be potentially detrimental to notify the caregiver. [*Source Document:*  Exhibit D-22 (*11.08.19 Email to Monitors with Complete List and Certification*), admitted in September 3, 2020 Show Cause Hearing].

23. On November 8, 2019, Court Monitor Kevin Ryan emailed DFPS staff and requested the following:
   - Resend a complete list of identified sexually aggressive PMC children and identified sexually abused PMC children with encryption and separately send the code;
   - Provide instructions for the Court and Monitors as to what each heading in the chart meant;
   - Clarify whether DFPS listed to whom specifically the notification was made; and
   - Clarify whether DFPS distinguished in the chart abused children and children identified with aggressive behavior.

24. On November 11, 2019, DFPS staff provided the Monitors with information responsive to their November 8 request, including the source code for the data report. DFPS was not aware of any concerns the Monitors had regarding children with sexual characteristic flags not appearing on the caregiver notification list until there was mention of it in the Monitors' draft report provided in June 2020. [*Source Document:* Exhibit D-23 (*11.11.19 Email to Monitors with Source Code*), admitted in September 3, 2020 Show Cause Hearing].

25. On November 11, 2019, Court Monitor Deborah Fowler emailed DFPS staff, asking whether it would be possible to compile the caregivers notified from the individual spreadsheets DFPS had previously mentioned, as the Court specifically asked the Monitors about the list of caregivers notified. On November 13, 2019, DFPS staff provided this information. [*Source Document:* Exhibit D-24 (*11.13.19 Email to Monitors with Regional Spreadsheets*), admitted in September 3, 2020 Show Cause Hearing].

26. On November 21, 2019, DFPS sent a broadcast email to staff informing them of the upcoming IMPACT changes and training opportunities related to the new sexual victimization page, definitions of confirmed and unconfirmed sexual abuse, and the IMPACT-generated summary of the child sexual history report. According to the broadcast email, "Attachment A must be printed and provided (along with the Placement Summary form 2279) to all caregivers at the time of placement to ensure they are aware of a child's history of sexual victimization or aggression. Both the caseworker and caregiver will need to acknowledge and sign that Attachment A was provided to, and reviewed with, the caregiver…Note: The signed Placement Summary form (2279) and Attachment A must be uploaded to OneCase." Attachment A searches for and captures information documented in the Sexual Victimization History page, Child Sexual Aggression page and Trafficking page. [*Source Document:* Exhibit D-25 (*November 2019 Broadcast Email*), admitted in September 3, 2020 Show Cause Hearing]. Now that this practice is established, DFPS is exploring additional opportunities to provide more information to caregivers while balancing legal implications of sharing alleged perpetrator information and violating confidentiality.

27. On December 19, 2019, numerous IMPACT enhancements deployed, including:
   - creating a new Sexual Victimization History IMPACT page;
   - auto-populating Application for Placement and Attachment A, Sexual History Report, which is included with the Placement Summary form, with information from the Child Sexual Aggression, Sexual Victimization History, and Human Trafficking IMPACT pages; and
   - the ability to document on the Placement Information page the date the child's caregiver was provided Attachment A.

28. Also on December 19, 2019, DFPS sent a broadcast email to staff concerning the newly deployed IMPACT functionality and corresponding training dates. According to the broadcast email, "[a] Child Sexual History report entitled "Attachment A," when generated, searches for and compiles all documented sex trafficking information from the Human Trafficking page, information from the Child Sexual Aggression (CSA) page, and

information from the Sexual Victimization History (SVH) page. The report is launched from the Case Summary page or Placement page in IMPACT. Attachment A must be printed and provided (along with the Placement Summary form 2279) to all caregivers at the time of placement to ensure they are aware of a child's history of sexual victimization or aggression. Both the caseworker and caregiver must acknowledge and sign that Attachment A was provided to, and reviewed with, the caregiver. **Note**: The signed Placement Summary form (2279) and Attachment A must be uploaded to OneCase." [*Source Document:* Exhibit D-26 (*December 2019 Broadcast Email*), admitted in September 3, 2020 Show Cause Hearing].

29. The December 19, 2019 broadcast email included a job aid that was also posted to the DFPS Intranet. As noted in the job aid, "[t]he Sexual Victimization Page will populate certain information from the page into the child's Application for Placement and newly created Sexual History Report Attachment A...**IMPORTANT: The Child Sexual History Report Attachment A form must be reviewed with the caregiver and signed by the caseworker and caregiver at each placement.**" [*Source Document:* Exhibit D-27 (*IMPACT 2.0 Child Victimization History Job Aid*), admitted in September 3, 2020 Show Cause Hearing].

30. Between December 2019 and October 2020, DFPS provided 29 interactive webinar training opportunities on these IMPACT changes for staff; 7,456 participants, including 6,107 unique/unduplicated participants, have attended these webinars.

31. Also on December 19, 2019, the CPS CVS QA Team modified the case read tool to account for the new IMPACT 2.0 functionality. Compliance with documentation and caregiver notification requirements is tracked via quarterly case reads. Case read samples include cases in which a placement change occurred during the previous month and the child was (a) indicated as having sexual aggression, (b) given a reason to believe (RTB) finding for sexual abuse or sex trafficking as a victim or alleged perpetrator, or (c) given a removal reason of sexual abuse or sex trafficking risk. The case read reviews the following:

   - Did the child's caregiver receive the Placement Summary form 2279 and the Sexual History Report (Attachment A) at the time of placement?
   - Did the 2279 and the Sexual History Report (Attachment A) contain all, some, or none of the child's history of sexual victimization and sexual aggression?
   - Did the Application for Placement contain all, some, or none of the child's history of sexual victimization and sexual aggression?

Prior to January 2021, if the CPS CVS QA specialist determined insufficient information is documented or the team could not verify that a caregiver was aware of the child's history, the QA specialist would work with the caseworker to update the child's case file documentation and participate in a joint teleconference with the caregiver to ensure the caregiver is aware of the child's history. Case review results are provided to the regional directors and CPS CVS program administrators for ongoing staff development on policy and practice. Beginning with the case read sample pulled in January 2021, if the CPS CVS QA team determines through their case review that a caregiver did not receive the

Attachment A at placement, or was notified verbally or through other means of the child's history, the CPS CVS QA team will ensure that a new Attachment A is provided to the caregiver, that all required signatures are obtained, and that the signed document is uploaded into IMPACT through OneCase.

