**Exhibit D**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § | |
| Defendants. | § § | |

SWORN DECLARATION FOR REMEDIAL ORDER NO. 37; HOME HISTORY
REVIEWS

1. My name is Hector Ortiz. I am over the age of 18 years, of sound mind, competent to testify, and have personal knowledge of the facts stated herein.

2. I have served as the Child Protective Services (CPS) Director of Conservatorship Services at the Department of Family and Protective Services (DFPS) since April 16, 2020. I have been employed with the DFPS for 20 years. I have worked as a Family Based Safety Services Worker (FBSS), Investigative Supervisor, FBSS Program Director, Investigative Program Director, and CPS Regional Director at the agency.

3. In my role, I oversee the division within CPS that, until recently[1], created the Home History Review reports.[2] CPS continues to use the information provided through the Home History Review reports to assess child and youth safety in foster homes which are subject to an abuse or neglect allegations downgraded to a Priority None, as discussed more fully below.

4. Remedial Order No. 37 requires DFPS to ensure that "all abuse and neglect referrals regarding a foster home where any PMC child is placed, which are not referred for a child abuse and neglect investigation, are shared with the PMC child's caseworker and the caseworker's supervisor within 48 hours of DFPS receiving the referral. Upon receipt of the information, the

---

[1] See Paragraph 48, below, concerning Statewide Intake's new role in the Home History Review process.
[2] The Court's December 2020 Order states, "the home history review team was established at HHSC-RCCL, rather than at DFPS." Although the witness discussing the Home History Review process at the Show Cause Hearing, Jenny Hinson, currently works for the Texas Health and Human Services Commission, Ms. Hinson worked for DFPS prior to changing jobs shortly before the September 2020 Show Cause Hearing. Ms. Hinson was instrumental in establishing the Home History Review process while she was a DFPS employee.

1

PMC child's caseworker will review the referral history of the home and assess if there are any concerns for the child's safety or well-being, and document the same in the child's electronic case record."

5. DFPS has worked deliberately and in good faith to comply with the Court's Remedial Order No. 37 and hereby certifies compliance with Remedial Order No. 37, as further described below in more detail.

## Overview of Current Process

6. When an intake is downgraded or designated as Priority None (PN) related to a foster home in which a child in DFPS managing conservatorship is placed, such downgrades/designations may be subject to a Home History Review. While Remedial Order No. 37 is specific to children in the permanent managing conservatorship (PMC) class, DFPS conducts Home History Reviews without regard to whether the child is in permanent or temporary managing conservatorship of DFPS.

7. DFPS determined the most efficient, consistent, and effective means of effectuating Remedial Order No. 37 was to create a team of specialized DFPS staff trained to navigate IMPACT and CLASS and dedicated to providing the home's referral history to front-line staff. This would prevent taking front-line staff away from the direct delivery of services and layering on additional administrative duties. On January 13, 2021, the process for reviewing a foster home's history transferred to the Statewide Intake screening unit.

8. When the Statewide Intake screening unit designates an intake as a PN[3] and the intake involves a foster home, the Statewide Intake screening unit performs an in-depth analysis of relevant information. The reviewer reviews and compiles information including:

   a. the home's regulatory history in CLASS, looking at information regarding Minimum Standards compliance history and investigations history (e.g., to identify trends, RTBs, dispositions and citations);

   b. whether the home is on the disallowance list;

   c. whether the home transferred from another agency;

   d. CPS/Adult Protective Services history in IMPACT;

   e. any other abuse/neglect referrals or investigations;

   f. information on the needs of children residing in the foster home through review of service plans or applications for placement;

   g. information on the care provided to the children through looking at caseworker narratives in IMPACT; and

---

[3] As discussed in Paragraph 45, below, prior to November 1, 2020, an intake could be downgraded to a PN by RCCI staff. Since that date, all screening responsibilities are handled by Statewide Intake.

     h. any additional pertinent information. [*Source Document: Home History Review Process and Screenshots*, uploaded to Monitors' SharePoint on January 29, 2020].

