**Exhibit F**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § | |
| *Defendants*. | § § | |

**SWORN DECLARATION FOR REMEDIAL ORDER
NOS. 3, 5, 7, 10, AND B-5**

1.  My name is Clint Cox. I am over the age of 18 years, of sound mind, and competent to testify based on personal knowledge of the facts and review of agency records as stated herein.

2.  I am employed as the Director of Child Care Investigations (CCI) at the Texas Department of Family and Protective Services (DFPS). I have ten years of state service. I have held my current position at DFPS since November 1, 2020. Prior to that, I spent ten years with the Special Investigations program of the Child Protective Investigations Division at DFPS.

3.  On September 1, 2017, CCI became its own division within Child Protective Investigations (CPI) at DFPS after the agency became a standalone agency pursuant to House Bills 5 and 249 and Senate Bill 11, passed by the 85th Texas Legislature. At the time of its creation, RCCI had 47 full-time equivalents (FTE) for its investigators.[1]

4.  Residential Child Care Investigations (RCCI)[2] is the program within CCI that is responsible for the investigation of allegations of abuse, neglect, and exploitation of children and youth in 24-hour residential child care in Texas that is subject to regulation

---

[1] "Child Protective Investigations" is the umbrella term used to refer to the division of investigations that includes CCI and what was formerly referred to as "CPS investigations" but are now called "Child Protective Investigations." In other words, CPI refers to the entire division as well as one of its constituent parts.

[2] CCI is the division that includes RCCI and Day Care Investigations. The terms "CCI" and "RCCI" are used throughout the document depending on context.

by the Texas Health and Human Services Commission (HHSC) Residential Child Care Licensing. This includes investigations of allegations in general residential operations, which include residential treatment centers and emergency shelters, and child placing agencies, which include licensed foster homes.

## EFFORTS RELATED TO ALL CHILD CARE INVESTIGATION REMEDIAL ORDERS SUBJECT TO THIS DECLARATION

5. Several key resources that support compliance with Remedial Order Nos. 3, 5, 7, 10, and B-5, among others, were added to the RCCI program in 2019:

    a. The 86th Texas Legislature funded eight RCCI investigators, one supervisor, and one program administrator position effective September 1, 2019. Once the positions were created, DFPS began the hiring process, with positions initially filled by December 2019.

    b. Specific to Remedial Order No. 3, RCCI instituted additional measures to examine and improve how it reviews the priority of intakes received from the DFPS Statewide Intake (SWI) Contact Center. These changes were made to centralize the function, promote consistent decision making and documentation in the Information Management Protecting Adults and Children in Texas system (IMPACT), and support requirements to provide the 48-hour Priority None (PN) notifications and the Priority 1 and Priority 2 investigation notifications to caseworkers and supervisors. In August 2019, DFPS utilized existing appropriations to create a unit of screeners to centralize and improve the decision-making process around intakes received from SWI, including whether intakes should be downgraded to PN status.[3] DFPS created the unit, which was operational in February 2020, with five screeners and one screener supervisor that is overseen by a manager. The cost estimate to carry out this function, along with the Quality Assurance Team outlined below, was an estimated $2 million in state General Revenue during the current biennium. Creating a screening unit expanded RCCI's ability to conduct a more complete and thorough screening assessment, with a screening template that captures case history, contact with a reporter/parent/managing conservator, recommendations to add additional allegations, safety concerns noted during screening, a staffing with a supervisor, and a final screener assessment. Also, as supervisors previously handled intake screening, creation of the screening unit allowed the supervisors to focus on managing investigations. [*Source Document*: Exhibit A.8 (*Screener Template*), admitted in September 3, 2020 Show Cause Hearing].

    c. In August 2019, DFPS utilized existing resources to create a Quality Assurance Team (QAT) for RCCI comprised of five Quality Assurance Specialists, one Team Lead, and one Manager. All positions were filled by December 2019. From January 2020 onward, the QAT performed various functions to assess the quality of RCCI Investigations, including qualitative measures related to Remedial Order Nos. 5, 7, 10, and B-5. As concerns Remedial Order No. 3, in

---

[3] As of November 1, 2020, DFPS moved the RCCI Screening Unit and its functions to Statewide Intake and limited the PN criteria and assessment it uses, which is explained in more detail in Paragraphs 40 and 47.

April 2020, the QAT began reviewing general performance in investigations and screening related to PNs.

   d. In August 2019, DFPS also determined that it would create positions designed to complete investigative tasks and address various Remedial Orders, including Remedial Order Nos. 5, 7, and 10, within agency resources. DFPS created positions for 12 new investigators and two supervisors.

6. On November 16, 2019, CCI disseminated an IMPACT automation announcement to RCCI field staff. The communication included the automation roll-out date of December 19, 2019, the IMPACT changes to expect, and that training was forthcoming. [*Source Document*: Exhibit A.19 (*CCI email communication,* dated November 16, 2019), admitted in September 3, 2020 Show Cause Hearing].

7. In December 2019, DFPS deployed IMPACT 2.0 enhancements specifically designed to address functionality for various Remedial Orders, including timely initiation and contact with alleged victims in RCCI investigations (Remedial Order Nos. 5 and 7), as well as notification to caseworkers of abuse and neglect intakes (Remedial Order No. B-5). Investigators began documenting initiations, face-to-face contacts, and exceptions in IMPACT as a move to make IMPACT the primary electronic tracking system for RCCI staff instead of the CLASS system managed by HHSC.

8. In January 2020, RCCI began receiving a Monthly Systems Briefing report sent by the DFPS Data and Systems Improvement (DSI) Regional Systems Improvement Specialist. This meeting included discussion and review of an analysis of statewide resources and critical tasks data for the previous month. Based on data discussed, the CCI Director and Program Administrators were able to make decisions about whether positions may need to be reallocated to support an area with increased caseloads and to identify targeted areas of improvement for the following month.

9. In April 2020, DFPS continued its leveraging of data to improve practice, and the monthly systems briefing was further enhanced to provide additional statewide and some unit level details on a variety of data metrics. Metrics include:

   a. the number of investigations opened the previous month;
   b. the number of investigations closed for the previous month;
   c. rate of timely approvals by supervisors;
   d. timely completion rates;
   e. timely initiations rates by priority; and
   f. the number of case-carrying staff.

These reports are shared during a monthly system briefing meeting, which are attended by the Director of CCI, the RCCI Program Administrators, and the Regional Systems Improvement Specialist, and are designed to provide contemporaneous information that can be utilized in tracking timeliness and other key information.

10. In July 2020, DFPS completed revision of the RCCI screener handbook to incorporate needed clarifications and to fully align practice with policy. RCCI screeners were trained on these revisions on July 28, 2020. DFPS has put in place several measures to

improve RCCI investigation quality, including the quality of dispositions, in addition to the measures to improve timeliness of investigation initiation and completion discussed below. [*Source Documents:* Exhibit A.29 (*CCI Screeners Handbook,* updated July 2020) and Exhibit A.30 *(Updated Screener Template,* July 2020), admitted in September 3, 2020 Show Cause Hearing]. The CCI Screeners Handbook was further updated in August 2020 to align with August Child Care Investigations Handbook revisions related to PN decisions. [*Source Document:* Exhibit A.39 (*CCI Screeners Handbook,* updated August 2020), admitted in September 3, 2020 Show Cause Hearing].

11. In July 2020, DFPS DSI began reworking reports to be even more real time.  DSI modified an existing listing report to include the status of initiation, face-to-face contact with all alleged victims, and completion of investigations to support RCCI staff in managing their workloads by identifying when deadlines are approaching.  DSI also created a report that shows timely face-to-face contact and timely completion on investigations closed within the last ten days broken down by unit so RCCI and DFPS leadership can better track compliance and target improvement efforts.  Both reports are updated daily. The QAT began disseminating these daily reports to supervisors, program administrators, and the CCI Director on August 27 and 28, 2020.

12. In August 2020, CCI began rolling out additional training to further equip staff to perform their critical function, including a live breach of duty webinar. The webinar provided an overview of the law, rules, and elements of abuse and neglect as they relate to breach of duty by a child-care provider.  Training was offered across four live webinar sessions scheduled August 24 – 31, 2020, with a make-up session offered in September 2020.

13. RCCI developed CCI Investigations Handbook updates to reflect the automation changes and the resulting revisions to policies and procedures outlined in field communications. Those changes were completed August 7, 2020, and handbook revisions were published August 10, 2020. [*See* Child Care Investigations Handbook Revision,         August         10,         2020,         located         at: https://www.dfps.state.tx.us/handbooks/CCI/Revision/LPPH_revisions_after_5-07/2020-08-10_CPI_memo.asp and *see* Child Care Investigations Handbook, generally, located at http://www.dfps.state.tx.us/handbooks/CCI/default.asp].

14. In September 2020, CCI began work on another initiative called "Blueprints for Quality Investigations". Blueprints are disseminated to unit supervisors each month. In its original format, Blueprints offered tools for supervisors to guide in-depth discussion of policy, procedures, and clarifications with their teams. In November 2020, CCI redesigned Blueprints to provide guidance in areas of need identified based on case readings results, policy changes, or through other means. Topics for September through December 2020 included initiating investigations, preponderance of evidence, the importance of timely and accurate documentation, and effective time management. [*Source Documents:* Email dated September 7, 2020, from Carmical to Monitors (*RE: RCCI updates*); email dated October 14, 2020, from Carmical to Monitors (*October Blueprints training);* email dated December 1, 2020, from Bugg to Monitors (*Policy*

*Updates and Communications*); and email dated December 18, 2020, from Bugg to Monitors *(Contract update, Blueprint, and SSCC Meetings)*].[4]

15. Due to the impact of the COVID pandemic, RCCI had to alter the plans for an in-person conference and completed the equivalent of 15 hours of advanced abuse and neglect virtual training on September 30 – October 1, 2020, for all RCCI staff. Workshop sessions included:
    a. Understanding and using history in an abuse/neglect investigation (person and operation history, systemic/ongoing deficiencies);
    b. Physical Abuse laws, rules, and definitions;
    c. Corroborating evidence from interviews;
    d. Interviewing techniques and skills;
    e. Sexual Abuse investigations;
    f. Injuries-accident or inflicted and abusive head trauma;
    g. Restraint investigations and evaluating for neglectful supervision and/or physical abuse in these circumstances; and
    h. Neglectful supervision case study. [*Source Document: (Neglectful Supervision* Training PowerPoint), uploaded to Monitors' SharePoint on October 13, 2020].

16. In October 2020, DFPS submitted an exceptional item to increase the number of RCCI staff as part of its legislative appropriations request for the state fiscal 2022-23 biennium. This included 20.0 FTEs (12 Investigators, three Supervisors, three Quality Assurance Specialists, one Program Administrator, and one Program Specialist). The investigator and supervisor positions were requested to increase the division's ability to see all children within time frames and conclude investigations timely. The Quality Assurance Specialist, Program Administrator, and Program Specialist were requested to improve quality in investigative practices and procedures.

17. In November 2020, CCI collaborated with DFPS DSI to develop a quality review business process as part of overall continuous quality improvement efforts to further harness agency data in support of practice improvement. The DSI Regional Systems Improvement (RSI) Specialist has developed the RCCI model, which has the primary goal of improving decision-making related to safety. The model consists of assessing RCCI investigations and dispositions on two levels: (1) is the child in this case safe; and (2) are supervisors in the aggregate making good decisions? When rolled out, it should result in improved safety decision making in each investigation and improved insight into the status of safety decision making at the unit level. CCI plans to begin implementing the quality review process in FY 2021 Q2 by educating and supporting the field Program Administrators in how to utilize the plan and build identified areas of concern or strength in their assigned units. This model will be finalized and discussed with program administrators the week of January 18, 2021, and then reviewed with supervisors by January 29, 2021. They will then begin to correct gaps in quality with their teams to improve child safety and case findings. [*Source Document*: (*CCI Quality*

---

[4] If the Monitors cannot locate these emails, DFPS is happy to provide copies.

*Monitoring Business Process*), uploaded to the Monitors' SharePoint on January 15, 2021].

18. In November 2020, CCI also collaborated with DFPS DSI to conduct an analysis of the number of investigations received in DFPS Region 6, which includes Harris County, for the preceding six-month period. Because of this analysis, Region 6 has been divided into two distinct districts for case assignment. This plan allows for leadership to strategically maximize workload efficiency and improve response times.

19. In January 2021, DFPS will submit a revised exceptional item to build upon the number of FTEs requested in October 2020, which will include Investigator, Supervisor, and other CCI staff. This revised exceptional item is requested to further compliance efforts and ensure investigation improvements to better serve children in care. The additional resources are requested to further the division's goal of timely responding to abuse, neglect and exploitation investigations, and to support the division's work to timely resolve the investigations with quality investigative practices being supported.

20. To date, numerous efforts have been made, and evaluation is ongoing to improve decision-making and outcomes in RCCI investigations, including hiring additional staff, making needed changes to policy and practice, creating the screening unit[5] and QAT, making greater use of data to address issues with decision making and outcomes, supporting IT changes to automate the collection of data, and developing tools to better assess how investigations are conducted.

21. DFPS continues to assess and build upon its ongoing good faith efforts to comply with the Remedial Orders.

## EFFORTS RELATED TO REMEDIAL ORDER 3 – Intake and Assessment

22. DFPS receives reports of child abuse, neglect, and exploitation through Statewide Intake. Reports are reviewed, assessed, and entered into IMPACT, the case management system that DFPS programs use to document activity and events in a case.

23. If Statewide Intake assesses that the information received in a report meets the definition of abuse, neglect, or exploitation that appear to fall under RCCI jurisdiction, the information is taken as an intake and assigned a priority based on the Statewide Intake policies and guidance. [*See* Statewide Intake Policy and Procedures Section 2510, located at: http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_2000.asp#S WP_2510, Statewide Intake Policy and Procedures Section 5200, located at: http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_5000.asp #SWP_5200, and Statewide Intake Policy and Procedures Section 5400, located at: http://www.dfps.state.tx.us/handbooks/SWI_Procedures/Files/SWP_pg_5000.asp# SWP_5400].

---

[5] As noted previously, the screening unit subsequently moved to SWI on November 1, 2020.

24. Between September 1, 2017, and November 1, 2020, pursuant to the policy at the time, RCCI assessed each intake report received from Statewide Intake for the division to determine the correct priority. [*Source Document: (Policy Section 6222 Assessing an Intake Report for Priority),* uploaded to the Monitors' SharePoint on January 5, *2021* and (*August 2020 - Policy Section 6222*), uploaded to the Monitors' SharePoint on January 15, 2021].

