**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| *Plaintiffs*, | § § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| *Defendants*. | § § | |

**DEFENDANT'S FIRST AMENDED VERIFIED OBJECTION
TO MONITORS' SECOND REPORT**

Defendant Jaime Masters, in her official capacity as Commissioner of the Texas Department of Family and Protective Services ("Defendant"), hereby files these First Amended Verified Objections to the Court Monitors' Second Report to the Court filed May 4, 2021 [ECF 1079] ("Second Report") pursuant to Federal Rule of Civil Procedure 53(f)(2). These amended objections update Defendant's objection III *infra*.

**I.      IV. B.   Remedial Order 3: Screening and Intake Performance Validation**

Defendant objects to the Second Report providing partial information as to the Monitors' characterization of the State's position regarding the application of Remedial Order 3. *See* ECF 1079 at p. 66, n. 109. Footnote 109 states:

> On Sept 4, 2020, during a hearing regarding Plaintiffs' motion to hold the state in contempt for failure to implement certain Remedial Orders, the State agreed that Remedial Order 3 applies broadly to the PMC class and thereby incorporates PMC children placed in licensed and unlicensed placements. *See* Contempt Hr'g Tr. 6:14 to 8:21, Sept. 4, 2020. Specifically, Kimberly Gdula, Assistant Att'y General, stated, "I do understand that Remedial Order Number Three references the PMC

1

class, not RCCI specifically." *Id*. at 7:14-17. Child Protective Investigations, CPI, is the investigative unit within DFPS charged with screening and investigating allegations of abuse or neglect involving PMC children in unlicensed placements. Following the State's agreement, the Monitors included a qualitative review of CPI's screening decisions of referrals involving PMC children placed in unlicensed homes in their assessment of Remedial Order 3.

Between March 23, 2021 and March 31, 2021, the following email exchanges occurred between Defendants and the Monitors. These emails demonstrate that DFPS does not agree and has never agreed that Remedial Order 3 relates to non-licensed foster care placements or to the general PMC class.

On March 23, 2021, the Monitors sent the following email:

Dear Heather and Taryn,

Please confirm that the DFPS and HHSC now share the understanding with the Monitors that the Monitors' request for Data and Information as previously conveyed applies to all Abuse, Neglect and Exploitation referrals and investigations of PMC children and is not restricted to information about CCI and CPI investigations.

On March 31, 2021, DFPS responded, in part:

Based on the Fifth Circuit's rulings, Remedial Order No. 3 is targeted to remedy inadequate monitoring and oversight of the licensed foster care subclass, which it defined as all members of the general class in licensed or verified foster care placements, excluding verified kinship placements. (M.D. by Stukenberg v. Abbott, 907 F.3d 237, 246 n.11 (5th Cir. 2018). For this reason, our compliance efforts have primarily focused on licensed foster care placements – meaning GROs and foster homes, which are investigated by CCI.

On March 31, 2021, Kevin Ryan responded:

This appears to be a different position than the State took in front of Judge Jack in September. Here is the September transcript excerpt:

THE COURT: So, remedial -- it's Remedial Order Three that we're talking about, aren't we?
**MR. YETTER:** Yes, it is, for Statewide Intake, and CPI is the same issue; it's a comparison within -- for the Court to be able to understand the evidence of how, 14 essentially, a sister organization does the same issue of investigations.
THE COURT: So, you're talking about CCI?

2

**MR. YETTER:** Well, I believe it's called CPI, Child 18 Protective Investigations, and it is --

THE COURT: Isn't that part of DFPS?

**MR. YETTER:** Yes, your Honor, it is. And I think it is for unlicensed placements, if I understand the testimony.

THE COURT: Is it your position that Remedial Order Three only applies to licensed placements?

**MS. GDULA:** Your Honor, the objection is that the show cause motion that defendants are -- that is the basis of his hearing only refers to RCCI, which is the -- - the witness that we put on yesterday. And, yes, that (indisc.) RCCI would be the licensed care; CPI I understand to be the non-licensed care.

THE COURT: I'm sorry. So, it's your position that Remedial Order Three does not apply to unlicensed class?

**MS. GDULA:** No, your Honor. My position, the objection, has to do with this -- over the show cause motion, specifically.

THE COURT: Can I just ask your position? As to Remedial Order Three, it does apply, in your opinion, to PMC children in unlicensed placements.

**MS. GDULA:** Your Honor, I do understand that the language in Remedial Order Number Three refers to the PMC kids.  It is not under (indisc.) subsection (b) that is specific to the non-licensed.

THE COURT: I'm sorry. I didn't understand your answer.

==**MS. GDULA**: Yeah; no, no, I do understand that Remedial Order Number Three references the PMC class, not RCCI specifically. That's why I was clarifying my objection.== (page 7; lines 14-17)

**THE COURT:** Okay. Thank you. I appreciate that. Thank you.

(indisc.) So -- okay. So, Mr. Yetter, would you finish your objection? I interrupted you.

**MR. YETTER:** I am actually -- our position is that both the topic of SWI, Statewide Intake, and CPI are relevant to Remedial Order Number Three because they deal with investigations of the general class, the PMC class, and the Court had questions about them, the witnesses were not able to testify about them, and the State has brought witnesses that can, and it's relevant evidence for the Court to consider.

**THE COURT:** Thank you very much.

Go ahead.

