11/04/2021

Honorable Judge Janis Graham Jack
1133 N Shoreline Dr. Room 208
Corpus Christi, TX 78401

Dear Judge Jack,

I write this letter to you out of great concern for the children and families of not only my local area of Parker County but all of Texas regarding DFPS and Community Based Care intervention. I was employed by DFPS in March 2015 as a conservatorship worker before promoting to supervisor and transitioning to CBC Our Community Our Kids (OCOK) in March 2020. Before that, I was a Tarrant County CASA for close to two years while obtaining my degree. I was also an Advanced 911-Telecommunications Operator for 12 years and served as a volunteer firefighter for two years in my hometown. I am not afraid of hard work or advocacy and my experience has shaped me into the person I am today.

As a supervisor with OCOK, I was given the opportunity to train, motivate, and mentor new hires with the same desire to help families as I have. Although I was not excited about the transition because I knew it would be a difficult task for another entity to take over, I was hopeful that I would be able to make positive change happen and that faith in "the system" would restore. The job of a conservatorship/permanency worker is a very difficult one and not something that is entry level. Workers wear many hats and new workers have a hard time navigating all the roles they are supposed to fulfill. My priority was to help workers manage their time so they could fulfil their duties appropriately and adequately serve the families of Parker County. Sadly, that work came to an end on 11/01/21 when I was forced out of my position after holding workers accountable to policy, family code and basic ethics. I am sure my previous employer would argue that I was a disgruntled employee, but I assure you that is not the case, and I am not writing this out of spite. I am sending you this letter because I am no longer able to make a difference in the work I was called to do, and the promises made by CBC have been systematically broken and children are suffering the consequences.

Regarding the workforce:

Unfortunately, I found it quite difficult to help new workers navigate their roles due to the horrific lack of training OCOK was initially providing. Workers who had some social work experience were put through a 2-week crash course, trained by others who never had conservatorship experience and were not familiar with family code or DFPS policy. I received several workers in my unit that were underprepared, undertrained, and overwhelmed. I had been told by my workers that they felt undertrained but at that time, I believed the state was still training workers. After experiencing some turnover, I began to realize training was not being done by the state and that is when I learned inexperienced personnel from OCOK's parent company, ACH, was training new permanency workers. Of course, by this time COVID was in full-effect and most trainings were via zoom, further perpetrating the disconnect between well-trained staff and under-trained staff. I had worked for over a year and a half creating templates, how-to's and conducting my own in-house trainings with new staff with zero help or support from upper management. I was told on 10/28/2021 by COO Kris Naylor, that although OCOK trainers had no experience in the field, they

are "reading" the curriculum provided by the State. What a disservice this is to the people of the county and of the state. TO be trained by those who have no experience whatsoever. Those who do not understand a parent in crisis; children in crisis; they don't know how to engage the clientele we are supposed to be serving. Therefore, there is such a bias and attitude from new workers toward parents who need help. They have no compassion. To say the least, it was mentally and physically exhausting, but I continued because I knew what Parker County expects and we as social workers should exceed those expectations. After all, everything a worker, supervisor and agency does, affects the lives of families and children for the rest of their life. If we are not moral, ethical, and advocating for our families, they have no hope of help or change. Children will ultimately suffer and get lost in the system.

Because of unwillingness to compromise quality of service to the families we are supposed to be helping, I believe I was unjustly labeled and targeted by upper management. Upper management created an environment in which workers were not held accountable for unethical work practices, such as not reporting marks and bruises to children immediately, not meeting with parents or keeping them involved in the process, failing to see children, and failing to ensure services for children and parents were being referred and obtained. The reason Texas has so many children in care is NOT because there are that many unsafe parents. It is because the system, especially the CBCs are designed to work against the parents. For the sake of this letter, I will try and keep this brief, but I have ideas that I strongly believe would help reunification with bio-parents and would keep children out of sub-standard foster homes and facilities. I have expressed by ideas while at DFPS and at OCOK but was never "heard". Probably because there is a $6000 price tag per child adopted.

