# Lori Purifoy

| | |
|---|---|
| **From:** | ashleynwisdom@gmail.com |
| **Sent:** | Wednesday, June 1, 2022 3:17 PM |
| **To:** | Lori Purifoy |
| **Subject:** | DFPS Concerns & The Refuge |
| **Attachments:** | The Timeline of Truth - Without the Redaction Key.pptx; DFPS - The Refuge; Termination Rebuttal Part 2 - RCCI PA Ashley Wisdom; RE: Termination Rebuttal Letter - Ashley Wisdom |

**CAUTION - EXTERNAL:**

Hello Ms. Purifoy,

I am writing to provide information to Judge Jack regarding DFPS and The Refuge investigation. Since March 17, 2022, I have reached out to: DFPS Commissioner Masters, Associate Commissioner Richman, (former) Deputy Associate Commissioner Ward, Senator Bob Hall's Office, all of the Senators on the Special Committee for Child Protective Services, Lt. Governor Dan Patrick, Governor Abbott, and the Office of the Inspector General. While I feel I made some progress with Senator Perry's office and was pointed in a new direction, that direction has not provided any results at this time. I am appalled that no action has been taken to hold Commissioner Masters or Associate Commissioner Richman accountable for lying under oath to the Senate, the House of Representatives and in Judge Jack's Federal Court. After making all of these attempts to share this information, I do not know where else to turn.

Judge Jack has asked what happened at The Refuge, why the Department failed to take action sooner due to "active human trafficking" allegations and why Commissioner Masters was not notified from her chain of command about this case, yet she has either been given inaccurate information or no answer at all.

I began with the Department of Family and Protective Services in September 2013, and I was wrongfully terminated on March 17, 2022. I worked as an Investigator working family/home-of-origin investigations until I was promoted to Investigations Supervisor in Spring of 2017. I promoted again in November 2021 as Program Administrator in the Child Care Investigations Division (CCI, investigating allegations of abuse or neglect for children in care) managing 6 units in Regions 3, 4, 5 and 7. I was terminated on March 17, 2022 for a "failure to provide notification regarding child safety." However, I followed all policy and expectations regarding the incident my dismissal letter refers to. I did not fail to take appropriate actions and nothing I did or did not do impacted child safety. I was scapegoated by an agency in crisis looking to shift blame and deflect attention away from the continued failings by its own executive team.

I took the appropriate action of directing the Supervisor to request a CIA consultation immediately upon learning of the initial concern. I did not fail to meet any policy or even a best practice expectation by not immediately notifying my supervisor, though I did make attempts to notify him. I was aware of one staff member, whom had been fired by The Refuge, for providing two pills (unknown if it was a Xanax, MDMA, Percocet, or some other drug) to two youths and allowing those two youths to use her phone to take nude photographs in the hopes of selling them.

The children had not been trafficked by their own account, though this is not to discount how inexcusably vile it is that a staff member would do such things to vulnerable children in a facility meant to help them heal. Even if the actions of that one staff were to be defined as trafficking, this would not have triggered any policy or expectation to notify up the chain of command. The day that I learned of a second incident where staff aided two youths in running away, I did immediately notify my supervisor, DA Winters, as I had learned this during the CIA consult.

The concern Commissioner Masters presented to Judge Jack is that there were staff failures in not notifying up the chain of command, which resulted in her not being notified until March 9th. I informed my Supervisor on February 28th and know that DD Golliday and CCI Director Lewis were notified by email on March 1st. If Commissioner Masters was not made aware until March 9th, it is unclear to me why I, along with the Supervisor, were the only ones terminated. I was made aware of some staff (an SI and SI PD) who had been given written coaching's due to them not elevating the case up their chain of command.

