IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al.,<br><br>*Plaintiffs,*<br><br>VS.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al.,<br><br>*Defendants.* | CASE NO. 2:11-CV-00084 |

## AMENDED SECOND ADVISORY TO THE COURT BY *AMICUS CURIAE* THE REFUGE FOR DMST

TO THE HONORABLE JANIS GRAHAM JACK:

The Refuge for DMST™ ("The Refuge")[1] by and through its undersigned counsel[2], respectfully submits this Advisory to the Court by *Amicus Curiae* in anticipation of the hearing scheduled for 9:00 a.m. on June 6, 2022, and in support would respectfully show:

### I.   INTRODUCTION

The Refuge for DMST™ (Domestic Minor Sex Trafficking) is a registered 501(c)(3) nonprofit organization founded in 2013. Its mission is to provide trauma-informed, long-term restoration community with on-site services for girls who have been exploited through sex trafficking. A child repeatedly abused sexually, physically, and mentally endures complex trauma that requires a long-term, integrated, holistic solution provided by trauma-informed staff. The Refuge is accomplishing its great mission through The Refuge Ranch, a safe and restorative place built debt-free on 50 acres in Bastrop County, Texas; and The

---

[1] The Refuge for DMST™ refers to the non-profit organization.
[2] For the Honorable Court's edification, undersigned counsel is a former CPS conservatorship caseworker who worked for the Department of Family and Protective Services between 1999 and 2002 just prior to attending law school. After law school, undersigned counsel served as a state prosecutor in Harris County, Texas, and later served as a federal prosecutor in the Western District of Texas. As a caseworker and as a state and federal prosecutor, undersigned counsel handled cases involving child abuse and neglect, child exploitation, child and adult trafficking, possession and production of child pornography, and thousands of other serious state and federal felony offenses.

1

Refuge Circle of Care<sup>TM</sup> program that provides a unique approach to restoring victims of sex trafficking by addressing their various needs in body, mind, and spirit. The Refuge Circle of Care program provides trauma-informed, holistic care for the girls on-site at The Refuge Ranch, including: psychiatric services from Dell Medical School at The University of Texas at Austin's Department of Psychiatry and the Institute for Early Life Adversity Research; education through the University of Texas-University Charter School (UT-UCS); medical services by community partners; and various therapeutic programs uniquely designed for the development of a child survivor.

The Refuge Ranch is the largest long-term, live-in rehabilitation facility for child survivors of sex trafficking in the United States. The Refuge for DMST and The Refuge Ranch exist because there is a great need for the services they provide. Texas has the second most reported cases of sex trafficking in the nation, and there are limited facilities to care for survivors, especially long-term facilities for minors. Since opening on August 1, 2018, The Refuge has served 70 girls from 19 different counties across Texas, as well as four other states, including California, Idaho, Mississippi, and Virginia. The average age of the girls in its care is 16 years old, and they come from all ethnic and socioeconomic backgrounds.

## II.   DISCUSSION

The Refuge continues to fully cooperate and be fully transparent in every pending investigation with the Bastrop County Sheriff's Department, the Department of Family and Protective Services (DFPS), the Texas Health and Human Services (HHS), the Texas Attorney General's Office, and the Texas Rangers, the Federal Bureau of Investigation, the Senate Special Committee on Child Protective Services, and the House Special Committee on Health and Human Services. And yet, DFPS continues to delay its investigation and continues to request extensions beyond the usual time limit. In the meantime, The Refuge is unable to serve the population of sex trafficked girls who need proper care and treatment available at The Refuge. The Refuge is being punished for reporting every serious event in accordance with DFPS and HHS policy, but those who are suffering are the trafficked girls who were ripped from the facility and placed in

2

inadequate care or just released from the system with no concern for their mental and physical safety and wellbeing.

The Refuge files this Second Advisory to the Court to correct the numerous misrepresentations in the letter to Representative Hinojosa as well as the subsequent adoption of those by the Monitors in their report.

