IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**Update to the Court Regarding Children**

**in Temporary Managing Conservatorship for 13 Months or Longer**

The Plaintiffs in this case are a certified class of children in the Permanent Managing Conservatorship (PMC) of the Texas Department of Family and Protective Services (DFPS). The Court's orders identify children in the General Class as "all children now, or in the future, in the Permanent Managing Conservatorship of the State of Texas."[1] In its order certifying the class the Court described the process that leads to a child's placement in PMC:

> When the Child Protective Services ("CPS") division of DFPS determines a child has been maltreated or is at risk and should not remain in her home it removes the child and petitions a court for Temporary Managing Conservatorship ("TMC") over the child. If TMC is granted, DFPS takes custody of the child and attempts to achieve reunification or, if this is not possible, places the child with a new, permanent family. TMC lasts one year unless a court orders that it be extended another six months. If at the termination of TMC the child has not been reunified or placed in a new family the child is transferred to the PMC. The child remains in the State's PMC until he or she is adopted, custody is otherwise transferred, or they age out of the system.[2]

At a status conference held June 6, 2022, the Court noted that the Monitors' review of placement data showed that of the children in the State's temporary managing conservatorship

---

[1] *M.D. ex rel. Stukenberg v. Abbott*, 152 F. Supp. 3d 684 (S.D. Tex. 2015).
[2] Order, August 27, 2013, ECF 213.

(TMC) who were in a foster care placement in March 2022, 3,884 had been in TMC for 13 months or more. The Court acknowledged that many of those children may have been in TMC for an extended period due to emergency orders issued by the Texas Supreme Court during the pandemic, which allowed for extensions of court deadlines, including those affecting a child's placement in the State's PMC.[3] However, the Court expressed concern regarding whether all of the more than 3,000 children who had been in TMC for 13 months or more as of March 2022 were properly in the TMC status. The State agreed to provide the Monitors with a list of all children who, as of the date of the hearing, had been in TMC status for 13 or more months, and agreed the data would include the child's name, personal identification number, date of birth, date of the child's entry into TMC status, and would specify for each child the precise basis for the child's extended status in TMC, and the date that the trial court entered an order retaining jurisdiction of the case.[4] The Court subsequently asked the Monitors to review the data provided by the State to attempt to validate the information provided.

### I.  Texas Family Code Provisions Outlining Deadlines Related to TMC Status

The Texas Family Code includes explicit deadlines for moving children out of TMC as part of the statutory scheme's prioritization of permanency for children.[5] Section 263.401(a) of the Family Code sets a one-year deadline for a trial court to commence a trial on the merits or enter a final order in a case in which the State has been appointed a child's temporary managing conservator.[6] At the one-year mark, unless the trial court has commenced a trial or properly granted an extension, it loses jurisdiction and the suit is automatically dismissed without a court order.[7] The trial court is required to notify all parties of the impending dismissal date no later than 60 days prior to the date that the court will lose jurisdiction over the case.[8]

There are a handful of circumstances under which a trial court may extend jurisdiction:

- **Section 263.401(b)**: The trial court may extend jurisdiction if it finds: a) that "extraordinary circumstances" necessitate the child remaining in TMC; and b) it is in the best interests of the child.[9] If the court makes those findings, it may retain the case on its docket for a period "not to exceed" 180 days.[10] The trial court is required to include in the order the new date on which the case will be automatically dismissed if a trial on the merits has not commenced and set the case for trial on or before that date.[11]

- **Section 263.401(b-1)**: Jurisdiction may be extended if, after commencing a trial on the merits within the prescribed timeframe, the trial court grants a motion for a new trial or mistrial, or the case is remanded to the trial court by an appellate court following an

---

[3] Transcript, June 6, 2022 Status Hearing, ECF 1267, at 15:15-18.
[4] *See* ECF 1264 (listing the data and information the State agreed to provide to the Monitors at the June 6, 2022 hearing).
[5] *See* TEX. FAM. CODE §263.302 *et seq.*
[6] TEX. FAM. CODE §263.401.
[7] *Id.*
[8] *Id.*
[9] TEX. FAM. CODE §263.401(b).
[10] *Id.*
[11] *Id.*

appeal of the court's final order.[12] Under those circumstances, the trial court is required to schedule a new automatic dismissal date not later than 180 days from the date a motion for a new trial or mistrial is granted, or the date that the appellate court remanded the case.[13]

