IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> GREG ABBOTT, in his official capacity § <br> as Governor of the State of Texas, et al., § <br> § <br> Defendants. § | Civil Action No. 2:11-CV-00084 |

**PLAINTIFFS' RESPONSE TO MOTION FOR CLARIFICATION**

The remedial orders answer the two questions raised in defendants' motion (Dkt. 1362).

First, Remedial Order A-11 sets the timetable and procedure for the State to object to or request more information about the Monitors' monthly bills, Dkt. 606 at 18, which the Court has reemphasized. Nor is there ambiguity about already rejected objections to the billing format.

Second, Remedial Orders 3, 20, and 22 cover safety risks from psychotropic medications. Medical abuse or neglect often involves such drugs and often occurs at operations with patterns of contract and policy violations. Contrary to the motion, "specific prescription decisions" are *not* at issue. Dkt. 1362 at 1. At issue are systemic problems that create an unreasonable risk of serious harm to children: operations persisting in patterns "of contract or policy violations." Dkt. 606 at 4-5 (RO 20). Facilities that violate contract obligations and state agency policies, which include state minimum standards and child abuse and neglect laws, such as by not complying with doctors' "prescription decisions" for psychotropic drugs, harm children.

The overarching and vital objective of the remedial orders, including Orders 3, 20, and 22, is to stop the State from placing PMC children "in placements that create an unreasonable risk of serious harm." Dkt. 606 at 2. Remedial Order 3 does that by addressing intake and investigation of reports of child abuse and neglect, including those involving powerful drugs, as multiple reports

from the Monitors reflect. *See, e.g.*, Dkt. 1352-27 (Court Ex. 23, listing intakes that the monitoring team identified as medical neglect yet not assigned to a medical neglect investigation by the State and describing investigations conducted deficiently, including investigations of mismanagement of psychotropic medication). Remedial Order 22 addresses child abuse and neglect and compliance with reporting obligations in the context of State inspections of placements and placement agencies. Remedial Order 20 targets dangerous operations, including those that violate standards they are required to follow for children's medical care and use of prescribed medications.

I.  **Remedial Order A-11 states how/when to question or object to invoices.**

To object to or seek clarifying information about Monitors' bills, Defendants must follow the process outlined almost five years ago in Remedial Order A-11:

> [A.]11. The Monitors shall submit bills for their compensation and reasonable expenses to the State, as well as file these bills under seal with the Court, on a monthly basis. The State shall approve and issue payment within 30 days of receipt of the monthly bill. *If the State disputes a bill, Defendants shall file their objections with the Court no later than 15 days after receiving the bill and/or request additional clarifying information or documentation to the Monitors, with a copy served on Plaintiffs.* The Monitors shall have 15 days in which to respond and to provide the additional information and/or documentation requested, with a copy served on Plaintiffs. If within 45 days of presentation of the Monitors' bill there is still a dispute, the parties shall submit the dispute to the Court for resolution. At this time, Plaintiffs, Defendants, and the Monitors shall file a joint statement regarding the disputed payment.

Dkt. 606 at 18 (Nov. 20, 2018). The text is clear, and the State should follow the process. *See* Ex. 1 (May 26, 2023 email from Kevin Ryan). For example, the State received the last Public Catalyst invoice on May 5, 2023, so its deadline to raise questions or objections was May 20 (not May 22 as the motion states at footnote 1). Nor is there any good reason for the State to re-raise the same objections or requests that already have been rejected. *See* Dkt. 1356 at 15, 18.

## II. Abuse, neglect, and contract/policy violations as to psychotropic medications are covered by Remedial Orders 3, 20, and 22.

Like all prescription medications, psychotropic drugs pose risks to children if improperly administered or withheld. Under the Texas Administrative Code, administering or withholding such drugs in a way contrary to that prescribed by a doctor may constitute child abuse or neglect. Minimum standards and DFPS contracts with childcare providers address medications generally and psychotropic drugs specifically. Accordingly, use and misuse of psychotropic medications fall within several of the Court's remedial orders, including 3, 20, and 22.

