IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as | § | |
| Governor of the State of Texas, et al., | § | |
| | § | |
| Defendants. | § | |

**Update to the Court Regarding RO 35 Caseload Performance**

Remedial Order 35: *Effective immediately, DFPS shall track caseloads on a child-only basis, as ordered by the Court in December 2015. Effective immediately, DFPS shall report to the Monitors, on a quarterly basis, caseloads for all staff, including supervisors, who provide primary case management services to children in the PMC class, whether employed by a public or private entity, and whether full-time or part-time. Data reports shall show all staff who provide case management services to children in the PMC class and their caseloads. In addition, DFPS' reporting shall include the number and percent of staff with caseloads within, below and over the DFPS established guideline, by office, by county, by agency (if private) and statewide. Reports will include the identification number and location of individual staff and the number of PMC children and, if any, TMC children to whom they provide case management. Caseloads for staff, as defined above, who spend part-time in caseload carrying functions and part-time in other functions must be reported accordingly.*

Remedial Order A1: *Within 60 days of the Court's Order, DFPS, in consultation with and supervision of the Monitors, shall propose a workload study to generate reliable data regarding current caseloads and to determine how many children caseworkers are able to safely carry, for the establishment of appropriate guidelines for caseload ranges. The proposal shall include, but will not be limited to: the sampling criteria, timeframes, protocols, survey questions, pool sample, interpretation models, and the questions asked during the study. DFPS shall file this proposal with the Court within 60 days of the Court's Order, and the Court shall convene a hearing to review the proposal.*

Remedial Order A2: *Within 120 days of the Court's Order, DFPS shall present the completed workload study submission to the Court, how many cases, on average, caseworkers are able to safely carry, and the data and information upon which the determination is based, for the establishment of appropriate guidelines for caseload ranges.*

Remedial A3: *Within 150 days of the Court's Order, DFPS shall establish internal caseload standards based on the findings of the DFPS workload study, and subject to the Court's approval. The caseload standards that DFPS will establish shall ensure a flexible method of distributing caseloads that takes into account the following non-exhaustive criteria: the complexity of the cases; travel distances; language barriers; and the experience of the caseworker. In the policy established by DFPS, caseloads for staff shall be prorated for those who are less than full-time. Additionally, caseloads for staff who spend part-time in the work described by the caseload standard and part-time in other functions shall be pro-rated accordingly.*

Remedial Order A4: *Within 180 days of the Court's Order, DFPS shall ensure that the generally applicable, internal caseload standards that are established are utilized to serve as guidance for supervisors who are handling caseload distribution and that its hiring goals for all staff are informed by the generally applicable, internal caseload standards that are established. This order shall be applicable to all DFPS supervisors, as well as anyone employed by private entities who is charged by DFPS to provide case management services to children in the General class.* [The Court modified the effective date of this Remedial Order to February 15, 2020.[1]]

1. Background

On December 16, 2019, the Court approved an agreed motion submitted by the parties that in lieu of conducting workload studies pursuant to Remedial Orders A1, A2, B1 and B2, DFPS and HHSC would use as caseload guidelines:

- 14-17 children per conservatorship caseworker, for the purpose of satisfying State obligations within Remedial Orders A2, A3 and A4;
- 14-17 investigations per DFPS CCI investigator, for the purpose of satisfying State obligations within Remedial Orders B2, B3 and B4; and
- 14-17 tasks per RCCR inspector, for the purpose of satisfying State obligations within Remedial Orders B2, B3 and B4.

To assess the State's compliance with Remedial Order 35, the Monitors analyzed monthly point-in-time caseload data provided by DFPS to the Monitors. To validate the accuracy of the State's caseload data submissions, the Monitors randomly selected and interviewed 193 caseworkers from 66 counties as described below. In advance of the monitoring team's interviews with caseworkers, DFPS provided caseload information from the State's INSIGHT reporting tool for each

---

[1] Order Regarding Workload Studies in the November 20, 2018 Order 1-2, *M.D. ex rel. Stukenberg v. Abbott, No. 2:11-CV-84*, slip. op. (S.D. Tex. Dec. 17, 2019), ECF No. 772.

caseworker for the date selected by the Monitors;[2] for the Single Source Continuum Contractors (SSCCs), DFPS provided the alternative workload reports that the respective SSCCs currently use as they do not use INSIGHT.

