IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| Defendants. | | |

### The Monitors' Responses to the State's Objections to the Monitors' Supplemental Update to the Court Regarding Remedial Orders 3, 7 and 8 and HHSC Provider Investigations

On November 10, 2023, the Monitors filed a Supplemental Update to the Court Regarding Remedial 3, 7 and 8 and HHSC Provider Investigations ("Supplemental Update").[1] The Supplemental Update discusses the Monitors' assessment and review of the State's investigations of reports of abuse, neglect and exploitation of children in Permanent Managing Conservatorship (PMC) conducted by the Health and Human Services Commission (HHSC) Provider Investigations (PI).[2] Adult Protective Services (APS), which includes PI—the public employees who investigate alleged abuse, neglect and exploitation of adults and children with disabilities residing in certain settings—is a division of the Department of Family and Protection Services (DFPS). After the Texas legislature consolidated DFPS and HHSC and then separated them again into

---

[1] *See* Deborah Fowler & Kevin Ryan, Monitors' Supplemental Update to the Court Regarding Remedial Orders 3, 7 and 8 and HHSC Provider Investigations, ECF No. 1442 (November 10, 2023).

[2] The Monitors described the first portion of this review in a previous Update to the Court. Deborah Fowler & Kevin Ryan, Monitors' Update to the Court Regarding Remedial Order 3, ECF No. 1412 (September 19, 2023). Prior to that, the Monitors reported on investigations of allegations of abuse, neglect and exploitation of PMC children whose living arrangements the State identified as "HCS Group Homes" that were conducted by CPI in the Fifth Report to the Court pursuant to Remedial Order 3. *See* Deborah Fowler & Kevin Ryan, Fifth Report, Appendix 2 Maltreatment in Care Case Summaries 48-49 & 51, ECF No.1318-2. The language in Remedial Order 3 specifically refers to the General Class, rather than limiting its application to children in licensed settings. In an advisory filed with the Court on September 21, 2021, Governor Greg Abbott advised that with respect to the scope of the Court's injunctions, "[A] General Class member should receive the same protections under the Court's remedial orders regardless of the licensed or unlicensed nature of the facility where the member is housed, unless the remedial order at issue specifies that it applies only to the [Licensed Foster Care] subclass or licensed or unlicensed facilities." Governor Greg Abbott's Advisory Concerning the Court's September 14, 2021 Inquiries 3, ECF No. 1137.

independent agencies, the legislature determined that APS as a whole would remain with DFPS but that the PI division of APS would be part of HHSC.

On December 1, 2023, the State filed objections ("Objections") related to the findings in the Supplemental Update.[3]

**On page 2, in Footnote 2 of the State's Objections, the State wrote:**

- "Like their first PI report, the Monitors' second PI report doesn't indicate whether the Monitors randomly or specifically selected the investigations that they reviewed."

**Monitors' Response:** The State's statement is a factual misrepresentation to the Court. On pg. 2 of the Supplemental Update, the Monitors state: "To continue to validate DFPS's performance associated with Remedial Order 3 and the appropriateness of its PI investigations of alleged maltreatment of PMC children, the monitoring team conducted reviews of ***all*** **PI investigations involving PMC children that closed with an overall disposition of Unconfirmed or Inconclusive between January 1, 2023 and April 30, 2023 (64)** and **five** additional investigations that closed prior to 2023 but involved the **same PMC children and allegations related** to the investigations that closed during the referenced period in 2023."[4]

Of the 69 PI investigations the Monitors reviewed, the State assigned an overall disposition of Unconfirmed to 58 investigations (84%), Inconclusive to ten investigations (14%) and Confirmed to one investigation (1%).

The Monitors concluded that 55% (38 of 69) of investigations were conducted in a manner that was inconsistent with Remedial Order 3 in that they were not conducted "taking into account at all times the child's safety needs."

**On page 2 of the State's Objections, the State wrote:**

- "[T]he remaining four closed investigations were identified as occurring in an Adult Foster Care Licensed Intermediate Care Facility (ICF/IID) . . . ."

    o **Objection**: Defendants respectfully clarify that licensed ICF/IID is not "Adult Foster Care."

**Monitors' Response:** As stated in the Supplemental Update, "State data indicates the alleged abuse or neglect occurred in the following 'facility types'…". The State identified in its data submission to the Monitors these investigations using the facility type "AFC-

---

[3] Defendants' Objections to the Monitors' June 2023 Report, ECF No. 1460 (December 1, 2023).
[4] Deborah Fowler & Kevin Ryan, Monitors' Supplemental Update to the Court Regarding Remedial Orders 3, 7 and 8 and HHSC Provider Investigations, ECF No. 1442 (November 10, 2023).

ICF/IID."[5] As the Monitors stated in the Supplemental Update, the State submitted the data reports relevant to this report between March and June of 2023 and the Monitors received no additional clarifying or corrected data files indicating that HHSC's submissions contained incorrect information when it identified the facility type using the identifying acronym AFC.

**On pages 2-3 of the State's Objections, the State wrote:**

- Page 10 (Child D): "Due to untimely interviews with key individuals, the investigator did not gather sufficient information to determine whether a staff member(s) adequately supervised the child when he eloped twice from the facility on the same date."

