IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., § § Plaintiffs, § § v. § §   Civil Action No. 2:11-CV-00084 § GREG ABBOTT, in his official capacity as § Governor of the State of Texas, et al., § § Defendants. § | |

**PLAINTIFFS' REPLY IN SUPPORT OF
FOURTH APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

As with their prior fees applications, Plaintiffs respectfully seek fees incurred for performing the post-judgment monitoring and implementation work necessary to effectuate the remedies that this important civil rights class action has secured on behalf of children in the Texas foster care system. The fees that class counsel has requested for the nearly three-year period between October 2, 2020 and April 11, 2023 is an entirely reasonable amount for the work necessary to protect the plaintiff children during this period of the litigation. Defendants largely do not challenge the reasonableness of class counsel's fees. They merely nitpick counsel's time entries and seek fee reductions for a miscellaneous grab bag of issues. These reductions are unwarranted. Nevertheless, with respect to the $840 of Yetter Coleman's fees that Defendants alleged were misbilled to this matter, Yetter Coleman agrees to reduce its request by said amount. Defendants do not challenge Plaintiffs' expenses. They are reasonable and Plaintiffs respectfully ask that the Court include them in its total award.

I.      **Fees Related to the Pending Contempt Motion Are Part of Plaintiffs' Ongoing Obligations to Monitor and Enforce Defendants' Compliance with the Remedial Orders and Are Compensable.**

Defendants oppose the portion of Plaintiffs' fees that are related in any manner to Plaintiffs' pending contempt motion. Importantly, Defendants do not contend that Plaintiffs' counsel may not receive these fees at all; they merely assert that these fees are not ripe for the Court's consideration given that the motion is still pending. In doing so, Defendants misstate the law applicable to Plaintiffs' fees motion. Defendants' logic is: (1) the Court must take into account whether the fees represent work for which the party obtained a sufficient degree of success; (2) the work is on a motion that remains pending; (3) therefore the Court cannot evaluate this important factor and cannot adjudicate the issue. *See* Defendants' Response in Opposition to Class Plaintiffs' Fourth Application for Attorneys Fees and Expenses ("Defs.' Response"), (ECF 1498), at 1-2. Defendants rely on *Frew v. Traylor*, 688 F. App'x 249, 257 (5th Cir. 2017) for this ripeness principle. *Id.* at 2. Close examination of the law governing fees for civil rights actions exposes the fallacy in this argument.

When a party has successfully obtained injunctive relief, either through a permanent injunction or through a consent decree, it is entitled to its fees for ongoing monitoring of compliance with the injunction. *See Walker v. United States HUD*, 99 F.3d 761, 768 (5th Cir. 1996) ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees."); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559, (1986) ("[P]ostjudgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee."). Compliance monitoring may involve a number of different activities, including the evaluation of Defendants' compliance with the Court's Remedial Orders, the investigation of potential bases for contempt, and advocacy to secure the benefits of the Court's remedial orders. *See, e.g. Walker*, 99 F.3d at 769 (describing monitoring activities, including

2

"evaluating compliance", "investigating complaints", and "advocacy to secure the benefits of the . . . Decree").

Moreover, when the injunction establishes a monitoring framework—like the Court's Remedial Orders do here—contempt motions are part of the compliance procedures that are fairly contemplated within the initial injunction. Indeed, the Fifth Circuit has signaled that ongoing enforcement in this case should focus on monitoring whether Defendants are in contempt of this Court's Remedial Orders as modified and affirmed by the Fifth Circuit. *See M. D. by Stukenberg v. Abbott*, 977 F.3d 479, 483 (5th Cir. 2020) (reiterating that the Court's mandate is to implement "the modified injunction"). Defendants cite *Frew v. Taylor* to argue that the Court may not award Plaintiffs fees unless they win their contempt motion. But *Frew* in fact supports Plaintiffs fee application. In *Frew*, the defendants challenged a fee award for work that plaintiffs' counsel performed on a motion to enforce compliance with a corrective action order on which plaintiffs originally prevailed. 688 F. App'x at 252-53. Plaintiffs *lost* their motion and so Defendants challenged their entitlement to fees. The Fifth Circuit held that notwithstanding the ultimate failure of Plaintiffs' motion, they were entitled to their fees because the motions at issue were "more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was established in the original decree." *Id.* at 256.

Plaintiffs are indisputably the prevailing parties with respect to the Courts' underlying Remedial Orders. *See* Order Granting in Part Plaintiffs' First Application for Attorneys' Fees (ECF 908) ("Plaintiffs are the prevailing party since they secured the core relief sought in the case which includes a finding that the State of Texas violated the U.S. Constitutional rights of the Plaintiffs and an order requiring the State to remedy the violations.").

Plaintiffs have undertaken ongoing monitoring duties to evaluate compliance with the Court's injunctions, and Defendants do not challenge Plaintiffs' monitoring obligations or their fees for them. Defendants only challenge Plaintiffs' work on their contempt motion. But the pending contempt motion is a natural outgrowth of Plaintiffs' ongoing monitoring activities and part of the overall monitoring framework and compliance procedures contemplated by the Remedial Orders. In *Frew*, the plaintiffs received fees even though their enforcement motion was unsuccessful because the motion was a "compliance or dispute resolution procedure that was a part of the parties' agreement." 688 F. App'x at 256. By that same logic, Plaintiffs are entitled to fees for their work policing Defendants' compliance with the Remedial Orders, whether or not Plaintiffs prevail. Therefore, Plaintiffs' fee application with respect to their work on the pending contempt motion is ripe for the Court's adjudication and can be sustained regardless of the motion's ultimate outcome.

