IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, et al., | § § § § | |
| Defendants. | § | |

### Monitors' Update to the Court Regarding the State's Failure to Provide Records and Information Related to Safety Issues in Unlicensed Settings

The Court's Remedial Order AA6 requires, "The Monitors shall have free and complete access to records maintained by Defendants, its divisions and any successor agencies or divisions, and by its private agency partners."[1]  Remedial Order BB1 requires: "Effective immediately, Defendants shall provide the Monitors, their staff and consultants with unrestricted, routine and ongoing remote access to the electronic data information systems used by Defendants to serve children in the PMC class."[2]

On October 24, 2023, the Court Monitors sent an e-mail to DFPS stating that the Court asked the Monitors to request access to Teams, the cloud-based messaging and file-sharing system that DFPS caseworkers in some regions used to share shift log notes[3] for PMC children without a licensed placement.[4]  On October 30, 2023, after having failed to receive any response, the Monitors notified DFPS that the Court requested an update on the request.[5]  DFPS responded:

> In the recent past, some regions have maintained CWOP documentation files in TEAMS, while other regions keep shift notes in Word documents that are shared via email.  The most efficient method to access the current

---

[1] *M.D. ex rel. Stukenberg v. Abbott*, No. 2:11-cv-84, slip. Op. (S.D. Tex. Nov. 20, 2018), ECF No. 606.
[2] *Id.*
[3] DFPS requires staff who supervise CWOP Settings to keep shift logs for each child housed at the site.  The logs are a running narrative documenting the child's activities and what happened in the CWOP Setting during each shift.
[4] E-mail from Kevin Ryan to LaShon Woods, Special Projects Consultant, Foster Care Litigation Compliance, DFPS, re: Online Access to Shift Logs (October 24, 2023) (on file with the Monitors).
[5] E-mail from Kevin Ryan to LaShon Woods, re: Online Access to Shift Logs (October 30, 2023) (on file with the Monitors).

records, and for ongoing centralized access, would be to use the Monitors' SharePoint site where files (both existing and future) could be uploaded for your review, similar to other documents (e.g., serious incident reports) shared with you on a monthly basis.  We expect to have existing documents on the Monitors' SharePoint by Wednesday afternoon.  Moving forward, all regions will upload shift notes in this centralized method and not maintain in Teams or other sources, except for IMPACT.[6]

On November 1, 2023, DFPS e-mailed the Monitors and provided links to a SharePoint file containing the shift log notes.[7]  The files uploaded by DFPS were shift log notes for PMC children living in an unlicensed CWOP Setting as of October 31, 2023.

On the morning of November 3, 2023, the Monitors e-mailed DFPS, requesting shift log notes for LN, a PMC child arrested at a Bell County CWOP Setting on September 2, 2023.[8] During interviews for the Monitors' Update to the Court regarding PMC children housed in unlicensed settings, filed October 25, 2023,[9] several stakeholders described the events leading to LN's arrest.[10]

In the November 3, 2023, e-mail, the Monitors noted that they did not find a Serious Incident Report (SIR) related to LN's arrest among the September 2023 SIRs that DFPS had produced to the Monitors on November 1, 2023. DFPS produces SIRs to the Monitors monthly; the Monitors review and summarize SIRs in updates to the Court related to

---

[6] E-mail from LaShon Woods to Kevin Ryan and Deborah Fowler, re: Online Access to Shift Logs (October 30, 2023) (on file with the Monitors). The Monitors' site visits to CWOP Settings and review of shift log notes provided by DFPS since November 1, 2023, confirm that each region may have different methods for maintaining shift logs in unlicensed settings.  Many regions are using handwritten notes completed on a DFPS form created for this purpose; other regions – like Region 7 – are using Microsoft Word documents that are stored in the Teams database by the caseworkers supervising unlicensed settings in that region.

Though DFPS has asked caseworkers to upload children's shift logs to IMPACT once they leave a CWOP Setting for a licensed placement, the Monitors do not consistently find shift log notes in children's IMPACT records.  For example, though LN, discussed *infra*, has not re-entered a CWOP Setting since her arrest and detention in September 2023, the Monitors were unable to find shift log notes for her in IMPACT.

On December 6, 2023, during the third day of a Show Cause hearing, in response to the Court's inquiry the previous day regarding Teams access (Transcript re: Show Cause Hearing – Volume 2, ECF No. 1488, at 354 - 356), the State's counsel indicated that the Monitors' request for access to the Teams database implicated attorney-client privilege. Transcript re: Show Cause Hearing – Volume 3, ECF No. 1489, at 264. Consequently, the State offered to upload shift logs on a daily, rather than monthly, basis. *Id*. The State's counsel indicated that once they separated out "the attorney-client side," that the Monitors would be given access. *Id*. As of February 20, 2024, the Monitors still do not have access to Teams.  Shift logs for CWOP Settings have been uploaded to SharePoint by DFPS on a daily basis since December 1, 2023.

