IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., by her next friend, Sarah R. Stukenberg, *et al.*, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*, | § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' EMERGENCY MOTION TO STAY
CONTEMPT ORDER PENDING APPEAL**

**INTRODUCTION**

Defendants are steadfastly committed to the welfare of the children within their care, and they have worked diligently for years to safeguard those children and comply with the Court's remedial orders in this case. Nevertheless, yesterday the Court held the Executive Commissioner of Texas's Health and Human Services Commission in contempt of Remedial Orders 3 and 10. Dkt. 1560 at 422. The Court also imposed $100,000 in daily sanctions, which began accruing immediately and which can be suspended—but not eliminated—only if HHSC makes certain certifications and produces certain materials to the Monitors. Dkt. 1560 at 422–24 (discussing "reinstate[ment]" of "previously abated fines").

Defendants have filed a notice of appeal and plan to seek immediate appellate review of the Court's contempt order, arguing to the Fifth Circuit that contempt is unwarranted because at minimum defendants are in substantial compliance with the remedial orders in question, and that the Court improperly imposed criminal contempt without affording defendants the constitutionally required criminal process.

Because the State of Texas and its citizens are currently accruing $100,000 in daily fines, and because defendants have a strong likelihood of success on appeal, defendants respectfully request that the Court stay its contempt order and related proceedings as soon as possible and in all events issue an administrative stay by no later than 6 p.m. today to allow the Fifth Circuit to consider the propriety of a stay pending appeal. Given the magnitude of the presently accruing fines—and the

1

irreparable harm to federal-state comity by holding the Governor-appointed, Senate-confirmed head of one of the largest state agencies in the country in criminal contempt—defendants plan to seek concurrent relief from the Fifth Circuit.

## STATEMENT OF FACTS

In June 2023, plaintiffs moved for an order to show cause why defendants should not be held in contempt, alleging noncompliance with seven remedial orders. Dkt. 1376. Plaintiffs amended their motion four times over the following four months, expanding their allegations each time to eventually cover over a dozen remedial orders. Dkts. 1404, 1419, 1420, 1427; *see also* Dkt. 606 (setting out the remedial orders).

Defendants responded that (1) plaintiffs' allegations concerned matters that were beyond the scope of the remedial orders—or at least not clearly spelled out by those orders; (2) defendants had substantially complied with the remedial orders in all events; and, (3) at the very least, other defenses including mitigating circumstances preclude contempt.

As relevant here, Remedial Order 3 includes requirements to "ensure that reported allegations of child abuse and neglect" are "investigated," timely "commenced and completed," and "conducted taking into account at all times the child's safety needs." Dkt. 606 at 2; *see* Dkt. 1560 at 284–85. Remedial Order 10 relatedly includes requirements to "complete Priority One and Priority Two child abuse and neglect investigations . . . within 30 days of intake." Dkt. 606 at 3. Defendants argued that plaintiffs couldn't make out a prima facie case of contempt

by pointing to a handful of specific investigations that the Monitors determined reached the wrong result or took too few investigative steps under the circumstances—especially given that those same Monitors *agreed* with the resolution of nearly 95 percent of all investigations they reviewed. *See* Dkt. 1429 at 9–16.

The Court issued a show-cause order in September 2023, setting the contempt hearing for December. Dkt. 1415. On December 4, the Court held a three-day evidentiary hearing on plaintiffs' contempt motion. And on April 15, 2024, the Court issued a 427-page order holding HHSC "in contempt of Remedial Order 3 and Remedial Order 10." Dkt. 1560 at 280.

Regarding Remedial Order 3, the Court ordered HHSC to "pay $50,000 per day until HHSC agency leadership":

> [1] certifies that all PI investigations involving at least one PMC child closed from December 4, 2023 until the date of the State's certification, are substantially compliant with the Remedial Order 3 AND
>
> [2] concurrently produce[s] to the Monitors the list of all PI investigations involving at least one PMC child closed between December 4, 2023 and the date of the State's certification.

Dkt. 1560 at 422.

