# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

MAY 2 2 2024

Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2024

Lyle W. Cayce
Clerk

No. 24-40248

M. D., BY NEXT FRIEND SARAH R. STUKENBERG; D. I., BY NEXT
FRIEND NANCY G. POFAHL; Z. H., BY NEXT FRIEND CARLA B.
MORRISON; S. A., BY NEXT FRIEND JAVIER SOLIS; A. M., BY
NEXT FRIEND JENNIFER TALLEY; J. S., BY NEXT FRIEND ANNA J.
RICKER; K. E., *as next friend* JOHN W. CLIFF, JR.; M. R., *as next
friend* BOBBIE M. YOUNG; J. R., *as next friend* BOBBIE M. YOUNG;
H. V., BY NEXT FRIEND ANNA J. RICKER; P. O., *as next friend*
ANNA J. RICKER; L. H., *as next friend* ESTELA C. VASQUEZ; C. H.,
BY NEXT FRIEND ESTELA C. VASQUEZ; S. R., *as next friend* BOBBIE
M. YOUNG; S. S., *as next friend* ESTELA C. VASQUEZ; A. R., *as next
friend* TOM MCKENZIE, *individually and on behalf of all others similarly
situated,*

*Plaintiffs—Appellees,*

*versus*

GREG ABBOTT, *in his official capacity as Governor of the State of Texas;*
CECILE ERWIN YOUNG, *in her official capacity as Executive Commissioner
of the Health and Human Services Commission of the State of Texas;*
STEPHANIE MUTH, *in her official capacity as Commissioner of Texas
Department of Family and Protective Services,*

*Defendants—Appellants.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:11-CV-84

UNPUBLISHED ORDER

Before JONES, CLEMENT, and WILSON, *Circuit Judges.*

PER CURIAM:*

On April 15, 2024, the district court held the commissioner of a Texas state agency in contempt for failing to comply in thirty-eight discrete instances with two out of the more-than-sixty remedial orders entered to address deficiencies with the state's foster-care system. The commissioner must pay a $100,000 penalty for each day the state fails to certify that it is in substantial compliance with the two remedial orders. The Defendants challenge the legality of this contempt order and ask this court to stay the order pending merits review of their appeal. We GRANT their Motion.

## I. BACKGROUND

The Plaintiffs are minor children who "filed suit through next friends in March 2011, alleging that the State [of Texas] violated their substantive rights under the Due Process Clause of the Fourteenth Amendment" and sought injunctive relief against the Defendants. *M. D. by Stukenberg v. Abbott (Stukenberg I)*, 907 F.3d 237, 246 (5th Cir. 2018). After a two-week bench trial, the district court found the Defendants' "policies and practices with respect to caseloads, monitoring and oversight, placement array, and foster group homes violated plaintiffs' substantive due process rights." *Id.* As a remedy, "[t]he district court entered an expansive injunction mandating [over sixty] remedial measures." *Id.* at 271.[1]

---

[1] This is the fourth time this case has been before this court. *See M. D. by Stukenberg v. Abbott*, 977 F.3d 479 (5th Cir. 2020); *M. D. by Stukenberg v. Abbott*, 929 F.3d 272 (5th Cir. 2019); *Stukenberg I*, 907 F.3d 237.

No. 24-40248

Two of those orders—Remedial Orders 3 and 10—are the subject of this dispute.  Remedial Order 3, in relevant part, provides: The Department of Family and Protective Services ("DFPS") "shall ensure that reported allegations of child abuse and neglect involving children in the [Permanent Managing Conservatorship ("PMC")] class are investigated; commenced and completed on time consistent with the Court's Order; and conducted taking into account at all times the child's safety needs."  Relatedly, Remedial Order 10 provides:

> Within 60 days, DFPS shall, in accordance with DFPS policies and administrative rules, complete Priority One and Priority Two child abuse and neglect investigations that involve children in the PMC class within 30 days of intake, unless an extension has been approved for good cause and documented in the investigative record. If an investigation has been extended more than once, all extensions for good cause must be documented in the investigative record.

