# ATTACHMENT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> GREG ABBOTT, in his official capacity as ) <br> Governor of the State of Texas, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 2:11-CV-00084 |

**AFFIRMED REMEDIAL ORDERS AND PROVISIONS**

The following provisions of the Court's Order entered November 20, 2018, *see* Dkt. 606, were affirmed by the Fifth Circuit in *M.D. by Stukenberg v. Abbott*, 929 F.3d 272 (5th Cir. 2019) (*Stukenberg II*), and are in effect.  Modifications by the Fifth Circuit are indicated in parentheses.

**Remedial Orders Validated in *Stukenberg I***

1. Within 60 days, the Texas Department of Family Protective Services ("DFPS") shall ensure statewide implementation of the CPS Professional Development ("CPD") training model, which DFPS began to implement in November 2015.

2. Within 60 days, DFPS shall ensure statewide implementation of graduated caseloads for newly hired CVS caseworkers, and all other newly hired staff with the responsibility for primary case management services to children in the PMC class, whether employed by a public or private entity.

3. DFPS shall ensure that reported allegations of child abuse and neglect involving children in the PMC class are investigated; commenced and completed on time consistent with the Court's Order; and conducted taking into account at all times the child's safety needs.  The Monitors shall periodically review the statewide system for appropriately receiving, screening, and investigating reports of abuse and neglect involving children in the PMC class to ensure the investigations of all reports are commenced and completed on time consistent with this Order and conducted taking into account at all times the child's safety needs.

4. Within 60 days, DFPS shall ensure that all caseworkers and caregivers are trained to recognize and report sexual abuse, including child-on-child sexual abuse.

5. Within 60 days and ongoing thereafter, DFPS shall, in accordance with existing DFPS policies and administrative rules, initiate Priority One child abuse and neglect investigations

involving children in the PMC class within 24 hours of intake. (A Priority One is by current policy assigned to an intake in which the children appear to face a safety threat of abuse or neglect that could result in death or serious harm.)

6. Within 60 days and ongoing thereafter, DFPS shall, in accordance with existing DFPS policies and administrative rules, initiate Priority Two child abuse and neglect investigations involving children in the PMC class within 72 hours of intake. (A Priority Two is assigned by current policy to any CPS intake in which the children appear to face a safety threat that could result in substantial harm.)

7. Within 60 days and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial face-to-face contact with the alleged child victim(s) in Priority One child abuse and neglect investigations involving PMC children as soon as possible but no later than 24 hours after intake.

8. Within 60 days and ongoing thereafter, DFPS shall, in accordance with DFPS policies and administrative rules, complete required initial face-to-face contact with the alleged child victim(s) in Priority Two child abuse and neglect investigations involving PMC children as soon as possible but no later than 72 hours after intake.

9. Within 60 days and ongoing thereafter, DFPS must track and report all child abuse and neglect investigations that are not initiated on time with face-to-face contacts with children in the PMC class, factoring in and reporting to the Monitors quarterly on all authorized and approved extensions to the deadline required for initial face-to-face contacts for child abuse and neglect investigations.

10. Within 60 days, DFPS shall, in accordance with DFPS policies and administrative rules, complete Priority One and Priority Two child abuse and neglect investigations that involve children in the PMC class within 30 days of intake, unless an extension has been approved for good cause and documented in the investigative record. If an investigation has been extended more than once, all extensions for good cause must be documented in the investigative record.

11. Within 60 days and ongoing thereafter, DFPS must track and report monthly all child abuse and neglect investigations involving children in the PMC class that are not completed on time according to this Order. Approved extensions to the standard closure timeframe, and the reason for the extension, must be documented and tracked. If an investigation has been extended more than once, all extensions for good cause must be documented in the investigative record.

12. Effective immediately, the State of Texas shall ensure the Residential Child Care Licensing ("RCCL")2 investigators, and any successor staff, observe or interview the alleged child victims in Priority One child abuse or neglect investigations within 24 hours of intake.

13. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, observe or interview the alleged child victims in Priority Two child abuse or neglect investigations within 72 hours of intake.

14. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete Priority One and Priority Two child abuse and neglect investigations within 30 days of intake, consistent with DFPS policy.

15. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete Priority Three, Priority Four and Priority Five investigations within 60 days of intake, consistent with DFPS policy.

16. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete and submit documentation in Priority One and Priority Two investigations on the same day the investigation is completed.

17. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, complete and submit documentation in Priority Three, Priority Four and Priority Five investigations within 60 days of intake.

18. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, finalize and mail notification letters to the referent and provider(s) in Priority One and Priority Two investigations within five days of closing a child abuse and neglect investigation or completing a standards investigation.

19. Effective immediately, the State of Texas shall ensure RCCL investigators, and any successor staff, finalize and mail notification letters to the referent(s) and provider(s) in Priority Three, Priority Four and Priority Five investigations within 60 days of intake.

20. Within 120 days, RCCL, and/or any successor entity charged with inspections of child care placements, will identify, track and address concerns at facilities that show a pattern of contract or policy violations. Such facilities must be subject to heightened monitoring by DFPS and any successor entity charged with inspections of child care placements and subject to more frequent inspections, corrective actions and, as appropriate, other remedial actions under DFPS' enforcement framework.

21. Effective immediately, RCCL and/or its successor entity, shall have the right to directly suspend or revoke the license of a placement in order to protect children in the PMC class.

22. Effective immediately, RCCL, and any successor entity charged with inspections of child care placements, must consider during the placement inspection all referrals of, and in addition all confirmed findings of, child abuse/neglect and all confirmed findings of corporal punishment occurring in the placements. During inspections, RCCL, and any successor entity charged with inspections of child care placements, must monitor placement agencies' adherence to obligations to report suspected child abuse/neglect. When RCCL, and any successor entity charged with inspections of child care placements, discovers a lapse in reporting, it shall refer the matter to DFPS, which shall immediately investigate to determine appropriate corrective action, up to and including termination or modification of a contract.

23. Within 60 days, DFPS shall implement within the child's electronic case record a profile characteristic option for caseworkers or supervisors to designate PMC and TMC children as "sexually abused" in the record if the child has been confirmed to be sexually abused by an adult or another youth.

24. Within 60 days, DFPS shall document in each child's records all confirmed allegations of sexual abuse in which the child is the victim.

25. Effective immediately, all of a child's caregivers must be apprised of confirmed allegations at each present and subsequent placement.

26. Effective immediately, if a child has been sexually abused by an adult or another youth, DFPS must ensure all information about sexual abuse is reflected in the child's placement summary form, and common application for placement.

27. Effective immediately, all of the child's caregivers must be apprised of confirmed allegations of sexual abuse of the child at each present and subsequent placement.

28. Effective immediately, DFPS shall ensure a child's electronic case record documents "child sexual aggression" and "sexual behavior problem" through the profile characteristic option when a youth has sexually abused another child or is at high risk for perpetrating sexual assault.

29. Effective immediately, if sexually aggressive behavior is identified from a child, DFPS shall also ensure the information is reflected in the child's placement summary form, and common application for placement.

30. Effective immediately, DFPS must also document in each child's records all confirmed allegations of sexual abuse involving the child as the aggressor.

31. Effective immediately, all of the child's caregivers must be apprised at each present and subsequent placement of confirmed allegations of sexual abuse involving the PMC child as the aggressor.

32. Within 90 days of this Order, DFPS shall create a clear policy on what constitutes child on child sexual abuse. Within 6 months of the Court's Order, DFPS shall ensure that all staff who are responsible for making the determinations on what constitutes child on child sexual abuse are trained on the policy.

35. Effective immediately, DFPS shall track caseloads on a child-only basis, as ordered by the Court in December 2015. Effective immediately, DFPS shall report to the Monitors, on a quarterly basis, caseloads for all staff, including supervisors, who provide primary case management services to children in the PMC class, whether employed by a public or private entity, and whether full-time or part-time. Data reports shall show all staff who provide case management services to children in the PMC class and their caseloads. In addition, DFPS's reporting shall include the number and percent of staff with caseloads within, below and over the DFPS

established guideline, by office, by county, by agency (if private) and statewide. Reports will include the identification number and location of individual staff and the number of PMC children and, if any, TMC children to whom they provide case management. Caseloads for staff, as defined above, who spend part-time in caseload carrying functions and part-time in other functions must be reported accordingly.

37. Within 60 days, DFPS shall ensure that all abuse and neglect referrals regarding a foster home where any PMC child is placed, which are not referred for a child abuse and neglect investigation, are shared with the PMC child's caseworker and the caseworker's supervisor within 48 hours of DFPS receiving the referral. Upon receipt of the information, the PMC child's caseworker will review the referral history of the home and assess if there are any concerns for the child's safety or well-being, and document the same in the child's electronic case record.

