IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| M.D., b/n/f Sarah R. Stukenberg, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 2:11-CV-00084 |
| GREG ABBOTT, in his official capacity as | § | |
| Governor of the State of Texas, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD**

Plaintiffs respectfully move to admit into the evidentiary record on defendants' Rule 60 motion (Dkt. 1662) the November 2026 Staff Report of the Sunset Advisory Commission on the Texas Department of Family and Protective Services, attached as Exhibit 118. The Report was issued after the recent hearing. It was investigated, compiled, and published by the Commission's expert staff as part of the State's nonpartisan sunset review process regarding DFPS. Notably, it bears directly on defendants' contention that Texas has put in place a "durable remedy" such that continued oversight is "not only unnecessary, but improper." Dkt. 1662 at 12-13.

Plaintiffs noted in their response to defendants' motion that DFPS's sunset review was coming in the 2027 session. Dkt. 1671 at 9. As part of that process, the Commission's specialized staff have performed "extensive research and analysis to evaluate the need for, performance of, and improvements to" DFPS and produced findings and recommendations. *How Sunset Works*, https://www.sunset.texas.gov/how-sunset-works (last visited Nov. 11, 2026).

Among many significant findings, the Report finds as a fact that, without more tailored oversight tools, DFPS "cannot ensure" that the privatized foster care system provides quality case management that protects children. PX 118 at 35. The Report finds that DFPS "lacks robust and real-time data on [Single Source Continuum Contractor] staffing and caseload ratios." *Id.* at 40.

Illustrating that "performance measures alone do not always indicate quality case management or reflect child safety and well-being," the Report finds private contractor Empower met the State's child-safety performance thresholds even while children in its care were dying. *Id.* at 41, 46.

These are among the researched findings by expert State staff for use in the sunset review and legislative processes; they are new; and they go to the core of the durability question at the center of the State's motion and the hearing. The Court should admit the Report into the record and consider it in its decision on the Rule 60 motion. *See also* Decl. of V. Miller (Ex. A).

## LEGAL STANDARD

Courts have broad discretion to reopen an evidentiary record before ruling. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331-32 (1971). "In deciding whether to allow a reopening," courts are to weigh "the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party." *Chieftain Int'l (U.S.), Inc. v. Se. Offshore, Inc.*, 553 F.3d 817, 820 (5th Cir. 2008); *accord Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996).

Here, the Report meets the criteria for admission. It is vital to this case and bears on both parties' arguments; it was not introduced as evidence because it was not issued until last week; and it will not prejudice defendants, as it is a publicly available document prepared in the State's own nonpartisan sunset review process. Of course, plaintiffs do not object to defendants filing a response to this motion. The Report should be admitted.

## SIGNIFICANCE OF THE REPORT

The Report identifies five key issues with DFPS. Each of them is an independent basis for the Court to deny the Rule 60(b)(5) motion.

1. "Without More Tailored Oversight Tools, DFPS Cannot Ensure the State's Privatized Foster Care System Provides Quality Case Management That Protects Children and Supports Families." PX 118 at 35-60.

2. "DFPS Must Address Key Staffing Policies and Practices to Maintain a High-Quality Workforce for Its Internal and Community-Based Care Operations." *Id.* at 63-77.

3. "DFPS Must Better Coordinate Its Service Capacity Building Efforts, Improve Data Collection, and Evaluate Service Outcomes to Ensure Clients Receive High-Quality Services." *Id.* at 77-94.

4. "Inefficiencies in Internal Processes and a Lack of Coordinated Quality Assurance Efforts Prevent DFPS From Ensuring Fair and Consistent Investigations and Treatment of Children and Families." *Id.* at 97-116.

5. "Certain DFPS Processes and Statutory Requirements Impede the Agency From Carrying Out Its Mission to Serve Children and Families Effectively." *Id.* at 119-33.

The Report is replete with reasons why the Rule 60(b)(5) motion should be denied. Here, plaintiffs highlight some of the more relevant revelations reflecting the extensive research and analysis by the Commission's expert staff. Simply put, as the Report confirms, now is not the time to release the State from remedial orders that keep children safe.

**1. DFPS cannot yet adequately oversee the privatized system it asks the Court to trust.**

The first issue the Report identifies is that "Without More Tailored Oversight Tools, DFPS Cannot Ensure the State's Privatized Foster Care System Provides Quality Case Management That Protects Children and Supports Families." PX 118 at 35-60. That is a startling finding given defendants' position here that "Texas's current foster-care system doesn't need a federal overseer," so the Court should "dissolve the injunction and remedial orders." Dkt. 1678 at 8.

Among the most relevant problems the Report identifies are:

- **No direct visibility of staff.** SSCCs "neither submit nor provide DFPS access to any comprehensive data related to staffing, and they are not contractually required to do so." PX 118 at 42. Use by the private contractors of a new DFPS data interface is "voluntary," and some have not agreed to use it.

- **No reporting of staff turnover.** DFPS learns about SSCC staff departures only indirectly, when a contractor asks to remove system access of the now-former employee. *Id.* at 43. DFPS has to cross-reference staff lists manually to detect supervisors carrying caseloads that would require DFPS follow-up. *Id.*

- **No annual reviews of SSCCs.** The first statutory annual performance reviews of the private providers, which include "whether each SSCC has achieved performance outcomes and other requirements specified in the contract," will not take place until fiscal year 2027. *Id.* at 44.

In short, Commission staff discovered and documented a dangerous lack of transparency by DFPS into its own foster care system, most of which is now under private management.