32. Between December 2019 and February 2020, in an effort to more accurately capture the strengths and gaps in caseworker practice documenting and notifying caregivers of a child's sexual history, the CPS CVS QA team made a number of additional revisions to the child sexual history case read tool, including adding questions to capture:

- Was the caregiver notified of the child's sexual victimization history, sexual aggression history, or behavior problems through means other than the Placement Summary Form 2279? If yes, how/when was the caregiver notified?
- Was there a confirmed incident of sexual victimization, sexual aggression, or sexual behavior problem that occurred after the start of the most recent placement? If yes, was the caregiver notified, how, and when?
- Did the CVS Program Administrator document the victim's name and a description of the behavior as part of the rationale for the indicator in the Person detail page (CSA tab) in IMPACT for the child with sexual aggression?
- For placements made after December 19, 2019, the case read tool was modified to ask questions to reflect the newly implemented Sexual Victimization Page in IMPACT and the Attachment A.

33. On January 2, 2020, in an effort to ensure past incidents of confirmed sexual victimization were captured on the new Sexual Victimization History (SVH) IMPACT page, CPS staff were directed to review the SVH page for almost 4,000 cases in which a principal child was listed as a confirmed victim of sexual abuse or sex trafficking and modify the child's case record, as appropriate. CPS staff manually entered information into the new SVH page that was previously contained in the Special Handling box, to ensure children's histories were comprehensively documented within the new IMPACT page and that those children would be included in any future data reports. [*Source Document:* Exhibit D-29 *(Instructions re Sexual Victimization History Required IMPACT Actions)*, admitted in September 3, 2020 Show Cause Hearing].

34. Also on January 2, 2020, DFPS staff provided the Monitors the IMPACT Child Victimization History Job Aid workers received concerning the IMPACT changes and a PowerPoint presentation. [*Source Document:* Exhibit D-27 *(IMPACT 2.0 Child Victimization History Job Aid)*, admitted in September 3, 2020 Show Cause Hearing].

35. On February 3, 2020, DFPS staff provided the Monitors the Quarter 1 Federal Fiscal Year 2020 (Q1 FFY 2020) Child Sexual History Case Read Report (October-November 2019 Reviews). As noted in the report, 231 PMC cases were reviewed during this period. Case files were reviewed to determine whether a child's sexual victimization history and/or sexual aggression history was contained in the Application for Placement; whether the Placement Summary form was provided to the caregiver; and whether the form contained all information concerning the child's sexual victimization, sexual behavior problem, and/or aggression history. As noted in the report:

- In 69% of applicable cases (i.e., children having a sexual victimization history), the Application for Placement contained all known information concerning the child's sexual victimization history, and in 83% of applicable cases, the Application for Placement contained some or all known information.
- In 86% of applicable cases, the Application for Placement contained all known information concerning the child's history of being sexually aggressive or having a sexual behavior problem, and in 94% of applicable cases, the Application for Placement contained some or all known information.
- In 95% of applicable cases, the caregiver was notified of the child's sexual victimization history, either through provision of the Placement Summary form (or SSCC equivalent) or through other means (e.g., confirmed through review of documentation signed by caregiver, review of case record which noted caregiver received this information, caregiver notified verbally at time of placement).
- In 57% of applicable cases, when the Placement Summary form was provided to the caregiver at the time of placement, it contained all known information concerning the child's sexual victimization history, and in 80% of applicable cases, the Placement Summary form contained some or all known information.
- In 88% of applicable cases, the caregiver was notified of the child's history of sexual aggression or sexual behavior problem, either through the provision of the Placement Summary form (or SSCC equivalent), or through other means.
- In 59% of applicable cases, when the Placement Summary form was provided to the caregiver at the time of placement, it contained all known information concerning the child's history of being sexually aggressive or having a sexual behavior problem, and in 73% of applicable cases, the Placement Summary form contained some or all known information.
- Recognizing there is room for improvement to ensure caregivers receive all necessary information at the time of placement, CPS CVS QA Specialists have conducted one-on-one technical assistance with caseworkers to ensure they fully document, and notify caregivers of, children's histories. Until recently, as discussed in paragraph 31 herein, when it was determined that the caregiver was not provided information, the QA specialist worked with the caseworker and supervisor to contact the caregiver directly through joint calls or works with the program to ensure the caregiver is provided the child's history. As of January 2021, if the CPS CVS QA team determines through their case review that a caregiver did not receive the Attachment A at placement, or was notified verbally or through other means of the child's history, the CPS CVS QA team will ensure that a new Attachment A is provided to the caregiver, that all required signatures are obtained, and that the signed document is uploaded into IMPACT through One Case. [*Source Document:  Exhibit D-31 (RO24.31 Sexual History Case Read Report Q1 FY 2020)*, admitted in September 3, 2020 Show Cause Hearing].

36. On February 10, 2020, DFPS sent a broadcast email to staff reminding them of the recent IMPACT 2.0 enhancements and encouraging them to attend any of a series of February

2020 webinars to demonstrate the new Sexual Victimization History IMPACT page, Attachment A, and the corresponding updates to the Application for Placement. These webinars were held on February 13, 20, and 24, 2020. [*Source Document:* Exhibit D-32 *(February 2020 Broadcast Email)*, admitted in September 3, 2020 Show Cause Hearing].

37. Between March 2020 and May 2020, in an effort to more accurately capture the strengths and gaps in caseworker practice documenting and notifying caregivers of a child's sexual history, the CPS CVS QA team made additional revisions to the child sexual history case read tool by adding questions specific to a child's sexual behavior problem(s):

- After review of the case file, does the case file information indicate that the child has a history of having a sexual behavior problem? If the child has a history of sexual behavior problems, was the information captured in the application for placement and the placement summary form?
- If a sexual behavior problem is identified, a question was added to determine if services and/or supports were provided to the caregiver and/or child to address the needs of the child.

38. On April 7, 15, and 28, 2020, an open Question and Answer (Q&A) session was held for DFPS and SSCC staff to call in and ask questions related to documenting child sexual victimization or aggression and to see demonstrations of how to document the information on the appropriate Person Characteristic IMPACT page. [*Source Document:* Exhibit D-33 *(March 2020 Broadcast Email)*, admitted in September 3, 2020 Show Cause Hearing].