9. The information compiled by the Statewide Intake screener who performs the Home History Review is put into a report that is provided to the assigned CPS caseworker and supervisor so that they may assess if there are any concerns for the child's safety or well-being and document the same in the child's electronic case record. Upon receipt, the caseworker reviews the report, assesses whether there are any concerns for a child's safety or well-being, and documents in IMPACT a summary of the report, the assessment of safety and well-being, and any decisions as a result of the staffing. The report is also sent to the program director, program administrator, and regional director in the caseworker's management chain so that they can perform general oversight of the functioning of their staff's review of home history reports. [*Source Document: CPS Policy 4221.1* uploaded to the Monitors' SharePoint on January 13, 2021].[4]

10. Home history reports are conducted for all PNs subject to a Home History Review. There are situations in which the team may determine that the PN is not appropriate for review. For example, a Home History Review may not be appropriate because the allegation relates to a setting other than a foster home or because the home is closed at the time the downgrade is made.

**Establishment of Home History Review Team**

11. Prior to September 2019, DFPS did not have positions dedicated to Home History Reviews. In order to comply with Remedial Order No. 37, DFPS reallocated resources to create three dedicated positions to perform Home History Reviews and related tasks.

12. While DFPS was completing the hiring and training process for the new positions, DFPS hired three temporary staff, all of whom had extensive and relevant experience, in order to complete the required reviews in accordance with the Court's timeline. Those staff were identified by August 19, 2019, and on-boarded by September 9, 2019, after completion of the processes required at the state level for hiring of temporary staff.

13. On August 29, 2019, CPS communicated with all of its Conservatorship staff to alert them to the impending new Home History Review process. *[Source Documents:* Exhibit B-1 *(Email regarding September Meeting in a Box (MIAB),* sent to CPS Staff on August 29, 2019); Exhibit B-2 *(September MIAB Memo);* and Exhibit B-3 *(description of home history review process hyperlinked in MIAB),* admitted in September 3, 2020 Show Cause Hearing].

14. On August 31, 2019, CPS created job descriptions for home history reviewers.

15. By September 9, 2019, the Home History Report template, email templates, tracking log, policy, and trainings were developed for the temporary staff hired to conduct home history reviews.

---

[4] As discussed in paragraph 49, below, this policy was subsequently updated.

16. On September 10, 2019, the temporary staff hired to conduct Home History Reviews were provided an initial training on how to conduct history reviews in IMPACT and CLASS. This training was conducted by Katra Francis, a CPS placement safety analyst.

17. On September 12, 2019, Sarah Jacobson, a program specialist with Child Care Regulation, trained the temporary staff hired to conduct Home History Reviews on how to conduct history reviews using the CLASS system.

18. Between September 12 and 17, 2019, the temporary staff hired to perform Home History Reviews conducted trial research and writing of home history reports.  The CPS Director for Placement reviewed and provided feedback for each report.

19. On September 17, 2019, the temporary staff conducting Home History Reviews received their first PN allegations to review, write the home history reports, and send to assigned CPS caseworkers and supervisors.  These home history reports were sent out to CPS caseworkers and supervisors on September 18, 2019.

20. Meanwhile, by September 17, 2019, CPS had posted jobs for permanent home history reviewers, conducted interviews, and hired new staff who began work February 1 and March 1, 2020.

**Additional development of automation and training occurred during the remainder of 2019**

21. In September 2019, prior to automation enhancements in IMPACT, the process for notifying a caseworker and supervisor of an intake prioritized as PN involved a Child Care Investigations (CCI) Program Specialist in CCI State Office reviewing a daily report of all intakes received by RCCI that were prioritized as a PN. This Program Specialist would then send a daily email notification to the appropriate caseworker and supervisor advising them of the PN priority. The CPS Placement team, through the temporary staff hired to complete the Home History Reviews, also reviewed the daily report of all intakes received by RCCI that were prioritized as a PN and generated an email notification to CPS caseworkers and supervisors alerting them to the PN report and the impending home history report.

22. On September 27, 2019, CPS notified staff, through the October 2019 Meeting in a Box, of the new policy for home history reviews.  [*Source Documents*: Exhibit B-4 *(Email regarding October Meeting in a Box (MIAB))*; Exhibit B-5 *(October MIAB Memo)*; and Exhibit B-6 *(Foster_Home_History_Reviews_New_policy, hyperlinked in MIAB)* admitted in September 3, 2020 Show Cause Hearing].