25. The priorities include:[6]
    a. Priority 1 – There is a death of a child or an immediate threat of serious physical or emotional harm or death of a child caused by abuse or neglect. A Priority 1 investigation must begin immediately if the allegations involve the death of a child or circumstances in which serious physical or emotional harm or death of a child will occur without immediate intervention. RCCI must initiate all other Priority 1 investigations within 24 hours of receiving the intake. [*Source Document: (August 2020 - 6361.1 Time Frame for Initiating a Priority 1 (P1) Investigation),* uploaded to the Monitors' SharePoint on January 14, 2021].
    b. Priority 2 – The child is currently safe or not at immediate risk of serious physical or emotional harm as a result of the abuse or neglect. RCCI must initiate an investigation within 72 hours of receiving a Priority 2 intake. [*Source Document: (August 2020 - 6361.2 Time Frame for Initiating a Priority 2 (P2) Investigation),* uploaded to the Monitors' SharePoint on January 14, 2021].
    c. Priority None (PN) – A screener, supervisor, or designee could downgrade an abuse, neglect, or exploitation intake report received by Statewide Intake to a non-abuse or neglect report under certain circumstances. [*Source Document: (August 2020 - 6241.2 Downgrading and Abuse, Neglect, or Exploitations Intake Report to a Priority None (PN) Intake Report),* uploaded to the Monitors' SharePoint on January 14, 2021]. If a PN was determined to be appropriate, the case would not be investigated as abuse/neglect/exploitation by DFPS.

26. At the conclusion of investigations, investigators assign one of the following dispositions:
    a. Reason to Believe (RTB) — A preponderance of evidence indicates that abuse, neglect, or exploitation occurred. If the disposition for any allegation is RTB, the overall case disposition is RTB.
    b. Ruled Out (R/O) — A preponderance of evidence indicates that abuse, neglect, or exploitation did not occur. If the dispositions for all allegations are R/O, the overall case disposition is R/O.
    c. Unable to Determine (UTD) — A determination could not be made because of an inability to gather enough facts. The investigator concludes that there is not a preponderance of evidence that abuse, neglect, or exploitation occurred, but it is not reasonable to conclude that abuse, neglect, or exploitation did not occur. If the disposition for any allegation is UTD and there is no allegation with a disposition of RTB, the overall case disposition is UTD.

---

[6] The definition of Priority 1 was updated in policy on August 10, 2020 to align with the Texas Administrative Code and Texas Family Code.

d. Administrative Closure (ADM) — Applies to an individual allegation when the investigation reveals that there are no grounds for CCI to continue investigating that allegation, including: 1) the information gathered by the investigator reveals that another DFPS division, another state agency, or law enforcement has investigative jurisdiction; 2) the information gathered by the investigator reveals that all the allegations have already been investigated in a closed CCI investigation, and there are no new allegations; or 3) there is insufficient information available to identify the alleged victims, the alleged perpetrators, and the child care operation, and there is no principal or collateral who can provide this information. [*See* Child Care Investigations Handbook Section 6623, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6600.asp#LPPH_6 623 and Child Care Investigations Handbook Section 6570, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp#LPPH_6 570].

27. In March 2019, RCCI convened a workgroup to develop Prioritization Guidelines and Prioritization Job Aid for the program. The Prioritization Guidelines were intended to improve decision-making when processing intakes, including when it was appropriate to reclassify an intake to PN status. In September 2019, DFPS distributed the final RCCI Prioritization Guidelines – Resource Guide and Job Aid to Supervisors. [*Source Documents:* Exhibit A.6 *(Prioritization Guidelines for Child Care Investigations (CCI) Intakes – Resource Guidelines)* and Exhibit A.7 *(Prioritization Guidelines for Child Care Investigations (CCI) Intakes – Job Aid)*, admitted in September 3, 2020 Show Cause Hearing].

28. As described in the declaration of Hector Ortiz regarding Remedial Order No. 37, if an intake involving a child in the Permanent Managing Conservatorship (PMC) of DFPS in a foster home is reclassified to a PN, the alleged victim's caseworker and supervisor and the caseworker and supervisor for any other non-victim child currently placed in the foster home are notified of the PN, and DFPS staff conducts a home history review of the foster home that is provided to the caseworker so the caseworker may determine the appropriate next steps. In February 2020, RCCI centralized the screening process, and the Screening Unit began processing intakes received by CCI from Statewide Intake. The Screening Unit was generally responsible for assessing Priority 1 and 2 intakes received by Statewide Intake for final priority and providing CPS caseworker and supervisor notifications as they would process intakes in IMPACT 2.0. Priority 1 intakes received by Statewide Intake outside of normal business hours were called out directly to on-call staff for assessment. [*Source Document:* Exhibit A.22 (*CCI Screeners Handbook*), admitted in September 3, 2020 Show Cause Hearing]. In June 2020, DFPS expanded this team by three screeners and one supervisor, bringing the total number of the Screening Unit to ten staff (eight screeners and two supervisors).[7]

29. In April 2020, the QAT began two monthly case reads for quality review. One case read focused on abuse/neglect investigations, and the second assessed PN screening

[7] CCI screener functions moved to Statewide Intake on November 1, 2020, as discussed in Paragraph 47 below.

decisions made by the RCCI Screening Unit. A quarterly report regarding the assessment of PN screening decisions was completed in July 2020. RCCI will use the quarterly reports of the Quality Assurance Team to identify gaps and further improve policy and practice and provide further training based on any identified needs. [*Source Document:* Exhibit A.40 (*QAT PN Report Quarter 3*, July 31, 2020), admitted in September 3, 2020 Show Cause Hearing].

30. DFPS has made efforts to reduce the investigative backlog in RCCI, both as a part of its ongoing workload management function as well as to improve its timely completions of investigations in compliance with Remedial Order No. 10. On May 27, 2020, CCI held a Caseload Management Initiative Kick Off Meeting, where it reviewed: 1) workload expectations for prioritizing investigations utilizing INSIGHT; 2) a sample INSIGHT report; 3) expectations for weekly emails and weekly meetings with investigators to provide directives and guidance; 4) Program Administrator support; 5) use of developmental plans; and 6) weekly data report[8] and monthly data packages. The document "CCI Caseload Management for Supervisors," was provided to supervisors on June 1, 2020. [*Source Document:* Exhibit A.28 (*CCI Caseload Management for Supervisors*), admitted in September 3, 2020 Show Cause Hearing].

31. Based on DFPS data for June 2020, due to the work of the backlog project, DFPS reduced the backlog of cases from a high of 765 in January to 265 in June - a 65% reduction[9]. Using the June methodology, the number of backlog cases in December 2020 was 408, a 46% reduction from the high of 765 in January 2020, but a 54% increase from the low of 265 in June 2020. Using the new RCCI methodology, there were 819 investigations open on January 14, 2021, and of those 536 (65%) have been open longer than 30 days. Efforts to further reduce backlog are discussed below, see paragraphs 141 and 142.

32. On July 15, 2020, new rules in Chapter 707 of the Texas Administrative Code regarding RCCI investigations went into effect, including definitions applicable to abuse, neglect, and exploitation allegations. [*See* 40 Tex. Admn. Code Chapter 707, Subchapter C, located                                                                                   at: https://texreg.sos.state.tx.us/public/readtac$ext.ViewTAC?tac_view=5&ti=40&pt=19 &ch=707&sch=C and *source document:* Exhibit A.31 (*CCI Field Communication # 024,* dated July 7, 2020), admitted in September 3, 2020 Show Cause Hearing]. Neither the former nor the new rules require RCCI to comply with the provisions of now-defunct Texas Administrative Code, Title 40, Chapter 700, Section 700.507.

33. On August 10, 2020, CCI updated its policy related to downgrading an abuse, neglect, or exploitation intake report to a PN. The policy update removed the option to downgrade an intake report to a PN if the information in the report indicates that there

---

[8] Data reports differ from case reads. The data reports capture specific data elements collected in IMPACT; case reads look at the IMPACT data source captured in the data reports plus additional information available in CLASS

[9] The methodology used to determine the backlog in June 2020 was to count investigations that had been open longer than 45 days on the last day of the month (INV_LIC_04). Effective January 14, 2021, RCCI uses a new methodology to determine its backlog that counts investigations that have been open longer than 30 days on the last day of the month. Policy requires completion within 30 days for investigations, unless there is an approved extension for the investigation.

is some risk to children but is too vague to determine that a child was abused or neglected. [*Source Documents:* Exhibit A.35 (Prioritization Guidelines for CCI Intakes Resource Guide) and  Exhibit A.36 *(Prioritization Guidelines for Child Care Job Aid)*, admitted in September 3, 2020 Show Cause Hearing, and *Source Document: (August 2020 - 6241.2 Downgrading and Abuse, Neglect, or Exploitations Intake Report to a Priority None (PN) Intake Report),* uploaded to the Monitors' SharePoint on January 14, 2021].

34. In August 2020, in response to the Monitors' report regarding 35 investigations completed with dispositions of ruled out, CCI's Complex Investigations Division finished reviewing the dispositions. This included review of all investigation documentation information in CLASS, IMPACT, and OneCase, an information database within IMPACT that is utilized by DFPS, to determine notable gaps in investigation activities and/or timeframes and if there was agreement with the disposition after applying the appropriate Texas Administrative Code or Texas Family Code section.

35. DFPS currently makes aggregate data available regarding RCCI investigations on its public website. This data includes:
    a. Completed Residential Child Care Abuse/Neglect Investigations: Activity, broken down by DFPS region, county, fiscal year, operation type, and whether the allegation was validated;
    b. Completed Residential Child Care Abuse/Neglect Investigations: Alleged and Confirmed Types of Abuse, broken down by DFPS region, county, fiscal year, allegation type, allegation disposition, and operation type;
    c. Completed Residential Child Care Abuse/Neglect Investigations: Priority and Response Time, broken down by DFPS region, county, fiscal year, priority, response timely, and operation type; and
    d. Residential Child Care Investigations: Abuse/Neglect Intakes that were Screened Out, broken down by DFPS region, county, and fiscal year. [*See Residential Child Care Abuse/Neglect Investigations: Activity,* located at: http://www.dfps.state.tx.us/About_DFPS/Data_Book/Child_Protective_Investi gations/Child_Care_Investigations/Residential_Care_Activity.asp, *Residential Child Care Investigations (RCCI) Types of Abuse,* located at: http://www.dfps.state.tx.us/About_DFPS/Data_Book/Child_Protective_Investi gations/Child_Care_Investigations/RCCI_Types_of_Abuse.asp, *Residential Child Care Investigations (RCCI) Response Time,* located at: http://www.dfps.state.tx.us/About_DFPS/Data_Book/Child_Protective_Investigations/ Child_Care_Investigations/RCCI_Response_Time.asp, and *Residential Child Care Investigations (RCCI) Intakes Screened Out*, located at: http://www.dfps.state.tx.us/About_DFPS/Data_Book/Child_Protective_Investi gations/Child_Care_Investigations/RCCI_Intakes_Screened_Out.asp].

36. On August 25, 2020, RCCI notified residential childcare operations of a new RCCI policy change, effective September 1, 2020, which allowed RCCI to release

confidential investigation findings to residential childcare providers after an investigation has been completed. Beginning September 1, 2020, RCCI began sending notification letters to an operation's identified controlling person or designee within five days of the conclusion of an investigation. The purpose of this is to allow providers to make an informed evaluation on their staff's interactions with children in the placement. The letters include:

   a. The allegation or allegations;
   b. The alleged or designated perpetrator or perpetrators;
   c. The investigation findings;
   d. The date the investigation was completed; and
   e. The name of the CCI staff who conducted the investigation.

[*Source Documents:* Exhibit A.37 (*Communication to Providers about New Notification Process*) and Exhibit A.38 (*Sample Notification Letter*), admitted in September 4, 2020 Show Cause Hearing, and *see also* Child Care Investigations Handbook Section 6631, located                                                                              at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6600.asp#LPPH_6631].

37. Between September 30, 2020, and October 2, 2020, RCCI staff participated in the SPARK 2020 Conference, which was held virtually. This conference provided educational opportunities in the areas of information gathering, including interviewing and collecting evidence, and recognizing injuries that are signs of possible abuse to further educate staff and improve quality of outcomes in child safety assessment and dispositions on investigations.

38. On October 1, 2020, Field Communication #027 was sent to RCCI staff outlining immediate changes to intake screening and clarifying when it is appropriate to reclassify an intake report to a PN. [*Source Document: Field Communication #027,* uploaded to the Monitors' SharePoint on October 1, 2020 and January 14, 2021].

39. These practice changes became policy when they were published in the CCI Handbook on October 30, 2020, coinciding with the November 1, 2020, reassignment of the RCCI Screening Unit to Statewide Intake. Since the policy change, RCCI intakes may only be reclassified to a PN in the following limited circumstances:

   a. The allegations in the intake report clearly reflect that another DFPS division, another state agency, or law enforcement has investigative jurisdiction (that is, the intake report is outside RCCI jurisdiction); or
   b. The allegations in the intake report have already been investigated in a closed investigation, and the intake report does not include new allegations (that is, the intake involves the same incident, including the same alleged perpetrator and same alleged victim, that was previously investigated). [*See* CCI Handbook Section               6211.1,               located               at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 211_1].

40. In October 2020, after Field Communication #027 was released, and the practice changed within RCCI, 5 of the 201 RCCI intakes received involving an alleged victim in PMC were reclassified as a PN. [*Source Document: Field Communication #027*, uploaded to the Monitors' SharePoint on October 1, 2020 and January 14, 2021].

41. In October 2020, the CCI Director reached out to the Director of the Special Investigations (SI) Division at DFPS and requested that SI review RCCI's currently open fatality investigations. The SI Division is comprised of a team of former law enforcement staff with extensive backgrounds in conducting investigations. The CCI Director requested the SI Division provide consistent feedback on an ongoing basis to the CCI supervisor concerning any improvements needed to improve the quality of any open fatality investigations, and provide additional input as warranted on a go forward basis as a request for assistance at the beginning of the investigation per policy.