**MS. GDULA:** Your Honor, are you ready --

**THE COURT:** Oh, I -- I need to -- let me overrule your objection so we have it on the record. Thank you.

**MS. GDULA:** Thank you, your Honor.

On March 31, 2021, Kimberly Gdula responded:

Kevin, while your email was addressed to Corliss, I thought it might be helpful if I respond directly since you are highlighting my statement in the transcript excerpt. During the September hearing, I was addressing a specific objection being raised

3

with regards to how certain evidence being sought related to what was pleaded in the motion to show cause. Defendants do not dispute that RO 3 references PMC children, which is what I stated. However, in its order issued in 2018, the Fifth Circuit upheld liability findings based on two areas, as it succinctly stated in its July 2019 opinion (929 F.3d at 275): "We previously found that DFPS's policies violated Plaintiffs' substantive-due-process rights in two ways: (1) by maintaining overburdened caseworkers who are responsible for the children in the PMC; and (2) by failing to adequately monitor and oversee the children in the licensed foster care (LFC) subclass." It was never my intention when communicating an objection over the relevancy of testimony in a show cause hearing to call into question the Fifth Circuit's findings in this matter, and I apologize if there was confusion caused by that. Defendants are committed to meeting the obligations of the Remedial Orders as approved by the Fifth Circuit and will also continue to provide the Monitors with the free and complete access to agency records.

On March 31, 2021, Kevin Ryan responded:

Thanks for your reply Kimberly.

When we brief the Court next month, I will relay your comments to Judge Jack to be sure she is aware.

## II.   **VI.H.   Remedial Orders A7 and A8 Performance Validation**

Defendant objects to the Monitors' methodology of validating Remedial Orders A7 and

A8.   Remedial Order A7 provides:

The Defendants shall immediately cease placing PMC children in licensed foster care (LFC) placements ***housing*** more than 6 children, inclusive of all foster, biological, and adoptive children, that lack continuous 24-hour awake-nigh supervision.   The continuous 24-hour awake-night supervision shall be designed to alleviate any unreasonable risk of serious harm.

[emphasis added].   The Monitors relied upon "GROs and foster homes with a *total capacity* of

greater than six children." *See* ECF 1079 at p. 240, n. 479 (emphasis added). Defendant disagrees

with the Monitors' use of "capacity," to the extent it means an operation's licensed capacity and

not the actual child count or census. Defendant's interpretation of actual child count or census is

supported by the most recent Fifth Circuit Court of Appeals' ruling, which stated:

In *Stukenberg II*, we approved an injunction requiring all licensed PMC residences housing more than six children to provide 24-hour "awake-night" supervision—that is, at least one supervising adult awake at all times. *Id.* at 276–77. The rationale for this requirement is simple: The more unrelated foster children living in the same home at the same time, the greater the risk of harm. Not surprisingly, then, the injunction did not limit the state's ability to move PMC children from overcrowded homes into less crowded homes.

*M.D. by Stuckenbuerg v. Abbott*, 977 F.3d 479, 482 (5th Cir. 2020).

## III.     Appendix 3.2 Maltreatment in Care Case Summaries

The Monitors reported that Residential Child Care Investigation (RCCI) "Ruled Out" all allegations in 365 (91%) of the investigations reviewed. The Monitors found that of the 365 investigations, RCCI appropriately "Ruled Out" all allegations in 300 (82%). With respect to the remining 69 (18%) investigations, the Monitors either disagree with the "Ruled Out" disposition or believe the investigation was deficient such that a determination could not be made. DFPS reviewed each of the remaining 69 investigations and initially agreed with the Monitors' analysis in 60% and disagreed in 40%. But, on further consideration, DFPS agrees with the Monitors' analysis in 65% and disagrees in 35%. First Amended Declaration of Joanna Golliday, ¶4. Since RCCI investigations are confidential and not public records, DFPS will share with the Monitors the written analyses with noted action taken and citation to record evidence in support of disagreements.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

5

NANETTE DINUNZIO
Associate Deputy Attorney General for Civil Litigation

ELIZABETH J. BROWN FORE
Chief, Administrative Law Division

*/s/ Elizabeth J. Brown Fore*
ELIZABETH J. BROWN FORE
State Bar No. 24001795
Southern District Bar No. 27819
Division Chief, Administrative Law Division

KARA HOLSINGER
State Bar No. 24065444
Southern District Bar No. 952327
Deputy Chief, Administrative Law Division

CLAYTON R. WATKINS
State Bar No. 24103982
*pro-hac vice*

Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:   (512) 936-0804
Facsimile: (512) 320-0167
elizabeth.brownfore@oag.texas.gov
kara.holsinger@oag.texas.gov
clayton.watkins@oag.texas.gov

***Attorneys for Jaime Masters, in her official capacity
as Commissioner of Department of Family and
Protective Services of the State of Texas***

### CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, a true and correct copy of the foregoing document has been served via electronic filing on all parties of record.

*/s/ Elizabeth J. Brown Fore*
ELIZABETH J. BROWN FORE

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| *Defendants*. | § § | |

**FIRST AMENDED DECLARATION OF JOANNA GOLLIDAY**

1. My name is Joanna Golliday. I am over the age of 18 years, of sound mind, competent to testify and have personal knowledge of the facts stated herein.

2. I am employed as the Division Administrator – Complex Investigation Division of the Department of Family and Protective Services (DFPS).

3. In their Second Report, the Monitors reported that Residential Child Care Investigation (RCCI) "Ruled Out" all allegations in 365 of the investigations reviewed. The Monitors found that of the 365 investigations, RCCI appropriately "Ruled Out" all allegations in 300.  With respect to the remining 69 investigations, the Monitors either disagree with the "Ruled Out" disposition or believe the investigation was deficient such that a determination could not be made.

1

4.  DFPS reviewed each of the remaining 69 investigations and initially agreed with the Monitors' analysis in 60% and disagreed in 40%. On further consideration, DFPS agrees with the Monitors' analysis in  65% and disagrees in 35%.

5.  I declare under penalty of perjury that the foregoing is true and correct.

Joanna Golliday
Division Administrator – Complex
Investigation Division
Department of Family and Protective
Services

2

8