DFPS has an oversight team designed to oversee the work OCOK is producing. My understanding is that they are supposed to be reading our cases and providing feedback regarding what needs to be done and ensuring OCOK complies. The problem with that type of oversight is that OCOK systematically blocks the DFPS oversight team from speaking with workers and supervisors and has built roadblocks from oversight coming into OCOK offices. Despite OCOK's attempts to block oversight from DFPS, there is a lot of suspicion regarding their practices involving children and families. They keep logs of staff and have seen the abundance of worker turnover throughout the program. They have seen the cases that are passed from one worker to another in order to give oversight a false sense that caseloads are low. New workers still in training become primary on new cases coming in with their mentors as secondary. Workers who oversee cases when another worker is on on extended leave are secondary, so it does not appear that their caseload is higher than 17. There also seems to be a push to roll out CBC throughout the state of Texas even though CBC in North Texas is failing. CBC in this area has all but eradicated tenured workers and supervisors from DFPS and replaced those who had tenure with under trained and underperforming workers who lack a sense of purpose and know how.

Regarding the families:
As stated earlier, the lack of training has a very direct and negative impact on the families we are supposed to be helping. In my unit alone, I had new workers that had refused to engage parents in their home, even though I have always advocated for workers to take another worker with them if they felt unsafe. The biggest barrier to meeting parents in their homes was because some workers did not want to be in a dirty home and because of their own bias and insecurity. There is a gross

lack of preparation in training or training over engagement with parents or a focus on the importance of engagement with parents. So many new workers I had in my unit were ill-prepared to interview and engage with parents and claimed they had no training over Structured Decision Making (SDM), which is a requirement. When I brought these issues to COO Kris Naylor, she was quick to dismiss me citing the workers are being trained on SDM as it is a state requirement, however, discounted me when I told her this is not the feedback I consistently get. I was even offered that a position could be created for me in which I would go office to office training staff on court reports and plans so that every office would be consistent. I found out on 11/01/21, that was not true and there was never a plan to have people trained, further deteriorating the support we as social workers are supposed to be for families.

There needs to be a sincere look at families by the workers and agencies over those cases. This starts with investigations. I have received both as worker and supervisor, cases in which families and fictive kin could and should have been looked at before a removal took place and weren't. The biggest barrier to placing with family before a removal are the key words, I have heard from lots of workers is "they don't appear protective" or they "lack protective capacity". These phrases are the easiest way to guarantee families are not looked at for placement and children are placed with strangers in foster care. I have seen with my own work that these same families who were "not protective", are actually protective after someone (usually me or one of my workers) sat down with them to discuss the protective piece and expectations. It seems had this been done early on in a respectful way, the children placed in foster homes then placed with family later could have been avoided. How traumatic is it for these children to be ripped away from family, placed with strangers, ripped from their school, friends, lifestyle then months later be placed with the same family that begged for them before the removal.

I will say, with OCOK, there has been a bigger push to place children with families. This push began in August 2021 but only after the CWOP crisis continued. What doesn't make sense is that OCOK has begun placing more children with families despite current DFPS policy and guidelines in place for approval. I have been told personally by Program Director Lauren Robinson and the Kinship department, that DFPS (CPI) is also supposed to be following what OCOK is doing regarding placement with families despite the existing policies surrounding placement.

Regarding the children:

I should have written this letter a long time ago, but as a new supervisor when the transition happened on March 2, 2020, I thought I could make a difference; at least in my county that is and would be able to contribute to positive change. I complained frequently about the treatment of children in our care and continually I was told that there was either "nothing" that could be done or "it's being looked into". I realize this letter is quite lengthy already so I will briefly list some of the issues I have seen:

- 10yr-old autistic girl who wears a diaper was placed in the CWOP home. She needed a nurse or nursing care due to needing to be bathed and her diaper changed. Workers had to bathe her and then had to drain bathwater full of urine and feces without proper protective gear. I complained to Lauren Robinson, my supervisor, regarding the worker conditions and the conditions this child was in. She was not attending school, nor did she have therapy. She had already been there for weeks. Over a week later, I was told the child would be getting a CAN, but I don't know if that happened.