An internal investigation for DPFS began on March 10, 2022. CCI Deputy Director, Joanna Golliday, was at the helm of the investigation. This is highly concerning considering she was aware of the Refuge case on March 1, 2022 and failed to notify anyone in the executive team of this investigation. DD Golliday led an investigation in which she should have been scrutinized. She conducted this investigation with a biased opinion and was combative during the interview process. The purpose of the internal investigation was to determine the facts of what unfolded during the Refuge investigation, however, DD Golliday, pushed an ill-informed narrative to hold someone else accountable in an attempt to cover her own missteps once she became aware of this case as the primary accounting of issues was a failure to "ring the bell" sooner. I have become aware that Deputy Commissioner Tommy Ward also conducted interviews as part of the internal investigation, specifically regarding the Special Investigations Division and those employees were not terminated even though they are highly regarded as knowledgeable regarding all things trafficking related (they were given a coaching). I am confused as to how this internal investigation was organized and conducted. Even the Desk Duty and Internal Investigation policies set forth in the Employee Handbook were not followed. This is an agency that cannot follow their own policies, regardless of the circumstances or importance.

I do suspect that after two years of poor performance and worsening outcomes within DFPS, Commissioner Masters is tired of bearing the brunt and admitting to "failing these children." She is attempting to protect her own self-image and prestige rather than these children. Rather than admitting her own inabilities and step down or recruit capable help, she has resorted to finger pointing. She pointed her finger at me and the Supervisor. When Justin Lewis resigned and noted that others, some higher up than me knew about this case before me, she decided to terminate a CVS caseworker. She failed to hold anyone in a leadership position accountable while continuing to place blame on staff on the "ground floor". No one should have lost their jobs in this case; the issues with staffing this case up lies within the systemic issues of policy and training inadequacies. The case should have been reviewed and the details flushed out more thoroughly before Commissioner Masters committed to firing several staff before Judge Jack. A mistake was made when that memo was sent to the Court Monitors because it was inaccurate and misleading, but Commissioner Masters is continuing to spend more time making the mistake worse.

I know from my time as a manager that it takes great effort to train and develop staff, though I also experienced significantly lower turnover than my counterparts throughout the agency. I created a culture in my team where staff felt supported, valued, and where they could ask for additional training or guidance without becoming vulnerable. I told and showed my staff that I would have their backs and advocate for them if they were trying to do the right thing and that the only thing I would not tolerate is lying. There is a culture in DFPS Leadership of shifting blame below, and the way it is discussed, even in trainings, is that firing is easier (I have received multiple trainings on how to fire staff, but not one on developing staff). Commissioner Masters took the "easy" way out and fired people in an effort to misdirect attention away from the failing system she has resigned herself to leading.

I have attached a detailed PowerPoint timeline of events regarding The Refuge investigation. I have the redaction key and can provide it upon request. I have also included a copy of the emails I have sent to the parties mentioned above. My hope and intention is that this will provide clarity about some of the issues going on within DFPS. While I have been deeply hurt by the events that unfolded in March, I have stayed the course in wanting to see a positive change for the Department because the children and families deserve better. I firmly believe for the children to be better served, the investigators and caseworkers deserve better as well from their leadership team.

The effects this incident has had on the CCI Division has been devasting; staff who barely trusted leadership have lost even more faith and trust, there are now two Program Administrator vacancies, the supervisor vacancy has yet to be filled and the Division Administrator for the field has finally been demoted back to a program specialist. Not to mention,

the Deputy Director is currently out on extended leave. With a new Director in place for CCI, the majority of CCI leadership is either new (again), absent or there are significant vacancies. The blind is literally leading the blind. I ask, who will be there to catch the next case that is an issue? There was no policy in place that required the Supervisor over this case staff it up. She and I had a monthly conference, also not required, after business hours due to our shared eagerness to address issues over our new coverage areas. When I became aware of this case, I asked her to immediately request a CIA consult. This is what got the bells ringing. Had I not taken that initiative, this case would not have come to light. Prior to my knowledge of this case, several other staff and supervisors and above were aware, but did nothing. Is the solution to fire everyone <u>and ignore the system issues that persist?</u> Our kids are the ones that will continue to pay the price for such decisions and actions. Over 1000 employees leaving the agency within 3 months should ring every bell. That is a lot of institutional knowledge walking out the door.

Also, a quick note for the court monitors: I reviewed the latest court monitors report. The forensic interview that they are unable to locate was sent to Austin PD by Bastrop County because it was outside of their jurisdiction. Detective Brown with Bastrop County Sheriff's Office should be able to provide more information.

Thank you for your time,

Ashley Wisdom


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.