A.  **RR's Transition from The Refuge to Family**

The Monitor's report (Doc. 1249) inaccurately represents all of the details related to RR's runaway. Much of it is due to the misrepresentations sent to Representative Hinojosa by the family of the victim who RR robbed and assaulted. The Court should be aware that the victim's family was opposed to the Travis County Court's decision to place RR at The Refuge. Prior to her placement, RR was serving time at Gardner Betts Juvenile Detention Facility. The victim's family wanted RR to remain in a lockdown facility and were opposed to her transition to The Refuge.

As the Court is also aware from the facts in the Monitor's report, RR was involved in a serious offense committed by her and her traffickers against the victim. It is well documented that around the time of the offense, RR was being trafficked by the other two defendants. At times, her traffickers would set up "dates" with men looking to have sexual intercourse with RR (a minor). Other times, they would set up dates and rob the men who wished to have sex with RR. As part of RR's case, and because she was a victim of sex trafficking when the crime was committed, RR was placed in the juvenile detention facility and later transitioned to The Refuge for treatment.

RR was placed at The Refuge by the Travis County Probation Department on April 27, 2021. At the time of her placement, she was on probation for aggravated assault and aggravated robbery with two separate probation officers. RR also had a well-documented "chronic runaway history between 2019 and 2020," before her placement at The Refuge. As part of her permanency plan, probation was working towards getting her pending criminal charges dismissed. Her permanency goal established by probation

3

also included placement with her paternal grandmother after she completed the program. Additional goals included eventual off ground visits with paternal grandmother.

A review of RR's records reveals that RR had several individuals on her call list: Williamson County Probation Officer, Travis County Probation Officer (two), attorneys (2), paternal grandmother, father, and stepmother. She was also allowed to speak to her brother during calls with her father and stepmother. Notably missing from this list is RR's mother and relatives on her maternal side of the family.

When RR was admitted the Refuge, it was well aware of her background and history. To be sure, The Refuge accepts trafficked girls of all backgrounds and with serious history to ensure they receive the best care and treatment to ensure their success upon release. Indeed, The Refuge staff confirm that RR did exceptionally well and was a "dream to care for" while residing at The Refuge. She was considered a star resident and was on a path to be released and transitioned to family because she had made extensive progress while there.

As part of the approved reentry process, residents of The Refuge typically participate in short family visits to help with an appropriate transition to life outside of The Refuge. RR departed The Refuge on August 14, 2021 for an approved overnight visit with her paternal grandmother. The visit was supposed to last through Sunday, August 14, 2021. RR and her paternal grandmother had plans to stay at the Quality Inn Hotel in Bastrop, Texas. It is important to note that the overnight visit and details of the visit were approved by the Travis County Probation Office in anticipation of RR's transition out of The Refuge and into a placement with family. On August 14, 2021, RR ran away from paternal grandmother's care on Saturday, August 14, 2021. On August 15, 2021, RR's paternal grandmother made an in person report to The Refuge concerning her granddaughter's run the night before. She reported that RR ran away after she fell asleep around 9:00PM. Around 12:00AM, she woke up to find the hotel room door slightly ajar and went downstairs to find RR as she believed RR had gone downstairs

4

to get a drink in the lobby.  Upon returning to the room, she noticed RR had taken grandmother's cell phone but likely removed the SIM card because the grandmother was not able to make calls or send text messages to the phone. Paternal grandmother called the Bastrop Police Department to file a missing person's report.  When grandmother reported the runaway to The Refuge, staff contacted the DFPS and reported the incident to Francesca with Badge # 5231, and given Reference # 75115071.  This report was made timely and in accordance with Department and The Refuge[3] policy.  Importantly, this was RR's only runaway event.

Following RR's run from paternal grandmother's care, The Refuge conducted an internal investigation to determine what may have contributed to her decision to run from her grandmother.  Contrary to what the letter to Representative Hinojosa claims, **it found *no evidence* of her calling an unapproved contact, either by using the cottage phone or by using a staff member's phone**.  In light of the timeline, it is possible she used her own grandmother's phone to make a call once she was outside The Refuge grounds.  In addition to conducting an internal investigation, The Refuge hired a private investigator to locate RR in an effort to find and return her to care.  The Refuge paid the investigator out of pocket and was under no obligation by the Department to do so.  Unfortunately, the investigator was unable to locate RR.  The next time The Refuge heard about RR was shortly after she succumbed to injuries from the car accident.