Under either circumstance, if the court fails to commence a trial on the merits or enter a final order before the extended dismissal date set by the trial court, the court loses jurisdiction and the suit is automatically dismissed without a court order.[14]

A trial court may also extend its jurisdiction over a case in which a child is in the State's TMC if, pursuant to Section 263.403 of the Family Code, it orders a monitored return of the child to a parent.[15] A monitored return may be ordered if the trial court finds that retaining jurisdiction is in the best interest of the child, and it orders the department to continue serving as temporary managing conservator and monitor the child's placement to ensure the child's safety at the same time that it orders the department to return the child to the child's parent or transition the child from substitute care to the parent while the parent completes the remaining requirements imposed under a service plan.[16] If the trial court orders a monitored return of the child to a parent, it must schedule a new dismissal date no later than 180 days after the date the order is rendered.[17] If the child returns to care after the trial court orders a monitored return to a parent, the trial court's jurisdiction may be extended again; the new dismissal date may not be later than the original dismissal or the 180th day after the date the child returns to care, whichever is later.[18]

When the State produced the spreadsheet to the Monitors listing children who had been in TMC status for 13 or more months as of the date of the status hearing, it also submitted a memo to the Monitors memorializing its understanding of the deadlines set by the Texas Family Code.[19] DFPS noted, "If this statutory timeframe is not adhered to, then a case is automatically dismissed. Accordingly, there is no opportunity for a child to pass from TMC to PMC."[20] DFPS further stated, "During the COVID-19 pandemic, the Texas Supreme Court issued Emergency Orders allowing state courts to grant additional extensions, to account for the difficulties in scheduling trials during the pandemic…However, any such pandemic-related extension is 'not automatic,' and the trial court still must make the findings necessary to grant the extension."[21]

### II. Texas Supreme Court Emergency Orders

After the onset of the COVID-19 pandemic, the Texas Supreme Court issued a series of orders allowing the extension of deadlines in civil and criminal proceedings. The first order was jointly issued by the Texas Supreme Court and the Court of Criminal Appeals on March 13, 2020, and included blanket language allowing suspension or modification of any and all deadlines (subject

---

[12] TEX. FAM. CODE §263.401(b-1).
[13] *Id*.
[14] TEX. FAM. CODE §263.401(c).
[15] TEX. FAM. CODE §263.403.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] DFPS, *Children on TMC Status for Longer than Thirteen Months* (undated)(on file with the Monitors).
[20] *Id*.
[21] *Id*, citing *In the Interest of J.L.J.*, No. 14-21-00619-CV, 2022 WL 1222628, at *3 (Tex. App. – Houston [14th] Apr. 26, 2022.

3

to constitutional limitations) in civil and criminal cases.[22] The order set an outer limit of deadline extensions of 30 days after the Governor lifted the state of disaster for Texas.[23]

The Texas Supreme Court issued subsequent emergency orders over the course of the pandemic that renewed and amended the court's preceding emergency orders. Beginning with the 17th Emergency Order, issued on May 26, 2020, the emergency orders specifically allowed trial courts to extend the initial TMC dismissal deadline "for a stated period not to exceed 180 days," and to extend the dismissal date for any case previously retained on the court's docket for an additional period not to exceed 180 days.[24] However, the 18th Emergency Order, entered June 29, 2020, began to set some limits around the ability to extend TMC dismissal dates, specifying that the initial dismissal date could only be extended according to the statutory provisions related to extensions, discussed above.[25] If a trial court had previously modified the initial dismissal date or had extended the dismissal date pursuant to the relevant Family Code provisions, the dismissal deadline could again be extended 180 days.[26]

This language did not change in subsequently issued orders until the 38th Emergency Order, issued on May 26, 2021, began to set additional limits around a trial court's ability to continue extending TMC deadlines that had been extended under previous emergency orders. This order specified that TMC deadlines could not be modified or suspended "unless permitted by statute," after August 1, 2021, except:

- If the trial court had previously modified a dismissal date pursuant to a prior emergency order, the trial court could extend the dismissal date for a stated period ending no later than December 1, 2021; or
- If the trial court had previously extended a case on its docket pursuant to §263.401(b) or (b-1), the court could extend the dismissal date for a stated period ending no later than February 1, 2022; or
- If the trial court had not previously retained the case pursuant to §263.401(b) or (b-1), the court could extend the initial dismissal date as calculated for a stated period ending no later than April 1, 2022.[27]

For cases filed on or after May 26, 2021, the 38th Emergency Order specified that the trial court could extend the initial dismissal date under §263.401(a) "only as provided by Section 263.401(b) or (b-1)." This language did not change until the 49th Emergency Order added a paragraph that allowed the Regional Presiding Judge to "further extend the dismissal date…upon good cause shown by the requesting trial court."[28] The paragraph instructs trial courts that before making a request, the trial court "should consider the use of alternative dispute resolution" and only allows the Regional Presiding Judge to grant a 60-day (cumulative) extension.[29] The 49th Order was

---

[22] Texas Supreme Court & Texas Court of Criminal Appeals, First Emergency Order Regarding the COVID-19 State of Disaster, March 13 2020.
[23] *Id*.
[24] Texas Supreme Court, Seventeenth Emergency Order Regarding the COVID-19 State of Disaster, May 26, 2020.
[25] Texas Supreme Court, Eighteenth Emergency Order Regarding the COVID-19 State of Disaster, June 29, 2020.
[26] *Id*.
[27] Texas Supreme Court, Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster, May 26, 2021.
[28] Texas Supreme Court, Forty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, March 22, 2022.
[29] *Id*.

effective April 1, 2022, and expired June 1, 2022.[30] On May 25, 2022, the court entered the 51st Emergency Order without including the language related to dismissals under §263.401, allowing the language to expire.[31]

### III.   The Monitors' Review of the Data Provided by the State

On July 6, 2022, DFPS provided the Monitors with a spreadsheet that included the requested information for 3,483 children that the State identified as having been in TMC status for 13 months or more as of June 6, 2022. The data was disaggregated by DFPS region, and in addition to the requested information, DFPS included some demographic information for the children, as well as the number of months each child had been in TMC status. Of these children, the majority have been in TMC for less than 18 months.[32]

**Table 1: Time in TMC**

| Time in TMC | Frequency | Percent |
|---|---:|---:|
| Less than 18 months | 2044 | 69.0% |
| 18-24 months | 668 | 22.5% |
| 24-36 months | 209 | 7.1% |
| More than 36 months | 43 | 1.5% |
| **Total** | **2964** | **100%** |

In every region, most children who had been in TMC status for 13 months or more had been in TMC for less than 18 months. However, of the 920 children who had been in TMC status for 18 months or more, some DFPS regions had a higher number of children in TMC status for longer periods. Of the children that the DFPS spreadsheet identified as having had their TMC status extended by the trial court, some had been in TMC status for close to four years, with one sibling group of two children in Region 6A listed as having been in TMC status for 47 months, and another group of three siblings shown as having been in TMC status for 43 months.[33]

---

[30] *Id*.
[31] Texas Supreme Court, Fifty-First Emergency Order Regarding the COVID-19 State of Disaster, May 25, 2022.
[32] The Monitors' analysis of time in TMC excludes the children who the State identified as having an incorrect TMC legal status.
[33] The State's spreadsheet indicates the two children who had been in TMC status for 47 months entered TMC on June 27, 2018, and had their TMC status extended due to extraordinary circumstances. Another note in the spreadsheet indicates, "Trial date was reset due to a conflict with attorneys." The last legal action contact listed in children's IMPACT records indicates that a final merits hearing was set for March 9, 2022. There are no trial court orders in One Case, and no notes in IMPACT to indicate when the trial court extended TMC. However, if the trial court had extended TMC in June of 2019, that extension would have expired before the first Texas Supreme Court COVID-19 emergency order was in entered.