Remedial Order 3 authorizes the Monitors to evaluate for the Court the State's system for receiving, screening, and investigating reports of child abuse and neglect. Remedial Order 20 requires the State to identify, monitor, and remedy unsafe operations where such abuse and neglect has occurred. Criteria for heightened monitoring include a pattern of contract/policy violations. DFPS contracts and the Texas Administrative Code mandate policies for prescription medications including psychotropic drugs. Remedial Order 22 requires the State to monitor placement agency compliance with duties to report child abuse and neglect, including medical abuse and neglect. In short, issues involving psychotropic drugs are directly within the ambit of the Court's supervisory activity under Remedial Orders 3, 20, and 22, as affirmed by the appeals court.

The motion falsely recasts a review of such issues as addressing "individual prescribing decisions of individual practitioners." Dkt. 1362 at 4-6. That framing reflects either a strategic misdirection or bad-faith misunderstanding. The Monitors do not challenge doctors' decisions on psychotropics. The issue is whether the State is complying with remedial orders intended to keep children safe. The orders are in place to protect innocent children from abuse and neglect— including medical or emotional abuse and neglect—at the hands of unsafe and inadequately

supervised operations. *See, e.g.*, 40 Tex. Admin. Code §707.787 (emotional abuse), §745.8557(4)-(5) (abuse involving drugs), §745.8559(5) (medical neglect).

**Remedial Order 3** deals with the State's system for receiving, screening, and investigating reports of abuse and neglect and puts that system under Monitor oversight.

> 3. DFPS shall ensure that reported allegations of *child abuse and neglect* involving children in the PMC class are investigated; commenced and completed on time consistent with the Court's Order; and *conducted taking into account at all times the child's safety needs*. The Monitors shall periodically review the statewide system for appropriately receiving, screening, and investigating reports of abuse and neglect involving children in the PMC class to ensure the investigations of all reports are commenced and completed on time consistent with this Order and *conducted taking into account at all times the child's safety needs*.

Dkt. 606 at 2 (emph. added).

There is no legitimate dispute that mismanagement of prescribed medications amounts to medical neglect for which investigations are required under Remedial Order 3. *See* 40 Tex. Admin. Code §745.8559(5). "Failure to seek, to obtain, or to follow through with medical care for a child" by anyone "working under the auspices of an operation that causes or may cause substantial emotional harm or substantial physical injury to a child" is per se neglect. *Id.*

Likewise, causing "a child to use" a prescription drug classified as "a controlled substance . . . other than a prescription drug that is prescribed to the child and used as prescribed" can be abuse. 40 Tex. Admin. Code §745.8557(4)-(5). Stephen Black, Associate Comm'r for Statewide Intake, confirmed that "medication errors" and "abuse of not abiding by the possible standards" can be child abuse or neglect. Dkt. 1356 at 58-59 (May 1, 2023). "Over medicat[ion] would be abuse, under-medication could be a medical (indiscernible), it depends on the act." *Id*. *See also, e.g.*, Dkt. 1352-18 (Court Ex. 8), 1352-20 (Court Ex. 10), 1352-27 (Court Ex. 23).

Similarly, emotional abuse includes acts/omissions that mentally or emotionally injure a child, resulting "in an observable and material impairment in the child's growth, development, or

psychological functioning." 40 Tex. Admin. Code §707.787. Medication or policy violations involving powerful psychotropic drugs have obvious potential to inflict such injury.

Thus, *not* properly following valid, existing prescribing decisions is abuse and neglect that the Monitors are charged with rooting out. *See id*. §707.787, §745.8557(4)-(5), §745.8559(5). And the Monitors have found grave deficiencies in State investigations of medical abuse and neglect. *See, e.g.*, Dkt. 1352-27 (Court Ex. 23, listing intakes that the monitoring team identified as medical neglect yet not assigned to a medical neglect investigation by the State and describing investigations conducted deficiently, including investigations of mismanagement of psychotropic medication).