In this reporting period, Belong began case management of children in its region in October 2022 when it transitioned to Stage II of Community Based Care. The Monitors commenced assessment of its conformance with the referenced Remedial Orders in November 2022. Additionally, the Monitors met separately with Belong, OCOK, and St. Francis on April 19, 2023 to discuss their adherence to the guidelines pursuant to Remedial Order 35.

2. Remedial Orders 35 and A4: Caseworker Caseloads Performance Validation Results

To analyze caseloads, the Monitors used the total number of children assigned to CPS CVS Specialists (I-V) at DFPS; Permanency Specialists or Local Permanency Specialists at OCOK, Permanency Case Managers and Intake and Placement Specialists (I-II) at 2Ingage, Permanency Specialists at St. Francis, and Permanency Specialists at Belong.[3,4,5]

On July 31, 2022, there were 1,579 caseworkers who managed at least one PMC child's case; the total includes caseworkers employed by DFPS (1,296), OCOK (113), 2Ingage (86), and St. Francis (84).[6] In the seven months of caseload reports that the State submitted between July 31, 2022 and

---

[2] DFPS describes INSIGHT as a tool to "manage critical case tasks and deadlines." DFPS, *Impact Modernization*, *available at* https://www.dfps.state.tx.us/Doing_Business/IMPACT_Modernization/default.asp.

[3] CVS Specialists I, II, III, IV, and V account for over 95% of all the staff listed by DFPS carrying at least one PMC child's case in each of the caseload reports the Monitors received from DFPS from March 2020 to January 2023. Supervisors account for most of the remaining case-carrying staff. For this report, the Monitors eliminated from the analysis staff with other titles because they account for a relatively small number of staff who carry a small number of PMC children. On January 31, 2023, for example, of the 1,207 DFPS staff carrying at least one PMC case, 1,166 (97%) are CVS Specialists I-V and 15 are supervisors (1%). Program specialists (3), master CVS specialists (8), and staff with other titles (15) account for the remaining staff.

[4] The Monitors did not weight secondary assignments in their assessment of conformity with the caseload guidelines for this report and they continue to collect information in interviews with caseworkers and assess the appropriate methodology.

[5] Furthermore, since the State advised the Monitors that "the supervisor to staff ratio for CVS is 1:7," via E-mail from Tara Olah (former Director of Implementation and Strategy, DFPS) to Kevin Ryan and Deborah Fowler (Monitors), on March 24, 2020, in order to assess conformance with standards for supervisors who carried cases, the Monitors calculated supervisors' workloads. The Monitors assigned a weight of 14.29% for each supervised caseworker (100% - a full workload - divided by seven) and 5.88% (100% - a full caseload - divided by the agreed-upon standard of 17 cases) for each PMC/TMC child's case that the supervisor managed directly. To assess a supervisor who supervises six caseworkers and is the primary case manager for one child, the supervisor dedicates 85.74% of their time to supervision (six workers x 14.29%) and 5.88% of their time to primary case management for one child yielding 91.62% of a workload, which is below the supervisor's 100% availability and within the standard. If the supervisor supervises six caseworkers and serves as the primary case manager for four children, an additional 23.52% weight (5.88% x four) is added to their workload of six supervision assignments (85.74% + 23.52%) yielding 109.26% of a caseload, which is greater than 100% of their availability. *See* Deborah Fowler & Kevin Ryan, First Report 173, footnote 375, ECF No. 869.

[6] DFPS, *RO2.1_CVS_Caseloads_2022_07d2022_09_01_log106828* (September 1, 2022) (on file with the Monitors).