    **o Objection:** Defendants respectfully disagree with the Monitors' view that the investigator didn't gather sufficient information to support the disposition of "unconfirmed" neglect. The investigator's report includes a time sheet showing which two staff members were on duty on the date of the intake report, February 27, 2023. The investigator interviewed both of those staff members. Law enforcement also stated that staff members were with the child both times the child eloped and were trying to intervene and prevent the child from eloping. Finally, when the home supervisor arrived on scene, she couldn't remember which staff member called her—but stated that the staff member who was present with the child was trying to gain cooperation to prevent the child from eloping. Under these circumstances, an "unconfirmed" disposition was appropriate. See 26 Tex. Admin. Code § 711.421 ("preponderance of credible evidence to support that abuse, neglect, or exploitation did not occur").

**Monitors' Response:** The PI investigator never established which staff member was assigned one-to-one supervision with Child D at the time of the incident and did not conduct a sufficient inquiry into supervision to assign an Unconfirmed disposition.

**On page 3 of the State's Objections, the State wrote:**

- Page 16 (Child L): "During the child's phone interviews, the child remained consistent in his allegation that Staff 1 hit him once with a dustpan in the garage and hit him with a closed fist in response to the child 'acting up' one night."

    **o Objection:** Defendants respectfully disagree with the Monitors' view that the child's testimony remained consistent. The child's testimony contained contradictory statements, including denying and affirming the allegations.

---

[5] E-mail from Nicol Hoffer, Foster Care Litigation Project Manager, HHSC, to Kevin Ryan et al. (April 5, 2023) and attachment (on file with the Monitors). *See also* https://www.hhs.texas.gov/providers/long-term-care-providers/adult-foster-care-afc

Monitors' Response: The key elements of Child L's interview described by the Monitors were consistent: namely that the child said a named staff member hit him with a dustpan and a closed fist. Other parts of Child L's statement appear inconsistent based on the PI investigator's notes, but because PI does not record victim interviews, it is not possible for the Monitors to confirm whether those inconsistencies were due to inadequate note taking by the investigator or caused by PI's decision to conduct the interview with a child (with an IQ of 61) by phone and without any documented effort to accommodate the child's intellectual and developmental disabilities.

As the Monitors wrote in their September 19, 2023 Update to the Court:

> Often the deficiencies identified by the Monitors began at the start of the investigations during the expected assessment of the alleged victim's current safety and recounting of the allegations; these problems included a failure to promptly interview children face-to-face and, in some instances, a failure to conduct interviews with children at all, despite the Court's orders.[6] PI frequently failed to conduct the investigations in a manner that appropriately accommodated and considered the limited capacities, verbal or otherwise, among this population of PMC children. Due to the children's documented developmental challenges and accompanying eligibility for HCS services, it is unclear why PI investigators were so consistently ill-equipped to accommodate or consider them during investigations into allegations about the children.[7]

---

[6] Timely face-to-face contact is required by Remedial Orders 7 and 8. Remedial Order 7 states that:
> Within 60 days and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial face-to-face contact with the alleged child victim(s) in Priority One child abuse and neglect investigations involving PMC children as soon as possible but no later than 24 hours after intake.

Remedial Order 8 states that:
> Within 60 days and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial face-to-face contact with the alleged child victim(s) in Priority Two child abuse and neglect investigations involving PMC children as soon as possible but no later than 72 hours after intake.

The Administrative Code also requires face-to-face contact, though it does not include a timeframe for face-to-face contact in PI investigations. It states that "[t]he investigator makes a face-to-face contact with the alleged victim except when the intake alleges any allegation type where there is no physical or emotional injury to the alleged victim and no risk of physical or emotional injury or death to the alleged victim." TEX. ADMIN. CODE §711.415 (a). By definition, nearly all allegations of abuse, neglect and exploitation that meet the criteria for investigation by PI include facts alleging physical or emotional injury or risk of physical or emotional injury. *See* TEX. ADMIN. CODE §§711.11-21 (including for example, the definition of Neglect: "[a] negligent act or omission which caused or may have caused physical or emotional injury or death to an individual receiving services or which placed an individual receiving services at risk of physical or emotional injury or death.").

[7] Deborah Fowler & Kevin Ryan, Monitors' Update to the Court Regarding Remedial Order 3, ECF No. 1412 (September 19, 2023). *See also* Deborah Fowler & Kevin Ryan, Update to the Court Regarding Site Visits Conducted between December 1, 2021, and December 31, 2022, and the Reopening of The Refuge for DMST, ECF1337 (March 27, 2023).

4

As the Monitors documented in an Update to the Court earlier this year on site visits to facilities housing PMC children, the Monitors uncovered significant discrepancies between the information conveyed to State investigators by alleged child victims, collateral children or staff, or witnesses (including members of the monitoring team) and the summaries of these interviews found in IMPACT contact notes.[8] In some cases, the misinformation included in the contact notes appears to have informed the disposition of the case.

PI's failure to accommodate the special needs of PMC children who receive HCS services may contribute to reported inconsistencies in children's accounts, and PI's failure to record their interviews makes it impossible to assess the extent to which that occurs.

---

[8] Deborah Fowler & Kevin Ryan, Update to the Court Regarding Site Visits Conducted between December 1, 2021, and December 31, 2022, and the Reopening of The Refuge for DMST, ECF1337 (March 27, 2023).