Accordingly, the Court should decline to withhold the portion of Plaintiffs' fees that are associated with their contempt motion.[1]

## II. The Court May Reduce Yetter Coleman's Fees by $840.

Defendants ask the Court to reduce Yetter Coleman's fees by $840 based on five entries that appear to be for work performed on another matter. After reviewing the time entries that Defendants identified, Yetter Coleman is withdrawing its application for these fees. Three of these time entries do appear to be related to a different matter. And although the two time entries for Yetter Coleman's paralegal, Lisa Prince, may be related to this case, they pertain to an attorney

---

[1] It should be noted that the fees associated with the contempt motion in Plaintiffs' Fourth Fee Application were incurred only in the very early phases of Plaintiffs' consideration of whether and how to bring their pending motion. Consequently, the work performed is substantively indistinguishable from counsel's ongoing monitoring efforts, which are always performed with the goal of ensuring Defendants' compliance with the Remedial Orders.

who is no longer actively working on the matter. Therefore, Yetter Coleman agrees to a reduction in its request for fees by $840.

**III.     Children's Rights' Fees Should Not Be Reduced.**

Defendants have disputed twenty-four (24) individual billing entries, totaling $7,248.21 in professional time, which Children's Rights has submitted to the Court for reimbursement. These disputed entries equal 4.8% of the total $150,447.50 claim for reimbursement made by Children's Rights. Based on this limited showing, Defendants ask the Court to impose a 50% reduction on the overall claim for reimbursement proffered by Children's Rights. A reduction of such magnitude is neither justified by the disputed entries nor warranted in light of the contemporaneous time records, and accompanying affidavit of Samantha Bartosz, submitted by Children's Rights.

Defendants claim that Children's Rights' time entries reflect the same kind of vague and block billing that the Court admonished them for in its prior fee orders. But the entries that Defendants identified are highly itemized and can in no way be described as block billing. Moreover, although the entries provide limited information regarding various communications counsel had with other individuals, there is a compelling reason for these limitations. As set forth in Ms. Bartosz's affidavit, Exhibit B to the Fourth Application for Attorney's Fees and Expenses, Children's Rights has undertaken for Plaintiffs' counsel team the role of maintaining regular outreach to and contact with stakeholders familiar with the operations of the Texas foster care system, including attorneys, public advocates, youth and private providers. In recording its time relating to this stakeholder engagement, Children's Rights has sought to avoid revealing attorney work product or identifying individuals who wished to communicate privately or who might become subject to potential retaliation. Attorney efforts in relation to stakeholder outreach and engagement typically involved discrete and limited time commitments that rarely occupied even a full hour of time. Defendants itemized billing disputes regarding the time entries submitted by

Children's Rights substantially relate to the stakeholder engagement work. And as lead counsel stated in the recent hearing on January 22, 2024, this work and other work performed by Children's Rights has been critically important to Plaintiffs' efforts to secure Defendants' compliance with the Remedial Orders.

Yet another reason why Children's Rights' fees should not be reduced any further is that the fees requested already represent a reduced portion of the overall work that Children's Rights has performed on this matter. Children's Rights' lead counsel, Samantha Bartosz, conducted a review of the billing records contemporaneously recorded by Children's Rights in the ordinary course of its professional work on this matter. In making that review, Ms. Bartosz exercised reasonable billing judgment and excluded from the ultimate request for reimbursement to this Court all $12,706.50 in time entries recorded by Children's Rights paralegals and an additional $136,157.98 in time entries recorded by Children's Rights attorneys. These exclusions covered time entries for (a) administrative matters, (b) professional work indirectly related to the enforcement of this Court's injunction order and (c) professional work, though directly related to the enforcement of this Court's injunction order, that involved greater input of time than would be sought in a claim for reimbursement based on the exercise of reasonable billing judgement. Therefore, Children's Rights already has voluntarily reduced its request for fees by 50% to ensure that the Court is compensating Children's Rights for only necessary and efficient work that was integral to the case. Any further reduction is unwarranted.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court approve their attorney fees and expenses application in the amount listed in the chart below and order the State to remit payment within 30 days from entry of the Fees Order.

| Organization | Requested Amount (including fees & expenses) | Reduction | Final Award |
|---|---|---|---|
| Yetter Coleman | $254,649.55 | $840.00 | **$253,809.55** |
| Children's Rights | $150,447.50 | | **$150,447.50** |
| A Better Childhood | $240,253.89 | | **$240,253.89** |
| **Total** | $645,350.94 | $840.00 | **$644,510.94** |

Dated:  January 25, 2024

Samantha Bartosz (*pro hac vice*)
Stephen Dixon (*pro hac vice*)
CHILDREN'S RIGHTS
88 Pine Street
New York, New York 10005
(212) 683-2210
sbartosz@childrensrights.org

Marcia Robinson Lowry (*pro hac vice*)
David Baloche (*pro hac vice*)
Laura Welikson (*pro hac vice*)
A BETTER CHILDHOOD, INC.
355 Lexington Avenue, Floor 16
New York NY 10017
(646)795-4456
mlowry@ABetterChildhood.org

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
Christian J. Ward
State Bar No. 24033434
Karla Rosali Maradiaga
Texas State Bar No. 24126746
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Barry F. McNeil
State Bar No. 13829500
HAYNES AND BOONE, LLP
2323 Victory Ave., Suite 700
Dallas, Texas 75219
(214) 651-5000
barry.mcneil@haynesboone.com

ATTORNEYS FOR PLAINTIFFS AND THE GENERAL CLASS AND SUBCLASSES

## CERTIFICATE OF SERVICE

I certify that on the 25th day of January, 2024, a true and correct copy of this document was served on all counsel of record via email or by using the Court's CM/ECF e-file system.

> /s/ R. Paul Yetter
> R. Paul Yetter