[7] E-mail from Michael Hayman, Director of Project Management, Foster Care Litigation Compliance, DFPS, to Kevin Ryan and Deborah Fowler, FW: Online Access to Shift Logs (November 1, 2023)(on file with the Monitors).

[8] E-mail from Deborah Fowler to LaShon Woods, re: Online Access to Shift Logs (November 3, 2023)(on file with the Monitors).

[9] Deborah Fowler & Kevin Ryan, Monitors' Update to the Court Regarding PMC Children Without a Licensed Placement, ECF No. 1425.

[10] *Id*. at 43.

CWOP Settings.[11] The Monitors asked DFPS to "clarify whether an SIR was completed for the incident, and if not, why."[12]

DFPS responded to the Monitors' e-mail later that day, providing links for LN's shift logs and the missing SIR without explaining why the SIR was not among those DFPS had produced two days earlier.[13]

LN's shift logs and the SIR confirmed the description of the incident provided to the Monitors by stakeholders, who described significant injuries suffered by a caseworker who was supervising the CWOP Setting where LN was placed the day the child was arrested.

The shift logs also revealed a chaotic environment and significant trauma suffered by 13-year-old LN before the incident that resulted in the caseworker's injury and the child's arrest.  The shift logs showed that LN had to be hospitalized within hours of being placed in the Temple CWOP Setting on August 31, 2023, after two other children physically assaulted her. LN reported that during this incident, she was "knocked unconscious for a brief period" and felt confused; staff observed her to have blood on her nose and shirt. She was taken to the hospital and released early the following day.

DFPS moved LN to the Killeen CWOP Setting after she was released from the hospital on September 1, 2023.  When LN arrived at the house, she wanted to shower but realized that the suitcase that her caseworker had brought "did not have much in it and she had no pants to wear."  When her caseworker arrived a short time later with additional clothing, the child went upstairs to shower, but she and her caseworker came back downstairs and "said that the upstairs bathroom was so filthy that [LN] would not shower." Another caseworker "cleaned the bathroom by piling all of the clothing that was on the floor in the hallway…[p]icking up the trash, scrubbing the toilet and cleaning the shower."

By September 2, 2023, LN's shift log notes show that other children at the Killeen CWOP Setting were engaging in bullying behavior toward her, had physically attacked her, and that LN's behavior also disintegrated.  LN slept on the floor next to the table where the supervising caseworkers and staff sat because she was afraid to sleep in a bedroom.  At one point, when another child called LN names and threatened to assault her, LN "felt unsafe and crawled under the table and sat in the corner by staff." The shift logs indicate, "There were incidents at the Child Watch location…that caused the new youth [LN] to experience a mental health episode" and "[t]his behavior has affected the other youth which caused their behaviors to escalate due to the 'mental break'."

---

[11] The Monitors first requested SIRs for CWOP Settings on June 26, 2021.  E-mail from Deborah Fowler to Corliss Lawson, DFPS, re: SB 1896/SSCC OCOK, June 26, 2021 (on file with the Monitors).  After providing the first set of SIRs in response to that request, DFPS has provided them to the Monitors monthly.
[12] *Id.*
[13] Email from Michael Hayman to Deborah Fowler and Kevin Ryan, re: Online Access to Shift Logs (November 3, 2023)(on file with the Monitors).

3

The shift logs also document that LN began to behave aggressively toward the staff supervising the children. A DFPS staff member who completed the shift logs for LN on September 1, 2023, documented outreach to the Mobile Crisis Outreach Team in an attempt to find support for LN's deteriorating mental health, "but there was no answer as it went to voicemail." When the staff member called the non-emergency line for the local police department, two officers arrived but left after reporting that their supervisor said they could not "stay to help." Finally, after approximately 24 hours, during which time other children assaulted LN and LN became increasingly agitated and aggressive, LN assaulted a caseworker and a law enforcement officer, resulting in her arrest:

> [LN] began to bite [the caseworker] on the shoulder…She bit her shoulder 3 times and refused to stop. She then began to hit [the caseworker] on the arm/shoulder. She was asked to stop multiple times and refused. She was pretending to be autistic and continued to hit staff on the arm. When the deputy on shift intervened, she began to hit the deputy. The deputy requested staff to call 911 for back up and placed her in handcuffs. She began to kick at the deputy, and they fell on the couch. She kept struggling with the deputy and got up and walked out of the house. She began running away and [the caseworker] followed her. The deputy followed and bear hugged her to restrain her, and [LN] dropped to the ground, bringing everyone down. [The caseworker] tried to de-escalate the situation, but [LN] refused to listen. [The caseworker] and Deputy picked her up by the arm to bring her to the grass area and [LN] kicked [the caseworker] in the chest at full force. [The caseworker] bent over forward in pain and [LN] got up and ran off again.