Regarding Remedial Order 10, the Court ordered HHSC to "pay $50,000 per day until HHSC agency leadership":

> [1] certifies that all open PI investigations involving at least one PMC child are substantially compliant with Remedial Order 10 AND
>
> [2] concurrently produce[s] to the Monitors the evidence upon which the verification is based including [a non-exhaustive list of data].

Dkt. 1560 at 422–23.

3

The Court imposed the $100,000 daily penalty effective immediately, and explained that although the penalty would "be suspended upon complete submission" of the certifications and data described above, the Court would hold a "compliance hearing" in June at which, "absent substantial compliance, any previously abated fines may be reinstated." Dkt. 1560 at 422–24.

In addition, the Court made clear that it would also be "carrying forward" multiple issues raised in plaintiffs' show-cause motion. *See* Dkt. 1560 at 424 (listing "Plaintiffs' motion for partial receivership," as well as plaintiffs' contempt motion (which was originally filed in June 2023) "as it relates to CWOP, caseworker caseloads, heightened monitoring, psychotropic medications, and appropriately apprising PMC children of the ways in which to report abuse and neglect").

## LEGAL STANDARD

The grant of a stay pending appeal depends on four factors, with the first two being the "most critical":

"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies."

*Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). In sum, a stay pending appeal is warranted where, as here, the movant has a strong likelihood of success on the merits and the equities otherwise favor a stay. *See Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). When the State is seeking a stay pending appeal,

"its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017).

## ARGUMENT

The Court should issue a stay pending appeal, because defendants are likely to succeed on the merits of their appeal. It's clear that defendants *have* substantially complied with Remedial Orders 3 and 10. Indeed, the Court's own Monitors agreed with the dispositions of more than 94 percent of abuse and neglect investigations involving PMC children.

Further, the Court effectively imposed criminal contempt without providing the constitutionally required due-process protections. The immediately accruing fines the Court imposed are non-compensatory, imposed for out-of-court conduct, and based on alleged non-compliance with a complex injunction.

Absent a stay, the six-figure daily fines will redound to the detriment of the public interest (which, for purposes of the stay factors, merges with harm to defendants, who are arms of the State). Subjecting state officials to criminal contempt without the constitutionally required protections and imposing heavy daily fines pose grave federal-state comity and federalism concerns. The public interest will suffer from the harm to defendants' budget (funded by taxpayers) and operations, while plaintiffs would suffer no harm if a stay were to issue.

The Court should therefore stay its order and all related proceedings pending resolution of defendants' appeal. At minimum, the Court should temporarily stay its order while the Fifth Circuit considers the propriety of a stay pending appeal.

## I. Defendants are highly likely to succeed on appeal.

### A. Defendants have substantially complied with the remedial orders in question.

Defendants will very likely prevail in their appeal of the Court's contempt order. Contempt is a "severe remedy," *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019), which must be "exercised with restraint and discretion." *Hornbeck Offshore Servs., LLC v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013). That's particularly true here where the alleged contemnor is a state entity in federal court. *See Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (federal courts must be "mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law'").

To demonstrate contempt, plaintiffs must prove by clear and convincing evidence that (1) a court order was in effect; (2) the order required certain conduct by defendants; and (3) defendants failed to comply with that order. *Texas v. Dep't of Labor*, 929 F.3d 205, 213 n.11 (5th Cir. 2019). Because contempt is a "potent weapon," it may not be used if "there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct"—e.g., doubt as to whether the challenged conduct falls within an order's scope. *Taggart*, 139 S. Ct. at 1801–02 (2019) (alteration in original, emphasis added); *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (same).

If plaintiffs carry their burden, defendants can still avoid contempt by showing substantial compliance, good-faith efforts, inability to comply, mitigating circumstances, or justification for non-compliance. *See United States v. Barnett*, 346 F.2d 99, 100 (5th Cir. 1965) (substantial compliance); *Waste Mgmt. of Wash., Inc. v.*

6

*Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (inability to comply); *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (mitigating circumstances); *M.D. ex rel. Stukenberg v. Abbott*, 509 F. Supp. 3d 683, 704 (S.D. Tex. 2020).