In sum, Remedial Orders 3 and 10 require the Defendants to investigate allegations of child abuse and neglect in a timely manner and in a way that accounts for the child's safety.[2]

According to the district court, the Defendants have failed to comply with these orders in regard to their handling of thirty-eight abuse and neglect allegations.  Thus, following an evidentiary hearing that covered numerous aspects of the court's multiple supervisory orders, the district court issued a 427-page order (the "April 15 Order") holding Defendant Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and

---

[2] Although the remedial orders at issue refer only to DFPS, the parties do not dispute that, since various functions were transferred from DFPS to HHSC as part of an agency reorganization, HHSC is subject to these remedial orders as well.

No. 24-40248

Human Services Commission of the State of Texas ("HHSC"), in contempt of Remedial Orders 3 and 10. As a consequence of violating Remedial Order 3, the district court ordered Young, in relevant part, "to pay $50,000 per day until HHSC agency leadership certifies that all [Provider Investigations ("PI")] investigations involving at least one PMC child closed from December 4, 2023 until the date of the State's certification, are substantially compliant with the Remedial Order 3."[3] (Footnote omitted). As for Remedial Order 10, the district court ordered Young, in relevant part, "to pay $50,000 per day until HHSC agency leadership certifies that all open PI investigations involving at least one PMC child are substantially compliant with Remedial Order 10." Thus, the Defendants are required to pay $100,000 for each day they fail to certify they are substantially complying with Remedial Orders 3 and 10.

But simply certifying that they are in substantial compliance with these remedial orders does not get the Defendants off the hook. On June 26, 2024, the district court will hold a "compliance hearing" "at which time, absent substantial compliance, any previously abated fines may be reinstated."

The Defendants appealed from the April 15 Order and asked this court for a stay pending appeal after the district court denied their request for a stay. The Plaintiffs oppose a stay. ECF 37. On April 17, 2024, this court entered an administrative stay, which has remained in place to this day.

---

[3] The PI unit is under the purview of HHSC and is responsible for investigating claims of abuse concerning disabled children in Texas's Home and Community-Based Services Medicaid waiver program.

No. 24-40248

## II. DISCUSSION

We "consider four factors in deciding a motion to stay pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Tex. All. for Retired Americans v. Hughs*, 976 F.3d 564, 566 (5th Cir. 2020) (per curiam) (quoting *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014)). "The first two factors . . . are the most critical." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009)). As we consider each of the factors, we are mindful that "[t]he party requesting a stay bears the burden of showing that the circumstances justify" it. *Nken*, 556 U.S. at 433–34, 129 S. Ct. at 1761.

We review the district court's order for an abuse of discretion, but an order imbued with errors of law constitutes abuse. *Martin v. Trinity Indust., Inc.,* 959 F.2d 45, 46 (5th Cir. 1992); *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Here, the issues we review are purely legal.

### A. Success on the Merits

We first assess whether the Defendants have made a strong showing that they will succeed on the merits. They have made this showing on at least one ground.[4] There is a strong likelihood that the contempt order is

---

[4] Thus, we do not address the other grounds the Defendants raised. *See Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020). ("[B]ecause the Secretary is likely to succeed on one ground, we need not address the others." (collecting cases)).

No. 24-40248

best characterized as criminal, not civil, and was therefore imposed without appropriate jury trial and other protections.

There are two types of contempt—criminal and civil. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27, 114 S. Ct. 2552, 2556–57 (1994). "Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Id.* at 826, 114 S. Ct. at 2556 (citations and quotation marks omitted). "In contrast, civil contempt sanctions . . . may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.* at 827, 114 S. Ct. at 2557. For civil contempt sanctions, "[n]either a jury trial nor proof beyond a reasonable doubt is required." *Id.* The contempt power of courts, as *Bagwell* explained, is rooted in concepts of necessity and arbitrariness. Necessity requires that courts be able to enforce their judgments and orders; arbitrariness in imposing sanctions is a threat endemic to those who hold power that must be confined. *Id.* at 831–34, 114 S. Ct. at 2559–61. Where a contempt order is deemed criminal, arbitrariness is cabined by the requirements of a criminal proceeding. *Id.* at 834, 114 S. Ct. at 2561.