**Modified Orders**

**A. Remedies Applicable to the General Class**

1. Within 60 days of the Court's Order, DFPS, in consultation with and under supervision of the Monitors, shall propose a workload study to generate reliable data regarding current caseloads and to determine how many children caseworkers are able to safely carry, for the establishment of appropriate guidelines for caseload ranges. The proposal shall include, but will not be limited to: the sampling criteria, timeframes, protocols, survey questions, pool sample, interpretation models, and the questions asked during the study. DFPS shall file this proposal with the Court within 60 days of the Court's Order, and the Court shall convene a hearing to review the proposal.

2. Within 120 days of the Court's Order, DFPS shall present the completed workload study to the Court. DFPS shall include as a feature of their workload study submission to the Court, how many cases, on average, caseworkers are able to safely carry, and the data and information upon which that determination is based, for the establishment of appropriate guidelines for caseload ranges.

3. Within 150 days of the Court's Order, DFPS shall establish internal caseload standards based on the findings of the DFPS workload study, and subject to the Court's approval. The caseload standards that DFPS will establish shall ensure a flexible method of distributing caseloads that takes into account the following non-exhaustive criteria: the complexity of the cases; travel distances; language barriers; and the experience of the caseworker. In the policy established by DFPS, caseloads for staff shall be prorated for those who are less than full-time. Additionally, caseloads for staff who spend part-time in the work described by the caseload standard and part-time in other functions shall be prorated accordingly.

4. Within 180 days of the Court's Order, DFPS shall ensure that the generally applicable, internal caseload standards that are established are utilized to serve as guidance for supervisors who are handling caseload distribution and that its hiring goals for all staff are informed by the generally applicable, internal caseload standards that are established. This order

shall be applicable to all DFPS supervisors, as well as anyone employed by private entities who is charged by DFPS to provide case management services to children in the General class.

6.  Within 30 days of the Court's Order, DFPS shall ensure that caseworkers provide children with the appropriate point of contact for reporting issues relating to abuse or neglect. In complying with this order, DFPS shall ensure that children in the General Class are apprised by their primary caseworkers of the appropriate point of contact for reporting issues, and appropriate methods of contact, to report abuse and neglect. This shall include a review of the Foster Care Bill of Rights and the number for the Texas Health and Human Services Ombudsman. Upon receipt of the information, the PMC child's caseworker will review the referral history of the home and assess if there are any concerns for the child's safety or well-being and document the same in the child's electronic case record.

7.  The Defendants shall immediately cease placing PMC children in placements housing more than 6 children, inclusive of all foster, biological, and adoptive children, that lack continuous 24-hour awake-night supervision. The continuou8:s 24-hour awake-night supervision shall be designed to alleviate any unreasonable risk of serious harm. ("The 24-hour-supervision requirement is affirmed with the modification that it applies only to LFC placements, not unlicensed placements." *Stukenberg II*, 929 F.3d at 277.)

8.  Within 60 days of this Court's Order, and on a quarterly basis thereafter, DFPS shall provide a detailed update and verification to the Monitors concerning the State's providing continuous 24-hour awake-night supervision in the operation of placements that house more than 6 children, inclusive of all foster, biological, and adoptive children.

**B. Remedies Applicable to the Licensed Foster Care Subclass**

1. Within 60 days of the Court's Order, DFPS, in consultation with and under the supervision of the Monitors, shall propose a workload study to: generate reliable data regarding current RCCL, or successor entity, investigation caseloads and to determine how much time RCCL investigators, or successor staff, need to adequately investigate allegations of child maltreatment, in order to inform the establishment of appropriate guidelines for caseload ranges; and to generate reliable data regarding current RCCL inspector, or successor staff, caseloads and to determine how much time RCCL inspectors, or successor staff, need to adequately and safely perform their prescribed duties, in order to inform the establishment of appropriate guidelines for caseload ranges. The proposal shall include, but will not be limited to: the sampling criteria, timeframes, protocols, survey questions, pool sample, interpretation models, and the questions asked during the study. DFPS shall file this proposal with the Court within 60 days of the Court's Order, and the Court shall convene a hearing to review the proposal.

2. Within 120 days of the Court's Order, DFPS shall present the completed workload study to the Court. DFPS shall include as a feature of their workload study submission to the Court, how many cases, on average, RCCL inspectors and investigators, or any successor staff, are able to safely carry, and the data and information upon which that determination is based, for the establishment of appropriate guidelines for caseload ranges.