**2. The State's metrics show "compliance" while children are harmed.**

The Report's account of Empower undercuts the State's claim that the receivership shows "the system working as it should to protect Texas children." Dkt. 1678 at 29. A state court placed Empower in receivership on March 18, 2026, on DFPS's petition describing "system failures that created an imminent danger to children in foster care and led to infant deaths." PX 118 at 41. In fact, the receivership petition was a belated response to a long-brewing crisis, and swifter action was both needed and may have saved children's lives.

The red flags about Empower were glaring. Its share of caseworkers at or under the 17-child guideline plummeted from 97% to 41%, causing a backlog of late court reports and "judicial contempt findings." *Id.* It averaged 31 overdue face-to-face visits a week, peaking at 93 *twice*, and the "failure to maintain regular visits likely contributed to the fatalities." *Id.* at 41-42.

Most significant here, prior to its receivership, Empower "met the [State's] thresholds for performance measures related to child safety even as it was receiving quality improvement and corrective action plans for a range of issues indicating poor performance." *Id.* at 46. In 2025, its performance on certain safety-related performance measures was "comparable to the best overall performing SSCC." *Id.* But "[a]cross the board, SSCC staff, community stakeholders, and even

DFPS regional staff reported that performance measures can conflict with each other and that they would like more context around the performance measures." *Id.*

"Contract performance measures alone fail to adequately capture case management quality," and the reunification measure may encourage "quickly returning a child home without performing the due diligence needed to ensure the child's long-term safety." *Id.* at 45-46. Because thresholds are measured against past performance, the baseline for a *poorly* performing contractor "drops over time, essentially allowing the SSCC to meet compliance without actually improving case management outcomes." *Id.* at 48. DFPS "acknowledges these systemic problems," the staff notes, but DFPS "has no immediate plans to address them." *Id.* at 47. "Misunderstood measures and thresholds exacerbate unwanted incentives." *Id.* at 48. And almost half of the 34 SSCC staff surveyed "felt pressure to meet a performance measure in a way that was not in the best interest of the child or their family." *Id.* at 49.

Such findings speak directly to defendants' claim that high compliance percentages show a cured violation. This is a claim that defendants repeat throughout their briefing and in their green-shaded compliance chart. The Report demonstrates that relying on potentially illusory performance measures may yield a false sense of security while children remain at grave risk.

**3. Crippling workforce instability among DFPS and private provider staff persists.**

Sunset staff found that "many of the current struggles that DFPS and SSCCs face can be traced back to the *need for improved staff retention and training*." *Id.* at 2 (emph. added). This is not a new problem. As the Report notes, these "are the *same* workforce management challenges Sunset staff identified in the agency's *2015 Sunset report.*" *Id*. (emph. added).

In fiscal year 2025, DFPS's overall turnover was nearly 20%, the third highest among large state agencies. Child Protective Investigations and Child Protective Services turnover were at 30%

and 24%, respectively. About 800 of 1900 surveyed staff had considered quitting in the prior six months, and 3076 staff left between July 2024 and April 2026. PX 118 at 64.

**4. The future of privatization has been and remains uncertain for child safety.**

As the Report stresses, "The state foster care system faces a compounding set of internal fiscal pressures and external structural risks that challenge its long-term financial stability and [community-based care] success." *Id.* at 36. For one, SSCCs "may choose to exit the market" due to various challenges "including the difficulty of maintaining a stable case management workforce, insufficient placements for children and services for families, and long-term financial risks." *Id.* at 40. "Should exits occur, there may be few entities willing to assume the SSCC role, which *threatens the long-term stability* of a statewide model of privatized foster care." *Id*. (emph. added). Indeed, "the financial realities of the CBC model may continue to deter potential applicants from serving as SSCCs and *threaten the long-term success and stability of the privatized model of foster care*." *Id*. at 36 (emph. added).

Judged by the State's own sunset staff, its evolving system of privatized foster care remains risky, has admitted challenges (some of which the State seems unbothered to address), and is not ready to continue forward unmonitored while the children's lives hang in the balance.

## CONCLUSION

The Report is a new and authoritative assessment of DFPS that is directly relevant to the durability question at the heart of defendants' motion. The Court should grant leave to supplement the record with the Report (attached as PX 118).

Dated: November 12, 2026

Respectfully submitted,

*/s/ R. Paul Yetter*

R. Paul Yetter
State Bar No. 22154200
Wynn McCloskey
State Bar No. 13417700
Christian J. Ward
State Bar No. 24033434
Fernando Stepensky
State Bar No. 24145381
Megan Jacobs
State Bar No. 24149674
YETTER COLEMAN LLP
600 Travis Street, Suite 5400
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Barry F. McNeil
State Bar No. 13829500
HAYNES AND BOONE, LLP
2323 Victory Ave., Suite 700
Dallas, Texas 75219
(214) 651-5000
barry.mcneil@haynesboone.com

Samantha Bartosz (*pro hac vice*)
Stephen Dixon (*pro hac vice*)
CHILDREN'S RIGHTS
88 Pine Street
New York, New York 10005
(212) 683-2210
sbartosz@childrensrights.org

Marcia Robinson Lowry (*pro hac vice*)
A BETTER CHILDHOOD, INC.
355 Lexington Avenue, Floor 16
New York, New York 10017
(646) 795-4456
mlowry@ABetterChildhood.org

ATTORNEYS FOR PLAINTIFFS AND THE GENERAL CLASS AND SUBCLASSES

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of November, 2026, a true and correct copy of this document was served on all counsel of record via email or by using the Court's CM/ECF e-file system.

*/s/ R. Paul Yetter*
R. Paul Yetter