39. On May 1, 2020, DFPS staff provided the Monitors the Q2 FFY 2020 Child Sexual History Case Read Report (December 2019 – February 2020). As noted in the report, 399 PMC cases were reviewed during this period. To ensure children with sexual aggression histories were appropriately designated in IMPACT, the CPS CVS QA Team added a new question to the case read tool to measure whether for children having sexual aggression histories the CSA page was marked in IMPACT. As further noted in the report:

- In 88% of applicable cases (i.e., children having a sexual victimization history), the Application for Placement contained all known information concerning the child's sexual victimization history, and in 97% of applicable cases, the Application for Placement contained some or all known information.
- In 86% of applicable cases, the Application for Placement contained all known information concerning the child's history of being sexually aggressive or having a sexual behavior problem, and in 96% of applicable cases, the Application for Placement contained some or all known information.
- In 94% of applicable cases, the caregiver was notified of the child's sexual victimization history, either through provision of the Placement Summary form (or SSCC equivalent) or through other means (e.g., confirmed through review of documentation signed by caregiver, review of case record which noted caregiver received this information, caregiver notified verbally at time of placement).

- In 77% of applicable cases, when the Placement Summary form was provided to the caregiver at placement, it contained all known information concerning the child's sexual victimization history, and in 95% of applicable cases, the Placement Summary form contained some or all known information.
- In 91% of applicable cases, the caregiver was notified of the child's history of sexual aggression or sexual behavior problem, either through the provision of the Placement Summary form (or SSCC equivalent) or through other means.
- In 86% of applicable cases, when the Placement Summary form was provided to the caregiver at placement, it contained all known information concerning the child's history of being sexually aggressive or having a sexual behavior problem, and in 96% of applicable cases, the Placement Summary form contained some or all known information.
- While improvement was seen in many areas, case read results indicate there is still room for further improvement to ensure caregivers receive all necessary information at the time of placement. The CPS CVS QA specialists continue to conduct one-on-one technical assistance with caseworkers, as appropriate, to notify them when the child's history is not fully updated in the Application for Placement or Placement Summary form and Attachment A, and to assist caseworkers with updating the forms and ensuring that the caregiver is notified of the child's history. Until recently, as discussed in paragraph 31 herein, if it was determined that the caregiver was not provided information, the QA specialist worked with the caseworker and supervisor to contact the caregiver directly through joint calls or worked with the program to ensure that the caregiver was provided the child's history. As of January 2021, if the CPS CVS QA team determines through their case review that a caregiver did not receive the Attachment A at placement, or was notified verbally or through other means of the child's history, the CPS CVS QA team will ensure that a new Attachment A is provided to the caregiver, that all required signatures are obtained, and that the signed document is uploaded into IMPACT through One Case. To further advance casework practice, the CVS QA team has also offered additional webinars for staff to participate in additional testing demonstrations concerning the new IMPACT pages for Sexual Victimization History and Attachment A, as well as giving staff the opportunity to ask case-specific questions. The policy and process of ensuring that sexual victimization and aggression history is documented and provided to caregivers, as well as needed opportunities for improved practice, are reviewed with the CPS CVS program administrators each month, and caseworkers were subsequently provided with written resources with tips for improved documentation and step-by-step instructions for uploading placement forms into OneCase. [*Source Document:* Exhibit D-34 *(RO24-31 Sexual History Case Read Report Q2 FY 2020)*, admitted in September 3, 2020 Show Cause Hearing].

40. Also on May 1, 2020, DFPS provided the Monitors the case read tool corresponding with the Q2 FFY 2020 Child Sexual History Case Read report. Since that time, DFPS has provided the Monitors the case read tool corresponding with each quarterly case read

report. [*Source Document: May 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021].

41. On May 6, 2020, DFPS and HHSC staff participated in a teleconference with members of the monitoring team to discuss the Sexual Victimization History IMPACT page and designations, including:
    - RTB Sexual Abuse finding by DFPS CPI or RCCI, even if the perpetrator is unknown;
    - Designation as a confirmed sex trafficking victim, per the Human Trafficking Page in IMPACT;
    - Confirmed by DFPS as a victim of Child Sexual Aggression;
    - Criminal conviction for a charge related to sexual abuse of a child;
    - Information from another state welfare system: confirmed allegation (equivalent of a RTB); and
    - RCCL Standards Investigations in which victimization is substantiated.

42. Also on May 6, 2020, DFPS staff provided the Monitors a December 2019 broadcast email to CPS and CPI staff concerning IMPACT 2.0 changes, including the new Sexual Victimization History IMPACT page, and corresponding PowerPoint presentation. In addition, DFPS staff provided a link to the CSA Resource Guide available on the DFPS public website. [*Source Documents:* Exhibit D-35 *(May 6, 2020 Email to Monitors)*, Exhibit D-26 *(December 2019 Broadcast Email)*, and Exhibit D-27 *(IMPACT 2.0 Child Victimization History Job Aid)*, admitted in September 3, 2020 Show Cause Hearing].

43. On May 14, 2020, DFPS staff emailed Court Monitor Deborah Fowler several materials, including:
    - the email from DFPS staff to a member of the monitoring team on May 6, 2020;
    - a summary of the training and technical assistance CVS program administrators receive from CPS CVS QA staff, including monthly technical assistance calls, webinars, and trainings concerning sexual history documentation in IMPACT; and
    - information provided to then-Special Masters Kevin Ryan and Francis McGovern on March 24, 2017, in response to their inquiries concerning children with sexual victimization/aggression histories. [*Source Documents:* Exhibit D-35 *(May 6, 2020 Email to Monitors)*, and Exhibit D-36 *(May 14, 2020 Email to Monitors)*, admitted in September 3, 2020 Show Cause Hearing].

44. Between June and August 2020, in an effort to more accurately capture the strengths and gaps in caseworker practice documenting and notifying caregivers of a child's sexual history, the CPS CVS QA team began reading case files to determine whether the caseworker documented the date the Attachment A was provided to the caregiver on the Placement page in IMPACT.

45. On June 23, 2020, DFPS hosted a 90-minute refresher webinar training and live testing for CPS and CPI staff to call in and ask questions about documenting sexual victimization

history in IMPACT and see live testing of the new pages. The webinar included a Top Ten tip sheet on improving sexual victimization documentation, as well as the IMPACT 2.0 Child Victimization History Job Aid. Due to the positive feedback received, these refresher trainings and open Q&A sessions are scheduled to occur every other month on an ongoing basis. [*Source Documents:* Exhibit D-41 *(June 2020 CPS Meeting in a Box Memo)*, Exhibit D-42 *(Top Ten Tip Sheet on Improving Sexual Victimization Documentation June 2020)*, and Exhibit D-27 *(IMPACT 2.0 Child Victimization History Job Aid)*, admitted in September 3, 2020 Show Cause Hearing].