23. On September 28, 2019, DFPS shared with the Monitors a detailed implementation plan and steps completed to date. This implementation plan included references to the requirement that caseworkers be notified of a PN within 48 hours of intake. [*Source Documents*: Exhibit B-7 *(email of Tara Olah 09.28.19)*[5] and Exhibit B-8 *(CCI and CPS Implementation Plan 09.28.19, pages 1 and 3)* admitted in September 3, 2020 Show Cause Hearing].

---

[5] Note that the digital file truncates some of the email content.

24. On October 1, 2019, new CPS policy regarding the CPS Specialized Placement Unit posted to the CPS Handbook. The new policy covered the roles and responsibilities of home reviewer and supervisory staff, assessment criteria and procedures, and documentation requirements. [*Source Document: CPS Policy Handbook Section 4221.1*, October 2, 2019 version, uploaded to Monitors' SharePoint on January 13, 2021]. The development and publication of this policy was accelerated to update all relevant staff as quickly as possible.[6]

25. DFPS determined that to strengthen compliance with Remedial Order No. 37, it needed to dedicate resources not only to the Home History Review function, but also to a quality assurance process to evaluate that function. DFPS did not have existing resources dedicated to this function and reallocated agency resources in order to support this quality improvement. DFPS utilized state General Revenue funds to create a team of eight quality assurance (QA) staff (six case readers, one manager, and one Program Specialist) within CPS to assess the quality of work around sexual abuse and aggression documentation and notification, as well as the quality of work related to Remedial Order No. 37 and, as resources permitted, additional qualitative measures for other Remedial Orders.

26. By December 2, 2019, CPS had onboarded the new CPS Case Readers for QA over, among other things, the Home History Review process.

27. On December 10, 2019, CPS developed training for the CPS Case Readers for QA with implementation of the training between December 11-12, 2019. Case Readers for QA began work on December 13, 2019. The CPS QA team reviews a random sample of 30% of the PN intakes sent to the Home History Review Team for the quarter under review. The QA staff select cases from the Home History Review Team's log, then review IMPACT to ensure the selected cases were staffed and that the staffing, review, and final decision were accurately documented.

28. On December 19, 2019, DFPS automated the notification process to assigned caseworkers and supervisors for all intakes involving a child in an open substitute care stage for Residential Child Care Investigations (RCCI). To achieve implementation on this date, DFPS engaged in a project with a compressed timeline. Staff within CPS, CCI, the Office of Data and Systems Improvement (DSI), and IT were diverted from other projects and initiatives to compress the project's timeline from nine months to four months. This automated notification is triggered during the RCCI screening process which occurs after Statewide Intake has routed the intake for possible investigation. The notifications, which are alerts in the IMPACT system, are sent whether the intake is screened-out (i.e. given a priority none designation) or screened in for investigation. The IMPACT changes included the creation of the following:

   a. Expanded notification, which is given not only to the alleged victim's caseworker and supervisor, but also to the caseworker and supervisor for any other non-victim foster child currently placed in the home;

   b. An indicator (the black bell) on the CPS caseworker's workload to provide additional visibility of the receipt of an RCCI alert;

---

[6] This policy has since been amended. *See infra* at paragraph 49.

    c. Legal status, child sexual aggression, and sexual victimization history indicators on the IMPACT Assigned Workload of CPS child specific substages;

    d. Legal status indicator on the IMPACT Person List; and

    e. A contact type drop-down box, for caseworkers to document the review of the home history report, the staffing with the supervisor, the decisions made during the staffing, and any follow-up measures determined necessary based upon the home history report.

29. The automated notice is not currently built into the adoption stage of service; therefore, when a child is placed in an adoptive home, DFPS keeps the substitute care stage open in addition to the adoption stage so that caseworkers may receive the notice.  An automation change, which will allow for the notice to be provided in the adoption stage of service, is estimated to occur in the 4th quarter of state fiscal year 2021. Until the automation change is complete, CPS caseworkers of children in adoptive settings receive notice of allegations through the substitute care stage of service, rather than the adoption stage of service. Accordingly, on October 14, 2020, all adoption workers were notified that they needed to keep the substitute care stage of service open, and on October 30, 2020, CPS Policy 1411 was updated to require the substitute care stage of service remain open when a child is in an adoptive placement. [*Source Document*: CPS Policy located at http://www.dfps.state.tx.us/handbooks/CPS/Files/CPS_pg_1400.asp#CPS_1411 and Email: *ACTION REQUIRED: Sub Stages Must Remain Open Until Adoption Consummation,* uploaded to Monitors' SharePoint on January 13, 2021].