42. In October 2020, CCI initiated a project to revisit policy to identify when it is appropriate to add an administrator or other person in charge as an alleged perpetrator to an investigation based on the operation's performance. As part of this effort, RCCI met with DFPS IT to determine whether an existing feature in IMPACT might be changed to automatically flag investigations once an operation received a certain number of intakes in a given period. This project is being implemented in two phases.

   a. The first phase was to improve policy and practice expectations in the CCI Handbook, which was published on December 1, 2020. This policy change clarified the need to consider the responsibility of the administrator, director, owner, or other person in charge of the operation when repeated concerns are alleged at the operation or at multiple operations where the administrator, director, owner, or other person in charge has been involved. Additionally, to improve RCCI's review of allegations that an individual may have been involved in prior investigations, RCCI investigators are required to document the background check histories of principals.  Thus, prior to initiating all investigations, RCCI investigators and supervisors review the prior investigation history of operations well as individual background checks. [*Source Documents*: Email dated October 14, 2020, from Carmical to Monitors (*October Blueprints training*) and *Blueprints for Quality Investigations Memo- Oct 2020*, uploaded to the Monitors' SharePoint on January 14, 2021]. Child Care Investigations Handbook Section 6362, located at: http:www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_63 62, Child Care Investigations Handbook Section 6362.1, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 362_1, and Child Care Investigations Handbook Section 6627, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6600.asp#LPPH_6 627].

   b. The second phase involves IT enhancements that involve the enabling of automation to apply the Multiple Referral ('M-REF') feature to CCI investigations. This request is scheduled to be completed during Q4 FY 2021.

The M-Ref enhancement will flag an investigation after an operation receives a certain number of intakes or investigations in a given time. This system generated notice will prompt RCCI staff to evaluate the operation's history to determine whether it is appropriate to add the operation's administrator or other person in charge as an alleged perpetrator in the investigation. The criteria are being developed and will take into account the number of investigations over a set time period and differences in operation size and service types; DFPS anticipates the criteria will be completed by March 1, 2021.

43. On October 12, 2020, the October Blueprint was sent to RCCI staff. The topic for the October Blueprints was "Preponderance of Evidence" and included an updated version of the "Specific Overview of Skills" training in a box. This email instructed supervisors to review the material with their staff during the month of October. [*Source Documents*: Email dated October 14, 2020, from Carmical to Monitors (*October Blueprints training)* and *Blueprints for Quality Investigations Memo - Oct 2020*, uploaded to the Monitors' SharePoint on January 14, 2021].

44. In October 2020, CCI's QAT began development of an investigation case reading tool for supervisors to include all components of an investigation required by policy and reflective of best practice. The components include tasks that occur as part of the initiation, the collection of information during the investigation, and the contacts made during the investigation (e.g., alleged victims, alleged perpetrators, possible witnesses, medical staff, and law enforcement). The tool also captures evidence collection and documentation requirements in IMPACT and CLASS, as well as tasks to complete at the end of an investigation. This case reading tool will be finalized and put in place as a required external document for supervisors to complete and upload to OneCase at the time of review for approvals beginning February 1, 2021.

45. As of October 30, 2020, DFPS CCI made changes to policy to address situations when HHSC considers or plans to overturn an operation's citation related to a CCI finding of abuse, neglect, or exploitation. DFPS CCI and HHSC RCCL developed policies to ensure that HHSC RCCL notifies DFPS when a citation related to an abuse, neglect, or exploitation finding may be overturned and consults with the CCI Complex Investigations Division administrator about the investigation prior to making a final determination. [*See* Child Care Investigations Handbook Section 7712.1, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_7600.asp#LPPH_7712_1 and Child Care Investigations Handbook Section 7717.3, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_7600.asp#LPPH_7717_3 ; *see also* Child Care Licensing Policy and Procedures Handbook Sections 7716.1 and 7718, located at: https://hhs.texas.gov/book/export/html/174581].

46. On October 26, 2020, RCCI met with the DFPS Center for Learning and Organizational Excellence (CLOE) manager responsible for overseeing CCI training development and

delivery to discuss coordinating efforts to develop a mentorship program specifically for the RCCI program and to improve Supervisor Basic Skills Development. The mentorship program will receive priority because the benefit of more education to the front-line staff providing direct delivery is better outcomes in investigations. The implementation of program is planned to begin during FY21Q3.

47. On October 30, 2020, RCCI sent out Field Communication #028 which updated intake screening procedures for RCCI staff. [*Source Document: Field Communication #028* uploaded to the Monitors' SharePoint on January 14, 2021]. This communication notified RCCI staff that effective November 1, 2020, SWI will be responsible for making screening decisions for RCCI intakes, and that only SWI can reclassify an RCCI intake as a PN. With this policy change, DFPS consolidated all intake screening functions as part of Statewide Intake. This included moving RCCI Screeners to SWI. The SWI screening unit is the only staff able to downgrade an RCCI intake to a PN. On this same date, Field Communication #029 Clarification on Administrative Closures and Administrative Review of Investigation Findings (ARIF) Decisions was also sent to RCCI staff. [*Source Document: Field Communication #029* uploaded to the Monitors' SharePoint on January 14, 2021]. This communication provided reference to new policy changes effective November 1, 2020, related to (1) when it is appropriate to use the *Administrative Closure* disposition, (2) procedures for CCI and CCR staff to communicate regarding the outcome of ARIF decisions, and (3) procedures for CCI and Child Care Regulation staff to communicate regarding the outcome of administrative review decisions, when the review involves abuse, neglect, and exploitation findings. After November 1, 2020, RCCI staff cannot reclassify any intakes as a PN, since that authority solely resides with SWI. [*See* Child Care Investigations Handbook 6211, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6211, Child Care Investigations Handbook 6211.1, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6211_1 and Child Care Investigations Handbook 6241.2, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6241].

48. In October to November 2020, CCI reviewed some examples cited by the Monitors as possibly resulting in inappropriate dispositions and used them to educate and train staff to improve outcomes for children served by the Division.

49. In November 2020, when the RCCI Screening Unit moved to SWI, 3 RCCI intakes, with an alleged victim in PMC, were reclassified as a PN, compared to 62 intakes in November 2019.

50. On November 1, 2020, the five CCI program specialists clearly established roles to support the field and division with specializations as follows:
    a. Information Technology and Data Analysis Needs;
    b. Training (Conference and Continued monthly education);
    c. Policy Analyst/Revisions and Field Communications;

    d. External Communications (FITS, Legislative Inquires) and Employee Misconduct Review (Foster Care Ombudsman, Office of Consumer Relations); and

    e. Project Management, Compliance Tracking and Overall Division Improvement efforts

The clearly established roles ensure implementation of plans and streamline intra-division communication and structure.

51. In November 2020, RCCI redesigned its Blueprints to be a monthly distribution to RCCI staff, which provides clarification of practices and polices identified as areas of needed improvement during the month. The Blueprints will cover issues identified by leadership in the CCI Division. The first edition of this new format was sent to RCCI staff on November 25, 2020 and focused on timely, accurate, and thorough documentation in IMPACT and CLASS. *[Source Documents:* email dated December 1, 2020, from Bugg to Monitors (*Policy Updates and Communications*) and *November 2020 – Blueprints For Quality Investigations Memo*, uploaded to the Monitors' SharePoint on January 14, 2021].

52. In November 2020, RCCI began planning its annual CCI Conference, which will provide additional training and educational opportunities for RCCI staff. The conference is scheduled to be held in person in July 2021; however contingency plans are being made to provide conference material virtually if necessary due to the ongoing COVID-19 pandemic.

53. In November 2020, in an effort to decrease the use of CLASS as the primary reporting system, RCCI staff made efforts to use IMPACT 2.0 as the primary system for investigation documentation to determine whether this maximizes efficiency. The feedback provided within the next six months will help identify whether there are any additional barriers to using IMPACT 2.0 as the primary system of entry for RCCI investigations.

54. On November 5, 2020, RCCI and the DFPS division developed a formal process for RCCI to consult with the SI division on its investigations. The process is memorialized in policy and provides that under certain circumstances, the SI division must be consulted prior to an investigation by RCCI. The new policy was published November 30, 2020. [*Source Document*: (*November 2020 - 6143 CPI Special Investigators*), uploaded to the Monitors' SharePoint on January 14, 2021].

55. On November 16, 2020, RCCI met with the DFPS Talent Acquisition Group, which has recruiting and hiring responsibilities for the agency, to discuss improving DFPS external-facing RCCI webpage as well as discussing additional areas for recruiting avenues not historically utilized by RCCI. RCCI began review of historic minimum qualifications and job descriptions for RCCI Investigators and Supervisors. RCCI is updating the website information to accurately indicate job duties. Additionally, RCCI

is reviewing the hiring practice related to interview questions and screening to identify the most qualified candidates for future vacancies. To improve outreach and education about the division, DFPS will also begin posting job notifications on the agency's Facebook page and on LinkedIn, with the goal of expanding the applicant pool for available positions.

56. On November 19, 2020, RCCI met with the DFPS Director of Human Trafficking to discuss CCI policy and practices regarding Human Trafficking and Labor Trafficking. A plan was made to identify and address gaps in RCCI policy and to work with the Human Trafficking division to provide training to RCCI staff on the Human Trafficking program and IMPACT 2.0 data fields that should be completed to reflect assumed or confirmed victims of trafficking. Training is scheduled for January 26, and 28, 2021.

57. On November 19, 2020, RCCI launched a new data dashboard aimed at improving the utilization of data reports. The new dashboard is released twice a week to Program Administrators and provides data regarding timeliness of initiations, face-to-face contact tracking, and delinquent investigation reporting for RCCI investigations. This will provide a tool for supervisors to use data to track issues within their program or unit and to provide feedback about inaccurate data entry.

58. On November 20, 2020, RCCI began a safety plan workgroup aimed at improving current practices on assessing child safety and implementing safety plans to mitigate risk. Improvements will include revision to current policy and procedures and development of job aids and training around identifying safety concerns. The project's products, including any changes to policy, are scheduled for release March 1, 2021.

59. On November 30, 2020, RCCI published policy updates regarding the following areas effective on December 1, 2020:
    a. Joint coordination in reference to investigations with: CPI, SI Division, Heightened Monitoring division, and Law Enforcement; the update moves all three sections of policy to the same area in addition to clarifying when CCI should request assistance from the SI Division [*See* Child Care Investigations Handbook Section 6140, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 140, Child Care Investigations Handbook Section 6141, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 141, Child Care Investigations Handbook Section 6142, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 142 and Child Care Investigations Handbook Section 6144, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 144];
    b. Merging investigations *See* Child Care Investigations Handbook Section 6262, located at:

http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6
262];

c. Addressing case initiation entries [*Source Document: (November 2020- Section 6413 Documenting the Initiation and Face to Face)*, uploaded to the Monitors' SharePoint on January 15, 2021];

d. Providing guidance on when administrators should be added as an alleged perpetrator in an investigation [*See* Child Care Investigations Handbook Section 6627,                located                at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6600.asp#LPPH_6 627];

e. Updating documentation deadlines to require same day documentation of contacts with alleged victims in IMPACT 2.0 [*Source Document: (September 2020 - 6413.2 Documenting Time Frame-Required Contacts in IMPACT (Numbered as Policy 6412.2 as of Jan 2021)*, uploaded to the Monitors' SharePoint on January 15, 2021];

f. Removing exceptions to contacting alleged victim within required timeframes [formerly CCI Handbook Section 6412.11]; and

g. Requiring case assignment staffings be held prior to initiation of an investigation. [*See* Child Care Investigations Handbook Section 6362, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6 362].

60. In December 2020, CCI's Complex Investigations Division's duties which historically support the field with serious incidents of abuse, neglect or exploitation and ARIF's, were analyzed and the following revisions and updates were made to their traditional duties:

a. Tracking CCI investigation findings that are overturned following internal reviews, ARIFs, or a hearing conducted by the State Office of Administrative Hearings (SOAH). By tracking this information, CCI's Complex Investigations Division will identify and evaluate any trends or patterns that may contribute to investigation findings being overturned and identify areas of needed improvement. This information will be shared with training, policy, and RCCI leadership so specific areas in need of improvement can be identified and used to improve quality and strength of findings. This tracking document was finalized in December 2020 and applied retroactively. [*See* ARIF and SOAH Tracking Tool, uploaded to the Monitors' SharePoint on January 14, 2021].

b. Reorganization of QAT – Effective December 1, 2020, the QAT was reorganized to report under the Complex Investigation Division to provide clear support to the field and quality and review of child safety decision with reporting back to the field.

c. Support to Field on Backlog of Cases – To assist in reducing the CCI investigation backlog, effective December 21, 2020, the CCI Complex Investigations Division began assisting supervisors in review and approval of investigations currently pending supervisor approval to free up supervisors for case consultations with their team and oversight in active investigations.

61. In December 2020, after an evaluation of training needs concluded, CCI began monthly training required of front-line CCI staff which will occur in two- to four-hour blocks going forward each month and will be led by experts, such as the DFPS Special Investigations division or the Human Trafficking division. This additional training is anticipated to result in 24-48 hours annually of additional education to front-line staff to improve the quality of investigations as well as outcomes with child safety and investigative findings.

62. In December 2020, RCCI required a four-hour training session on "Critical Communication" delivered by the DFPS Special Investigations Division. Course objectives included recognizing and mitigating agitation in clients and identifying critical communication skills to effectively resolve agitation. Sessions were offered December 9 and 16.

63. On December 4, 2020, the new CCI Director met with RCCI leadership to discuss improvement efforts and the overall direction of the program. Discussion was held about how the program's investigations and decisions must be guided by child safety and the importance of being accountable, and holding others accountable, for investigation work. In addition, review of prior investigative findings which were found to be deficient in disposition were used to provide feedback to CCI leadership about gaps in the investigative process and to provide guidance about how to further develop their own staff to improve quality of investigations and safe outcomes for children.

64. On December 7, 2020, CCI's QAT released FY20's Q4 Case Reading report for general program improvement (not PMC specific). The case read report included recommendations for program improvement that were shared with CCI leadership members, including reviewing the current safety plan policy and creating a central location for field staff to have resources for their investigations.

65. On December 10, 2020, DFPS's CaseTrack was made available to RCCI staff. [*Source Document*: *CaseTrack Training Materials*, uploaded to the Monitors' SharePoint on January 14, 2021]. This system will ensure external case records that were not uploaded into OneCase are tracked, archived, and are accessible in one centralized system following submission from the field. Administrative staff will complete a training on using the system and will be able to begin the process of submitting the case files to the DFPS Records Management Group for processing.