- 19yr-old autistic boy has been in our case since 2015. He was transitioned to an HCS home but the state retained custody until SSD kicked in. My supervisor, Lauren Robinson was supposed to see him in September but failed to do so. I had my worker, Larna Powell, go see him in early October. She saw him in school, and he made an outcry of abuse to his teacher and my worker. He claimed he was being spanked with a belt on his bottom by a male in the home. There were also allegations by the teacher that she has heard the caregivers cuss at the youth, and they failed to seek medical attention for him when he had a seizure at school, fell and hit his head. They refused him EMS. Lauren Robinson told me on 10/28/21 that the case was being transferred to a Tarrant PMC unit and that "they" (OCOK) had been threatened. She said she needed to get out of that case ASAP. The case is now being handled by an incompetent worker that was in my unit for two weeks who failed to meet standards and policy. OCOK is choosing to close their eyes on this child's abuse and potential fraud involved. He is work $4500 a month to this HCS agency. The woman behind the agency and threats to OCOK is Tammi Abney. She runs Ratcliff Youth and Family Services. I've made a complaint to the Ombudsman.
- There was a 16-year-old youth at the CWOP home this past spring. He was there for at least a couple of months. He was not in school. He was not seeing a therapist. He had no structure, no rules and nothing to occupy his time. I went to check in on staff and he told me that he had no access to his family because supposedly none of them wanted to have anything to do with him. He asked for therapy and said he wanted to go to school. I complained to Kris Naylor, COO of OCOK. She told me there was nothing that could be done. She claimed he didn't want to go to school or have therapy although I told her he told me otherwise. There was never a push to get him involved and I believe he ultimately ran away or was jailed.
- 14-year-old girl who has been previously sexually abused before OCOK became involved was sexually abused in her former RTC, Bluebonnet, in Houston. She made an outcry in October. She had been running from placements in order to smoke weed to cope with the trauma. OCOK intake was unable to find her a suitable foster home, so she was sent to San Antonio Behavioral. Now OCOK intake is trying to ship her out of state, which I believe would be devastating for her as she would have no support from family or the relationships she has built with me, a fictive-kin and her CASA. I was told by Lauren Robinson that it would be a deterrent to running away.
- Foster parents are outright refusing to transport children to parent child visits although it is in their contract with OCOK to do so. OCOK does not enforce the contract for fear of losing placements and continually blames your rulings for the placement crisis. This lack of support means that visits are canceled or made on days/times that further strain parents already facing crisis.
- Children's needs are not being looked at when determining an appropriate foster home due to said shortage. Therefore, children are bounced from home to home because the foster home was not a good fit for the child's needs or the child's needs for normalcy aren't being met.
- Placements, including RTC which are paid up to $2000 a day per child are not proving clothing or toiletries to children. They allow for children's things to be stolen when in an RTC environment. Placements are not allowing children to contact their attorney or caseworker upon request, as is their right.

These are just a few examples that I have personal knowledge of. I held my staff to a very high standard because we are supposed to be doing the right thing for these children. As stated earlier, I have ideas that I strongly believe would help eliminate the crisis the State of Texas is seeing. It starts with parent and child advocacy. If you want less children in care, we must support the parents of these children. We have to support these families. This system was designed to make things more difficult for already struggling parents. Workers, because of the many hats they must wear, spend only a small amount of time with the parents with the majority of their time should be spent with them.

Judge, I have spent days writing this letter. I doubt it is as eloquent as I would like but I have a lot to say, I have a lot of ideas, and I have a lot of advocating to do on behave of the families. With privatization of conservatorship, I have seen the unintended consequences. The children are suffering far more. The "trouble" kids, the teens, are being shipped out of the state where even less oversight is. Parents are not being engaged leading to more and more termination of parental rights, and workers are not being trained and people are being silenced and forced out of their jobs for standing up for the injustices happening. I want to help. As I write this, I am not sure how to do that, but God willing, I will find a way. I am more than willing to meet with you and I will be sending a follow-up letter with my ideas to help make this system run more efficiently. Thank you so much for your time and I pray this letter reaches you well.

Josey Dunagan


NOR
TX P&DC
TX 750
4 NOV 2021 PM 7 L
USA
FOREVER
USA
FOREVER
United States Courts
Southern District of Texas
RECEIVED
NOV 09 2021
Nathan Ochsner, Clerk of Court
Honorable Judge Jack
1133 N. Shoreline Dr. Room 208
Corpus Christi, TX 78401
78401-204258