On May 23 and June 3, 2022, The Refuge delivered RR's records to Health and Human Services by email and will continue to supplement the records once staff returns to The Refuge property on Tuesday, June 7, 2022.

---

[3] *See* Attachment A – The Refuge Serious Incidents and Reporting policy.

32962836v.1

B.     **DD's Unauthorized Absences from The Refuge**

DD is a sex trafficking survivor who was placed at The Refuge by the DFPS on April 6, 2021, following treatment at a substance abuse facility. At the time of her placement, both her mother's and father's parental rights had been terminated. As a result, she was only allowed contact with her grandparents with a goal of sibling contact. DD had a documented history of running away or psychiatric hospital placement. She ran away from a placement on October 7, 2020 after being there one day and was listed as a runaway through November 9, 2020. As part of her permanency plan, she was to reside a The Refuge for one year and discharge planning was to be coordinated with the Dallas County Child Protective Services caseworker.

A review of DD's records reveals that DD had several individuals on her call list: CPS Caseworker, Attorney Ad Litem, CASA Advocate, Traffic 911 Advocate for trafficked girls, and her paternal grandparents. Calls with family were required to be monitored and done with the therapist and case manager for the first 30 days of placement.

While at The Refuge, DD logged several serious incident reports for self-injurious behavior and acting out sexually. On August 26, 2021, DD logged an attempted departure event after threatening to run away to drink beer. Staff encouraged her to work through her emotions, but she was unwilling to do so. She later walked outside the cottage and along the facility fence-line while being followed by staff. She was warned that staff would contain her if she attempted to jump over the fence. They were able to calm her down and return her to the cottage. This event was precipitated by her grandfather's recent death and her inability to attend his funeral. The incident was logged as a serious incident, but DD never did or attempt to run away.

On September 13, 2021, DD logged another attempted departure event after DD did not timely arrive to therapy. Staff reported the absence to Bastrop County Sheriff's Office but found her forty minutes later with another resident on campus. DD never left the campus. On September 18, 2021, while

6

at a local move theater with staff, DD asked to use the restroom. Staff allowed her a one minute time period before following her to the bathroom in an effort to avoid seeming to be escorting her to the bathroom. When staff entered the bathroom, it was empty. Bastrop County Sheriff's Office was immediately notified and was not able to find DD. She was registered as an active runaway, a report was filed, and The Refuge made an additional report to the DFPS hotline in accordance with Department policy. She returned to The Refuge on September 24, 2021, after calling her caseworker from Alvarado, Texas,[4] but ran again on September 25, 2021. [It should be noted that Alvarado, Texas is in the Dallas-Ft. Worth Metroplex area where all of RR's family (both maternal and paternal) also reside.] When she woke up that morning, she began to feel frustrated with the sudden limitations of placement. She began to talk about running away with another youth, and then walked to the back of the property followed by several staff members. DD made it to the fence line, climbed over the fence before staff could reach her, waved to staff and said 'bye.' Staff reported the event to the Sheriff's Office and the DFPS Hotline while at the same time, other staff attempted to locate her nearby.

DD was located at a Bastrop convenience store by Refuge staff on September 26, 2021. She was visibly intoxicated by alcohol, so staff called the Sheriff's Office and the Police Department to report an intoxicated minor. The responding police officer advised he could not do anything in response to the report, so staff took her to the emergency room. When at the hospital, DD refused to submit to a drug test, then walked out of the hospital and across the highway. For safety reasons, staff did not cross the highway but began to follow her in their vehicle. Staff were able to find her and convince her to return with them. Less than a minute later, she threatened to jump out of the moving vehicle which was then

---

[4] Alvarado, Texas is located just south of the Dallas-Ft. Worth Metroplex. This is the same town in which she was found with RR after RR was struck and killed by a vehicle. It appears that DD had strong connections to Alvarado as she was found there on multiple occasions. It would not be a surprise if DD spoke with RR and other residents about her connection to Alvarado, Texas. **Importantly, records reveal that RR and her extended family all resided just north of the Dallas-Ft. Worth Metroplex**. RR's family lived in the same general area as the location DD gravitated to when on runaway status.