The siblings who were listed as having been in TMC status for 43 months entered TMC on October 23, 2018. There are no trial court orders in One Case, and the Monitors did not find any notes in IMPACT showing when or why the trial court extended the children's TMC status. IMPACT legal action contacts and the legal log include a September 29, 2021 entry titled "CVS Hearing Permanency Hearing Before Final Or," with notes in the comments stating, "Trial began: 08/16/2021 Scheduled to return 09/27/2021 and 10/06/2021." The State's spreadsheet notes, "Legal case has been in trial. After trial commenced court did not make a ruling."

According to the State's spreadsheet, five other regions also had children in TMC status for 42 months or longer due to a trial court extension.

**Table 2: Children in TMC for 18 months or more by DFPS Region**

| Region | 18-24 months | 24-36 months | More than 36 months | Total |
|---|---|---|---|---|
| 1 | 25 | 1 | 0 | 26 |
| 2 | 22 | 1 | 0 | 23 |
| 3B | 25 | 13 | 0 | 38 |
| 3E | 63 | 14 | 8 | 85 |
| 3W | 9 | 0 | 0 | 9 |
| 4 | 18 | 0 | 0 | 18 |
| 5 | 21 | 6 | 3 | 30 |
| 6A | 104 | 43 | 17 | 164 |
| 6B | 47 | 25 | 3 | 75 |
| 7 | 141 | 34 | 2 | 177 |
| 8 | 88 | 22 | 0 | 110 |
| 9 | 29 | 2 | 0 | 31 |
| 10 | 12 | 7 | 1 | 20 |
| 11 | 64 | 41 | 9 | 114 |
| **Total** | **668** | **209** | **43** | **920** |

For purposes of the Monitors' review of the information provided by the State, the Texas Supreme Court's emergency orders made validating the data highly fact-specific, dependent on the timing of the trial court's entry of any order modifying the initial dismissal date or extending its jurisdiction.[34] The Monitors' initial analysis of the data calls into question the reliability and accuracy of the State's data; the Monitors' review of IMPACT records for just a few of the children included in the data produced by the State revealed inconsistencies that compounded the concerns raised by the data itself.

The information the State provided to the Monitors included the "Reason for Extension of TMC." The State listed the following valid reasons for an extension of TMC status:

- TMC Extended – COVID special exception
- TMC Extended – extraordinary circumstances (as found by the court)
- TMC Extended – monitored return

Additionally, the State listed reasons that included several categories titled "incorrect legal status." In these instances, it appears from the records that following the Court's expression of

---

[34] *See* SUPREME COURT OF TEXAS PERMANENT JUDICIAL COMMISSION FOR CHILDREN, YOUTH AND FAMILIES, TEXAS CHILD PROTECTION LAW BENCH BOOK 105 (October 2021)("The posture of each case will depend on when the case was filed, whether it was extended under the Texas Family Code, and whether it was txtended under an Emergency Order").

concern at the June 6th status conference, the State's review resulted in the discovery that hundreds of children's legal status in IMPACT was incorrect. The "incorrect legal status" categories included the following:

- Incorrect legal status – corrected to PMC
- Incorrect legal status – legal case dismissed
- Incorrect legal status – unable to complete data entry/technical difficulty

The Monitors' analysis of the data showed that the listed reason for extended TMC status was "incorrect legal status – corrected to PMC" for 339 children, approximately 10% of the children reviewed by the State. The State identified an additional 141 children with the TMC extension reason, "incorrect legal status – case dismissed." The status for 17 children was listed as "incorrect legal status – unable to complete data entry/technical difficulty."[35] In all, the State's submission appears to indicate that it discovered an incorrect TMC legal status for 497 children.

Some DFPS regions had a relatively high number of children for whom TMC status was determined to be incorrect. For example, of a total of 474 children who had been listed with a TMC status for 13 months or more in Region 8, 72 had an incorrect legal status that was corrected to PMC, and the status of another 15 was corrected because the child's case had been dismissed, for a total of 87 (18%). Similarly, of the 224 children in Region 2 listed with a TMC status for 13 months or more, 69 were corrected to PMC, and the status for another nine was corrected due to cases having been dismissed, for a total of 78 (35%). In Region 1, of the 186 children who had been in TMC status for 13 or more months, 34 had their legal status corrected to PMC, and another 8 had their legal status corrected because the case had been dismissed, for a total of 42 (23%).