**Remedial Order 20** requires heightened monitoring of facilities with a pattern of contract or policy violations. The State must address concerns at the facilities by taking corrective actions.

> Within 120 days, RCCL, and/or any successor entity charged with inspections of child care placements, will *identify, track and address concerns* at facilities that show a pattern of *contract or policy violations*. Such facilities must be subject to heightened monitoring by DFPS and any successor entity charged with inspections of child care placements and subject to more frequent inspections, *corrective actions and, as appropriate, other remedial actions* under DFPS' enforcement framework.

Dkt. 606 at 4-5 (emph. added).

Remedial Orders 3 and 20 are interrelated. Reporting and investigation of abuse/neglect is integral to identifying and tracking safety concerns at operations. It is an element of the formula that subjects an operation to heightened monitoring. *See* Dkt. 837. As such, misadministration and mismanagement of psychotropic drugs must be considered since it can be medical abuse or neglect with severe and even catastrophic consequences. Time and again, the Monitors have found and noted such cases in reports to the Court. Therefore, the Monitors must consider the existence of these safety risks and how the State receives and investigates reports of such activities.

In assessing compliance with Remedial Order 20, the Monitors must consider issues as to psychotropic drugs for a simple reason: misadministration and mismanagement of prescription drugs and medical records are violations that trigger heightened monitoring under Remedial Order 20, both as to minimum standards policies and contract duties. Key minimum standards relate to psychotropic drugs.[1] And there are express contract duties to the same effect.[2] Under Remedial Order 20, a pattern of "contract or policy violations" must subject facilities to heightened monitoring and requires mandatory "corrective actions" to "address concerns." Dkt. 606 at 4-5.

Indeed, at operations on heightened monitoring under Remedial Order 20 in 2020-22, "the number one concern and the most citations issued" are in the category of "Medical and medication management." May 1, 2023 Hearing Tr. 58; Dkt. 1352-18 (Court's Ex. 8). *It is the top concern*.

In reviewing compliance with Remedial Order 20, the Monitors do not assess individual prescribing decisions of practitioners. The assessment instead includes factors like whether the State is ensuring that operations comply with contract requirements. These include requiring a care

---

[1] These include 26 Tex. Admin Code §748.1337, §748.1345, §748.1385, §748.2253, §748.2255, §748.2257, §748.2259, and §748.2261. For example, when a child is admitted to a general residential operation, the child's initial service plan must include "Medical needs" and "Therapeutic needs, including . . . the use of psychotropic medications." *Id*. §748.1337. "The roles of professional level service providers in service planning include," for children with emotional or autism spectrum disorders, reviewing "any medications prescribed for a child with special review of psychotropic medications." *Id*. §748.1345. And, when reviewing and updating a child's service plan, the operation must "Evaluate the possible effectiveness and side effects in the use of psychotropic medications prescribed for the child, any change in psychotropic medications during the period since the last review, and the behaviors and reactions of the child observed by caregivers, professional level service providers, and parents, if applicable." *Id*. §748.1385. Numerous other minimum standards relate to medication generally. *See, e.g.*, *id*. §748.2001-2233.