January 31, 2023,[7] it reported the highest number of caseworkers managing at least one PMC child's case on July 31, 2022 (1,579) and the lowest number on January 31, 2023 (1,456). From July 31, 2022 to January 31, 2023, the number of caseworkers managing at least one PMC case decreased by 123 (8%).[8]

Remedial Order A4 became effective on February 15, 2020, requiring DFPS to ensure that the caseload standard of 14 to 17 children is "utilized to serve as guidance for supervisors who are handling caseload distribution" and is used to inform "hiring goals for all staff." In seven months of caseload reports starting on July 31, 2022 and ending on January 31, 2023, an average of 87% of all caseworkers managing at least one PMC child's case were assigned to serve 17 or fewer children and an average of 13% of these caseworkers served 18 or more children. The rate of conformance with the guidelines among the seven caseload reports ranged between 89% at the end of the period (on December 31, 2022 and January 31, 2023) and 85% (on July 31, 2022, September 30, 2022 and October 31, 2022).

As shown in the table below, on January 31, 2023, of the 1,456 caseworkers who managed at least one PMC child's case, 1,301 (89%) caseworkers had 17 or fewer children on their caseload. One hundred sixteen (8%) carried 18 to 20 children on their caseloads. Thirty-eight (3%) carried 21 to 25 children on their caseloads. The remaining one worker (less than 0%) carried more than 25 children on their caseload, with no workers carrying more than 30 children on their caseloads.

**Table 1: All Caseworkers Managing At Least One PMC Child
July 2022 to January 2023**

| Month | Caseworkers Serving at least one PMC Child | 17 Children or Fewer | | 18 Children or More | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 1579 | 1347 | 85% | 232 | 15% |
| August 2022 | 1549 | 1325 | 86% | 224 | 14% |
| September 2022 | 1522 | 1297 | 85% | 225 | 15% |
| October 2022 | 1495 | 1272 | 85% | 223 | 15% |
| November 2022 | 1463 | 1270 | 87% | 193 | 13% |
| December 2022 | 1464 | 1306 | 89% | 158 | 11% |
| January 2023 | 1456 | 1301 | 89% | 155 | 11% |
| **Average** | **1504** | **1303** | **87%** | **201** | **13%** |

---

[7] DFPS, *RO2.1_CVS_Caseloads_2022_07d2022_09_01_log106828* (September 1, 2022); DFPS, *RO2.1_CVS_Caseloads_2022_08d2022_10_03_log107268* (October 4, 2023); *RO2.1_CVS_Caseloads_2022_09d2022_11_01_log107611* (November 1, 2022); *RO2.1_CVS_Caseloads_2022_10d2022_12_01_log108021* (December 1, 2022); *RO2.1_CVS_Caseloads_2022_11d2023_01_02_log108319* (January 1, 2023); *RO2.1_CVS_Caseloads_2022_12d2023_02_01_log108595* (February 2, 2023); *RO2.1_CVS_Caseloads_2023_01d2023_03_01_log108852* (March 1, 2023) (on file with the Monitors).

[8] Throughout this report, all caseload references are based on workers who are assigned at least one PMC child on their caseloads.

The vast majority of supervisors did not manage a PMC child's case during the period reviewed. On January 31, 2023, 17 supervisors managed at least one PMC child's case, a decrease from the 20 supervisors managing at least one case on July 31, 2022. Of those 17 supervisors, 13 carried more than one workload.

**Table 2: All Supervisors Managing at Least One PMC Child and Total Workload July 2022 to January 2023**

| Month | Supervisors Serving at least one PMC Child | One Workload or Less | | More Than One Workload | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 20 | 3 | 15% | 17 | 85% |
| August 2022 | 20 | 3 | 15% | 17 | 85% |
| September 2022 | 17 | 4 | 24% | 13 | 76% |
| October 2022 | 21 | 5 | 24% | 16 | 76% |
| November 2022 | 19 | 5 | 26% | 14 | 74% |
| December 2022 | 18 | 5 | 28% | 13 | 72% |
| January 2023 | 17 | 4 | 24% | 13 | 76% |
| **Average** | **19** | **4** | **22%** | **15** | **78%** |

Note: The average number of supervisors in each column is rounded to the nearest integer.