The caseworker suffered a debilitating injury that required hospitalization and ongoing medical treatment in the weeks that followed the incident. The deputy was also injured. The service plan in place for LN at the time of this incident noted: "With regards to placement needs, [LN] appears to be quite explosive and difficult to manage…[LN] would need a secure perimeter and a family or staff at a facility well trained in de-escalation."

The SIR documenting the incident that led to LN's arrest is identical to the description in LN's shift log notes. On November 9, 2023, during a regularly scheduled meeting between DFPS and the Monitors, when the Monitors asked why DFPS had excluded the SIR document from those produced on November 1, 2023, DFPS responded that it was an oversight.

Because DFPS did not produce the specific SIR until the Monitors asked for it, despite a standing request to produce all SIRs, the Monitors would not have known about the incident but for the tip from the stakeholder.

More recently, a stakeholder sent the Monitors a local news report regarding an arrest of a Waco man who was accused of sexually assaulting a foster child who ran away from a

Waco CWOP Setting.[14]  According to the media report, the adult male sexually assaulted the 13-year-old girl multiple times over three days. The Court instructed the Monitors to determine whether the child was a PMC youth.  After reviewing IMPACT records for the list of children in the CWOP Setting, the Monitors determined that the 13-year-old child referred to in the media article was a TMC child. However, the Monitors learned that during a forensic interview, the TMC child reported that a PMC child ran away with her. According to the TMC child, when they ran away, she intended for them to walk to the home of the man who allegedly assaulted her, but "Along the way, she said she saw two guys shooting up.  They offered them a ride, and they agreed."  The children stayed at the alleged assailant's house overnight.  According to the TMC child, the next night, the suspected assailant called a friend, who picked up the PMC child.

The Monitors then reviewed IMPACT for the PMC child named by the TMC child during her forensic interview and confirmed that she had run away from the CWOP Setting and had returned on February 6, 2024.  The Monitors found an IMPACT contact note dated February 9, 2024, that said the PMC child's caseworker had been contacted by a Waco police department detective, who said that when the PMC child returned to the CWOP setting on February 6, 2024, she made an outcry to staff that she had been raped, and that she was taken to the hospital for a SANE exam. The detective told the caseworker that the PMC child was scheduled for a forensic interview.

When the Monitors checked the shift logs that DFPS had produced for February, they found that DFPS had produced shift logs for the PMC child for February 4, 2024 (the day before she ran away) and February 7, 2024 (the day after she returned), but not for February 5, 2024, and February 6, 2024.  The Monitors reviewed the missing child log in the PMC child's IMPACT records and confirmed that the children left the CWOP setting at 11:08 pm on February 5 and that the PMC child returned at 3:11 pm the next day, leaving no doubt that shift logs should have been completed for both days.

On February 12, 2024, the Monitors e-mailed DFPS and asked for the missing shift logs for the PMC child to be uploaded that day or to explain why they were not available.[15] DFPS responded later that day, providing links for accessing the missing shift logs.[16]  The shift logs document the PMC child's run from the CWOP Setting and her outcry to a staff member who was supervising the CWOP Setting that she was raped.[17]  It also indicated that she was taken to the hospital after the outcry.[18]

---

[14] KWTX News, *'I didn't know how old she was': Waco man accused of sexually assaulting girl placed in 'high-risk' environment by CPS*, February 8, 2024, available at https://www.kwtx.com/video/2024/02/08/i-didnt-know-how-old-she-was-waco-man-accused-sexually-assaulting-girl-placed-high-risk-environment-by-cps/

[15] E-mail from Deborah Fowler to Michael Hayman, re: Online Access to Shift Logs (February 12, 2024) (on file with the Monitors).

[16] E-mail from Michael Haymen to Deborah Fowler and Kevin Ryan, re: Online Access to Shift Logs (February 12, 2023) (on file with the Monitors).

[17] The PMC child's IMPACT records include notes from a February 20, 2024 forensic interview.  The interview notes show she was consistent in her outcry.

[18] The child's shift log notes for February 7, 2024 documented that the PMC child was "still at the hospital" during the first shift (12:00 a.m. to 4:00 a.m.) but did not explain why she was at the hospital.

Had the Monitors not received the local media article from a stakeholder, they may not have learned about the missing shift logs or the PMC child's allegations. On February 12, 2024, the Monitors responded to DFPS's e-mail and asked why DFPS had not produced the shift logs.[19] As of February 20, 2024, DFPS had not responded.

---

[19] E-mail from Deborah Fowler to Michael Hayman, re: Online Access to Shift Logs (February 12, 2024) (on file with the Monitors).