The Fifth Circuit is highly likely to hold that the Court's order doesn't comply with those parameters. On appeal, defendants will argue that they complied with Remedial Orders 3 and 10 and that this Court reached the opposite conclusion by improperly focusing on approximately 35 investigations (out of thousands conducted by defendants every year) involving 13 children (out of approximately 8,000 PMC children) conducted primarily in 2021 and 2022 by a single HHSC unit that investigates abuse involving certain types of providers, including Home and Community-Based Services (HCS) residences, which house approximately 100 PMC children at any given time. *See* Dkt. 1560 at 302–97. Rather than focus on this small subset of investigations, the Court should have considered that, when evaluated more broadly, defendants are in substantial compliance with these orders as established by the Monitors' own reports.

For example, in the Fifth Report, the Monitors note that defendants' investigations have "measurably improved over time" and "often resulted in an appropriate disposition." Dkt. 1318 at 47. Indeed, the Monitors agreed with the disposition of 95 percent of the investigations. Dkt. 1318 at 46–47.

The Court discounted these overwhelmingly positive findings by its own Monitors to parse the evidence and criticize defendants for failing to take actions not required by the Court's orders—followed by summarily concluding that it's

7

"apparent" that defendants' actions violated the orders. *See, e.g.*, Dkt. 1560 at 313 (citing Dkt. 1412 at 36) (finding that investigator failed because, despite interviewing a witness and noting in investigative documentation that the witness stated that the witness engaged in a physical altercation, the investigator must not have asked the witness to "describe" the physical altercation—because the investigator didn't note whether he asked the witness to "describe").

The Court also rejected defendants' defenses, finding for example that HHSC didn't take "all reasonable steps" towards compliance, based on a single comment from a single HHSC witness agreeing that HHSC could've done a "better job." *See* Dkt. 1560 at 417; Dkt. 1487 at 133. And the Court rejected defendants' "good faith effort" defense by disregarding defendants' policy changes—some of which are designed to create a more efficient system and better allocate resources—as nothing more than a way to "allow investigators to close cases more quickly." Dkt. 1560 at 418.

Finally, defendants will argue that the Court erred in rejecting their argument that defendants' substantial compliance should have been viewed within the broader context of their overall achievement in complying with more than 60 remedial orders imposed at once alongside the injunction. *See* Dkt. 1560 at 420. Defendants have undisputedly attained near-perfect compliance with, among others:

- Caseworker training requirements (Remedial Order 1), Dkt. 1514 (Court's order finding full compliance);
- Graduated caseload requirements for new caseworkers (Remedial Order 2), Dkt. 1518 at 11–12;

8

- Requirements to timely complete investigations (Remedial Order 15), Dkt. 1518 at 14–15; and

- Requirements to notify referrents and providers of investigations of abuse and neglect (Remedial Order 18), Dkt. 1518 at 16–17.

Making the meaningful strides forward to comply with the Court's remedial orders, and improve the outcomes for the children in defendants' care, has been no small task, and defendants' uncontested improvement underscores the strong likelihood that the Fifth Circuit will reverse the contempt order.

> **B.  The Court imposed criminal contempt without constitutionally required criminal process.**

In addition, defendants are very likely to prevail on appeal because the Court's order imposes criminal contempt without affording "the protections that the Constitution requires of such criminal proceedings." *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988).

In *International Union, United Mine Workers of America v. Bagwell*, the Supreme Court held that (1) non-compensatory fines that (2) are imposed for out-of-court conduct and (3) are based on non-compliance with a complex injunction constitute criminal contempt and can't "be imposed absent a jury trial." 512 U.S. 821, 836–38 (1994). All three conditions are met here.

First, the Court's order makes clear that the fines it imposed are non-compensatory. It ordered HHSC to pay all fines into the Court's registry. Dkt. 1560 at 423. And while the Court specified that those funds would be "segregate[d] and preserve[d] . . . for the benefit and use of PMC foster care children," *id.*, "[a]t no point did [it] attempt to calibrate the fines to damages caused by [defendant's allegedly]

9

contumacious activities." *Bagwell*, 512 U.S. at 834. So the fines are non-compensatory.