Whether a contempt order is civil or criminal turns on the "character and purpose" of the sanction involved. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S. Ct. 492, 498 (1911). When, as here, the sanction at issue is a non-compensatory fine,[5] the sanction is civil if it is "remedial" and

---

[5] As the name suggests, a compensatory fine "compensate[s] the complainant for losses sustained" because of the contemnor's conduct and must be "based upon evidence of the complainant's actual loss." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303, 67 S. Ct. 677, 701 (1947). The contempt sanction at issue here is clearly non-compensatory, as the district court made no "attempt to calibrate the fines to damages caused by [Defendants'] contumacious activities" nor does the April 15 Order "indicate

No. 24-40248

affords the Defendants the ability "to purge the contempt . . . by committing an affirmative act," but criminal if it is "punitive" and "imposed retrospectively for a completed act of disobedience, such that the [Defendants] cannot avoid or abbreviate the [punishment] through later compliance." *Bagwell*, 512 U.S. at 828–29, 114 S. Ct. at 2558 (citation and quotation marks omitted). Critically, "a contempt [sanction] is considered civil only when the punishment is *wholly* remedial." *In re Stewart*, 571 F.2d 958, 964 n.4 (5th Cir. 1978) (emphasis added). "When the punishment is partly remedial and partly punitive, 'the criminal feature of the order is dominant and fixes its character for purposes of review.'" *Id.* (quoting *Nye v. United States*, 313 U.S. 33, 42, 61 S. Ct. 810, 813 (1941)).

The Plaintiffs' argument that the Defendants can purge the contempt entirely simply by certifying substantial compliance falls short because much of the April 15 Order squarely focuses on whether the Defendants' *past* conduct was in compliance with the Remedial Orders 3 and 10. The April 15 Order requires the Defendants to pay $100,000 per day until they certify that certain investigations "closed *from December 4, 2023* until the date of the State's certification, are substantially compliant with the Remedial Order 3" and that other "open" investigations" comply with Remedial Order 10. The Defendants can do nothing to render any already-untimely investigations timely. The court's order, after all, specifies investigations that were closed months before April 15 and "open" investigations that may have become untimely vis-à-vis Remedial Order 10 before April 15. Moreover, the Defendants cannot complete open investigations or correct past investigations that failed to adequately consider the safety of children overnight, but that is exactly what the court's

---

that the fines were to compensate the complainant for losses sustained." *Bagwell*, 512 U.S. at 834, 114 S. Ct. at 2561 (quotation marks omitted). The parties do not argue otherwise.

No. 24-40248

order requires by imposing per diem fines that begin immediately. This leaves the Defendants no realistic opportunity to purge the contempt, and reveals that the April 15 Order is at least partially intended to punish Defendants' "completed acts of disobedience," which renders the sanction criminal.[6]

This conclusion is buttressed by the fact that the challenged violations of the remedial orders occurred out-of-court and involved a "complex" injunction. As *Bagwell* stated, "[c]ontempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding" and, therefore, certain "criminal procedural protections" are required "to protect the due process rights of parties and prevent the arbitrary exercise of judicial power." 512 U.S. at 833–34, 114 S. Ct. at 2560–61.

The Plaintiffs insist that the April 15 Order does not involve a "complex" injunction because Defendants were sanctioned for violating only two of the sixty remedial orders. The Plaintiffs' argument misses the

---

[6] "[T]he imposition only of serious criminal contempt fines triggers the right to jury trial" and, therefore, "[p]etty contempt . . . may be tried without a jury." *Bagwell*, 512 U.S. at 837 n.5, 114 S. Ct. at 2562 n.5. But in *Bagwell*, the Court did "not answer . . . the difficult question where the line between petty and serious contempt fines should be drawn" because the $52 million fine imposed in that case "unquestionably [was] a serious contempt sanction." *Id.* Were the fines to accrue unabated between April 15 and the June 26 compliance hearing, the Defendants would be on the hook for $7.2 million. Our sister circuits have held that far lesser fines require a district court to afford the protections used in the criminal process. *See Jake's, Ltd. v. City of Coates*, 356 F.3d 896, 902–04 (8th Cir. 2004) ($68,000, based on a $1,000-per-day penalty); *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128–30 (2d Cir. 1998) ($10,000); *see also In re John Richards Homes Bldg. Co.*, 552 F. App'x 401, 416 (6th Cir. 2013) ("We need not decide at this juncture what defines a 'serious' noncompensatory award of punitive damages because the $2.8 million awarded below is serious under any definition."). For these reasons, the fine imposed in the April 15 Order appears to rise to the level of "serious," such that the Defendants are entitled to a jury trial.