3. Within 150 days of the Court's Order, DFPS, in consultation with the Monitors, shall establish internal guidelines for caseload ranges that RCCL investigators, or any successor staff, can safely manage based on the findings of the RCCL investigator workload study, including time spent in actual investigations. In the standard established by DFPS, caseloads for staff shall be prorated for those who are less than full-time.  Additionally, caseloads for staff who spend part-time in the work described by the RCCL, or successor entity, standard and part-time in other functions shall be prorated accordingly.

4. Within 180 days of this Order, DFPS shall ensure that the internal guidelines for caseload ranges and investigative timelines are based on the determination of the caseloads RCCL investigators, or any successor staff, can safely manage are utilized to serve as guidance for supervisors who are handling caseload distribution and that these guidelines inform DFPS hiring goals for all RCCL inspectors and investigators, or successor staff.

5. Effective immediately, DFPS shall ensure that RCCL, or any successor entity, promptly communicates allegations of abuse to the child's primary caseworker. In complying with this order, DFPS shall ensure that it maintains a system to receive, screen, and assign for investigation, reports of maltreatment of children in the General Class, taking into account at all times the safety needs of children.

**Monitoring Appointment Provisions in the January 15, 2018 Order**

1. The Court hereby appoints Kevin Ryan and Deborah Fowler as the Monitors of this Order, responsible to assess and report on Defendants' compliance with the terms of this Order. The Monitors shall be responsible solely to the Court but shall work actively with the parties to ensure the effective and prompt implementation of this Order. The Monitors shall proceed with all reasonable diligence and shall commence their duties as quickly as practicable. The Monitors shall serve until the Court determines, upon Defendants' application, that the Monitors are no longer necessary.

2. Neither party, nor any employee or agent of either party, shall have any supervisory authority over the Monitors' activities, reports, findings, or recommendations. The retention of the Monitors shall be conducted solely pursuant to the procedures set forth in this Order and shall not be governed by any formal or legal procurement requirements.  The Monitors shall have a budget and staff sufficient to allow the Monitors to carry out the responsibilities set forth in this Order, and may contract with such experts or consultants as the Monitors may deem appropriate, in consultation with the Court. The Monitors, and any experts or consultants hired by the Monitors, may initiate and receive ex parte communications with the parties, and with the Court.

3. The Monitors' duties shall include to independently verify data reports and statistics provided pursuant to this Order. The Monitors shall have the authority to conduct, or cause to be conducted, such case record reviews, qualitative reviews, and audits as the Monitors reasonably deem necessary. In order to avoid duplication, DFPS shall provide the Monitors with copies of all state-issued data reports regarding topics covered by this Order. Notwithstanding the existence of state data, data analysis or reports, the Monitors shall have the authority to prepare new reports on all terms of this Order to the extent the Monitors deem necessary.

4. The Monitors shall periodically conduct case record and qualitative reviews to monitor and evaluate the Defendants' performance with respect to this Order. The Monitors shall also review all plans and documents to be developed and produced by Defendants pursuant to this Order and report on Defendants' compliance in implementing the terms of this Order. The Monitors shall take into account the timeliness, appropriateness, and quality of the Defendants' performance with respect to the terms of this Order.

5. The Monitors shall provide a written report to the Court every six months. The Monitors' reports shall set forth whether the Defendants have met the requirements of this Order. In addition, the Monitors' reports shall set forth the steps taken by Defendants, and the reasonableness of those efforts; the quality of the work done by Defendants in carrying out those steps; and the extent to which that work is producing the intended effects and/or the likelihood that the work will produce the intended effects.

6. The Monitors shall have free and complete access to records maintained by Defendants, its divisions and any successor agencies or divisions, and by its private agency partners. The Monitors shall also have free and complete access to the staff of DFPS; its divisions and any successor agencies or divisions; persons within the executive branch; private agency partners; PMC children in the care of DFPS and of private agencies; and other individuals that the Monitors deem relevant to their work. DFPS shall direct all employees and contract providers to cooperate fully with the Monitors and shall assist the Monitors in gaining free access to other stakeholders in the child welfare system. Defendants shall provide the Monitors with free and, upon request, private access to all individuals within DFPS and persons within the Executive Branch of Texas State government, as the Monitors choose; to assist the Monitors in gaining access to other stakeholders in the child welfare system (including but not limited to the staff of contract agencies); and to provide the Monitors with free access to all documents, data, and premises it deems relevant to their work (including but not limited to documents and data from contract agencies and courts). The Monitors shall respect the confidentiality of all information related to individually identifiable clients, subject to applicable law. Defendants shall take no adverse action against individuals or agencies because they shared information with the Monitors pursuant to this Order.