46. On July 15, 2020, the PMC listing report provided to the Monitors, which is discussed in paragraph 9 herein, was updated to include the date the Attachment A was provided to the child's caregiver, as documented on the IMPACT Placement page. [*Source Document: Cover Email to Monitors July 2020* uploaded to the Monitors' SharePoint on January 13, 2021].

47. Also on July 15, 2020, CPS Handbook Section 6241.11 was updated to require caseworkers to document sexually aggressive behaviors and sexual victimization histories in the IMPACT CSA and Sexual Victimization History IMPACT pages, Placement Summary form, Child Sexual History Report Attachment A, and placement detail page. In addition, the caseworker must notify *all* caregivers—both new caregivers at initial placement and upon placement change and ongoing caregivers if the child's placement has not changed. The caseworker must notify all caregivers of new information involving child sexual aggression or sexual victimization by:
    - updating the relevant IMPACT page;
    - launching a new Child Sexual History Report Attachment A;
    - reviewing the Attachment A with the caregiver;
    - obtaining the caregiver's signature;
    - uploading a signed copy into OneCase; and
    - documenting in a contact that the information was provided to the caregiver. [*Source Document:* Exhibit D-43 *(CPS Handbook Section 6241.11 July 2020)*, admitted in September 3, 2020 Show Cause Hearing].

48. On the same day, the CSA Resource Guide was updated to reflect the IMPACT 2.0 enhancements and changes to CPS Handbook Section 6241.11. [*Source Document:* Exhibit D-43 *(CPS Handbook Section 6241.11 July 2020)*, admitted in September 3, 2020 Show Cause Hearing].

49. On July 24, 2020, DFPS notified the Monitors of the July 15, 2020 CPS Handbook and CSA Resource Guide updates. [*Source Document: July 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021].

50. On August 3, 2020, DFPS staff provided the Monitors the Q3 FFY 2020 Child Sexual History Case Read Report (March – May 2020). As noted in the report, 403 PMC cases were reviewed during this period. Also noted in the report:

- In 86% of applicable cases (i.e., children having a sexual victimization history), the Application for Placement contained all known information concerning the child's sexual victimization history, and in 96% of applicable cases, the Application for Placement contained some or all known information.
- In 90% of applicable cases, the Application for Placement included all known information concerning the child's history of being sexually aggressive, and in 100% of applicable cases, the Application for Placement included some or all known information.
- In 88% of applicable cases, the Application for Placement included all known information concerning the child's sexual behavior problem, and in 99% of applicable cases, the Application for Placement included some or all known information.
- In 93% of applicable cases, the caregiver was notified of the child's sexual victimization history, either through provision of the Placement Summary form (or SSCC equivalent) and Attachment A, or through other means (e.g., caregiver received Attachment A, which contained all sexual victimization history, but did not receive Placement Summary form; confirmed through review of documentation signed by caregiver or review of case record which noted caregiver received this information; caregiver notified verbally at time of placement).
- In 95% of applicable cases, when the Attachment A was provided to the caregiver, it contained all known information concerning the child's sexual victimization history, and in 100% of applicable cases, the Attachment A the caregiver received contained some or all known information.
- In 93% of applicable cases, the caregiver was notified of the child's history of sexual aggression, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means.
- In 98% of applicable cases, when the Attachment A was provided to the caregiver, it contained all known information concerning the child's sexual aggression history, and in 100% of applicable cases, the Attachment A the caregiver received contained some or all known information.
- In 88% of applicable cases, the caregiver was notified of the child's sexual behavior problem, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means.
- In 100% of applicable cases, children identified as sexually aggressive were appropriately designated in IMPACT.
- The CPS CVS QA specialists continue to conduct one-on-one technical assistance with caseworkers, as appropriate, to assist caseworkers with documentation and ensuring caregivers are notified of the child's history. Until recently, as discussed in paragraph 31 herein, if it was determined that the caregiver was not provided information, the QA specialist worked with the caseworker and supervisor to contact the caregiver directly through joint calls or worked with the program to ensure the caregiver was provided the child's history. As of January 2021, if the CPS CVS QA team determines through their case review that a caregiver did not receive the Attachment A at placement, or was notified verbally or through other means of the child's history, the CPS

CVS QA team will ensure that a new Attachment A is provided to the caregiver, that all required signatures are obtained, and that the signed document is uploaded into IMPACT through One Case.

- The policy and process of ensuring that sexual victimization and aggression history is documented and provided to caregivers, as well as needed opportunities for improved practice, are reviewed with the CPS CVS program administrators each month, and caseworkers have been provided with written resources with tips for improved documentation and step-by-step instructions for uploading placement forms into OneCase. [*Source Document:* Exhibit D-45 *(RO24-31 Sexual History Case Report Q3 FY 2020)*, admitted in September 3, 2020 Show Cause Hearing].

51. In August 2020, DFPS published a Child Victimization Resource Guide designed to provide guidance for ensuring children and youth who have experienced sexual abuse receive quality services that meet their needs. Among other information, this resource guide includes instructions for documenting incidents of sexual abuse. [*Source Document:* Exhibit D-47 *(Working with a Child who has Experienced Sexual Abuse Resource Guide)*, admitted in September 3, 2020 Show Cause Hearing].

52. Between September 28, 2020, and November 8, 2020, DFPS had a number of discussions with the Monitors concerning how DFPS proposed to define a "caregiver" for purposes of ensuring all caregivers are notified of a child's sexual victimization and/or sexual aggression history in accordance with Remedial Orders 25, 27, and 31. Based on the Monitors' feedback, DFPS developed the definitions for "caregiver" and "apprised," as discussed in paragraph 63, herein. [*Source Document: Emails to Monitors re Caregiver Definition* uploaded to the Monitors' SharePoint on January 13, 2021].

53. On October 15, 2020, DFPS staff provided the Monitors the Q4 FFY 2020 (abbreviated) Child Sexual History Case Read Report (June – mid-August 2020) to meet the reporting deadline in accordance with the Court's direction during the September 3, 2020 hearing. As noted in the report, 417 PMC cases were reviewed during this period. Also noted in the report:

- In 93% of applicable cases (i.e., children having a sexual victimization history), the Application for Placement contained all known information concerning the child's sexual victimization history, and in 98% of applicable cases, the Application for Placement contained some or all known information.
- In 83% of applicable cases, the Application for Placement included all known information concerning the child's history of being sexually aggressive, and in 97% of applicable cases, the Application for Placement included some or all known information.
- In 74% of applicable cases, the Application for Placement included all known information concerning the child's sexual behavior problem, and in 92% of applicable cases, the Application for Placement included some or all known information.
- In 97% of applicable cases, the caregiver was notified of the child's sexual victimization history, either through provision of the Placement Summary form

(or SSCC equivalent) and Attachment A or through other means (e.g., confirmed through review of documentation signed by caregiver, review of case record which noted caregiver received this information, or caregiver notified verbally at time of placement).