30. In order to communicate the changes around the automation to CPS and Child Protective Investigation (CPI) staff and strengthen implementation and improvement of this new process, a broadcast communication with relevant information was sent to all CPS and CPI staff alerting them to upcoming changes on November 21, 2019. This communication provided information and screen shots specific to the RCCI alert and the Home History Review process. Staff were also required to register for and participate in a webinar that covered the information. A similar message was distributed to all CPS and CPI staff to reinforce this message on December 19, 2019, as well as February 10, 2020. [*Source Documents*: Exhibits B-9 through B-11*(email communications of November 21, 2019, December 19, 2019, and February 10, 2020)* admitted in September 3, 2020 Show Cause Hearing].

31. In order to provide additional instruction to relevant staff, CPS held required webinars for CPS, CPI, and the Single Source Continuum staff demonstrating the changes in IMPACT, including notifications of PN investigations and the Home History Review process. In total, there were 13 webinars covering this information in December 2019 and nine make-up webinars in January and February 2020 for staff who had not yet completed the training prior to deployment of the automation. Additionally, from April to June 2020, four Q&A webinars were offered for staff to call in and get a refresher, see demonstration, and ask specific case questions. The Q&A webinars to offer additional support to field staff on all of the topics covered in the webinars including PN notification and Home History Reviews will continue to be offered every other month on an ongoing basis as needed to bolster implementation in

general and will be provided to specific units and areas if case review identifies need for additional support.

**Additional action taken between January and March 2020**

32. On January 10, 2020, CPS completed development of case reading tools, revised and edited other tools, and created a report template for Case Readers for QA.

33. On January 28, 2020, DFPS provided a summary of the Home History Review process, including the timing of the reviews and staffings, to the Monitors via email. The next day, DFPS followed up by uploading the underlying documents to SharePoint. [*Source Documents: Email re RO 37* and *Home History Review Process and Screen Shots*, uploaded to Monitors' SharePoint on January 29, 2020].

34. On February 3, 2020, the case read report for Home History Review for September through November 2019, the first quarter of State Fiscal Year 2020, was provided to the Monitors[7]. The second quarter report, covering December 2019 through February 2020, was provided on May 1, 2020, along with underlying data in accordance with monitor request. The third quarter case read report (covering March through May,2020) was provided to the Monitors on August 3, 2020, and the further quarter report (covering June through August, 2020) was provided on November 2, 2020.[*Source Documents*:  *Q1-FY 20 Hm Hx Rev Report*, uploaded to Monitors' SharePoint on February 3, 2020 and updated on September 9, 2020, *RO 37 Q2 FY 2020 Home History Review Case Read Report*, uploaded to Monitors' SharePoint on May 1, 2020, *RO37 Q3 FY 2020 Home History Review Case Read Report*, uploaded to Monitors' SharePoint on August 3, 2020, and *RO 37 Q4 FY 2020 Home History Review Case Read Report*, uploaded to Monitors' SharePoint on November 2, 2020].

35. DFPS made modifications to the data it had been producing to the Monitors based on their request of February 21, 2020. Specifically, beginning with reports on intakes in the period of February 2020 and thereafter, DFPS revised its intake data report to include an indicator reflecting when a downgrade is made related to a foster home. DFPS also worked with the Monitors to determine the optimal operation identification to utilize across reports, committed to standardizing field names, and agreed to provide case reading tools, data from the tools, and a spreadsheet listing the children selected for case reviews. DFPS explained that it does not capture data in an extractable field specific to placement moves as a result of home history reviews.