66. On December 10, 2020, the CCI Director notified program administrators that the dashboard created on November 19, 2020, will be used to generate weekly reports for

State Office to identify areas of noncompliance with timeliness of investigations, initiations, and face-to-face contacts. Effective the week of January 5, 2021, program administrators are required to report weekly the status of their program.

67. On December 15, 2020, the December Blueprints was sent to RCCI staff. This edition focused on strategies for maximizing time and conducting more efficient investigations, such as knowing who needs to be interviewed prior to visiting the operation and documenting contacts and investigative tasks as they are handled. *[Source Documents:* email dated December 18, 2020, from Bugg to Monitors *(Contract update, Blueprint, and SSCC Meetings)* and *December 2020 – Blueprints For Quality Investigations Memo,* uploaded to the Monitors' SharePoint on January 14, 2021].

68. On December 16, 2020, RCCI leadership identified gaps in investigation completion due to lack of coordination, communication, and understanding between DFPS and law enforcement. Education on case-by-case examples is being provided, along with encouragement to utilize SIs, as their background is in law enforcement, to bridge investigative gaps. RCCI also developed a communication concerning a new standard letter for use when conducting joint investigations with law enforcement. [*Source Document: Letter Template to Request Records from Law Enforcement Email Attachment,* uploaded to the Monitors' SharePoint on January 14, 2021]. This letter was finalized January 13, 2020, and requests that law enforcement records be provided to RCCI in a timely manner, so that RCCI may move forward with making case determinations in investigations worked jointly with law enforcement.

69. On December 22, 2020, Field Communication #30, *Conducting Searches in CLASS and accompanying Job Aid,* were sent to all RCCI staff. Field Communication #30 provides a refresher for conducting a person search in CLASS using the Global Search Feature. This was to assist staff to identify operations that had the same or affiliated persons in charge so that staff can determine whether similar allegations existed at the previous operation (as required by new policy 6627 Repeated Allegations Involving the Same Operation or Person in Charge, effective December 1, 2020). See also paragraphs #40 & #55. [*Source Document: December 2020 Email from Bugg to Monitors,* uploaded to the Monitors' SharePoint on January 14, 2021].

70. On December 22, 2020, Field Communication #31, Clarification on Safety Plans, was disseminated to all RCCI staff. This field communication clarifies that staff are required to conduct an on-site visit to ensure safety is adequately assessed before a safety plan is put into place. [*Source Document: December 2020 Email from Bugg to Monitors,* uploaded to Monitors' SharePoint on January 14, 2021].

71. On December 23, 2020, CCI's QAT conducted a sample review of investigations to ensure staff are following policy requiring assignment conferences, including the investigator and supervisor, prior to investigation initiation, a requirement which went into effect December 1, 2020 [*See* Child Care Investigations Handbook Section 6362, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6362].

The review indicated that:
  a. Findings were that seven of 14 cases had a documented Investigation Assignment Conference, of which there were deficient practices/documentation at the time of the case read on the open investigation.
  b. Findings related to the Interim Staffing as required by policy only were documented in eight of 14 cases at the time of the case read on the open investigation.
  c. Following the findings, conferences were held with program administrators by the Director, to address the gaps identified, share with them the findings of the review and advised that oversight is needed to make certain that this is completed on all investigations. In addition, it was requested that the Quality Assurance Team add this new section to their case reads for ongoing monitoring of compliance with policy.

72. On January 4, 2021, RCCI published policy that clarifies when to select the Purpose Code: Initiation in IMPACT 2.0 and when to select Purpose Code: Gather/Obtain, provides updates to Human Trafficking policy, and clarifies that investigations may be closed before receiving a final autopsy when other evidence is already available to determine the allegation dispositions. [*See* Child Care Investigations Handbook Section 6145, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp#LPPH_6145, Child Care Investigations Handbook Section 6412, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp, and Child Care Investigations Handbook Section 6524, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp#LPPH_6524].

73. CCI's QAT continues to review investigations to determine compliance with requirements set forth in policy and statute, in addition to assessing for the overall quality of work produced. The QAT reports will continue to be shared with program leadership to identify areas of strengths and improve on areas of weakness.

## EFFORTS RELATED TO REMEDIAL ORDER 5 – Timely Initiation of Investigations

74. On April 23, 2019, an email was sent to RCCI staff requiring supervisors to review initiation materials, including a PowerPoint training, for conducting initiations with all victims with their units no later than June 23, 2019. [*Source Document*: Exhibit A.3 – *PowerPoint – CCI: Face-to-Face Initiation with Victim(s)*, admitted in September 3, 2020 Show Cause Hearing].

75. On August 27, 2019, the CCI QAT began work on developing a tool to assess the quality of RCCI investigation initiation. This tool was operational as of October 25, 2019. [*Source Document*: Exhibit A.9 – *Quality Assurance survey tools*, admitted in September 3, 2020 Show Cause Hearing].

76. On December 20, 2019, CCI published a field communication on the CCI Intranet Communication Page with instructions for its staff regarding the new enhancements and features in IMPACT that rolled out on December 19, 2019, and related policy changes. At that time, the Contact Detail page was enhanced to add a new contact purpose of "Initiation" to be used in the investigation phase; the field communication stated that all staff can now document all initiations, including face-to-face initiations, in IMPACT, and that all initiations, regardless of method, must be documented in IMPACT. [*Source Document*: Exhibit A.21 – *CCI Field Communication # 017*, dated December 20, 2019, admitted in September 3, 2020 Show Cause Hearing]. On January 6, 2020, CCI disseminated by email to RCCI staff Field Communication # 17 related to Remedial Order 5. [*Source Document*: Exhibit A.21 – *CCI Field Communication # 017*, dated December 20, 2019, admitted in September 3, 2020 Show Cause Hearing]. [*Source Document: (Initiation and Face-to-Face Contact – History of Policy Changes),* uploaded to the Monitors' SharePoint on January 15, 2021.]

77. In April 2020, the QAT began monthly case reads for quality review which, among other aspects of the investigation, assess initiations in closed abuse/neglect investigations. RCCI uses these quarterly reports to identify gaps and further improve policy and practice and provide additional training based on any identified needs.

78. In May 2020, RCCI reviewed the policy initially set forth in Field Communication #08: Face-to-Face Initiations with Multiple Victims. It clarified that investigations are initiated by face-to-face contact with all alleged victims. (CCI Handbook 6411 defines what constitutes initiation; this Handbook section was revised November 30, 2020, as discussed in paragraphs 87 and 88 below). [*Source Document: (November 2020- 6411 What Constitutes an Initiation)*, uploaded to the Monitors' SharePoint on January 14, 2021].

79. On July 10, 2020, the CCI QAT finished case reading to determine whether investigation initiation occurred within then-policy guidelines for the time covering March, April, and May 2020 (FY20 Q3). Using the methodology at the time, for intakes received between July 31, 2019, and May 31, 2020, that resulted in an investigation closing between March 1 and May 31, 2020, 89% of Priority 1 investigations were initiated timely (17 of 19 investigations) and 94% of Priority 2 investigations were initiated timely (222 of 237 investigations). For intakes received between March 1 and May 31, 2020, for which the investigation was still in progress at the time of the case reading, 100% of Priority 1 investigations were initiated timely (5 of 5 investigations) and 90% of Priority 2 investigations were initiated timely (43 of 48 investigations). [*Source Documents*: Exhibit A.32 – *RCCI Open Cohort Investigations Report – Q3* and Exhibit A.33 -- *RCCI Closed Cohort Investigations Report* – Q3, updated September 1, 2020, admitted in September 3, 2020 Show Cause Hearing].

80. On July 23, 2020, a reminder email was sent to RCCI staff to reiterate the expectation that staff utilize IMPACT 2.0 automation as directed in Field Communication #017: Automation Roll Out. This email included a copy of Field Communication #017 and

job aids, originally sent on December 19, 2019. [*Source Document:* Exhibit A.21 – *CCI Field Communication # 017,* dated December 20, 2019, admitted in September 3, 2020 Show Cause Hearing].

81. All staff were required to attend one of five sessions offered between August 18, 2020, and September 4, 2020.  The purpose of the webinars was to provide training on and reiterate the use of the IMPACT automation.

82. On August 31, 2020, CCI's QAT began sending a daily Face-to-Face Initiation Report (replacing the weekly report) to Supervisors and Program Administrators that captures initiations coming due and initiations past due. This information allows Supervisors and Program Administrators to more closely monitor the timeliness of initiations.

83. On September 1, 2020, CCI released its first CCI Blueprints for Quality Investigations. The Blueprints provide tools for supervisors to guide in-depth discussion of policy, procedures, and clarifications with their teams. The Blueprint for September covered policy changes that went in effect September 1 and included an updated copy of the IT Automation Case Reading Checklist and job aid that provided an overview of the acceptable methods of initiation at that time and how to improve documentation. [*Source Documents:* Email dated September 7, 2020, from Carmical to Monitors (*RE: RCCI updates*), uploaded on January 14, 2021].

84. On September 3, 2020, Field Communication #026: *Publication of changes to Initiation, Face-to-Face with Alleged Victims, and RC Provider Notification* was sent to RCCI staff announcing the publication of the September 1, 2020, policy along with a crosswalk guide to compare and explain the revisions to specific sections of policy. [*Source Document: (Field Communication #026)*, uploaded to the Monitors' SharePoint on January 14, 2021].

85. On September 9, 2020, RCCI reviewed the definition of initiation and made a policy change that treats face-to-face contact with alleged victims and initiation of an investigation as two separate measures. This change was not intended to affect the timeframes by which RCCI is required to initiate investigations or to make face-to-face contact with all alleged victims.  Rather, the change broadened the acceptable methods by which the initiation requirement can be met (e.g., by face-to-face contact with any victim, contact with child-care operation staff, contact with the caregivers) if the information constitutes initiation as defined in policy. [*Source Document: Initiation and Face-to-Face Contact – History of Policy Changes*, uploaded to the Monitors' SharePoint on January 15, 2021].

86. On November 19, 2020, RCCI launched a new data dashboard aimed at improving the utilization of data reports. The new dashboard is released twice a week and provides data regarding timeliness of initiations, face-to-face contact tracking and delinquent investigation reporting for RCCI investigations. This will allow education to occur with identified issues of inaccurate data entry and provide a tool for supervisors to use data to track issues within their program or unit.

87. On November 25, 2020, an email was sent to RCCI staff providing notification of policy changes effective December 1, 2020, including changes limiting the acceptable method of investigation initiation to the first face-to-face contact, or attempted face-to-face[10] contact, with an alleged victim, and requiring case assignment staffings to occur at the beginning of the investigation. Requiring these staffings earlier in the investigation provides an opportunity for the supervisor to discuss a plan with the investigator for the investigation, including contacting all alleged victims timely and assisting in identifying any other sources that should be contacted to determine child safety. [*Source Document:* Email dated November 25, 2020, from DFPS CCL Investigations to RCCI (*Policy Changes Effective December 1, 2020 Effective December 1, 2020,* uploaded to the Monitors' SharePoint on January 14, 2021].

88. On November 30, 2020, RCCI published the initiation changes in policy to require initiation to constitute the first face-to-face contact with each alleged victim. If contact is attempted but unsuccessful, the investigator must continue to make attempts within the priority time frame until the contact is successful. The policy was effective December 1, 2020. *[Source Document: (November 2020 - 6411 Defining What Constitutes an Initiation),* uploaded to the Monitors' SharePoint on January 14, 2021].

89. On December 8, 2020, the dashboard was modified to capture a 30-day compliance view, as opposed to the month-to-date original design which captured compliance from the beginning of each month. This allows more oversight on trends and patterns without resetting each month.

90. On December 21, 2020, RCCI submitted an IMPACT enhancement request to disable the feature that allows exceptions to face-to-face contact requests to be entered in IMPACT 2.0 as well as a request to allow RCCI staff to select the option of Human Trafficking as an allegation type.

91. CCI changed its policy to discontinue and no longer approve face-to-face contact exceptions effective on December 1, 2020. [*Source Documents*: *(November 2020 - 6412 Time Frames for Face),* uploaded to the Monitors' SharePoint on January 14, 2021 and email dated December 1, 2020, from Bugg to Monitors (*Policy Updates and Communications*)]. The discontinued policy was formerly housed in Child Care Investigations Handbook section 6412.11.

92. On December 22, 2020, RCCI began development of a job aid for conducting person-merges in IMPACT 2.0. This will improve efforts to merge information regarding a person when an alleged victim is entered in IMPACT more than once as well as to merge unknown victims at the time of intake with an appropriate alleged victim that was identified during the course of the investigation. Merging will improve results

---

[10] Policy clarified on January 4, 2021, to align with Court's Order, that initiation of an investigation occurs once face-to-face contact has been made with all alleged child victims within priority timeframe. The language of attempted face-to-face remains in IMPACT only as a placeholder until case worker makes successful face-to-face contact. See Bugg email sent to Monitors dated January 4, 2021.

found during a history search as well as documentation in the record. Follow up instruction regarding this IMPACT function will be finalized and provided to field staff prior to January 29, 2021.

93. On January 4, 2021, RCCI published policy that clarifies when to select the Purpose Code: Initiation in IMPACT 2.0 and when to select Purpose Code: Gather/Obtain. This clarification requires case initiation with all alleged victims during the required priority time frame. [*See* Child Care Investigations Handbook Section 6412.2, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp#LPPH_6412_2 ].

94. To comply with the December 2020 Court Order, RCCI revisited relevant division policy and procedures. For clarity purposes, RCCI revised its policy related to initiation information documented in IMPACT and CLASS. Pursuant to the revised policy, beginning with data produced on and after January 4, 2021, the initiation of the investigation will not be captured based on the initiation entry type in IMPACT, but instead calculated for compliance once the investigator sees all PMC children who are the alleged victims in the investigation. The usage of contact entry type will be utilized as the first contact with a victim in reporting systems as it is a required field to close investigations so must be used at some point during the life of the case. (*Source Document: (Initiation and Face-to-Face Contact – History of Policy Changes)*, uploaded to the Monitors' SharePoint on January 15, 2021.]

95. RCCI's on-going improvements will continue to occur especially to enhance documentation compliance and utilization of reporting software. This will occur by transitioning to primarily using IMPACT for the official record of CCI investigative actions.