stopped for her safety. Staff lost sight of her as she walked in the opposite direction of traffic. Staff and Bastrop Police searched the area for her but were unsuccessful in finding DD. The departure was reported to the Bastrop Police Department, the Bastrop Sheriff's Office and the DFPS Hotline in accordance with Department and The Refuge policy. She was found by Bastrop Police later that evening and safely returned to The Refuge at 9:15PM.

The very next day, on September 27, 2021, DD became upset after having an approved phone call with her grandmother. Information she was given during the call caused DD's mood to dramatically shift. She returned to her cottage, changed clothes, and walked out and behind the cottage. While walking out, she told staff she was leaving to "get drunk." Staff followed her, but she was able to evade them and walk through the wooded area within the fenced perimeter. As before, she jumped over the fence and ran away. Her departure was reported to the police department and the DFPS Hotline in accordance with Department and The Refuge policy. DD was later returned to The Refuge.

On September 29, 2021, DD became upset with a staff member and began walking towards the front gate. As she approached the gate, construction workers were there needing to leave the premises. Staff asked DD to step away for safety, but began walking through the gate behind the truck. A staff member unsuccessfully initiated a restraint and continued to follow DD down the road. Other staff approached in a vehicle, but DD refused to return with them. When she reached a busy road, staff called the Bastrop Sheriff's Department who secured her and returned her to The Refuge. DD was back at the cottage in less than an hour. Once at the cottage, her therapist allowed DD to call her grandmother but became upset with staff for not letter her hold the phone which was policy pursuant to her safety plan. At 7:20PM, DD ran again and jumped over the back fence. Bastrop Sheriff's Department was called and a report was made to DFPS in accordance with Department and The Refuge policy. DD did not return after this last event.

C.     **Runaway Definition**

The Refuge is not a locked down facility and residential facilities are not supposed to be set up as such.  Indeed, the Department itself is opposed to calling residential facilities as "locked down" due to its generally accepted meaning.  That is, a locked down facility is a correctional facility.  Although there are escapes from locked down facilities which are all still operational, the only type of facility which can completely ensure a child does not run away are juvenile detention centers.  If the system-wide goal is to achieve zero instances of runaways by residents at residential placement facilities, *all* residential facility placements would be obsolete.  But a locked down facility is not necessarily the best and most therapeutic placement for sex trafficked girls who are victims of circumstance.  Girls with this background must have a placement which allows them freedom to be independent and work towards a goal of independent living outside the confines of monitored placement.

When reviewing the number of runaway events logged by The Refuge staff over the years, it is important to note that a runaway event includes a situation in which a staff has lost visual contact with the resident and the movement is not permitted.  If staff regains sight, staff notifies the Sheriff's Office and notifies DFPS SWI.  When a runaway event occurs, it is reported to the Bastrop County Sheriff's Office. When the situation arises, staff ask the Sheriff's Office for assistance with physically returning the resident if the resident is combative and refuses to return. In many reported runaway events, the girls were gone less than two hours and others less than an hour if not minutes.

In 2019, sixteen (16) runaway events were logged by The Refuge and reported to either the Bastrop County Sheriff's Department, DFPS, or both in accordance with Department policy.  Three of the residents accounted for nine (9) of those events, one accounted for two (2) events, and the rest were single events.  Three of those were "absent" for less than twenty (20) minutes, while the others averaged a couple hours and all but one of the girls were found and returned to The Refuge.

In 2020, ten (10) runaway events were reported to the Bastrop County Sheriff's Office. Of those ten, one girl accounted for three events. Four of the events were approximately one hour long, two were just over one hour, and three were mere minutes. In one instance, for example, one of the girls was actually on site the entire time, but a runaway was reported because a staff member lost visual contact with her during that period of time.