When the Monitors reviewed IMPACT records for some of the children listed as having had their legal status corrected as a result of the State's review, the records revealed troubling inconsistencies between the State's spreadsheet and IMPACT, and even within the records found in IMPACT. For example, in one case, the child entered TMC on June 3, 2020. Without an extension, the trial court would have lost jurisdiction over the case in June of 2021. There are only four entries on the legal log in the child's IMPACT records. The first, dated May 4, 2021, is for a permanency hearing. On May 20, 2021 and September 14, 2021, there are entries with "Agreed Orders – No hearing" listed as the legal action.[36] And on November 16, 2021, an entry indicates that the final merits hearing was "rescheduled." Yet, a legal status contact entered in IMPACT on June 20, 2022, states "PMC/Rts Not Term 05/06/2022." There are no other contact notes in the child's IMPACT records on May 6, 2022.

However, there is a trial court order in One Case titled "Final Order in Suit Affecting the Parent-Child Relationship," with a July 12, 2022 file stamp, signed by an associate judge on July 11, 2022 and by the trial court judge on July 12, 2022. It is the only order saved in One Case and it indicates that the trial was commenced on November 21, 2021 and recessed until May 5, 2022. The order indicates that the trial court rendered judgement on May 6, 2022 "via e-mail."

---

[35] The Monitors review of IMPACT records revealed that at least one of these children was in the State's PMC.
[36] Parties to a suit may not extend the deadlines set by the court by agreement or otherwise. TEX. FAM. CODE §263.402(a).

7

In yet another case, the child's IMPACT records show he entered TMC on May 13, 2020. Though the State's spreadsheet indicates that the child's TMC status in IMPACT was incorrect, and that it was changed to PMC, the legal status in the child's IMPACT records is unchanged, and still shows him in the State's TMC. The legal log shows a final merits hearing occurred on July 29, 2021, and the comments state, "Judge ordered [child] home with his father and mother's right were terminated. The Department filed a temporary restraining order while waiting on a de novo hearing to contest the judges [sic] original ruling." Subsequent entries in the log show a September 10, 2021 entry, with comments, "Recusal Hearing – Motion Denied with no other setting." On September 13, 2021 and January 10, 2022 there were two entries for a "Permanency Hearing After Final Ord." There are no entries in the log after January 10, 2022.

The State's data included sibling groups that were noted to have been incorrectly listed as TMC children though they had entered the State's PMC. In a case involving a sibling group of four children, the Monitors' review of IMPACT showed that all four children entered TMC on May 29, 2020. Without a trial court order extending jurisdiction, the children should have either entered PMC or returned home in May 2021. A review of IMPACT shows an entry made June 23, 2022, indicating the children's legal status had changed from TMC to PMC on May 20, 2022. However, the last legal action contact entry in the children's IMPACT records indicates that a final merits hearing was scheduled for November 19, 2021, and a note in the comments section states "monitored return set for 12/3." There are no trial court orders in the children's One Case records. A review of the children's placements shows their return home lasted only six days, due to their parent's positive drug test. The children were then placed with a relative, where they remain. The Monitors could not find any information validating the reason that TMC was extended in 2021, or the hearing that resulted in the change in status for the children from TMC to PMC.

In some cases, the IMPACT contact note correcting the child's legal status from TMC to PMC appears to have been made more than a year after the child entered PMC. For example, in a case involving two siblings, both entered TMC on December 4, 2018. A note in the legal action contact entry for a November 12, 2019 hearing states, "New dismissal date set 06/06/2020; next perm hr set for 03/02/20." The legal status contacts in IMPACT for both children show entries made on June 21, 2022, which state "PMC/Rts Not Term 02/02/2021." Yet, the legal action log in IMPACT lists the hearing scheduled for February 2, 2021 as "Permanency Hearing Before Final," and there are no notes describing the outcome of the hearing. The first hearing listed in the log titled "Permanency Hearing After Final" (which is also the only hearing listed after February 2, 2021) is listed as having occurred on January 18, 2022. The Monitors could not find any explanation in the children's IMPACT records for the delay in the children's movement into PMC. The children's placements did not include any monitored return home. It is possible that the trial court entered orders extending the children's TMC status in keeping with the Texas Supreme Court emergency orders, but without any trial court orders in One Case (or even a legal action contact note describing a trial court extension), the Monitors are unable to validate this explanation.