[2] *See* DFPS Resid. Child Care Contracts, 24-Hour Resid. Child Care Requirements 55 (accessed May 23, 2023), at https://dfps.texas.gov/Doing_Business/Purchased_Client_Services/Residential_Child_Care_Contracts/documents/24_Hour_RCC_Requirements.pdf; Comparison of Min. Standards, Resid. Contract Requirements, & Service Level Indicators, DFPS.texas.gov (accessed May 4, 2023), at https://dfps.texas.gov/Doing_Business/Purchased_Client_Services/Residential_Child_Care_Contracts/comparison.asp.

provider to raise "concerns to DFPS and STAR Health if prescribed regimens are outside the Psychotropic Medication Utilization Parameters for Foster Children."[3] And they include minimum standards like those relating to medication storage, maintaining records of *prescribed* medications dispensed to children, and properly administering medications according to "a prescribing health-care professional's orders." Dkt. 1352-18 at 4-10. The Monitors' discoveries related to unreported abuse, neglect, and exploitation; un-cited minimum standards violations, and unaddressed contract violations are critical to ensuring appropriate implementation of heightened monitoring under Remedial Order 20. When the State turns a blind eye to such noncompliance, it undermines Remedial Order 20—operations that need heightened monitoring do not get it.

**Remedial Order 22** addresses child abuse and neglect, which necessarily includes abuse and neglect involving psychotropic drugs. It requires the State, in inspecting childcare placements and placement agencies, to consider reports and confirmed findings of child abuse and neglect and to monitor adherence to obligations to report child abuse and neglect. When the State finds a lapse in such reporting, it immediately must investigate and determine corrective action:

> 22. Effective immediately, RCCL, and any successor entity charged with inspections of child care placements, *must consider during the placement inspection all referrals of, and in addition all confirmed findings of, child abuse/neglect* and all confirmed findings of corporal punishment occurring in the placements. *During inspections*, RCCL, and any successor entity charged with inspections of child care placements, *must monitor placement agencies' adherence to obligations to report suspected child abuse/neglect*. When RCCL, and any successor entity charged with inspections of child care placements, *discovers a lapse in reporting*, it shall refer the matter to DFPS, which *shall immediately*

---

[3] DFPS Comparison of Min. Standards, Resid. Contract Requirements, & Service Level Indicators, https://dfps.texas.gov/Doing_Business/Purchased_Client_Services/Residential_Child_Care_Contracts/comparison.asp (accessed May 26, 2023); *see also, e.g.*, Dkt. 1352-23 (Court Ex. 19, excerpt from HHS Psychotropic Med. Util. Parameters for Children and Youth in Tex. Public Behaviorial Health (6th version)); DFPS 24-Hour Resid. Child Care Requirements, Resid. Contracts (RCC) at 55, at https://dfps.texas.gov/Doing_Business/Purchased_Client_Services/Residential_Child_Care_Contracts/ documents/24_Hour_RCC_Requirements.pdf (accessed May 26, 2023) (providers are required by contract to "follow[] the guidelines" in the State's PMU Parameters).

> *investigate to determine appropriate corrective action*, up to and including termination or modification of a contract.

Dkt. 606 at 5 (emph. added).

Associate Commissioner Black indicated that he expects "medication errors to be reported to SWI": SWI "get[s] these referrals to assess either abuse or neglect, or abuse of not abiding by the possible standards and . . . take[s] the standards reports as well." Dkt. 1356 at 59 (May 1, 2023). Similarly, failures "to seek, to obtain or follow through with medical care for a child by a person working under the auspices of an operation . . . are reportable events." *Id.* In addition to being relevant to Remedial Order 3's provisions regarding intake and investigation of abuse/neglect reports, such medical-related violations implicate Remedial Order 22. Referrals and findings of medical abuse/neglect must be considered during placement inspections, and lapses in reporting of such events must be addressed. Dkt. 606 at 5. And the State must monitor placement agency adherence to their duties to report medical abuse/neglect. *Id.*

Simply put, the Monitors must consider problems involving psychotropic drugs to ensure compliance with the State's duties under Remedial Orders 3, 20, and 22 to investigate child abuse and neglect, inspect placements/placement agencies, and monitor unsafe operations and correct unsafe conditions. Indeed, without the Monitors' review of children's records during site visits, the State would not have discovered many serious unsafe conditions at congregate care facilities. *See, e.g.*, Dkt. 1352-3-8 (Court Ex. 5A-5F, examples from hearing transcripts of unsafe conditions found by the Monitors); Dkt. 1356 at 86-87 (May 1, 2023) (Commissioner admitting that the agency took steps to ensure children in residential treatment centers have valid medical consenters after Monitors uncovered improprieties). The State does not dispute the accuracy of the Monitors' factual findings, and its inability to identify or failure to correct these serious risks is symptomatic of noncompliance with the Court's orders. *See, e.g.,* Dkt. 1337 at 4-15 (site visit report).