Excluding SSCC staff from the analysis, in the seven months of caseload reports for this period, an average of 89% of DFPS caseworkers managing at least one PMC child's case were assigned to serve 17 or fewer children and an average of 11% of these caseworkers served 18 or more children. The percentage of caseworkers within the guidelines increased from 86% on July 31, 2022 to 92% on January 31, 2023.[9] The average rate of DFPS caseworkers managing at least one PMC child's case assigned to serve 17 or fewer children was 79% in the Fifth Report.[10]

Among the SSCCs, performance varied as further discussed below. 2Ingage's performance was stable during the period with an average of 96% of the relevant caseworkers assigned caseloads that conformed to the guidelines. The average rate of 2Ingage caseworkers managing at least one PMC child's case assigned to serve 17 or fewer children was 86% in the Fifth Report.[11]

---

[9] As of January 31, 2023, 1,166 (80%) of the 1,456 caseworkers managing at least one PMC child's case were employed by DFPS. The 1,166 caseworkers are a decrease of 10% from the 1,296 DFPS caseworkers managing at least one PMC child on July 31, 2022.

[10] *See* Deborah Fowler & Kevin Ryan, Fifth Report 116, ECF No. 1318.

[11] *See* Deborah Fowler & Kevin Ryan, Fifth Report 119, ECF No. 1318.

For the remaining SSCCs, the number of caseworkers whose caseloads conformed to the guidelines fluctuated and additional monthly details for these three SSCCs are broken out below due to the performance over the period.

In sum, they were as follows:

- **OCOK**: the average number of relevant caseworkers with caseloads that conformed to the guidelines was 67% during the period and reached 72% (70) of caseworkers by January 31, 2023;

- **St. Francis**: the average number of relevant caseworkers with caseloads that conformed to the guidelines was 66% during the period and reached 76% (58) of caseworkers by January 31, 2023; and

- **Belong**: the average number of relevant caseworkers with caseloads that conformed to the guidelines was 74% during the period[12] and reached 81% (29) of caseworkers by January 31, 2023.

As of January 31, 2023, 97 (7%) of the 1,456 caseworkers managing at least one PMC child's case were employed by OCOK. The 97 OCOK caseworkers managing at least one PMC child are a decrease of 14% from the 113 caseworkers managing at least one PMC child on July 31, 2022.

In the seven months of caseload reports for OCOK starting on July 31, 2022 and ending on January 31, 2023, an average of 67% of OCOK caseworkers managing at least one PMC child's case were assigned to serve 17 or fewer children and an average of 33% of these caseworkers served 18 or more children. OCOK's highest rate of conforming to the guidelines among the seven caseload reports occurred on July 31, 2022 (95%) and the lowest rate occurred on October 31, 2022 (47%). The average rate of OCOK caseworkers managing at least one PMC child's case who had 17 or fewer children on their caseloads was 94% in the Fifth Report.[13]

As shown in the table below, on January 31, 2023, of the 97 OCOK caseworkers who managed at least one PMC child's case, 70 (72%) caseworkers had 17 or fewer children on their caseloads.

**Table 3: OCOK Caseworkers Managing at Least One PMC Child**
**July 2022 to January 2023**

| Month | OCOK Caseworkers Serving at least one PMC Child | 17 Children or Fewer | | 18 Children or More | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 113 | 107 | 95% | 6 | 5% |

---

[12] The Belong report period includes caseload reports for November 30, 2022, December 31, 2022, and January 31, 2023.
[13] *See* Deborah Fowler & Kevin Ryan, Fifth Report 117, ECF No. 1318.

| | | | | | |
|---|---|---|---|---|---|
| August 2022 | 108 | 86 | 80% | 22 | 20% |
| September 2022 | 102 | 62 | 61% | 40 | 39% |
| October 2022 | 95 | 45 | 47% | 50 | 53% |
| November 2022 | 94 | 50 | 53% | 44 | 47% |
| December 2022 | 88 | 46 | 52% | 42 | 48% |
| January 2023 | 97 | 70 | 72% | 27 | 28% |
| **Average** | **100** | **67** | **67%** | **33** | **33%** |

Note: The average number of supervisors in each column is rounded to the nearest integer. The average percent sums the number of supervisors each month.