Second, the Court based its contempt order on alleged conduct that occurred outside the court's presence. *Bagwell*, 512 U.S. at 833. The Court held HHSC in contempt of Remedial Orders 3 and 10 based on HHSC's Provider Investigation unit's allegedly deficient and untimely investigations into allegations of abuse and neglect at HCS group homes. That kind of "indirect" contempt requires more procedural protections than "direct" contempt, like a witness's "face-to-face refusal" to testify in court. *United States v. Wilson*, 421 U.S. 309, 315–16 (1975) (third quote); *see Bagwell*, 512 U.S. at 833 (first and second quotes).

Third, the Court held HHSC in contempt for allegedly failing to comply with a "complex injunction." *Bagwell*, 512 U.S. at 837. Far from faulting defendants for failing to perform a "discrete, readily ascertainable act[], such as turning over a key or payment of a judgment," the "court effectively policed [defendants'] compliance with an entire code of conduct that the court itself had imposed" and that "spanned a substantial portion of the State." *Bagwell*, 512 U.S. at 833, 837.

Under *Bagwell*, because this Court sanctioned "indirect contempts of [a] complex injunction[] through noncompensatory fines," the "fines challenged here are criminal." 512 U.S. at 837–38. The criminal character of the contempt is even clearer here than it was in *Bagwell* because the Court's fines began accruing *immediately*—the same day the Court issued the order—meaning that as a practical matter defendants had no "opportunity to reduce or avoid the fine through compliance"

10

during at least the first day fines were accruing. *Id.* at 829 ("[A] 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.").

What's more, the fines can be suspended only upon a certification about past conduct—between December 4, 2023 and the present—making clear that the fines are punitive rather than remedial in nature. Dkt. 1560 at 422–23; *Bagwell*, 512 U.S. at 827. The fines, even if suspended, can be reimposed at the June hearing, further heightening their punitive nature. Dkt. 1560 at 424. Indeed, in explaining its authority to issue the contempt, the Court stated that courts have "the power to *punish* violations of their own orders," Dkt. 1560 at 21 (quoting *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009)) (emphasis added), and punitive contempts are quintessentially criminal. *See Bagwell*, 512 U.S. at 827–28.

Before the Court imposes criminal contempt, however, defendants are entitled to full criminal process, including a jury trial and proof beyond a reasonable doubt. *Hicks*, 485 U.S. at 637; *Bagwell*, 512 U.S. at 838. Because the Court imposed criminal contempt without constitutionally required procedural safeguards, the Fifth Circuit will likely reverse the contempt order.

## II. Defendants will be irreparably injured without a stay, and a stay will serve the public interest.

Equity likewise strongly favors a stay. Without a stay, defendants will incur irreparable harm from the extraordinary $100,000 daily fine imposed by the Court as they seek to comply with the Court's contempt order. Achieving compliance with the

11

Court's contempt order will take time, but the Court's fines begin accruing immediately, and they can only be suspended—not eliminated. *See* Dkt. 1560 at 424.

The sheer "institutional injury to Texas from the inversion of . . . federalism principles" is itself an irreparable injury. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). The Fifth Circuit has recognized the "sensitive federalism concerns" implicated when a federal court exercises "near-perpetual oversight" of an area of "core state responsibility" like the "already-complex child-welfare regime." *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, at 271 (5th Cir. 2018) ("An intrusion of this scale should not be taken lightly."). Those concerns are only magnified by the Court's imposition of criminal contempt against a state official leading one of the largest state agencies in the entire country without constitutionally required criminal process. *In re Gee*, 941 F.3d 153, 167 (5th Cir. 2019) ("Federalism is a 'clear restraint[] on the use of equity power' because '[a] structural reform decree eviscerates a State's discretionary authority over its own program and budgets.'").