No. 24-40248

forest for the trees.   It overlooks that the district court's injunction
contained more than sixty remedial orders.   In characterizing an "injunction
that prescribes a detailed code of conduct," it is more appropriate to assess
the *entire* injunction as opposed to taking a piecemeal approach.   *See id.* at
835–36, 114 S. Ct. at 2561 ("In a case like this involving an injunction that
prescribes a detailed code of conduct, it is more appropriate to identify the
character of the entire decree.").

But even if we were to circumscribe our assessment of the injunction
to Remedial Orders 3 and 10, we would still conclude that the injunction is
complex.   These remedial orders require an agency, which as of 2018 was
"responsible for roughly 29,000 children,"[7] to conduct investigations of
child abuse and neglect in a timely manner while "taking into account at all
times the child's safety needs."   That is no small task, as demonstrated by
the fact that the order explaining the Defendants' noncompliance with these
remedial orders is voluminous.   And even considering just the two Remedial
Orders at issue, the Defendants conducted thousands of investigations
during the period covered by the court's hearing, and the monitors found
noncompliance in just over three dozen instances, involving about 13
children.   We do not minimize the Defendants' shortcomings in these
matters, but violations committed by the Defendants on a very small scale
in relation to the magnitude of the institution, the prescriptive orders, and
the overall numbers of children can be better put in perspective by a jury.

If further analysis were needed, the contrast between the contempt
order in this case and that in *Bagwell,* which the Supreme Court
unanimously held criminal, is instructive.   The "complex" labor injunction
in that case prohibited the union, *inter alia,* from obstructing ingress and

---

[7] *Stukenberg I,* 907 F.3d at 243.

No. 24-40248

egress to the mining company facilities, throwing objects at and physically
threatening company employees, placing "jackrocks" on roads to damage
vehicles, and exceeding certain numbers of picketers. *Id.* at 823, 114 S. Ct.
at 2555. This doesn't seem very "complex" when placed against the wide-
ranging scope of remedial orders that have reorganized the entire foster-care
system in Texas to the tune of the state's expenditure of over $100 million
in compliance costs to date (plus over $55 million to monitors).

In *Bagwell,* the Court paid little heed to the trial court's attempt to
characterize its schedule of fines as "prospective" only, and the Court noted
the "elusive distinctions" between civil and criminal contempt fines. *Id.* at
830, 836, 114 S. Ct. at 2559, 2561–62. Here, regardless of the district court's
characterization, it is almost impossible to escape the conclusion that the
fines imposed by the April 15 Order are at least partially retrospective in
nature.

Defendants have shown that this case satisfies all three elements on
which *Bagwell* focused. The court's order here largely punishes past
conduct; it pertains to out-of-court conduct in regard to a complex
injunction; and the fine is non-compensatory. *Bagwell,* 512 U.S. at 826–39,
114 S. Ct. at 2557–63. "Under such circumstances, disinterested factfinding
and evenhanded adjudication [are] essential, and [Defendants] were entitled
to a criminal jury trial." *Id.* at 837–38, 114 S. Ct. at 2562. For these reasons,
the Defendants have made a strong showing that they will succeed on the
merits.[8]

---

[8] We also note that the district court's imposition of criminal contempt in the form
of monetary penalties raises Eleventh Amendment concerns. *See Pennhurst State Sch. &
Hosp. v. Halderman,* 465 U.S. 89, 102–03, 104 S. Ct. 900, 909 (1984) ("[W]hen a plaintiff
sues a state official alleging a violation of federal law, the federal court may award an
injunction that governs the official's future conduct, but not one that awards retroactive
monetary relief." (discussing *Edelman v. Jordan,* 415 U.S. 651, 94 S. Ct. 1347 (1974)); *see*