7. The reports of the Monitors shall be public documents filed with the Court, except that any individually identifying information and any other confidential information protected from disclosure by law shall be redacted or otherwise removed from any public report.

8. The parties shall have access, through the Monitors, to all information made available to the Monitors, subject to the existing confidentiality order in effect in this case. The Monitors may protect the identity of confidential sources of any such information.

9. The Monitors may periodically meet privately with the Court concerning issues related to this case.

10. Defendants shall deliver to the Monitors all records, reports, data and information within 30 days of the Monitors' request. The Monitors may grant extensions to due dates upon

application in writing by the Defendants. If the Monitors decline to grant Defendants an extension, the Monitor shall do so in writing and the Defendants shall either produce the requested records, reports, data and information by the due date or appeal to the Court for an extension.

11. The Monitors shall submit bills for their compensation and reasonable expenses to the State, as well as file these bills under seal with the Court, on a monthly basis. The State shall approve and issue payment within 30 days of receipt of the monthly bill. If the State disputes a bill, Defendants shall file their objections with the Court no later than 15 days after receiving the bill and/or request additional clarifying information or documentation to the Monitors, with a copy served on Plaintiffs. The Monitors shall have 15 days in which to respond and to provide the additional information and/or documentation requested, with a copy served on Plaintiffs. If within 45 days of presentation of the Monitors' bill there is still a dispute, the parties shall submit the dispute to the Court for resolution. At this time, Plaintiffs, Defendants, and the Monitors shall file a joint statement regarding the disputed payment.

12. The Monitors shall not intervene in the administrative management of either DFPS or any of its units and shall not direct the defendants or any of their subordinates to take or to refrain from taking any specific action to achieve compliance. The Monitors are not to consider matters that go beyond superintending compliance with this Court's decree.

13. If at any point the Monitor can no longer serve, the Court shall appoint another Monitor, with input and recommendations from the outgoing Monitor.

**Additional Monitoring Appointment Provisions**

1. Effective immediately, Defendants shall provide the Monitors, their staff and consultants with unrestricted, routine and ongoing remote access to the electronic data information systems used by Defendants to serve children in the PMC class, including CLASS; IMPACT; the Star Health Passport; the system used for tracking referrals and dispositions of abuse and neglect; the system used to track caseloads for staff; any and all successor systems to the foregoing; and the training and guidance necessary for the Monitors, their staff and consultants to review records within these systems. Defendants shall provide the Monitors, their staff and consultants with unrestricted, routine, and ongoing access to electronic systems used by Defendants to train caseworkers and test their knowledge. ("[W]hile we affirm the remote-access provision, we modify the injunction to require that any of the Monitors' staff and consultants who have unrestricted, remote access to DFPS's systems be qualified to handle the information (including screening for criminal history), be taught how to use the systems, and be given confidentiality agreements to sign." *Stukenberg II*, 929 F.3d at 280.)

2. Defendants will immediately supply the Monitors raw data relevant to the 2015-2016 workstudy conducted by DFPS, including but not limited to: the sampling criteria, protocols, survey questions, pool sample, interpretation models, and the questions asked during the study. ("We vacate the injunctive provision dealing with the previous third-party studies. This vacatur does not apply to the data relevant to the 2015–2016 workstudy to which the State has no objection." *Stukenberg II*, 929 F.3d at 281.)

- 11 -

       3.       The Monitors shall provide the Court with a schedule for the hourly compensation of the Monitors, their staff and consultants. The Defendants shall pay the Monitors' compensation, the compensation of the Monitors' staff and consultants and reasonable expenses. Reasonable expenses include, but are not limited to, transcriptions, photocopy fees, electronic document storage fees, teleconference services, travel and attendant expenses, and mail and delivery costs. Reasonable expenses are not included in the Monitors' hourly compensation. The Monitors may submit an application to the Court to increase the compensation, should circumstances so require. All parties shall have the right to file with the Court a written objection to the Monitors' compensation schedule within 5 days from submission.

**Termination Provision**

The Court retains jurisdiction for a period of three years after full compliance as certified by the Monitors. Either party may apply to the Court during the term of the monitoring to terminate supervision over one or more components of this Order if that party can show full compliance with that component and that further monitoring will not serve a purpose.