- In 91% of applicable cases, when the Attachment A was provided to the caregiver, it contained all known information concerning the child's sexual victimization history, and in 98% of applicable cases, the Attachment A the caregiver received contained some or all known information.

- In 98% of applicable cases, the caregiver was notified of the child's history of sexual aggression, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means.

- In 88% of applicable cases, when the Attachment A was provided to the caregiver, it contained all known information concerning the child's sexual aggression history, and in 92% of applicable cases, the Attachment A the caregiver received contained some or all known information.

- In 94% of applicable cases, the caregiver was notified of the child's sexual behavior problem, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means.

- In 87% of applicable cases, children identified as sexually aggressive were appropriately designated in IMPACT.

- The CPS CVS QA specialists continue to conduct one-on-one technical assistance with caseworkers, as appropriate, to notify them when the child's history is not fully updated in the Application for Placement or Placement Summary form and Attachment A, and to assist caseworkers with updating the forms and ensuring that the caregiver is notified of the child's history. Until recently, as discussed in paragraph 31 herein, if it was determined that the caregiver was not provided information, the QA Specialist worked with the caseworker and supervisor to contact the caregiver directly through joint calls or work with the program to ensure the caregiver was provided the child's history. As of January 2021, if the CPS CVS QA team determines through their case review that a caregiver did not receive the Attachment A at placement, or was notified verbally or through other means of the child's history, the CPS CVS QA team will ensure that a new Attachment A is provided to the caregiver, that all required signatures are obtained, and that the signed document is uploaded into IMPACT through One Case.

- The CPS CVS QA Team offered an additional webinar during the review period for staff and external Community Based Care stakeholders to join to see further testing demonstrations regarding the new IMPACT pages for Sexual Victimization History and launching Attachment A, as well as provide staff the opportunity to ask case-specific questions. [*Source Document: RO24-31 Sexual History Case Read Report Q4 FY 2020* uploaded to the Monitors' SharePoint on October 15, 2020.]

54. Also on October 15, 2020, DFPS staff asked the Monitors whether they preferred that DFPS produce the next Child Sexual History Case Read report (covering Q1 FFY 2021 (i.e., September – November 2020)) on January 15, 2021 or on February 1, 2021. Court

Monitor Deborah Fowler responded that she did not have a preference on delivery date. Therefore, to maintain consistency with this report's historical quarterly reporting cycle, DFPS will produce the finalized Q1 FFY 2021 report on February 1, 2021. [*Source Document: October 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021].

55. On November 3, 2020, in response to the Monitors' request that DFPS begin reporting on which PMC children identified as sexual abuse victims were so identified due to an event that occurred after the child came into care, DFPS staff notified the Monitors of challenges refining the data set and ongoing efforts to provide data responsive to the Monitors' request. During subsequent discussions, the Monitors directed DFPS to "please hold this request for the time being" because current data limitations would not yield the desired information. As discussed in paragraph 64 herein, CPS staff are conducting a targeted review to ensure appropriate documentation and caregiver notification of confirmed sexual victimization and/or aggression occurring after the child came into care. Additionally, as discussed in paragraph 32 herein, the child sexual history case read tool was modified between December 2019 and February 2020 to identify within the sample any confirmed incidents occurring after the child came into care and for these, whether/how/when the caregiver was notified. [*Source Documents: November 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021 and *November 2020 Email to Monitors re RO3 Child in Care Request* uploaded to the Monitors' SharePoint on January 13, 2021].

56. On November 25, 2020, CPS and Child Protective Investigations (CPI) leadership provided written guidance to all CPS and CPI staff and SSCC contractors notifying them of a practice change effective December 1, 2020 and clarifying which caregivers or residential operation staff must sign the Placement Summary form and Attachment A, as well as which CPS policies and documents would be modified to accommodate these clarifications. As discussed in paragraph 69 herein, DFPS further refined this practice change and issued corresponding guidance on January 14, 2021. As specified in the November 25, 2020 guidance document:

- For foster homes, all foster parents must review and sign the Placement Summary form and Attachment A.
- For general residential operations (GRO), including emergency shelters and any licensed facility that is not a foster family home, the administrator, intake staff, and case manager must review and sign the Placement Summary form and Attachment A.
- For unverified kinship homes,[1] all adults in the home who have unsupervised access to the child must review and sign the Placement Summary form and

---

[1] An Unverified Kinship Home is one in which the kinship caregiver has not been verified as a foster parent, or otherwise licensed to provide 24-hour residential child care; but has been formally approved by DFPS. A Verified Kinship Home is one in which the kinship caregiver has been verified as a foster parent to provide 24-hour residential care for a child. Accordingly, a "kinship" placement can be either licensed (and within CCI's jurisdiction) or unlicensed (and within CPI's jurisdiction).

Attachment A. [*Source Document: November 2020 Worker Communication re FCL Caregiver Notification* uploaded to the Monitors' SharePoint on January 13, 2021].

As discussed in paragraph 62 herein, for children placed in a GRO as of November 30, 2020, the guidance stated that CPS State Office staff are coordinating with providers to obtain the required signatures for any children identified in IMPACT as having a history of sexual victimization and/or sexual aggression. For children who have a history of sexual victimization and/or sexual aggression and were placed in any setting other than a GRO as of November 30, 2020, at the worker's next visit with the caregiver, caseworkers should obtain the signature of any caregivers who have not signed the Attachment A and upload it into OneCase by January 8, 2021.

57. On November 30, 2020, the PMC listing report provided to the Monitors, which is discussed in paragraph 9 herein, was updated to include an indicator for whether the child was a confirmed victim of sexual abuse or human trafficking in an RCCI investigation that started following the child's removal date. [*Source Document: Cover Emails to Monitors Accompanying Recurring Reports Nov 2019 – Dec 2020* uploaded to the Monitors' SharePoint on January 13, 2021]

58. On December 1, 2020, DFPS provided the Monitors a copy of the November 25, 2020 guidance discussed in paragraph 56, herein. [*Source Document: December 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021].