**Additional Implementation Information**

36. During the months after DFPS implemented the Home History Review process, it identified and rectified two unforeseen reporting issues:

   a. In April 2020, DFPS DSI identified a reporting issue in which intakes were classified as a PN but there was not a system-generated notification to the CPS caseworker and supervisor. DFPS determined that the issue was related to RCCI supervisors processing

---

[7] An issue with the data for this report was found and corrected. A revised report was uploaded to the Monitors' SharePoint on September 8, 2020.

the PNs in the legacy IMPACT system rather than the IMPACT 2.0 system. The RCCI QA Team reviewed the affected intakes and determined which intakes required notification, and those notifications were made to the caseworkers and supervisors for the alleged victims. The remaining intakes did not require notification because the intake report did not involve a foster home, the alleged victim was unknown, the alleged victim was not in conservatorship of DFPS, or the intake was progressed to investigation. DFPS has addressed the underlying issue by deploying a modification to the IMPACT system to prevent processing of PNs in legacy IMPACT. DFPS reviewed the history for PNs that were originally missed.

    b.    DFPS also identified a reporting issue related to the data warehouse report that triggers the Home History Reviews.

        i.    Remedial Order No. 37 requires that Home History Reviews be completed on foster homes when an abuse or neglect intake report is downgraded to a PN. The CPS Home History Review Team currently utilizes a data warehouse report (int_07) to identify PNs in foster homes to determine which downgrades require a review.

        ii.    In May 2020, DFPS discovered that some PNs did not show up on the data warehouse report. DFPS determined that the issue was related to a report parameter involving the child being in a foster home placement beginning the same date or after the date of the intake. If the child was placed in a setting other than a foster home at the time of the intake, the PN did not appear on the data warehouse report. In response, DFPS took the following actions:

            1.    Identified any PNs in foster homes that occurred between September 1, 2019 and April 30, 2020, and subsequently completed Home History Reviews on those PNs.

            2.    Put in place a manual tracking tool for RCCI PNs that was utilized until the automated report could be fixed.

            3.    Rectified the report going forward so that PNs other than those for foster homes are included on the report and the Home History Review Team determines whether a Home History Review is requited.

37. On June 15, 2020, DFPS communicated to the Monitors regarding the data warehouse report issue. DFPS noted that they found an issue in the coding for the INT_07 report that could have related to some of the HHRs that were not completed. Specifically, the logic of the report was inadvertently created to pull from whether the child is in a foster home at the time of the intake, rather than the home that is subject to an allegation. DFPS pulled any missing intakes and completed reviews on them. In addition, once the report was fixed, CPS sent out additional guidance and reminders to CVS staff. [*Source Document*: *Defendants' Response to the Monitors' Draft First Report to the Court;* sent to Monitors on June 15, 2020 by email].

38. The process DFPS originally implemented for Home History Reviews attempted to balance the number of reviews necessary, the need for quality reports to front-line staff in recognition of the various steps in the process, and the safety needs of children.

    a. When a report of abuse, neglect, or exploitation is assigned as an intake by Statewide Intake and routed to a screener, any decision to downgrade or "PN" the report should be made within 24 hours of the intake. At the time an intake related to a foster home is downgraded to a PN, the automated notification is made to the CPS caseworkers and supervisors of all alleged victims and children in the home. Any such downgrades are received by the Home History Review Team utilizing the data warehouse report, which lists all PN reports that were downgraded prior to midnight on the day the report is generated.

    b. DFPS was allowing two business days from the date of receipt of the PN report for the Home History Review Team to complete their review in recognition of the importance of conducting a thorough, quality review so that front-line staff have the information they need to make an informed decision in response.

    c. Until January 13, 2021, DFPS policy allowed up to seven days for the caseworker and supervisor to review the report, consider the information, schedule a staffing, potentially gather additional information regarding the impacted child or youth, and develop a response. DFPS developed the timeline in recognition of not only the importance of the Home History Reviews but also the other work required on a timely basis from direct delivery staff. [*Source Document: CPS Policy Handbook section 4221*, available at: https://www.dfps.state.tx.us/handbooks/CPS/Files/CPS_pg_4000.asp#CPS_4221]

39. On July 31, 2020, the Monitors requested all Home History Review reports. In order to accommodate this request, DFPS staff set up a dedicated mailbox to receive each home history report and has compiled and uploaded for the Monitors the home history reports completed between the March provision of reports and the July 31, 2020 request. Since March 30, 2020, 604 Home History Review reports have been provided to the Monitors. [*Source Documents: Home History Review Reports*, uploaded to the Monitors' SharePoint on August 10, 2020, November 20, 2020, November 30, 2020, December 5, 2020, and January 14, 2021].