96. In review of data reports provided to the monitors for initiation data based on methodology in place as of January 4, 2021,[11] for Priority 1 investigations (i.e., initiation of an investigation occurs once face-to-face contact with all alleged victims are made within 24-hours of intake) during FY20Q4 (June-August):
   a. Closed Investigations[12] – 78% (21 out of 27 investigations)

97. Effective, September 1, 2020, monthly data reports, instead of quarterly data reports, were used and included review of the data which were provided to the Monitors as follows for Priority 1 investigations:
   a. September 2020 – 86% (6 out of 7) Cases Closed
   b. October 2020 – 83% (5 out of 6) Cases Closed

---

[11] Methodology on initiation was changed effective January 4, 2021 to capture initiation to only be met once all children in PMC class were seen face-to-face following review of the December 18, 2020 order of the Court. Previously, initiation was found to be complaint based upon policy implemented at the time

[12] Closed investigations are those that are completed with all relevant documentation finalized and approved by supervisor.

c. November 2020 – 92% (12 out of 13) Cases Closed

**EFFORTS RELATED TO REMEDIAL ORDER 7 – Face-to-Face Contacts**

98. Between February and March 2019, CCI developed policy and job aids to strengthen requirements around initiation of investigations through face-to-face contact with alleged child victims. These policy development activities included, among other topics, emphasizing the underlying requirement for documentation and initiation by face-to-face contact with all alleged victims involved in an intake of abuse, neglect, or exploitation, defining exceptions to initiation of investigations through face-to-face contact, and clarifying the supervisor exception approval process. [*Source Document*: Exhibit A.1 (*CCI Job Aid – Face-to-Face Initiations with Victim(s)*), admitted in September 3, 2020 Show Cause Hearing].

99. In March 2019, CCI sent a field communication to its staff regarding exceptions and extensions to initiation through face-to-face contact with *all* alleged victims. This policy was later clarified in December 2019, as described further in Paragraphs 87 and 88. The March field communication provided in relevant part:

  a. An "exception" occurred when making face-to-face contact with one or more of the victims was not possible due to reasons explained in policy, including: 1) the alleged victims are deceased; 2) the alleged victims' whereabouts were unknown during the entire course of the investigation; or 3) other circumstances beyond the investigator's control prevent the interview or observation from taking place within the initiation time frame.

  b. An "extension" expanded the timeframe for face-to-face contact with one or more of the victims beyond the 24- or 72-hour requirement. A supervisor might approve an extension for the investigator to make face-to-face contact with all alleged victims in the following situations: 1) the alleged victims' whereabouts are unknown (guidance also noted the next steps to take in this circumstance); 2) the alleged victims no longer live in Texas; and 3) a Child Protective Investigator, law enforcement officer, or children's advocacy center has already interviewed the alleged victims about the same allegations prior to the intake report being received (there is further guidance on this in the field communication). The timeframe for the initial face-to-face contact could be extended by up to five days for a Priority 1 investigation and up to seven days for a Priority 2 investigation, or as soon as circumstances allowed. [*Source Document*: Exhibit A.2 (*Field Communication # 008*, dated March 11, 2019), admitted in September 3, 2020 Show Cause Hearing].

100. On April 23, 2019, an email was sent to RCCI staff to require supervisors to deliver a PowerPoint training to their staff regarding face-to-face contact no later than May 23, 2019. [*Source Document*: Exhibit A.3 (*PowerPoint – CCI: Face-to-Face Initiation with Victim(s)*), admitted in September 3, 2020 Show Cause Hearing].

101. Between April and October 2019, RCCI began and completed development of case reading activities related to initiation of investigations by face-to-face contact with alleged victims. These activities included the following:

      a. Development of quarterly case reading reports; and

      b. Development of a process for utilizing data for quality assurance (QA) in determining which cases to read for assessment of face-to-face contact made with all victims, and if face-to-face contact did not occur, whether an approved exception or extension was documented.[13]

102.   On October 25, 2019, RCCI finalized its QA review tool, which included a qualitative look at exceptions and extensions to face-to-face contact with all alleged PMC victims and assessed whether exceptions and extensions were granted. [*Source Document*: Exhibit A.9 (*QA survey tools*), admitted in September 3, 2020 Show Cause Hearing].

103.   On November 1, 2019, training was developed to address the new IMPACT automation that rolled out on December 19, 2019, which allowed documentation of face-to-face contact and exceptions in IMPACT. The training development was completed on December 18, 2019, and included the following:

      a. IMPACT job aids to include entering exceptions and extensions to initiation by face-to-face contact with all victims once IMPACT automation is completed;

      b. unit training on face-to-face contact with all victims; and

      c. RCCI field staff training on face-to-face contact with all victims.

104.   In December 2019, in anticipation of the upcoming automation enhancements, CCI disseminated the RCCI Job Aid: Face-to-face Initiations with Victims to RCCI staff, along with the instructions to document contacts with alleged victims in IMPACT and CLASS. These documents provided updated policy and provided instructions for staff to utilize new features in IMPACT 2.0. [*Source Document*: Exhibit A.20 (*CCI Job Aid: Face-to-Face Initiation with Victims in IMPACT*), admitted in September 3, 2020 Show Cause Hearing]. In addition, CCI published a field communication on the CCI Intranet Communication Page with instructions for its staff regarding the new enhancements and features in IMPACT that were put in place. [*Source Document*: Exhibit A.21 (*CCI Field Communication # 017*), dated December 20, 2019, admitted in September 3, 2020 Show Cause Hearing].

105.   Beginning January 2020, the IMPACT enhancements and automation were taught to newly hired investigators as part of Basic Skills and Development (BSD).

106.   In February 2020, the BSD IT training curriculum was enhanced to incorporate the IMPACT changes.

107.   In March 2020, RCCI's QAT also began pulling the report "Face-to-Face Initiation with Victim" on a weekly basis and sending it to each Program Administrator to provide data on the use of the IMPACT automation to document face-to-face contacts in compliance with policy. This is to ensure RCCI staff are using the new automation

---

[13] The definitions of exceptions and extensions were modified in December 2019, as addressed above.

appropriately and documenting initiations in IMPACT. This report pulls investigations that started on and after December 20, 2019. RCCI's QAT continues to track documentation until it has been entered by the assigned investigator or until the investigation closes.

108. The QAT began monthly case reads for quality review in April 2020, which among other aspects of the investigation, assesses face-to-face contacts and exceptions in closed abuse/neglect investigations. The first quarterly report came out in September 2020. RCCI uses the quarterly reports of the QAT to identify gaps, further improve policy and practice, and provide further training based on any identified needs. For more information regarding the QAT monthly case reads, please see paragraphs 29, 64, 77, 79, and 144.

109. In May 2020, CCI began reviewing the policy initially set forth in Field Communication #08: Face-to-face Initiations with Multiple Victims, which clarified that investigations are initiated by face-to-face contact with all alleged victims. CCI reviewed the definition of initiation and released a policy change to treat face-to-face contact with alleged victims and initiation of an investigation as two separate measures. This change was not intended to affect the timeframes by which CCI is required to initiate investigations or to make face-to-face contact with alleged victims. The change, which went into effect on September 1, 2020, broadened the methods by which initiation can be met (e.g., by face-to-face contact with any victim, contact with an adult involved in the allegation, contact with significant collateral) if the information constitutes initiation as defined in policy.[14] [*Source Document*: Exhibit A.2 *(CCI Field Communication # 8*, dated March 11, 2019), admitted in September 3, 2020 Show Cause Hearing, *CCI Field Communication #26*, dated September 3, 2020, uploaded to the Monitors' Sharepoint January 14, 2021, and [*Source Document: Exhibit A.1 (CCI Job Aid – Face-to-Face Initiations with Victim(s))*, admitted in September 3, 2020 Show Cause Hearing].

110. In May 2020, QAT updated the weekly Face-to-face Initiations Report to include a column to reflect whether an approved exception to face-to-face contact with the alleged victim was documented in IMPACT as required. Given the time sensitivity of contacts with alleged victims, a new daily report for face-to-face contact was developed, and the QA team began disseminating the report to supervisors, program administrators, and the CCI Director on August 27, 2020.

111. On July 10, 2020, QAT finished case reading to determine whether face-to-face contact with victims occurred within policy guidelines for the time period covering March through May 2020 (state fiscal year Quarter 3). This data report reflects that 42% of victims in investigations closed during this period were not contacted timely. However, it appears that a significant percentage (estimated at 132 out of 246

---

[14] Effective November 30, 2020, and January 2, 2021, this policy was updated again to clarify that investigations were initiated by face-to-face contact of all alleged child victims within 24-hours of intake as discussed above and below.

investigations, or 54%) predate the December 2019 automation changes utilized to measure compliance through the data report as opposed to the qualitative case read; at the time of that change, there was no requirement to go back and document this information in IMPACT. Moreover, a preliminary review indicated that additional guidance to field staff may be required to increase documentation in IMPACT as opposed to CLASS. As reflected in the DFPS Q3 case reading reports for timeliness of investigation initiation, it appears that timely initiation by face-to-face contact is occurring in a high percentage of cases.  DFPS will continue to identify and offer needed technical assistance in this regard.  The internal case reading for face-to-face contact indicated that for intakes received between July 31, 2019, and May 31, 2020, that resulted in an investigation closing between March 1 and May 31, 2020, face-to-face contact was made with 86% of alleged victims in Priority 1 investigations and 94% of alleged victims in Priority 2 investigations within 24 or 72 hours or there was an exception. For intakes received between March 1 and May 31, 2020, where the investigation was still in progress at the time of the case reading, face-to-face contact was made with 100% of alleged victims in Priority 1 investigations and 90% of alleged victims in Priority 2 investigations within 24 or 72 hours or there was an exception.

112.   On July 23, 2020, a reminder email was sent to RCCI staff to reiterate the expectation that staff utilize IMPACT 2.0 automation as directed in FC #017 Automation Roll Out. This email included a copy of Field Communication #017 and job aids, originally sent on December 19, 2019. [*Source Document*: Email dated July 23, 2020, from CCL Investigations to CCI Staff, Required Documentation Procedures for Automation in IMPACT2.0*(Required Documentation Procedures for Automation in IMPACT 2.0), uploaded to the Monitors' SharePoint on January 14, 2021].

113.   In August 2020, RCCI initiated an IT project to address an issue identified in the review of data for face-to-face contacts with alleged victims. In reviewing the data, it was apparent that some RCCI staff were selecting multiple alleged victims per contact rather than making a separate contact per alleged victim. This resulted in the same date/time stamp for every individual selected for that face-to-face entry. RCCI requested an enhancement to IMPACT 2.0 that would result in an error message being displayed anytime CCI staff attempt to select more than one alleged victim per contact entry. This project was completed December 23, 2020, after IT corrected a defect in the original code.

114.   IMPACT automation webinars were offered to all RCCI staff in August and September 2020.  All staff were required to attend one of five sessions being offered between August 18, 2020, and September 4, 2020.  The purpose of the webinars was to provide training on and reiterate the use of IMPACT enhancements to document face-to-face contacts.

115.   On September 1, 2020, the CCI Handbook was updated to separate the initial face-to-face contact with alleged victims from the initiation of the investigation [*Source*

*Document*: *(Initiation and FTF - History of Policy Changes)*, uploaded to the Monitors' SharePoint on January 15, 2021].

116. On September 1, 2020, CCI released its first CCI Blueprints for Quality Investigations. The Blueprints provide tools for supervisors to guide in-depth discussion of policy, procedures, and clarifications with their teams. The Blueprint for September covered policy changes that went in effect September 1 and included an updated copy of the IT Automation Case Reading Checklist and job aid that provided an overview of the acceptable methods of initiation at that time and improve documentation. [*Source Document*: September Blueprints provided to the Monitors on September 7, 2020].

117. On September 1, 2020, an updated IT automation case reading checklist was disseminated to CCI staff. The IT automation case reading checklist is a tool that was developed to assist investigators and supervisors with ensuring required documentation related to the December 2019 IMPACT enhancements, among other documentation requirements, are entered correctly in both CLASS and IMPACT. This automation checklist was previously provided in February 2020 and was updated to align with current CCI policy. [*Source Document:* (*IT Automation Case Reading Checklist)*, uploaded to the Monitors' SharePoint on January 14, 2021].

118. In November 2020, RCCI observed data in reports produced for compliance tracking that showed discrepancies in the time documented for face-to-face contacts entered in CLASS compared to those entered into IMPACT 2.0 for the same alleged victim. As a result, the November Blueprints focused on the importance of accurately entering case documentation. A data report was requested by the Division, to capture these discrepancies moving forward so that field leadership can review the entries and make corrections to reflect the accurate time that contact occurred. The initial report was received on December 17, 2020 and will be requested in following months for monitoring and to address any discrepancies prior to final reporting.

119. On November 17, 2020, RCCI launched a new dashboard aimed at improving the utilization of data reports. The new dashboard is released twice a week and provides updates on timeliness of face-to-face contacts with alleged victims in RCCI investigations. The dashboard was amended December 8, 2020 to include a 30-day look back period (as opposed to the month-to-date compliance rate in the original design) to broaden compliance history captured on the report.

120. On November 25, 2020, an email was sent to RCCI staff providing notification of policy changes effective December 1, 2020, including the change requiring contact with alleged victims be documented the same day the contact occurred. [*Source Document:* Email dated November 25, 2020 from CCL Investigations to Staff, (*Notification of Policy Changes Effective December 1, 2020*), uploaded to the Monitors' SharePoint on January 14, 2021].

121. On November 30, 2020, RCCI amended the CCI Handbook, 6412.2 to require contact with alleged victims be documented in IMPACT 2.0 the same day the contact

occurred. The amended policy removed any exceptions to making face-to-face contact with alleged victims from policy. The November update also included a requirement to conduct case assignment staffings before the initiation of an investigation [*See* Child Care Investigations Handbook Section 6362, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6000.asp].

Case assignment staffings provide supervisors and investigators with an opportunity to discuss investigation tasks, including plans to make timely face-to-face contacts with all alleged victims. These policy changes went into effect December 1, 2020.

122.   On December 10, 2020, the CCI Director notified the program administrators that the face-to-face contact and initiation dashboard will be used as a tool to generate weekly reports that should be used by Supervisors, Program Administrators, and State Office to track the timeliness of face-to-face contacts. Starting January 5, 2021, Program Administrators began tracking non-compliances for face-to-face contacts and reporting back to State Office the reason for the alleged victim not having been seen.

123.   In December 2020, RCCI began development of a job aid for conducting person-merges in IMPACT 2.0 with an anticipated completion by the end of January 2021. Conducting correct person merges improves the accuracy of search results and is expected to reduce the number of alleged victims displaying as being past due on compliance reports where the victim still displays as "unknown" and shows no face-to-face contact has occurred.