In 2021, The Refuge admittedly had an uptick in runaway events. It logged and reported sixty-four (64) runaway events. Five (5) of the events were single instances, and included RR's runaway event. The others comprised of events committed by residents multiple times that year. For example, two residents logged fourteen (14) runaways each for a total of twenty eight (28), four residents logged eight (8) events, three residents logged nine (9) events, two residents logged eight (8) events, and one resident logged six (6) events. At least one of those events was a resident who never left the facility's grounds, but was nevertheless reported. All of the events were reported to either Bastrop County Sheriff's Office or DFPS, depending on the circumstances and length of event. In most cases, staff did not have visual contact with the residents for less than two hours.

In response to the uptick in runaway events, The Refuge undertook a review of its policies and procedures and implemented changes to reduce the number of runaway events. This included the decision to upgrade the phone system and implement a new strategy to its Emergency Behavior Intervention. It substituted the Sartori Alternatives to Managing Aggression (SAMA) method with the Handle with Care response to aggressive behavior. This new method provided The Refuge staff with new verbal de-escalation techniques as well as a new technique to contain youth if they become unsafe or expressed intent to run.

In 2022, The Refuge had sixteen (16) runaway events in February. One resident logged nine (9) events, another logged four (4) events, and the others were single events by individual residents. Most of them were absent less than two hours.

### D. The Refuge Phone System

In 2021, The Refuge phone system within the cottages did not have the capability to restrict certain calls outside of The Refuge. However, residents were limited to calls listed on their approved call list. Pursuant to DFPS and HHSC policy, The Refuge was not allowed to record phone calls since residents were allowed to speak with their attorneys and call the DFPS Hotline from those phones. Since then, the phone systems have been upgraded to restrict certain outside calls and only allow residents to call emergency services, the DFPS Hotline, and individuals on their approved call list. The Refuge had to request a variance in order to record non-legal phone calls for safety reasons. The request was approved by HHSC, because DFPS did not want to approve the recording of telephone calls by the residents. However, The Refuge requested the variance to ensure a higher level of safety for the residents. In order to provide the highest level of privacy, calls were reviewed if staff had a reason to believe that, among other things, a resident made an unauthorized phone call or if staff overheard a topic that was troubling. Phone calls were monitored based on a resident's level of supervision either by speaker phone or with a staff member nearby.

In addition to the changes described above, The Refuge has also updated its cell phone use policy to ensure employees can never bring phones into the grounds past one of the main administrative office.[5]

### III. CONCLUSION

The facts outlined above leave no doubt that The Refuge consistently followed Department and HHS policy in reporting every single instance of residents running away, even when the event was mere minutes. In the RR incident, The Refuge reported the runaway from her paternal grandmother's custody even though it was under no obligation to do so pursuant to Department policy. That reporting obligation rested with the paternal grandmother. Nevertheless, The Refuge continues to be punished for making all the necessary

---

[5] *See* Attachment B - The Refuge Cell Phone Use Policy.

reports, terminating employees who engaged in bad acts, bad behavior, or violated policy, and going above and beyond the Department's and HHS's own reporting requirements. Whatever organizational failures exist outside of The Refuge is not the fault of The Refuge. Yet, it continues to be punished for merely attempting to give the best care to extremely traumatized girls.

It confounds us to know that its license continues to be suspended solely because of the Department's failure to find that there is a reason to believe that former staff IG committed an act of abuse and neglect. While The Refuge and its former residents have suffered serious harm for systemic agency failures, The Refuge, its staff, and its supporters continue to cooperate and be transparent with this Honorable Court, the legislature, regulators, and local, state and federal law enforcement.

Dated: June 6, 2022

Respectfully Submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Erica B. Giese*
ERICA BENITES GIESE
SDTX Bar No. 3399944
TX Bar No. 24036212
E-mail: *egiese@jw.com*
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
(210) 978-7713
(210) 242-4613 (fax)

***Counsel for The Refuge for DMST***

## CERTIFICATE OF SERVICE

I hereby certified that on June 6, 2022, a true and correct copy of the foregoing document was served on counsel of record via electronic filing in the Court's CM/ECF system.

*/s/ Erica B. Giese*
Erica Benites Giese