Of children included in the data the State provided to the Monitors, the longest period between a child entering PMC and their legal status being corrected in IMPACT was for a child who entered TMC on April 7, 2014, and PMC on April 7, 2015, but whose legal status was not corrected by DFPS until June 17, 2022.

In other cases, though the State correctly indicated that a child's legal status should have been listed as PMC rather than TMC, the Monitors' review of the child's IMPACT records

revealed that the child's legal status had not yet been corrected in the legal status field in IMPACT.[37]  In a case involving three siblings who entered TMC on October 16, 2019, the legal action contact notes in IMPACT show that a final merits hearing occurred on October 14, 2021, and the comments state "Department as PMC and children remain in current placement.  Enter orders consistent with the mediated settlement agreement."  Yet, the children's legal status in IMPACT has not changed.  The only entry in the legal status page is the TMC entry.  Without a correction, the State will continue to exclude these children from the PMC data and information that the State provides to the Monitors due to the way lists of PMC children are compiled by the State.[38]

Similarly, in a case in which the child entered TMC on October 16, 2019, the legal action contact notes in IMPACT suggest that sometime between October 15, 2020, when contact notes for a hearing indicate that the trial court extended jurisdiction for 30 days and appointed a lawyer for the child's mother, and March 31, 2021, when the contact notes list the first "CVS Hearing Permanency Hearing After Final Ord," the child presumably entered PMC.  It is impossible to determine when that occurred, based on the child's IMPACT records.  The child's legal status is still listed as TMC in IMPACT; the Monitors could not find any trial court orders in the child's records in One Case.

The Monitors encountered similar difficulties in reviewing and validating cases in which the State listed a legally valid reason for the extension of TMC.  For example, the reason listed for one child was a monitored return to the child's parent.  However, when the Monitors reviewed the child's IMPACT records, they showed the child had entered TMC on May 5, 2020.  Without an extension, the trial court would have lost jurisdiction over the case in May 2021. The legal action contacts in IMPACT and the legal log showed a May 12, 2021 hearing with an outcome listed as "Extend TMC."  Assuming a 180-day extension (which by May 2021 could only be done pursuant to Section 263.401(b) or through a monitored return pursuant to Section 263.403), the trial court would have lost jurisdiction in November 2021.  The May 12, 2021 entry is the last legal action listed in the child's legal log report in IMPACT.  However, the legal action contacts in the child's IMPACT records include a July 7, 2021 "CVS Permanency Hearing Before Final Or," but there are no notes indicating the outcome.  The child's placement history shows she was in a fictive kinship home (that was also a verified foster home) until May 16, 2022, at which point she was returned to her mother's care, where she remains.  Thus, it appears from the child's IMPACT

---

[37] This may reveal a gap in understanding or training for caseworkers.  In many of the cases reviewed by the Monitors, other information in IMPACT clearly indicated the child's legal status had changed, but an entry was never made changing the child's legal status in the appropriate IMPACT field.

[38] The Monitors asked DFPS how lists of PMC children are compiled, and specifically asked whether DFPS relies on the legal status field in IMPACT to compile the lists. DFPS responded:

> DFPS does rely on the legal status in IMPACT. The process is as follows; ODSI extracts data from IMPACT regarding legal status and that is sent to program staff for review and clean-up. Thereafter the program staff reviews and updates the system with child legal status and if they are either in TMC or PMC. Because this is a data clean-up sometimes there are delays with entering information – and that might include program processes where there are additional verifications prior to clean up. ODSI does not have a way to determine if the legal status is "right" or not, only how it is recorded in IMPACT.