The fact is that the State's "enforcement practices" have long been "problematic." *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 267 (5th Cir. 2018) (affirming this Court's liability findings).

> RCCL issues thousands of citations for violations per year. Of the 6,050 violations cited in 2013, however, only 12 resulted in a corrective action and only one resulted an adverse action. Only one facility has been closed in the last five years . . . .

*Id*. Remedial Order 20's heightened monitoring requirements are one of the measures intended to remedy this problem. The situation today is better in some areas but still critically deficient in important other areas of the system. Children remain in dire risk.

The Court cannot supervise its orders and ensure compliance with Remedial Orders 3, 20, and 22 if, as the State seems to want, the Monitors put on blinders to safety risks involving policy/contract violations and abuse and neglect relating to psychotropic drugs. When the Monitors find the State's failure adequately to accept or investigate reports of such misconduct, or to monitor/correct facilities and agencies with a pattern of violations, they are doing just what Remedial Orders 3, 20, and 22 require and what this Court and the Fifth Circuit have held is constitutionally necessary.

Remedial Orders 3, 20, and 22 are clear. The Monitors must consider child abuse/neglect from violations of state contracts/policies, including those involving psychotropic drugs.

## CONCLUSION

For these reasons, Plaintiffs respectfully submit that the answers that the State now wants to hear again are obvious. First, Remedial Order A-11 governs procedures/timing for objections to and request for clarification of Monitor invoices. Second, under the terms of Remedial Orders 3, 20, and 22, issues of child abuse/neglect from contract or policy violations relating to psychotropic medications are directly and necessarily within the Monitors' purview. The State's unstated but

apparent goal to hamstring the Monitors, by forcing them to turn a blind eye to chronic medication violations in the Texas foster care system, is unprecedented, dangerous, and shameful.

Dated:  May 29, 2023

Respectfully submitted,

*R. Paul Yetter*

| | |
|---|---|
| Samantha Bartosz (*pro hac vice*) | R. Paul Yetter |
| Stephen Dixon (*pro hac vice*) | State Bar No. 22154200 |
| CHILDREN'S RIGHTS | Christian J. Ward |
| 88 Pine Street, Suite 800 | State Bar No. 24033434 |
| New York, New York 10005 | YETTER COLEMAN LLP |
| (212) 683-2210 | 811 Main Street, Suite 4100 |
| sbartosz@childrensrights.org | Houston, Texas 77002 |
| | (713) 632-8000 |
| Marcia Robinson Lowry (*pro hac vice*) | pyetter@yettercoleman.com |
| A BETTER CHILDHOOD, INC. | |
| 355 Lexington Avenue, Floor 16 | Barry F. McNeil |
| New York, New York 10017 | State Bar No. 13829500 |
| (646) 795-4456 | HAYNES AND BOONE, LLP |
| mlowry@ABetterChildhood.org | 2323 Victory Ave., Suite 700 |
| | Dallas, Texas 75219 |
| | (214) 651-5000 |
| | barry.mcneil@haynesboone.com |

ATTORNEYS FOR PLAINTIFFS AND
THE GENERAL CLASS AND SUBCLASSES

### CERTIFICATE OF SERVICE

I certify that on the 29th day of May, 2023, a true and correct copy of this document was served on all counsel of record using the Court's CM/ECF e-file system.

*/s/ R. Paul Yetter*
R. Paul Yetter