On January 31, 2023, OCOK supervisors did not manage any PMC child's case. In the four months of caseload reports where an OCOK supervisor managed at least one PMC child's case, the supervisor had more than one workload (July 2022, August 2022, October 2022 and December 2022).

**Table 4: OCOK Supervisors Managing at Least One PMC Child and Total Workload July 2022 to January 2023**

| Month | OCOK Supervisors Serving at least one PMC Child | One Workload or Less | | More Than One Workload | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 1 | 0 | 0% | 1 | 100% |
| August 2022 | 1 | 0 | 0% | 1 | 100% |
| September 2022 | 0 | 0 | -- | 0 | -- |
| October 2022 | 1 | 0 | 0% | 1 | 100% |
| November 2022 | 0 | 0 | -- | 0 | -- |
| December 2022 | 1 | 0 | 0% | 1 | 100% |
| January 2023 | 0 | 0 | -- | 0 | -- |
| **Average** | **1** | **0** | **0%** | **1** | **100%** |

Note: The average number of supervisors in each column is rounded to the nearest integer. The average percent sums the number of supervisors each month.

As of January 31, 2023, 76 (5%) of the 1,456 caseworkers managing at least one PMC child's case were employed by St. Francis. The 76 St. Francis caseworkers managing at least one PMC child are a decrease of 10% from the 84 caseworkers managing at least one PMC child on July 31, 2022.

In the seven months of caseload reports for St. Francis starting on July 31, 2022 and ending on January 31, 2023, an average of 66% of St. Francis caseworkers managing at least one PMC child's case were assigned to serve 17 or fewer children and an average of 34% of these caseworkers served 18 or more children. St. Francis's highest rate of conforming to the guidelines among the seven caseload reports occurred on November 30, 2022 (81%) and the lowest rate occurred on

7

August 31, 2022 (41%). The average rate of St. Francis caseworkers managing at least one PMC child's case who had 17 or fewer children on their caseloads was 49% in the Fifth Report.[14]

**Table 5: St. Francis Caseworkers Managing At Least One PMC Child**
**July 2022 to January 2023**

| Month | St. Francis Caseworkers Serving at least one PMC Child | 17 Children or Fewer | | 18 Children or More | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 84 | 38 | 45% | 46 | 55% |
| August 2022 | 81 | 33 | 41% | 48 | 59% |
| September 2022 | 82 | 56 | 68% | 26 | 32% |
| October 2022 | 81 | 58 | 72% | 23 | 28% |
| November 2022 | 78 | 63 | 81% | 15 | 19% |
| December 2022 | 80 | 63 | 79% | 17 | 21% |
| January 2023 | 76 | 58 | 76% | 18 | 24% |
| **Average** | **80** | **53** | **66%** | **28** | **34%** |

Note: The average number of supervisors in each column is rounded to the nearest integer. The average percent sums the number of supervisors each month.

In the seven months of caseload reports starting on July 31, 2022 and ending on January 31, 2023, an average of 40% of St. Francis supervisors managing at least one PMC child's case had one workload or less and an average of 60% had more than one workload.

**Table 6: St. Francis Supervisors Managing at Least One PMC Child and Total Workload**
**July 2022 to January 2023**

| Month | St. Francis Supervisors Serving at least one PMC Child | One Workload or Less | | More Than One Workload | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| July 2022 | 1 | 0 | 0% | 1 | 100% |
| August 2022 | 2 | 1 | 50% | 1 | 50% |
| September 2022 | 1 | 0 | 0% | 1 | 100% |
| October 2022 | 0 | 0 | -- | 0 | -- |
| November 2022 | 0 | 0 | -- | 0 | -- |
| December 2022 | 1 | 1 | 100% | 0 | 0% |
| January 2023 | 0 | 0 | -- | 0 | -- |
| **Average** | **1** | **0** | **40%** | **0** | **60%** |

Note: The average number of supervisors in each column is rounded to the nearest integer. The average percent sums the number of supervisors each month.