The other factors point towards a stay, too. Because defendants are state actors, their "interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The "proper expenditure" of state funds and "efficient operation" of state institutions are matters of public interest adversely affected by the contempt order's imposition of fines and costly compliance measures. *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987) (first quote); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992) (second quote).

12

Meanwhile, a stay won't harm plaintiffs. The funds that would otherwise be used to pay contempt fines will continue to be spent in the ordinary course to serve the children in defendants' care. Even with a stay in place, defendants will be required to comply with the remedial orders and protect the children in their care—which they have consistently strived in good faith to do.

## CONCLUSION

For these reasons, defendants respectfully request that the Court stay its contempt order and all related proceedings pending appeal, which will enable them to pursue an appeal without continuing to accrue $100,000 in penalties every single day. At minimum, defendants request that the Court temporarily stay its order while the Fifth Circuit considers the propriety of a stay pending appeal. Given the magnitude of the presently accruing fines and the irreparable harm to federal-state comity, defendants plan to seek concurrent relief from the Fifth Circuit.

| | |
|---|---|
| Date: April 16, 2024 | Respectfully submitted, |
| | |
| **KEN PAXTON** | /s/ *Allyson N. Ho* |
|   Attorney General | **ALLYSON N. HO** |
| |   *Attorney-in-Charge* |
| **BRENT WEBSTER** |   State Bar No. 24033667 |
|   First Assistant Attorney General |   Southern District No. 1024306 |
| | **BRADLEY G. HUBBARD** |
| **JAMES LLOYD** |   State Bar No. 24090174 |
|   Deputy Attorney General for Civil Litigation |   Southern District No. 3450976 |
| | **JOHN ADAMS** |
| /s/ *Kimberly Gdula* |   State Bar No. 24097277 |
| **KIMBERLY GDULA** |   Southern District No. 3004597 |
|   State Bar No. 24052209 | **SAVANNAH SILVER** |
|   Southern District No. 10092074 |   State Bar No. 24129020 |
|   Chief |   Southern District No. 3844454 |
|   General Litigation Division | **JASON MUEHLHOFF** |
| **KARL E. NEUDORFER** |   State Bar No. 24135719 |
|   State Bar No. 24053388 |   Southern District No. 3865730 |
|   Southern District No. 725939 | |
|   Assistant Attorney General | Gibson, Dunn & Crutcher LLP |
|   Administrative Law Division | 2001 Ross Avenue, Suite 2100 |
| **CLAYTON R. WATKINS** | Dallas, Texas 75201 |
|   State Bar No. 24103982 | (214) 698-3100 |
|   Southern District No. 3663032 | (214) 571-2900 – Fax |
|   Assistant Attorney General | aho@gibsondunn.com |
|   Administrative Law Division | bhubbard@gibsondunn.com |
| | jsadams@gibsondunn.com |
| P.O. Box 12548, Capitol Station | ssilver@gibsondunn.com |
| Austin, Texas 78711 | jmuehlhoff@gibsondunn.com |
| (512) 463-2120 | |
| (512) 370-0667 – Fax | **PRERAK SHAH** |
| kimberly.gdula@oag.texas.gov |   State Bar No. 24075053 |
| karl.neudorfer@oag.texas.gov |   Southern District No. 2137529 |
| clayton.watkins@oag.texas.gov | |
| | Gibson, Dunn & Crutcher LLP |
| ATTORNEYS FOR DEFENDANTS | 811 Main Street, Suite 3000 |
| | Houston, Texas 77002 |
| | (346) 718-6600 |
| | (346) 718-6620 – Fax |
| | pshah@gibsondunn.com |
| | |
| | ATTORNEYS FOR DEFENDANTS |

**CERTIFICATE OF CONFERENCE**

On April 16, 2024, counsel for defendants asked counsel for plaintiffs whether plaintiffs were opposed or unopposed to the relief requested by this motion. Counsel for plaintiffs stated that plaintiffs are opposed to the relief sought.

*/s/ Allyson N. Ho*
Allyson N. Ho

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the electronic case filing system, which automatically provided notice to all attorneys of record.

*/s/ Allyson N. Ho*
Allyson N. Ho