10

No. 24-40248

## B. Irreparable Harm

Based on the foregoing discussion, it is highly likely that the Defendants will suffer irreparable harm absent a stay pending appeal in the form of a criminal fine imposed without the necessary due-process protections. To be sure, the mere payment of money is not normally considered irreparable injury. *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers).[9] But at issue here is no mere fine; rather, one levied in likely violation of "one of the most precious and sacred safeguards enshrined in the Bill of Rights"—the right to a jury trial. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 572, 96 S. Ct. 2791, 2809 (1976) (Brennan, J., concurring). It is the likely unconstitutional nature of the fine that renders the harm it causes to Defendants irreparable. For while we could remedy the Defendants' monetary injury through the usual appellate process by ordering that any fines paid be refunded, once we allow the April 15 Order to go into effect and require Defendants to pay such fines notwithstanding the deprivation of their constitutional freedoms, that constitutional injury, even if it exists only for a "minimal period[] of time,"

---

*also* John Sanchez, *Contempt Fines and the Eleventh Amendment*, 9 CONLAWNOW 279, 287 (2018) ("Criminal contempt fines are not recoverable against state officials because of the Eleventh Amendment.").

[9] This assumes, of course, that the money can "be recovered from the person to whom it is paid." *Philip Morris*, 561 U.S. at 1304, 131 S. Ct. at 4. Here, it is unclear from the April 15 Order *when* the district court will begin allocating the fines paid into the court registry "for the benefit and use of PMC foster care children." Were the district court to require distribution of funds before this court rules on the merits of the April 15 Order, the Defendants would suffer further irreparable harm because there would be "[n]o mechanism . . . for the [Defendants] to recover the [fines they paid] if the [April 15 Order] is invalidated on the merits." *Texas v. EPA*, 829 F.3d 403, 434 (5th Cir. 2016); *see also Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 473 (5th Cir. 1985) ("The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury.").

No. 24-40248

cannot be undone or recompensed. *See, e.g., BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976)).

## C. Balance of Equities and the Public Interest

Last, we "decide whether the balance of equities and the public interest favor a stay." *Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022). "The equities favor a stay if it would benefit the defendants more than it would harm the nonmovants." *Id.* "We then must ask whether a stay would serve the public interest." *Id.* But here, where the Defendants are state actors, their interests and harm merge with the public interest. *See Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Nken*, 556 U.S. at 435, 129 S. Ct. 1749); *see also Robinson*, 37 F.4th at 228.

The safety and well-being of the children in the Texas foster-care system is significant and is not lost on this court. But that interest alone, significant as it may be, is not enough to deny the Defendants the relief they request because they have made a strong showing they are likely to succeed on the merits. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("While we acknowledge that Planned Parenthood has also made a strong showing that their interests would be harmed by staying the injunction, given the State's likely success on the merits, this is not enough, standing alone, to outweigh the other factors."); *see also Tex. All. for Retired Americans*, 976 F.3d at 569.

More importantly, issuing a temporary stay now does not relieve the Defendants of their obligations to comply with Remedial Orders 3 and 10 and the other remedial orders that remain in effect; it simply puts a pause on charging the Defendants $100,000 per day while this court determines whether the April 15 Order is lawful. That fact, coupled with the irreparable

No. 24-40248

harm the Defendants will suffer absent a stay, tilts the balance of equities and public-interest factors in the Defendants' favor.

## CONCLUSION

For the foregoing reasons, we GRANT the Defendants' Motion for Stay Pending Appeal.

IT IS FURTHER ORDERED that the April 15 Order is STAYED pending further order of this court.

IT IS FURTHER ORDERED that the district court's proceedings concerning the April 15 Order are STAYED pending further order of this court.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

May 20, 2024

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 24-40248   M.D. v. Abbott
                  USDC No. 2:11-CV-84

Enclosed is an order entered in this case.

                  Sincerely,

                  LYLE W. CAYCE, Clerk

                  By: _____
                  Angelique B. Tardie, Deputy Clerk
                  504-310-7715

Mr. John Stewart Adams
Mr. David Baloche
Mr. Stephen Andrew Dixon
Mrs. Kimberly A. Gdula
Ms. Dori Kornfeld Goldman
Mr. Stephen J. Hammer
Ms. Allyson Newton Ho
Mr. Bradley G. Hubbard
Ms. Marcia Lowry
Mr. Barry Frank McNeil
Mr. Jason Muehlhoff
Mr. Nathan Ochsner
Ms. Lanora Christine Pettit
Mr. Joshua A. Rosenthal
Mr. Prerak Shah
Ms. Savannah Silver
Mr. Christian J. Ward
Mr. R. Paul Yetter