59. On December 1, 2020, DFPS sent a notice to residential providers reminding them of the federal court orders requiring DFPS to provide all caregivers with information regarding a child's history of sexual victimization and/or sexual aggression and informing them that effective December 1, 2020, DFPS staff will obtain signatures from each foster parent, or in GROs, the administrator, receiving intake staff, and the child's case manager at the time of placement, acknowledging their receipt of the placement summary form and Attachment A. In an effort to ensure all PMC children residing in a GRO prior to December 1, 2020, had a current Attachment A, DFPS state office staff emailed operations a copy of the Attachment A for all children in GROs who have a sexual victimization and/or sexual aggression history. The forms had to be signed by the Administrator or designee and the child's case manager. Finally, the notice specified that GRO administrators are acknowledging through their signature that any caregivers (as defined within this notice) are informed and aware of the information contained in the documents. [*Source Document: December 2020 Notice to Residential Child Care Contract Providers* uploaded to the Monitors' SharePoint on January 13, 2021].

60. Also on December 1, 2020, various sections of the CPS Handbook were updated to clarify:

- For new placements, all foster parents and adult caregivers in kinship homes must sign the Placement Summary form and Attachment A to acknowledge their receipt of the information.

- If the child is being placed in a GRO, the GRO administrator, receiving intake staff (if applicable), and the child's case manager must sign the Placement Summary form and Attachment A to acknowledge their receipt of the information.
- The GRO staff are responsible for ensuring that any other caregivers for the child receive the information.
- For children whose placement has not yet been secured, each region's individualized plan to meet the child/youth's needs must include a process for sharing the child's behavioral and trauma history, including any history of sexual aggression or sexual victimization.

Likewise, DFPS made conforming updates to the Child Sexual Aggression Resource Guide, Kinship Caregiver Agreement form, and Placement Summary form. On December 5, 2020, DFPS notified the Monitors of these CPS Handbook, resource guide and form updates. [*Source Documents:   December 2020 CPS Handbook Updates* uploaded to the Monitors' SharePoint on January 13, 2021*; Child Sexual Aggression Resource Guide December 2020* uploaded to the Monitors' SharePoint on January 13, 2021; *Kinship Caregiver Agreement December 2020* uploaded to the Monitors' SharePoint on January 13, 2021*; Placement Summary Form December 2020* uploaded to the Monitors' SharePoint on January 13, 2021*; and December 2020 Email to Monitors* uploaded to the Monitors' SharePoint on January 13, 2021]

61. Also on December 1, 2020, the CPS Handbook was updated to include a new policy about notifying a facility regulated by another state agency of a child's sexual victimization and/or sexual aggression history. Specifically, when a child or youth in DFPS managing conservatorship is placed in a facility operated or regulated by another state agency, such as a juvenile probation facility, state supported living center, or psychiatric hospital, the caseworker must provide the facility with the child's history of sexual victimization and sexual aggression. The caseworker must provide a copy of the Child's Sexual History Report Attachment A to the admissions staff or person responsible for the oversight of the child or youth and make every attempt to obtain a signature on the Attachment A. If the facility refuses to sign the document, the caseworker must note the refusal on the form and upload the form into One Case. [*Source Documents:   December 2020 CPS Handbook Updates* uploaded to the Monitors' SharePoint on January 13, 2021 and *November 2020 Worker Communication re FCL Caregiver Notification* uploaded to the Monitors' SharePoint on January 13, 2021]. Please see paragraphs 68, 69, 71, and 73 herein for more information concerning notice to caregivers in facilities regulated by another state agency.

62. On December 3, 2020, as specified in the November 25, 2020 guidance document discussed in paragraph 56 herein, CPS State Office staff began emailing all GROs the Attachment A for all children (both TMC and PMC) having a confirmed history of sexual victimization and/or sexual aggression and who were placed in their facilities as of November 30, 2020 (according to existing data warehouse report pp_26). CPS State Office staff obtained required signatures and uploaded the signed Attachment A forms to OneCase. On December 18, 2020, CPS State Office staff commenced a parallel outreach

effort as to foster parents and any other placement settings, by providing spreadsheets to each CPS regional director and instructing them to: (1) confirm that the caseworker obtained all foster parent or caregiver signatures on the Attachment A; and (2) upload the documents into OneCase. As of January 15, 2021, 1,197 out of 1,197 (100%) required notifications were made or extenuating circumstances precluded notification. For 1,152 (96.2%), the Attachment A was signed and uploaded to OneCase; for 41 (3.4%), extenuating circumstances existed (27 runaway, four unauthorized placement, four no longer in DFPS conservatorship, three in adult jail, two wrongly designated as having a sexual victimization and/or aggression history, one living in a college dorm); and for four (0.3%), notification was made, but the Attachment A was not uploaded due to recipients' refusal to sign [*Source Documents: PMC Caregiver Notification 1-14-21 with pp_26* uploaded to the Monitors' SharePoint on January 15, 2021].

63. On December 17, 2020, DFPS notified residential providers of contract changes concerning the process DFPS will follow to provide children's sexual victimization and/or sexual aggression histories upon placement and the process administrators and others must follow to appropriately inform staff and certify their receipt of the information. Specifically:

- DFPS will provide the child's placement a completed Placement Summary form and Attachment A, which provides any history of sexual victimization or sexual aggression for each child upon placement.
- When a child's sexual victimization and/or sexual aggression history is identified after placement, DFPS will provide an updated Attachment A to the child's placement to ensure they address the child's safety and any therapeutic needs and other children's safety.
- At time of placement and when the Attachment A is updated, the child's placement administrator, receiving intake staff (as applicable), and case manager must sign the Placement Summary form and Attachment A (or an updated one) and return it to the child's DFPS caseworker. If any of these required signatories are not present at the time of placement, the child's placement administrator or designee in their absence, must ensure all required signatories sign and return these documents to the child's DFPS caseworker within three business days.
- When a child is placed in a foster home, the facility is responsible for acquiring the signatures from each foster parent to acknowledge receipt of the Placement Summary form and Attachment A, and is also responsible for acquiring these signatures when there is an update to Attachment A. The facility must return these documents back to the child's DFPS caseworker within three business of placement or update.
- Each child's placement administrator is responsible for informing all caregivers of the child's history of sexual victimization or sexual aggression as provided in Attachment A, and this process for notifying them must be stated in the child's placement's policy or operations manual.
- Each child's placement will have a written process in place to provide notice to a temporary placement (psychiatric or medical hospital, juvenile detention

facility, etc) of a child's history of sexual victimization or sexual aggression as noted in Attachment A.