40. The Community-Based Care (CBC) Model is a system for the privatization of foster care designed to offer ample opportunity for innovation and to improve outcomes for children, youth, and families at the local level. The CBC Model has been rolled out in stages and expanded to a few designated service areas at a time. Under this model, Single Source Continuum Contractors (SSCC) are competitively selected and have performance-based contracts to improve well-being and permanency outcomes. In Stage I, the SSCC is responsible for ensuring the full continuum of foster care, Preparation for Adult Living (PAL) life skills assessment/training and adoption services. The focus in Stage I is improving the outcomes for children, youth, and young adults in foster care by keeping them closer to home, in least restrictive settings, and connected to their communities and families. In Stage II, the SSCC's responsibility expands to provide full case-management services. Stage II expands the continuum of services to include services for families of children and youth that are in

foster care. Only two SSCCs are in Stage II: Our Community, Our Kids (OCOK) assumed case management responsibilities in Region 3B (7 counties around Fort Worth) as of March 1, 2020; and 2INgage assumed case management responsibilities in Region 2 as of June 1, 2020.

41. Each CPS-SSCC Joint Operations Manual includes the following language: "CPS Policy, Resource Guides and other supportive material linked in this operating manual may reference CPS staff specifically. Texas statute provides authority for the Single Source Continuum Contractors ("SSCC") in the State of Texas, either directly or through subcontractors, to assume the statutory duties of CPS staff. CPS Handbook policies and DFPS and HHSC Texas Administrative Code rules, including HHSC Child Care Licensing Minimum Standards, apply to an SSCC unless specifically waived." Accordingly, when each SSCC assumes case management responsibilities, they also assume the obligations under Remedial Order No. 37. DFPS performs the review on all homes and sends the reports to SSCC caseworkers as it would for DFPS staff and the SSCC caseworkers should review and follow up on those reports in the same manner as DFPS caseworkers. [*Source Document*: *Region 1 Operations Manual*, *Region 3B Operations Manual*, *Legal Basis for CPS and Single Source Continuum Contractor Relationship,* uploaded to Monitors' SharePoint on January 12, 2021].

42. To remind staff of the importance of the Home History Review process, CPS sent a reminder broadcast communication initially on August 6, 2020, [*Source Document*: Exhibit B-13 *(Broadcast Communication of August 6)* admitted in September 3, 2020 Show Cause hearing]. The communication was resent on August 12, 2020 with a clarification that home history reports would be transmitted through a dedicated mailbox rather than OneCase. This communication was also provided to OCOK and 2INgage. [*Source Document*: Exhibit B-14 *(Broadcast Communication of August 12)* admitted in September 3, 2020 Show Cause Hearing and Emails to SSCCs (*Home History review Notification Region 1 and 2, Home History Review Notification Region 8 A*, and *Home History Reviews Notification 3b*), uploaded to Monitors' SharePoint on January 13, 2021].

43. The case reviews performed by the CPS QA Team have generally reflected that the Home History Review Team, as well as caseworkers and supervisors, are taking the required actions related to these reviews. In particular, the QA Team has assessed whether the Home History Reviews are completed within two business days of assignment and concluded that the team has done so in 100% of applicable cases in all quarters reviewed thus far. In addition, the reports found that reviews had been completed as follows:

   a. Quarter 1, September-November 2019: 83% of cases included review of report (other 17% exempted) [*Source Document*: Exhibit B-15 *(Q1 Case Read)* admitted in September 3, 2020 Show Cause Hearing].[8]
   b. Quarter 2, December 2019-February 2020: 90% of cases included review of report (10% exempted) [*Source Document*: Exhibit B-16 *(Q2 Case Read)* admitted in September 3, 2020 Show Cause Hearing].