124.   On December 21, 2020, RCCI submitted an IMPACT enhancement request to disable the feature that allows exceptions to face-to-face contact requests to be entered in IMPACT 2.0 as well as a request to allow RCCI staff to select the option of Human Trafficking as an allegation type. The policy to discontinue and no longer approve face-to-face contact exceptions went into effect January 4, 2021. The policy to discontinue and no longer approve face-to-face contact exceptions was effective on December 1, 2020. The discontinued policy was formerly available in CCI Handbook section 6412.11. [*Source Document: (September 2020 - 6413.2 Documenting Time Frame-Required Contacts in IMPACT (Numbered as Policy 6412.2 as of Jan 2021),* uploaded to the Monitors' SharePoint on January 15, 2021].

125.   On January 4, 2021, RCCI published policy that clarifies when to select the Purpose Code: Initiation in IMPACT 2.0 and when to select Purpose Code: Gather/Obtain. This change does not impact the face-to-face contact requirement with all alleged victims as part of case initiation and within the required priority timeframe. The use of the entry contact type simply provides a technical placeholder in IMPACT which allows cases to be closed in the IMPACT system. [See http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp#CCI_6412_2].

126. In review of data reports provided to the Monitors for face-to-face contact data based on methodology[15] in place as of January 4, 2021, for Priority 1 investigations during FY20Q4:
   a. Alleged victims in PMC in Closed Investigations – 64% (30 out of 47)

127. Effective, September 1, 2020, monthly data reports, instead of quarterly data reports, were used, and review of the data provided to the Monitors are shown below for Priority 1 investigations:
   a. September 2020 – 88% (7 out of 8) alleged victims in PMC Closed
   b. October 2020 – 89% (8 out of 9) alleged victims in PMC Closed
   c. November 2020 – 94% (17 out of 18) alleged victims in PMC Closed

**EFFORTS RELATED TO REMEDIAL ORDER 10 – Completion of Investigations**

128. RCCI must complete its investigations within 30 days, unless an extension is requested and approved. [*See* Child Care Investigations Handbook Sections 6610 and 6611, located at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6600.asp#LPPH_6610].

129. RCCI Investigation completions likely have been impacted by several factors, including various policy changes discussed herein, primarily the ongoing modifications to the PN policy, and by a spike in intakes for investigations. In October 2019, there were 122 intakes opened for an investigation compared to 196 intakes open for investigation in October 2020. This shows a 61% increase of intake for investigation in comparison to the same time last year.

130. In June 2019, a field communication and corresponding job aid for investigation completions were provided to all RCCI staff providing detailed instruction on documenting extension requests and approvals in IMPACT. During the extension period, the investigator must attempt to obtain the necessary information for completing the investigation at least once per week and document the efforts made to obtain the information. If an extension is needed beyond the second extension (which may be seven, 14, or 21 days), the supervisor must consult with the manager to obtain approval for the extension, which must be documented. Extensions may be approved in the following situations:
   a. Medical information is still needed;
   b. An autopsy report is pending;
   c. Law enforcement reports have not been received; or
   d. An interview with the alleged perpetrator or other principal source involved in the investigation has been delayed due to circumstances beyond the investigator's control. [*Source Documents*: Exhibit A.4 (*CCI Field Communication # 10*, dated June 19, 2019), and Exhibit A.5 (*Child Care*

---

[15] Exceptions to face-to-face with victims were no longer utilized after policy revisions on December 1, 2020. The referenced data is compliance with actual face to face contact entries

*Investigations Job Aid: Extensions in IMPACT)*, admitted in September 3, 2020 Show Cause Hearing].

131.  On September 11, 2019, CCI Field Communication #014 was released regarding amended policies to increase oversight of investigations and to formalize the following practice changes in how RCCI managed the work of its units. The changes noted in the field communication included the following:
    a. Requiring an interim staffing between the supervisor and investigator within ten days of intake, instead of within 20 days. This change was designed to support supervisor involvement earlier in the investigation to provide further direction and support toward completion.
    b. Requiring all investigations to be staffed by the 25th day after the date of the intake report. This staffing would either be a dispositional staffing for completion and submission of the investigation by the 30th day for approval, or an extension staffing to determine the appropriate extension reason and timeframe. [*Source Document*: Exhibit A.12 (*Field Communication # 014*, dated September 11, 2019), admitted in September 3, 2020 Show Cause Hearing].

132.  On September 23, 2019, distribution of the weekly INSIGHT reports to unit supervisors began to identify investigation timeframes, investigations coming due, and investigations overdue.  INSIGHT is a quick reference tool that provides information such as task deadlines and critical case milestones on active investigations into online dashboards for RCCI staff to use in their daily work.

133.  Effective October 1, 2019, CCI applied new definitions of abuse, neglect, and exploitation to all dispositioned investigations. [*Source Document*: Exhibit A.14 (*CCI Field Communication # 015*, dated September 30, 2019), admitted in September 3, 2020 Show Cause Hearing].

134.  In November 2019, CCI launched the Case Closure Project in regions that experienced a high backlog of investigations.  During calendar year 2019, intakes opened by RCCI for investigation increased by 39% compared to calendar year 2018, which impacted timeliness of completion of investigations.  As part of this project, additional staff from other program areas were assigned to assist RCCI in closing outstanding investigations. This project also provided a structured approach for closing out older investigations, as well as additional monitoring and oversight. The project concluded April 30, 2020.  DFPS provided information regarding the increase in intakes and its backlog reduction project to the Monitors on January 30, 2020 [*Source Document*: Exhibit A.18 (*Olah email dated January 30, 2020)*, admitted in September 3, 2020 Show Cause Hearing]. See related effort regarding backlog in #141 and #142.

135.  In December 2019, CCI published a field communication with instructions for its staff regarding the new enhancements and features in IMPACT that rolled out the previous day, as well as addressed related policy changes and new functionality, including the ability to request and approve/reject 30-day extensions, in addition to existing seven-, 14-, 21- extensions, to the completion of an investigation. At that time,

the criteria for requesting additional time to complete the investigation noted that an extension would only be approved when an investigation could not be completed due to the following: 1) medical information was still needed; 2) an autopsy report had not been received; 3) law enforcement reports had not been received; and 4) an interview with the alleged perpetrator or other principal source involved in the investigation was delayed to circumstances beyond the investigator's control. Additionally, the extension request, and approval or rejection had to be documented in IMPACT and CLASS. Finally, a supervisor could extend the first extension for the same reasons; however, after a second extension, the supervisor was required to consult with the CCI Program Administrator to obtain approval for the extension. [*Source Document*: Exhibit A.21 (*CCI Field Communication # 017*, dated December 20, 2019), admitted in September 3, 2020 Show Cause Hearing]. On January 6, 2020, CCI disseminated by email to RCCI staff Field Communication # 17 related to Remedial Order 10. [*Source Document*: Exhibit A.21 (*CCI Field Communication # 017*, dated December 20, 2019), admitted in September 3, 2020 Show Cause Hearing].

136.   On January 30, 2020, DFPS informed the Monitors that due to an uptick in intakes over the past year, RCCI was working through a backlog, which impacted timely completions. DFPS instituted a backlog reduction plan and put additional staffing in place to improve timely completions over time. [Source Document: Olah Email to Monitors dated January 30, 2020, uploaded to Monitors' SharePoint on January 15, 2021].

137.   In March 2020, QAT also began sending a weekly extension report to RCCI Program Administrators. This report provided a list of investigations that were on extensions. This list was intended to provide supervisors and investigators a quick reference for investigations currently on extension, the number of times an extension had been requested for the investigation, and upcoming due date for the current extension (if it was still valid). Supervisors and investigators were able to use this information to be aware of pending due dates and whether another extension needed to be requested. This report was implemented to ensure that supervisors are following policy by utilizing the new extension functionality in IMPACT 2.0.

138.   In April 2020, CCI began work on the Caseload Management Initiative, which is a strategic plan aimed at developing protocol to strengthen caseload management practices, including timeliness of completion. This plan was launched June 1, 2020.

139.   On April 17, 2020, CCI staff participated in a conference call with the Monitors to discuss questions they had about caseload data; a written response to specific questions was provided on April 24, 2020. [*Source Document:  RCCI Investigator Caseload Data Questions*, uploaded to the Monitors' SharePoint on January 15, 2021].

140.   Data from FY20 Q3 (March through May 2020) indicated that around 46% of investigations closed timely. However, as noted below, March and April 2020 fell within the timeframe of the case closure project. Additionally, of the 321 investigations which started in Quarter 3, 255, or 79%, were either completed timely (135 closed

investigations) or were not yet untimely at the conclusion of the quarter (120 open at the end of May with a date to complete sometime in June 2020 or later).

141.   DFPS has made efforts to reduce investigative backlog in RCCI, both as a part of its ongoing workload management function as well as in response to Remedial Order No. 10. On May 27, 2020, CCI held a Caseload Management Initiative Kick Off Meeting via GoToMeeting. The document "CCI Caseload Management for Supervisors," was provided to supervisors on June 1, 2020. [*Source Document*: Exhibit A.28 – ([*Source Document*: Exhibit A.28 – *CCI Caseload Management for Supervisors)*, admitted in September 3, 2020 Show Cause Hearing]. Based on DFPS data for June, due to the work of the backlog project, DFPS reduced the backlog of cases from a high of 765 in January to 265 in June - a 65% reduction follow support and assistance from CPI SI and Master Investigators. Using the June methodology, the number of backlog cases in December 2020 was 408, a 46% reduction from the high of 765 in January 2020, but a 54% increase from the low of 265 in June 2020.  Using the new RCCI methodology, there were 819 investigations open on January 14, 2021, and of those 536, (65%) have been open longer that 30 days.  Efforts to further reduce backlog are discussed below, see #142. As noted in footnote 9 above, effective January 14, 2021, RCCI uses a new methodology to determine its backlog that counts investigations that have been open longer than 30 days on the last day of the month. Policy requires completion within 30 days for investigations, unless there is an approved extension for the investigation.  This narrow definition of backlog, within the context of existing policy, likely will result in a larger number of investigations being considered as part of a backlog.

142.   On December 27, 2020, following closely assessing investigation completions, RCCI decided to conduct another backlog project to handle outstanding investigations. The need was identified and on January 4, 2021, RCCI secured resources from the DFPS Special Investigations Division to allocate approximately 26 SIs to assist with RCCI backlog in Regions 3, 6, 7, and 8. On January 5, 2021, RCCI held a planning meeting with the SI Division and decided to deploy SIs to assist with backlogged investigations as identified under the new methodology.  This deployment began on January 11, 2021.

143.   As of June 2020, RCCI has increased the number of investigator FTEs to 71, which includes four positions related to Heightened Monitoring (see Remedial Order No. 20). This is a 51% increase in investigator FTEs since September 1, 2017.

144.   The QAT began two monthly case reads for quality review in April 2020, which addressed closed abuse/neglect investigations and assessing PN screening decisions. The quarterly report regarding closed abuse/neglect investigations was completed in September 2020.  RCCI uses the quarterly reports of the QAT to identify gaps and further improve policy and practice and provide further training based on any identified needs.

145. On July 23, 2020, a reminder email was sent to RCCI staff to reiterate the expectation to utilize IMPACT 2.0 automation as directed in FC #017 Automation Roll Out. This email included a copy of Field Communication #017 and accompanying job aids, previously sent on December 19, 2020. This was redistributed as a reminder to ensure data reports accurately reflect field actions.

146. Between August 18 and September 4, 2020, all RCCI staff participated in an IT refresher training that reiterated the expectations surrounding the use of IMPACT 2.0 enhancements to document good cause extensions in IMPACT 2.0.

147. On August 31, 2020, CCI's QAT began sending a daily Extension Report (replacing the weekly report) to Supervisors and Program Administrators in an effort to ensure staff are utilizing IMPACT 2.0 as instructed and requesting extensions timely.

148. In August 2020, RCCI began changing policies and practices to limit the types of intakes that can be reclassified to PN. As PN reclassification decreased, the percentage of intakes progressing to investigations increased for the months leading up to and after the policy change (i.e., August to November):
   a. May 2020: 70%
   b. June 2020: 80%
   c. July 2020: 77%
   d. August 2020: 84%
   e. September 2020: 87%
   f. October 2020: 98%[16]
   g. November 2020: 98%[17]

149. Beginning December 1, 2020, RCCI Supervisors are required to conduct a case assignment staffing at the onset of investigations. Case assignment staffings allow the supervisor and investigator to strategically plan how to work investigation tasks in a planned out, efficient manner. During the interim staffing, supervisors review the tasks discussed during the case assignment staffing to ensure investigation tasks are being completed timely. By becoming involved in the investigation sooner, supervisors can actively guide the investigation as it is being worked, which should result in more complete and timely investigation.

150. In review of data reports provided to the Monitors for timely investigation completion data based on methodology[18] in place as of January 4, 2021 for all investigations during FY20Q4: 51% (205 out of 402)
   a. Priority 1 – 52% (14 out of 27)
   b. Priority 2 – 51% (191 out of 375)

---

[16] Reflects first month that new PN practice change took effect.

[17] Screeners moved to SWI with policy fully in place related to PN change on November 1, 2020.

[18] As of January 4, 2021, CCI staff can utilize good cause extensions in limited circumstance as outlined in #152.

151.   Effective September 1, 2020 monthly data reports, instead of quarterly data reports, were used and provided to the Monitors as shown below for investigation completions:

Priority 1:

    a. September 2020 – 86% (6 out of 7)

    b. October 2020 – 50% (3 out of 6)

    c. November 2020 – 46% (6 out of 13)

Priority 2:

    a. September 2020 – 68% (84 out of 123)

    b. October 2020 – 60% (52 out of 86)

    c. November 2020 – 44% (47 out of 108)

RCCI Investigation completions appear to have been impacted by various policy changes discussed herein, including modifications to the PN policy, and the uptick in investigations in October 2020.  As noted above, in October 2019 there were 122 intakes opened for an investigation compared to 196 intakes open for investigation in October 2020.  This shows a 61% increase of intake for investigation from last year. Additionally, as noted in paragraph # 148, RCCI investigated 98% of its intakes in November 2020 in comparison to 70% in May 2020. With that kind of increase in the number of investigations, there is an adjustment period during which DFPS is implementing new policies that are designed to improve the thoroughness, quality, and timeliness of investigations.  As these efforts continue, DFPS is also seeking additional staff to support the work through its legislative appropriations process, as noted in paragraphs 16 and 19.