E-mail from Besa Bauta, Chief Data Analytics Officer, DFPS, to Deborah Fowler & Kevin Ryan, July 20, 2022 (on file with the Monitors)("ODSI" is the Office of Data & Systems Improvement at DFPS).

records that the monitored return was ordered after the trial court would have lost jurisdiction of the case. There are no trial court orders in the child's One Case records; the only document in One Case was an undated "DFPS to SSCC Case Transfer Staffing Form."[39]

In a case involving a child in a different DFPS region of the state, the State listed the extension reason as "extraordinary circumstances." The child's IMPACT records showed she was placed in TMC on January 8, 2021. In order to preserve jurisdiction, the trial court should have entered an order extending TMC status in January 2022. The legal actions contact notes in IMPACT show the last two hearings occurred June 30, 2021 and April 5, 2022. The June 30, 2021 is listed as a "Permanency Hearing Before Final" and comments state, "Permanency Hearing. Status Quo. Added an additional visit for mother and children on Mondays." The April 5, 2022 hearing is also listed as "Permanency Hearing Before Final," and though there are no comments in the legal action contact or legal log, the outcome is listed as "Status Quo." The Monitors could not find any trial court orders in One Case.

In another case in DFPS Region 3B, the data provided by the State listed the reason for extension of a child as extraordinary circumstances, and listed the date the trial court granted the extension as July 14, 2021. When the Monitors examined the child's IMPACT records, they showed that the child had entered TMC on September 16, 2020. The legal action contact notes in IMPACT included an entry for a July 14, 2021 hearing; the outcome of the hearing was listed as "Extend TMC Dismissal Date," and the comments indicate "dismissal now March 18, 2022." However, the legal documents uploaded to One Case include a trial court order entered after a March 17, 2022 hearing that appointed DFPS as the permanent managing conservator of the child. The order was signed March 23, 2022. While the caseworker for the child had correctly entered a legal action contact in IMPACT on March 28, 2022, indicating that PMC had been granted to DFPS on March 23, 2022, the caseworker did not change the child's legal status in IMPACT.

While the Monitors' review of IMPACT records in the cases discussed, here, do not represent a statistically significant sample of the more than 3,000 cases in which the state indicated a child's legal status had been listed as TMC for 13 months or longer as of June 6, 2022, the consistency with which the Monitors could not validate the information found in the spreadsheets provided by DFPS, and the inclusion of more than 400 cases in which the State itself determined that the legal status of the child on June 6, 2022 was incorrectly listed raises concerns about both the data the State provided in response to the June 6, 2022 hearing, and data previously provided by the State to the Monitors listing members of the PMC class.

Much of the work that Monitors undertake to validate the Court's remedial orders relies on the State's representation that the lists it provides of members of the General Class are accurate. The failure to accurately identify the PMC status of children calls into question the State's ability to accurately identify all of the children affected by the Court's remedial orders. These lapses may have also affected the Monitors' efforts to validate the State's performance with respect to numerous remedial orders.

**IV.     Conclusion**

---

[39] The SSCC for the region, St. Francis, entered Stage II of CBC on March 2, 2022, according to the DFPS website.

At the same time that DFPS provided the data listing children who had been in TMC status for 13 months or more as of the date of the June 6, 2022 hearing, it also sent a memorandum to the Monitors reminding them that children only move into PMC status by virtue of a trial court order.[40] DFPS stated:

> [U]nder no circumstances does DFPS control the decision to place a child in its TMC, to extend a child's time in TMC, or to place a child in its PMC. Those decisions are made exclusively by Texas state courts, subject to the limitations of the Texas Family Code (as amended by the Emergency Orders).[41]

The data provided by the State and the limited review of IMPACT records undertaken by the Monitors to validate this recent submission raise concerns about whether data provided by the State listing children in the General Class is accurate and reliable. Though the State does not control when a child's status in TMC is extended, or when it is granted PMC, it does control entry of information into children's IMPACT records, which forms the basis for the data and information provided to the Monitors and the Court. The discovery of numerous State failures to appropriately reflect a child's legal status in their IMPACT records has serious implications for the Court's ability to evaluate the State's compliance with the Court's orders.

---

[40] DFPS, *Children on TMC Status for Longer Than Thirteen Months* (on file with the Monitors).
[41] *Id.*