---

[14] *See* Deborah Fowler & Kevin Ryan, Fifth Report 120, ECF No. 1318.

As of January 31, 2023, 36 (2%) of the 1,456 caseworkers managing at least one PMC child's case were employed by Belong. The 36 Belong caseworkers managing at least one PMC child are an increase of 9% from the 33 caseworkers managing at least one PMC child on November 30, 2022. In the three months of caseload reports for Belong starting on November 30, 2022 and ending on January 31, 2023, an average of 74% of Belong caseworkers managing at least one PMC child's case were assigned to serve 17 or fewer children and an average of 26% of these caseworkers served 18 or more children. Belong's highest rate of conforming to the guidelines among the three caseload reports occurred on January 31, 2023 (81%) and the lowest rate occurred on December 31, 2022 (68%).

**Table 7: Belong Caseworkers Managing at Least One PMC Child
November 2022 to January 2023[15]**

| Month | Belong Caseworkers Serving at least one PMC Child | 17 Children or Fewer | | 18 Children or More | |
|---|---|---|---|---|---|
| | No. | No. | % | No. | % |
| November 2022 | 33 | 24 | 73% | 9 | 27% |
| December 2022 | 34 | 23 | 68% | 11 | 32% |
| January 2023 | 36 | 29 | 81% | 7 | 19% |
| **Average** | **34** | **25** | **74%** | **9** | **26%** |

Among the three caseload reports for November 30, 2022, December 31, 2022, and January 31, 2023, no Belong supervisors managed any PMC child's case.

To validate the accuracy of the State's monthly caseload data submissions from its IMPACT system, which the Monitors received on a 30-day lag, the monitoring team examined the symmetry of the data within those reports with caseload data from the DFPS INSIGHT database and the SSCCs' daily workload reports. The monitoring team interviewed by videoconference 120 DFPS and 73 SSCC caseworkers and their supervisors from 66 counties between August 3, 2022 and February 7, 2023 from a sample selected by the Monitors. Most DFPS caseworkers in the sample had job titles of CPS CVS Specialist I, II, III, IV, or V, while one was an Adoption Specialist and one was a Legal CVS worker. The OCOK, St. Francis, and Belong caseworkers had a title of Permanency Specialist and the 2Ingage caseworkers had a title of Permanency Case Manager. In preparation for these interviews, at the Monitors' request, DFPS provided caseload reports from DFPS's INSIGHT system for the final day of the month preceding the interview; the date of those reports corresponds with the data reports that DFPS submits to the Monitors to measure the State's conformance with Remedial Order 35. For the interviews with the SSCC workers, DFPS provided the alternative workload reports that the respective SSCCs use. The monitoring team then reviewed the records with the caseworker, discussing each listed child, by name, and other work

---

[15] Belong, transitioned to Stage II in October 2022 and due to data quality issues, the Monitors commenced assessment of their conformance in November 2022.

assignments, if any, to verify whether the caseworker's workload matched the DFPS and SSCC records.

The monitoring team compared the monthly caseload data from IMPACT submitted by DFPS with the results of the caseworker interviews to confirm the accuracy of the State's IMPACT caseload data. During cross-data validation of the workload and INSIGHT reports for 192 workers interviewed with the monthly caseload data, the monitoring team found that 92% of primary case assignments were a perfect match and 98% were within one case in the caseloads reviewed.[16] The individual caseloads of the sample of interviewed caseworkers ranged from one to 27 children. The monitoring team found that 163 (85%) of the 192 workers were within the generally applicable caseload standards and 29 (15%) exceeded the caseload standards. Forty-seven (29%) of the 163 workers meeting the standards were subject to Advancing Practice graduated caseloads.