- The Residential Child-Care Contract Glossary was likewise updated to include the following definitions:
    - **Apprised**: DFPS acknowledges and agrees that in order to protect children from sexual abuse, those individuals who meet the definition of caregiver above, i.e. who have day to day responsibility over caring for children, should be aware of the information they need to keep children safe. Given that staff of operations may fluctuate and given the expectations DFPS will add and enforce in contracts regarding administration/intake staff sharing this information with direct-care staff who need it, DFPS proposes to define "apprise" as follows: "to direct information regarding sexual abuse or sexual aggression history to (a) with regards to a foster home, the individual foster parents, and (b) with regards to a GRO, the administrator, receiving intake staff, and child's case manager, all of whom DFPS must ensure (through monitoring and contractual enforcement) share this information to those staff who are included within the definition of a caregiver. The obligation to apprise also includes the obligation to monitor and enforce contractual requirements and agency expectations regarding provision of the information to caregivers."
    - **Caregiver**: For purposes of Remedial Orders 25, 27, and 31, a caregiver is a person, including an employee, foster parent, contract service provider, or volunteer, whose day to day responsibilities include direct care, supervision, guidance, and protection of a child/youth in care. This includes employees and contract staff who provide 24-hour awake night supervision in accordance with Remedial Orders A7 and A8. Generally, and in furtherance of a child/youth having as normal of a life experience as possible while in substitute care, "caregiver" does not include individuals who are not routinely responsible for direct care, supervision, guidance, and protection of a child/youth in care, such as school personnel, mentors, tutors and chaperones. Instead, determining what information to provide an adult involved with a child/youth's normalcy activity (e.g., extra-curricular activity, part-time job, church activities, school field trip, visit to friend's house) must be considered on a case-by-case basis, keeping in mind the confidential nature of the information and the need to balance the child/youth's privacy concerns. Depending on the history, age of the child/youth, and situation in which the child/youth may be when engaging in a normalcy activity, the involved adult may not need to know of the child/youth's history, for example a tutor periodically at the child/youth's placement or an adult chaperone on a school field trip. [*Source Document: December 2020 Guidance to Residential Providers* uploaded to the Monitors' SharePoint on January 13, 2021].

64. CPS staff are conducting a targeted review of cases involving RCCI investigations that were identified as involving alleged child sexual aggression, sexual victimization, sexual behavior problem, and/or human trafficking after the child came into care to ensure CPS is aware of these investigations, and when sexual victimization or sexual aggression is confirmed, the information is designated and documented in IMPACT and caregivers are appropriately notified. CPS and Data & Systems Improvement staff will continue to explore opportunities to refine this time- and labor-intensive process going forward, including potential IMPACT and reporting automation.

65. DFPS postponed the December 2020 refresher webinar training and open Q&A session until January 2021. The next 90-minute webinar/Q&A session is scheduled to occur January 20, 2021. During this time, staff are invited to ask questions about documenting Sexual Victimization History in IMPACT and what to do when staff receive notification of an investigation involving a child in DFPS conservatorship. Participants will also see a live demonstration of the pages in IMPACT 2.0.

66. On January 5, 2021, DFPS released a Meeting In A Box (MIAB) to staff which included:

  • Notification regarding the webinar/Q&A Session on Child Sexual History to be held on January 20, 2021;
  • The communication provided to staff regarding the December 1, 2020 policy change on caregiver notification; and
  • Updated process concerning notification requirements regarding youth with sexual victimization and/or aggression history in a psychiatric hospital.

All MIAB content is to be reviewed with staff by their managers and acknowledged by February 1, 2021. [*Source Documents: January 2021 Meeting In A Box Agenda* uploaded to the Monitors' SharePoint on January 13, 2021 and *Psychiatric Hospital Contact Protocol for Children* uploaded to the Monitors' SharePoint on January 13, 2021].

67. On January 7, 2021, CPS leadership sent a notice to all CPS CVS staff and SSCC contractors inviting them to participate in the January 20, 2021 webinar/Q&A session. [*Source Document: January 2021 Email to Staff re Webinar* uploaded to the Monitors' SharePoint on January 13, 2021].

68. On January 14, 2021, DFPS finalized and sent a contract amendment, effective immediately, and notices between January 14 and 15, 2021 to residential operations and SSCC-only providers that refines the caregiver notification requirements discussed in paragraph 63 herein. Specifically:

  • GRO: At time of placement and when the Attachment A is updated, each child's placement administrator must inform all caregivers if a child has a history of sexual aggression, behaviors, or victimization as provided for in Attachment A. As proof of this notification, the placement administrator must obtain each caregiver's signature on the certification form attached to the Attachment A. Each GRO must have a written process to provide notice to a

temporary placement (psychiatric or medical hospital, juvenile detention facility, respite care, etc.) of any associated child sexual aggression, behaviors, or victimization noted in the Attachment A. The Administrator or Case Manager for the child must ensure that any temporary placement is provided the information and that proof in the form of a signed DFPS certification form is obtained from the temporary caregiver(s). The placement administrator will maintain copies of the certification form for each child and provide such to DFPS upon request.

- CPA: When a child is placed in a foster home, the DFPS caseworker will acquire the signatures from each foster parent within three business days of placement or an update to Attachment A, to acknowledge receipt of the Placement Summary form (or SSCC equivalent) and Attachment A. Each CPA must have a written process in place to provide notice to a temporary placement (psychiatric or medical hospital, juvenile detention facility, respite care, etc.) of any associated child sexual aggression, behaviors, or victimization noted in Attachment A. The case manager for the foster home must ensure that any temporary placement is provided the information and that proof in the form of a signed DFPS certification form is obtained from the temporary caregiver(s). The case manager must retain this documentation in the foster home record and will submit such to DFPS upon request.

- Providers must ensure their placement policy or applicable operating policy reflects these requirements. In a separate communication to providers, DFPS instructed them to provide these placement/operating policies to DFPS by January 22, 2021.