---

[8] An issue with the data for this report was found and corrected. A revised report was uploaded to the Monitors' SharePoint on September 8, 2020.

     c. Quarter 3, March-May 2020: 77% of cases included review (23% exempted) [*Source Document:* Exhibit B-17 (*Q3 Case Read*) admitted in September 3, 2020 Show Cause Hearing]

     d. Quarter 4, June-August 2020: 62% of cases included review (38% exempted) [*Source Document: Q4 Case Read,* uploaded to Monitors' SharePoint on November 2, 2020].

CPS plans to examine this process and the case reading tool in light of the decreased number of required Home History Reviews.

## Changes Since the September Hearing

44. DFPS has made a number of changes since the September 2020 Show Cause Hearing related to Remedial Order No. 37, including significantly amending its PN policy and taking steps to ensure the home history review process is completed more quickly.

45. As of October 1, 2020, DFPS policy solely allows downgrades of intakes to a PN in two narrow circumstances: when the allegations were previously investigated or when the allegation is not within RCCI jurisdiction. Additionally, sole screening responsibilities were moved to Statewide Intake effective November 1, 2020. This policy change has resulted in a decline of PNs warranting a Home History Review. [*See Sworn Declaration of Clint Cox*, filed January 15, 2021, for a more detailed description of these policy changes].

46. After the PN policy change went into effect, the number of intakes downgraded to a PN decreased significantly, resulting in the completion of fewer Home History Review reports. CPS completed five Home History Review reports for the October 2020 timeframe, two for November 2020, and two for December 2020. In contrast, before the policy changes, there were 25 Home History Review reports for August 2020 and 17 for September 2020. [*See* August and September Home History Reviews uploaded to Court Monitors' SharePoint on November 2, 2020, October Home History Reviews on November 30, 2020, November Home History Reviews on December 5, 2020, and December 2020 Home History reviews uploaded on January 14, 2021].

47. As of December 5, 2020, 602 Home History Review reports have been uploaded to the Monitors' SharePoint.

48. On January 14, 2021, Statewide Intake screeners took over responsibility for creating the Home History Review reports. This allows them to create the report at the time of the PN designation in order to decrease the time between intake and the home Home History Review being provided to the caseworker. Because Statewide Intake screeners work every day but not 24 hours a day, Priority 1 intakes that are received outside of business hours are sent directly to investigators. SWI screeners uses an on-call rotation outside of regular business hours. If an investigator believes an intake qualifies as a Priority None, they must call the on-call screener for verification and to avoid delays in the Home History Review process. Per DFPS policy, an investigator may not downgrade an intake to a PN. [*Source Documents:* Email

*(EFFECTIVE IMMEDIATELY!!!! Handling Intakes Upon Receipt from SWI)* and *Procedures for RCCI Screeners Notifying CPS of Alleged Abuse or Neglect,* uploaded to the Monitors' SharePoint on January 14, 2021.

49. On January 13, 2021, CPS policy was changed to require caseworkers to review and staff the Home History Review reports with their supervisors immediately upon receipt. If a report is received outside of business hours causing a potential delay in the caseworker's receipt, it is also sent to the on-call CPS caseworker for the region for an immediate safety review. This on-call review does not alter the timelines of the primary caseworker's review and staffing, which must take place immediately after they receive the report during business hours. [*Source Document: Revised CPS Policy 4221.1,* uploaded to the Monitors' SharePoint on January 13, 2021].

50. Since October 2020, CLASS access has been provided to approximately 10,000 staff including CPI, Special Investigations, CPS, and SSCC employees. Training has been deployed and will continue through January 2021. This access was provided in response to the Court's concern that DFPS staff didn't have widespread access to CLASS and to ensure that DFPS employees could view a home's history in CLASS either while they waited for a Home History Review report or if the home did not qualify for a Home History Review [*Source Documents*: Email to Monitors (*Class Training & RCCI* and *CPS Policy Updates*) and Attachments (*CLASS Storyboards* and *Important: Class Training*), uploaded to Monitors' SharePoint on January 13, 2021].

51. Given the substantial changes to DFPS processes, DFPS communicated the changes to the SSCCs in a meeting on January 11, 2021 and by follow-up email on January 14, 2021. *[Source Documents*: Emails (*SSCC Meeting* and *SSCC Notification RE Policy Clarifications),* uploaded to the Monitors' SharePoint on January 14, 2021].

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2021.

Hector Ortiz
Director of Conservatorship Services