152.   On January 4, 2021, RCCI amended Child Care Investigations Handbook Section 6524.5, to clarify the circumstances in which it is appropriate to request an extension in a child fatality investigation. This policy update also amended 6611.1 to allow fatality investigations to be closed without receipt of a final autopsy if sufficient information is available to dispose the allegations. See Child Care Investigations Handbook           6524.5,           located           at: http://www.dfps.state.tx.us/handbooks/CCI/Files/LPPH_pg_6400.asp#LPPH_6524_5 ].

## EFFORTS RELATED TO REMEDIAL ORDER B-5

153.   On December 19, 2019, DFPS deployed IMPACT 2.0 enhancements specifically designed to address functionality for various Remedial Orders, including notification to caseworkers of abuse and neglect intakes (Remedial Order No. B-5). The automation put in place a hard edit to require that the screener, supervisor, or designee notify the CPS caseworker and supervisor of any child in an open substitute care stage by completing the Notifications section in IMPACT on the Priority/Closure page, prior to stage progressing the intake report to an investigation. If the intake involves a foster

home, notification is also sent the CPS caseworker and supervisor of any non-victim child in an open substitute care stage placed in the foster home. The notification is generated during the intake stage before the intake is closed.  The automated notification provides notice to the caseworker and supervisor at the point in time that the RCCI screener or supervisor makes the decision to stage progress to an investigation or close as a Priority None (PN).  By creating this functionality, DFPS now has the ability to pull data from IMPACT and report on it. Although these updates did not deploy until December 2019, DFPS had been working diligently on this enhancement since August 2019. On January 6, 2020, CCI disseminated by email to RCCI staff Field Communication # 17 related to the deployed changes for Remedial Order B05. [*Source Document*: Exhibit A.21 (*CCI Field Communication # 017, dated December 20, 2019,*) admitted in September 3, 2020 Show Cause Hearing].

154.   The automated notice is not currently built into the adoption stage of service; therefore, when a child is placed in an adoptive home, DFPS keeps the substitute care stage open in addition to the adoption stage so that caseworkers may receive the notice. DFPS found six instances of this occurring in the August 2020 data provided to the Monitors. On October 16, 2020, DFPS informed the Monitors of this issue and the steps the Department took to rectify the issue.  An automation change, which will allow for the notice to be provided in the adoption stage of service, will occur in the fourth quarter of state fiscal year 2021. Until the automation change is complete, CPS caseworkers of children in adoptive settings receive notice of allegations through the substitute care stage of service, rather than the adoption stage of service. Accordingly, on October 14, 2020, all adoption workers were notified that they needed to keep the substitute care stage of service open, and on October 30, 2020, CPS Policy 1411 was updated to require the substitute care stage of service remain open when a child is in an adoptive placement. [*Supporting Documents: CPS Policy Section 1411* located at http://www.dfps.state.tx.us/handbooks/CPS/Files/CPS_pg_1400.asp#CPS_1411 and *ACTION REQUIRED: Sub Stages Must Remain Open Until Adoption Consummation* uploaded to Monitors' SharePoint on January 15, 2021].

155.   For additional DFPS efforts relating to Remedial Order B-5, see the sworn certification of Erica Banuelos, CPS Director of Field.

156.   The monthly reporting for automated notifications to the CVS worker by month based upon reports provided to the monitors for intakes involving an alleged victim in the permanent managing conservatorship (PMC) at the time of intake, caseworkers received notifications of the intake, as follows:
    a. May 2020 – 100% (233 out of 233)
    b. June 2020 – 99% (231 out of 232)
    c. July 2020 – 100% (182 out of 182)
    d. August 2020 – 97% (216 out of 223)
    e. September 2020 – 100% (228 out of 228)

f. October 2020 – 99% (247 out of 249)

g. November 2020 – 100% (186 out of 186)

## COMMUNICATION WITH MONITORS

157.   On September 5, 2019, in response to a Monitor request dated August 21, 2019, DFPS provided to the Monitors the RCCI July 2019 case read report, which was a preliminary version of the reports that would later be compiled and given to the Monitors on a quarterly basis. The report provided high-level performance information concerning ten Remedial Orders, including investigation initiation, face-to-face contact with victims, timely investigation completion, notifications to primary caseworker, and notifications to the reporter. [*Source Documents*: Exhibit A.10 – (*RCCI July 2019 Report*) and Exhibit A.11 (*Olah email communication dated September 5, 2019*), admitted in September 3, 2020 Show Cause Hearing].

158.   On September 30, 2019, the Monitors submitted the Data and Information request to the defendants. Over the course of the months during which the Monitors have assessed DFPS performance, DFPS has provided extensive reporting and documentation in response to Monitor requests. [*Source Document*: Exhibit A.13 (*Monitors September 30, 2019 data and information request*), admitted in September 3, 2020 Show Cause Hearing].

159.   On November 1, 2019, copies of RCCI field communications regarding the Notification to Reporter Letter, Face-to-Face Initiation with Victims, and Investigation Extensions in IMPACT were provided to the Monitors. [*Source Documents*: Exhibit A.2 (*Field Communication # 008*, dated March 11, 2019), Exhibit A.4 (*CCI Field Communication # 10*, dated June 19, 2019), Exhibit A.15 (*CCI Field Communication #07*, dated March 8, 2019), and Exhibit A.16 (*SharePoint screenshot where documents uploaded for the Monitors*), admitted in September 3, 2020 Show Cause Hearing].

160.   In the November 15, 2019 provision of information to the Monitors, DFPS provided a large number of documents and reports in response to the Monitors' September 30, 2019 data and information request. Specifically:

a. DFPS provided to the Monitors its first case read reports for elements that could not yet be measured through data, pending deployment of necessary automation, creation of data warehouse tables, and the passage of the first full quarter for measurement.  These reports evaluated, among other things, compliance with Remedial Order Nos. 5, 7, and 10, and assessed performance utilizing additional case information beyond that recorded in IMPACT date fields. DFPS also provided these case read reports in January 2020,[19] which brought the reporting to the same cadence as the state fiscal year generally used for reporting, and again on April 15, 2020. By July 15, 2020, DFPS had developed reporting tables to take the place of the case reviews except for Priority 1 and Priority 2 timely

---

[19] DFPS had proposed to deliver the January reports by January 15 but needed a two-week extension to improve the utility of the reports for monitor staff.

initiations. [*Source Document*: Exhibit A.17 (*Olah email to Monitors re: DFPS response to data and information request*), admitted in September 3, 2020 Show Cause Hearing].

161.  DFPS also provided several data reports to the Monitors, which form the basis of regular data reports for Remedial Order Nos. 3, 5, 7, 10 and B-5, including:

a. A report listing alleged victims in PMC involved in intakes received between July 31 and September 30, 2019. This intake report includes data elements such as alleged victims, allegation type, the initial priority of the intake, the final priority of the intake, and other requested data. The report has been provided to the Monitors on a monthly basis beginning in November 2019. From the time the mandate issued in July 2019 to July 15, 2020, the Monitors have received nine monthly RCCI Intake reports.

b. A report listing RCCI Investigations opened and a separate report for closed investigations between July 31, 2019 and September 2019, which contains a large number of data elements including assigned investigator, date of investigation completion, type of investigation initiation, and disposition. A second report combining both investigations started and investigations closed during October and November 2019 was provided in January 2020. Subsequently, DFPS has provide the report quarterly. DFPS has provided the Monitors three quarterly RCCI Investigations case reading reports.

162.  In addition, DFPS has provided and updated data dictionaries to accompany the reports provided to the Monitors; participated in conference calls with Monitor staff to discuss and help explain the data; answered nearly 53 Monitor questions related to RCCI investigations within 24 hours of request; revised reports in response to Monitor specifications; answered related ad hoc questions from the Monitors; and generally endeavored to cooperate with the Monitors to share the requested information.

163.  On January 28, 2020, a meeting was held between DSI, RCCI, and the Monitors' data team. The meeting topics included: 1) a high-level overview of what information is provided in the data reports; 2) a clarification that RCCI case reads assess all the investigations on the data report listing, although the investigations may be at a different stage in the data report compared to when they are case read (e.g., the investigation was opened/closed, documentation was updated or corrected); and 3) the plan to include more timeliness data in the data reports once data warehouse tables populate the information and the data reports are built, but case reads will be required to provide supplemental information that data cannot capture (e.g., there was timely face-to-face contact with an alleged victim, but the contact was not documented correctly).

164.  RCCI took steps to create the screener unit and shared relevant information regarding improvement efforts with the Monitoring team. On March 24, 2020, in response to the Monitors' Data and Information request of February 21, 2020, DFPS training materials and other relevant documents, including Training Material regarding priority, Statewide Intake RCCL Intake Training Guidelines, and Screener Training

Material. [*Source Document:* Exhibit A.23 *(screenshot of documents uploaded to Sharepoint on March 24, 2020)*, admitted in September 3, 2020 Show Cause Hearing].

165.   On March 2, 2020, an email was received from Kevin Ryan about the case readings counting initiations as compliant when there is a timely face-to-face contact with one alleged victim, even if other alleged child victims are not seen timely and there is no permissible exception. [*Source Document:* Exhibit A.24 *(Ryan email dated March 2, 2020)*, admitted in September 3, 2020 Show Cause Hearing]. On April 3, 2020, a response was provided to Kevin Ryan explaining that historically, CCI applied the policy it adopted such that investigation initiation is met by making face-to-face contact with the alleged victim, unless an exception is granted. While all alleged victims should be observed or interviewed within the required time frames, in these case reads, CCI determined that the investigation initiation was met when contact was made with at least one alleged victim, or by other means if an exception to the face-to-face contact with the alleged victim was granted. The case reading initially measured timely contact with all alleged victims as a separate measure. Following the exchange with monitor staff, the RCCI QAT reevaluated data collected in the November 2019 and January 2021 case read reports for compliance with investigation initiation time frames based on the application of CCI Policy and Field Communication #008 put forward by the monitors. The results of the RCCI QAT's reevaluation were provided as addenda, in which investigations were only credited for timely initiation if all alleged victims in PMC were interviewed. Future case read reports carried forward this interpretation. [*Source Document*: Exhibit A.27 *(Olah email communication dated April 3, 2020 with provided documents attached)*, admitted in September 3, 2020 Show Cause Hearing].

166.   On March 13, 2020, Megan Annitto with the monitoring staff requested information concerning the Statewide Intake and RCCI screening process. On March 30, 2020, DFPS provided the requested information.     [*Source Documents*:   Exhibit A.25 *(Annitto email dated March 13, 2020)*, and Exhibit A.26 *(DFPS response dated March 30, 2020)*, admitted in September 3, 2020 Show Cause Hearing].

167.   By July 15, 2020, DFPS data reporting provided the information that had previously been provided in case reading reports. DFPS continues internal case readings to evaluate compliance. [*Source Document*: Exhibit A.17 *(Olah email communication to Monitors dated July 15, 2020)*, admitted in September 3, 2020 Show Cause Hearing].

168.   The data provided to the Monitors on July 15, 2020, included information related to notifications to caseworkers of alleged victims in RCCI intakes. The data, which covered the timeframe of intakes in May 2020, indicated that in 100% of intakes, caseworkers received notifications of the intake. [*Source Document*: Exhibit A.17 *(Olah email communication to Monitors dated July 15, 2020)*, admitted in September 3, 2020 Show Cause Hearing].

169.   As of the data report provided to the Monitors on July 15, 2020, caseworker notification of an RCCI intake is monitored through a data report that tracks the provision of notification at the time the intake is downgraded to a PN. The report indicated CPS caseworkers and supervisors received the notification in 100% of intakes

in May 2020. [*Source Document: RO3.1 RCI and CPI Intakes May 2020 - July-15-20 – 98621,* uploaded to Monitors' SharePoint on July 15, 2020].

170.   On August 12, 2020, the Monitors asked DFPS staff why, in some investigations with more than one alleged PMC child victim, the same date and time is entered for the Face-to-Face contact with different children. On August 13, 2020, DFPS staff responded that as is regularly the case with new functionality, staff will need some time, training, and re-training to ensure proper utilization. DFPS staff directed the Monitors to language in a December 2019 job aid instructing investigators about how to document such initiations in IMPACT. [*Source Document: Carmical August 27, 2020 Email to Monitors re Face-to-Face Contact Data,* uploaded to Monitors' SharePoint on January 15, 2021].

171.   On August 15, 2020, the Monitors asked DFPS staff whether, in light of the issues concerning some investigators incorrectly documenting face-to-face contacts, DFPS plans to continue relying on case reads to manage and determine compliance with the related Remedial Orders. On August 17, 2020, DFPS staff informed the Monitors that staff will continue to closely monitor the data reports relating to these Remedial Orders to gauge performance and help drive any internal practice changes. In addition to these data reports, DFPS will continue conducting quality case reads, specifically looking for any instances in which children involved in the same investigation have an identical interview time stamp. The data reports and ongoing internal quality assurance activities will inform the development of targeted trainings for field staff and supervisors, similar to the upcoming mandatory IT trainings, as well as any internal practice changes. DFPS is also in early discussions with IT to evaluate the feasibility and any associated costs to create functionality that will not allow multiple victims to be selected for certain contact types. [*Source Document: August 27, 2020 Email to Monitors re Face-to-Face Contact Data,* uploaded to Monitors' SharePoint on January 15, 2021].

172.   As of the data provided to the Monitors on August 17, 2020, caseworker notification of an RCCI intake is monitored through a data report that tracks the provision of notification at the time the intake is downgraded to a PN.  The report indicated CPS caseworkers and supervisors received the notification in 100% of intakes in June 2020. [*Source Document*: Exhibit A.34 (*Olah email communication to Monitors dated August 17, 2020)* admitted in September 3, 2020 Show Cause Hearing].

173.   The data provided to the Monitors on August 17, 2020 included information related to notifications to caseworkers of alleged victims in RCCI intakes. The data, which covered the timeframe of intakes in June 2020, indicated that in 99% of intakes, caseworkers received notifications of the intake.  [*Source Document*: Exhibit A.34 (*Olah email communication to Monitors dated August 17, 2020)*, admitted in September 3, 2020 Show Cause Hearing].