3. Caseloads and Supervision of Children Without Placement

The Monitors' interviews with caseworkers to validate the data DFPS submitted about caseloads provided additional insight into other major job responsibilities, over and above the duties associated with caseload management. Most notably, workers described being assigned CWOP shifts (both required and voluntary) to supervise children who are experiencing a lack of a licensed placement and are housed in unregulated settings, such as hotels and churches. During the interviews conducted with 120 DFPS and 73 SSCC caseworkers between August 3, 2022 to February 7, 2023, 55% (107) of the 193 caseworkers reported responsibility for additional CWOP shifts over and above their caseworker duties between July 2022 and January 2023.

Ninety (75%) of 120 DFPS workers and 17 (23%) of 73 SSCC workers reported CWOP shift responsibilities. The highest levels of involvement were reported by DFPS, with 63% to 87% of workers interviewed reporting CWOP shifts in the prior month.[17] In contrast, CWOP shifts at SSCCs were reported at a lower rate with 22% to 25% of workers reporting CWOP shifts in the prior month.[18] No worker employed by 2Ingage or Belong reported CWOP shifts.

Ten (9%) of the 107 workers interviewed who reported CWOP shifts between July 2022 and January 2023 had caseloads that exceeded the caseload standard. Of these ten workers whose caseloads exceeded the caseload standard, five (50%) were DFPS workers who carried 18-19 children on their caseloads, and five (50%) were SSCC workers who carried 18-22 children on their caseloads. Of the 97 (91%) caseworkers reporting CWOP shift activity who carried caseloads meeting the standards, 30 were subject to graduated caseloads at the time they were interviewed because they were new to their positions.

---

[16] One of the 193 workers had no PMC assignment as of the last date of the month under review, and thus, was not included in the monthly IMPACT caseload data report for that month.

[17] Specifically, 19 (63%), 25 (83%), 26 (87%), and 20 (67%) of 30 workers each month reported CWOP activity during August, September, November, and December 2022, respectively.

[18] Specifically, seven (23%) of 30 workers in July 2022, four (25%) of 16 workers in November 2022, and 6 (22%) of 27 workers in January 2023 reported CWOP activity.

Workers continued to describe CWOP activity as a mix of mandatory and voluntary shifts that varied in length, typically from four to eight hours and including activity during normal business hours, which was referred to as "Day Watch." Fifty-four (50%) of the 107 workers who reported CWOP shifts reported spending 20 hours or less on CWOP in the month; this included most of the SSCC workers who reported CWOP activity (16 of 17). Twenty-six (29%) of 90 DFPS workers reported spending more than 35 hours in the prior month working CWOP shifts. CWOP hours reported by DFPS workers reflected an average of 30.7 hours worked in the prior month, while CWOP hours reported by SSCC workers reflected an average of 8.5 hours.

4. Summary

- The parties agreed to, and the Court approved, a workload standard of 14 to 17 children per Conservatorship (CVS) worker, pursuant to Remedial Order A3. To validate the State's performance, the Monitors reviewed and analyzed all relevant data provided by the State during the review period. The Monitors' analysis showed that as of January 31, 2023, 89% of all relevant caseworkers (1,301 of 1,456), including those employed by OCOK, 2Ingage, St. Francis and Belong had primary caseloads within or below the standard of 17 children per worker. For the period, conformity with the standard was 87% of all caseworkers serving at least one PMC child.

- Supervisors carried only a small percentage of PMC cases; those who did rarely conformed with the workload standard. In the seven months of caseload reports in the period, conformity for supervisors managing at least one PMC child's case was 22% (4 of 19) on average.

- The Monitors found that conformity with the caseload standard varied among DFPS, OCOK, 2Ingage, Belong and St. Francis. Of the 1,224 DFPS caseworkers carrying at least one PMC case, an average of 1,090 (89%) of those workers had caseloads conforming to the guidelines. As of January 31, 2023, the four SSCCs that are undertaking case management had 72% (OCOK), 90% (2Ingage), 81% (Belong) and 76% (St. Francis) of their workers within or below the standard.

- Caseworkers reported significant CWOP shift activity during interviews with the monitoring team, including workers whose caseloads did not conform to the caseload standards: Ten (9%) of the 107 workers interviewed who reported CWOP shift activity from July 2022 through January 2023 had caseloads that exceeded the caseload standard.