DFPS has likewise notified CPS foster and adoptive homes (FAD) and uncontracted, out-of-state foster homes of their obligation to provide notice to any temporary placement or alternate caregiver of any associated child sexual aggression, behaviors, or victimization noted in the Attachment A, and instructed all uncontracted, out-of-state foster homes to acknowledge that they received this DFPS notice. To verify residential operations and SSCC-only providers' ongoing compliance with the required practices discussed in this paragraph, operations will submit certification forms to DFPS on a quarterly basis and DFPS will evaluate and work with operations as needed to ensure the sufficiency of those forms. DFPS will complete its first review of operations' certification forms by March 31, 2021. [*Source Documents: 24_Hour_RCC_Requirements January 2021; 7911 – Notice of Sexual History to Temporary Caregivers; Certification of Receipt of CSA Information; Certification Statement; K-908-2279a; Child Specific Amendments; Community Based Care Amendment; Emails to Out of State Non-Contracted Caregivers; FY21 24-Hour RCC Contract Update Changes on 1-14-21; January 2021 Email to Providers Section 1420; January 2021 Email to Residential Providers; January 2021 Notification to FAD Staff; and Process for Out of State Non-Contracted Notifications*, all of which were uploaded to the Monitors' SharePoint on January 14, 2021]

69. In light of the most recent policy and practice changes regarding which caregivers must sign the Placement Summary form and Attachment A, for case reads beginning with January 2021, the CPS CVS QA team will review for all required signatures. Additionally,

a question was added to the case read tool to determine whether the Attachment A was provided to facilities operated or regulated by another state agency such as juvenile detention, TJJD, a psychiatric hospital, a medical hospital, Substance Abuse Treatment Center, or State Supported Living Center.

70. On February 1, 2021, DFPS will provide the Monitors the Q1 FFY 2021 Child Sexual History Case Read Report, covering September-November 2020. DFPS staff will review cases for this report through January 15, 2021. However, based on a partial data set of the 346 cases staff have reviewed, preliminary data, which may materially change as more cases are reviewed and as the case reviews undergo quality analysis, indicates:

  - In 97% of applicable cases (i.e., children having a sexual victimization history), the Application for Placement contained some or all known information concerning the child's sexual victimization history.
  - In 87% of applicable cases, when the Attachment A was provided to the caregiver, it contained some or all known information concerning the child's sexual victimization history.
  - In 95% of applicable cases, the caregiver was notified of some or all of the child's sexual victimization history, either through provision of the Placement Summary form (or SSCC equivalent) and Attachment A or verbally (confirmed by the CPS CVS QA specialist speaking with the caregiver).
  - In 91% of applicable cases (i.e., children having a sexual aggression history), the Application for Placement included some or all known information concerning the child's history of being sexually aggressive.
  - In 80% of applicable cases, when the Attachment A was provided to the caregiver, it contained some or all known information concerning the child's sexual aggression history.
  - In 96% of applicable cases, the caregiver was notified of some or all of the child's history of sexual aggression, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means (receiving the Application for Placement, reading the Health, Social, Educational, and Genetic History (HSEGH) Report, or verbally (confirmed by the CPS CVS QA specialist speaking with the caregiver).
  - In 93% of applicable cases (i.e., children having a sexual behavior problem), the Application for Placement included some or all known information concerning the child's sexual behavior problem.
  - In 94% of applicable cases, the caregiver was notified of the child's sexual behavior problem, either through the provision of the Placement Summary form (or SSCC equivalent) and Attachment A or through other means.

71. A policy revision targeted for publication by February 1, 2021, will clarify current policy discussed in paragraph 61 herein concerning notifying a psychiatric hospital of a child's sexual victimization and/or aggression history. Specifically, this policy revision will require that immediately, but no later than three business days after notification that a child/youth on a caseworker's caseload has been admitted to a psychiatric hospital, the

primary CVS caseworker must ensure that the psychiatric hospital care coordinator or similar hospital staff responsible for the child is provided a copy of the Attachment A and must attempt to obtain the care coordinator or similar hospital staff's signature on the Attachment A.

72. On February 15, 2021, DFPS will provide the Monitors copies of residential operations' policy/operations manual updates describing the operations' processes for notifying all caregivers of a child's sexual victimization and/or sexual aggression history.

73. To enhance caregiver notification efforts in facilities not licensed by or contracted with DFPS or HHSC, DFPS is reaching out to partners within the hospital and juvenile justice systems to explore how best to ensure personnel in those systems are appropriately notified and that the information is stored in a way that individuals who provide care and oversight for the child or youth are aware of the child or youth's sexual victimization and/or sexual aggression history. DFPS hopes to complete this outreach by March 1, 2021, and likewise plans to have additional discussions with the Monitors to further inform and improve practice around notifying caregivers in such settings.

74. To further ensure documentation contained in the child's IMPACT Sexual History Page reflects all substantiated CPI and CCI investigation history involving all children in PMC who were alleged victims or aggressors/perpetrators of child sexual aggression and/or sexual abuse, DFPS will begin reviewing certain CCI and CPI investigations that occurred between August 1, 2019 and March 31, 2021. The review will occur in three phases:

- Phase 1:  Staff will identify and review all eligible CCI and CPI investigations that concluded or that will conclude between December 19, 2019 and March 31, 2021, to ensure the information contained on the child' IMPACT Sexual Aggression page, and/or Sexual Victimization page is consistent with the information contained in the investigation. Phase I will be completed by May 1, 2021.
- Phase 2:  Phase 2 will include a similar process as to all eligible CCI and CPI investigations concluded between August 1, 2019 and December 18, 2019, which was prior to both the IMPACT modifications related to certain CCI investigations and the new CCI Investigations indicators which capture whether the child is an alleged victim or aggressor of child sexual aggression, and whether allegations of sexual behavior problem and/or human trafficking were indicated during the investigation.
- Phase 3:  DFPS will hire new staff to perform ongoing quality assurance activities for all eligible CCI and CPI investigations. As funds are available, in February 2021, DFPS will employ additional full-time staff to begin the work.

75. A number of IT enhancements are in development to further refine and automate some of the manual documentation and notification activities discussed herein, including:

- IMPACT will be enhanced to make the date Attachment A was provided to the caregiver a required field, meaning the date must be entered before the caseworker can save the placement. The targeted completion date for this activity is March 2021.

- IMPACT will be enhanced to record whether abuse/neglect allegations occurred before or after a child/youth was placed in DFPS conservatorship. The targeted completion date for this activity is January 2022.
- Determining whether the Provider Portal will allow residential facility providers to submit verification of caregiver notification, via Attachment A, of a child/youth's sexual victimization and/or sexual aggression history. The targeted completion date for this functionality has not yet been determined.

76. DFPS has worked deliberately and in good faith to comply with the Court's Remedial Order Nos. 25, 26, 27, 29 and 31 and hereby certifies compliance with Remedial Order Nos. 25, 26, 27, 29 and 31, as described herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2021.

Carol Self
Director of Permanency