174.   On August 27, 2020, DFPS notified the Monitors of an upcoming policy change relating to face-to-face initiations with multiple victims, an August 2020 policy change clarifying language around utilizing PNs for intakes that are vague, and a policy change related to sharing investigation conclusion information with operations. [*Source Document:* August 27 2020 Email from Carmical to Monitors uploaded to Monitors' SharePoint on January 14, 2021].

175.   On August 28, 2020, the Monitors informed DFPS that the Court has asked them to review the RCCI QAT unit's quarterly report regarding assessment of PN screening decisions.   The same day, DFPS provided this report to the Monitors. [*Source Document: Email Dated August 28, 2020 regarding PN assessment report, RCCI PN Assessment Report,* uploaded to Monitors' SharePoint on January 14, 2021].

176.   On September 1, 2020, DFPS provided the Monitors a monthly report of RCI caseloads as of July 31, 2020. [*Source Document: RO.B1 RCI caseloads,* uploaded to Monitors' SharePoint on September 1, 2020].

177.   On September 3, 2020, the Monitors asked DFPS to provide the results, and all associated findings and detail, of the DFPS review of the cases identified in Appendix 3.2 to the Monitors' First Report to the Court and to identify the investigations in which the State agreed with the Monitors' findings and steps taken by DFPS to address the potential harms associated with the closure of those investigations. DFPS staff affirmed that they would provide this information. [*Source Document: October 1, 2020 Email to Monitors re QAT Analysis of PNs and INVs*, uploaded to Monitors' SharePoint on January 15, 2021].

178.   On September 7, 2020, DFPS provided the Monitors with the September Blueprints and Field Communication #026. [*Source Document: Email dated re RCCI updates,* uploaded to Monitors' SharePoint on January 15, 2021].

179.   On September 15, 2020, DFPS provided the Monitors with the July 2020 RCI and CPI Intakes report. [*Source Document: RO3.1 RCI and CPI Intakes July 2020 - Sept-15-20 – 99252,* uploaded to Monitors' SharePoint on September 15, 2020].

180.   On September 16, 2020, DFPS informed the Monitors of the need to address some issues with the internal reports DFPS completed of CCI cases/PNs reviewed in the Monitors' appendices, which would necessarily delay their production.   [*Source Document: October 1, 2020 Email to Monitors re QAT Analysis of PNs and INVs,* uploaded to Monitors' SharePoint on January 15, 2021.].

181.   On September 30, 2020, DFPS provided the Monitors with a number of reports, including:

      a. Q4 FY 2020 CPI Investigations report; [*Source Document: Copy of RO3.1 RCI and CPI Intakes Aug 2020 - Sept-30-20 – 99654,* uploaded to Monitors' SharePoint on September 30, 2020].

      b. Q4 FY 2020 RCI Investigations report, for which DFPS added an indicator for timely initiation; [*Source Document: RO3.2 CPI Investigations Q4 FY20 - Sept 30-20 – 99714,* uploaded to Monitors' SharePoint on September 30, 2020].

      c. August 2020 RCI and CPI Intakes report, for which DFPS added allegations in each intake in CPI intakes to align with information provided on RCI intakes, and clarified the population covered in the data dictionary; [*Source Document: RO3.2 RCI Investigations Q4 FY 20 - Sept-30-20- 99229-with provider dates*, uploaded to Monitors' SharePoint on September 30, 2020], and

      d. RCI caseloads as of August 31, 2020 *[Source Document: RO.B1 RCI caseloads as of 8-31-20 - sept-30-20 –99638,* uploaded to Monitors' SharePoint on September 30, 2020].

182.   On October 1, 2020, DFPS informed the Monitors of several changes related to PNs in RCCI, including limiting PNs to investigations previously investigated or not within RCCI's jurisdiction, and screener staff transitioning to Statewide Intake. [*Source Document: October 2020 Email to Monitors re PN Changes* uploaded to Monitors' SharePoint on January 15, 2021].

183.   Also on October 1, 2020, DFPS provided the Monitors with a number of internal reports concerning the CCI cases/PNs reviewed by the Monitors and discussed in the First Court Monitors' Report 2020, including:

      a. A summary of CCI's review of the 35 investigations noted by the Monitors to be incorrectly dispositioned;

      b. Investigation analyses corresponding with the 35 investigations CCI reviewed;

      c. A summary of CCI's review of the 57 intakes noted by the Monitors to be downgraded incorrectly;

      d. Detailed information concerning CCI's review of the 57 intakes; and

      e. A summary of additional activities DFPS/HHSC conducted as to the 42 intakes CCI agreed were downgraded incorrectly. [*Source Document: Oct 1OO Email to Monitors re QAT Analysis of PNs and INVs* uploaded to Monitors' SharePoint on January 15, 2021].

184.   On October 12, 2020, DFPS provided the Monitors a broadcast communication concerning the PN changes and screener staff transitioning to Statewide Intake. [*Source Documents: October 2020 Email to Monitors with Broadcast Communication, and October 2020 Broadcast Communication*, uploaded to Monitors' SharePoint on January 15, 2021].

185.   On October 13, 2020, DFPS provided the Monitors training materials from RCCI's three-day training event that occurred in September/October 2020 and recent cases in

which DFPS issued an RTB finding against a Licensed Childcare Administrator, Director or Owner of an operation. [*Source Document: October 2020 Email from Bugg to Monitors*, uploaded to SharePoint on January 14, 2021].

186. On October 14, 2020, DFPS provided the Monitors with the latest RCCI Blueprint and accompanying documents, related to preponderance of evidence. [*Source Document: October 2020 Email to Monitors re Blueprints training, October 2020 – Blueprints for Quality Investigations_Preponderance of Evidence,* uploaded to Monitors' SharePoint on January 14, 2021].

187. On October 16, 2020, DFPS provided the Monitors the survey instrument the RCCI QAT is utilizing for its internal, qualitative read of cases marked as deficient in the agency's data reports along with a summary of how and why the case reads would be completed. DFPS also requested to have future discussions with the Monitors concerning their case reading tools and additional opportunities for the agency to evaluate and improve practices and further conform to the Monitors' case reading tool parameters. [*Source Document: October 2020 Email to Monitors*, uploaded to Monitors' SharePoint on January 14, 2021].

188. Also on October 16, 2020, DFPS informed the Monitors that August 2020 data previously provided to the Monitors included seven instances involving four total children in which notifications were not sent to caseworkers in accordance with Remedial Order No. B5. DFPS summarized remedial actions taken to ensure appropriate notifications are sent in the future. [*Source Document: October 2020 Email from Bugg to Monitors re RO B5 Notifications,* uploaded to Monitors' SharePoint on January 14, 2021].

189. On October 20, 2020, the Monitors informed DFPS that they reviewed DFPS QAT's analysis of the 57 PN screening decisions and 35 Maltreatment-In-Care investigations identified by the Monitors as inappropriately resolved in the first report to the Court in June 2020. The Monitors noted their concerns with DFPS' analysis and concluded that owing to recent policy and practice changes, it would be a more prudent use of resources to focus on monitoring the agency's more recent and current practice rather than continuing to focus on cases from the first monitoring report. DFPS staff concurred and said they would be in touch soon concerning investigations that either fit into the category of concurrence based on rule changes or the category of disagreement for subsequent discussion. [*Source Document: October 2020 Email to Monitors re QAT Analysis of PNs and INVs,* uploaded to Monitors' SharePoint on January 14, 2021].

190. On October 23, 2020, DFPS met with the Monitors to review the revised intake process at SWI, training related to the new changes, status of the relocation of RCCI screeners to SWI and the RCCI QAT's involvement in reviewing referrals.

191.   On October 24, 2020, DFPS asked the Monitors for clarification concerning their request concerning applicability of the Remedial Orders to out-of-state placements. Following clarifying discussions with the Monitors between October 29, 2020, and November 16, 2020, on November 20, 2020, DFPS provided the Monitors with a formal response. [*Source Document: November 2020 Email from AC to Monitors re OOS Placements,* uploaded to Monitors' SharePoint on January 14, 2021].

192.   On November 3, 2020, DFPS provided the Monitors with RCCI policy updates and two corresponding field communications, concerning RCCI intake screening procedures and clarifying Administrative Closures and ARIF decisions. [*Source Document: November 2020 Email from Bugg to Monitors re RCCI Policy Changes and FCs,* uploaded to Monitors' SharePoint on January 14, 2021].

193.   On November 2, 2020, DFPS provided the Monitors with a number of reports, including:
   a. September 2020 RCI and CPI Intakes report; [*Source Document: RO3.1 RCI and CPI Intakes Sept 2020 11-2-20,* uploaded to Monitors' SharePoint on November 2, 2020];
   b. September 2020 CPI Investigations report; [*Source Document: RO3.2 CPI Investigations Sept 20 11-2-20 100294,* uploaded to Monitors' SharePoint on November 2, 2020];
   c. RCI Investigations report, for which DFPS added (1) date notice of RCI investigation finding was given to providers; and (2) indicators for timeliness under RO 16 (documentation) and RO 18 (timeliness of notice to reporter and to providers of RCI findings); [*Source Document: RO3.2 RCI Investigations FY 21 – Sept 20, 100165* uploaded to Monitors' SharePoint on November 2, 2020]; and
   d. RCI caseload report as of September 30, 2020 [*Source Document: RO.B1 RCI caseloads as of 9-31-20 – 11-2-20 -99965,* uploaded to Monitors' SharePoint on November 2, 2020].

194.   On November 5, 2020, DFPS requested a meeting with the Monitors to provide an update on progress with the RCCI case review. [*Source Document: Request for meeting question,* uploaded to Monitors' SharePoint on January 14, 2021].

195.   On November 16, 2020, the Monitors sent DFPS a supplemental data and information request, directing DFPS to add the following data elements to its RCCI reports:
   a. RCI Investigations Allegations tab – add operation name, operations number, date investigation stage started, and date investigation stage closed (if closed);
   b. CPI Investigations Allegations tab – add allegation ID, Operation name, operation number, date investigation stage started, and date investigation stage closed (if closed);

c. For both RCI and CPI investigations data, add a category of "child in care" to the alleged perpetrator's relationship to victim; and

d. ROB1 – Investigator and Inspector Caseloads – add date of hire as RCCI inspector or supervisor, and county where housed/officed for staff assigned as the primary worker in at least one RCCI investigation during the month. [*Source Document: Appleseed November 2020 Email to Monitors*, uploaded to Monitors' SharePoint on January 14, 2021].

196. Between November 13 and 23, 2020, DFPS and the Monitors discussed the how best to incorporate the data elements requested in the Monitors' supplemental data and information request, and on November 30, 2020, DFPS provided the Monitors with a formal response. [*Source Document: Re: Data & Information Request*, uploaded to Monitors' SharePoint on January 14, 2021].

197. On November 30, 2020, DFPS provided the Monitors with a number of reports, including:

a. October 2020 RCI and CPI Intakes report; [*Source Document: RO3.1 RCI and CPI Intakes Oct 2020 11-30-20 fcl01*, uploaded to Monitors' SharePoint on November 30, 2020];

b. October 2020 CPI Investigations report; [*Source Document: RO3.2 CPI Investigations Oct 20 11-30-20 100707*, uploaded to Monitors' SharePoint on November 30, 2020];

c. RCI Investigations report; [*Source Document: RO3.2 RCI Investigations Oct 20, 100489 with provider dates* uploaded to Monitors' SharePoint on November 30, 2020]; and

d. RCI caseload report as of October 31, 2020 [*Source Document: RO.B1 RCI caseloads as of 10-31-20 – 11-30-20 -100766*, uploaded to Monitors' SharePoint on November 30, 2020].

198. On December 1, 2020, DFPS provided the Monitors with the November 2020 RCCI Blueprints for Quality Investigations and a notice to CCI staff concerning a number of new policy changes. [*Source Document: Email from Bugg to Monitors re November 2020 Blueprints, November 2020 Blueprints for Quality Investigations, RCCI Policy Changes Effective December 1 2020*, uploaded to Monitors' SharePoint on January 14, 2021].

199. On December 18, 2020, DFPS provided the Monitors with the December 2020 RCCI Blueprints for Quality Investigations [*Source Document: December 2020 Email from Bugg to Monitors re Blueprints, December 2020 – Blueprints for Quality Investigations Memo*, uploaded to Monitors' SharePoint on January 14, 2021].

200. On December 31, 2020, DFPS provided the Monitors with two RCCI Field Communications that went out to RCCI field staff on December 22, 2020, concerning

CLASS searches and clarifying existing policy on when and how a safety plan is implemented with an operation. [*Source Document: December 2020 Email from Bugg to Monitors,* uploaded to Monitors' SharePoint on January 14, 2021].

201. On January 4, 2021, DFPS provided the Monitors a number of reports, including:
    a. RCI and CPI Intakes report; [*Source Document: RO3.1 RCI and CPI Intakes Nov 2020 1-4-21 fcl*, uploaded to Monitors' SharePoint on January 4, 2021]
    b. CPI Investigations report; [*Source Document: RO3.2 CPI Investigations Nov 2020 1-4-21*, uploaded to Monitors' SharePoint on January 4, 2021]
    c. RCI Investigations report; [*Source Document: RO3.2 RCI Investigations Nov 20*, uploaded to Monitors' SharePoint on January 4, 2021] and
    d. RCI caseloads report [*Source Document: RO.B1 RCI caseloads as of 11-3—20 – 1-4-21 -100969*, uploaded to Monitors' SharePoint on January 4, 2021].

202. DFPS also informed the Monitors as to the RCI Investigations report that:
    a. beginning with this RCI Investigation report, an investigation will be considered timely if all alleged victims in PMC had a face-to-face contact within required timeframes;
    b. For reports due to the Monitors on or after January 4, 2021, the final date submitted for approval in IMPACT will be used to calculate the completion of all investigations, to better align with the Court's Order, ensure consistency in reporting and ease verification efforts; and
    c. For this and future reports, the final date submitted for approval in IMPACT is used as the one date to determine compliance with Remedial Order 16. The date complete in CLASS will no longer be used to calculate compliance with any remedial order. As a result, for reports due on or after February 1, 2021, the date complete in CLASS will no longer be included. [*Source Document: RCCI Initiation and Completion,* uploaded to Monitors' SharePoint on January 14, 2021].

203. DPFS has worked deliberately and in good faith to comply with Remedial Order Nos. 3, 5, 7, 10, and B5 and certifies compliance with the components of Remedial Order Nos. 3, 5, 7, 10, and B5, as discussed herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2021.

Clint Cox
Director of Child Care Investigations